FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Interim Class Counsel for Plaintiff and the Proposed Class*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| GOOD MORNING TO YOU PRODUCTIONS CORP., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER/CHAPPELL MUSIC, INC., *et al.*<br><br>Defendants. | Case No. CV 13-04460-GHK (MRWx)<br><br>**[REDACTED] SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION BY ORDER [DKT. 123, 124] DATED JULY 9, 2014 [DKT. 119]**<br><br>Date: July 25, 2014<br>Time: 9:30 A.M.<br>Judge: Hon. Michael R. Wilner<br>Room: H-9th Floor<br>Disc. Cutoff: July 11, 2014<br>Pretrial Conf.: N/A<br>Trial Date: N/A<br>L/D File Jt. MSJ: 11/14/14 |

# TABLE OF CONTENTS

Page

A. ASCAP Was Not S-B's Attorney Regarding the Dubious Copyright Ownership Claim ............................................................. 1

B. Mrs. Sengstack Did Not Write to Mr. Korman to Protect Any Shared Legal Interest in the *Happy Birthday* Copyright ............................................. 4

C. ASCAP's Limited Role as Issuer of Blanket Licenses Does Not Protect Mrs. Sengstack's Communications ............................................................ 9

# TABLE OF AUTHORITIES

Page

**Cases**

*Doors Music Co. v. Meadowbrook Inn Corp.*,
  No. 90-134-D, 1990 U.S. Dist.
  LEXIS 13935 (D.N.H. July 27, 1990) ............................................................... 8

*Georgia-Pacific LLC v. Officemax Inc.*,
  No. C 12-02797-WHO, 2014 U.S. Dist.
  LEXIS 89735 (N.D. Cal. June 30, 2014) ........................................................... 1

*In re Grand Jury Subpoenas*,
  902 F.2d 244 (4th Cir. 1990) .............................................................................. 6

*In re Regents of the Univ. of Cal.*,
  101 F.3d 1386 (Fed. Cir. 1996) .......................................................................... 7

*Love v. The Permanente Medical Group*,
  No. C-12-05679, 2014 U.S. Dist.
  LEXIS 22243 (N.D. Cal. Feb. 19, 2014) ........................................................... 6

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  00 Civ. 2855, 2003 U.S. Dist.
  LEXIS 14390 (S.D.N.Y. Aug. 20, 2003) .......................................................... 7

*Major League Baseball Props., Inc. v. Salvino, Inc.*,
  542 F. 3d 290 (2d Cir. 2008) .............................................................................. 8

*Mycone Dental Supply Co. v. Creative Nail Design Inc.*,
  No. C-12-00747-RS, 2013 U.S. Dist.
  LEXIS 126336 (N.D. Cal. Sept. 4, 2013) .......................................................... 4

*Ocasek v. Heggland*,
  673 F. Supp. 1084 (D. Wyo. 1987) .................................................................... 9

*Oracle Am., Inc. v. Google Inc.*,
   No. C 10-03561 WHA, 2011 U.S. Dist.
   LEXIS 121446 (N.D. Cal. Oct. 20, 2011),
   *writ of mandamus denied by* 462 Fed. App'x 975 (Fed. Cir. 2012) ..................... 1

*Schwartz v. Broadcast Music, Inc.*,
   16 F.R.D. 31 (S.D.N.Y. 1954) ................................................................... 1

*Simmons v. Morgan Stanley*,
   No. 11cv2889-WQH, 2013 U.S. Dist.
   LEXIS 32801 (S.D. Cal. Mar. 8, 2013) ............................................................... 4

*U.S. v. Am. Soc'y of Composers, Authors and Publishers*,
   129 F. Supp. 2d 327 (S.D.N.Y. 2001) .................................................................. 2

*U.S. v. Bergonzi*,
   216 F.R.D. 487 (N.D. Cal. 2003) ......................................................................... 6

*U.S. v. Gonzalez*,
   669 F.3d 974 (9th Cir. 2014) ............................................................................... 6

*U.S. v. Huberts*,
   637 F.2d 630 (9th Cir. 1980) ............................................................................... 1

*U.S. v. ASCAP*,
   1950-51 Trade Cas. (CCH) ¶ 62, 595 (S.D.N.Y. 1950) ....................................... 7

*U.S. v. ASCAP,*
   No. 13-95, 1996 U.S. Dist. LEXIS 16201 (S.D.N.Y 1996) ................................. 8

*Westinghouse Elec. Co. v. Kerr-McGee Corp.*,
   580 F.2d 1311 (7th Cir. 1978) ............................................................................ 3

**Rules**

Fed. R. Evid.
   502(b) .................................................................................................................. 4

### A. ASCAP Was Not S-B's Attorney Regarding the Dubious Copyright Ownership Claim

Defendants' preposterous argument that the 1979 communication from Mrs. Sengstack to Mr. Korman was *itself* privileged is without foundation and borders on frivolous. Apart from the mere fact that Summy-Birchard ("S-B") was a member of ASCAP when Mrs. Sengstack gratuitously sent the letters from S-B's own counsel to Mr. Korman as a courtesy, there is *nothing* in the record to support defendants' argument that she "must have" done so to seek ASCAP's legal advice.[1] There is *no request* for legal advice in Mrs. Sengstack's letter, and it is extremely unlikely she would have sought ASCAP's legal advice in addition to the detailed analysis that S-B's own counsel provided to it in 1976 and 1978. As important, there is no response from Mr. Korman providing such legal advice, or indeed any other response from Mr. Korman to the courtesy copies that Mrs. Sengstack sent to him. More importantly, ASCAP did not regard the communication from Mrs. Sengstack to Mr. Korman as privileged. Had ASCAP believed the communication from Mrs. Sengstack was privileged, it would not have produced Mrs. Sengstack's 1979 letter or either of the Coudert Letters to Plaintiffs. *See* Supp. Manifold Decl., Ex. 14 (attaching relevant portions of transcript of the July 21, 2014 continued deposition of ASCAP's counsel, Richard M. Reimer) at 44 (81:1-6).

Defendants principally rely upon *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31 (S.D.N.Y. 1954), to support their argument that Mrs. Sengstack's communication to Mr. Korman was privileged. *Schwartz* provides no support whatsoever for

---

[1] "That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies *only when legal advice is sought* 'from a professional legal advisor in his capacity as such.'" *U.S. v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980) (citation omitted; emphasis added); *see also Georgia-Pacific LLC v. Officemax Inc.*, No. C 12-02797-WHO, 2014 U.S. Dist. LEXIS 89735, at *9-12 (N.D. Cal. June 30, 2014) (citing *Huberts*). Sending a document to a lawyer does not automatically confer privilege when it is not sent for the *purpose of obtaining legal advice*. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 121446 (N.D. Cal. Oct. 20, 2011), *writ of mandamus denied by* 462 Fed. App'x 975 (Fed. Cir. 2012).

Defendants' argument. The court held in that case that communications between one of the plaintiffs (a member of ASCAP) and ASCAP's general counsel would be protected ***only if the plaintiff "was seeking . . . legal advice***." *Id*. at 32-33 (emphasis added). Here, there is no evidence that Mrs. Sengstack sought Mr. Korman's legal advice in 1979. Mrs. Sengstack's letter did not ask Mr. Korman for legal advice. In fact, the communication was the other way around: instead of asking Mr. Korman for advice, Mrs. Sengstack sent Mr. Korman a copy of the legal advice S-B previously obtained from its own counsel, Coudert Brothers. Mrs. Sengstack's also letter makes it clear that Mr. Korman had not sought the Coudert Letters from her so that he (Mr. Korman) could provide legal advice to S-B. And there is no evidence that Mr. Korman understood Mrs. Sengstack was asking him for legal advice. To the contrary, Mr. Korman never provided legal advice – or any other response – to Mrs. Sengstack, and ASCAP did not (and still does not) regard Mrs. Sengstack's letter as a request for legal advice from a client to her lawyer.[2]

Defendants' argument that Mrs. Sengstack sought legal advice from Mr. Korman turns these undisputed facts upside down. Defendants offer nothing but made up speculation that Mrs. Sengstack had no other reason to send the Coudert Letters to Mr. Korman. In light of the overwhelming, undisputed contrary evidence before the Court, that fanciful supposition should be disregarded.

Defendants' other case cite also squarely refutes their argument that Mrs. Sengstack's courtesy letter to Mr. Korman was privileged. In *U.S. v. Am. Soc'y of Composers, Authors and Publishers*, 129 F. Supp. 2d 327 (S.D.N.Y. 2001), an ASCAP member who sought an advance on future royalty payments claimed that his communications with ASCAP's attorneys were privileged. Although ASCAP conceded it "is the attorney for each of [its] members . . . ***where a member has requested association-related legal advice***," ASCAP disputed the member's privilege

---

[2]  Since receiving the Coudert Letters in 1979, ASCAP has done nothing to determine the validity of the copyright to *Happy Birthday.* Supp. Manifold Decl., Ex. 14 at 40 (72:5-20).

- 2 -

claim because (as here) he had not sought legal advice from ASCAP. *Id.* at 337 (emphasis added). The district court found that ASCAP's counsel represented ASCAP rather than the member. *Id.* After noting that Article XI of its Articles of Association provide that ASCAP's "counsel acts solely on the ***Society's*** behalf 'in all actions or proceedings,'" the district court concluded it would "defy common sense to believe that the attorneys for ASCAP also represent every one" of its more than one hundred thousand members. *Id.* at 336 and 338-39 (emphasis original).

Importantly, the district court rejected the exact same *ipso facto* argument that Defendants make here: "***The mere status of being a member of an unincorporated association no longer makes one a client of the association's attorneys***." *Id.* (citing cases since 1978) (emphasis added).[3] Instead, the district court considered a number of factors as relevant to whether an association's attorneys represent its members, including: (i) the nature of the disclosure to the attorney; (ii) whether the attorney affirmatively assumed a duty to represent the member; (iii) whether the member had independent representation; (iv) whether the attorney represented the member before representing the association; (v) whether the member relied upon the attorney to represent it; and (vi) the reasonableness of the member's expectation. *Id.* at 338. None of those factors indicates that Mr. Korman was S-B's attorney when Mrs. Sengstack gratuitously wrote to him.

Each of these factors strongly supports the conclusion that Mr. Korman was ***not*** S-B's lawyer and Mrs. Sengstack did ***not*** seek legal advice from him in 1979. *First*, on its face, Mrs. Sengstack's letter did not seek legal advice; rather, as a courtesy, it forwarded legal advice that S-B previously obtained from its own lawyers. *Second*, Mr. Korman never undertook to represent S-B (or even respond to the courtesy copies

---

[3] In one early case, *Westinghouse Elec. Co. v. Kerr-McGee Corp.*, 580 F.2d 1311 (7th Cir. 1978), the Seventh Circuit found that an attorney-client relationship existed not because the plaintiff was a member of a large national trade association, but rather because the association's outside counsel "solicited the information" from the members "upon a representation that the firm was acting in the undivided interest of each company." These facts are not present here.

- 3 -

of the Coudert Letters). *Third*, S-B had its own outside counsel, which conducted an in-depth analysis of the dubious copyright ownership claim. *Fourth*, there is no evidence that Mr. Korman represented S-B before joining ASCAP, or that Mr. Korman asked for information from Mrs. Sengstack to provide legal advice to S-B. *Fifth*, S-B did not rely upon Mr. Korman to represent it over the copyright ownership dispute; it was adequately represented by Coudert Brothers. And *sixth*, even if Mrs. Sengstack subjectively expected Mr. Korman to represent S-B on the disputed copyright ownership issue, that expectation was unreasonable in light of the nature of her gratuitous communication, a fact borne out by ASCAP's deliberate decision to produce Mrs. Sengstack's letter and the Coudert Letters to Plaintiffs in this litigation.[4] Ex. 14 at 45 (84:5-25).

### B. Mrs. Sengstack Did Not Write to Mr. Korman to Protect Any Shared Legal Interest in the *Happy Birthday* Copyright

Defendants' "common interest" argument is premised on its oft-repeated assertion that Mrs. Sengstack gratuitously sent copies of the Coudert Letters to Mr. Korman in 1979 – three years *after* Mr. Wincor sent his detailed analysis of the dubious copyright ownership claim to S-B – in order to protect and enforce S-B's intellectual property right. Defendants' argument suffers from two fundamental flaws. *First*, Defendants point to nothing in the record to support their argument, and there is

---

[4] Mrs. Sengstack's letter to Mr. Korman did not claim the Coudert Letters were privileged and they were not marked as privileged. Defendants concede that ASCAP produced them knowingly and intentionally on May 9, 2014 and that they took no steps to assert any privilege for 30 days after ASCAP produced the documents on May 9, 2014. To this day, the Coudert Letters are ***not*** on Defendants' privilege log. If Mrs. Sengstack's letter to Mr. Korman was privileged, Defendants failed to act diligently to establish that privilege in 1979 or to assert it in 2014. Under Fed. R. Evid. 502(b), that waives any privilege S-B or Defendants may have had. *See Mycone Dental Supply Co. v. Creative Nail Design Inc.*, No. C-12-00747-RS, 2013 U.S. Dist. LEXIS 126336, at *9-10 (N.D. Cal. Sept. 4, 2013) (privilege waived where party waits several weeks to seek return of attorney-client communications) (citations omitted); *Simmons v. Morgan Stanley*, No. 11cv2889-WQH, 2013 U.S. Dist. LEXIS 32801, at *6 (S.D. Cal. Mar. 8, 2013) (privilege waived where documents were not marked as privileged and party claiming privilege waited three weeks after disclosure to assert privilege).

- 4 -

no evidence to support Defendants' self-serving assertion that Mrs. Sengstack sent the Coudert Letters to Mr. Korman to obtain his legal advice regarding the doubtful copyright ownership. Rather, her 1979 letter makes clear that (1) S-B already had obtained legal advice from Mr. Wincor, and (2) Mrs. Sengstack never asked Mr. Korman for his legal advice, which he never provided. For this reason, ASCAP plainly did not regard either the letter from Mrs. Sengstack or the Coudert Letters as privileged communications. Any contrary suggestion is nothing more than mere speculation, is contrary to the record evidence, and in no way is sufficient to meet Defendants' burden to prove that the Coudert Letters remained privileged after Mrs. Sengstack gratuitously sent them to Mr. Korman in 1979.

*Second*, and as important, even if Mrs. Sengstack wrote to ASCAP to protect ***S-B's*** intellectual property, there is no support for the conclusion that ASCAP shared a common legal interest in that intellectual property. To the contrary, if S-B had an intellectual property right in *Happy Birthday*, it was ***not*** shared with ASCAP. ASCAP steadfastly has denied any interest in the Song or any copyright to the Song – a fact Defendants would have the Court ignore. None of the 500 pages of documents produced by ASCAP identified any interest ASCAP claims in its members' music or copyrights, and ASCAP's Rule 30(b)(6) designee, Richard Reimer, Esquire, repeatedly and steadfastly denied that ASCAP has any interest in either the music or copyrights, including *Happy Birthday.* Ex. 16 at 58-60 (12:19-25; 13:22-14:12).

Citing only cases from outside the Ninth Circuit, Defendants argue that no actual or potential litigation is necessary for the common interest doctrine to apply. Defendants' argument ignores recent Ninth Circuit precedent to the contrary. In *U.S. v. Gonzalez*, 669 F.3d 974 (9th Cir. 2014), the Ninth Circuit explained the reason for common interest doctrine as follows:

> Whether the jointly interested persons are defendants or plaintiffs, and ***whether the litigation or potential litigation is civil or criminal***, the rationale for the joint defense rule [another name for the common interest doctrine] remains unchanged: persons who

- 5 -

> share a common interest in litigation should be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims.

*Id.* at 978 (quoting *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990)) (emphasis added). The rationale for the doctrine exists only where there is actual or at least potential litigation. Defendants have not identified any actual potential litigation over S-B's dubious copyright ownership claim in 1979 when Mrs. Sengstack gratuitously sent the Coudert Letters to Mr. Korman.[5]

Whether any actual or potential litigation is required, Defendants do not dispute that the common interest doctrine only protects a communication made in furtherance of a joint effort regarding a matter of common legal interest between separate parties. See *U.S. v. Bergonzi*, 216 F.R.D. 487, 495 (N.D. Cal. 2003). ASCAP shared no common legal interest in the *Happy Birthday* copyright with S-B, there was no joint effort between ASCAP and S-B regarding the copyright ownership, and there is no evidence that Mrs. Sengstack wrote to Mr. Korman in furtherance of one. Indeed, as Defendants' brief concedes, S-B alone claimed a copyright in the Song.

One case cited by Defendants, *Love v. The Permanente Medical Group*, No. C-12-05679, 2014 U.S. Dist. LEXIS 22243 (N.D. Cal. Feb. 19, 2014), actually supports Plaintiffs' argument. In *Love*, a physician sued both medical and hospital groups where she was denied staff privileges. The Northern District applied the "joint defense or common interest privilege" to preclude communications between the members of the credentials committee and its counsel because the lawyer "provided legal advice to both" the hospital and medical groups, which shared a "common legal interest in defending against anticipated litigation" by the physician. *Id.* at *8-9. Here, there is no evidence that Mr. Korman provided ***any*** legal advice to S-B. The Northern District

---

[5] Mr. Reimer testified that ASCAP never prosecuted or defended a copyright action to determine the validity of a disputed copyright, and never has been involved in litigation concerning the validity of a copyright (other than disputes concerning the distribution of royalties collected under the blanket license). Ex. 14 at 42-43 (79:15-80:8). Mr. Reimer questioned why ASCAP ever would be involved in such litigation, explaining, "***It's the rights of the members that are at stake***." *Id.* at 46 (87:7-18) (emphasis added).

refused to extend the privilege to communications disclosed to individuals who were not members of the credentials committee because the defendants failed to show that the non-members shared the same common legal interest as the committee members. *Id.* at *10.

In *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir. 1996), a case both sides rely upon, the University of California and Eli Lilly shared "a common legal interest in gaining sound patent rights" to technology they developed together. Lilly's lawyers also "advised and consulted frequently with UC counsel on matters relating to UC's patents." *Id.* at 1390. Nothing like that happened here. ASCAP did **not** work with S-B to compose the Song or obtain any interest in it, and there is no evidence that Coudert Brothers ever communicated with ASCAP about the *Happy Birthday* copyright (or even that ASCAP knew Coudert was working for S-B until Ms. Sengstack gratuitously send courtesy copies of Mr. Wincor's letters to Mr. Korman **three years later**).

The short decision in *Major League Baseball Props., Inc. v. Salvino, Inc.*, 00 Civ. 2855, 2003 U.S. Dist. LEXIS 14390 (S.D.N.Y. Aug. 20, 2003) ("MLBP"), provides no guidance for this fact-intensive inquiry. There, the Southern District of New York concluded that "MLBP and the Clubs have a common legal interest in enforcement of the Clubs' trademark rights," but it gave no analysis in support of its conclusion. *Id.* at *3. ASCAP's relationship with S-B was far more limited than the one between MLBP and the baseball clubs. Unlike MLBP, ASCAP (which has 10,000 times as many "owners" as MLBP) is **not** the exclusive worldwide agent for licensing its members' music. ASCAP's role is limited to issuing blanket licenses for certain public performances.[6] ASCAP does not create music with its members, acquire music for them, or register any copyrights for them. Ex. 14 at 31-34 (54:22-55:18; 57:12-21; 60:21-62). ASCAP's half-million members are free to license the use of their own music; the baseball clubs do not. ASCAP does not license any member's name, logo,

---

[6] Since 1950, ASCAP has been prohibited from being the exclusive agent to do so. *United States v. ASCAP*, 1950-51 Trade Cas. (CCH) ¶ 62,595 (S.D.N.Y. 1950).

1 trademark, service mark, trade dress, or other intellectual property. ASCAP does not
2 provide trademark protection, quality control, design service to its members. Ex. 14 at
3 36-39 (62:16-63:19; 64:7-65:18). MLBP does ***all*** these things for the baseball clubs.
4 *Cf. MLBP*, 542 F.3d 290, 294 (2d Cir. 2008).

5 ██████████████████████████████████████████
6 ██████████████████████████████████████████
7 ██████████████████████████████████████████
8 ████████████████████████ *See* Ex. 17. ████████
9 ██████████████████████████████████████████
10 ██████████████████████████████████████████
11 ████. *Id.*

12 In *United States v. ASCAP,* No. 13-95, 1996 U.S. Dist. LEXIS 16201 (S.D.N.Y
13 1996), the district court refused to give ASCAP privileged communications between
14 cable program providers who were jointly negotiating the terms of a blanket license
15 with ASCAP. The district court did so because the cable providers participated in
16 frequent meetings to discuss negotiating strategies, in which their lawyers were active
17 participants advising the cable companies on legal matters of common interest. *Id.* at
18 *3. There are no similar facts here: S-B and ASCAP never met to discuss the Song or
19 its copyright and S-B's and ASCAP's counsel never met with both companies to offer
20 legal advice on any common interests.

21 That ASCAP may monitor for infringement and may pursue litigation to
22 enforce its blanket license in no way creates a common legal interest in its members'
23 intellectual property – and creates no shared interest in any copyright to *Happy*
24 *Birthday*.[7] That argument was rejected in *Doors Music Co. v. Meadowbrook Inn*
25 *Corp.*, No. 90-134-D, 1990 U.S. Dist. LEXIS 13935 (D.N.H. July 27, 1990), in which
26 the plaintiff alleged that the defendant allowed public performances of copyrighted

---

[7] Because ASCAP has no interest in any of the music owned by its members, any action that ASCAP brings must be brought in the name of the individual members.

- 8 -

1  music after blanket license expired. The defendant brought a third-party complaint
2  against ASCAP, alleging that ASCAP improperly failed to renew its blanket license.
3  The district court dismissed the third-party complaint against ASCAP, finding that
4  ***ASCAP had no interest in the infringement action that required its presence***. *Id.* at
5  \*5-6 (citing cases finding that ASCAP, as mere non-exclusive licensee, had suffered
6  no legal injury that would justify its participation in infringement action). For that
7  same reason, in *Ocasek v. Heggland*, 673 F. Supp. 1084, 1087 (D. Wyo. 1987), the
8  district court held that ASCAP is neither a necessary nor even a proper party to an
9  infringement action.

10  Defendants have not identified any legal interest ASCAP has in either *Happy Birthday* or any copyright to the Song. ASCAP could not identify any interest it has in the Song or the copyright, either. In fact, ASCAP denies that it has any such interest.

### C. ASCAP's Limited Role as Issuer of Blanket Licenses Does Not Protect Mrs. Sengstack's Communications

Because of its limited role in licensing recorded music, ASCAP is not an "agent" in the usual way. Under a Civil Consent Decree and Judgment entered on March 4, 1941 ("Decree"), ASCAP is only permitted to issue non-exclusive blanket licenses authorizing public performances of all the music in its repertory. ASCAP currently issues blanket licenses for more than 9 million songs. ASCAP collects royalties for the blanket licenses, but not for licenses issued by its members. Significantly, ASCAP *alone* sets the fees for the blanket licenses; members have no right to tell ASCAP how much to charge for any blanket license. Ex. 14 at 30 (51:4-16). Indeed, the relationship between ASCAP and its members ***does not* "giv[e] the members the right to instruct ASCAP**." *Id.* (51:13-16) (emphasis added).

Furthermore, when ASCAP issues a blanket license, it does *not* act as the agent for the copyright owners because the ***blanket license is between ASCAP and the music user***, not between the copyright owner and the user. *Ocasek*, 673 F. Supp. at 1087 (D. Wyo. 1987). The district court also held that ASCAP was not an interested party in the litigation because, even if a copyright had been infringed, ASCAP would suffer no legal injury that would justify its participation in the ensuing litigation. *Id.*

- 9 -

In its role as a putative "agent" for more than 500,000 members for the limited purpose of granting and enforcing blanket licenses to more than 9 million songs, ASCAP cannot "take sides" in a dispute regarding copyright ownership. Nor can ASCAP "take sides" in a dispute over royalty credits. Ex. 14 at 41-42 (78:17–79:14). Under the Decree, ASCAP is required to distribute the total pool of royalties it collects among all its members pursuant to a formula based primarily on the performances of the members' work (without counting performances of works licensed directly by the members), although it may make special awards to individual members who "make a significant contribution to the ASCAP repertory." The division of royalties is "zero-sum": if one member receives a larger share of the pool, all the other members receive a smaller share. This puts ASCAP's half-million members in a position of conflict. If the Court declares that Defendants do not own any copyright in *Happy Birthday*, their future royalty credits might be diminished by some amount, but the royalty credits for ASCAP's other members (such as CBS Records, Sony Music, and Universal Music Group) would be increased by that same amount.[8]

Dated: July 22, 2014

WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP
By:   */s/ Betsy C. Manifold*
     BETSY C. MANIFOLD

---

[8] The Compendium of ASCAP's Rules and Regulations, and Policies Supplemental to the Articles of Incorporation, Ex. 15 (attaching relevant excerpts) ("ASCAP'S Rules") set forth ASCAP's rights in the event of a dispute over royalty credits. *Id.* at 52-53 (¶¶ 2.8.1-2.8.5). In a dispute between members, ASCAP may withhold the disputed royalties from both members; and is authorized, at its "sole discretion," to request indemnification from both members, release the disputed royalties to either of them, or initiate an interpleader action against both members. *Id.* (¶ 2.8.1). In a dispute between a member and a non-member, ASCAP can withhold royalties from the member and seek indemnification from the member. If the member does not indemnify ASCAP, at ASCAP's "sole discretion" it may release the disputed royalties to the non-member or initiate an interpleader action against the member and non-member. *Id.* (¶ 2.8.3). A lawyer who represents multiple clients with conflicting interests (such as in a royalty dispute between members) is precluded from representing *either* client; the lawyer may not pick or choose which client to represent and which to abandon. However, Rule 2.8.1 specifically authorizes ASCAP to side with one of its members in the dispute. An agent cannot act in a manner that is against the principal's interest. Both rules authorize ASCAP to act at its "sole discretion" in ways that are inconsistent with its members' rights and interests.

- 10 -

|    |                                                                 |
|----|-----------------------------------------------------------------|
| 1  | FRANCIS M. GREGOREK                                             |
|    | gregorek@whafh.com                                              |
| 2  | BETSY C. MANIFOLD                                               |
|    | manifold@whafh.com                                              |
| 3  | RACHELE R. RICKERT                                              |
|    | rickert@whafh.com                                               |
| 4  | MARISA C. LIVESAY                                               |
|    | livesay@whafh.com                                               |
| 5  | 750 B Street, Suite 2770                                        |
|    | San Diego, CA 92101                                             |
| 6  | Telephone: 619/239-4599                                         |
|    | Facsimile: 619/234-4599                                         |

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
BETH A. LANDES (*pro hac vice*)
landes@whafh.com
GITI BAGHBAN (284037)
baghban@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@nieves-law.com
KATHLYNN E. SMITH (234541)
smith@huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone: 626/440-5200
Facsimile: 626/796-0107

**DONAHUE GALLAGHER WOODS LLP**
WILLIAM R. HILL (114954)
rock@donahue.com
ANDREW S. MACKAY (197074)

- 11 -

andrew@donahue.com
DANIEL J. SCHACHT (259717)
daniel@donahue.com
1999 Harrison Street, 25th Floor
Oakland, CA 94612-3520
Telephone: 510/451-0544
Facsimile: 510/832-1486

**GLANCY BINKOW &
 GOLDBERG LLP**
LIONEL Z. GLANCY (134180)
lglancy@glancylaw.com
MARC L. GODINO (188669)
mgodino@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
Facsimile: 310/201-9160

*Attorneys for Plaintiffs*

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

WARNERCHAPPELL:21014.supp.memo