1 | FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
2 | BETSY C. MANIFOLD (182450)
manifold@whafh.com
3 | RACHELE R. RICKERT (190634)
rickert@whafh.com
4 | MARISA C. LIVESAY (223247)
livesay@whafh.com
5 | **WOLF HALDENSTEIN ADLER**
6 | **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
7 | San Diego, CA 92101
Telephone: 619/239-4599
8 | Facsimile: 619/234-4599

9 | *Interim Class Counsel for Plaintiffs*

10 | **UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
11 | **WESTERN DIVISION**

12 | GOOD MORNING TO YOU ) Case No. CV 13-04460-GHK (MRWx)
PRODUCTIONS CORP., *et al.*, )
13 |                              ) **[█REDACTED] PLAINTIFFS'**
                 Plaintiffs,  ) **NOTICE OF MOTION AND MOTION**
14 |                              ) **FOR REVIEW OF MAGISTRATE**
15 | v.                           ) **JUDGE WILNER'S ORDER RE:**
                              ) **DISCOVERY MOTION [FED. R. CIV.**
16 | WARNER/CHAPPELL MUSIC,       ) **P. 72(a); L.R. 72-2.1] DENYING**
INC., *et al.*                 ) **PLAINTIFFS' MOTION TO**
17 |                              ) **OVERRULE DEFENDANTS' CLAIM**
                 Defendants.  ) **OF ATTORNEY-CLIENT**
18 |                              ) **PRIVILEGE; MEMORANDUM OF**
19 |                              ) **POINTS AND AUTHORITIES; AND**
                              ) **[PROPOSED] ORDER THEREON**
20 |                              )
21 |                              ) Date:        September 15, 2014
                              ) Time:        9:30 A.M.
22 |                              ) Judge:       Hon. George H. King
                              ) Room:        650
23 |                              ) Disc. Cutoff:   July 11, 2014
24 |                              ) Pretrial Conf.:  N/A
                              ) Trial Date:     N/A
25 |                              ) L/D File Jt. MSJ:  11/14/14
26 | _____ )

27 |

28 |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that, pursuant to Federal Rule of Civil Procedure 72(a) and Local Rule 72-2.1, Plaintiffs Good Morning to You Productions Corp., Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC ("Plaintiffs") will, and hereby do, move for review of the Order re: Discovery Motion ("Order") of Magistrate Judge Michael R. Wilner filed on July 25, 2014 (Dkt. 132), denying Plaintiffs' motion to overrule the claim of attorney-client privilege by Defendants Warner/Chappell Music, Inc. and Summy-Birchard, Inc., in certain documents produced by non-party American Society of Composers, Artists, and Publishers ("ASCAP"). Subject to the Court's availability, the motion will be heard on September 15, 2014, at 9:30 a.m. in Courtroom 650 (Los Angeles - Roybal) before the Honorable Chief Judge George H. King.

No conference of counsel was held because this is a discovery motion governed by Local Rules 37 and 72.

In support of this motion, Plaintiffs rely upon the following memorandum of points and authorities, Declaration of Mark C. Rifkin and accompanying pleadings and other papers, any subsequently filed supplemental memorandum, and any other arguments, evidence or other matters submitted at the hearing on the motion.

Dated: August 11, 2014

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:     */s/ Betsy C. Manifold*
      BETSY C. MANIFOLD

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com

750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
BETH A. LANDES (*pro hac vice*)
landes@whafh.com
GITI BAGHBAN (284037)
baghban@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES
  DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@nieves-law.com
KATHLYNN E. SMITH (234541)
smith@huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone: 626/440-5200
Facsimile: 626/796-0107

1

**TABLE OF CONTENTS**

2

3

4

I.    PORTIONS OF ORDER APPEALED FROM AND THE GROUNDS FOR
      PLAINTIFFS' OBJECTION ..................................................................................1

II.   STANDARD OF REVIEW ..................................................................................3

III.  FACTUAL BACKGROUND .................................................................................3

IV.   LEGAL ARGUMENT .......................................................................................10

      A.    The Record Does Not Support Magistrate Judge Wilner's Finding
            That Mrs.Sengstack Write to Mr. Korman to Obtain Legal Advice ........11

      B.    Magistrate Judge Wilner Did Not Make The Necessary Finding That
            Mrs. Sengstack Wrote to Mr. Korman in Furtherance of a Common
            Effort Regarding Any Anticipated Litigation ................................................18

V.    CONCLUSION ..................................................................................................24

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## Cases

*Bank of Am. v. Terra Nova Ins. Co., LLT,*
    211 F.Supp.2d 493 (S.D.N.Y. 2002) ................................................................... 20

*Bank of America, N.A. v. Terra Nova,*
    211 F. Supp. 2d 497 [(S.D.N.Y. 2002) ................................................................... 2

*Bittaker v. Woodford,*
    331 F.3d 715 (9th Cir. 2003) (en banc) ............................................................... 10

*Columbia Pictures, Inc. v. Bunnell,*
    245 F.R.D. 443 (C.D. Cal. 2007) ........................................................................... 3

*Doors Music Co. v. Meadowbrook Inn Corp.,*
    No. 90-134-D, 1990 U.S. Dist. LEXIS 13935
    (D.N.H. July 20, 1990) ......................................................................................... 23

*Fay Ave. Properties, LLC v. Travelers Prop. Cas. Co. of Am.,*
    No. 11-CV-02389-GPC, 2014 U.S. Dist.
    LEXIS 82688 (S.D. Cal. June 17, 2014) ................................................................ 3

*FSP Stallion 1, LLC v. Luce,*
    No. 08-cv-01155-PMP-PAL, 2010 U.S. Dist.
    LEXIS 110617 (D. Nev. Sept. 20, 2010) ....................................................... 18, 20

*Georgia-Pacific LLC v. Officemax Inc.,*
    No. C 12-02797-WHO, 2014 U.S. Dist.
    LEXIS 89735 (N.D. Cal. June 30, 2014) ............................................................. 12

*Hewlett-Packard Co. v. Baush & Lomb, Inc.,*
    115 F.R.D. 308 (N.D. Cal. 1987) ........................................................................ 24

*In re Fresh & Process Potatoes Antitrust Litig.,*
    No. 10-md-02186-BLW-CWD, 2014 U.S. Dist.
    LEXIS 74936 (D. Idaho May 30, 2014) .......................................................... 2, 19

1   *In re Grand Jury Investigation,*
2       974 F.2d 1068 (9th Cir. 2001) ........................................................................ 10

3   *In re Grand Jury Subpoenas,*
4       902 F.2d 244 (4th Cir. 1990) ................................................................. 18, 19, 20

5   *In re Regents of the Univ. of Cal.,*
6       101 F.3d 1386 (Fed. Cir. 1996) ...................................................................... 22

7   *Lenz v. Universal Music Corp.,*
        C 07-3783 JF (RS), 2009 U.S. Dist. LEXIS
8       105180 (N.D. Cal. Oct. 29, 2009) .................................................................. 21

9   *McAdam v. State Nat. Ins. Co., Inc.,*
10      No. 12-CV-1333 BTM-MDD, 2014 U.S. Dist.
11      LEXIS 37808 (S.D. Cal. Mar. 21, 2014) ........................................................ 3

12  *MGA Entm't, LLC v. Nat'l Prods. LTD.,*
13      No. CV-10-07083 JAK (SSx), 2012 U.S. Dist.
14      LEXIS 108408, (C.D. Cal. Aug. 2, 2012) ..................................................... 18

15  *Mycone Dental Supply Co. v. Creative Nail Design Inc.,*
        No. C-12-00747-RS, 2013 U.S. Dist.
16      LEXIS 126336 (N.D. Cal. Sept. 4, 2013) ...................................................... 17

17  *Nidec Corp. v. Victor Co. of Japan,*
18      249 F.R.D. 575 (N.D. Cal. 2007) ......................................................... 2, 18, 19

19  *Ocasek v. Heggland,*
20      673 F. Supp. 1084 (D. Wyo. 1987) ............................................................... 23

21  *Oracle Am., Inc. v. Google Inc.,*
22      No. C 10-03561 WHA, 2011 U.S. Dist.
23      LEXIS 121446 (N.D. Cal. Oct. 20, 2011),
        *writ of mandamus denied by* 462 Fed.
24      App'x 975 (Fed. Cir. 2012) ........................................................................... 12

25  *Schwartz v. Broadcast Music,*
26      16 F.R.D. 32 [(S.D.N.Y. 2954) ....................................................................... 1

27

28

*Simmons v. Morgan Stanley*,
   No. 11cv2889-WQH, 2013 U.S. Dist.
   LEXIS 32801(S.D. Cal. Mar. 8, 2013) ................................................................. 18

*U.S. v. ASCAP*,
   129 F. Supp. 2d 327 (S.D.N.Y. 2001) ................................................................. 2

*U.S. v. Gonzalez*,
   669 F.3d 974 (9th Cir. 2012) ................................................................. 18, 19

*U.S. v. Graf*,
   610 F.3d 1148 (9th Cir. 2010) ................................................................. 10

*U.S. v. Huberts*,
   637 F.2d 630 (9th Cir. 1980) ................................................................. 12

*U.S. v. Landof*,
   591 F.2d 36 (9th Cir. 1978) ................................................................. 10

*U.S. v. Schwimmer*,
   892 F.2d 237(2nd Cir. 1989) ................................................................. 18, 19

*United States v. ASCAP*,
   129 F. Supp. 2d 338(S.D.N.Y. 2001) ................................................................. 1

*Weil v. Investment/Indicators, Research & Mgmt., Inc.*,
   647 F.2d 18 (9th Cir. Cal. 1981) ................................................................. 10

*Westinghouse Elec. Co. v. Kerr-McGee Corp.*,
   580 F.2d 1311 (7th Cir. 1978) ................................................................. 16

**Statutes**

28 U.S.C.
   §§ 2201-2202 ................................................................. 3

**Rules**

Fed. R. Civ. P.
  72(a).................................................................................................................... 3

Fed. R. Evid.
  502(b)................................................................................................................ 17

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   PORTIONS OF ORDER APPEALED FROM AND THE GROUNDS FOR PLAINTIFFS' OBJECTION**

Pursuant to Local Rule 72.2-1, Plaintiffs hereby identify the following portions of the Order to which Plaintiffs object:

> The Court finds sufficient evidence to support Warner's argument that ***Summy gave the Coudert materials to ASCAP's lawyer for the purpose of obtaining legal advice.*** [*United States v. ASCAP*, 129 F. Supp. 2d [327,] 338 [(S.D.N.Y. 2001)]. Proof that Summy owned a legitimate copyright was fundamental to allowing the association to provide a fundamental service – enforcing and patrolling its members' legal interest. The fact that one of Summy's principals sent the Coudert materials directly to the general counsel of a major rights enforcement agency fits well within the established perspective that "[e]ach individual member of the [unincorporated] association is a client of the association's lawyer." *Schwartz* [*v. Broadcast Music*], 16 F.R.D. [16 F.R.D. 31,] 32 [(S.D.N.Y. 2954)]. If ASCAP's general counsel acted as Summy's lawyer to obtain material relevant to preparing future copyright infringement actions (even if such actions didn't come to pass), then the client's action in conveying privileged materials did not cause a waiver of the privilege.
>
> The Court also finds the evidence sufficient to establish that ***Summy and ASCAP engaged in communication in furtherance of a common interest.*** As Summy's agent, ASCAP was contractually obliged to sue copyright infringers on behalf of Summy. The transmission of material central to an infringement

action enabled the rights holder and its agent to pursue their common interest in halting such infringement. *Nidec* [*v. Corp. v. Victor Co. of Japan*], 249 F.R.D. [575,] 578 [(N.D. Cal. 2007)]. Plaintiff correctly notes that ASCAP did not stand to benefit directly from a successful copyright infringement action, as the association did not own the song's copyright or share meaningfully in royalties derived from its public performances. Yet, this merely establishes that ASCAP did not have a joint commercial goal with Summy, which would be a factor against finding a commonality of interest here. [*Bank of America, N.A. v.*] *Terra Nova*, 211 F. Supp. 2d [493,] 497 [(S.D.N.Y. 2002)]. Rather, the rights owner and the non-profit association were unified in asserting Summy's copyrights for Summy's benefit as a result of the agency relationship. [*In re Fresh and Process Potatoes*] *Antitrust Litig.*, 2014 WL 2435581 at *6-7 [(D. Idaho May 20, 2014)]. That common interest is adequate to warrant protecting privileged communications in advance of future conceivable litigation.

Order, Dkt. 132 at 7-8 of 9 (attached hereto as "Addendum A").

As explained more fully below, Magistrate Judge Wilner's finding that Mrs. Sengstack wrote to Mr. Korman for Summy to obtain legal advice was mere speculation on Magistrate Judge Wilner's part and, more importantly, is inconsistent with the record. Magistrate Judge Wilner correctly determined that the communication between Mrs. Sengstack and Mr. Korman would be privileged only if she wrote to him for the purpose of obtaining legal advice. *U.S. v. ASCAP*, 129 F. Supp. 2d 327, 338 (S.D.N.Y. 2001) *("ASCAP")*. Magistrate Judge Wilner's finding is not supported by the record and was, therefore, clearly erroneous and contrary to law.

As also explained below, Magistrate Judge Wilner's finding of a common legal interest between Summy and ASCAP is not based on any finding that the two companies were engaged in a common legal effort in furtherance of anticipated litigation. As Magistrate Judge Wilner correctly recognized in his opinion, a finding of a common legal effort in furtherance of anticipated litigation is *necessary* for the common interest doctrine to apply to preserve the attorney-client privilege after Mrs. Sengstack disclosed the otherwise privileged communications to a third-party. Addendum A at 5 of 9. Since Magistrate Judge Wilner did not find that Summy and ASCAP were engaged in a common legal effort in furtherance of anticipated litigation, the Order was contrary to law.

## II.    STANDARD OF REVIEW

The standard of review from a magistrate judge's order on a non-dispositive matter (such as this one) is well-established. "A district court will not modify or set aside a magistrate judge's order unless it is 'found to be clearly erroneous or contrary to law' . . . the clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which are reviewed de novo." *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007) (*citing* Fed. R. Civ. P. 72(a)). This deferential standard applies to discovery orders pertaining to the attorney-client privilege. *See McAdam v. State Nat. Ins. Co., Inc.*, No. 12-CV-1333 BTM-MDD, 2014 U.S. Dist. LEXIS 37808 (S.D. Cal. Mar. 21, 2014); *see also Fay Ave. Properties, LLC v. Travelers Prop. Cas. Co. of Am.*, No. 11-CV-02389-GPC, 2014 U.S. Dist. LEXIS 82688 (S.D. Cal. June 17, 2014).

## III.    FACTUAL BACKGROUND

As the Court is aware, Plaintiffs seek, *inter alia*, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, that: (i) Defendants do not own any valid copyright to the song *Happy Birthday to You* (the "Song"); (ii) any copyright to the Song that Defendants do own is limited in scope to just specific

piano arrangements and an obscure second verse; and (iii) the Song itself is dedicated to public use and in the public domain (hereafter "Claim One"). *See generally* Fourth Amend. Consol. Class Action Compl. ("FAC") (Dkt. 95), entered Apr. 24, 2014 by Dkt. 96. The Court has bifurcated Claim One from Plaintiffs' other claims and the scope of discovery was limited to the issues raised by Claim One only. *See* Scheduling Conf. and Order Entering Scheduling Dates (Dkt. 92, Mar. 24, 2014) ("Scheduling Order").

The Court initially set the fact discovery deadline for June 27, 2014. *Id.* at 1, ¶ 2. On June 9, 2014, Magistrate Judge Wilner extended the fact discovery deadline to July 11, 2014. Minute Order (Dkt. 106, June 9, 2014).

As the Court is aware, the ownership and origin of the Song and the copyrights that Defendants claim in it are, at best, obscure. Despite more than a century of documented public performances, decades of disputed claims, and the Song's ubiquity, no court has ever determined whether Defendants (or any of their predecessors-in-interest) own any rights to the Song. Indeed, while the Song has been used and performed innumerable times over the past 80 years without Defendants' (or their predecessors') permission, no one has ever been sued for infringing any copyright to the Song. That uncertainty has been no accident. In fact, because Defendants and their predecessors-in-interest cannot prove they own the Song or the scope of the disputed copyrights in question, they have obfuscated the record for decades, relying upon empty threats of copyright infringement and the draconian penalties that such actions might impose, to intimidate Plaintiffs and countless others into paying for the right to use or perform a song that belongs to the public.

For example, Defendants (and their predecessors) based their claim of copyright ownership only upon a single copyright, Reg. No. E51990, registered on December 6, 1935. That copyright covered a specific piano arrangement

composed as a work for hire by Preston Ware Orem, a director and Vice President of the Clayton F. Summy Co. (one of Defendants' predecessors-in-interest) ("Summy Co."). According to the copyright records, the work also included "text." However, the copyright records do ***not*** indicate what "text" was included in the work or who wrote it, and there is no known copy of the work deposited with that registration. The record now shows that Defendants do ***not*** possess a copy of the work deposited with the registration for No. E51990. Decl. of Mark C. Rifkin in Support of Pls.' Mot. for Review ("Rifkin Decl.") at 3, ¶ 9 & Ex. A (37:19-39:6) (attaching relevant excerpts of the Confidential Depo. Tr. of Def. Warner/Chappell's Rule 30(b)(6) designee, Thomas J. Marcotullio, Esquire).[1] Without that deposit copy, Defendants cannot prove what work was protected by that copyright registration.

In any event, copyright Reg. No. E51990 was renewed by Summy Birchard Co. (another one of Defendants' predecessors-in-interest) on December 6, 1962, under No. R306186. Whatever work the original copyright (No. E51990) may have covered, that copyright expired in 1963. According to the 1962 Catalog of Copyright Entries ("Copyright Catalog"), the official publication of copyright registrations and renewals published by the United States Office of Copyright, the renewal copyright (No. R306186) covers Dr. Orem's piano arrangement only, not any "text." Rifkin Decl. at 3-4 ¶ 10 & Ex. B (a true and correct copy of the 1962 Copyright Catalog).

Recently, because they cannot prove the scope of either No. E51990 or No. R306186, Defendants have begun to rely in this action upon a second copyright,

---

[1]    Plaintiffs' concurrently make an application to file these confidential exhibits under seal. All of the exhibits referenced in this motion were part of the record before the Magistrate Judge. The Rifkin Declaration attaches for the Court's convenience, the exhibits specifically cited in this Motion and where the exhibit appeared in the record before the Magistrate Judge.

No. E51988, also registered on December 6, 1935.  That second copyright covered a different piano arrangement, composed by R.R. Forman, another employee for hire of Summy Co.  That work's copyright claim also included "revised text."  A deposit copy does exist for the work registered under No. E51988, which includes as the "revised text," an obscure second verse for the Song, apparently written by Mrs. Forman.

Copyright No. E51988 was also renewed on December 6, 1962, under No. R306185. And, like copyright No. E51990, the original copyright (No. E51988) also expired in 1963. According to the 1962 Copyright Catalog, renewal copyright No. R306185 was claimed by Summy-Birchard Music, Inc. (by way of change of name from Summy Co.), for Mrs. Forman's piano arrangement and the "revised text" she apparently wrote.

During discovery, Defendants produced two witnesses, Thomas J. Marcotullio, Esquire, and Jeremy Blietz, to testify on their behalf concerning the historical record of their alleged ownership of any copyright to the Song and the scope of those copyrights shrouded in uncertainty.



Rifkin Decl. at 4-5, ¶¶ 12-13; Ex. A at (6:2-7:3; 19:17-21:22).

1    Predictably, Mr. Marcotullio knew almost nothing of substance about the
2  Song or its origin. ███████████████████████████████████████
3  ███████████████████████████████████████████████████████████
4  ███████████████████████████████████████████████████████████
5  ███████████████████████████████████████████████████████████
6  ████████████████████████████ Rifkin Decl., Ex. A (24:17-19). ██████
7  ███████████████████████████████████████████████████████████
8  ███████████████████████████████████████████████████████████
9  *Id.* (*See, e.g.*, 23:25-27, 24:16, 26:3-5, 26:12-19).

10    Defendants should have produced Mr. Blietz to testify as their Rule 30(b)(6)
11  designee, if not in place of Mr. Marcotullio, then certainly in addition to him.
12  Nonetheless, after Plaintiffs learned of Mr. Blietz's identity, on June 4, 2014, they
13  noticed his deposition under Rule 30(b)(1).  For the next several weeks,
14  Defendants refused to produce Mr. Blietz.  Eventually, Defendants relented and
15  allowed Mr. Blietz to testify on July 10, 2014, the next-to-last day for discovery.
16  Like Mr. Marcotullio, Mr. Blietz knew almost nothing of substance about *Happy*
17  *Birthday* or its origin.  And like Mr. Marcotullio, his deposition answers almost
18  always were limited to knowledge he gained from reading a few documents in
19  Defendants' records, including a computer database that Defendants had not
   produced during discovery.  Rifkin Decl. at 5-6, ¶ 15.

20    Non-party ASCAP has been an unlikely source for what little substantive
21  information has been uncovered.  Plaintiffs served a document subpoena on
22  ASCAP on March 28, 2014. ASCAP produced approximately 500 pages of
23  documents to Plaintiffs on May 9, 2014.  Rifkin Decl. at 6, ¶ 19.  Before the
24  documents were delivered to Plaintiffs, Richard H. Reimer, Esquire, in-house
25  counsel for ASCAP since 1971, told Plaintiffs' counsel that ASCAP was
26  producing two documents in particular that provided detailed a analysis of the
27  disputed ownership of the copyright that Plaintiffs would find very interesting.
28

- 7 -

Rifkin Decl. at ¶ 7. Mr. Reimer's comments made it clear that: (i) ASCAP intended to produce the documents to Plaintiffs; (ii) ASCAP did not regard them as privileged or confidential; and (iii) ASCAP wanted to be sure that Plaintiffs saw the particular documents in question.

As Mr. Reimer had indicated to Mr. Rifkin, two of the documents, letters from Richard Wincor, Esquire, of Coudert Brothers to David K. Sengstack, President of Summy-Birchard Company ("Summy"), Warner/Chappell's predecessor-in-interest (collectively, the "Coudert Letters"), discussed in detail the disputed ownership of the Song. Copies of the Coudert Letters (conditionally filed under seal) are attached to the Rifkin Decl. as Exs. C and D.



[REDACTED]

A copy of Mrs. Sengstack's 1979 letter, filed conditionally under seal, is attached to the Rifkin Decl. as Exhibit E.

[REDACTED]

On May 22, 2014, Mr. Reimer advised Mr. Rifkin that Defendants claimed certain of the documents produced by ASCAP (the "ASCAP Documents") were privileged and that "counsel for the defendants" would be contacting Mr. Rifkin directly "to provide the details as to the basis for *their clients*' claim of privilege." Rifkin Decl. ¶¶ 16-17, Ex. H (emphasis added). None of the ASCAP Documents appeared on the privilege log produced by Defendants on May 9, 2014, or on Defendants' amended privilege logs produced on June 2, 2014 and June 26, 2014. Defendants' have not served a further amended privilege log including any of the ASCAP Documents. *See* Dkt. 101, Rifkin Decl., ¶ 19.

Plaintiffs sought an order overruling Defendants' claim of privilege pursuant to Rule 26(b)(5)(B). On July 15, 2014, the parties submitted a Joint Stipulation to Magistrate Judge Wilner (Dkt. No. 123). After some additional discovery on the privilege, both parties submitted supplemental briefs to Magistrate Judge Wilner

on July 22, 2014. (Dkts. 125-127, and 129 (Plaintiffs) and Dkts. 128, 130 (Defendants)). Magistrate Judge Wilner heard argument on Plaintiffs' motion on an expedited basis on July 25, 2014, and filed the Order later that day. (Dkt. No. 132). Written notice of the order was served on July 28, 2014 (Dkt. No. 132) appended hereto as Addendum A. This Motion, filed within 14 days of service of the written notice, is timely. *See* C.D. Cal. L.R. 72-2.1.

## IV.   LEGAL ARGUMENT

The attorney-client privilege is neither absolute nor permanent; it may be waived by the client at any time. The attorney-client privilege is expressly waived "when a party discloses privileged information to a third party who is not bound by the privilege, or otherwise shows disregard for the privilege by making the information public." *Bittaker v. Woodford*, 331 F.3d 715, 719 (9th Cir. 2003) (en banc). Indeed, the privilege is to be "strictly construed" because it is an obstacle to the discovery of the truth. *See* Addendum A at 3 of 9.  (citing *U.S. v. Graf*, 610 F.3d 1148, 1156 (9th Cir. 2010)).

Significantly, as Magistrate Judge Wilner recognized, the burden of proving that the attorney-client privilege applies is on the party asserting it. *Id.* (citing *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 2001)). The party asserting the attorney-client privilege must "prove that it has not waived the privilege" to carry its burden. *Weil v. Investment/Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 25 (9th Cir. Cal. 1981) (citations omitted); *U.S. v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978) (citations omitted).

That is exactly what happened here. Defendants (or their predecessor-in-interest, Summy) expressly waived any privilege they may have had in the ASCAP Documents. Three years after Mr. Wincor gave his analysis of the copyright dispute to Summy, Mrs. Sengstack forwarded courtesy copies of Mr. Wincor's letters to Mr. Korman in an informal communication that neither asked nor prompted Mr. Korman to respond.  Mrs. Sengstack's cordial letter (*see* Rifkin

Decl., Ex. E) and the circumstances around it show that the two companies shared no interest in the Song, in any copyright to the Song, in any dispute regarding any copyright to the Song, or in Mr. Wincor's three-year old analysis. The letter does not suggest that Summy and ASCAP were working on any common effort to protect the copyright or Summy's ownership claim, and there is no evidence in the record that they were.

Most importantly, Mrs. Sengstack's letter does not demonstrate that Summy shared any privilege in the communication with ASCAP or Mr. Korman, nor does it request that ASCAP or Mr. Korman should regard the letter as a privileged communication. Plainly, ASCAP – which knowingly produced the documents to Plaintiffs – did not regard the documents as privileged. That fact alone strongly refutes the conclusion that Mrs. Sengstack's letter was a privileged communication

As Magistrate Judge Wilner correctly determined, Summy waived the privilege when Mrs. Sengstack sent the Coudert Letters to Mr. Korman unless (i) she did so to obtain legal advice from Mr. Korman or (ii) Summy and ASCAP were engaged in a common legal effort in furtherance of anticipated litigation at the time. Addendum A at 4-5 of 9. Neither of those conditions was met. Summy expressly waived any privilege it may have had in the Coudert Letters when Mrs. Sengstack sent courtesy copies of them to Mr. Korman in 1979.

A.   **The Record Does Not Support Magistrate Judge Wilner's Finding That Mrs. Sengstack Write to Mr. Korman to Obtain Legal Advice**

Magistrate Judge Wilner correctly determined that the communication between Mrs. Sengstack and Mr. Korman would be privileged only if she wrote to him "for the purpose of seeking legal assistance." *Id.* at 4 of 9 (quoting *ASCAP,*

129 F. Supp. 2d 338). Apart from the mere fact that Summy was a member of ASCAP when Mrs. Sengstack sent the letters from Summy's own counsel to Mr. Korman as a courtesy, there is **nothing** in the record to support Magistrate Judge Wilner's conclusion that she sought ASCAP's legal advice.[2]   Certainly, Mrs. Sengstack's cordial letter does not request any legal advice from Mr. Korman, and it is extremely unlikely that she would have done so three years after Summy obtained a detailed analysis from its own counsel. As important, there was no response from Mr. Korman providing legal advice, or indeed any other response from him. As importantly, ASCAP did not regard the communication from Mrs. Sengstack to Mr. Korman as privileged. Had it believed that communication from Mrs. Sengstack was privileged, ASCAP would not have produced Mrs. Sengstack's 1979 letter or the Coudert Letters to Plaintiffs.   Rifkin Decl., Ex. I (81:1-6).

Magistrate Judge Wilner characterized the evidence as "rather thin on both sides of the courtroom."  Addendum A at 5 of 9.  Nonetheless, Magistrate Judge Wilner found that Mrs. Sengstack sent the Coudert Letters "for the purpose of obtaining legal advice." *Id.* at 7 of 9. Given that the attorney-client privilege is to be strictly construed, Defendants did not meet their substantial burden on the "rather thin" evidence before the Court.

---

[2]   "That a person is a lawyer does not, *ipso facto*, make all communications with that person privileged. The privilege applies **only when legal advice is sought** 'from a professional legal advisor in his capacity as such.'" *U.S. v. Huberts*, 637 F.2d 630, 640 (9th Cir. 1980) (citation omitted; emphasis added); *see also Georgia-Pacific LLC v. Officemax Inc.*, No. C 12-02797-WHO, 2014 U.S. Dist. LEXIS 89735, at *9-12 (N.D. Cal. June 30, 2014) (citing *Huberts*). Simply sending a document to a lawyer does not automatically confer privilege when the communication is not otherwise for the **purpose of obtaining legal advice**. *See Oracle Am., Inc. v. Google Inc.*, No. C 10-03561 WHA, 2011 U.S. Dist. LEXIS 121446 (N.D. Cal. Oct. 20, 2011), *writ of mandamus denied by* 462 Fed. App'x 975 (Fed. Cir. 2012).

- 12 -

1  In Magistrate Judge Wilner's view, "[p]roof that Summy owned a legitimate
2  copyright was fundamental to allowing the association to provide a fundamental
3  service – enforcing and patrolling its members' legal interest." *Id.* While that
4  might explain why Mrs. Sengstack sent a copy of the ***copyrights*** to Mr. Korman
5  (which were ***not*** enclosed with her letter), it does not explain why she sent the
6  Coudert Letters to Mr. Korman. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
7
8
9
10
11
12  Magistrate Judge Wilner based his finding that Summy was seeking legal
13  advice from ASCAP when Mrs. Sengstack wrote to Mr. Korman on mere
14  speculation: "*[i]f* ASCAP's general counsel acted as Summy's lawyer to obtain
15  material relevant to ***preparing future copyright infringement actions*** (even if such
16  actions didn't come to pass), then the client's action in conveying privileged
17  materials did not cause a waiver of the privilege." Addendum A at 7 of 9
18  (emphasis added). Nothing in the record suggested that Mr. Korman ever sought to
19  obtain information from Mrs. Sengstack to prepare any future copyright
20  infringement action. Indeed, the record overwhelmingly supports the opposition
21  conclusion: there was never going to be any future copyright infringement
22  litigation over the copyrights to *Happy Birthday* and Mr. Korman had not tried to
23  obtain information from Mrs. Sengstack to prepare for any.
24  To begin, as Plaintiffs informed Magistrate Judge Wilner at the hearing on
25  July 25, 2014, there was no copyright infringement litigation in the 44 years
26  between 1935, when the two *Happy Birthday* copyrights (Reg. Nos. E51988 and
27  E51990) were first registered, and 1979, when Mrs. Sengstack wrote to Mr.
28

- 13 -

1   Korman.  Rifkin Decl., Ex. J at (July 25, 2014 Tr. 34-35 & 38).  Defendants never
2   said otherwise. While that fact *alone* might not be sufficient to conclude there
3   *never* would be such litigation, three other facts make that conclusion unavoidable:

- ████████████████████████████████████████████████

- ████████████████████████████████████████████████

- In the 38 years since 1976, ████████████████████████ ██████, Summy and its successors have not brought a single action to enforce its copyright to Happy Birthday.

13  Plaintiffs' counsel placed those three additional facts on the record with the Joint
14  Stipulation and during the hearing before Magistrate Judge Wilner,  Rifkin Decl.,
15  Exs. C and D; Ex. J at 34-35 & 38, and Defendants never said otherwise.

16          One additional fact made it abundantly clear that when Mrs. Sengstack
17  wrote to Mr. Korman in 1979, there was *no chance* that ASCAP would be asked to
18  prepare an infringement action for Summy or its successors. Plaintiffs are aware of
19  five infringement lawsuits filed by anyone who claimed an ownership interest in
20  the Song. Jessica Hill, whose sister Mildred Hill wrote the melody to the song,
21  filed the first infringement action shortly *before* the *Happy Birthday* copyrights
22  were filed on December 6, 1935. Summy's predecessor filed the other four
23  infringements actions shortly *after* the *Happy Birthday* copyrights were filed. All
24  five lawsuits alleged that unauthorized uses of *Happy Birthday* infringed Summy's
25  copyright in a *different* song: the 1893 copyright to *Good Morning to All*. None of
26  the five infringement actions – one Broadway producers who allowed *Happy
27  Birthday* to be sung in a play, two against music publishers who published sheet

music and lyrics for *Happy Birthday*, and two against performers who sang *Happy Birthday* without permission – asserted any infringement claim under any copyright to *Happy Birthday*. Plaintiffs' counsel described all five actions on the record at the hearing on July 25, 2014.  Rifkin Decl., Ex. J (7/25/2014 Tr.) at 38-39.  Once again Defendants never said otherwise.

The only fact even possibly suggesting that "ASCAP's general counsel acted as Summy's lawyer to obtain material relevant to preparing future copyright infringement actions" is the letter that Mrs. Sengstack sent to Mr. Korman. As Magistrate Judge Wilner noted, there is no evidence of any communication between Summy and ASCAP pertaining to the *Happy Birthday* copyrights **before** Mrs. Sengstack wrote to Mr. Korman, nor is there evidence of any such communication between them **after** Mrs. Sengstack did so.  Addendum A at 6 of 9. And as Magistrate Judge Wilner noted, the letter itself "is silent as to the specific reason why" she wrote to Mr. Korman in 1979.  *Id.*  At best, her letter is equivocal as to its purpose. Magistrate Judge Wilner acknowledged there were "certain aspects of the Sengstack letter – its casual tone, the informal salutation ('Dear Bernie') and signature ('A'), and the lack of lawyerly statements preserving the sender's confidentiality or expressly stating the legal purpose for sending the materials to ASCAP – that certainly weigh **against** concluding that Summy's letter constituted a serious request for legal assistance." *Id.* (emphasis added).

In the proper context described above, however, it is far more likely that Mrs. Sengstack's letter was merely the continuation of a casual communication between friends or acquaintances than an official corporate communication either in response to a lawyer's request for support for an (improbable) future infringement action or one seeking more legal advice than it already had obtained. Nothing in Mrs. Sengstack's letter – the only evidence on the matter – suggests otherwise.

1    The overwhelming weight of all these facts make it absolutely clear that, in
2  light of the dubious ownership claim and ████████████████████████████,
3  there never had been a copyright infringement action under the *Happy Birthday*
4  copyright when Mrs. Sengstack wrote to Mr. Korman and there never would be
5  one. Magistrate Judge Wilner's speculation was not only unsubstantiated, it was
6  contradicted by the undisputed facts. For that reason, Magistrate Magistrate Judge
7  Wilner's decision that Mrs. Sengstack was seeking legal advice for Summy when
8  she wrote to Mr. Korman is clearly erroneous and should be withdrawn.

9    Finally, one of the cases cited by Magistrate Judge Wilner in his Order,
10 *ASCAP*, actually refutes his finding that Mrs. Sengstack's courtesy letter to Mr.
11 Korman was privileged. In *ASCAP*, a member who sought an advance on future
12 royalty payments claimed that his communications with ASCAP's attorneys were
13 privileged. Explaining that it "is the attorney for each of [its] members ***only where
14 a member has requested association-related legal advice***," ASCAP disputed the
15 member's privilege claim because he had not sought legal advice from it. *Id.* at 337
16 (emphasis added).[3] The district court identified a number of factors relevant to
17 whether an association's attorneys represent its members, including: (i) the nature
18 of the disclosure to the attorney; (ii) whether the attorney affirmatively assumed a
19 duty to represent the member; (iii) whether the member had independent
20 representation; (iv) whether the attorney represented the member before
21 representing the association; (v) whether the member relied upon the attorney to
22 represent it; and (vi) the reasonableness of the member's expectation. *Id.* at 338.

---

22 [3]    In one early case cited in *ASCAP*, *Westinghouse Elec. Co. v. Kerr-McGee
23 Corp.*, 580 F.2d 1311 (7th Cir. 1978), the Seventh Circuit found that an attorney-
24 client relationship existed not because the plaintiff was a member of a large
   national trade association, but rather because the association's outside counsel
25 "solicited the information" from the members "upon a representation that the firm
   was acting in the undivided interest of each company." Neither of those facts is
26 present here: Mr. Korman did not solicit Mrs. Sengstack's communication and he
27 never told her he was acting in Summy's undivided interest.

28

None of those factors indicates that Mr. Korman was Summy's attorney when Mrs. Sengstack wrote to him. Indeed, each factor strongly supports the opposite conclusion: that Mr. Korman was **not** Summy's lawyer and Mrs. Sengstack did **not** seek legal advice from him in 1979. *First*, on its face, ████████

████████████████████████████████████████████████████████████████

████████████████████████████████████. *Second*, Mr. Korman never undertook to represent Summy (or even respond to the courtesy copies of the Coudert Letters). *Third*, Summy had its own outside well-respected counsel, which conducted an in-depth analysis of the dubious copyright ownership claim. *Fourth*, there is no evidence that Mr. Korman represented Summy before joining ASCAP, or that Mr. Korman asked for information from Mrs. Sengstack to provide any legal advice or service of any kind to Summy. *Fifth*, Summy did not rely upon Mr. Korman to represent it over the copyright ownership dispute; it was adequately represented by Coudert Brothers. And *sixth*, even if Mrs. Sengstack subjectively expected Mr. Korman to represent Summy on the disputed copyright ownership issue, that expectation was unreasonable in light of the cordial and informal nature of communication, a fact borne out by ASCAP's deliberate decision to produce Mrs. Sengstack's letter and the Coudert Letters to Plaintiffs in this litigation.[4] Rifkin Decl., Ex. I (Reimer Dep. (7/22/14) at 84:5-25.

---

[4] ████████████████████████████████████████████████████████████

████████████████████████████████████████████████████ Defendants also concede they took no steps to assert any privilege for 30 days after ASCAP produced the documents on May 9, 2014. To this day, the Coudert Letters are **not** on Defendants' privilege log. If Mrs. Sengstack's letter to Mr. Korman was privileged, Defendants failed to act diligently to establish that privilege in 1979 or to assert it in 2014. Under Fed. R. Evid. 502(b), that waives any privilege Summy-Birchard or Defendants may have had. *See Mycone Dental Supply Co. v. Creative Nail Design Inc.*, No. C-12-00747-RS, 2013 U.S. Dist. LEXIS 126336, at *9-10 (N.D. Cal. Sept. 4, 2013) (privilege waived where party waits several weeks to seek return of attorney-client communications) (citations omitted); *Simmons v.*

1    In sum, Magistrate Judge Wilner's finding that Summy sent the Coudert

2 Letters to ASCAP for the purpose of obtaining legal advice is entirely unsupported

3 by the record, is clearly erroneous, and should be withdrawn.

4    **B.    Magistrate Judge Wilner Did Not Make The Necessary Finding
         That Mrs. Sengstack Wrote to Mr. Korman in Furtherance of a**

5    **Common Effort Regarding Any Anticipated Litigation**

6    "The common interest privilege, or joint defense privilege, is an extension of

7 the attorney client privilege." *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).

8 The common interest privilege allows "persons who share a common interest in

9 litigation [to] be able to communicate with their respective attorneys and with each

10 other to more effectively prosecute or defend their claims." *In re Grand Jury*

11 *Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).   Although the privilege is not

12 limited to situations in which litigation has commenced, there must at least be

13 some *common legal effort in furtherance of anticipated litigation* for the

14 privilege to apply.   *In re Grand Jury Subpoenas,* 902 F.2d at 249; *U.S. v.*

15 *Schwimmer*, 892 F.2d 237 244 (2nd Cir. 1989); *Gonzalez*, 669 F.3d at 980; *MGA*

16 *Entm't, LLC v. Nat'l Prods. LTD.*, No. CV-10-07083 JAK (SSx), 2012 U.S. Dist.

17 LEXIS 108408, at *15 (C.D. Cal. Aug. 2, 2012) (same); *Nidec Corp. v. Victor Co.*

18 *of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007) (same).

19    Even when a common legal interest is established, the doctrine only protects

20 communications made in furtherance of that shared legal interest. *See, e.g.*, *FSP*

21 *Stallion 1, LLC v. Luce*, No. 08-cv-01155-PMP-PAL, 2010 U.S. Dist. LEXIS

22 110617, at *59 ("the common legal interest exception requires that the

23 communication at issue be designed to further that legal effort." (citing *Nidec*

24 _____

25 *Morgan Stanley*, No. 11cv2889-WQH, 2013 U.S. Dist. LEXIS 32801, at *6 (S.D.
Cal. Mar. 8, 2013) (privilege waived where documents were not marked as

26 privileged and party claiming privilege waited three weeks after disclosure to

27 assert privilege).

28

*Corp. v. Victor Co.*, 249 F.R.D. at 579); *MGA Enmt't*, 2012 U.S. Dist. LEXIS 108408, at *15)).

This narrow extension of the attorney-client privilege was extremely well summarized in *In re Fresh & Process Potatoes Antitrust Litig.*, No. 10-md-02186-BLW-CWD, 2014 U.S. Dist. LEXIS 74936 (D. Idaho May 30, 2014) ("*Potatoes*"). Relying upon Ninth Circuit and Northern District of California precedent, the district court explained the common interest privilege in a thorough and well-reasoned decision:

> The common interest privilege, or joint defense privilege, is an extension of the attorney client privilege. *U.S. v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).  The privilege applies if "(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been waived." *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D.Cal. 2007).
>
> The rationale for the rule is to allow "persons who share a common interest in litigation [to] be able to communicate with their respective attorneys and with each other to more effectively prosecute or defend their claims." *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).  Although the privilege is not limited to situations in which litigation has commenced or is in progress, ***there must be some common legal effort in furtherance of anticipated litigation.***  *In re Grand Jury Subpoenas,* 902 F.2d at 249; *U.S. v. Schwimmer*, 892 F.2d 237 244 (2nd Cir. 1989); *Gonzalez*, 669 F.3d at 980; *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007).

But the doctrine does not extend the privilege to communications about a joint business strategy that happens to include a concern about litigation. *FSP Stallion 1, LLC v. Luce*, 201 WL 3895914 *18 (D. Nev. Sept. 30, 2010). In practice, the parties must demonstrate ***cooperation in formulating a common legal strategy***. *Id*. And, even if the parties do share a common legal interest, for the privilege to apply, the communication at issue must be designed to further that legal effort. *Id*. "The fact that the parties may have been developing a business deal that included a desire to avoid litigation 'does not transform their interest and enterprise into a legal, as opposed to a commercial matter.'" *Id*. (quoting *Bank of Am. v. Terra Nova Ins. Co., LLT*, 211 F.Supp.2d 493, 497 (S.D.N.Y. 2002)). *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).

*Id*. at *28-31 (emphasis added).

The common interest doctrine is very narrow. As Magistrate Judge Wilner correctly held, for the common interest doctrine to apply, there must be (i) a common legal effort; (ii) actual or anticipated litigation; and (iii) a communication in furtherance of that common legal effort. *See* Addendum A at 5 of 9 (quoting *Potatoes*, 2014 U.S. Dist. LEXIS 74936, at *30).

Although Magistrate Judge Wilner correctly stated the law, he did not make the necessary finding that Mrs. Sengstack's letter was part of a common legal effort in furtherance of either actual or anticipated litigation to apply the common interest doctrine. As discussed above, there was no litigation pending over the Song when Mrs. Sengstack wrote to Mr. Korman and, ██████████████████

██████████████████████████████████████

████████████, there most surely was ***no anticipated litigation*** either.

Therefore, Magistrate Judge Wilner did not make the necessary finding that

Mrs. Sengstack sent the Coudert Letters to Mr. Korman in furtherance of a common interest between Summy and ASCAP for the common interest doctrine to apply. For that reason, Magistrate Judge Wilner's decision was contrary to law and should be withdrawn.

Even if the Court were to conclude, unlike Magistrate Judge Wilner, that no actual or anticipated is a requirement for the common interest doctrine, the facts do not support Magistrate Judge Wilner's decision to apply the doctrine here. "The common-interest privilege saves an otherwise privileged communication from waiver only where the communication is shared with the third-party in order to further a matter of common *legal* interest. . . . It does not protect communications made in furtherance only of a common *business* interest." *Lenz v. Universal Music Corp.*, C 07-3783 JF (RS), 2009 U.S. Dist. LEXIS 105180, at *4 (N.D. Cal. Oct. 29, 2009) (citations omitted) (emphasis original).  As the district court explained in *Potatoes*, to show a common legal interest, "the parties must demonstrate *cooperation in formulating a common legal strategy*. . . . And, even if the parties do share a common legal interest, for the privilege to apply, the communication at issue must be designed to further that legal effort." *Potatoes*, 2014 U.S. Dist. LEXIS 74936 at *30 (internal citations omitted).

There are no facts in the record to support a finding that Mrs. Sengstack and Mr. Korman were cooperating in formulating a common legal strategy. Nor is there any evidence that she sent the Coudert Letters to Mr. Korman to further a joint legal effort. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Those facts make it far more likely that Summy and ASCAP were *not* working on any common legal strategy or joint legal effort when Mrs. Sengstack wrote to Mr.

1  Korman.

2    Even if Mrs. Sengstack wrote to ASCAP to protect **Summy's** intellectual
3  property, there is no support for the conclusion that ASCAP shared a common
4  legal interest in that intellectual property. To the contrary, if Summy-Birchard had
5  an intellectual property right in *Happy Birthday*, it was **not** shared with ASCAP.
6  ASCAP steadfastly has denied any interest in the Song or any copyright to the
7  Song. ASCAP repeatedly denied sharing any common interest with
8  Warner/Chappell in the Song or in any royalties derived from it. As Mr. Reimer
9  stated, "ASCAP does not have any ownership interest in any of the musical works
10  it licenses on behalf of its members" and it does not "have any interest in the fees
11  or royalties it collects on behalf of its members." Rifkin Decl., Ex. K (Reimer
12  Decl. at ¶ 5). These undisputed facts prove that ASCAP did not share any common
    legal interest with Summy in *Happy Birthday*.

13    Magistrate Judge Wilner misconstrued ASCAP's disclaimer. Magistrate
14  Judge Wilner apparently understood the disclaimer to mean only that ASCAP "did
15  not stand to benefit directly from a successful copyright infringement action."
16  Order, Dkt. 132 at 8 of 9. Magistrate Judge Wilner concluded that while ASCAP
17  disclaimer meant it had no commercial interest in *Happy Birthday*, it did not mean
18  that ASCAP had no legal interest in the Song. *Id.* But ASCAP's denial of **any**
19  interest in *Happy Birthday* was far broader than Magistrate Judge Wilner
20  understood. Certainly, ASCAP never claimed to share ownership of the Song or
21  the *Happy Birthday* copyright with Summy. Indeed, Defendants' conceded that
22  Summy **alone** claimed a copyright in the Song. Rifkin Decl., Ex. J (7/25/2014 T.)

23    In *In re Regents of the Univ. of Cal.*, 101 F.3d 1386, 1389-90 (Fed. Cir.
24  1996), a case both sides relied upon in their briefs before Magistrate Judge Wilner,
25  the University of California and Eli Lilly shared "a common legal interest in
26  gaining sound patent rights" to technology they developed together. Lilly's lawyers
27  also "advised and consulted frequently with UC counsel on matters relating to

28

1  UC's patents." *Id*. at 1390. Here, ASCAP did ***not*** work with Summy to compose
2  the Song or obtain any interest in it, and there is no evidence that Coudert Brothers
3  ever communicated with ASCAP about the *Happy Birthday* copyright (or even that
4  ASCAP knew Coudert was working for Summy until Mrs. Sengstack gratuitously
5  send courtesy copies of Mr. Wincor's letters to Mr. Korman ***three years later***).

6  Finally, the fact that ASCAP monitors for infringement and may pursue
7  litigation to enforce its blanket license[5] in no way creates a common legal interest
8  in any member's intellectual property, and certainly no shared interest in any
9  copyright to *Happy Birthday*. That argument was rejected in *Doors Music Co. v.*
10  *Meadowbrook Inn Corp.*, No. 90-134-D, 1990 U.S. Dist. LEXIS 13935, at *1
11  (D.N.H. July 20, 1990), in which the plaintiff alleged that the defendant allowed
12  public performances of copyrighted music after blanket license expired. The
13  defendant brought a third-party complaint against ASCAP, alleging that ASCAP
14  improperly failed to renew its blanket license. The district court granted ASCAP's
15  motion to dismiss the third-party complaint against it, finding that ***ASCAP had no***
16  ***interest in the infringement action that required its presence***. *Id*. at *5-6 (ASCAP
17  suffered no legal injury that would justify its participation in infringement action).
18  For that same reason, in *Ocasek v. Heggland*, 673 F. Supp. 1084, 1087 (D. Wyo.
19  1987), the district court held that ASCAP is neither a necessary nor even a proper
20  party to an infringement action.

21  Magistrate Judge Wilner misconstrued the opinions in *Doors Music* and
22  *Ocasek*. The district courts in those cases found that ASCAP was not a proper
23  party in an infringement action because it has no interest in any member's
24  copyrights. Since ASCAP has no interest in a member's copyright, it can have no
25  common legal interest in the copyright with the member. *Cf. Regents*, 101 F.3d at

[5]  Because ASCAP has no interest in any of the music owned by its members, any action that ASCAP brings is brought in the name of the individual members. Rifkin Decl., Ex. J at (71:16-23).

1389-90 (common legal interest between parties who developed patent together and consulted frequently with same counsel); *Hewlett-Packard Co. v. Baush & Lomb, Inc.*, 115 F.R.D. 308, 309-310 (N.D. Cal. 1987) (parties negotiating sale of business had common interest in patent because purchaser and seller "would end up defending the same patent in one lawsuit that plaintiff could be expected to bring" against both parties).

Defendants have not identified any legal interest that ASCAP has in either *Happy Birthday* or any copyright to the Song. ASCAP could not identify any interest it has in the Song or the copyright, either. In fact, ASCAP denies that it has any such interest.

For these additional reasons, Magistrate Judge Wilner's decision that Summy and ASCAP had a common legal interest in the copyright to *Happy Birthday* was clearly erroneous and should be withdrawn.

**V.   CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court withdraw Magistrate Judge Wilner's Order and overrule Defendants' claim of attorney-client privilege in the Coudert Letters.

Dated: August 11, 2014       **WOLF HALDENSTEIN ADLER**
**FREEMAN & HERZ LLP**

By:      */s/ Betsy C. Manifold*
         BETSY C. MANIFOLD

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

- 24 -

1

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
BETH A. LANDES (*pro hac vice*)
landes@whafh.com
GITI BAGHBAN (284037)
baghban@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES
 DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@nieves-law.com
KATHLYNN E. SMITH (234541)
smith@huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone: 626/440-5200
Facsimile: 626/796-0107

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26
WARNERCHAPPELL:21073.motion.review

27

28