GLENN D. POMERANTZ (State Bar No. 112503)
glenn.pomerantz@mto.com
KELLY M. KLAUS (State Bar No. 161091)
kelly.klaus@mto.com
MELINDA E. LeMOINE (State Bar No. 235670)
melinda.lemoine@mto.com
ADAM I. KAPLAN (State Bar No. 268182)
adam.kaplan@mto.com
MUNGER, TOLLES & OLSON LLP
355 South Grand Avenue
Thirty-Fifth Floor
Los Angeles, California 90071-1560
Telephone:  (213) 683-9100
Facsimile:   (213) 687-3702

Attorneys for Defendants
Warner/Chappell Music, Inc. and
Summy-Birchard, Inc.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| GOOD MORNING TO YOU PRODUCTIONS CORP.; *et al.*,<br><br>         Plaintiffs,<br><br>v.<br><br>WARNER/CHAPPELL MUSIC, INC., *et al.*,<br><br>         Defendants. | Lead Case No. CV 13-04460-GHK (MRWx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR REVIEW OF MAGISTRATE JUDGE WILNER'S ORDER RE: DISCOVERY MOTION DENYING PLAINTIFFS' MOTION TO OVERRULE DEFENDANTS' CLAIM OF ATTORNEY-CLIENT PRIVILEGE**<br><br>Date:              September 15, 2014<br>Time:             9:30 a.m.<br>Judge:            Hon. George H. King, Chief Judge<br>Courtroom:     650<br>Disc. Cutoff:   July 11, 2014<br>Pretrial Conf.:  N/A<br>Trial Date:      N/A<br>L/D File Jt. MSJ:  Nov. 14, 2014 |

1

**TABLE OF CONTENTS**

2

**Page**

3

I.   INTRODUCTION ............................................................................... 1

II.  SUMMARY OF ARGUMENT ......................................................... 4

III. STANDARD OF REVIEW ............................................................... 6

IV.  BACKGROUND AND APPLICABLE LAW.................................... 7

    A.   ASCAP Serves As The Licensing Agent For Its Members.................... 7

    B.   Relevant Legal Standards............................................................ 9

V.   ARGUMENT ................................................................................... 11

    A.   Magistrate Judge Wilner Correctly Found—And Certainly Did Not "Clearly Err" In Finding—That Sengstack Sent Korman The Coudert Memos In Order To Obtain Legal Advice ............................... 11

        1.   Sengstack's Letter To ASCAP's General Counsel .................... 12

        2.   The Relationship Between Summy And ASCAP And Core Logic Regarding Copyright Licensing And Enforcement ......... 13

    B.   Magistrate Judge Wilner *Did* Find That Sengstack Sent Korman The Coudert Memos In Furtherance Of A Common Legal Effort In Anticipation Of Future Litigation—And Certainly Did Not "Clearly Err" In Finding The Common Interest Doctrine Applicable ....................................................................................... 18

VI.  CONCLUSION ................................................................................ 24

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**FEDERAL CASES**

4

*Anderson v. Bessemer City, N.C.*,

5
470 U.S. 564 (1985) ................................................................. 6

6

*Ass'n of Apartment Owners of Imperial Plaza v. Fireman's Fund Ins. Co.*,

7
CIV. 11-00758 ACK, 2013 WL 2156469 (D. Haw. May 16, 2013) ....... 6, 13, 18

8

*Bank of Am. v. Terra Nova Ins. Co.*,

9
LLT, 211 F. Supp. 2d 493 (S.D.N.Y. 2002) ..................................... 20

10

*Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*,
441 U.S. 1 (1979) ................................................................. 1, 7

11

12

*Burdick v. Comm'r Internal Revenue Serv.*,
979 F.2d 1369 (9th Cir. 1992) .................................................. 6

13

14

*Columbia Broad. Sys., Inc. v. Am. Soc. of Composers, Authors & Publishers*,
562 F.2d 130 (2d Cir. 1977) ..................................................... 1

15

16

*Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers*,
400 F. Supp. 737 (S.D.N.Y. 1975) ........................................... 1, 7, 8

17

18

*Conant v. McCoffey*,
C 97-0139 FMS, 1998 WL 164946 (N.D. Cal. Mar. 16, 1998) ........................ 6

19

20

*Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*,
297 F.R.D. 495 (W.D. Okla. 2014) ........................................... 4

21

*Doors Music Co. v. Meadowbrook Inn Corp.*,
No. Civ. 89-l34-D, 1990 WL 180286 (D.N.H. July 27, 1990) ..................... 23

22

23

*Hunt v. National Broadcasting Co.*,
872 F.2d 289 (9th Cir. 1989) ................................................... 6

24

25

*Hunydee v. United States*,
355 F.2d 183 (9th Cir. 1965) .................................................. 10

26

*In re Fresh & Process Potatoes Antitrust Litig.*,
27
No. 4:10-md-02186-BLW-CWD, 2014 WL 2435581 (D. Idaho May 30, 2014) ................................................. 18, 19, 20, 22

28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

*In re Mortg. & Realty Trust*,

4

212 B.R. 649 (Bankr. C.D. Cal. 1997) ................................................................ 10

5

*In re Pandora Media, Inc.*,

Nos. 12 Civ. 8035(DLC), 41 Civ. 1395(DLC), 2014 WL 1088101

6

(S.D.N.Y. Mar. 18, 2014) ............................................................................... 7, 8

7

*In re Regents of Univ. of Cal.*,

8

101 F.3d 1386 (Fed. Cir. 1996) ................................................................... 10, 18

9

*Love v. Permanente Med. Grp.*,

10

No. C-12-05679 DMR, 2014 WL 644948 (N.D. Cal. Feb. 19, 2014) .......... 9, 10

11

*Major League Baseball Props., Inc. v. Salvino, Inc.*,

12

No. 00 CIV.2855 JCF, 2003 WL 21983801 (S.D.N.Y. Aug. 20, 2003) ...... 21, 22

13

*Nidec Corp. v. Victor Co. of Japan*,

14

249 F.R.D. 575 (N.D. Cal. 2007) ...................................................................... 20

15

*Ocasek v. Hegglund*,

673 F. Supp. 1084 (D. Wyo. 1987) .................................................................... 23

16

*Schwartz v. Broad. Music, Inc.*,

17

180 F. Supp. 322 (S.D.N.Y. 1959) ...................................................................... 8

18

*Schwartz v. Broad. Music, Inc.*,

19

16 F.R.D. 31 (S.D.N.Y. 1954) ...................................................................... 9, 15

20

*United States v. Am. Soc'y of Composers, Authors & Publishers*,

21

129 F. Supp. 2d 327 (S.D.N.Y. 2001) .................................................. 9, 15, 16, 17

22

*United States v. BDO Seidman, LLP*,

23

492 F.3d 806 (7th Cir. 2007) ...................................................................... 10, 18

24

*United States v. Gonzalez*,

25

669 F.3d 974 (9th Cir. 2012) ...................................................................... 10, 18

26

*United States v. Hinkson*,

27

585 F.3d 1247 (9th Cir. 2009) ............................................................... 6, 13, 18

28

*United States v. U.S. Gypsum Co.*,

333 U.S. 364 (1948) .............................................................................................. 6

# TABLE OF AUTHORITIES

**Page(s)**

*United States v. Zolin,*
    809 F.2d 1411 (9th Cir. 1987) ..................................................................... 10, 18

**FEDERAL STATUTES**

28 U.S.C. § 636(b)(1)(A) ............................................................................. 6

**FEDERAL RULES**

Fed. R. Civ. P. 14 ......................................................................................... 23

Fed. R. Civ. P. 26(b)(5)(B) ........................................................................... 4

Fed. R. Civ. P. 72(a) ..................................................................................... 6

## I.   <u>INTRODUCTION</u>

The sole question before this Court is whether Magistrate Judge Wilner clearly erred in upholding the attorney-client privilege over two legal memoranda that Summy-Birchard Music ("Summy") shared with the General Counsel of Summy's licensing agent, the American Society of Composers, Authors and Publishers ("ASCAP").  On the voluminous and undisputed factual record, the answer is plainly no.

The relevant facts are straightforward and not in dispute.  In 1976 and 1978, Summy obtained legal memoranda from its outside counsel, Coudert Brothers, analyzing Summy's copyright in *Happy Birthday to You* (the "Coudert Memos" or "Memos").[1]  Declaration of Mark C. Rifkin ("Rifkin Decl.") Exs. C-D.  In 1979, Summy's Vice President, Arlene Sengstack, sent the Memos to ASCAP's General Counsel, Bernie Korman.  *Id*. at Ex. E.  As Summy's licensing agent, ASCAP licensed the public performance rights in songs registered with ASCAP, such as *Happy Birthday to You*, and "detect[ed] unlicensed uses, institute[d] infringement actions, collect[ed] revenues from licensees, and distribut[ed] royalties" with respect to works owned by its members, including Summy.  *Columbia Broad. Sys., Inc. v. Am. Soc'y of Composers*, 400 F. Supp. 737, 741-42 (S.D.N.Y. 1975) ("*Columbia I*");[2] Declaration of Kelly M. Klaus ("Klaus Decl.") Ex. C (Summy's 1976 membership agreement with ASCAP).[3]

In May 2014, ASCAP inadvertently produced the Memos in this litigation in response to a third-party subpoena from Plaintiffs—without Warner/Chappell's

---

[1] Summy is the predecessor of Defendants Warner/Chappell Music, Inc. and Summy Birchard, Inc. (jointly, "Warner/Chappell").

[2] *Columbia I* was reversed on other grounds by *Columbia Broad. Sys., Inc. v. Am. Soc. of Composers, Authors & Publishers*, 562 F.2d 130 (2d Cir. 1977), which was reversed on other grounds by *Broad. Music, Inc. v. Columbia Broad. Sys., Inc.*, 441 U.S. 1 (1979) ("*Columbia II*").

[3] Warner/Chappell has concurrently filed an application to file Exhibits B and C to the Klaus declaration under seal.  All of the exhibits referenced in this opposition were part of the record before Magistrate Judge Wilner.

knowledge or authorization.  Warner/Chappell identified the Memos as privileged immediately after learning of their production.  Klaus Decl. ¶¶ 2-5; Rifkin Decl. Ex. H.  After taking discovery to support their privilege challenge, Plaintiffs moved to overrule Warner/Chappell's claim of privilege.  Dkt. Nos. 124, 135.  Plaintiffs did not dispute that the Coudert Memos were privileged when Coudert Brothers provided them to Summy in the 1970s.  Rifkin Decl. Ex. J (transcript of July 25, 2014 hearing, "Hr'g Tr.") 9:14-25.  Nor did Plaintiffs contend that ASCAP waived Warner/Chappell's privilege by producing the Memos in 2014.  *Id*. at 28:9-12. Instead, Plaintiffs argued that Summy waived its privilege over the Memos when it sent them to ASCAP's General Counsel in 1979.  Dkt. No. 135 at 22-23.

The parties presented considerable evidence detailing the nature of Summy's relationship with ASCAP.  The core facts of the Summy/ASCAP relationship were largely undisputed.  But the parties did dispute the core factual issue underlying Plaintiffs' claim of waiver:  why did Summy share the document analyzing the validity and scope of the *Happy Birthday To You* copyright with ASCAP's General Counsel in 1979?  Warner/Chappell argued that, by a preponderance of the evidence—including the face of the document, Summy and ASCAP's contractual relationship, the fact that Summy sent the document to ASCAP's General Counsel, and ASCAP's role in enforcing Summy's performance rights—it was much more probable than not that Summy shared the privileged memoranda for reasons consistent with Summy and ASCAP's relationship:  to obtain legal advice from the ASCAP General Counsel himself, and/or in furtherance of the parties' obvious common legal interest in enforcing a valid copyright.  Plaintiffs instead argued that Summy's Vice President shared the memoranda with its licensing agent's General Counsel "gratuitously," or as a continuation of some happenstance encounter at a cocktail party.  Hr'g Tr. 49:3-51:11.

After careful consideration of evidence marshalled by the parties—and after multiple telephonic conferences and a nearly 1.5 hour hearing—Magistrate Judge

1   Wilner resolved the factual dispute and denied Plaintiffs' motion in a thorough,

2   well-reasoned and amply-supported nine-page order.  Dkt. No 132 ("Order").  The

3   Magistrate Judge weighed the evidence and found that the Coudert Memos

4   remained protected on two independent grounds.  First, Magistrate Judge Wilner

5   ruled that the Memos remained protected because Sengstack provided them to

6   ASCAP's General Counsel for the purpose of obtaining legal advice.  Order at 7.

7   Second, Magistrate Judge Wilner held that even if the Coudert Memos were not

8   protected by an attorney-client relationship between Summy and ASCAP's General

9   Counsel, Summy sent ASCAP the Memos in furtherance of a common legal interest

10  in asserting Summy's copyrights, which precluded a finding of waiver.  *Id*. at 7-8.[4]

11      In order to undo Magistrate Judge Wilner's well-reasoned holding, Plaintiffs

12  must demonstrate that his factual resolution of this issue amounts to clear error.  In

13  other words, Plaintiffs must show that the *only* logical or plausible conclusion one

14  can draw from the record is the version Plaintiffs proffer:  Summy's Vice President

15  sent the Coudert Memos to ASCAP's General Counsel "gratuitously," or simply to

16  continue a "casual communication between friends or acquaintances."  The factual

17  record and Magistrate Judge Wilner's astute analysis of it demonstrates that

18  Plaintiffs are wrong.  Magistrate Judge Wilner's decision need only be *logical* and

19  *plausible* to defeat Plaintiffs' Motion—but it is far beyond that.  The Magistrate

20  Judge carefully considered the parties' voluminous submissions:  a lengthy joint

21  stipulation, supplemental briefs, declarations, deposition transcripts and various

22  other exhibits.  Dkt. Nos. 124-30, 135-40.[5]  He applied the correct legal principles.

23  _____

24  [4] Magistrate Judge Wilner was particularly familiar with the common interest
    doctrine and the relationship between Summy and ASCAP because a month earlier
25  Plaintiffs had filed a separate motion involving these same issues.  *See* Dkt. No.
    101-1 at 33-34, 50-51.  Plaintiffs withdrew that motion after Magistrate Judge
26  Wilner reviewed it and held a preliminary telephonic hearing.  Dkt. Nos. 105, 115.

27  [5] *See also* Hearing Tr. 7:11 ("I spent a lot of time with [the parties' papers]"), 25:23-
    24 ("That's tentatively where I am based on a very thorough review of some very
28  good papers from both sides."), 42:13-14 ("I read everything.").

And he reached an entirely correct decision based on inferences that were fairly drawn from the factual record.  Plaintiffs' arguments made here all were soundly and correctly rejected in the Order, and Plaintiffs offer no reason to disturb it.

## II.   **SUMMARY OF ARGUMENT**

Throughout their Motion Plaintiffs discuss matters that have absolutely no bearing on whether Summy's 1979 correspondence with ASCAP constituted a waiver of the privilege.  Plaintiffs spend four pages of the background section "educating" the Court on their view of the copyright issues and outlining Warner/Chappell's supposed discovery failings.  Not only are these characterizations and allegations wrong, but they have no place in the Motion, which raises the narrow question of whether the Magistrate Judge committed clear error in upholding Warner/Chappell's privilege.[6]  As to that question, Plaintiffs challenge Magistrate Judge Wilner's ruling on two grounds.

First, Plaintiffs argue that Magistrate Judge Wilner committed clear error in "find[ing] sufficient evidence to support Warner's argument that Summy gave the Coudert Materials to ASCAP's lawyer for the purpose of obtaining legal advice." Order at 7; Mot. at 11-18.  Plaintiffs do not come close to showing clear error. Plaintiffs spuriously contend that Magistrate Judge Wilner's factual finding was based on "mere speculation," ignoring the extensive evidence on which he relied and rehashing arguments that he rejected with good reason.  Mot. at 13.  Plaintiffs focus on a myopic reading of Sengstack's 1979 letter and their illogical theory that Sengstack sent this letter, which transmitted legal memoranda from her company's outside law firm, simply to continue a "casual communication between friends or acquaintances."  *Id*. at 15.  Plaintiffs presented no evidence that this communication resulted from some chance encounter on the street, the scenario they envisioned at

---

[6] Plaintiffs also improperly rely on the content of the Coudert Memos to support their waiver arguments in a transparent attempt to prejudice the Court.  *See* Fed. R. Civ. P. 26(b)(5)(B) advisory committee notes (2006 amend.); *Cudd Pressure Control, Inc. v. New Hampshire Ins. Co.*, 297 F.R.D. 495, 499 (W.D. Okla. 2014).

1  the hearing.  If anything is "mere speculation," it is Plaintiffs' theory that Summy
2  sent these legal memoranda to the General Counsel of the licensing agent charged
3  with enforcing its copyrights for some non-legal "gratuitous" reason.  As described
4  below, Magistrate Judge Wilner relied both on aspects of the letter indicating it was
5  *not* sent "gratuitously" and on "the relationship between the parties" and "core logic
6  regarding management of copyright issues"—all three support his decision.  Order
7  at 7.

8         Second, Plaintiffs contend that Magistrate Judge Wilner neglected to make a
9  factual finding necessary to support his conclusion that the 1979 correspondence
10  was protected by the "common interest doctrine":  namely, that Sengstack sent the
11  Coudert Memos to ASCAP's General Counsel "in furtherance of a common effort
12  regarding any anticipated litigation."  Mot. at 18-24.  But Plaintiffs misstate the
13  applicable law.  And, in any event, Plaintiffs again simply ignore Magistrate Judge
14  Wilner's findings and ask this Court to substitute its judgment for that of the
15  Magistrate Judge.  Contrary to Plaintiffs' contention, the Magistrate Judge indeed
16  found that Summy and ASCAP shared a common legal interest, which was
17  "adequate to protect[] privileged communications *in advance of future conceivable*
18  *litigation*."  Order at 8 (emphasis added).  Magistrate Judge Wilner also explained in
19  the hearing on this matter that "it is fair to conclude that the point [of Summy's
20  sending the Coudert Memos to ASCAP] was because down the road ASCAP might
21  be litigating those copyrights – licensing or litigating those copyrights on behalf of
22  Summy" and, accordingly, "there [was] a need to formulate a common legal
23  strategy."  Hr'g Tr. 21:20-22:1; *id*. at 22:17-18.[7]

24        In these circumstances, Plaintiffs cannot show that Magistrate Judge Wilner's
25  rulings were "clearly erroneous or contrary to law."  Indeed, *both* rulings must be set

---

[7] At the end of the hearing on Plaintiffs' motion Magistrate Judge Wilner stated that
if he were to deny the motion, his findings and reasoning would be based on his
statements during the hearing as well as in the written order.  Hearing Tr. 62:13-18.

1   aside in order for Warner/Chappell's privilege claim to be overruled—and Plaintiffs

2   cannot meet the appropriate standard as to *either* of them.  The Court should deny

3   Plaintiffs' Motion in its entirety and leave the Magistrate Judge's ruling intact.

## III.   <u>STANDARD OF REVIEW</u>

5          A district court may set aside a magistrate judge's order regarding a

6   nondispositive, pretrial matter such as the one at issue only if the ruling is "clearly

7   erroneous or contrary to law."  28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  A

8   magistrate judge's factual findings are "clearly erroneous" only if the reviewing

9   court is left with a "definite and firm conviction that a mistake has been committed."

10  *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also Burdick v.*

11  *Comm'r Internal Revenue Serv.*, 979 F.2d 1369, 1370 (9th Cir. 1992) (citation

12  omitted).  Under this highly deferential standard, a district judge may not substitute

13  his or her judgment for that of the magistrate, but instead "determin[es] whether the

14  [magistrate judge] reached a decision that falls within any of the permissible choices

15  the [magistrate judge] could have made."  *United States v. Hinkson*, 585 F.3d 1247,

16  1260-61 (9th Cir. 2009) (en banc); *Ass'n of Apartment Owners of Imperial Plaza v.*

17  *Fireman's Fund Ins. Co.*, CIV. 11-00758 ACK, 2013 WL 2156469, at *2 (D. Haw.

18  May 16, 2013).  The clear error standard is met as long as the magistrate's factual

19  findings are not "illogical or implausible" and have "support in inferences that may

20  be drawn from the facts in the record."  *Hinkson*, 585 F.3d at 1261 (quoting

21  *Anderson v. Bessemer City, N.C.*, 470 U.S. 564, 577 (1985)).  A magistrate judge's

22  legal conclusions are "contrary to law" if the magistrate applied an incorrect legal

23  standard or failed to consider an element of the applicable standard.  *Conant v.*

24  *McCoffey*, C 97-0139 FMS, 1998 WL 164946, at *2 (N.D. Cal. Mar. 16, 1998)

25  (citing *Hunt v. National Broadcasting Co.*, 872 F.2d 289, 292 (9th Cir. 1989)).

26

27

28

IV.   **BACKGROUND AND APPLICABLE LAW**

    A.   **ASCAP Serves As The Licensing Agent For Its Members**

In the 1970s as today, copyright owners rely on ASCAP to enforce their exclusive rights granted by the Copyright Act in the public performance of music. As the United States Supreme Court explained the year the Coudert Memos were sent to ASCAP, the public performance right "is not self-enforcing." *Columbia II*, 441 U.S. at 4. Rather, publishers like Summy, and Warner/Chappell today, rely on ASCAP to license their rights of public performance and enforce their copyrights against unlicensed users. Klaus Decl. Ex. A ("Blietz Dep.") 163:13-22. Because it holds a repertory of music rights granted by a number of writers and publishers, ASCAP can grant a broader license than any single publisher can on its own. Thus, ASCAP eliminates music users' need to contact numerous copyright owners in favor of obtaining one so-called "blanket license" for all of ASCAP's repertoire. Scores of music users—like television networks, concert halls, restaurants, bars, and radio stations—obtain such blanket licenses from ASCAP. ASCAP's blanket licenses, in the 1970s and today, "provide[] comprehensive protection against infringement, that is, access to a large pool of music without the need for the thousands of individual licenses which otherwise would be necessary to perform the copyrighted music used in radio stations and television networks in the course of a year." *Columbia I*, 400 F. Supp. at 741-42. Further, both in the 1970s and today, "ASCAP provides its members with a wide range of services. It maintains a surveillance system of radio and television broadcasts to detect unlicensed uses, institutes infringement actions, collects revenues from licensees and distributes royalties to copyright owners." *Id*.; *see also Columbia II*, 441 U.S. at 18 n.28 (in addition to issuing licenses, ASCAP's activities include "policing the market and suing infringers"); Klaus Decl. Ex. E ("Reimer Dep.") 67:12-69:1, 72:7-11.

ASCAP is "owned and run" by its members—the songwriters, composers and music publishers who own the copyrights that ASCAP licenses on the members'

1  behalf.  ASCAP Home Page, http://www.ascap.com/about/ (last visited Aug. 25,

2  2014); *see also In re Pandora Media, Inc.*, Nos. 12 Civ. 8035(DLC), 41 Civ.

3  1395(DLC), 2014 WL 1088101, at *2 (S.D.N.Y. Mar. 18, 2014); Blietz Dep. 157:8-

4  10.  Although new technologies have emerged since the 1970s, ASCAP performs

5  similar functions and provides similar services to its members today as it did in the

6  1970s.  Those similarities are clear when comparing case law from the late 1970s

7  describing ASCAP to cases describing ASCAP today.  *Compare Columbia I*, 400 F.

8  Supp. at 741-42, *with Pandora Media*, 2014 WL 1088101, at *2-3.

9         As Warner/Chappell's licensing agent, ASCAP licenses the public

10 performance rights to songs registered with ASCAP on Warner/Chappell's behalf.

11 Blietz Dep. 161:24-162:2, 169:6-17; Klaus Decl. Ex. B, ¶¶ 1, 3-6 (WB Music

12 Corp.'s membership agreement with ASCAP).  In particular, ASCAP is

13 Warner/Chappell's *exclusive* agent for licensing the performance rights belonging to

14 creators who are also ASCAP members.  Blietz Dep. 45:14-24, 162:11-163:1; Klaus

15 Decl. Ex. B, ¶¶ 1, 3-6.[8]  ASCAP likewise served as Summy's licensing agent, and

16 its relationship with Summy was governed by a membership agreement nearly

17 identical to Warner/Chappell's current agreement with ASCAP.  Klaus Decl. Ex. C,

18 ¶¶ 1, 3-6  (Summy's 1976 membership agreement with ASCAP).

19        Summy's membership agreement grants ASCAP "the right to enforce and

20 protect such rights of public performance under any and all copyrights" and appoints

21 ASCAP as Summy's "true and lawful attorney ... to do all acts, take all proceedings"

22 and perform various other acts "necessary, proper or expedient to restrain

23 infringements and recover damages."  Klaus Decl. Ex. C, ¶¶ 4-5; *see also* Klaus

24 Decl. Ex. B, ¶¶ 4-5 (WB Music Corp.'s membership agreement).  Accordingly,

---

[8] Formally, ASCAP's services are non-exclusive because, pursuant to the consent
decree under which ASCAP operates, the copyright owners technically retain the
right to license directly with users. *Columbia I*, 400 F. Supp. at 744 & n.4.  In
practice, however, "[t]he nonexclusive right allegedly retained by [ASCAP's
members] is more apparent than real."  *Schwartz v. Broad. Music, Inc.*, 180 F. Supp.
322, 332-33 (S.D.N.Y. 1959).

1    ASCAP pursues litigation on its members' behalf for the unlicensed use of the

2    members' copyrighted works.  Blietz Dep. 159:12-22, 163:2- 6, 165:15-168:10;

3    Reimer Dep. 68:20-23, 72:7-10.  ASCAP and its members, like Warner/Chappell

4    and Summy, share common interests because the members are "part owners of the

5    organization" and ASCAP is "representing writers and publishers to protect …

6    intellectual property rights to ensure that in cases where they're used they're being

7    licensed."  Blietz Dep. 163:13-20; *see also id.* at 158:7-19, 168:21-169:5;  Klaus

8    Decl. Ex. C, ¶¶ 1, 3-6 (Summy's membership agreement), Ex. D, Art. I, Sec. 1(a)-

9    (g), (k)-(l), Art. III, Sec. 5 (ASCAP's Articles of Association).

10          **B.     Relevant Legal Standards**

11          "The attorney-client privilege protects from discovery 'confidential

12   communications between attorneys and clients, which are made for the purpose of

13   giving legal advice.'"  *Love v. Permanente Med. Grp.*, No. C-12-05679 DMR, 2014

14   WL 644948, at *2 (N.D. Cal. Feb. 19, 2014) (citation omitted).  As Magistrate

15   Judge Wilner emphasized in upholding Warner/Chappell's privilege claim, the

16   privilege is narrowly construed and it is the burden of the party asserting privilege to

17   establish that the privilege exists.  *Id.*; Hr'g Tr. 13:6-18.

18          In *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31 (S.D.N.Y. 1954), the

19   court that oversees ASCAP's consent decree held that where a member of ASCAP

20   seeks the legal advice of ASCAP's general counsel in confidence, the member

21   properly invokes the attorney-client privilege.  *Id.* at 32-33.  Although "[t]he mere

22   status of being a member of an unincorporated association no longer makes one a

23   client of the association's attorneys"—as it did in 1979, when Summy sent the

24   Coudert Memos to ASCAP—the privilege applies where the member contacts

25   ASCAP's counsel "for the purposes of seeking legal assistance."  *United States v.*

26   *Am. Soc'y of Composers, Authors & Publishers*, 129 F. Supp. 2d 327, 337-38

27   (S.D.N.Y. 2001) ("*ASCAP*"); *see also id*. at 337 ("ASCAP's general counsel is the

28   attorney for each of ASCAP's members for purposes of invoking the attorney-client

privilege against a third party, where a member has requested association-related legal advice" (citation omitted)).  Citing this precedent, Magistrate Judge Wilner held that the Coudert Memos were privileged because Summy provided them to ASCAP's General Counsel for the purpose of obtaining legal advice.  Order at 7.

As a separate and independent ground for upholding Warner/Chappell's privilege, Magistrate Judge Wilner held that the common interest doctrine applied to Summy's transmittal of the Coudert Memos to ASCAP, precluding a finding of waiver.  *Id.* at 7-8.  "The 'common interest' rule protects communications made when a nonparty sharing the client's interests is present at a confidential communication between attorney and client."  *United States v. Zolin*, 809 F.2d 1411, 1417 (9th Cir. 1987), *overruled on other grounds by United States v. Jose*, 131 F.3d 1325 (9th Cir. 1997).  This rule operates as an exception to the general rule that disclosing privileged communications outside the privileged relationship waives that privilege, and it applies where "the parties sharing the communication are engaged in a discussion of common interest."  *In re Mortg. & Realty Trust*, 212 B.R. 649, 652 (Bankr. C.D. Cal. 1997).  "[A] party claiming the common interest privilege bears the burden of showing '(1) the communication is made by separate parties in the course of a matter of common [legal] interest; (2) the communication is designed to further that effort; and (3) the privilege has not been [otherwise] waived.'"  *Love*, 2014 WL 644948, at *2 (citation omitted).

The common interest doctrine is not limited to "situations in which litigation has commenced."  *United States v. Gonzalez*, 669 F.3d 974, 978 (9th Cir. 2012).  "[L]itigation need not be actual or imminent for communications to be within the common interest doctrine."  *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007).  "It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation."  *In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996).  Finally, "[t]he common interest privilege does not require a complete unity of interests among the

1  participants.  The privilege applies where the interests of the parties are not

2  identical, and it applies even where the parties' interests are adverse in substantial

3  respects." *In re Mortgage*, 212 B.R. at 653 (citing *Hunydee v. United States*, 355

4  F.2d 183, 185 (9th Cir. 1965)).

5  **V.    ARGUMENT**

6      **A.    Magistrate Judge Wilner Correctly Found—And Certainly Did
7         Not "Clearly Err" In Finding—That Sengstack Sent Korman The
       Coudert Memos In Order To Obtain Legal Advice**

8      Plaintiffs claim that "there is nothing in the record to Support Magistrate

9  Judge Wilner's conclusion" that Sengstack sent ASCAP's General Counsel the

10  Coudert Memos to obtain legal advice "[a]part from the mere fact that Summy was a

11  member of ASCAP" at the time.  Mot. at 12.  Plaintiffs note that Sengstack's 1979

12  transmittal letter does not explicitly request legal advice, and then hypothesize that it

13  would be "extremely unlikely" for Sengstack to have requested advice from

14  ASCAP's General Counsel because Summy had already obtained a detailed analysis

15  from its own counsel and there is no evidence that ASCAP responded to Summy's

16  communication.  *Id.*  Plaintiffs also surmise that ASCAP did not believe that

17  communication to be privileged because it produced the Coudert Memos 35 years

18  later, in this litigation.  *Id.*

19      The Magistrate Judge considered these arguments and properly found them

20  unpersuasive based on the record.  At the outset, Magistrate Judge Wilner

21  recognized that "the backdrop of the Sengstack letter is of undeniable importance"

22  to the privilege determination because the transmittal letter is short and was written

23  many years ago by a non-lawyer officer of Warner/Chappell's predecessor.  Order at

24  5.  As described below, Magistrate Judge Wilner ultimately supported his finding

25  that Summy provided the Coudert Memos to ASCAP's counsel to obtain legal

26  advice on "[t]he text of the transmittal letter" as well as "the relationship between

27  the parties" and "core logic regarding management of copyright issues."  *Id.* at 7.

28  Contrary to Plaintiffs' suggestion, Magistrate Judge Wilner's finding is amply

1  supported by the record.  Plaintiffs cannot show clear error simply by pointing to

2  other evidence that they believe supports a different outcome—let alone when the

3  evidence does not, in fact, support their position.

### 1.   Sengstack's Letter To ASCAP's General Counsel

5  Magistrate Judge Wilner "readily acknowledge[d] that there are aspects of the

6  Sengstack letter … that certainly weigh against concluding that Summy's letter

7  constituted a serious request for legal assistance" *Id*. at 6.  The Magistrate Judge

8  also recognized that "the apparent lack of correspondence before or after the

9  Sengstack letter regarding copyright validity issues" militates against a finding that

10  Sengstack sent the Coudert Memos to ASCAP in order to obtain legal advice.  *Id*.

11  But Magistrate Judge Wilner was "persuaded by other circumstantial components

12  and clues in the letter that there was no 'gratuitous' disclosure of this information as

13  Plaintiff asserts."  *Id*. at 7.  As he explained in the Order:

> The Sengstack letter was typed by a secretary (referenced by the notation "AMS:njr") on corporate stationery, was sent the general counsel of a major national organization at his office, and indicates Ms. Sengstack's business title.  The letter expressly referenced a previous discussion on the topic of Summy's copyright claim to "Happy Birthday," which establishes that there had been an ongoing discussion between the parties on the issue.  Ms. Sengstack clearly understood that she was conveying information received from her lawyer regarding the copyright question—the letter identifies the lawyer and his analysis of the "claim" directly.  These observations strongly suggest that the parties were dealing with a serious issue of interest to the corporation.
>
> Moreover, the Coudert material itself constituted thoughtful, high-level, and presumably costly legal advice regarding Summy's valuable intellectual property.  Summy's vice president (who apparently was married to the company's president) personally sent the information to the top lawyer at a major rights agency regarding a significant and widely-known song.  Given the Court's understanding that the validity of the "Happy Birthday" rights may have been of "bet the company" value to Summy, proof that the Coudert advice was sent to the legal chief at ASCAP is inconsistent with Plaintiffs' suggestion that it was the continuation of, say, a cocktail party discussion about the song's history.

26  *Id*.; *see also* Rifkin Decl. Exs. C-E (Sengstack's correspondence with ASCAP).

27  Plaintiffs repeatedly argued to Magistrate Judge Wilner that Sengstack wrote

28  to ASCAP "gratuitously."  Here, they similarly opine that it is "far more likely" that

1   Sengstack was merely continuing a "casual communication between friends or

2   acquaintances" than seeking legal advice from ASCAP's General Counsel.  Mot. at

3   15.  As Magistrate Judge Wilner pointed out, however, Plaintiffs' theory is just

4   speculation (Hr'g Tr. 50:15-19) and is not substantiated by the record:

5      [W]hen you folks said on the Plaintiff's side that Ms. Sengstack –
       Sengstack gratuitously turned over this material to ASCAP,
6      gratuitously, implying no purpose, implying that it was sort of a
       random event, implying that there was no – no merit or no legal
7      significance to this, I just respectfully wasn't convinced.

8      I think the fact that a publishing house that had gone out to what at the
       time was, you know, one of America's premier law firms to get some
9      pretty detailed analysis of the existence and status of its copyright
       claim, and then provided that to not a functionary at ASCAP, not some
10     low-level executive or office manager or anything, but the General
       Counsel of America's biggest … a major licensing firm, that felt like it
11     wasn't gratuitous.  That felt like there was a real issue on which one or
       both parties needed guidance, and this communication seemed to have
12     been done with the intention of advancing a common legal strategy,
       exploitation of this right, and being done at quite a high level.

13

14   Hr'g Tr. 23:9-24:3.  Importantly, the fact that Plaintiffs would weigh the evidence

15   differently—or even that this Court might weigh the evidence differently—is not a

16   proper ground for setting aside as "clearly erroneous" the Magistrate Judge's

17   conclusion that Sengstack wrote to ASCAP's General Counsel to obtain legal

18   advice.  *Hinkson*, 585 F.3d at 1260-61 (in determining whether a factual finding is

19   clearly erroneous, a district judge may not substitute his or her judgment for that of

20   the magistrate); *see also Fireman's Fund*, 2013 WL 2156469 at *2.

21          **2.    The Relationship Between Summy And ASCAP And Core
                    Logic Regarding Copyright Licensing And Enforcement**
22

23          Magistrate Judge Wilner also considered the relationship between Summy

24   and ASCAP and the ways that ASCAP enforces its members' copyright interests in

25   finding that Summy sought legal advice from ASCAP's General Counsel:

26     At the time that Summy gave the Coudert materials to ASCAP's
       lawyer via the Sengstack letter, ASCAP was responsible for licensing
27     and collecting royalties for Summy regarding its copyrighted musical
       works.  The parties acknowledge that "Happy Birthday" was one of the
28     works within the ambit of ASCAP's registration.  As a result, ASCAP

MEM. OF POINTS AND AUTHORITIES
ISO DEFS.' OPP. TO PLS.' MOT. FOR REVIEW
CASE NO. CV 13-04460-GHK (MRWx)

was required to assert Summy's rights—including its right to sue for copyright infringement—on behalf of this member.

Order at 5.  During the hearing, Magistrate Judge Wilner further explained ASCAP's relationship with members and its role as a licensing agent that polices intellectual property rights.  Hr'g Tr. 13:19-18:23, 21:12-22:19.  Magistrate Judge Wilner reasoned that "it is more likely than not … that ASCAP needed or requested [the Memos] to properly represent Summy in exploiting its song rights" because they "speak directly to the validity of the copyrights" and a valid copyright "would have been a necessary precursor to any action – be it a cease-and-desist letter, a demand for a licensing fee, or the commencement of a civil infringement lawsuit – that ASCAP could have taken on behalf of Summy."  Order at 6; *see also id.* at 7 ("Proof that Summy owned a legitimate copyright was fundamental to allowing the association to provide a fundamental service—enforcing and patrolling its members legal interest."); Hr'g Tr. 17:21-25 ("[I]t makes sense to me that if Summy had information, and if it was privileged information, regarding its ownership in the 'Happy Birthday' songs, [Summy would] provid[e] that information to its licensing agent in advance of some dispute.").

Plaintiffs suggest that if Summy truly wanted to assist ASCAP in enforcing its rights, it might have sent ASCAP copies of the *Happy Birthday to You* copyright registrations, but would not have sent legal memoranda analyzing those copyrights.  Mot. at 13.  Plaintiffs' speculative and counterfactual argument is unpersuasive.  Summy's transmittal of the Coudert Memos supports a finding that Summy was *seeking to obtain legal advice* from ASCAP's General Counsel as much, if not more, than, a transmittal of just the registrations.  Similarly unpersuasive is Plaintiffs' suggestion that Sengstack had no reason to seek legal advice from Korman because Summy had already obtained advice from Coudert Brothers.  Mot. at 12, 17.  There is nothing illogical or implausible about inferring that Summy wished to obtain

1  ASCAP's opinion as well—especially because the Coudert Memos addressed

2  matters that were "fundamental" to the services ASCAP provided.  Order at 7.

3       Plaintiffs next claim that the Magistrate Judge based his factual finding on

4  "mere speculation," emphasizing the term "If" in the last sentence of this paragraph:

> The text of the transmittal letter, the relationship between the parties, and core logic regarding management of copyright issues therefore lead the Court to conclude that no waiver of the attorney-client privilege occurred.  The Court finds sufficient evidence to support Warner's argument that Summy gave the Coudert materials to ASCAP's lawyer for the purpose of obtaining legal advice.  *ASCAP*, 129 F. Supp. 2d at 338.  Proof that Summy owned a legitimate copyright was fundamental to allowing the association to provide a fundamental service—enforcing and patrolling its members legal interest.  The fact that one of Summy's principals sent the Coudert materials directly to the general counsel of a major rights enforcement agency fits well within the established perspective that "[e]ach individual member of the [unincorporated] association is a client of the association's lawyer." *Schwartz*, 16 F.R.D. at 32.  ***If*** ASCAP's general counsel acted as Summy's lawyer to obtain material relevant to preparing future copyright infringement actions (even if such actions didn't come to pass), then the client's action in conveying privileged materials did not cause a waiver of the privilege.

15  Order at 7 (emphasis added); *see* Mot. at 13.  Nothing about the use of the word "if"

16  in this paragraph gives any support to Plaintiffs' claim of clear error.  Magistrate

17  Judge Wilner cited factual evidence supporting his conclusion that "ASCAP's

18  general counsel acted as Summy's lawyer to obtain material relevant to preparing

19  future copyright infringement actions (even if such actions didn't come to pass)" in

20  the preceding sentences.  Merely beginning a sentence with the word "if" does not

21  mean that this finding was conditioned on unfound facts.  Magistrate Judge Wilner

22  is simply stating that, as a *result* of his finding that Korman was acting as Summy's

23  counsel—which is unaffected by whether future copyright infringement actions in

24  fact came to fruition—Sengstack did not waive Summy's privilege over the Memos.

25       Plaintiffs also challenge Magistrate Judge Wilner's holding that Sengstack

26  sent the Coudert Memos to ASCAP's General Counsel for the purpose of obtaining

27  legal advice on the ground that "there was ***no chance*** that ASCAP would be asked

28  to prepare an infringement action for Summy or its successors."  Mot. at 14.

1   Plaintiffs support their position by contending that neither Summy nor its successors

2   sued anyone for infringing *Happy Birthday to You* prior to or after the 1979

3   correspondence.  Magistrate Judge Wilner correctly—and certainly plausibly—

4   rejected this argument:

> [T]he nature of the underlying Coudert letters – and the heart of the
> present action – demonstrate that there were issues regarding the
> validity of the "Happy Birthday" copyrights that merited considerable
> thought and raised colorable legal questions.  Indeed, those questions
> apparently caused Summy to retain a major Wall Street law firm in the
> mid-1970s to investigate and opine upon the provenance of those
> copyrights.

9   Order at 6; *see also* Hr'g Tr. 37:15-38:1 (explaining why Magistrate Judge Wilner

10   was "not particularly swayed by the fact that there was no litigation after[]"

11   Sengstack's 1979 correspondence with ASCAP's General Counsel).

12      Plaintiffs' arguments simply amount to rehashing *their* view of the "more

13   likely" purpose of Summy's sending the Coudert Memos to ASCAP's General

14   Counsel; they provide no reason to justify setting aside Magistrate Judge Wilner's

15   factual finding as clearly erroneous.  Mot. at 15.  Moreover, even assuming that

16   Summy never intended to bring an infringement action and never considered that it

17   would need to defend an action such as the present lawsuit, the validity of the *Happy*

18   *Birthday to You* copyrights was nonetheless pertinent to other aspects of ASCAP's

19   role as Summy's licensing agent—such as sending cease-and-desist letters and

20   demanding licensing fees.  Order at 6.  This further supports the Magistrate Judge's

21   finding that Summy sent ASCAP the Coudert Memos to obtain legal advice.  *See*

22   Hr'g Tr. 21:22-22:1 (explaining that it is fair to conclude that Summy sent the

23   Coudert Memos to ASCAP because "down the road" ASCAP might be "licensing

24   … those copyrights on behalf of Summy…. That's what ASCAP does").

25      Finally, Plaintiffs argue that *ASCAP*, 129 F. Supp. 2d at 327, "refutes"

26   Magistrate Judge Wilner's finding that Sengstack wrote to ASCAP's General

27   Counsel for the purpose of obtaining legal advice.  Mot. at 16.  According to

28   Plaintiffs, none of the factors that *ASCAP* identified as relevant to determining the

existence of an attorney-client relationship indicates that Korman served as Summy's attorney. *Id.* at 16-17.[9]  Magistrate Judge Wilner considered this argument and properly rejected it.  The Magistrate Judge recognized that Sengstack's 1979 letter did not contain "lawyerly statements preserving the sender's confidentiality or expressly stating the legal purpose for sending the materials to ASCAP," but was persuaded by other text in the transmittal letter and the circumstances in which the Memos were sent that Summy wrote to ASCAP's General Counsel in order to obtain legal advice.  Order at 6-7.  Again, Plaintiffs cannot establish that Magistrate Judge Wilner committed clear error in reaching this judgment—which is certainly based on inferences that can be drawn from the record—because there is nothing *illogical* or *implausible* about it.  Plaintiffs are simply asking the Court to second-guess the Magistrate Judge's factual finding.

     In discussing the *ASCAP* decision, Plaintiffs also suggest that ASCAP's production of the Coudert Memos *in 2014* somehow indicates that ASCAP did not consider Sengstack's correspondence privileged *in 1979*.  Mot. at 11, 17.  ASCAP's production of the documents 35 years later has no bearing on what the parties were thinking in 1979.  Aside from this logical failing, Plaintiffs' contention is also belied by the testimony of the ASCAP attorney who produced the Memos.  Rifkin Decl. Ex. I at 84:12-15 ("Q.  So did you regard the documents as privileged when you produced them to me?  A.  I frankly don't recall.  I don't think I made that determination.") (deposition of Richard Reimer).[10]

---

[9] *See ASCAP*, 129 F. Supp. 2d at 338 (the relevant factors in determining whether an attorney-client relationship exists between a member of an unincorporated association and the association's counsel include "the nature of disclosures to the attorney; the member's expectations of the attorney; the reasonableness of those expectations; whether the attorney had affirmatively assumed a duty to represent the member; whether the member had independent representation; whether the attorney represented the member prior to representing the association; and whether the member relied upon the attorney's representation of its individual interests").

[10] Plaintiffs argue in their Motion that Warner/Chappell waived privilege over the Coudert Memos by delaying in sending Plaintiffs a written clawback letter.  Mot. at
(footnote continued on following page)

1   In sum, Magistrate Judge Wilner correctly concluded that Summy sent

2   ASCAP the Coudert Memos in order to obtain legal advice.  At the very least,

3   Plaintiffs cannot show that this finding was "illogical" or "implausible" or that it is

4   not supported "in inferences that may be drawn from the facts in the record."

5   *Hinkson*, 585 F.3d at 1260-61; *Fireman's Fund*, 2013 WL 2156469, at *2.

6   **B.    Magistrate Judge Wilner *Did* Find That Sengstack Sent Korman
       The Coudert Memos In Furtherance Of A Common Legal Effort
7       In Anticipation Of Future Litigation—And Certainly Did Not
       "Clearly Err" In Finding The Common Interest Doctrine
8       Applicable**

9   Plaintiffs also argue that while Magistrate Judge Wilner stated the correct

10  legal standard for the common interest doctrine, he concluded that the doctrine

11  applied without making the necessary finding that Sengstack's letter to ASCAP's

12  General Counsel "was part of a common legal effort in furtherance of either actual

13  or anticipated litigation."  Mot. at 20.  As support for their position, Plaintiffs

14  reiterate that no litigation was pending over *Happy Birthday to You* in 1979 and

15  argue that "there most surely was *no anticipated litigation* either."  *Id.*

16  Plaintiffs' argument fails at the outset because the Ninth Circuit does not

17  require that a specific lawsuit is pending or anticipated for the common interest

18  doctrine to apply.  *Gonzalez*, 669 F.3d at 978; *Zolin*, 809 F.2d at 1417.  "The weight

19  of authority favors [the] conclusion that litigation need not be actual or imminent for

20  communications to be within the common interest doctrine."  *BDO Seidman, LLP*,

21  492 F.3d at 816 n.6 (citing *Zolin* and precedent from other federal circuits).  Indeed,

22  Plaintiffs' position is "contrary to the 'established [rule] that the attorney-client

23  privilege is not limited to actions taken and advice obtained in the shadow of

24  litigation.'"  *Id.* (quoting *In re Regents*, 101 F.3d at 1390).  Plaintiffs' reliance on *In*

25  *re Fresh & Process Potatoes Antitrust Litig.*, No. 4:10-md-02186-BLW-CWD, 2014

26  WL 2435581, at *1 (D. Idaho May 30, 2014) ("*Potatoes Antitrust Litig.*"), is

27  ───────────────
28  17 n.4.  Magistrate Judge Wilner explicitly rejected this argument, however, and
    Plaintiffs offer no reason to disturb the Magistrate Judge's ruling.  Order at 2 n.3.

MEM. OF POINTS AND AUTHORITIES
ISO DEFS.' OPP. TO PLS.' MOT. FOR REVIEW
CASE NO. CV 13-04460-GHK (MRWx)

1    misplaced.  Mot. at 19-20.  That case involved communications between potato

2    marketers and growers that shared *no* interest other than a general goal of business

3    success and an incidental interest in avoiding regulatory attention.  *Potatoes*

4    *Antitrust Litig.,* 2014 WL 2435581 at *6-9.

5            In any event, Plaintiffs' argument also fails because the Magistrate Judge

6    affirmatively found that Sengstack wrote to ASCAP's General Counsel in

7    furtherance of a common legal effort in anticipation of future litigation.  In

8    particular, Magistrate Judge Wilner explained that Summy, "the rights owner," and

9    ASCAP, "the non-profit association," "were unified in asserting Summy's

10   copyrights for Summy's benefit as a result of the agency relationship"; and, further,

11   that "[t]hat common interest is adequate to warrant protecting privileged

12   communications *in advance of future conceivable litigation*."  Order at 8 (emphasis

13   added).  Magistrate Judge Wilner further explained his finding during the hearing on

14   this matter:

15           [T]he issue is why would Summy want to transmit [the Coudert
         Memos] to ASCAP.  What's the point.  And I think – I think it is fair to
16       conclude that the point was because down the road ASCAP might be
         litigating those copyrights – licensing or litigating those copyrights on
17       behalf of Summy.  And I don't think that's magic.  I don't think that's
         unanticipated.  That's what ASCAP does.  That's why people hire
18       ASCAP to administer these rights because an individual company can't
         go to every radio station and every bar and police the rights.
19

20   Hr'g Tr. 21:20-22:4; *see also id.* at 24:19-25:22.

21           Plaintiffs contend, alternatively, that even if no actual or anticipated litigation

22   is required for the common interest doctrine to apply (which, in fact, is the case),

23   "the facts do not support Magistrate Judge Wilner's decision to apply the doctrine

24   here."  Mot. at 21.  According to Plaintiffs, "there are no facts in the record to

25   support a finding that Mrs. Sengstack and Mr. Korman were cooperating in

26   formulating a common legal strategy" and there is no evidence that Sengstack sent

27   the Coudert Memos to Korman to further a joint legal effort.  *Id.*  As Magistrate

28   Judge Wilner concluded, however, there are *numerous* facts in the record that

1   support a finding that Summy sent ASCAP the Memos in order to further a common

2   legal effort.

3       First, this finding is supported by considering the relationship between

4   Summy and ASCAP and ASCAP's responsibilities as Summy's licensing agent. As

5   Magistrate Judge Wilner explained:

> As Summy's agent, ASCAP was contractually obliged to sue copyright
> infringers on behalf of Summy. The transmission of material central to
> an infringement action enabled the rights holder and its agent to pursue
> their common interest in halting such infringement. [*Nidec Corp. v.
> Victor Co. of Japan*, 249 F.R.D. 575, 578 (N.D. Cal. 2007)]. Plaintiff
> correctly notes that ASCAP did not stand to benefit directly from a
> successful copyright infringement action, as the association did not
> own the song's copyright or share meaningfully in royalties derived
> from its public performances. Yet, this merely establishes that ASCAP
> did not have a joint <u>commercial</u> goal with Summy, which would be a
> factor <u>against</u> finding a commonality of interest here. [*Bank of Am. v.
> Terra Nova Ins. Co.*, LLT, 211 F. Supp. 2d 493, 497 (S.D.N.Y. 2002)].
> Rather, the rights owner and the non-profit association were unified in
> asserting Summy's copyrights for Summy's benefit as a result of the
> agency relationship. [*Potatoes Antitrust Litig.*, 2014 WL 2435581, at
> *6-7].

15  Order at 7-8. Second, the finding is supported by the facts that Summy's Vice

16  President provided (1) detailed legal analyses (2) performed by a premier law firm

17  (3) to the *General Counsel*—rather than a low-level executive—at (4) ASCAP, a

18  major licensing organization. Magistrate Judge Wilner did not clearly err in relying

19  on these facts to conclude that "this communication seemed to have been done with

20  the intention of advancing a common legal strategy, exploitation of this right,

21  and … done at quite a high level." Hr'g Tr. 23:15-24:3. Third, it is "a fair

22  inference," as Magistrate Judge Wilner held, that Summy and ASCAP "need[ed] to

23  formulate a common legal strategy" in light of questions regarding the *Happy*

24  *Birthday to You* copyrights that existed in the 1970s. Hr'g Tr. 21:20-22:22.

25  Plaintiffs cannot establish that the Magistrate Judge clearly erred by relying on this

26  evidence, rather than other evidence that Plaintiffs cite—such as the fact that

27  Summy had obtained legal advice from Coudert Brothers in 1976 and 1978, that

28  Sengstack did not explicitly request legal advice, and that there is no record of

1  Korman's response to Sengstack.  *See* Order at 6-7 (discussing why the Magistrate

2  Judge was not persuaded by this evidence).

3     Plaintiffs next contend that the common interest doctrine cannot apply to

4  Sengstack's correspondence with ASCAP because ASCAP does not own an

5  intellectual property right in *Happy Birthday to You*.  Mot. at 22.  Plaintiffs cite

6  Richard Reimer's declaration for the proposition that "ASCAP repeatedly denied

7  sharing any common interest with Warner/Chappell in the Song or in any royalties

8  derived from it."  *Id.*  Again, the Magistrate Judge did not clearly err in rejecting this

9  argument.  The common interests that Magistrate Judge Wilner identified—"halting

10  infringement" and "asserting Summy's copyrights for Summy's benefit"—do not

11  require ASCAP to have an ownership interest in the copyrights themselves or the

12  royalties derived from the licensing of those copyrights.  Order at 7-8.  Instead, as

13  Magistrate Judge Wilner emphasized, "the rights owner and non-profit association

14  were unified in asserting Summy's copyrights for Summy's benefit *as a result of the*

15  *agency relationship*."  *Id.* at 8 (emphasis added).

16     There is nothing illogical or implausible about Magistrate Judge Wilner's

17  finding that ASCAP—as Summy's licensing agent—shared a legal interest with

18  Summy in enforcing Summy's copyrights for Summy's benefit.  Indeed, the

19  Southern District of New York has applied the common interest doctrine in very

20  similar circumstances.  *See Major League Baseball Props., Inc. v. Salvino, Inc.*, No.

21  00 CIV.2855 JCF, 2003 WL 21983801, at *1 (S.D.N.Y. Aug. 20, 2003) (finding

22  that the major league baseball clubs and an organization created to register and

23  enforce the Clubs' intellectual property rights "ha[d] a common legal interest in

24  enforcement of the Clubs' trademark rights").  Similarly, Magistrate Judge Wilner

25  did not clearly err in distinguishing Sengstack's correspondence with ASCAP from

26  precedent Plaintiffs cited in which the parties had communicated in order to further

27  shared commercial interests.  Order at 8; Hr'g Tr. 20:21-21:15, 24:19-25:22.

28  ASCAP's role in enforcing intellectual property rights on Summy's behalf was

legal, and not simply commercial.  *Salvino*, 2003 WL 21983801, at *1; *cf. Potatoes Antitrust Litig*., 2014 WL 2435581, at *6-9 (finding the common interest doctrine inapplicable to communications between potato marketers and potato growers aimed at "structur[ing] their business relationships to remain compliant with the Capper–Volstead Act and avoid[ing] the potential of litigation").

Moreover, Reimer did *not* deny sharing a "common interest" in the works ASCAP licenses and Magistrate Judge Wilner did *not* "misconstrue[]" Reimer's statements.  Mot. at 22.  Reimer simply stated that ASCAP does not own the copyrights to those songs—which is true, because ASCAP is a licensee, as the membership agreements confirm.  Rifkin Decl. Ex. K at ¶5; *see also* Klaus Decl. Ex. B, ¶ 1, Ex. C, ¶1.  Reimer's subsequent deposition testimony, which Plaintiffs ignore entirely, further supports the Magistrate Judge's finding that Sengstack sent the Coudert Memos to ASCAP in furtherance of the parties' common *legal* interests:

- On behalf of its members, ASCAP has prosecuted "thousands" of infringement actions (Reimer Dep. 72:7-10); litigated rate court proceedings (*id*. at 68:20-23); and conducted lobbying efforts (*id*. at 68:24-69:1).  ASCAP has also helped its members register their copyrights.  *Id*. at 55:19-57:11.

- "Q. Are ASCAP's rights affected one way or another by the validity of copyrights in its repertory?  … A.  We could not license works that are not the subject of valid copyrights."  *Id*. at 73:8-14; *see also id*. at 69:2-6, 87:4-6.

Plaintiffs also ignore a host of other evidence that supports Magistrate Judge Wilner's finding that Summy and ASCAP shared a common *legal* interest in the enforcement of Summy's copyrights.

- The Membership Agreement between Summy and ASCAP provides that the copyright owner grants to ASCAP "[a]ll the rights and remedies for *enforcing* the copyright or copyrights of such musical works . . . as well as the right to sue under such copyrights."  Klaus Decl. Ex. C, ¶ 1(a) (emphasis added).

- ASCAP's Articles of Association offer a list of twelve reasons for ASCAP's existence.  The very first reason listed includes copyright enforcement:  "[t]o protect composers, authors and publishers of musical works against piracies of any kind."  Klaus Decl. Ex. D, Art. I, Sec. 1(a) (Articles of Association).

- ASCAP's website details its efforts to "secur[e] rights" for its members and "fight[] harder for your rights than any other group." The ASCAP Advantage, http://www.ascap.com/about/ascapadvantage.aspx (last visited on Aug. 25, 2014). ASCAP is "owned and run" by its members. ASCAP Home Page, http://www.ascap.com/about/ (last visited Aug. 25, 2014).

- Jeremy Blietz, a Vice President in Warner/Chappell's Copyright Department, described ASCAP's purpose aimed at protecting its members' interests in intellectual property in a declaration and when deposed. Klaus Ex. F ¶¶ 13, 15, 18; Blietz Dep. 158:7-19, 163:13-22, 168:21-169:5. He explained, for example, that because Warner/Chappell is "part owners of [ASCAP] and we both represent intellectual property rights, the common interest is that they're representing writers and publishers to protect those intellectual property rights to ensure that in cases where they're used they're being licensed. So that's a common interest in the protection of our intellectual property and that of our songwriters." Blietz Dep. 163:13-22.

Finally, Plaintiffs attack Magistrate Judge Wilner's common interest analysis by suggesting that previous courts have rejected the argument that ASCAP shares common legal interests with its members. Mot. at 23-24 (discussing *Doors Music Co. v. Meadowbrook Inn Corp.*, No. Civ. 89-l34-D, 1990 WL 180286, at *1 (D.N.H. July 27, 1990) and *Ocasek v. Hegglund*, 673 F. Supp. 1084 (D. Wyo. 1987)). But Magistrate Judge Wilner correctly found those cases inapposite. "Those cases are fairly read to establish the unsurprising (and unrelated) proposition that ASCAP need not participate in every copyright action involving one of its members and a party accused of infringing a work subject to an ASCAP license." Order at 8 n.4. *Doors Music* held that ASCAP could not be impleaded as a third-party defendant under Federal Rule of Civil Procedure 14 because it was not potentially liable to a business that allegedly infringed the *Doors*'s copyrights. 1990 WL 180286 at *1-2. *Ocasek* held that ASCAP was not an "indispensable party" in a direct infringement action between copyright owners and a bar. 673 F. Supp at 1085, 1087. Neither *Doors Music* nor *Ocasek* addressed the relationship between ASCAP and its members for purposes of the common interest doctrine—and neither shows that Magistrate Judge Wilner somehow committed clear error.

1    In sum, Magistrate Judge Wilner correctly found that Summy sent ASCAP

2 the Coudert Memos in furtherance of a common legal interest.  Plaintiffs certainly

3 cannot establish that this ruling was "clearly erroneous or contrary to law."

4 **VI.**    **<u>CONCLUSION</u>**

5    For the reasons stated above, Warner/Chappell respectfully requests that the

6 Court deny Plaintiffs' motion.

7

8 DATED:  August 25, 2014         MUNGER, TOLLES & OLSON LLP

9

10                                By:    */s/ Kelly M. Klaus*

11                                       KELLY M. KLAUS

12                                Attorneys for Defendants Warner/Chappell
                                  Music, Inc. and Summy-Birchard, Inc.

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28