FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:   619/234-4599

*Interim Class Counsel for Plaintiffs and the [Proposed] Class*

[Additional Counsel Appear on Signature Page]

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## WESTERN DIVISION

GOOD MORNING TO YOU
PRODUCTIONS CORP., *et al.*,

              Plaintiffs,

v.

WARNER/CHAPPELL MUSIC,
INC., *et al.*,

              Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. CV 13-04460-GHK (MRWx)

**REPLY MEMORANDUM OF POINTS
AND AUTHORITIES IN FURTHER
SUPPORT OF AND RESPONSE TO
DEFENDANTS' OPPOSITION TO
PLAINTIFFS' MOTION FOR REVIEW
OF MAGISTRATE JUDGE WILNER'S
ORDER RE: DISCOVERY MOTION
[FED. R. CIV. P. 72(a); L.R. 72-2.1]
DENYING PLAINTIFFS' MOTION TO
OVERRULE DEFENDANTS' CLAIM OF
ATTORNEY-CLIENT PRIVILEGE**

Date:          September 15, 2014
Time:          9:30 A.M.
Judge:         Hon. George H. King
Room:          650
Disc. Cutoff: July 11, 2014
Pretrial Conf.:    N/A
Trial Date:         N/A
L/D File Jt. MSJ:   11/14/14

**TABLE OF CONTENTS**

I.    INTRODUCTION  ......................................... 1

II.   THE RECORD DOES NOT SUPPORT THE MAGISTRATE
      JUDGE'S DETERMINATION THAT MRS. SENGSTACK
      SOUGHT LEGAL ADVICE FROM "BERNIE" ......................... 2

III.  THE MAGISTRATE JUDGE DID NOT FIND THAT MRS.
      SENGSTACK'S LETTER WAS SENT IN FURTHERANCE
      OF A COMMON LEGAL EFFORT REGARDING ANY
      ACTUAL OR POTENTIAL LITIGATION ................................ 6

      A.    Magistrate Judge Wilner Did Not Find
            Any Actual or Anticipated Litigation ........................... 6

      B.    The Record Proves That Litigation Was Not Pending,
            Anticipated, or Even Possible ........................ 9

      C.    As Only A Licensing And Collection Agent For
            Thousands Of Members, ASCAP Undertook No
            Common Legal Effort With Summy ................................10

IV.   ASCAP AND SUMMY SHARED BUSINESS INTERESTS,
      NOT LEGAL INTERESTS ........................................13

V.    CONCLUSION    ................................................16

# TABLE OF AUTHORITIES

## Cases

*Bank of Am. v. Terra Nova Ins. Co., LLT,*
   211 F. Supp. 2d 493 (S.D.N.Y. 2002)...............................................14

*Broadcast Music, Inc. v. Columbia Broadcasting System,*
   441 U.S. 1 (1979) .........................................................................12, 13

*Columbia Broadcasting System, Inc. v. ASCAP,*
   400 F. Supp. 737 (S.D.N.Y. 1975)...................................................12

*Doors Music Co. v. Meadowbrook Inn Corp.,*
   No. 90-134-D, 1990 U.S. Dist. LEXIS
   13935 (D.N.H. July 20, 1990)....................................................15, 16

*FSP Stallion 1, LLC v. Luce,*
   No. 08-cv-01155-PMP-PAL, 2010 U.S. Dist. LEXIS
   110617 (D. Nev. Sept. 30, 2010) ....................................................14

*Hewlett-Packard Co. v. Baush & Lomb, Inc.,*
   115 F.R.D. 308 (N.D. Cal. 1987)..........................................*passim*

*In re Fresh and Process Potatoes Antitrust Litig.,*
   No. MD 10-2186 BLW CWD, 2014 U.S. Dist. LEXIS
   74936 (D. Id. May 30, 2014) ............................................................ 6

*In re Grand Jury Investigation,*
   974 F.2d 1068 (9th Cir. 1992) .......................................................... 3

*In re Grand Jury Subpoenas,*
   902 F.2d 244 (4th Cir. 1990) ...........................................................14

*In re Regents of the Univ. of California,*
   101 F.3d 1386 (Fed. Cir. 1996).....................................................9, 14

*In Value Prop. Trust v. Zim,*
   212 B.R. 649 (Bankr. C.D. Cal 1997) .............................................. 8

*Lenz v. Universal Music Corp.*,
  C 07-3783 JF (RS), 2009 U.S. Dist. LEXIS
  105180 (N.D. Cal. Oct. 29, 2009) ...................................................................13

*Love v. The Permanente Medical Group*,
  No. C-12-05679 DMR, 2014 U.S. Dist. LEXIS
  22243 (N.D. Cal. Feb. 19, 2014) ..................................................................... 8

*Ocasek v. Heggland*,
  673 F. Supp. 1084 (D. Wyo. 1987) ...........................................................15, 16

*Schwartz v. Broadcast Music, Inc.*,
  16 F.R.D. 31 (S.D.N.Y. 1954) .......................................................................... 6

*Thought v. Oracle Corp.*,
  No. 12-cv-05601-WHO (MEJ), 2014 U.S. Dist. LEXIS
  111642 (N.D. Cal. Aug. 11, 2014) .................................................................... 7

*U.S. v. Gonzalez*,
  669 F.3d 974 (9th Cir. 2012) ............................................................................ 8

*U.S. v. ASCAP*,
  129 F. Supp. 2d 327 (S.D.N.Y. 2001) ...................................................2, 3, 5, 13

*United States v. BDO Seidman, LLP*,
  492 F.3d 806 (7th Cir. 2007) ............................................................................ 9

*United States v. Hinkson*,
  585 F.3d 1247 (9th Cir. 2009) .......................................................................... 1

*United States v. Zolin*,
  809 F.2d 411 (9th Cir. 1987) ........................................................................ 3, 8

## I.   INTRODUCTION

Based on the admittedly "thin" factual record before the Magistrate Judge, Defendants have failed to meet their burden of proving that Mrs. Sengstack's casual note (signed "A") to "Bernie" at ASCAP was a privileged communication. Defendants also failed to meet their burden of proving that they did not waive the privilege when Mrs. Sengstack sent the Coudert Letters to a third party.

*First*, Defendants have failed to identify any evidence that Mrs. Sengstack sought legal advice when she wrote to Mr. Korman in 1979.  The ***only*** evidence on this issue was Mrs. Sengstack's letter itself and the fact that Summy was a member of ASCAP. Mrs. Sengstack's "Dear Bernie" letter neither sought nor prompted advice from Mr. Korman.

In the absence of any evidence in the record that Mrs. Sengstack sought legal advice, the Magistrate Judge merely assumed from dicta in a few unrelated antitrust cases and ASCAP's role as a collection agent for Summy (and thousands of other ASCAP members) that ASCAP "needed or requested" the Coudert letters "in advance of some dispute."  Of course, there is no evidence in the record that ASCAP needed the Coudert Letters, that it ever requested them from Mrs. Sengstack, or that it ever used them in any way. The Magistrate Judge's hypothesis is clearly erroneous because it is "illogical" and "implausible" based on the record and has no support in any "inferences that may be drawn from facts in the record." *United States v. Hinkson,* 585 F.3d 1247, 1260 (9th Cir. 2009); Defendants' Memorandum of Points and Authorities in Support of Defendants' Opposition to Plaintiffs' Motion for Review of Magistrate Judge Wilner's Order Re: Discovery Motion Denying Plaintiffs' Motion to Overrule Defendants' Claim of Attorney-Client Privilege (Dkt. 157) ("Opp.") at 9:1-3; Order at 6 (attached to Dkt. 145 as "Addendum A," referred to hereafter as "Order").

Based on evidence before the court (Mrs. Sengstack's letter and the ASCAP agreement), as discussed below, Defendants did not meet their burden of proving that Ms. Sengstack's letter was a privileged communication.

*Second*, despite correctly stating the law, the Magistrate Judge failed to find or identify any common legal effort regarding any actual or potential litigation in applying the narrow common interest doctrine. Instead, Magistrate Judge Wilner applied a different standard, basing his decision on the mere possibility of "***future conceivable litigation***." Order at 8 (emphasis added). Virtually every business relationship and context presents the possibility of "future conceivable litigation." The standard that Magistrate Judge Wilner applied eviscerates the requirement that the communication in question must be in furtherance of a joint legal strategy relating to actual or anticipated litigation, and makes the narrow common interest doctrine practically limitless. The Magistrate Judge's legal analysis was contrary to applicable Ninth Circuit authority and should be withdrawn.

Finally, if Summy and ASCAP shared any common interest in the *Happy Birthday* copyright, it was a business interest, not a legal one. The common interest doctrine does not protect communications about a joint business strategy even if it happens to include a concern about litigation. There is no evidence in the record that ASCAP engaged in or even contemplated any infringement litigation on behalf of Summy.

Magistrate Judge Wilner's findings and conclusions are not supported by the record, are clearly erroneous and contrary to law, and should be withdrawn.

## II. THE RECORD DOES NOT SUPPORT THE MAGISTRATE JUDGE'S DETERMINATION THAT MRS. SENGSTACK SOUGHT LEGAL ADVICE FROM "BERNIE"

Magistrate Judge Wilner correctly determined that the communication between Mrs. Sengstack and Mr. Korman would be privileged *only if* she wrote to "Bernie" to obtain legal advice. Order at 4 (quoting *U.S. v. ASCAP*, 129 F. Supp. 2d 327, 338 (S.D.N.Y. 2001) ("*ASCAP*"). The "thin" factual record – which

- 2 -

consisted only of Mrs. Sengstack's letter to Bernie and the fact that Summy was a member of ASCAP – contains *no* evidence that she wrote to him seeking legal advice. *See* Order at 5 (evidence is "rather thin on both sides of the courtroom"). This thin record comes nowhere near meeting Defendants' heavy burden to prove that the Coudert Letters remained privileged after Mrs. Sengstack sent them to Bernie.[1]

Despite Defendants' disingenuous claim to the contrary, the factual record is neither "voluminous" nor "undisputed." Opp. at 6:6. There is absolutely no direct evidence that Mrs. Sengstack sought legal advice from Mr. Korman. The entire record on that consists only of Mrs. Sengstack's "Dear Bernie" letter and the Coudert Letters themselves. Declaration of Mark C. Rifkin, Exs. C, D, and E (Dkt. 154 filed under seal). Mrs. Sengstack's extremely informal letter was signed only with an "A" (for Arlene Sengstack) and was addressed simply to "Bernie" – Mr. Korman was not identified or addressed as ASCAP's General Counsel, or even as an attorney for that matter. Plainly, Mrs. Sengstack's letter to "Bernie" was a communication between friends rather than between attorney and client.

The Magistrate Judge cited only the "fact that one of Summy's principals sent the Coudert materials directly to the general counsel of a major rights enforcement agency" to support its obviously hypothetical finding that "*[i]f ASCAP's general counsel acted as Summy's lawyer to obtain material relevant to preparing future copyright infringement actions (even if such actions didn't come to*

---

[1]   As Defendants concede, the attorney-client "privilege is narrowly construed and it is the burden of the party asserting the privilege to establish the privilege exists." Opp. at 14:15-17. The party asserting the privilege must affirmatively demonstrate non-waiver. *United States v. Zolin*, 809 F.2d 411, 1414 (9th Cir. 1987); Opp. at 15, 18. Whether the delivery of documents to a third party is protected by the attorney-client privilege is a mixed question of fact and law subject to *de novo* review. *See Zolin*, 809 F.2d at 1415; *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992).

- 3 -

pass), then the client's action in conveying privileged materials did not cause a waiver of the privilege." Order at 7 (emphasis added). It does not come close to doing so.[2]

That "thin" record does not come close to proving that Mrs. Sengstack sought legal advice from Bernie or ASCAP. The "Dear Bernie" letter certainly did not do so. There were no prior or subsequent communications relating to the issue. Summy never relied upon ASCAP for legal advice – it was, after all, represented by Coudert Brothers. Nothing in the record suggests that ASCAP asked for the Coudert Letters or solicited Mrs. Sengstack's letter for any purpose. There is no evidence that Mr. Korman or ASCAP made any legal analysis of the Coudert Letters. There is no evidence that Bernie or ASCAP ever responded to Mrs. Sengstack's informal correspondence. There is no evidence that Mr. Korman or anyone at ASCAP took any action (or refrained from taking any action) based upon the Coudert Letters.

Likewise, the record does not support the Magistrate Judge's finding "that ASCAP needed or requested this information to properly represent Summy in exploiting its song rights." Order at 6. *First*, there is absolutely no evidence that ASCAP "requested" the information at all. *Second*, there is no evidence that ASCAP used the information to "represent" Summy or in any other way. ASCAP never analyzed the Coudert Letters, never quoted or paraphrased them, never followed up on them, and never took any action on them, either for Summy or for

---

[2] Magistrate Judge Wilner's believed "[p]roof that Summy owned a legitimate copyright was fundamental to allowing the association to provide a fundamental service – enforcing and patrolling its members' legal interest." Order at 7. That misunderstanding of what ASCAP required to issue and enforce blanket licenses, based *solely* on ASCAP's role as a licensing agent, is unsupported by the record. In fact, the complete absence of evidence that ASCAP ever evaluated the validity of a single copyright supports the *opposite* conclusion that ASCAP did not (or even want) such proof.

- 4 -

itself.  Moreover, ASCAP apparently had no problem pursuing its business for the entire 44-year period between when the purported *Happy Birthday* copyrights were registered, much less the three years between when Coudert Brothers prepared its detailed analysis and when Mrs. Sengstack forwarded it to "Bernie."

The only "other" evidence offered by Defendants as the "context" for the communication was Summy's agreement as a member of ASCAP. That form membership agreement was the "considerable evidence" offered by Defendants (Opp. at 7:11).  Absent evidence of any actual request for legal advice, either in the transmittal letter itself or in any other relevant factual context, the Magistrate Judge, using "core logic," simply hypothesized that the communication must have been privileged because of "the relationship" between ASCAP and Summy. Order at 6. Plainly, not all communications between an agent (whether a collection agent or a licensing agent) and its principal are privileged, and ASCAP is no exception.

That was the district court's holding in *ASCAP*, 129 F. Supp. 2d at 327, a case on which the Magistrate Judge relied. Order at 4.  In that case, an ASCAP member who sought an advance on future royalty payments claimed his communications with ASCAP's attorneys were privileged.  ASCAP conceded it "is the attorney for each of [its] members . . . ***where a member has requested association-related legal advice***," but disputed the member's claim because he had not sought legal advice from ASCAP.  *Id*. at 338-39 (emphasis added).  The district court ruled against the member (who, like Mrs. Sengstack, never asked or relied upon ASCAP for legal advice), finding that it would "defy common sense to believe that the attorneys for ASCAP also represent every one" of its more than one hundred thousand members. *Id*. at 339. There is no basis for a different conclusion here.

Magistrate Judge Wilner's conclusion that Mrs. Sengstack was seeking legal advice when she sent her "Dear Bernie" letter was not the result of any "core logic" drawn from the fact that Summy was one of thousands of ASCAP members.

Rather, as explained in *ASCAP*, that conclusion defies common sense.  For that same reason, that conclusion is inconsistent with *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31, 32 (S.D.N.Y. 1954), also cited by the Magistrate Judge. Order at 7. In that case, the district court held that the attorney-client privilege applies to a member's communications with ASCAP's General Counsel only if the member was seeking "legal advice and if the communications were confidential." *Id.* at 33 (citation omitted).   If membership in ASCAP alone rendered a member's communications privileged, there would be no need for those added limitations: they would all be privileged.  That is not the law.

The Magistrate Judge's determination that Mrs. Sengstack sent her "Dear Bernie" letter to obtain legal advice was not supported by the "thin" record.  The determination was clearly erroneous and contrary to law and should be withdrawn.

## III.   THE MAGISTRATE JUDGE DID NOT FIND THAT MRS. SENGSTACK'S LETTER WAS SENT IN FURTHERANCE OF A COMMON LEGAL EFFORT REGARDING ANY ACTUAL OR POTENTIAL LITIGATION

The common interest doctrine is very narrow.  As Magistrate Judge Wilner correctly held, for the doctrine to apply, there must be: (i) a common legal effort; (ii) related to actual or anticipated litigation; and (iii) a communication in furtherance of that common legal effort.  *See* Order at 5 (quoting *In re Fresh and Process Potatoes Antitrust Litig.*, No. MD 10-2186 BLW CWD, 2014 U.S. Dist. LEXIS 74936, at *30 (D. Id. May 30, 2014) ("*Potatoes*").  *See also Hewlett-Packard Co. v. Baush & Lomb, Inc.*, 115 F.R.D. 308, 309-310 (N.D. Cal. 1987) (parties negotiating sale of business had common interest in patent because purchaser and seller "would end up defending the same patent in one lawsuit that plaintiff could be expected to bring" against both parties).

### A.   Magistrate Judge Wilner Did Not Find Any Actual or Anticipated Litigation

In the Ninth Circuit, as Magistrate Judge Wilner stated, to preserve the

- 6 -

privilege, the communication in question must be in furtherance of a common legal effort related to actual or anticipated litigation.  *See Potatoes*, 2014 U.S. Dist. LEXIS 74936, at *30.  Most recently, in *Thought v. Oracle Corp.,* No. 12-cv-05601-WHO (MEJ), 2014 U.S. Dist. LEXIS 111642, at *8 (N.D. Cal. Aug. 11, 2014), the court reviewed claims of privilege over communications between parties whose business was to acquire and license patents.  Oracle sought all correspondence concerning the validity of the patents in suit.  *Id.* at *5.  Carefully applying Ninth Circuit law, the court held that the common interest doctrine applies "where allied lawyers and clients work together in prosecuting or defending a lawsuit so that they may exchange information among themselves without waiving the privilege," adding that "it may, in rare cases, be extended to situations where there is *anticipated* joint litigation, but nothing pending immediately."  *Id.* at *8 (emphasis added and citations omitted).  However, the court held that the doctrine "does not extend to communications about a joint business strategy that happens to include a concern about litigation."  *Id.* (citations omitted).

After correctly stating the law, the Magistrate Judge did not find any actual or anticipated litigation, nor could any be found on this record.  Instead of making the requisite finding under the correct legal standard, Magistrate Judge Wilner applied a *different* standard, improperly expanding the very narrow common interest doctrine to protect "communications in advance of *future conceivable litigation*."  Order at 8 (emphasis added); Opp. at 19:11-12.  It goes nearly without saying that litigation is *conceivable* in every business transaction and context.  That overbroad standard is no standard at all.  It nullifies the requirement of actual or anticipated litigation, and protects virtually all business communications.  The Magistrate Judge applied the wrong legal standard instead of finding that Summy and ASCAP were engaged in a common legal effort in furtherance of actual or anticipated litigation.  For that reason, the Order was contrary to law and should be withdrawn for that reason.

To defend Magistrate Judge Wilner's decision, Defendants were forced to disagree with the Magistrate Judge's interpretation of the law (Opp. at 15, 23, 24). However, their own Ninth Circuit authorities do not support Defendants' argument that litigation need not be actual or anticipated, but merely conceivable. *See Love v. The Permanente Medical Group*, No. C-12-05679 DMR, 2014 U.S. Dist. LEXIS 22243, at *8 (N.D. Cal. Feb. 19, 2014) (privilege may extend to attorney's communications with employees of two Kaiser entities "by virtue of [their] common legal interest in defending against ***anticipated litigation*** against all three entities by Plaintiff") (emphasis added); *In Value Prop. Trust v. Zim*, 212 B.R. 649 (Bankr. C.D. Cal 1997) (privilege applies when lawsuit is foreseeable) (Opp. at 15).

The Ninth Circuit's decision in *Zolin*, 809 F.2d at 1417, upon which Defendants rely to justify the Magistrate Judge's decision (Opp. at 23:18), did ***not*** extend the common interest doctrine to communications where future litigation is merely conceivable. In *Zolin*, the government was investigating L.R. Hubbard of the Church of Scientology, for criminal tax fraud. The communications were between Mr. Hubbard, his attorneys, and non-lawyer third parties who were all members of the Church and therefore had a common interest in sorting out the Church's affairs during an ongoing criminal investigation of tax fraud. *Zolin*, 809 F.2d at 1417. Under those circumstances, litigation was surely ***anticipated***, not merely conceivable.

Similarly, in *U.S. v. Gonzalez,* 669 F.3d 974, 978 (9th Cir. 2012), the Ninth Circuit held that the "common interest" doctrine allowed persons who share a common interest in civil or criminal litigation "to communicate with their respective attorneys and with each other to more effectively prosecute their claims" or defenses. As in *Zolin*, the defendants in *Gonzalez* were in the midst of actual

- 8 -

litigation, (a criminal prosecution for an insurance scam) and the issue concerned the husband's testimony at his wife's trial.[3]

Absent the necessary finding that Mrs. Sengstack sent the Coudert Letters to Mr. Korman in furtherance of a common legal effort as part of anticipated or actual litigation – which cannot be made on this thin record – the common interest doctrine does not apply.  For that reason, Magistrate Judge Wilner's decision was contrary to law and should be withdrawn.

## B.    The Record Proves That Litigation Was Not Pending, Anticipated, or Even Possible

During the hearing on July 25, 2014, Plaintiffs informed Magistrate Judge Wilner that no infringement litigation was commenced by Summy or ASCAP to enforce any *Happy Birthday* copyright in the 44 years between 1935, when the two copyrights (Reg. Nos. E51988 and E51990) were registered, and 1979, when Mrs. Sengstack wrote to Mr. Korman.   Rifkin Decl., Ex. J (Hr'g Tr. At 38). Significantly, four infringement cases filed ***after*** those copyrights were registered

---

[3]    Defendants also rely upon two cases from outside the Ninth Circuit, *United States v. BDO Seidman, LLP*, 492 F.3d 806, 816 n.6 (7th Cir. 2007) and *In re Regents of the Univ. of California* ("*Regents*")*,* 101 F.3d 1386, 1390 (Fed. Cir. 1996).  Opp. at 23.  Those cases are non-binding and non-persuasive.  However, it is noteworthy that in *BDO Seidman*, the doctrine was invoked during an IRS investigation when lawyers shared a legal memorandum to coordinate a common legal strategy for their respective clients.  *Id.*  The court found the communication privileged because there was a "shared legal interest to seek legal assistance in order to meet legal requirements," such as defending tax shelters against IRS enforcement actions. *BDO Seidman*, 492 F.3d at 816 n.6.

*Regents* is not even remotely applicable.  In that case, Eli Lilly and the university jointly developed a patent and frequently consulted together with their counsel regarding the patent. Summy and ASCAP had an entirely different relationship here.   Significantly, the court noted that "a patentee and a non-exclusive licensee do ***not*** share identical legal interests."  *Id.* at 1390 (emphasis added). ASCAP is a non-exclusive licensee of its members.

alleged that unauthorized performances of *Happy Birthday* infringed **other** copyrights.  *Id.* at 38-39 (emphases added).  Plaintiffs also informed Magistrate Judge Wilner that there has been no infringement litigation to enforce any *Happy Birthday* copyright in the 35 years since Mrs. Sengstack wrote to Mr. Korman.  *Id.* at 38.  Defendants never have denied any of those facts.

As Plaintiffs explained to Magistrate Judge Wilner, the record is thus fully consistent with Defendants' practice to avoid litigation in light of the dubious ownership and limited scope of their *Happy Birthday* copyrights.  *Id.* at 38-39. Therefore, the record does not even support a finding that infringement litigation was conceivable.

### C.   As Only A Licensing And Collection Agent For Thousands Of Members, ASCAP Undertook No Common Legal Effort With Summy

As discussed above, to find that Mrs. Sengstack did not waive Summy's privilege when she disclosed the Coudert Letters to Mr. Korman, the Magistrate Judge had to find that the communication was in furtherance of a common legal effort. *See Potatoes*, 2014 U.S. Dist. LEXIS 74936, at *30.  The record does not support such a finding, and for that additional reason the Magistrate Judge's decision should be withdrawn.

Echoing their argument that the 1935 copyrights for *Happy Birthday* must have pertained to the musical arrangements as well as the song's popular lyrics, absent any evidence of the reason why Mrs. Sengstack wrote to Mr. Korman, Defendants argue that her letter must have related to a possible infringement action since ASCAP licensed public performance rights in its entire repertoire and "detect[ed] unlicensed uses, institute[d] infringement actions, collect[ed] revenues from licenses, and distribut[ed] royalties" from the entire repertoire.  Opp. at 6:14-17.  Conceding that no enforcement litigation has ever been brought under the *Happy Birthday* copyrights, Defendants also argue that the common legal effort

- 10 -

1  could have been a cease and desist letter or some other enforcement action that

2  ASCAP was authorized to bring on Summy's behalf.

3      While it may be that Summy's or Warner/Chappell's membership agreement

4  could have authorized ASCAP to do something to enforce a *Happy Birthday*

5  copyright, ASCAP never did anything to enforce any such copyright, making the

6  Magistrate Judge's decision (and Defendants' argument in defense of it) purely

7  speculative.

8      As discussed above, there is no dispute that ASCAP and Summy never sued

9  anyone for infringing a *Happy Birthday* copyright.  In addition, ASCAP's records

10  (which it produced from as far back as the 1940s) contain no instance when ASCAP

11  did anything else to enforce any copyright to the song.  There is no evidence of

12  ASCAP ever writing a single cease and desist letter, ever offering to write one, or

13  ever being asked to do so.  There is no evidence of ASCAP ever investigating any

14  unauthorized use or performance of *Happy Birthday*, ever being asked to do an

15  investigation, or ever offering to do one.  There is no evidence of ASCAP collecting

16  or distributing any royalties or revenues for *Happy Birthday*, ever offering to collect

17  or distribute *Happy Birthday* royalties, or ever being asked to do so.  And, of

18  course, there is no evidence of Summy and ASCAP ever working together on any

19  common legal effort regarding enforcement, investigation, collection, or payment.

20  The entire factual record on this purported common legal effort consists of mere

21  speculation as to what ASCAP could have done – apparently on its own without

22  Summy's involvement.

23      Instead, the Magistrate Judge's decision (and Defendants' defense of it)

24  mistakenly relies upon two antitrust cases challenging ASCAP's system of issuing

25  blanket licenses as evidence of what ASCAP "could do" on behalf of all its

26  members.  Neither case identifies any action by ASCAP – whether a copyright

27  infringement lawsuit, a cease and desist letter, or anything else – to enforce any

28  member's copyrights much less an action by ASCAP as part of a common legal

effort with Summy.  Those cases described ASCAP's "clearing-house" business model to facilitate the granting of licenses for the vast collection of music in its repertoire.  *Broadcast Music, Inc. v. Columbia Broadcasting System,* 441 U.S. 1, 5 (1979); *Columbia Broadcasting System, Inc. v. ASCAP*, 400 F. Supp. 737, 741 (S.D.N.Y. 1975).

Before ASCAP was formed in 1914, "there was no effective method by which composers or publishers of music could secure payment for the performance for profit of their copyrighted works." *CBS*, 400 F. Supp. at 741.  "ASCAP was organized as a 'clearing-house' for copyright owners to solve these problems." *Id*. Defendants quote out of context a snippet from a footnote discussing whether ASCAP's blanket license was a *per se* violation of the Sherman Act as evidence that ASCAP's activities include "policing the market and suing infringers."  Opp. at 12:25-26.[4]  That in no way supports the Magistrate Judge's finding that Summy and ASCAP acted together in furtherance of a common legal effort.

In *CBS*, the Supreme Court described ASCAP's operations in 1979 as follows: "As ASCAP operates today, its 22,000 members grant nonexclusive rights to license nondramatic performance of their works and ASCAP issues licenses and distribute royalties to copyright owners in accordance with a schedule reflecting the nature and amount of the use of their music and other factors." *Broadcast Music*, 441 U.S. at 5.  In that case, the Department of Justice described ASCAP's business as a "kind of central licensing agency by which copyright users may offer their works in a common pool to all who wish to use them." *Id*. at 14.  Defendants rely upon the district court's finding in that case that ASCAP has "the nonexclusive

---

[4]    The entire quote is "Surely, if ASCAP abandoned the issuance of all licenses and confined its activities to policing the market and suing infringers, it could hardly be said that member copyright owners would be in violation of the antitrust laws by not having a common agent issue per-use licenses." *Broadcast Music*, 441 U.S. at 18 n. 28.

right to license users to perform compositions" owned by its members and provides "a wide variety of services" including "a surveillance system of radio and television broadcasts to detect unlicensed uses, institute infringement actions, collect revenues from licenses and distribute royalties to copyright owners in accordance with a schedule" relating to nature and amount of the music's use.  400 F. Supp. at 742; Opp. at 12:21-25.   Again, that passing comment falls far short of proving that Summy and ASCAP worked together in furtherance of a common legal effort regarding *Happy Birthday*.

## IV.   ASCAP AND SUMMY SHARED BUSINESS INTERESTS, NOT LEGAL INTERESTS

Even if the Court were to conclude, unlike Magistrate Judge Wilner, that no actual or anticipated litigation is required for the common interest doctrine to apply, the facts still do not support the Magistrate Judge's decision to apply the doctrine here.   The common interest doctrine "does not protect communications made in furtherance only of a common *business* interest."  *Lenz v. Universal Music Corp.*, C 07-3783 JF (RS), 2009 U.S. Dist. LEXIS 105180, at *4 (N.D. Cal. Oct. 29, 2009) (citations omitted) (emphasis original).   To show a common legal interest, "the parties must demonstrate *cooperation in formulating a common legal strategy*. . . .  And, even if the parties do share a common legal interest, for the privilege to apply, the communication at issue must be designed to further that legal effort."  *Potatoes*, 2014 U.S. Dist. LEXIS 74936, at *30 (internal citations omitted and emphasis added).[5]  As the district court explained in *Potatoes*, "[t]he fact that the parties may

---

[5]      Relying upon Ninth Circuit and Northern District of California precedent, the district court explained:

   "The fact that the parties may have been developing a business deal that included a desire to avoid litigation 'does not transform their interest and enterprise into a legal, as opposed to a commercial matter.'"  *Id.* (quoting *Bank of Am. v. Terra Nova Ins. Co., LLT*, 211 F. (continued...)

have been developing a business deal that included a desire to avoid litigation 'does not transform their interest and enterprise into a legal, as opposed to a commercial matter.'" *Id.* at *31 (quoting *FSP Stallion 1, LLC v. Luce*, No. 08-cv-01155-PMP-PAL, 2010 U.S. Dist. LEXIS 110617, at *18 (D. Nev. Sept. 30, 2010) (internal citations omitted)).

Defendants have pointed to nothing in the record to support a finding that Summy shared the Coudert Letters with ASCAP in furtherance of a common legal effort regarding a shared legal interest.  They never disputed ASCAP's admission that it does ***not*** own an interest in any *Happy Birthday* copyright, in the song itself,[6] or in royalties derived from it, and the Magistrate Judge never found otherwise. These undisputed facts prove that ASCAP did not share any common legal interest with Summy in *Happy Birthday*.  The hypothetical common interests identified by Magistrate Judge Wilner were not legal interests.  At most, they were common business interests, such as possibly sending cease-and-desist letters and demanding licensing fees from the licensees of the blanket licenses ***issued by ASCAP***.  *See* Order at 6.

Even if Mrs. Sengstack wrote to ASCAP to protect ***Summy's*** intellectual property, as a non-exclusive licenses, ASCAP does not share a common legal interest in that intellectual property.  *See Regents*, 101 F.3d at 1390 ("Lilly was more than non-exclusive licensee and shared the interest that UC would obtain valid

---

(…continued)

> Supp. 2d 493, 497 (S.D.N.Y. 2002)).  *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir. 1990).

*Id.* at *28-31 (emphasis added).

[6]     As Mr. Reimer stated, "ASCAP does not have any ownership interest in any of the musical works it licenses on behalf of its members" and it does not "have any interest in the fees or royalties it collects on behalf of its members."  Rifkin Decl., Ex. K (Reimer Decl. at ¶ 5) (Dkt. 146).

and enforceable in the jointly developed patents" (cited in Opp. at 23).  That case illustrates the kind of common legal interest that is needed to support application of the common interest privilege.  Lilly and UC worked together to develop and exploit the patent in question, and they frequently met with their counsel together to discuss protection of the patent.  There are no facts even remotely like that in this case.

Finally, Defendants have continued to misconstrue the decisions in opinions in *Doors Music Co. v. Meadowbrook Inn Corp.*, No. 90-134-D, 1990 U.S. Dist. LEXIS 13935 (D.N.H. July 20, 1990), and *Ocasek v. Heggland*, 673 F. Supp. 1084 (D. Wyo. 1987).  In the *Doors* case, ASCAP moved to be dismissed as a third-party in an infringement case involving one of its members.  The Court concluded that it found no theory of liability on which ASCAP could be liable to the defendant bar owner for all or part of its members' claims against the bar.  *Doors*, 1990 U.S. Dist. LEXIS 13935, at *5.  ASCAP's motion to be dismissed as a third-party was granted on that basis.  *Id.*  Similarly, in *Ocasek*, ASCAP moved to be dismissed from another infringement action involving a different ASCAP member, again claiming that it was neither a necessary nor even a proper party to an infringement action.  *Ocasek*, 673 F. Supp. at 1087.  The *Ocasek* court explained its decision as follows: "ASCAP is a non-exclusive licensee of Plaintiff's copyrights.  As such, it has been viewed as neither a necessary nor even a proper party to an infringement suit . . . .  Consequently, should the patent or copyright be infringed, the nonexclusive licensee theoretically has suffered no legal injury that justifies his participation in the action."  *Id.* at 1087.  And as in *Doors*, ASCAP's motion to be dismissed was again granted on that basis.  *Id.*

Defendants and the Magistrate Judge misconstrue the importance of those two cases.  ASCAP denied having any interest in those infringement actions.  ASCAP's denial of any legal interest in those infringement actions should have led Magistrate Judge Wilner to conclude that it likewise has no legal interest here.  The

- 15 -

Magistrate Judge dismissed the importance of ASCAP's denial, minimizing the holdings in both cases and ignoring ASCAP's factual admission.  Defendants' superficial discussion of *Doors* and *Ocasek* cannot diminish the obvious conflict between ASCAP's admission in those cases that it has no legal interest in infringement actions and the Magistrate Judge's hypothetical finding here that it shared such a legal interest with Summy.

There are no facts in the record to support a finding that Mrs. Sengstack and Mr. Korman were cooperating in formulating or furthering a common "legal" strategy.  Magistrate Judge Wilner's decision that Summy and ASCAP had a common legal interest in the copyright to *Happy Birthday* was clearly erroneous, contrary to law and should be withdrawn.

## V.  CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court withdraw Magistrate Judge Wilner's Order and overrule Defendants' claim of attorney-client privilege in the Coudert Letters.

Dated:  August 29, 2014

WOLF HALDENSTEIN ADLER
FREEMAN & HERZ LLP

By:   _/s/ Betsy C. Manifold_
BETSY C. MANIFOLD

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

- 16 -

**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
BETH A. LANDES (*pro hac vice*)
landes@whafh.com
270 Madison Avenue
New York, NY  10016
Telephone:   212/545-4600
Facsimile:    212/545-4753

*Interim Class Counsel for Plaintiffs and the
[Proposed] Class*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone:  212/797-3737

**HUNT ORTMANN PALFFY NIEVES
  DARLING & MAH, INC.**
OMEL A. NIEVES (134444)
nieves@huntortmann.com
KATHLYNN E. SMITH (234541)
smith@huntortmann.com
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone:  626/440-5200
Facsimile:   626/796-0107

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DONAHUE GALLAGHER**
  **FITZGERALD LLP**
WILLIAM R. HILL (114954)
rock@donahue.com
ANDREW S. MACKAY (197074)
andrew@donahue.com
DANIEL J. SCHACHT (259717)
daniel@donahue.com
1999 Harrison Street, 25th Floor
Oakland, CA 94612-3520
Telephone:  510/451-0544
Facsimile:   510/832-1486

**GLANCY BINKOW & GOLDBERG**
  **LLP**
LIONEL Z. GLANCY (134180)
lglancy@glancylaw.com
MARC L. GODINO (188669)
mgodino@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  310/201-9150
Facsimile:   310/201-9160

*Attorneys for Plaintiffs*

WARNERCHAPPELL:21119.reply.motion.review

- 18 -