E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | Date | November 7, 2014 |
|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | |

| **Presiding: The Honorable** | **GEORGE H. KING, CHIEF U. S. DISTRICT JUDGE** | |
|---|---|---|
| Beatrice Herrera | N/A | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None | None |

**Proceedings:**   **(In Chambers) Order re:** Motion for Review of Magistrate Judge Wilner's Order Re: Discovery Motion [Dkt. 145]

This matter is before us on Plaintiffs' Motion for Review of Magistrate Judge Wilner's Order Re: Discovery Motion ("Motion").  We have considered the papers filed in support of and in opposition to the Motion and deem this matter appropriate for resolution without oral argument. L.R. 7-15.  As the Parties are familiar with the facts, we will repeat them only as necessary.  Accordingly, we rule as follows:

**I. Background**

Plaintiffs Rupa Marya, Robert Siegel, and Good Morning to You Productions Corporation ("Plaintiffs") filed this action to declare Defendant Warner/Chappell Music's ("Warner/Chappell") copyrights to the song "Happy Birthday to You" invalid.

In 1976, Warner/Chappell's claimed copyrights belonged to its predecessor-in-interest, Summy-Birchard Music ("Summy").  (Dkt. 132, Order at 1-2.)  Summy requested legal advice from the Coudert Brothers law firm regarding its "Happy Birthday" copyrights.  (*Id.* at 2.)   In response, the firm sent the company a lengthy letter on the subject.  (*Id.*)  In 1978, Coudert Brothers sent a follow-up letter with additional advice.  (*Id.*)  In 1979, Summy's vice president, Arlene Sengstack, sent both letters (the "Coudert Letters") to Bernard Korman, the general counsel of the American Society of Composers, Authors and Publishers ("ASCAP").  (*Id.*)  A very brief cover letter was attached.  (*Id.*)  The cover letter does not state Sengstack's reason for sending the Coudert Letters to Korman; it indicates only that she and Korman had previous discussions on this subject.  (*Id.*)

ASCAP, which is not a party to this litigation, is a non-profit collective music rights management association.  (*Id.*)  Summy was a member in 1979.  (*Id.*)  ASCAP licenses the public performance rights of its members' musical works, then issues blanket licenses to other parties, saving licensees the inconvenience of having to seek out and negotiate the rights to every song with each individual owner.  (*Id.*)  ASCAP collects license fees and distributes them to its members.  (*Id.*)  ASCAP also can and does sue alleged copyrights infringers on behalf of its members.  (*Id.*)

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | Date | November 7, 2014 |
|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | |

During discovery, Plaintiffs served a subpoena on ASCAP seeking documents related to this action. Among the documents that ASCAP produced were the Coudert Letters along with the Sengstack cover letter. Upon discovering that Plaintiffs possessed the Coudert Letters, Warner/Chappell claimed they were protected by the attorney-client privilege. Plaintiffs brought a motion to overrule the claim of privilege. Judge Wilner heard the motion and ruled in favor of Warner/Chappell. Plaintiffs now seek review of Judge Wilner's order (the "Order").

**II. Standard of Review**

For any non-dispositive pretrial matter, the ruling of a magistrate judge may be modified or set aside only if "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); *see also* Fed. R. Civ. P. 72(a). Both parties agree that this is a non-dispositive pretrial matter. (Mot. at 3; Opp. at 6.) The clearly erroneous standard applies to the magistrate judge's factual findings while the contrary to law standard applies to the magistrate judge's legal conclusions, which we review de novo. *Columbia Pictures, Inc. v. Bunnell*, 245 F.R.D. 443, 446 (C.D. Cal. 2007). In reviewing factual findings for clear error, a district judge may not simply substitute his or her judgment for that of the magistrate judge. *See Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991). Rather, the magistrate judge's ruling is clearly erroneous only when the district court is left with a "definite and firm conviction that a mistake has been committed." *See Burdick v. Comm'r Internal Rev. Serv.*, 979 F.2d 1369, 1370 (9th Cir. 1992).

Judge Wilner's conclusion that the Coudert Letters are privileged rests on two alternate holdings. First, Sengstack's transmission of the Coudert Letters to Korman did not waive attorney-client privilege because Sengstack sent them for the purpose of obtaining legal advice or assistance from Korman. Second, the transmission of the Coudert Letters did not waive any privilege because Sengstack sent them to Korman to further a common legal interest held by ASCAP and Summy.

**III. Attorney Client Privilege**

The attorney-client privilege "protects confidential disclosures made by a client to an attorney in order to obtain legal advice, . . . as well as an attorney's advice in response." *In re Grand Jury Investigation*, 974 F.2d 1068, 1070 (9th Cir. 1992) (quotations and citation omitted). "Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *United States v. Martin*, 278 F.3d 988, 999 (9th Cir. 2002) (quoting *Weil v. Inv./Indicators, Research & Mgmt., Inc.*, 647 F.2d 18, 24 (9th Cir. 1981)). An eight-part test is used to determine if information is privileged:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) unless the protection be waived.

E-FILED
UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | Date | November 7, 2014 |
|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | |

*In re Grand Jury Investigation*, 974 F.2d at 1071 n.2 (quoting *United States v. Margolis (In re Fischel)*, 557 F.2d 209, 211 (9th Cir. 1977)).  The party asserting the privilege bears the burden of proving each essential element.  *United States v. Munoz*, 233 F.3d 1117, 1128 (9th Cir. 2000).

     The Coudert Letters clearly were protected by attorney-client privilege when Coudert Brothers first sent them to Summy in 1976 and 1978.  Plaintiffs do not claim otherwise.  Rather, Plaintiffs claim that when Sengstack sent the Coudert Letters to Korman in 1979, Summy waived its attorney-client privilege with respect to these letters.  Generally, voluntary disclosure of the content of a privileged attorney communication constitutes a waiver of the privilege.  *Weil*, 647 F.2d at 24 (9th Cir. 1981).  But Warner/Chappell argues that Sengstack sent the Coudert Letters to Korman to seek legal advice or assistance, in which case no waiver would have occurred because the transmission was itself protected by the attorney-client privilege.

     The Coudert Letters are lengthy and contain detailed legal analysis and advice, but most of the content has no relevance to this Motion.  Without undermining Warner/Chappel's asserted privilege in the documents, it suffices to say that the Coudert Letters generally relate to the copyrights at issue in the case.  The cover letter from Sengstack is three sentences long and provides little context.  It indicates that Korman and Sengstack had, at some unspecified time for some unspecified reason, a discussion about this subject.  Affidavits and deposition testimony are not available from Sengstack, Korman, or anyone with direct knowledge of why Sengstack sent the Coudert Letters to Korman.  There are no letters between Sengstack and Korman preceding the transmission of the Coudert Letters, no reply letter from Korman following their transmission, and no follow-up from Sengstack.

     Ultimately, Judge Wilner ruled that "the only sensible conclusion that the Court can draw . . . is that ASCAP needed or requested this information to properly represent Summy in exploiting its song rights."  (Order at 6.)  The court reached this conclusion based on three pieces of evidence.

     The first piece is certain "circumstantial components and clues" in the cover letter and the Coudert Letters.  (*Id.* at 7.)  The cover letter was typed by a secretary, on corporate stationery, used Sengstack's business title, and referenced a past discussion between the parties concerning "Happy Birthday to You."  (*Id.*)  The Coudert Letters themselves contained "thoughtful, high-level, and presumably costly legal advice" concerning a piece of intellectual property that, as Judge Wilner put it, may have had "'bet the company value' to Summy."  (*Id.*)  From these components and clues, Judge Wilner inferred that the parties were "dealing with a serious issue of interest to" Summy, not just casually exchanging information.  (*Id.*)

     The second piece of evidence is the nature of the relationship between ASCAP and Summy, a member of ASCAP.  ASCAP licenses the public performance rights to the works owned by its members, such as "Happy Birthday to You," and issues blanket licenses to others, covering all the works owned by ASCAP members.  ASCAP is more than just a licensing agent.  It collects royalties for its members and even prosecutes those who infringe its members' public performance rights.  (*Id.* at 3.)  Based on the nature of this relationship, one could reasonably infer that when Sengstack sent Korman legal memos

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | | Date | November 7, 2014 |
|---|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | | |

regarding Summy's copyrighted works, the communication was more likely than not made for some purpose related to the legal services that ASCAP provides to its members.

Finally, the last piece of evidence is what Judge Wilner called the "core logic regarding management of copyright issues." (*Id.*) Given ASCAP's overall function, it would, in certain scenarios, be called on to defend the validity of a licensor's copyright. A challenge to the validity of a copyright might arise whenever an accused infringer responds to a cease-and-desist letter from ASCAP, a demand for a licensing fee, or a civil infringement action by ASCAP. (*Id.* at 6.) We think it reasonable to infer that an ASCAP member like Summy would want ASCAP to take into consideration the basis for its copyright when deciding how and when to assert claims on the member's behalf—e.g., what to claim and not to claim in a cease-and-desist letter invoking the member's copyright or when and under what circumstances to engage in litigation.

Combining these pieces of evidence together, Judge Wilner's finding that the Coudert Letters were more likely than not sent for the purpose of obtaining legal advice or assistance is not clearly erroneous.

Plaintiffs' primary argument is that the available facts suggest that it is "far more likely that Mrs. Sengstack's letter was merely the continuation of a casual communication between friends or acquaintances than" a communication seeking legal advice or assistance. (Mot. at 15.) They point to certain aspects of the cover letter suggesting that the communication was friendly: "its casual tone, the informal salutation ('Dear Bernie') and signature ('A'), and the lack of lawyerly statements preserving the sender's confidentiality or expressly stating the legal purpose for sending the materials to ASCAP." (Order at 6.) We do not think these aspects of the letter prove much of anything. That Sengstack and Korman were friendly does not reasonably suggest that this communication was in furtherance of some casual social agenda, especially given the circumstances identified by Judge Wilner. It is unlikely, if not speculative, that Sengstack would turn over her employers's sensitive legal memos regarding the company's high value intellectual property to a friend just as a social courtesy. Judge Wilner considered, but rejected, Plaintiffs' alternate scenario. This is not clearly erroneous.

Plaintiffs also claim that Judge Wilner's finding is not based on any evidence on the record at all and therefore erroneous. Plaintiffs suggest that Judge Wilner's holding relied on speculation, pointing to his use of "if" in one sentence from his Order:

> If ASCAP's general counsel acted as Summy's lawyer to obtain material relevant to preparing future copyright infringement actions (even if such actions didn't come to pass), then the client's action in conveying privileged materials did not cause a waiver of the privilege.

(*Id.* at 7.) According to Plaintiffs, the reference to "future copyright infringement actions" is improper because there is no record of any litigation concerning these copyrights—in 1979 or otherwise. (Mot. at 13-14.) We reject these arguments. Judge Wilner's finding is based on evidence on the record, specifically the facts and inferences we have just described. The fact that Judge Wilner used the

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | | Date | November 7, 2014 |
|---|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | | |

conditional word "if" in the above sentence does not mean that he based his ruling on speculation. He was merely describing the logical if/then relationship between his factual finding—Korman acted as Summy's lawyer—and his legal conclusion—no waiver of privilege occurred. Furthermore, it is clear from the sentence that Judge Wilner was not assuming the existence of any lawsuit in reaching his conclusion. (Order at 7 (" . . . even if such actions didn't come to pass . . .").) All he found was that the Coudert Letters were delivered to Korman so that he could be prepared for the possibility of litigation at some future time, and that is enough to deem the communication protected by attorney-client privilege. *See In re Regents of Univ. of Cal.*, 101 F.3d 1386, 1390 (Fed. Cir. 1996) ("It is well established that the attorney-client privilege is not limited to actions taken and advice obtained in the shadow of litigation.").

Plaintiffs also rely on *United States v. American Society of Composers, Authors & Publishers* ("*ASCAP*") in arguing that the Coudert Letters are no longer privileged. 129 F. Supp. 2d 327, 338 (S.D.N.Y. 2001). In *ASCAP*, a member of ASCAP claimed that the association's attorneys could not represent the association in litigation between ASCAP and himself because it created a conflict of interest. *Id.* at 336. The district court had to determine whether ASCAP's attorneys have an attorney-client relationship with the individual members of the association. *Id.* at 336-37. The court articulated a multifactor test for making this determination, weighing "the nature of disclosures to the attorney; the member's expectations of the attorney; the reasonableness of those expectations; whether the attorney had affirmatively assumed a duty to represent the member; whether the member had independent representation; whether the attorney represented the member prior to representing the association; and whether the member relied upon the attorney's representation of its individual interests." *Id.* at 338. Based on this test and other considerations, the court held that at least this particular member was not a client of ASCAP's attorneys. *Id.* at 338-39.

The test in *ASCAP* was used to determine whether an attorney-client relationship existed for purposes of resolving a claimed conflict of interest. That is not an issue in this case. The *ASCAP* court expressly acknowledged that a situation like the one presented here, where an ASCAP member claimed communications with ASCAP's general counsel were privileged against a third party, would be a different matter. *See id.* at 337 ("ASCAP has even conceded that 'ASCAP's general counsel is the attorney for each of ASCAP's members for purposes of invoking the attorney-client privilege against a third party, where a member has requested association-related legal advice.' However, that is not the issue in this case, which is whether the counsel may represent ASCAP in an action brought against it by a member.").

For the foregoing reasons, Plaintiffs' Motion is **DENIED**. Judge Wilner's Order is **AFFIRMED**.

**IT IS SO ORDERED.**

E-FILED

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 13-4460 GHK (MRWx) | Date | November 7, 2014 |
|---|---|---|---|
| Title | *Rupa Marya, et al. v. Warner/Chappell Music, Inc.* | | |

|  | -- | : | -- |
|---|---|---|---|
| | Initials of Deputy Clerk | | Bea |