1 │ BETSY C. MANIFOLD (182450)
  │ manifold@whafh.com
2 │ **WOLF HALDENSTEIN ADLER**
  │   **FREEMAN & HERZ LLP**
3 │ 750 B Street, Suite 2770
  │ San Diego, CA 92101
4 │ Telephone:  619/239-4599
  │ Facsimile:  619/234-4599
5 │
  │ *Interim Lead Counsel for Plaintiffs and the [Proposed]*
6 │ *Class*

7 │ GLENN D. POMERANTZ (112503)
  │ glenn.pomerantz@mto.com
8 │ KELLY M. KLAUS (161091)
  │ kelly.klaus@mto.com
9 │ MELINDA E. LeMOINE (235670)
  │ melinda.lemoine@mto.com
10 │ ADAM I. KAPLAN (268182)
   │ adam.kaplan@mto.com
11 │ **MUNGER, TOLLES & OLSON LLP**
   │ 355 South Grand Avenue
12 │ Thirty-Fifth Floor
   │ Los Angeles, California 90071-1560
13 │ Telephone:  (213) 683-9100
   │ Facsimile:  (213) 687-3702
14 │
   │ *Attorneys for Defendants Warner/Chappell Music, Inc.*
15 │ *and Summy-Birchard, Inc.*

16 │ **UNITED STATES DISTRICT COURT**

17 │ **CENTRAL DISTRICT OF CALIFORNIA -**

18 │ **WESTERN DIVISION**

19 │ GOOD MORNING TO YOU          ) Lead Case No. CV 13-04460-GHK (MRWx)
   │ PRODUCTIONS CORP., *et al.*,   )
20 │                              ) **CROSS-MOTIONS FOR SUMMARY**
   │          Plaintiffs,          ) **JUDGMENT**
21 │                              )
   │ v.                           )
22 │                              ) Date:     January 26, 2015
   │ WARNER/CHAPPELL MUSIC,       ) Time:     9:30 a.m.
23 │ INC., *et al.*,                ) Room:     650
   │                              ) Judge:    Hon. George H. King,
24 │          Defendants.         )           Chief Judge
   │                              )
25 │                              )
   │                              )
26 │
27 │
28 │

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTORY STATEMENTS AND BACKGROUND ........................1

    A.    Plaintiffs' Statement .................................................................1

    B.    Warner/Chappell's Statement .................................................3

II.   ISSUE NUMBER ONE:  WHETHER *HAPPY BIRTHDAY TO YOU* WAS ELIGIBLE FOR FEDERAL COPYRIGHT PROTECTION IN 1935 ....................................................................................................7

    A.    Plaintiffs' Position:  *Happy Birthday* Was Not Copyrightable in 1935 ...........................................................................7

    B.    Warner/Chappell's Position:  *Happy Birthday to You* Was Copyrightable in 1935 ...............................................15

        1.    Plaintiffs' Authorship and Authorization Arguments Fail .........15

        2.    Plaintiffs' Prior Use Argument Fails .........................................17

III.  ISSUE NUMBER TWO:  WHETHER THE SCOPE OF REGISTRATIONS E51990 AND/OR E51988 1935 INCLUDES THE LYRICS TO *HAPPY BIRTHDAY* ...................................................21

    A.    Plaintiffs' Position Even if *Happy Birthday* Were Copyrightable, Defendants Did Not Obtain Rights to the Song or Copyright It ..........21

        1.    Summy Co. Licensed Rights to Piano Arrangements Only .......22

        2.    The Presumption Is Limited to the Facts Stated in the Certificates ..................................................................................23

        3.    The Limited Presumption is Easily Rebutted by the Overwhelming Weight of the Evidence ....................................31

        4.    *Happy Birthday* Was Not Protected Before it Was Published ..................................................................................34

    B.    Warner/Chappell's Position ...................................................35

        1.    Plaintiffs Cannot Rebut the Presumption That Summy Was Authorized to Publish the Lyrics ....................................35

        2.    The Undisputed Evidence Shows that Summy Copyrighted the Lyrics .................................................37

        3.    Plaintiffs Fail to Rebut the Presumption that Summy Owned a Valid Copyright in the Lyrics ...................................45

        4.    Plaintiffs' Notice Argument Fails ............................................48

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

IV.  ISSUE NUMBER THREE:  WHETHER DEFENDANTS OBTAINED TITLE TO COPYRIGHT REGISTRATIONS E51990 AND/OR E51988 ..........................................................................................48

　　A.  Plaintiffs' Position: Defendants Cannot Prove a Continuous Chain of Title to *Happy Birthday*........................................................48

　　B.  Plaintiffs' Chain of Title Argument Fails ...............................................49

V.  CONCLUSION ..........................................................................................50

　　A.  Plaintiffs' Concluding Statement ........................................................50

　　B.  Warner/Chappell's Concluding Statement ...........................................50

# TABLE OF AUTHORITIES

**Page**

**FEDERAL CASES**

*A&M Records v. Napster, Inc.*,
    239 F.3d 1004 (9th Cir. 2001) ................................................................. 14, 20

*Abend v. MCA, Inc.*,
    863 F.2d 1465 (9th Cir. 1988), aff'd sub nom. *Stewart v. Abend*, 495 U.S. 207 (1990) ........ 17

*Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*,
    944 F.2d 1446 (9th Cir. 1991) ................................................................. 15, 17, 37

*American Vitagraph, Inc. v. Levy*,
    659 F.2d 1023 (9th Cir. 1981) ................................................................. 12, 13, 19

*Andrews v. Metro N. Commuter R.R. Co.*,
    882 F.2d 705 (2d Cir. 1989) ..................................................................... 42

*Apparel Bus. Sys., LLC v. Tom James Co.*,
    No. 06-1092, 2008 U.S. Dist. LEXIS 26313 (E.D. Pa. Mar. 28, 2008) ........................... 26, 43

*Arista Records LLC v. Lime Group LLC*,
    No. 06 cv 5936 (KMW) 2011 U.S. Dist. LEXIS 35362, 2011 WL 1226277 (S.D.N.Y. Mar. 29, 2011) ................................................................. 10

*Arista Records LLC v. Lime Grp. LLC*,
    No. 06 CV 5936 (KMW), 2011 WL 1641978 (S.D.N.Y. Apr. 29, 2011) ....................... 16, 37

*Baron v. Leo Feist, Inc.*,
    173 F.2d 288 (2d Cir. 1949) ..................................................................... 30

*Baron v. Leo Feist, Inc.*,
    78 F. Supp. 686 (S.D.N.Y. 1948), aff'd, 173 F.2d 288 (2d Cir. 1949) ................................. 16

*Budget Cinema Inc. v. Watertower Assocs.*,
    81 F.3d 729 (7th Cir. 1996) ..................................................................... 30

*California Ass'n of Bioanalysts v. Rank*,
    577 F. Supp. 1342 (C.D. Cal. 1983) ................................................................. 38

*Carte v. Ford*,
    15 F. 439, 442 (C.C.D. Md. 1883) ................................................................. 14, 18

*Castano v. Am. Tobacco Co.*,
    908 F. Supp. 378 (E.D. La. 1995) ................................................................. 20

*Data East USA, Inc. v. Epyx, Inc.*,
    862 F.2d 204 (9th Cir. 1988) ..................................................................... 39

*Dowdey v. Phoenix Films, Inc.*,
No. 78 Civ. 699-CSH, 1978 WL 951 (S.D.N.Y. July 24, 1978) .......................................... 18

*Durham Indus., Inc. v. Tomy Corp.*,
630 F.2d 905 (2d Cir. 1980) .................................................................................... 11

*Eden Toys, Inc. v. Florelee Undergarment Co.*,
697 F.2d 27 (2d Cir. 1982) ............................................................................ 10, 16, 37

*Effects Assoc., Inc. v. Cohen*,
908 F.2d 555 (9th Cir. 1990) ...................................................................................... 31

*Egner v. E.C. Schirmer Music Co.*,
139 F.2d 398 (1st Cir. 1943) ...................................................................................... 20

*Egner v. E.C. Schirmer Music Co.*,
48 F. Supp. 187 (D. Mass. 1942), aff'd, 139 F.2d 398 (1st Cir. 1943), cert. denied, 322
U.S. 730 (1944) ............................................................................................... passim

*Enter. Mgmt. Ltd. v. Warrick*,
717 F.3d 1112 (10th Cir. 2013) ................................................................................ 39

*Entm't Research Group v. Genesis Creative Group*,
122 F.3d 1211 (9th Cir. 1997) ...................................................................... 11, 21, 31

*Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*,
194 F.3d 1211 (2d Cir. 1999) ........................................................................ 12, 13, 18

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,
499 U.S. 340 (1991) ...................................................................................... 5, 24, 45

*Ferris v. Frohman*,
223 U.S. 424 (1912) ...................................................................................... 5, 13, 18

*Fonar Corp. v. Domenick*,
105 F.3d 99 (2d Cir. 1997) ........................................................................................ 39

*Gaste v. Kaiserman*,
863 F.2d 1061 (2d Cir. 1988) ............................................................................ 15, 48

*Gerlach-Barklow Co. v. Morris & Bendien*,
23 F.2d 159 (2d Cir. 1927) ........................................................................................ 22

*Hampton v. Paramount Pictures Corp.*,
279 F.2d 100 (9th Cir. 1960) .............................................................................. 15, 20, 21

*Harper & Row, Publ'rs v. Nation Enters.*,
471 U.S. 539 (1985) .................................................................................................. 25

*Harris v. Emus Records Corp.*,
734 F.2d 1329 (9th Cir. 1984) ................................................................. 16

*Holmes v. Hurst*,
174 U.S. 82 (1899) ................................................................. 11, 15, 21

*Hosp. for Sick Children v. Melody Fare Dinner Theatre*,
516 F. Supp. 67 (E.D. Va. 1980) ................................................................. 39, 42

*Icon Enters. Int'l v. Am. Prods. Co.*,
No. cv 04-1240 SVW 2004 U.S. Dist. LEXIS 31080 (C.D. Cal. Oct. 7, 2004) .................... 25

*Imperial Toy Corp. v. Goffa Int'l Corp.*,
988 F. Supp. 617 (E.D.N.Y. 1997) ................................................................. 45, 46

*InstantCert.com, LLC v. Advanced Online Learning, LLC*,
No. 2:11–cv–1833–MMD–GWF, 2012 WL 3689498 (D. Nev. Aug. 27, 2012) .................. 43

*Jackson v. Axton*,
25 F.3d 884 (9th Cir. 1994) ................................................................. 9

*Jerry Vogel Music Co., Inc. v. Forster Music Publisher, Inc.*,
147 F.2d 614 (2d Cir. 1945) ................................................................. 34, 47

*Kennedy v. Allied Mut. Ins. Co.*,
952 F.2d 262 (9th Cir. 1991) ................................................................. 40

*Kronigsberg Int'l, Inc. v. Rice*,
16 F.3d 355 (9th Cir. 1994) ................................................................. 30, 31

*La Cienega Music Co. v. ZZ Top*,
534 F.3d 950 (9th Cir. 1995) ................................................................. 23

*Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*,
456 F .Supp. 531 (S.D.N.Y. 1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978) ................................ 14

*Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*,
116 F.3d 484 (9th Cir. 1997) ................................................................. 7, 49

*Magnuson v. Video Yesteryear*,
85 F.3d 1424 (9th Cir. 1996) ................................................................. 16

*McKesson Corp. v. Islamic Republic of Iran*,
185 F.R.D. 70 (D.D.C. 1999) ................................................................. 25

*Mestre v. Vivendi Universal U.S. Holding Co.*,
No. CV 04-442 MO, 2005 WL 1959295 (D. Or. Aug. 15, 2005) ................................ 43

*Nat'l Broad. Co. v. Sonneborn*,
630 F. Supp. 524 (D. Conn. 1985) ................................................................. 38

*Nat'l Comics Publ'n v. Fawcett Publications,*
  191 F.2d 594 (2d Cir. 1951) (Hand, J.) .................................................................. 5

*Neri v. Monroe,*
  726 F.3d 989 (7th Cir. 2013) ...................................................... 25, 26, 42

*Norden v. Oliver Ditson Co.,*
  13 F. Supp. 415 (D. Mass. 1936) ................................................ 36, 28

*North Coast Indus. v. Maxwell,*
  972 F.2d 1031 (9th Cir. 1992) ................................................................ 31

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
  134 S. Ct. 1962 (2014) ..................................................................... 6, 44

*Rohauer v. Friedman,*
  306 F.2d 933 (9th Cir. 1962) ............................................................ 23, 36

*S.-W. Publ'g Co. v. Simons,*
  651 F.2d 653 (9th Cir. 1981) ................................................................ 17

*Samet & Wells, Inc. v. Shalom Toy Co.,*
  429 F.Supp. 895 (E.D.N.Y. 1977) ........................................................ 13

*Schaffer ex rel. Schaffer v. Weast,*
  546 U.S. 49 (2005) ....................................................................... 7, 35

*Seiler v. Lucasfilm, Ltd.,*
  808 F.2d 1316 (9th Cir. 1987) ................................................ 27, 28, 43

*Sheldon v. Metro-Goldwyn Pictures Corp.,*
  81 F.2d 49 (2d Cir. 1936) .................................................................... 45

*Twin Books Corp. v. Walt Disney Co.,*
  83 F.3d 1162 (9th Cir. 1996) ................................................................ 34

*U.S. Auto Parts Network, Inc. v. Parts Geek, LLC,*
  692 F.3d 1009 (9th Cir. 2012) .............................................................. 24

*Unistrut Corp. v. Power,*
  280 F.2d 18 (1st Cir. 1960) ............................................... 22, 27, 43

*United States v. Taylor,*
  166 F.R.D. 356 (M.D.N.C. 1996) ......................................................... 25

*Urantia Found. v. Burton,*
  No. K 75-255 CA 4, 1980 WL 1176 (W.D. Mich. Aug. 27, 1980) ....................... 17

*Urantia Found. v. Maaherra,*
  114 F.3d 955 (9th Cir. 1997) ................................................................ 16

*Vapac Music Publ'g, Inc. v. Tuff 'N' Rumble Mgmt., Inc.,*
    No. 99 Civ. 10656(GEL), 2002 WL 31519612 (S.D.N.Y. Nov. 8, 2002) ...........................50

*Watkins v. Chesapeake Custom Homes, L.L.C.,*
    330 F. Supp. 2d 563 (D. Md. 2004) ....................................................................30

*Wihtol v. Crow,*
    309 F.2d 777 (8th Cir. 1962) ............................................................................36

*Wihtol v. Wells,*
    231 F.2d 550 (7th Cir. . 1956) .........................................................................12

**STATE CASES**

*Blanc v. Lantz,*
    No. 547157, 1949 WL 4766 (Cal. Super. Ct. Sept. 30, 1949)................................19

**REGULATORY CASES**

*Blanc v. Lantz,*
    83 U.S.P.Q. 137 (Cal. Super. 1949) ............................................................12, 19

**FEDERAL STATUTES**

17 U.S.C. § 12 (1909) ............................................................................................39

17 U.S.C. § 18 .......................................................................................................48

17 U.S.C. § 28 .......................................................................................................30

17 U.S.C. § 204(a) .................................................................................................30

17 U.S.C. § 209 ...............................................................................................23, 36

17 U.S.C. § 304(b) ..................................................................................................4

17 U.S.C. § 410(c) ...................................................................................6, 15, 36, 38

17 U.S.C. § 411(b)(1) .............................................................................................16

17 U.S.C. § 704(d) ............................................................................................39, 44

**FEDERAL RULES**

Fed. R. Evid. 803(16),804(b)(3) ..............................................................................8

Fed. R. Evid. 803(16).804(b)(4) ..............................................................................8

Fed. R. Evid. 902(1)(A) and (B) .............................................................................22

Fed. R. Evid. 1001 ................................................................................................27

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

Fed. R. Evid. 1002 ................................................................................................ 27

**FEDERAL REGULATIONS**

37 C.F.R. ¶ 202.1 ................................................................................................ 12

37 C.F.R. § 202.1 ................................................................................................ 21

37 C.F.R. § 202.1(a) ............................................................................................ 21

**TREATISES**

1 Nimmer on Copyright ("Nimmer") § 4.03[A] (2014) ........................................ 18

3 Nimmer on Copyrights, § 10.03[A][3] (2014) ................................................. 30

Nimmer on Copyrights § 12.11[B][1][ a] ........................................................... 48

# I.   INTRODUCTORY STATEMENTS AND BACKGROUND

## A.   Plaintiffs' Statement

Defendants claim to own a copyright to *Happy Birthday to You* ("*Happy Birthday*" or the "Song"), the world's most popular song. *Happy Birthday* consists of a simple melody originally composed by Mildred J. Hill in 1889 or 1890 as part of a different song, *Good Morning to All* ("*Good Morning*"), which she wrote with her sister Patty S. Hill, together with simple lyrics that were written sometime thereafter. *Good Morning* was copyrighted in 1893 by Clayton F. Summy ("Summy"), and it was purportedly renewed by Jessica Hill (Mildred's and Patty's other sister) in 1921.  Exhibit ("Ex.") 2 at 50 (¶¶ 19, 20, 22).[1]  Whether the renewal was valid or not, there is no dispute that the copyright for *Good Morning*, including the melody that is shared with *Happy Birthday*, expired in 1949. That common melody has been in the public domain for more than 65 years.

Despite more than a century of documented public performances, decades of disputed claims, and the Song's ubiquity, no court ever has determined whether Defendants (or any predecessor) own any rights to it. Although it has been used and performed innumerable times over the past 80 years without Defendants' (or any predecessor's) permission, no one has ever been sued for infringing any copyright to *Happy Birthday*. That uncertainty has been no accident. Because Defendants cannot prove they own the Song or the scope of the disputed copyrights, they have obfuscated the record for decades, relying upon empty threats of copyright infringement and the draconian penalties that might be imposed, to intimidate Plaintiffs and countless others into paying for the right to use or perform a song that belongs to the public.

On December 9, 1935, pursuant to the limited rights it licensed from Jessica Hill, Mildred's heir, to "***various piano arrangements***" of *Good Morning* in 1934

---

[1]   All "Ex." cites are to Exhibits in the Joint Evidentiary Appendix filed concurrently herewith.

and 1935, the Clayton F. Summy Co. ("Summy Co.") obtained two copyrights, Reg. Nos. E51988 and E51990, upon which Defendants now rely. *See* Exs. 44, 48, 4 at 82 (¶3a). Those copyrights, which expired in 1962, do not protect the Song itself. E51988 protects only new work done by R.R. Forman ("Forman"), an employee-for-hire of Summy Co., who composed a musical arrangement for unison chorus and wrote a second verse for the Song. Defendants admit that Forman did ***not*** write the familiar *Happy Birthday* lyrics.  Ex. 2 at 60 (¶ 92). Likewise, E51990 protects only new work done by Preston Ware Orem ("Orem"), another employee-for-hire of Summy Co., who composed a musical arrangement of the Song as an easy piano solo, with text. However, no one is able to say what that "text" was. Exs. 48, 4 at 82 (¶3b). Whatever it may have been, Defendants also admit that Orem did ***not*** write the Song's familiar lyrics.  Ex. 2 at 60 (¶ 92).

No one – including Defendants – can prove who wrote the familiar lyrics to *Happy Birthday* or when they were written. According to Defendants, none of that matters because the registration certificates for the *Happy Birthday* copyrights supposedly prove that they (or at least a predecessor) own the Song. The ***actual*** certified registration certificates for E51988 and E51990, as opposed to the inadmissible, unofficial records Defendants rely upon, do not even mention Mildred or Patty Hill, much less state as a fact that either (or both) of them wrote *Happy Birthday*. Ex. 4 at 82 (¶ 3).  The certificates do not show how Defendants acquired rights to the Song from Mildred or Patty Hill. Even if Mildred or Patty Hill (or both of them) wrote the lyrics, the Song itself (*i.e.*, the familiar lyrics set to the *Good Morning* melody) was not copyrightable in 1935 because it had been published and performed publicly countless times for ***more than three decades*** before E51988 and E51990 were registered in 1935. Patty Hill – who claimed to have written the Song's familiar lyrics – allowed *Happy Birthday* to be sung by every student in her school and admitted it belonged to the public.  Ex. 87 at 1019.  Long before those copyrights were registered, *Happy Birthday* had become a public work – indeed, a

part of the nation's cultural fabric.

Even if the Song were copyrightable in 1935, Defendants cannot prove they own the Song since there is no proof that Summy Co. acquired rights to the lyrics from its author (whoever that was). In 1934 and 1935, Summy Co. licensed only "***various piano arrangements*** to the said musical composition of 'Good Morning to All'" from Jessica Hill, ***not*** the Song itself. Summy Co. then registered two piano arrangements composed by Forman and Orem, its employees-for-hire. There is no evidence of any other transfer of rights from ***anyone*** to Summy Co. before it registered E51988 and E51990.

The registration certificates do not prove that Defendants own the Song. To the contrary, E51988 (including the deposit copy of the work covered by that copyright) proves that Defendants only own rights to a specific piano arrangement and the obscure second verse, ***not*** the immensely popular Song itself.  Joint Brief ("Br.") at 22-34.  Likewise, E51990 proves that Defendants only own rights to an "easy piano arrangement, with text." The copyright certificate does not prove what that "text" was, no one (including Defendants) knows what it was, and the deposit copy of the work covered by that copyright no longer exists. Beginning with the fact that Forman (author of the work-for-hire covered by E51988) and Orem (author of the work-for-hire covered by E51990) did ***not*** write the familiar *Happy Birthday* lyrics (Ex. 2 at 60-61 (¶¶ 92, 97), respectively), the evidence proves that those two copyrights did not and could not have covered the Song.

The Court now can sweep aside Defendants' decades-long obfuscation and subterfuge and declare, finally, that *Happy Birthday* belongs to the public.

### B.    Warner/Chappell's Statement

Plaintiffs' Motion is long on rhetoric but short on controlling law and material evidence.  The simple fact is that Defendants ("Warner/Chappell") own federally registered copyrights in *Happy Birthday to You*, the registration certificates are prima facie evidence of the facts that establish Warner/Chappell's ownership, and

Plaintiffs fail to raise any genuine issue rebutting those presumptions.

Sisters Mildred and Patty Hill (the "Hill Sisters") jointly composed and wrote the music and words for a collection of songs, including *Good Morning to All*. Ex. 1 at 5. Its lyrics are: "Good morning to you, Good morning to you, Good morning dear children, Good morning to all." *Id.* at 6. The Hill Sisters assigned their interest in the manuscript to Clayton F. Summy, and Clayton F. Summy Co. ("Summy") copyrighted it. *Id.* While writing *Good Morning to All*, the Hill Sisters wrote a number of songs with the melody of *Good Morning to All* but different titles and lyrics. Ex. 87 at 1007-08. One of these contained the lyrics "Happy Birthday to you, Happy Birthday to you, Happy Birthday dear ____, Happy Birthday to you" (what Plaintiffs call the "familiar" lyrics). Ex. 1 at 6-7.

In the early 1930s, another Hill sister, Jessica, allowed Summy to publish and sell *Happy Birthday to You*. Ex. 50 at 668-69. On December 9, 1935, Summy published two versions of *Happy Birthday to You* that included lyrics and obtained registration certificates E51988 and E51990. Exs. 101, 103. The E51988 version included both the familiar lyrics, and a second verse written by R.R. Forman, a Summy employee. Ex 43. This second verse consisted of the lyrics "May your birthday be bright, Full of cheer and delight, Happy birthday dear ____, Happy birthday to you." *Id.* Forman also arranged the music for the 51988 version. Ex. 103. As shown below, the evidence conclusively establishes that the E51990 version contained only the familiar *Happy Birthday to You* lyrics. The music for this version was arranged by Preston Ware Orem, another Summy employee. Ex. 101. In 1944, Patty and Jessica assigned their rights in E51990 and E51988 to the Hill Foundation, which in turn assigned the rights to Summy. Exs. 113, 115, 126. On December 6, 1962, Summy-Birchard Co.—Summy's successor—renewed these copyrights. Exs. 120, 104. Defendants now own E51990 and E51988. Ex. 108; *infra* Section IV.B. By statute, the copyrights have a term of 95 years from their 1935 registration. 17 U.S.C. § 304(b).

Plaintiffs claim to be incredulous that a work that achieved such significant popularity could be protected by copyright, either in 1935 or today.  But Plaintiffs' strained and increasingly strident arguments simply confirm that their real quarrel is with well-established law, which weighs against Plaintiffs on every issue and compels summary judgment in Warner/Chappell's favor.

*First*, Plaintiffs claim that because other people, beyond the Hill Sisters' hometown of Louisville, used the lyrics to *Happy Birthday to You* prior to the 1935 registrations, and because Patty Hill had taught the lyrics to her students, those lyrics must not be original to Mildred (and/or Patty) Hill, or must have been dedicated to the public domain.  Plaintiffs misunderstand copyright law.  The fact that parties other than the Hill Sisters disseminated the lyrics to *Happy Birthday to You* prior to the 1935 registration does not displace the copyright that Warner/Chappell now owns.  So long as the Hill Sisters had not copied the lyrics from someone else—a proposition for which Plaintiffs have put forth no evidence— the work remains original *to them*, and thus fully eligible for copyright protection. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 345 (1991).  So long as the Hill Sisters did not publish or authorize others to publish their works prior to the 1935 registration, their *Happy Birthday to You* remained protected by common law copyright until the time of that registration.  Again, Plaintiffs have no evidence that either of the Hill Sisters authorized any publication of the song.  Plaintiffs also cite performances of the song, but the law is clear that a performance does not constitute a "publication" that forfeits common law protection.  *Ferris v. Frohman*, 223 U.S. 424, 435-36 (1912).  And, so long as an author does not "'abandon' his literary property in the 'work' before he has published it … by some overt act which manifests his purpose to surrender his rights in the 'work,'" there is no basis for finding the work to have been dedicated to the public domain.  *Nat'l Comics Publ'n v. Fawcett Publications*, 191 F.2d 594, 598 (2d Cir. 1951) (Hand, J.).  Plaintiffs have no evidence of abandonment by the Hill Sisters.

_Second_, Plaintiffs claim that the copyrights that Summy obtained in 1935 are limited to mere "piano arrangements." That is wrong. Certificates E51990 and E51988 are prima facie evidence of the validity of the copyrights registered therein and the facts that the certificates contain. 17 U.S.C. § 410(c). Congress knew that copyrights often would last beyond the lives of authors, and Congress intended that registration certificates would perform important evidentiary work for the duration of the copyright term. _See Petrella v. Metro-Goldwyn-Mayer, Inc._, 134 S. Ct. 1962, 1976-77 (2014) (stating that Congress knew "the passage of time and the author's death could cause a loss or dilution of evidence," and noting that "[t]he registration mechanism … reduces the need for extrinsic evidence").

Certificate E51990 establishes prima facie that Warner/Chappell has a copyright in _Happy Birthday to You_'s "**words**" and "**text**"—what the undisputed evidence shows to be the "familiar lyrics." Ex. 101; _infra_ Section III.B.2.[2] Plaintiffs feign ignorance about what "text" the registration could refer to, but it can only refer to the familiar lyrics. Indeed, in describing the 1935 publication of _Happy Birthday to You_ that contained only these lyrics, Plaintiffs' own expert admitted "[t]he copyright certificate talks about an easy piano solo with words and that is what this is." Ex. 110 at 1617A-1618. If any further proof were needed—and it is not—it is supplied by certificate E51988, registered the exact same day by Clayton F. Summy, Warner/Chappell's predecessor, which refers to an "arrangement of unison chorus" and "revised text." Ex. 103. E51988 contains the "familiar lyrics" and a "second verse." Ex. 43 (deposit copy). The only "revised text" therein is the "second verse." Thus, the _un_revised text is, and can only be, the "familiar lyrics," which were registered the same day in E51990. Plaintiffs, who bear the burden

---

[2] Plaintiffs erroneously claim that the _applications_ for E51990 and E51988 are the _registrations_. Exs. 44, 48. Warner/Chappell has submitted admissible copies of the _registrations_ from the Copyright Office. Exs. 101, 103, 107 at 109 at 1553-54, 1561 (Blietz Dep.), 125.

proof, have no admissible evidence rebutting the certificates.[3]

*Third*, Plaintiffs make a last-ditch argument that Warner/Chappell has failed to prove it owns the copyrights at issue. Warner/Chappell, which does not bear the burden in this case, has submitted corporate records that lay out in extensive detail each step in the chain of title from Summy to Defendants. Plaintiffs cannot create a genuine issue of material fact by theorizing, without evidence, that the family that owned and operated Warner/Chappell's predecessors continuously between 1931 and 1988 might not have owned their company's stock shares. *Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*, 116 F.3d 484 (9th Cir. 1997).

## II. ISSUE NUMBER ONE: WHETHER *HAPPY BIRTHDAY TO YOU* WAS ELIGIBLE FOR FEDERAL COPYRIGHT PROTECTION IN 1935

### A. Plaintiffs' Position: *Happy Birthday* Was Not Copyrightable in 1935

Defendants claim they own *Happy Birthday* based upon two federal copyrights, E51988 and E51990, both registered on December 9, 1935.[4] However, because the Song had been published, publicly performed, and sung millions of times for more than three decades before then, it was no longer copyrightable. *See infra*, at 8, 9, 32, listing 1901, 1911, 1912, 1915, and 1924 publications, (film presentations of the Song pre-dating the registrations for E51988 and E51990), 88 at 1043.

Defendants have variously theorized that the familiar *Happy Birthday* lyrics were written either by Orem, Patty and/or Mildred Hill. To fit what they say are the registration certificates for E51988 and E51990, Defendants have settled on a theory

---

[3] Plaintiffs bear not only the burden of production—as a result of Warner/Chappell's copyright certificates—but also the burden of persuasion, as the plaintiffs in an action that does not involve a claim of infringement. *See generally Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005).

[4] Defendants do not claim any right to *Happy Birthday* except whatever federal copyrights may have been protected under E51988, E51990 and their renewals, Reg. Nos. R306185 and R306186. Br. at 35-37. They do not claim any common law copyright to the Song. *See* Ex. 97 at 1111-1112. Any common law copyright that may have existed ended more than a century ago.

that Mildred authored the lyrics, eschewing: (i) the absence of any evidence that Mildred ever wrote any lyrics; (ii) Patty's sworn testimony that Mildred composed only the music and Patty wrote all the lyrics for all the songs they wrote together; (iii) Patty's sworn testimony that *she* wrote the *Happy Birthday* lyrics in her classroom as one of many variations of *Good Morning* that she taught to her students;[5] and (iv) Jessica's competing claim that *she* created the lyrics in her living room on a winter evening in 1892.[6] Whoever created those lyrics as a variation of *Good Morning* around the turn of the century – and it is just as likely that it was "created" many times as a simple variation of Mildred's popular tune – the Song had become widespread by 1901 and was firmly entrenched in the public consciousness through millions of performances by 1935. Thus, *Happy Birthday* was not copyrightable when Summy Co. registered E51988 and E51990 to protect Forman's and Orem's piano arrangements.

But even accepting Defendants' conjecture that Mildred Hill (or Patty Hill, or maybe both of them) wrote the familiar *Happy Birthday* lyrics and set them to the *Good Morning* melody, they did not regard the lyrics as copyrightable.[7] The Song's familiar lyrics were associated with the melody *in writing* as early as 1901, and by then the combination of the familiar lyrics with the *Good Morning* melody was so

---

[5] *See* Ex. 87 at 1007 in (*Hill v. Harris*, Patty Hill testified in 1935 that she wrote "the words for this particular tune of 'Good Morning to All,'" apparently referring to *Happy Birthday*.) The Song was just one of many variations on *Good Morning* that Patty and her students created. *Id*. She identified other variations as well, including "'Good-bye to You,' 'Happy New Year to You,' and so forth." *Id*. She never claimed a copyright for *any* of those variations, including *Happy Birthday*.

[6] Jessica Hill once said she created and performed *Happy Birthday* for the first time in her family's living room in 1892. Ex. 60 at 754 (January 1950 *The American Family* magazine article). However, she did not make the same claim when she was deposed in *Hill v. Harris*. *See* Ex. 87 at 1029-1039 .

[7] To the contrary, Jessica Hill remembered that Patty "often said she considered [*Happy Birthday*] *common property with the public*." Ex. 60 at 754 (emphasis added). Indeed, Patty believed her ditty was common property with the nation. Ex. 90 at 1047 (August 27, 1934 article in TIME Magazine entitled "Music:Good Morning,"). TIME Magazine also recounted Jessica's claim that she created the song at a family gathering in the winter of 1892. *Id*. These old newspaper articles are admissible as ancient documents, Patty's comments are statements against her economic interest, and Jessica's statement is a statement of personal family history. *See* Fed. R. Evid. 803(16),804(b)(3) and (b)(4).

well-known that a mere reference to "Happy birthday" was sufficient to identify it. Ex. 8 at 213-214 (article re: "First Grade Opening Exercises"). The full lyrics were associated with the melody *in writing* by 1911. Ex. 11 at 461. The lyrics and music were published together in sheet music as early as 1912 (Ex. 13 at 493-4 (sheet music from a *Beginners' Book of Songs*)), and the popular substitution of the familiar birthday lyrics was acknowledged in 1912 and 1915 in sheet music entitled "Good Morning to You. Good Bye to You - Happy Birthday to You." Ex. 14 at 497. The familiar lyrics and music were published together in *copyrighted* works no later than 1924. Ex. 18 at 512 (sheet music in *Harvest Hymns*). The Song was also performed many times in singing telegrams, Broadway plays, a feature-length cartoon, and several feature-length movies prior to 1935. *See* Exs. 15 (compilation video from *Bosko's Party* (1932), *Girls About Town* (1931), *Strange Interlude* (1932), *Way Down East* (1935), and *Baby Take A Bow* (1935)); 89 at 1045 (music licensing report complied for MGM in connection with *Strange Interlude* attributed Song to public domain)); 32 (use in Broadway show)); 52 (use in singing telegrams). And, of course, it had been sung literally millions of times in birthday celebrations from coast to coast.

In *Egner v. E.C. Schirmer Music Co.*, 48 F. Supp. 187 (D. Mass. 1942), *aff'd*, 139 F.2d 398 (1st Cir. 1943), *cert. denied*, 322 U.S. 730 (1944),[8] Edmund Gruber and his fellow Army officers wrote "The Caisson Song" in 1908 to commemorate the reunion of their artillery regiment. The song quickly became popular, and by World War I, it was being sung throughout the Army. *Id.* at 188. In 1917, the song was adapted by John Philip Sousa as "The U.S. Field Artillery March." *Id.* Finding that the widespread popularity of the song within the Army and the publication of Sousa's "Field Artillery March" could not have escaped Gruber's knowledge, the court concluded that it "constituted such a general publication of his work as to

---

[8] Cited with approval in *Jackson v. Axton*, 25 F.3d 884, 889 (9th Cir. 1994).

1    amount to a dedication of it to the public use." *Id.* at 188-89. The court also based its

2    holding on the fact that the plaintiffs, who acquired limited rights to use the song

3    from Gruber in 1921,[9] "took no steps to stop others from using 'The Caisson

4    Song.'" *Id.* at 189.[10]

5         The facts in *Egner* are exactly the same as the facts here. Assuming that Patty

6    Hill (or Mildred Hill) had written *Happy Birthday*, there is no genuine dispute that

7    Patty Hill taught the Song to her students, after which it immediately became

8    immensely popular throughout the school (it was sung with every birthday

9    celebration) and quickly became popular throughout the country.  Br. at 7, n. 5.  By

10   1901, a mere reference to "Happy birthday" was sufficient to identify the Song.

11   Before Summy Co. copyrighted the two piano arrangements in 1935, the Song had

12   been performed in Broadway plays, feature length cartoons, and major motion

13   pictures, it was used as the world's first singing telegram, it was published by others

14   in multiple songbooks, and it undoubtedly had been sung tens of millions of times.

15   Br. at 8-9.  As the court found in *Egner*, this Court should find that the Song's

16   immense popularity could not possibly have escaped the Hill Sisters' and Summy

17   Co.'s knowledge long before 1935. And, like the plaintiffs in *Egner*, the Hill Sisters

18   and Summy Co. took no steps to stop others from using *Happy Birthday*, and sought

19   only to enforce their copyright to *Good Morning*, which unquestionably expired by

20

21   [9] Gruber's limited assignment of rights to "The Caisson Song" is no different than Jessica Hill's limited license to Summy Co. to "***various piano arrangements***" of *Good Morning*.  Brf. at 23-26.

22   [10] Defendants' standing argument is a misplaced diversion. In *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982), the plaintiff claimed to

23   have an oral agreement for an exclusive license from the copyright owner and the terms of their agreement was not disputed. The Second Circuit held that the oral

24   agreement was not invalid, required plaintiff to prove its terms and that the agreement was later reduced to writing. Defendant was allowed to challenge the

25   scope of the alleged license.  *Id.* at 36. There is no proof that the Hill Sisters even knew about Summy Co.'s unauthorized use of their work as *Happy Birthday*, much

26   less that they agreed to it. *Arista Records LLC v. Lime Group LLC*, No. 06 cv 5936 (KMW) 2011 U.S. Dist. LEXIS 35362, at *21, 2011 WL 1226277 (S.D.N.Y. Mar.

27   29, 2011) also does not support the standing argument because the district court declined to decide whether the defendant had standing to challenge an alleged oral

28   transfer, but held that the plaintiffs could not meet their burden of proof "without the written agreements or other evidence establishing the validity of these transfers."

1  1949, after which no further action was ever taken to enforce *any* copyrights.

2     In *Holmes v. Hurst,* 174 U.S. 82 (1899), the Supreme Court held that an

3  author who allows his work to be published loses his right to copyright the whole

4  work, regardless of "his actual intention not to make such abandonment" and

5  regardless of "the particular form which such production ultimately takes." 174 U.S.

6  at 89. In that case, Dr. Oliver Wendell Holmes, a noted physician, poet and author

7  and father of the Supreme Court justice, wrote a book titled "The Autocrat of the

8  Breakfast Table," published by Phillips, Sampson & Co. ("Phillips") in twelve

9  successive editions of the *Atlantic Monthly* magazine in 1857 and 1858. Neither Dr.

10  Holmes nor the publisher copyrighted any of the twelve parts. Dr. Holmes attempted

11  to copyright the full work on November 2, 1858, after the last part had been

12  published in the magazine, and on July 12, 1886, the Supreme Court held that the

13  book was not copyrightable by virtue of the prior publications. In reaching its

14  decision, the Supreme Court rejected Dr. Holmes's argument that publication of

15  different book chapters was not a publication of the complete work and held, "If the

16  several parts had been once dedicated to the public, and the monopoly of the author

17  thus abandoned, we do not see how it could be *reclaimed by collecting such parts*

18  *together*." *Id.* at 88-89 (emphasis added).

19     Even if Defendants were to claim that the copyrights protected the assembly

20  of the words and the music, *Holmes* forecloses that as well. There is no dispute that

21  the Song's melody and the familiar *Happy Birthday* lyrics had been published and

22  performed many times before, both separately and together.  Br. at 8-9.  The simple

23  act of assembling those two parts of the Song – which had been done countless

24  times before Forman and Orem composed their piano arrangements – did not

25  reclaim any copyright in work that had long since been dedicated to the public.[11]

---

26  [11]  Furthermore, the addition of the phrase "Happy birthday to you, dear [name]" to

27  an existing melody does not meet the Ninth Circuit's heightened standard of originality for derivative works. *Entm't Research Group v. Genesis Creative Group*, 122 F.3d 1211, 1220 (9th Cir. 1997) (citing *Durham Indus., Inc. v. Tomy Corp.*, 630

28  (footnote continued on following page)

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

Claiming that the Song was not generally published before 1935, Defendants argue that three decades of widespread prior use of *Happy Birthday* did not dedicate the Song to the public.  Br. at 18-20.  In *American Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1026-28 (9th Cir. 1981), the Ninth Circuit explained the difference between general publication by public performance, which forfeits copyright protection, from the mere performance "to a select group and for a limited purpose," which does not. In distinguishing between general and limited publication, the Ninth Circuit cited to *Blanc v. Lantz*, 83 U.S.P.Q. 137, 142 (Cal. Super. 1949), in which the California Superior Court held that the "distribution and exhibition in commercial theatres throughout the world" of Mel Blanc's famous Woody Woodpecker laugh was "so general a publication of the contents of the film and its soundtrack as to result in the loss of common law copyright."

Here, as in *Blanc v. Lantz*, the widespread distribution and performance of *Happy Birthday* – which may have begun when Patty Hill taught the Song to her students so they could sing it anytime and anywhere – in cartoons, movies, plays, singing telegrams, and millions of birthday celebrations from coast to coast and around the world was "so general a publication" of the Song as to forfeit any common law copyright that Patty Hill (or anyone else) may have had in it. *See* Br. at 7, n. 5, 8-9.

Defendants cite an inapposite decision in *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211 (2d Cir. 1999).  Br. at 19-20.  Dr. King's estate sought damages from CBS for rebroadcasting his famous "I Have a Dream" speech in 1994. The Second Circuit held that Dr. King, who copyrighted his speech in 1963, had not authorized anyone to rebroadcast it for profit merely by delivering it and inviting members of the press to broadcast it live. *Id.* at 1216-17. Unlike Dr.

---

F.2d 905, 909 (2d Cir. 1980)). *See also Wihtol v. Wells*, 231 F.2d 550, 553 (7th Cir. 1956) ("the title ["My God and I"], in itself, is not subject to copyright protection"); 37 C.F.R. ¶ 202.1 ("Words and short phrases such as names, titles, and slogans" are not copyrightable).

King, Patty Hill did not sing the Song, she taught it to her students, whom she knew would sing the Song not in her class and throughout the school – and also outside the school.  Ex. 87 at 1007 (Patty testified that the Song was one of the variations that she and her students created).  Unlike Dr. King, Patty Hill never copyrighted *Happy Birthday*.  Unlike *King*, no one has sought to rebroadcast Patty Hill's performance of the Song; rather, they seek to sing it themselves. And, unlike Dr. King, who copyrighted his speech, Patty Hill admitted that the Song belonged to the public.  Exs. 60 at 754 ("common property with the public"), 90 at 1047 (same).

Defendants cite to another irrelevant case, *Ferris v. Frohman*, 223 U.S. 424, 434 (1911), in which the Supreme Court held that the public performance *in England* of an unpublished play did not affect the owners' right to a copyright in this country.  Br. at 5, 18.  In this case, Patty Hill taught the Song to her students in Louisville so that they could perform it, over and over again, in school, at home, and anywhere else they wanted to sing it. Ex. 87 at 1007. This was not a mere "limited publication," but rather a general publication of the Song in this country that divested Patty Hill of any copyright she may have had. *See American Vitagraph, Inc.*, 659 F.2d at 1026-27.

In *Samet & Wells, Inc. v. Shalom Toy Co.*, 429 F.Supp. 895 (E.D.N.Y. 1977) (another irrelevant case relied upon by Defendants) the court held that an *infringer's* sale of a stuffed toy, allegedly before the copyright owner registered the copyright, could not divest the owner of his copyright. *Id.* at 903. Here, the Song's purported author, Patty Hill, sang *Happy Birthday* with her students so that they could sing it themselves at every birthday celebration.  Br. at 7, n. 5.  By publishing the Song that way, Patty Hill consented to the subsequent public performances of *Happy Birthday*, which explains why Patty and Jessica Hill never complained about any public performance of that variation of Mildred Hill's original musical composition (except to protect the copyright to *Good Morning*, which expired by 1949) after the Song became immensely popular. *See* Exs. 52 at 691-696 (infringement action for melody

of *Good Morning* melody) 55 at 709-718 (same), 56 at 719-730 (same), 57 at 721-740 (same).   As the court found in *Egner*, it is impossible to believe that the Hill Sisters and Summy Co. were completely unaware of how popular the Song had become throughout the country and around the world.[12]

The *"Iolanthe" Case*, 15 F. 439, 442 (C.C.D. Md. 1883), is even less relevant and has nothing to do with Patty Hill authorizing her students to sing the Song or whether the Hill Sisters or Summy knew of the Song's immense popularity. [13]  Br. at 19-20.  Defendant purchased a copy of Gilbert & Sullivan's comic opera "Iolanthe," which included "every word of the libretto, the music for every voice part for every singer, including the choruses, and a piano-forte accompaniment for these, and a piano-forte arrangement of the overture," omitting only Sullivan's original orchestration. *Id.* at 441. John Philip Sousa was then hired to arrange a new orchestration for the opera and the court held that the defendant's performance of a new version of "Iolanthe" with Sousa's orchestration did not infringe the proprietor's limited copyright. *Id.* at 447.

Finally, Defendants' argument that the Hill Sisters had not "abandoned" their alleged copyright in the Song misses the mark entirely.  Br. at 14.  In *Lottie Joplin Thomas Trust v. Crown Publishers, Inc.*, 456 F .Supp. 531 (S.D.N.Y. 1977), *aff'd*, 592 F.2d 651 (2d Cir. 1978), which Defendants cite, the district court held that ***after*** a copyright is obtained in a copyrightable work, it may be abandoned by an overt act evidencing the copyright owner's intention to surrender his rights. *Id.* at 535. The facts here are the exact opposite.  Multiple publications and countless public performances of *Happy Birthday* for decades precluded the Hill Sisters – or anyone

---

[12] Here, there is substantial evidence that the Hill Sisters and Summy Co. knew of the Song's immense popularity and of the frequent commercial public performances of the Song. *E.g.*, Exs. 60 at 754 (*American Family* Magazine interview), 90 at 1047 (TIME Magazine Statement), 36 at 596 (*Hill v. Harris* Complaint at ¶ 11).
[13] In *A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001), the Ninth Circuit affirmed the district court's finding that A&M had not "'created the monster that is now devouring their intellectual property rights" by supplying the technology used to distribute digital audio files over the Internet. That holding has nothing to do with this issue.

else – from registering a copyright to the Song (assuming anyone ever tried to do so). *Egner* and *Holmes* are clear that publication and repeated public performances of a work *before* any copyright is claimed precludes a subsequent copyright claim.[14]

**B.   Warner/Chappell's Position:  *Happy Birthday to You* Was Copyrightable in 1935**

**1.   Plaintiffs' Authorship and Authorization Arguments Fail**

Plaintiffs assert that there is no evidence that Mildred Hill wrote the lyrics to *Happy Birthday to You*.   That is wrong.   Certificates E51990 and E51988 each identify Mildred J. Hill as the author of *Happy Birthday to You*.   Exs. 101, 103. This is prima facie evidence that Mildred authored the lyrics of *Happy Birthday to You* and that the lyrics were original to her.   *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1451 (9th Cir. 1991); *Gaste v. Kaiserman*, 863 F.2d 1061, 1066 (2d Cir. 1988).   Plaintiffs object to Warner/Chappell's registration certificates, which Warner/Chappell received from the Copyright Office and which include official Copyright Office cover pages that state "Copy of Registration."   Plaintiffs contend that only *they* have produced the "*actual* registration certificates," which do not include Mildred Hill's name.   The face of the records Plaintiffs cite, however, shows that Plaintiffs are simply attempting to pass off the copyright *applications* as registrations.   Exs. 44, 48.   The statutory presumption does not apply to applications.   17 U.S.C. § 410(c).

Plaintiffs have no admissible evidence that the lyrics to *Happy Birthday to You* were authored by someone other than Mildred Hill, or her sister Patty, or that the lyrics were not original to Mildred or Patty because they were copied from someone else.   Patty Hill testified that she wrote the lyrics—she also had written the lyrics to *Good Morning to All*.   Ex. 87 at 1007.   But if either Patty Hill or Jessica Hill (who, according to Plaintiffs, once claimed she wrote the song) were the author

---

[14] Likewise, in *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 103-04 (9th Cir. 1960), the Ninth Circuit rejected Hampton's argument that Paramount had abandoned its copyright in the film "The Covered Wagon" by failing to bring an enforcement action for more than 25 years *after* the copyright was registered.

1   of *Happy Birthday to You*, or a co-author, then Plaintiffs' challenge would fail.[15]

2       *First*, Plaintiffs do not contend that Summy fraudulently omitted Patty and/or

3   Jessica from the copyright applications (and there is no evidence of any fraud), so

4   the omission has no effect on the validity of the copyrights.  17 U.S.C. § 411(b)(1);

5   *Urantia Found. v. Maaherra*, 114 F.3d 955, 963 (9th Cir. 1997); *see also Harris v.*

6   *Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984) (incorrect identification

7   of author did not void the copyright); *Baron v. Leo Feist, Inc.*, 78 F. Supp. 686, 692

8   (S.D.N.Y. 1948) (failure to identify author did not void the copyright), *aff'd*, 173

9   F.2d 288 (2d Cir. 1949).

10       *Second*, Plaintiffs lack standing to challenge Summy's presumed

11   authorization to copyright *Happy Birthday to You* because the Hills' heirs and

12   assigns do not challenge such authorization.  Third-parties are routinely precluded

13   from invoking the rule that copyright transfers must be in writing where, as here,

14   there is no dispute between the actual parties to the transfer.  *Magnuson v. Video*

15   *Yesteryear*, 85 F.3d 1424, 1428 (9th Cir. 1996); *Eden Toys, Inc. v. Florelee*

16   *Undergarment Co., Inc.*, 697 F.2d 27, 36 (2d Cir. 1982); *Arista Records LLC v.*

17   *Lime Grp. LLC*, No. 06 CV 5936 (KMW), 2011 WL 1641978, at *5 (S.D.N.Y. Apr.

18   29, 2011) ("[*Eden Toys*] preclude[s] third party standing to challenge transferee

19   ownership *in any case* where there is no dispute between transferor and transferee.")

20   (emphasis added).  Plaintiffs offer no reason why the logic of this precedent does

21   not preclude them from challenging an agreement to which they are strangers.

22       *Third*, even if Plaintiffs had standing to challenge Summy's right to register

23   the copyright, the challenge would fail.  Warner/Chappell's copyright certificates

24   constitute prima facie evidence that Summy was authorized to copyright *Happy*

25

---

26   [15] To support their assertion about Jessica Hill, Plaintiffs cite an article—which is inadmissible hearsay—in which Jessica supposedly said she was the first to *sing* the

27   song that her sister *Patty* wrote.  Ex. 60 at 752-53.  Even if this article were admissible—which it is not—it does not purport to state that Jessica claimed to

28   write the lyrics, rather, only that she sang them.

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

*Birthday to You. Urantia Found. v. Burton*, No. K 75-255 CA 4, 1980 WL 1176, at *5 (W.D. Mich. Aug. 27, 1980).  The record only supports Summy's authorization. Both Patty and Jessica Hill inherited Mildred's rights in the song when Mildred died intestate in 1916.  Ex. 50 at 670.  Jessica licensed Summy the right to publish *Happy Birthday to You* in 1934 and 1935.  *Id.* at 668.  As a licensee, Summy was authorized to register the song for copyright.  *Abend v. MCA, Inc.*, 863 F.2d 1465, 1468-70 (9th Cir. 1988), *aff'd sub nom. Stewart v. Abend*, 495 U.S. 207 (1990). Further, in 1944, the Hill Foundation assigned Summy all of the rights that Patty and Jessica had in E51990 and E51988 and their renewals, which rights Patty and Jessica had on the same day assigned to the Hill Foundation.  Exs. 113, 115, 126.[16]

## 2. Plaintiffs' Prior Use Argument Fails

Warner/Chappell's copyright registrations are prima facie evidence that *Happy Birthday to You* was copyrightable and not in the public domain when Summy published it.  *Acad. of Motion Picture Arts & Scis.*, 944 F.2d at 1451-52 (district court erred in (1) failing to apply presumption of copyrightability, and (2) concluding that "Oscar" statuette entered public domain).  Plaintiffs fail to meet their burden to rebut the presumption of copyrightability.

Plaintiffs contend, without authority, that *Happy Birthday to You* must have entered the public domain pre-1935 because it was "immensely popular" and "had become part of the public conscience."  This is not the law.  Mildred Hill (and/or

---

[16] Below, Plaintiffs assert erroneously that the Hill Foundation had no renewal rights to assign.  Plaintiffs lack standing to challenge the 1944 assignments.  And, in all events, Patty and Jessica clearly intended to assign their renewal rights to the Hill Foundation.  *See S.-W. Publ'g Co. v. Simons*, 651 F.2d 653, 656 (9th Cir. 1981). Patty and Jessica assigned the Hill Foundation "all right, title and interest" to E51990 and E51988—and five other copyrights, none of which had been renewed— and to "any and all rights, demands, claims and causes of action, heretofore accrued or which may at any time hereafter accrue, for unpaid royalties or by reason of any infringements of said copyrights *and renewal copyrights*."  Ex. 113 at 1653 (emphasis added).  Concurrently, the Foundation assigned Summy all its rights in these and other copyrights and their renewals and extensions.  Ex. 115.  Patty Hill signed both assignments.  Ex. 113 at 1653; Ex. 115 at 1670.  There is *no* evidence that the parties orchestrated this transaction (which was part of a settlement agreement) with the intent that the assignment to Summy would transfer illusory rights.  Ex. 126.

Patty Hill) retained a common law copyright in the work until the song's first *authorized* publication. "[P]ublication, in order to be effective, requires the consent of the author." *Dowdey v. Phoenix Films, Inc.*, No. 78 Civ. 699-CSH, 1978 WL 951, at *4 (S.D.N.Y. July 24, 1978) (citations omitted); *see also The "Iolanthe Case"*, 15 F. 439, 442 (C.C.D. Md. 1883) ("[W]hen the composer of any work, literary, musical, or dramatic, has authorized its publication in print, his control over so much as he has so published, and of the use which others may make of it, is at an end."); 1 Nimmer on Copyright ("Nimmer") § 4.03[A] (2014).

Plaintiffs also argue that *Happy Birthday to You* entered the public domain because it was sung and performed many times before 1935. But the public performance of a work is not a "publication" that will forfeit common law protection. *Ferris*, 223 U.S. at 435; Nimmer § 4.03[A]. "In order to soften the hardship of the rule that publication destroys common law rights, courts developed a distinction between a 'general publication' and a 'limited publication.'" *Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211, 1214 (11th Cir. 1999) (citation omitted). A general publication occurs only where (1) "tangible copies of the work are distributed to the general public in such a manner as allows the public to exercise dominion and control over the work"; or (2) "the work is exhibited or displayed in such a manner as to permit unrestricted copying by the general public." *Id*. at 1215-16. "A performance, no matter how broad the audience, is not a publication." *Id*. at 1217. Accordingly, even if Patty, Mildred or Jessica Hill *had* consented to the song's public performance, this would not have dedicated the song to the public domain.[17] And Plaintiffs have adduced no evidence of consent. On the contrary, Patty and Jessica Hill each testified that they had very limited knowledge

---

[17] Plaintiffs attempt to distinguish *Estate of Martin Luther King* and other cases based on superficial differences. Plaintiffs cannot avoid the fact that their arguments are precluded by well-established law.

of the song's public performance.  Ex. 87 at 1015-17, 1036-37.[18]

In *American Vitagraph, Inc. v. Levy*, 659 F.2d 1023 (9th Cir. 1981), the Ninth Circuit found that a copyright proprietor did not publish its film by screening it to foster interest.  *Id*. at 1028.  *American Vitagraph* emphasized the basic principles that (1) a divestive publication, which forfeits common law protection, requires "consent of the copyright owner"; (2) "it takes more publication to destroy a common-law copyright than to perfect a statutory copyright"; and (3) "mere performance or exhibition of a work does not constitute a publication of that work." *Id*. at 1027 (citations omitted).  This case does not help Plaintiffs.  Nor does *Blanc v. Lantz*, No. 547157, 1949 WL 4766 (Cal. Super. Ct. Sept. 30, 1949).  In *Blanc*, the court found a divestive publication where the plaintiff, voice actor Mel Blanc, admittedly "'consented to the use of said musical composition and musical laugh … in the specific cartoons in connection with which plaintiff rendered his services as a performer … for the purpose of distribution of said specific cartoons in commercial theatres throughout the world.'"   *Id*. at *1 (citation omitted).   There is no comparison between Patty Hill's teaching her student to sing *Happy Birthday to You* and Mel Blanc's commercial radio and film performances.   Plaintiffs cite no authority that would support a divestive publication here.

Plaintiffs next argue that *Happy Birthday to You* entered the public domain because it was published "in writing" a number of times prior to 1935.   But Plaintiffs have no evidence that the Hill Sisters knew about—let alone that they *authorized*—any of these purported publications.  *American Vitagraph*, 659 F.2d at 1027.  Plaintiffs' own expert admitted that there is no evidence that Patty or Mildred Hill (or Summy) was aware of or authorized any such publication.[19]   The only available evidence demonstrates the opposite is true.  Patty Hill testified in 1942 that

---

[18] Plaintiffs' "substantial evidence" that the Hill Sisters knew of the Song's popularity consists of inadmissible hearsay and an inapposite legal allegation.
[19] Ex. 110 at 1574-76, 1579-82, 1585-87, 1590-91, 1594-96, 1599-1600, 1604-05, 1606, 1609-10.

1  she was not aware of any publication, other than by Clayton F. Summy, that
2  contained *Good Morning to All* "with [her] permission." Ex. 87 at 1018.

3      Plaintiffs cannot show that the Hill Sisters abandoned their rights.
4  Abandonment requires an "overt act indicative of a purpose to surrender the rights
5  and allow the public to copy" the song. *Hampton v. Paramount Pictures Corp.*, 279
6  F.2d 100, 104 (9th Cir. 1960). In *Hampton*, the Ninth Circuit found that
7  Paramount's failure to prevent the exploitation of its films for more than twenty-five
8  years did not constitute abandonment, notwithstanding that one of the films had
9  been listed on publicized film lists for years. *Id.* at 103-04. The court emphasized
10  that "[t]here was at most lack of action," and no "overt act" indicating an intent to
11  surrender copyright. *Id.* at 104; *see also A&M Records, Inc. v. Napster, Inc.*, 239
12  F.3d 1004, 1026 (9th Cir. 2001) (citation omitted) ("[W]aiver or abandonment of
13  copyright 'occurs only if there is an intent by the copyright proprietor to surrender
14  rights in his work.'"). The same is true here.[20]

15      *Egner* does not assist Plaintiffs. There, the authors explicitly authorized the
16  publication of their song. *Egner v. E.C. Schirmer Music Co.*, 48 F. Supp. 187, 187-
17  88 (D. Mass. 1942). The First Circuit affirmed simply by applying the basic rule
18  that a common law copyright is extinguished when the author *consents* to
19  publication of his work: "When their compilation was put on sale at the West Point
20  Hotel, this publication and sale with the consent of Gruber amounted to such a
21  general publication as to dedicate the song to the public and worked an
22  abandonment of Gruber's common-law right to a copyright." *Egner v. E.C.
23  Schirmer Music Co.*, 139 F.2d 398, 399 (1st Cir. 1943). Here, Plaintiffs have
24  presented no evidence that the Hill Sisters knew about, let alone *consented to* any

---

25  [20] Plaintiffs cannot demonstrate that Patty Hill "abandoned" her rights in *Happy
26  Birthday to You* by citing inadmissible magazine articles that do not even purport to
   be quoting Patty directly. Ex. 60 at 754, Ex. 90 at 147; *see, e.g., Castano v. Am.
27  Tobacco Co.*, 908 F. Supp. 378, 383 n.20 (E.D. La. 1995) (reporter's statement was
   inadmissible hearsay because it was not a direct quote). Even if such statements
28  were admissible, Plaintiffs cite no precedent finding abandonment based on
   statements to a reporter.

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

pre-1935 publication. *See Hampton*, 279 F.2d at 104 (distinguishing *Egner* because Paramount had not granted permission to sell its prints for commercial exhibition). *Holmes*, 174 U.S. at 82, likewise is inapposite. *Holmes* rejected an author's contention that although he *expressly* permitted *The Atlantic Monthly* to publish his literary composition in 12 components, each in a separate magazine, he still retained copyright in the work as a single unit. Again, there is no evidence that the Hill Sisters granted permission for any of the pre-1935 publications Plaintiffs cite.

In sum, the only performances of *Happy Birthday to You* that Mildred and/or Patty Hill arguably authorized—such as teaching the song to students or allowing it to be sung at teachers' conferences—do not amount to divestive publications. There is no evidence that Mildred and/or Patty Hill authorized any performance that arguably might have, *if authorized*, amounted to divestive publications. And there is no evidence that Mildred and/or Patty Hill knew about, let alone *authorized*, any tangible publication of *Happy Birthday to You*. Plaintiffs' forfeiture and abandonment theories, however framed, fail as a matter of law.[21]

## III.   ISSUE NUMBER TWO:  WHETHER THE SCOPE OF REGISTRATIONS E51990 AND/OR E51988 1935 INCLUDES THE LYRICS TO *HAPPY BIRTHDAY*

### A.   Plaintiffs' Position Even if *Happy Birthday* Were Copyrightable, Defendants Did Not Obtain Rights to the Song or Copyright It

Defendants rely entirely upon the copyright certificates for two works-for-hire, E51988 and E51990, to support their claim that they own *Happy Birthday*. The actual registration certificates certified by the Copyright Office (Exs. 44, 48) – as

---

[21] Plaintiffs' throwaway originality argument also fails. The "heightened" originality test "means little more than a prohibition of actual copying. No matter how poor artistically the 'author's' addition, it is enough if it be his own." *Entm't Research Grp., Inc. v. Genesis Creative Grp., Inc.*, 122 F.3d 1211, 1221 (9th Cir. 1997). Again, Plaintiffs have no evidence of copying. Plaintiffs' invocation of 37 C.F.R. § 202.1(a) also fails—*Happy Birthday to You* is not a name, title or slogan. *See id.; see also Regents of the Univ. of Minnesota v. Applied Innovations*, Inc., 685 F. Supp. 698, 708 (D. Minn. 1987), aff'd, 876 F.2d 626 (8th Cir. 1989) (upholding copyright in the phrasing of test questions notwithstanding 37 C.F.R. § 202.1).

1  opposed to the unofficial records Defendants cite (Exs. 101-104)[22] – do not even

2  mention Mildred or Patty Hill and do not support Defendants' claim. Other evidence

3  not only rebuts any limited presumption Defendants may be entitled to, it

4  conclusively proves that Defendants did *not* acquire any rights to the Song itself and

5  did not copyright the Song in 1935.

6            **1.    Summy Co. Licensed Rights to Piano Arrangements Only**

7            Defendants cannot rest upon the registration certificates to prove the scope, or

8  subject-matter, of the two copyrights. *See Unistrut Corp. v. Power*, 280 F.2d 18, 23

9  (1st Cir. 1960) (infringement claim dismissed for failure to prove what work was

10 deposited with Copyright Office); *Gerlach-Barklow Co. v. Morris & Bendien*, 23

11 F.2d 159, 162 (2d Cir. 1927) (claimant required to prove what was deposited with

12 Copyright Office).

13           There is no proof that Defendants or Summy Co. ever acquired the Song,

14 from whom they acquired it, or when they acquired it. Instead, there is conclusive

15 proof that they did *not* acquire the Song. In 1942, the Hill Foundation sued Summy

16 Co. over use of Mildred Hill's musical composition, alleging that in 1934 and 1935,

17 Jessica Hill licensed Summy Co. to use "*various piano arrangements*" of Mildred's

18 musical composition.  Ex. 50 (Amended Complaint in *Hill Foundation v. Summy*).

19 No copy of the license from Jessica Hill to Summy Co. exists.  Ex. 45 at 630

20 (Defendants admit unable to locate).  But in its answer to the amended complaint,

21 ─────────────────────────

22 [22] Defendants have no reason to dispute the authenticity and admissibility of the
   official, certified Additional Registration Certificates for E51988 and E51990 that
23 Plaintiffs have lodged with the Court.  *See* Exs. 44, 48.  Under Fed. R. Evid.
   902(1)(A) and (B), sealed documents of a department or agency of the United States
24 (such as the Copyright Office) with a signature purporting to be an execution or
   attestation – as these are – are self-authenticating and admissible without any
   extrinsic evidence. The unofficial, unsealed, unsigned, and unauthenticated
25 documents relied upon by Defendants do not meet *any* requirement for
   admissibility.  *See* Ex. 4 at 82-3, ¶¶ 4-11 (Declaration of Beth A. Landes
26 substantiates both that Plaintiffs' copies are the authentic registration certificates for
   E51988 and E51990 *and* that Defendants' copies are not): *see also* Ex. 98 at 1118
27 (receipt for copyright certificates); Ex. 99 at 1119-1140 (instructing that Certificate
   of Registration for a copyright registered prior to Dec. 31, 1977, consists of a
28 "photocopy of the application that was used to make the original registration").

1   Summy Co. admitted it obtained only rights to "*various piano arrangements* of the

2   said musical composition '*Good Morning to All*,'" although it claimed to have

3   purchased (rather than licensed) those limited rights.[23]   Ex. 51 At 684-85 (Answer at

4   ¶ 18).   Summy Co. licensed only limited rights to "*various piano arrangements*" of

5   *Good Morning*. *Id.* Summy Co. did not obtain rights to the Song itself.

### 2.   The Presumption Is Limited to the Facts Stated in the Certificates

7   Faced with Summy Co.'s binding judicial admission that it only licensed

8   rights to "*various piano arrangements*" of *Good Morning* (Ex. 51 at 684-685 (¶18),

9   relying upon two unofficial and inadmissible copyright records as the purported

10  registration certificates for E51988 and E51990, Defendants claim they are entitled

11  to a presumption (which they cast as irrebuttable) [24] that they own a valid copyright

12  to *Happy Birthday*. Br. at 37-39. The crux of Defendants' argument is based upon a

13  distortion of the record. The unofficial copyright records used by Defendants are

14  different than the actual registration certificates for E51988 and E51990, and

15  Defendants are not entitled to rely upon those inadmissible, unofficial records for

16  anything. The actual registration certificates do not overcome Summy Co.'s binding

17  judicial admission that it licensed only "*various piano arrangements*" of *Good*

18  *Morning*.

19  The actual registration certificate for E51988 certified by the Copyright

20  Office does not mention either Mildred or Patty Hill, much less identify them as

21  authors of the Song.   Ex. 44.   In addition, the Application for Copyright filed by

22  Summy Co. on December 6, 1935, identifies the new matter on which copyright was

23  claimed as "Arrangement for Unison Chorus and *revised* text."   Exs. 44 (certified

24

25  [23] Defendants concede that the grant of rights was just a license, not a sale,  Br. at 17, although they overstate the scope of the rights that Jessica Hill licensed to Summy Co.

26  [24] The presumption is narrow. Under the 1909 Act, a certificate is admissible only "as *prima facie* evidence of the *facts stated therein*." 17 U.S.C. § 209 (emphasis

27  added); *Rohauer v. Friedman*, 306 F.2d 933, 935 (9th Cir. 1962). The 1909 Act governs copyrights in works created prior to January 1, 1978, when the 1976 Act

28  took effect. *La Cienega Music Co. v. ZZ Top*, 534 F.3d 950, 953 n.1 (9th Cir. 1995).

copy of E51988), 31 at 577 (photograph of application), 43 (sheet music deposited with E51988).   According to the certificate, that copyright covers only the piano arrangement composed by Forman, who was identified as the author of the work-for-hire, together with the obscure second verse written by Forman that lacks commercial value. *Id*. Defendants admit that Forman did not write the familiar *Happy Birthday* lyrics. Ex. 2 at 60 (¶ 92). Since the copyright covers only work that Forman did,[25] E51988 cannot cover the Song itself.

Defendants fare no better under E51990. Like E51988, the actual registration certificate for E51990 certified by the Copyright Office does not mention Mildred or Patty Hill and does not identify them as authors of the Song. Ex. 48 The registration certificate for E51990 covers only the piano arrangement composed by Orem, who was identified as the author of that work-for-hire, together with whatever "text" he may have written. *Id*. The Application for Copyright for E51990, also filed on the same day, identified the new matter as "Arrangement as easy piano solo, with text." Exs. 40 (application).  Defendants admit that Orem did ***not*** write the familiar *Happy Birthday* lyrics, and no one has sought to use or perform the piano arrangement that Orem composed. Ex. 2 at 61 (¶ 97). Since the copyright covers only work that Orem did, which did ***not*** include writing the Song's familiar lyrics, E51990 cannot cover the Song either. *Id*.

Forman was the author of E51988 and Orem was the author of E51990. Exs 44, 48. Neither of them wrote the familiar lyrics, and there is overwhelming evidence that neither of them set the lyrics to the *Good Morning* melody as original work. That was done at least 35 years earlier. Under the holdings in *Feist* and *U.S. Auto Parts*, E51988 and E51990 could not extend to the familiar *Happy Birthday*

---

[25]  Copyright protection extends "only to those components of a work that are ***original to the author***." *Feist Publ'ns, Inc.*, 499 U.S. at 348 (emphasis added). As work-for-hire copyrights, E51988 and E51990 covered only work contributed by Summy Co.'s employees, Forman and Orem. *U.S. Auto Parts Network, Inc. v. Parts Geek, LLC*, 692 F.3d 1009, 1020-21 (9th Cir. 2012) (limiting employer's ownership of work created by former employee).

lyrics or the setting of those lyrics to the *Good Morning* melody. *See* Brf. at 23, fn. 24. Patty Hill composed no music, and Mildred could not possibly have written those piano arrangements – or anything else – in 1935 because she died in 1916.[26] Ex. 87 at 1013 (Patty Hill testimony); Ex. 50 at 670 (*Hill Foundation* complaint that Mildred died in 1916)

There is no deposit copy of the work protected by E51990. Exs. 46 at 633 (letter from Copyright Office); 47 (Marcotullio deposition) at (640-1, 642, 642-4, 648). When a deposit copy is lost, the owner must offer sufficient evidence to establish what work was copyrighted. Defendants' ***only*** evidence of what is protected by E51990 is the certificate itself and a piece of sheet music that no one can authenticate[27] and which, on its face, cannot be the work in question. That evidence is grossly inadequate, especially in light of the facts that Summy Co. acquired only rights to "***various piano arrangements***" of *Good Morning* and Orem did not write the lyrics, to prove that E51990 covers the Song's familiar lyrics.

In *Neri v. Monroe*, 726 F.3d 989, 992-93 (7th Cir. 2013), the Seventh Circuit would not enforce a copyright to a glass sculpture because there was no evidence of what was copyrighted even after the plaintiff provided a copyright certificate for her

---

[26] Defendants have no proof that Mildred Hill ever wrote the familiar *Happy Birthday* lyrics and no proof that Mildred assigned them to Summy Co., which did not even exist during her lifetime. Exs. 50 at 670 (Mildred died in 1916), 87 at 1013 (Patty Hill testifies that she wrote the words to *Happy Birthday*.) An author unquestionably has the exclusive right to publish, copy, and distribute her work. *Harper & Row, Publ'rs v. Nation Enters.*, 471 U.S. 539, 546-47 (1985). No legal authority allows someone who is ***not*** the author of a work to register a copyright for that work ***before*** obtaining any right to do so from the author. Warner/Chappell's New Song Information Sheet proves that Mildred and Patty Hill were ***not*** employees-for-hire of Summy Co. (Ex. 27), and there is no evidence that Jessica Hill was ever employed by Summy Co. There is no evidence that Summy Co. had any right to the Song prior to December 6, 1935 and, at the time, only had rights to "***various piano arrangements***" of *Good Morning*.

[27] Defendants' Rule 30(b)(6) witness, Thomas Marcotullio, admitted that he did not know whether the sheet music was a copy of what was deposited with the application for E51990. Ex. 47 at 640-1, 642, 642-44, 648. *See also* Ex. 47 at 645 (noting Orem's name cross off *Happy Birthday* sheet music). Marcotullio's admissions are binding upon Defendants. *Icon Enters. Int'l v. Am. Prods. Co.*, No. cv 04-1240 SVW (PLAx) 2004 U.S. Dist. LEXIS 31080, at *18-19 (C.D. Cal. Oct. 7, 2004) (citing *McKesson Corp. v. Islamic Republic of Iran*, 185 F.R.D. 70, 79 (D.D.C. 1999), and *United States v. Taylor*, 166 F.R.D. 356, 361 (M.D.N.C. 1996)).

sculpture. Although the certificate gave the claim "at least *prima facie* support," the Seventh Circuit held that if the underlying work is not identifiable in the registration records, then the registration does not support the copyright claim. *Id*. at 992.

In *Apparel Bus. Sys., LLC v. Tom James Co.*, No. 06-1092, 2008 U.S. Dist. LEXIS 26313, at *32 (E.D. Pa. Mar. 28, 2008), the district court rejected a claim that the defendant infringed two copyrights, holding that the plaintiff could not "establish that the software used by the defendants is the software protected by the copyrights at issue, because it has not produced either the deposits made with the copyright office when the registrations were issued or any other evidence of the subject matter that the copyrights protect." The court rejected two declarations submitted by the plaintiff to prove what work was protected by the copyrights because the declarants lacked personal knowledge of the creation of the work allegedly covered by the copyrights. *Id*. at *32 n.7.[28]

No one has identified what work was added by Orem in that copyright. The sheet music offered by Defendants to prove the subject-matter of E51990 cannot possibly be the work in question.[29] The sheet music does not attribute authorship of *anything* to Orem; in fact, it does not even have Orem's name on it. Ex. 86 at 969-71.  Had that work been deposited with the copyright application, even a cursory review by the Copyright Office would have shown that the author's name was missing, which would have caused the application to be rejected.[30]

---

[28] The scant evidence offered by Defendants to prove the subject-matter of E51988 and E51990 is far weaker than the declarations rejected by the court in that case.  *First*, the deposit copy for E51988 (Ex. 43 at 623-4) shows unequivocally that the new matter added by Forman was the piano arrangement she composed and the second verse she wrote, neither of which are what Plaintiffs were required to license. Because of the limited (and practically worthless) scope of the work added by Forman, Defendants' predecessor, Summy Co., ***never*** relied upon E51988 or its renewal when asserting any copyright in the Song.

[29] Because of the defects noted above, without any evidence to prove what it was, the sheet music is not admissible to prove what work Orem may have done in 1935.

[30] Defendants' "conjecture" that the Copyright Office prepared the filing record of the deposit for E51990 from what they now say had to be the same sheet music – based on a mere exclamation point – is easily refuted.  Br. at 39-40.  The record of filing for E51990 included Orem's name, which appeared nowhere on the sheet music, and identified Orem as "employed for hire" by Summy Co., which likewise (footnote continued on following page)

In *Seiler v. Lucasfilm, Ltd.*, 808 F.2d 1316, 1318-20 (9th Cir. 1987), the Ninth Circuit held that "reconstructions" of allegedly copyrighted science fiction action figures known as "Garthian Striders" were not admissible in a copyright infringement action by action figure creator against the producer of the popular science fiction movie "The Empire Strikes Back." Seiler created the "Garthian Striders" in 1976 or 1977, and he attempted to copyright them in 1981 by depositing "reconstructions" of his original drawings with the Copyright Office. The Ninth Circuit held that the "reconstructions" were writings under Fed. R. Evid. 1001 and were inadmissible under Fed. R. Evid. 1002, which requires the "original writing, recording, or photograph . . . to prove its content." [31] *Seiler*, 808 F.2d at 1318. The Ninth Circuit held that "no 'reconstruction' can substitute for the original" drawings deposited with the Copyright Office. *Id.* at 1319.[32]

The Ninth Circuit's controlling decision in *Seiler* leads to the same conclusion here: the sheet music – which is not a reliable copy of whatever work may have been done by Orem – is inadmissible to prove the scope of the copyright protected under E51990. On its face, the sheet music strongly indicates it does ***not*** represent what Orem did; it does not even have Orem's name on it. Ex. 86 at Ex. A (969-71) (sheet music for *Happy Birthday*), Ex. B. at 972-73 (same).[33] No one can say that it

---

was not on the sheet music. Ex. 48. However, that information ***did*** appear on Summy Co.'s copyright application and on the registration certificate where the author of the new matter was identified, making it far more likely that the deposit record was prepared from the application, not from the deposit copy. The exclamation point almost certainly was added to the record for E51990 because the exact same song name – with the exclamation point – was written just two lines earlier by the same copyright clerk in the same deposit record for E51988. Ex. 44.

[31] Defendants' argument requiring proof of fraud on the Copyright Office misses the point. Br. at . Plaintiffs do not assert any fraud on the Copyright Office but that the applications claimed limited copyrights on the new work done by Forman (piano arrangement and second verse) and Orem (piano arrangement).

[32] In *Unistrut Corp. v. Power*, 280 F.2d at 23, , the plaintiff claimed infringement of a catalog that it copyrighted in 1942. *Id.* The plaintiff had no copy of the catalog submitted as the deposit copy in 1942 to prove the subject-matter of the work in question. Instead, the plaintiff relied only upon the 1943 edition of the catalog, which contained unspecified additions to the prior work. The First Circuit dismissed the infringement claim because, there was no proof of what work actually was in the 1942 edition covered by the copyright. *Id.*.

[33] Because the copies of sheet music have what appear to be sequential engraving (footnote continued on following page)

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

1   is a copy of what was deposited with the application for E51990. The absence of any

2   corroborating testimony is all the more reason why the sheet music must be

3   excluded under Rule 1002, leaving Defendants with nothing whatsoever to prove the

4   scope or subject-matter of E51990. Under *Seiler*, the fact that Defendants may be

5   blameless for not having a deposit copy for E51990 does not relieve them of the

6   strict requirements of the best evidence rule and does not make the sheet music

7   admissible.

8        Defendants' attempt to reconstruct the record of the missing deposit copy is a

9   red herring. As discussed above (Br. at 39), Summy Co. licensed only rights to

10  "various piano arrangements of the . . . musical composition '*Good Morning to All*'"

11  from Jessica Hill in 1934 and 1934. Ex. 51 at 678-9.  There is no evidence that

12  Summy Co. had any other rights to the Song in 1935 when Forman and Orem

13  composed their piano arrangements. Regardless of what the actual "text" in the

14  deposit copy for E51990 may have been,[34] the copyright conferred under E51990

15  was no broader than the claim made in the application. *Norden*, 13 F.Supp. 418

16

---

17  numbers in their lower left corners, Defendants also argue that what they think must
    have been deposited with E51990 had been printed immediately before the deposit
18  copy for E51988. Br. at 39-40.  A side-by-side comparison of the two samples – the
    deposit copy for E51988 and what Defendants claim must be a copy of the deposit
19  for E51990 – undermines their argument. The two samples were printed in different
    typefaces. (Ex. 86 at 966 (¶ 15) used an asterisk (*) for the celebrant's name, but
20  3076 used a star (★). *Id.* at 966 (¶ 16). The samples used different musical notations,
    such as the rest sign in the first measure. *Id.* at 966 (¶ 176). Only 3076 identified an
21  arranger. *Id.* at 966 (¶ 18).  3075 had parentheses around the sub-title, but 3075 did
    not. *Id.* at 966 (¶ 19). Only 3075 included fingering notations. *Id.* at 966 (¶20).  And
22  no one has said when the numbers "3075" and "3076" were added, or by whom. *Id.*
    at 965( ¶ 13). Given these differences, it is unlikely the two pieces of sheet music
23  were printed consecutively by the same engraver.  Despite Defendants' argument to
    the contrary, Prof. Sachs has no first-hand knowledge of what was done in 1935 and
24  was never asked any questions about this comparison during his deposition.
    [34]  It was not common practice in the 1930s for music publishers to use the word
25  "text" to refer to song lyrics. Br. at 6, 36.  More importantly, it was **not Summy
    Co.'s practice to do so**.  *See* Ex. 38 at 605-612 (Summy Co. registered 42 other
26  works).  Summy Co. did not use the word "text" in other registrations. *Id.*  Instead,
    it used the abbreviation "w" to refer to lyrics, and the abbreviation "m" to refer to
27  music, as was, in fact, the common practice.  *See* Ex. 38 at 605-12. (Summys' Reg.
    No. E51686, used "w" to identify the author of the lyrics and "m" to identify the
28  musical composer for the song "An Autumn Sunset" which Orem also arranged).
    Summy Co. repeatedly followed the same common practice in many other
    registrations in 1935.  *See, e.g.*, Exs. 38 at 605-612, 33 at 589.

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

(copyright covers nothing more than what is claimed in application). The copyright Summy Co. claimed in the application for E51990 was limited to the new work that Orem did as its employee-for-hire pursuant to the limited rights to "*various piano arrangements*" that Jessica Hill licensed to Summy Co. in 1934 and 1935. Ex. 51 at 678-689. Orem did not write the Song's familiar lyrics or set them to the *Good Morning* melody.[35] As his employer-for-hire, Summy Co. did not – and could not – claim a copyright to work that Orem did not do.[36]

Defendants also argue that *if Plaintiffs* insist that Patty Hill wrote the Song's familiar lyrics, then the Copyright Office made some mistake in the certificates by naming Mildred Hill, rather than Patty, as the Song's author and the copyrights remain valid.[37] Plaintiffs do not insist that Patty Hill wrote the lyrics, but if she did write them (as she claims to have done), then she freely gave them to the public and claimed no right to them. *See* Ex. 87 at 1013-1014. (Patty Hill deposition testimony). Since the copyrights were limited to piano arrangements composed by Forman (E51988) and Orem (E51990) and the second verse that Forman wrote, the omission of Patty's (and Mildred's) name from the registration certificates *was no mistake*. Instead, it properly reflected the fact that neither Patty nor Mildred was the author of Forman's new work claimed in E51988 (a piano arrangement for unison chorus and a second verse) or of Orem's new work claimed in E51990 (an easy piano arrangement).[38] None of the cases cited by Defendants on clerical mistake by

---

[35] Because Forman wrote an arrangement *and* new lyrics, the application for E51988 claimed a copyright for "Arrangement for Unison Chorus *and revised text*." Exs. 43, 44. In E51990, since Orem did not write any lyrics, Summy Co. only claimed a copyright for "Arrangement as easy piano solo, *with text*." Ex. 48. Comparing the two applications shows that Summy Co. intended to limit the claim in E51990.

[36] Defendants note that Plaintiffs previously alleged that the deposit copy for E51990 included the Song's lyrics. Br. at 39. No one knows what "text" was in the missing deposit copy. Regardless of what lyrics (if any) may have been included in it, Defendants' copyright is *on the work added by Summy Co.'s employee-for-hire, Orem*, which did *not* include writing the lyrics or setting them to the melody of *Good Morning*.

[37] The certificates did not name Mildred *or* Patty Hill as the author of either work. *See* Ex. 44, 48.

[38] Neither Mildred nor Patty Hill was identified as the author of the new work when E51988 and E51990 were renewed in 1962. Those renewals did not expand the (footnote continued on following page)

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

the Copyright Office addressed the scope of a copyright,[39] and therefore they have no bearing on the pertinent question.

However, mistakes or errors in the registration undo the presumption created by the certificate. For example, in *Baron*, 173 F.2d at 289, the plaintiff was required to offer testimony from witnesses to prove his authorship of the work. *See also Watkins v. Chesapeake Custom Homes, L.L.C.*, 330 F. Supp. 2d 563, 572 (D. Md. 2004) (no presumption where claimants "cast doubts upon the soundness of the registrations" by "reinventing" their authorship theory).

Defendants also argue that an assignment in 1944 from the Hill Foundation to Summy Co. to settle litigation between the parties corrected the so-called "mistake." Br. at 39.  Under the 1909 Act, 17 U.S.C. § 28, and the 1976 Act, 17 U.S.C. § 204(a), an assignment of copyright must be in writing. To transfer a copyright, "the writing in question must, at the very least, be executed more or less contemporaneously with the agreement." *Kronigsberg Int'l, Inc. v. Rice*, 16 F.3d 355, 357 (9th Cir. 1994). A writing is required to make copyright ownership clear and to protect third parties who want to deal with the true owner. *Id.* at 358.

Defendants cite no authority giving retroactive effect to a copyright assignment. At most, a subsequent writing may confirm a prior oral agreement to assign a copyright, but the oral agreement must have been made ***before*** the attempt to register the copyright. 3 Nimmer on Copyrights, § 10.03[A][3] (2014). For the subsequent writing to be valid, the acquirer must prove the prior oral agreement. *See Budget Cinema Inc. v. Watertower Assocs.* 81 F.3d 729, 733 (7th Cir. 1996) (a later writing to confirm an alleged oral transfer of a copyright is not permitted "because there was no evidence that Budget discussed the rights to the work with

_____

limited scope of the original copyrights. Exs. 44, 48, 67, 68 (copyright registrations and renewals).
[39] In *Baron v. Leo Feist, Inc.*, 173 F.2d 288, 289 (2d Cir. 1949) (internal quotation marks omitted), the principal case Defendants rely upon, the plaintiff claimed a copyright as to "new music now first published." There was no issue regarding whether the work was copyrightable or had been published previously.

1   [the copyright owner] prior to registration.")

2       Here, there is no proof of any oral agreement, and no reference to any prior

3   oral agreement in the assignment or settlement, to transfer a copyright to *Happy*

4   *Birthday* before 1935.  In addition, the memorialization of an earlier oral assignment

5   must be timely because permitting a third-party to claim copyright ownership years

6   later does not serve the statutory goal of enhancing "predictability and certainty in

7   copyright ownership." *Effects Assoc., Inc. v. Cohen*, 908 F.2d 555, 557 (9th Cir.

8   1990).  *See also Kronigsberg*, 16 F.3d 257 (a letter agreement written three years

9   after an alleged oral license was untimely and invalid).  Had there been an oral

10  assignment of a copyright to the Song before Summy Co. registered E51988 and

11  E51990 in 1935 – which is not the case – the passage of nine years prevented the

12  1944 writing from complying with the statutory requirement of a written transfer

13  under the 1909 Act.[40]

14              **3.      The Limited Presumption is Easily Rebutted by the Overwhelming Weight of the Evidence**

15      Plaintiffs' burden to rebut whatever presumption Defendants may be entitled

16  to under the certificates for E51988 or E51990 is not high.[41] The presumption that

17  Forman or Orem – the authors of the two works-for-hire identified in the official

18  certificates – wrote the Song is not merely rebutted, it is undisputed that the Song

19  was ***not*** written by them.  Ex. 2 at 60-61 ¶¶s 92, 97). They could not possibly have

20  set the Song's familiar lyrics to the *Good Morning* melody as original work. Patty

21  Hill said she did so in a classroom and Jessica Hill said she did so in her living room

---

22  [40] In 1944, Patty and Jessica Hill transferred to the Hill Foundation whatever interest

23  they had in certain copyrights and the right to bring infringement actions for renewal copyrights, but they did not transfer any rights to renew the copyrights themselves..

24  Ex. 58 at 698-699 (assignment from the Hill Sisters to Hill Foundation); Ex. 54 at 701-706 (Hill Foundation to Summy (DE)).   Even if the Hill Foundation's

25  assignment could have affected Summy Co.'s original limited copyrights, the Hill Foundation could not have given Summy Co. any rights that it had not acquired from Patty and Jessica Hill.

26  [41] To rebut the presumption, Plaintiffs may "simply offer some evidence or proof to dispute or deny the . . . *prima facie* case of infringement." *Ent. Research Group, Inc.*

27  *v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217-8 (9th Cir. 1997) (evidence that the works were not original sufficient).  *See also North Coast Indus. v. Maxwell*,

28  972 F.2d 1031, 1033 (9th Cir. 1992).

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

decades earlier. *See* fns. 2 & 3 *supra*. A songbook called *Twice 55 Community Songs, The Brown Book*," published in 1957 by C.C. Birchard Co., agent for Summy Publishing Company, included a version of "*Happy Birthday to You!*"  Ex. 63 at 765-66.  Mildred Hill's name was in the upper left corner, where the composer's name usually appears. *Id*. at 766. The word "Traditional" was in the upper left corner, where the author of the lyrics usually is identified. *Id*. This acknowledgment, shortly after the copyright to *Good Morning* expired, that the lyrics were "traditional," by a company related to Summy Co., strongly supports the conclusion that the familiar *Happy Birthday* lyrics, set to the *Good Morning* melody, belonged to the public. Ex. 64 at 795 (deposition testimony of Plaintiffs' expert).

Regardless of when or how it was first done, as discussed above, there is overwhelming evidence of widespread publication and repeated performances of the Song *for decades* before Summy Co. filed the disputed copyrights: *e.g.*, (i) the *Happy Birthday* lyrics were set to the *Good Morning* melody in *Inland Educator* in 1901 (Ex. 8 at 211-212); (ii) the complete lyrics were published together with a reference to the melody in 1911 by the Board of Sunday Schools in *The Elementary Worker and His Work* (which itself was copyrighted under Reg. No. A303752) (Ex. 11 at 2214(digital book copy); Ex. 12 at 488-90 (copyright)); (iii) the familiar *Happy Birthday* lyrics and the *Good Morning* melody were published in sheet music in 1912 by the Chicago Cable Co., which did not attribute authorship to anyone (Ex. 13 at 492-93); (iv) sheet music including both the familiar *Happy Birthday* lyrics and the *Good Morning* melody was included in Coleman's 1924 songbook *Harvest Hymns* (also protected by copyright under Reg. No. A777586) (Ex. 19 at 514-15), which did not attribute authorship to anyone; (v) sheet music in Gospel's publication of *Children's Praise and Worship* in 1928 (also protected under copyright Reg. No. A1068883), which included both the familiar *Happy Birthday* lyrics and the *Good Morning* melody (Ex. 21 at 525-528 (sheet music); Ex. 22 at 530-32 (copyright)); (vi) the Song was sung in least one feature-length cartoon and five movies between

1930 and 1935 (Exs. 15 (compilation video), 88 (*Strange Interlude*); and (viii) the
Song was sung in the Broadway show *As Thousands Cheer*, beginning in 1933. Ex.
29 at 561-563 (Certified Copies of Interrogatory Resps. of Defs. Berlin & Harris in
*Hill v. Harris*).[42]

These widespread prior performances prove that the Song was copied by
Forman and Orem, who simply added their own piano arrangements to the by-then
extremely popular, public domain work. Plainly, Forman wrote only the new lyrics.
The ludicrous suggestion that Orem, who was a prolific music composer of long
standing and a director and Vice President of Summy Co. at the time, never heard
*Happy Birthday* before 1935 and spontaneously wrote it himself – ignorant not only
of what the entire world had been singing for decades, but also of the popular lyrics
that his own company's other employee-for-hire, Forman, added to her own work at
the same time – strains all credibility.

Any presumption to which Defendants may be entitled under either E51988
or E51990 is also convincingly – indeed, conclusively – rebutted by the failure of
Summy Co. and the Hill Sisters to assert any copyright or authorship rights under
either E51988 or E51990 in five infringement actions they brought over use or
public performance of the Song in the 1930s and 1940s. *See*  Exs. 32, 52,  55, 56,
57. The Hill Sisters filed one of the actions filed *before* E51988 and E51990 were
registered.  Ex. 32 (*Harris v. Hill*). Summy Co. or Hill Foundation filed the other
four actions *after* the copyrights were registered; three of those actions were filed
*after* the 1944 assignment from the Hill Foundation. Exs. 52 (*Hill v. Postal
Telegraph);* 55 (*Summy v. McLoughlin);* 56 (*Summy v. Marx);* 57 (*Sumy v. Feigay).*
In all five actions, the Hill Sisters and Summy Co. relied *only* upon the 1893

---

[42] To the extent that Defendants rely upon a presumption from the registrations for
E51988 and E51990 in 1935, the earlier registration of the Song's familiar lyrics in
*The Elementary Worker and His Work* in 1911 creates a presumption that someone
other than Mildred or Patty Hill authored the lyrics and allowed them to enter in the
public domain in 1939. Defendants' conjectural evidence, based on copyrights
registered 24 years after the lyrics were first copyrighted, does not overcome this
superseding presumption.

copyright to *Good Morning*.  *Id.*  They prove conclusively what copyright the Hill Sisters and Summy Co. owned – the 1893 copyright to the melody of *Good Morning* (which unquestionably expired by 1949) – and what copyright they did ***not*** own – a copyright to *Happy Birthday* itself. There is no better proof that the Hill Sisters and Summy Co. knew they owned copyrights to the musical composition and various piano arrangements of *Good Morning*, but did not did ***not*** own any copyright to *Happy Birthday* itself.

In *Jerry Vogel Music Co., Inc. v. Forster Music Publisher, Inc.*, 147 F.2d 614, 616 (2d Cir. 1945), in which the parties disputed ownership of the copyright for the song "Down by the Old Mill Stream," the Second Circuit held, "the fact that Smith had made no legal or formal claim to the copyright during almost all of the entire 28 years of its original term was a circumstance to be considered by the court upon the issue of co-authorship by Smith." As in *Jerry Vogel Music*, neither the Hill Sisters nor Summy Co. made any claim under the narrow *Happy Birthday* copyrights, despite filing at least five separate infringement actions between them – relying only upon the copyright to the original *Good Morning* melody.

In the 79 years since the two disputed copyrights were registered, despite millions of unauthorized public performances of *Happy Birthday*, ***no one has ever been sued*** for infringing either of the two disputed copyrights – powerful evidence that no one who has owned the copyrights believed they owned more than two piano arrangements, and certainly ***not*** the Song itself. After the copyright to *Good Morning* expired in 1949, no further litigation of any kind was commenced over *Happy Birthday*. The Court cannot ignore this compelling evidence in deciding whether the presumption has been rebutted.

**4.    *Happy Birthday* Was Not Protected Before it Was Published**

Under the 1909 Copyright Act, if a work was published without a copyright notice, it entered the public domain. *See*, *e.g.*, *Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996) (citations omitted). Despite millions of prior

uses of the Song, there is no proof of any publication of *Happy Birthday* with any copyright notice before December 6, 1935.  *See* Exs. 8, 9, 11, 13, 18, 21.  If, as Defendants theorize, Mildred Hill wrote the Song, there is no evidence she ever published it, and no proof she did so with an adequate copyright notice. Ex. 3. at 79-80 (¶¶s 2-9).  If Patty Hill wrote the Song, it is virtually certain she did ***not*** publish it with any copyright notice. Patty taught the words to her students as one of many variations on *Good Morning*. Ex. 87 at 1019-1021. There is no evidence that ***any*** of those variations ever was written down – much less published with the required copyright notice – before students began singing the Song at every birthday celebration in the school or before it became immensely popular.

## B.   Warner/Chappell's Position

### 1.   Plaintiffs Cannot Rebut the Presumption That Summy Was Authorized to Publish the Lyrics

Plaintiffs cite infringement actions for the proposition that a copyright owner has the burden of proving the scope of its copyright.  But this is not an infringement suit, and Warner/Chappell is not the plaintiff.  *See Schaffer ex rel. Schaffer v. Weast*, 546 U.S. 49, 56-57 (2005) (citation omitted) ("[T]he person who seeks court action should justify the request, which means that the plaintiffs bear the burdens on the elements in their claims.").  Even if Warner/Chappell had the burden of proving the scope of its copyright, Plaintiffs' argument that Jessica Hill's 1934 and 1935 licenses did not include the lyrics to *Happy Birthday to You* fails.

To begin, Warner/Chappell's copyrights in *Happy Birthday to You* cover the lyrics to the song.  Certificate E51990 describes the publication of *Happy Birthday to You* as "pf., with *words*" and states that "© is claimed on arrangement as easy piano solo *with text*." Ex.101 (emphasis added).  Certificate E51988 states, with respect to that publication of *Happy Birthday to You*, that "© is claimed on arrangement for unison chorus *and revised text*." Ex. 103 (emphasis added).  The plain language of these certificates demonstrates that the copyrights cover *the lyrics*

to these songs, and not simply the arrangements.[43]

Claiming copyright with respect to "text" was a common way to protect song lyrics in the 1930s.  *See, e.g., Wihtol v. Crow*, 309 F.2d 777, 778 (8th Cir. 1962) (copyright registered in 1935 claimed copyright as to "English text and choral arrangement"); *Norden v. Oliver Ditson Co.*, 13 F. Supp. 415, 416 (D. Mass. 1936) (copyright registered in 1914 claimed copyright as to "Adaptation of English Text to the Russian music of Arkhangelsky").  Plaintiffs' contention that it was not Summy's practice to protect lyrics by claiming text fails for the reasons explained in the next section.  In any event, Plaintiffs offer no evidence or legal precedent showing what "words" and "text" possibly *could* apply to, if not to the lyrics. Indeed, there are no words or text *other than* the lyrics as to which the certificates could have claimed copyright.

Moreover, Summy obtained two copyright registrations—on the same day— to publications of *Happy Birthday to You* that expressly included text.  Certificate E51990 covers "arrangement as easy piano solo *with text*," while certificate E51988 covers "arrangement for unison chorus" and "*revised text*."  Exs. 101, 103.  As discussed above, if the "revised text" in E51988 is the second verse of *Happy Birthday to You*, then the "text" claimed in E51990 (on the same day) must have been the "familiar," first verse of *Happy Birthday to You*.

Warner/Chappell's certificates are prima facie evidence that Summy had the right to copyright these lyrics.  "The introduction into evidence of [certificates E51990 and E51988] creates a prima facie case as to the facts stated therein." *Rohauer v. Friedman*, 306 F.2d 933, 935 (9th Cir. 1962) (citing 17 U.S.C. § 209).

---

[43] The documents Plaintiffs insist are "actual registration certificates"—but which really are "applications"—contain all the same information.  Exs. 44, 48.  The dispute here is not about authenticity or admissibility, but rather whether the documents Plaintiffs proffer are applications or certificates.  The documents state on their face they are "applications."  They are part of the Copyright Office records for registration, as stated in the Copyright Office's standard "additional certificate" cover sheet, but that does not make the documents the registrations.  Plaintiffs cannot contradict the plain language of 17 U.S.C. § 410(c) by citing a Copyright Office practice manual.

The Hill Sisters' heirs and assigns have not challenged Summy's right to copyright the *You* lyrics—on any ground, including those Plaintiffs advance. Plaintiffs lack standing to argue that Summy was not authorized to copyright these lyrics. *Eden Toys*, 697 F.2d at 36; *Arista Records*, 2011 WL 1641978, at *5.

Even if Plaintiffs had standing to challenge Summy's right to register the copyright, Plaintiffs could not rebut the presumption that the certificates establish. Plaintiffs assume that because pleadings say that Jessica Hill licensed "various piano arrangements" to Summy, these licenses must not have included the lyrics to *Happy Birthday to You*. This assumption is unfounded. The Hill Foundation's operative complaint alleges that *Happy Birthday to You* was "written and composed" by Patty and Mildred Hill and that Summy's license entitled it to publish sheet music for this song, but not to sublicense its rights in the song. Ex. 50 at 664, 666-67 (emphasis added). The complaint sought "all moneys received by [Summy] from all sources whatsoever as royalties for the sound and dramatic rights of the song 'Happy Birthday to You.'" *Id.* at 673. Tellingly, the complaint did *not* allege that Summy had exceeded the scope of its licenses by publishing and selling sheet music containing the Hill Sisters' lyrics for *Happy Birthday to You*. If Summy had exceeded the scope of its license by copyrighting, publishing, and selling the Hill Sisters' lyrics, the Hill Sisters presumably would have sued on that basis as well.

### 2. The Undisputed Evidence Shows that Summy Copyrighted the Lyrics

Plaintiffs are wrong about the scope of the statutory presumption under the 1909 Act. Certificates E51990 and E51988 entitle Warner/Chappell to a prima facie presumption that the facts stated in the certificates are true *and* that these copyrights are valid. This entails a presumption of originality, compliance with statutory formalities, copyrightability, and of a valid chain of title from author to proprietor. *Acad. of Motion Picture Arts & Scis.*, 944 F.2d at 1451 (applying 1909 Act).

Plaintiffs again accuse Warner/Chappell of distorting the record by citing the official registration copies it received from the Copyright Office. As noted above,

1    Plaintiffs' proffered "registration certificates" are really applications.  That is clear
2    both from the face of the documents Plaintiffs cite and from the fact that those
3    documents are obviously identical to the "applications" Plaintiffs quote just
4    sentences later.  Exs. 44, 48.  It is the registration certificates—both of which
5    identify Mildred J. Hill as the author of the work—and not the applications—that
6    receive the statutory presumption.  17 U.S.C. § 410(c); *see* Exs. 101, 103.[44]

7         Plaintiffs claim that "[a]s works-for-hire," the copyrights extended only to the
8    contributions of Preston Ware Orem and R.R. Forman, respectively, the arrangers of
9    E51990 and E51988.  But the copyrights do not purport to be simply works for hire.
10   Although certificates E51990 and E51988 identify Orem and Forman, respectively,
11   as employees for hire, they do not state that Mildred or Patty Hill was an employee
12   for hire.  It is undisputed that neither was.  Summy was entitled to Mildred and/or
13   Patty Hill's rights in the work as a result of the license it received from them—not
14   because they were employees for hire.  Plaintiffs' argument that Summy was
15   entitled only to the text that Orem or Forman wrote thus fails.  Summy was entitled
16   to all the material properly copyrighted by E51990 and E51988.  The fact that the
17   applications for these copyrights identified Orem and Forman as the respective
18   authors of new copyrightable matter is irrelevant.  *See Nat'l Broad. Co. v.
19   Sonneborn*, 630 F. Supp. 524, 531 (D. Conn. 1985) (application errors including the
20   mistaken claims that NBC was the author of the "entire work" and that the work was
21   a "work for hire" did not invalidate copyright).

22        Next, Plaintiffs challenge the scope of the E51990 copyright on the ground
23   that the deposit copy is not available for submission to the Court.  This argument

---

24   [44] Tellingly, Plaintiffs advance multiple specious arguments to exclude the records
25   that Warner/Chappell received.  Plaintiffs have no authority to exclude these
     documents.  And they have no factual basis to rebut Warner/Chappell's showing
     that it received these records from the Copyright Office.  *See, e.g., California Ass'n
26   of Bioanalysts v. Rank*, 577 F. Supp. 1342, 1356 n.23 (C.D. Cal. 1983) (admitting
     government report where "Plaintiffs made no showing that [it] was not an official
27   publication" or that it was "not what defendants claimed them to be").  Ex. 109 at
     1553-54, 1561 (unrebutted testimony that Warner/Chappell received these
28   certificates from the Copyright Office); Ex. 125 (receipt for copyright registrations).

1   also fails.  Plaintiffs admit that the deposit copy for E51988 included the "familiar

2   lyrics," as well as an alternative second verse, but purport to be mystified as to what

3   lyrics could have been in the sheet music that was the E51990 deposit copy.  There

4   is nothing nefarious about the fact that neither the Copyright Office nor

5   Warner/Chappell has the specific copy deposited with the application for E51990.

6   The application was deposited in December 1935.  Under Copyright Office

7   regulations, the Office was not required to keep a permanent copy. [45]

8        Even in infringement cases, a plaintiff need not introduce the actual deposit

9   copy (or a copy thereof) if it holds a registration certificate and offers evidence of

10  the contents of the deposit copy.  *Hosp. for Sick Children v. Melody Fare Dinner

11  Theatre*, 516 F. Supp. 67, 70 (E.D. Va. 1980); *see also Enter. Mgmt. Ltd. v.

12  Warrick*, 717 F.3d 1112, 1120 n.8 (10th Cir. 2013) (failure to produce the registered

13  work was irrelevant in part because the infringement defendant offered no reason to

14  doubt testimony as to the contents of that work); *Data East USA, Inc. v. Epyx, Inc.*,

15  862 F.2d 204, 207 (9th Cir. 1988) (photographs and testimony regarding contents of

16  arcade game sufficient to allow comparison with allegedly infringing work).

17       The undisputed evidence shows that the deposit copy for E51990 was sheet

18  music containing only the familiar lyrics.  The Copyright Office records state quite

19  clearly that Summy deposited two copies of a work entitled "Happy Birthday to

20  You!," by Mildred J. Hill, with the application that resulted in E51990.  Ex. 105.

21  Deposit copies were required under the 1909 Act, so the Copyright Office would not

22  have registered the work without the deposit copies.  17 U.S.C. § 12 (1909).  And

23

24  _____
    [45] A registration certificate is valid regardless of whether the Copyright Office still
    retains the corresponding deposit copy.  The Copyright Office is permitted to
25  dispose of deposits (17 U.S.C. § 704(d)) and modify or eliminate the deposit
    requirement for certain categories of work (*id.* § 408(c)(1)).  The purpose of the
26  presumption of validity is to relieve copyright owners of having to prove the
    underlying facts relating to creations in the distant past.  Congress cannot have
27  intended to deprive a rightholder of the presumption merely because the Copyright
    Office failed to preserve the deposit copy.  Also, if a deposit copy were necessary, it
28  would be difficult for large, complex, or secret works to assert *prima facie* validity.
    *See, e.g., Fonar Corp. v. Domenick*, 105 F.3d 99, 103-05 (2d Cir. 1997).

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

from these records, we know that the deposited work contained "words" and "text"—*i.e.*, lyrics. Ex 105 (E51990 deposit record), Ex. 48 (E51990 application)

In 1935, Summy published only two versions of *Happy Birthday to You* with lyrics. Exs.101, 103, 111 at 1631-34. One was submitted to the Copyright Office as the deposit copy for E51988, and indisputably contains the "familiar lyrics" to *Happy Birthday to You*, as well as an additional, second verse. Ex. 43. That version bears the publication number 3076. *Id.* The other version contains only the familiar lyrics, and bears the publication number 3075. Ex. 106. Plaintiffs' own expert, Dr. Sachs, admitted that these publication numbers indicate that Summy published the two versions of *Happy Birthday to You* consecutively. Ex. 110 at 1613-14, 1619. According to Dr. Sachs, the publication number indicates the order in which the versions were published because "[t]hat is what it always does." *Id*. at 1619.[46] Because there is no evidence that Summy published other lyrical versions of *Happy Birthday to You* in 1935, publication 3075, which was not submitted in connection with E51988, must have been submitted in connection with E51990.

The information on publication 3075 also corresponds with the Copyright Office's record of the work deposited for E51990. The cover of publication 3075 contains the title "Piano Solo with words," which is the exact same phrase that appears in the Copyright Office deposit record for E51990, down to the capitalization of the first two words only, and which is different from the description in the application and the certificate (which include the phrases "pf., with words" and "Arrangement as easy piano solo, with text"). *See* Exs. 48 (51990 application),

---

[46] Plaintiffs have submitted an affidavit that Dr. Sachs signed just last week in an effort to undermine his clear and firm testimony that Summy publication 3076 was "probably the next one" published after Summy 3075 and that the publication numbers "always" indicate the order of publication. Ex. 110 at 1613-14, 1619. Plaintiffs cannot create a genuine issue of fact with this affidavit, which should be given little if any weight. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). Plaintiffs have no evidence that the publication numbers were added post-publication.

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

103 (certificate) 105 (deposit record), 106 (3075 publication).[47]  This demonstrates that, in completing the deposit record for E51990, the Copyright Office was actually looking at the deposit copy, which was Summy publication 3075.  Other information on publication 3075 matches the description contained in the deposit record for E51990.  The title of publication 3075, as shown above the sheet music, is "Happy Birthday to You!"—with an exclamation mark.  Ex. 106.  The deposit record likewise lists an exclamation mark, which was not at the end of the title on the application or the title on the certificate.  Exs. 48, 103, 105.  The statement "by Mildred J. Hill" also appears on both the cover of publication 3075 and the deposit record for E51990.  Exs. 105-06.  Plaintiffs' suggestion that the Copyright Office copied from the application in completing the deposit record is implausible given the differences between the application and the deposit record.

Further, to the extent the term "revised text" in certificate E51988 refers only to the second verse of text in the deposit copy for E51988, as Plaintiffs contend, it makes perfect sense that Summy copyrighted and deposited two lyrical versions of the song on the same day: (1) an original version, which was deposited for 51990, that contains only the familiar lyrics to the song, and claims copyright in the entirety of those lyrics ("© is claimed on arrangement on easy piano solo with text"); and (2) a revised version, which was deposited for E51988, that contains those familiar lyrics as well as revised lyrics, and claims copyright in the revised lyrics ("© is claimed on arrangement for unison chorus and revised text").

Plaintiffs admit that "[s]ome lyrics to *Happy Birthday to You* may have been included on the work registered with the Copyright Office as Reg. No. E51990." Pls.' Fourth Am. Compl. ¶ 98.[48]  But they offer absolutely no evidence to show that

---

[47] The word "Piano" is underlined on the cover of publication 3075 to show which version of *Happy Birthday to You* that piece of sheet music contains.  Exs. 106, Ex. 110 at 1614-16 (Sachs Deposition).

[48] Plaintiffs' *four* prior complaints belie Plaintiffs' deposit copy argument, and, to the contrary, asserted that "[t]he lyrics to Happy Birthday to You were included on the work registered with the Copyright Office as Reg. No. E51990."  Exs. 120 at

(footnote continued on following page)

the lyrics included on the deposit copy for E51990 were anything other than the familiar lyrics to the song—let alone any support sufficient to create a genuine issue of fact given the evidence discussed above. In *Melody Fare*, the court found sufficient evidence as to the contents of the plaintiffs' play, "Peter Pan or The Boy Who Would Not Grow Up," given the copyright notice on the proffered copy of the work, testimony that the work was licensed for thousands of performances of "Peter Pan," and the fact that the proffered copy was "the only publication of what was copyrighted of which any party has any knowledge." 516 F. Supp. at 70-71. The undisputed evidence here—which also includes the fact that Warner/Chappell and its predecessors-in-interest have licensed the familiar lyrics to *Happy Birthday to You* for decades (Ex. 107 at 1369-70)—is even more compelling given the direct correspondence between the deposit records and publication 3075.

Plaintiffs' cited authority all is inapposite. In *Neri v. Monroe*, 726 F.3d 989 (7th Cir. 2013), the court vacated the district court's ruling that a submission of "a booklet containing photographs of several sculptures, plus some loose photographs" was "disorderly and thus ineligible for registration." *Id*. at 991. In doing so, the Seventh Circuit emphasized that although the submission itself was not in the record, the plaintiff had prima facie support for her claim of infringement as a result of her registration certificate. *Id*. "This means that the defense needed to show why the court should disregard the registration, and absence of evidence redounds to the defense's detriment." *Id*. The court then noted, unremarkably, that the plaintiff's registration covered a particular sculpture only if the submission included a photograph of that sculpture. Like the plaintiff in *Neri*, Warner/Chappell is entitled to the presumption of validity of its registration. Although here, it is *Plaintiffs'* burden both "to put essential information into the record" and to rebut Warner/Chappell's prima facie case. *Id*. Further, unlike in *Neri*, there is ample

¶ 91, 121 at ¶ 94, 122 at ¶ 98, 123 at ¶ 98. Plaintiffs are bound by these admissions. *See Andrews v. Metro N. Commuter R.R. Co.*, 882 F.2d 705, 707 (2d Cir. 1989).

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

1    evidence demonstrating that the work deposited in connection with E51990
2    contained the familiar lyrics to *Happy Birthday to You.*

3        *Apparel Bus. Sys.*, 2008 WL 858754, at *1, and *Unistrut Corp.*, 280 F.2d 18,
4    are infringement cases in which there was no "evidence of the subject matter that the
5    copyrights protect" (*Apparel Bus.*, 2008 WL 858754 at *11) or "no proof that the
6    infringed material was contained in the [materials deposited]" (*Unistrut*, 280 F.2d at
7    23).  There is no such failure of proof here.  As shown above, the evidence
8    conclusively demonstrates that the E51990 deposit copy contained the familiar
9    lyrics for *Happy Birthday to You*.  And in *Seiler*, 808 F.2d 1316, the deposit copies
10   were reconstructions of works that the author dubiously claimed to have created
11   years earlier.  *Id*. at 1317-18.  Here, there is no suggestion of any defect with the
12   deposit copies submitted for E51990.  Plaintiffs say *Seiler* means that
13   Warner/Chappell is subject to the best evidence rule even if it is blameless for not
14   introducing the E51990 deposit copy, but the opposite is true.  As *Seiler* explicitly
15   recognized, a party "must *either* produce the original *or show that it is unavailable*
16   *through no fault of his own*."  *Id*. at 1319 (emphasis added); *see InstantCert.com,*
17   *LLC v. Advanced Online Learning, LLC*, No. 2:11–cv–1833–MMD–GWF, 2012
18   WL 3689498, at *5 (D. Nev. Aug. 27, 2012) ("Defendants have not met their burden
19   of demonstrating that Plaintiffs' own actions caused the destruction of the deposit
20   copy, and as a result have not overcome the presumption of copyright validity.");
21   *Mestre v. Vivendi Universal U.S. Holding Co.*, No. CV 04-442 MO, 2005 WL
22   1959295, at *7 (D. Or. Aug. 15, 2005) ("The court resolves the best evidence rule in
23   favor of plaintiffs because the original script is unavailable through no fault of their
24   own.").  The best evidence rule does not help Plaintiffs because there is no evidence
25   that Warner/Chappell is at fault for the E51990 deposit copy being unavailable.

26       Plaintiffs challenge the evidence that the E51990 deposit copy contained the
27   familiar *Happy Birthday to You* lyrics on several other grounds.  None is persuasive.
28       <u>*First*</u>, Plaintiffs claim that Summy publication 3075 "cannot possibly be the

CROSS MOTIONS FOR SUMMARY JUDGMENT
CASE NO. CV 13-04460-GHK (MRWx)

work in question" because that sheet music does not contain Orem's name.  The evidence, discussed above, shows without contradiction that the E51990 deposit copy contained the familiar lyrics.  The Copyright Office might have copied from the application *and* Summy publication 3075 in completing the deposit record, but it could not have relied on the application alone because the application does not contain the phrase "Piano Solo with words."  Plaintiffs cite *no* authority to support their bald assertion that the Copyright Office would have rejected the deposit copy for E51990 if it did not contain the name of the individual who arranged the music.

*Second*, Plaintiffs argue that Warner/Chappell has no proof of the scope or subject matter of the copyright under E51990, because no one can corroborate the contents of the deposit copy.  Plaintiffs cite no case holding that the contents of a deposit copy may be proved only by the testimony of someone with personal knowledge of the same.  Such a rule would be inconsistent with the duration of copyrights and their renewals and the fact that the Copyright Office is permitted to dispose of deposits (17 U.S.C. § 704(d)) and modify or eliminate the deposit requirement for certain categories of work (*id.* § 408(c)(1)).  *See also Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S. Ct. 1962, 1976-77 (2014).  As discussed, all of the record evidence shows that the deposit copy contained the familiar lyrics.[49]

*Third*, Plaintiffs try to mislead the Court into believing that it was not Summy's practice to refer to lyrics as "text" because Summy "used the abbreviation 'w' to refer to lyrics, and the abbreviation 'm' to refer to music, as was, in fact, the common practice."  Plaintiffs' only evidence for this claim, however, is the catalog of copyright entries; the abbreviations there are the Copyright Office's, not Summy's.  Exs. 33, 38.  Plaintiffs have introduced no evidence of Summy's practice.  Plaintiffs also contend that Summy could claim no broader copyright than

---

[49] That Warner/Chappell's Rule 30(b)(6) witness lacks personal knowledge of events in 1935 is irrelevant.  As the witness explained when deposed, the evidence demonstrates that the deposit copy contained the familiar lyrics to *Happy Birthday to You*.  Ex. 107 at 1369-70.

what the application claimed—but the application *did* claim the lyrics. Ex. 48 (claiming copyright on "Arrangement as easy piano solo, *with text*") (emphasis added). Finally, Plaintiffs' attempt to distinguish the material claimed by the E51988 and E51990 applications is to no avail. Although the former application claimed an arrangement "and" text and the latter claimed an arrangement "with text," the important point is that *both* claimed text.

### 3. Plaintiffs Fail to Rebut the Presumption that Summy Owned a Valid Copyright in the Lyrics

Plaintiffs' arguments are unsupported by law and rest upon mere conjecture, which, in any event, "is not sufficient to rebut the presumption of the validity of [Warner/Chappell's] copyright." *Imperial Toy Corp. v. Goffa Int'l Corp.*, 988 F. Supp. 617, 620 (E.D.N.Y. 1997). Plaintiffs offer absolutely *no* evidence that the *Happy Birthday to You* lyrics were not original to Mildred and/or Patty Hill because they were copied from someone else.[50]

Plaintiffs again attack the strawman of their own creation that Orem and Forman did not write the *Happy Birthday to You* lyrics—claiming that "it is conclusively proven that the Song was not written by them." But Warner/Chappell is not claiming that Forman or Orem wrote the lyrics to *Happy Birthday to You*. Warner/Chappell's copyright certificates identify Mildred Hill as the author of the work, including the "words." Plaintiffs further support their red herring argument by citing pre-1935 performances and publications of *Happy Birthday to You* as evidence that "the Song was copied by Forman and Orem, who simply added their own piano arrangements to the by-then extremely popular, public domain work."

---

[50] Plaintiffs confuse patent law principles with copyright law principles in proposing, in a footnote, that an earlier registration of the *Happy Birthday to You* lyrics creates a "superseding presumption" that someone other than Mildred or Patty authored the lyrics and allowed them to enter the public domain. Copyright law principles make it clear that the first person to write down the *Happy Birthday to You* lyrics—or even to register a copyright for them—does not block all others from copyrighting those lyrics, nor does he dedicate those lyrics to the public domain. "Originality does not signify novelty," and a work is original as long as it is "not the result of copying." *Feist*, 499 U.S. at 345; *Sheldon v. Metro-Goldwyn Pictures Corp.*, 81 F.2d 49, 54 (2d Cir. 1936).

Plaintiffs' reconstruction of history is counterfactual, and does not assist them. Warner/Chappell's copyright certificates constitute prima facie evidence that Mildred Hill was an author, or co-author, of *Happy Birthday to You*, and that Summy was authorized to publish and obtain a copyright in *Happy Birthday to You*. Plaintiffs have not rebutted this prima facie case.

Plaintiffs next claim that a 1957 publication of *Happy Birthday to You* by an agent of Summy's successor-in-interest, which has the word "Traditional" in the upper-left corner of the sheet music, "strongly supports the conclusion" that the lyrics to *Happy Birthday to You* "belonged to the public." But Plaintiffs' own expert considered this and other publications of *Happy Birthday to You* and concluded only that there is "[q]uite extraordinary confusion" among the publications. Ex. 110 at 1620A-F. Plaintiffs cannot rebut the prima facie presumption of copyrightability by citing a publication of *Happy Birthday to You* that post-dated Summy's 1935 publication by *twenty-two years* and that simply confused Plaintiffs' expert. At bottom, Plaintiffs' public domain theory is based on speculation, and does not rebut the presumption. *Imperial Toy*, 988 F. Supp. at 620.

Plaintiffs also attempt to rebut the applicable presumptions by citing a number of infringement actions that Summy or the Hill Sisters brought in the 1930s and 1940s. Plaintiffs claim that because these actions were based on the use or performance of *Happy Birthday to You*, but relied only on the 1893 copyright to *Good Morning to All* instead, Summy and the Hill Sisters must have believed that they owned only the *Good Morning to All* melody. This argument is a non-sequitur. One of these actions were filed *before* E51990 and E51988 were obtained, so obviously could not have relied on E51990 or E51988. Ex. 32. In a 1942 action between the Hill Foundation and Summy, which Plaintiffs do not cite, the Foundation chose to rely upon the *Good Morning to All* copyright rather than E51990 or E51988—and yet settled the case by transferring the 1935 copyrights (and others) from the Hills to Summy. Exs. 50, 126. This undermines Plaintiffs'

suggestion that the Hills "knew" they did not own a copyright to *Happy Birthday to You* itself.  The fact that the plaintiffs in these other lawsuits elected to base their infringement suits on one valid and enforceable copyright that they owned (*Good Morning to All*) rather than another (*Happy Birthday to You*) does *not* demonstrate that they believed they did not own a valid copyright to *Happy Birthday to You*.  Plaintiffs' argument is mere conjecture.

*Jerry Vogel Music Co. v. Forster Music Publisher*, 147 F.2d 614 (2d Cir. 1945), is inapposite.  In *Jerry Vogel*, the plaintiff sought a declaration that it was the sole owner of a song and in response, the defendant claimed it was a co-owner.  *Id.* at 615.  In evaluating the co-ownership defense, the court found it relevant that the defendant "made no legal or formal claim to the copyright" during its initial term— notwithstanding that the song was "very popular" and the defendant's name was printed only on the first of ten publications of the song.  *Id.* at 615-16.  Here, by contrast, there is no evidence that Summy or the Hill Sisters did not make "legal" or "formal" claims to the *Happy Birthday to You* copyrights.  On the contrary, the evidence shows that Summy licensed the *Happy Birthday to You* copyrights through ASCAP and otherwise, and shared its royalties with the Hill Foundation by virtue of the 1944 assignment.  Exs. 113, 115, 126.[51]

Finally, Plaintiffs argue that, because Warner/Chappell and its predecessors-in-interest have not sued for infringement of *Happy Birthday to You*, they must believe they do not own the copyright.  Plaintiffs cite no authority for the proposition that the absence of litigation can be taken to constitute an admission of no rights.  *Jerry Vogel* does not help Plaintiffs, because Warner/Chappell and its predecessors-in-interest indisputably *have* claimed a legal interest in *Happy Birthday to You* (in addition to the lawsuits in the 1930s and 1940s) for almost 80

---

[51] Further, the non-assertion of co-ownership rights in *Jerry Vogel* is nothing like the choice, by Summy Co. or the Hill Sisters, to allege infringement on the basis of one of two copyrights, each of which was infringed under the plaintiffs' theory.

1  years.   Warner/Chappell and its predecessors-in-interest have asserted their legal

2  rights in the song by licensing the *Happy Birthday to You* lyrics.

### 4.   Plaintiffs' Notice Argument Fails

3

4  Plaintiffs' argument that *Happy Birthday to You* was not published with the

5  required notice fails.  The notice requirements of 17 U.S.C. § 18 thus did not apply

6  until Summy published the song in 1935.   Plaintiffs admit that Patty did not

7  "publish" *Happy Birthday to You* by teaching it to her students.  And Plaintiffs also

8  concede there is no evidence that either Hill Sister took any other action before 1935

9  that required notice

10  Warner/Chappell's certificates are prima facie evidence that Summy

11  complied "with the requirements for validity, including the statutory requirement of

12  initial publication with notice."  *Gaste v. Kaiserman*, 863 F.2d 1061, 1065 (2d Cir.

13  1988).  On December 9, 1935, Summy Co. deposited in the Copyright Office two

14  copies of each of the works published in connection with E51990 and E51988.  Exs.

15  101, 103.  The deposit copy for E51988 contains each of the elements required by

16  the 1909 Act.  Ex. 43; 17 U.S.C. § 18 (1909).  Plaintiffs have absolutely no evidence

17  to rebut the presumption that the deposit copy for E51990 likewise contained each

18  of these elements.   On the contrary, the evidence shows that the only other 1935

19  publication of *Happy Birthday to You* that contained words aside from the E51988

20  deposit copy also contained the term "Copyright," the name of the proprietor, and

21  the year in which copyright was secured.  Ex. 106; 17 U.S.C. § 18.

22  **IV.   ISSUE NUMBER THREE:  WHETHER DEFENDANTS OBTAINED TITLE TO COPYRIGHT REGISTRATIONS E51990 AND/OR E51988**

23  **A.   Plaintiffs' Position: Defendants Cannot Prove a Continuous Chain of Title to *Happy Birthday***

24  Regardless of the scope of E51988 and E51990 and whatever presumption

25  Defendants are entitled to under the copyright certificates, a copyright owner still

26  must prove his or its chain of title from the original copyright registrant. *Nimmer on*

27  *Copyrights* § 12.11[B][1][*a*]. Defendants cannot meet that burden. Warner/Chappell

28

supposedly acquired E51988 and E51990 by purchasing all the shares of Birch Tree Group Ltd. ("BTG"), a Wyoming corporation that owned the two copyrights, from David K. Sengstack ("David Sengstack") pursuant to a stock Purchase Agreement dated December 1, 1988, between David Sengstack and Warner/Chappell.  Brf. at 50.  However, there is no proof that David Sengstack owned all the shares of BTG at the time and no evidence of how he acquired any of the shares, from whom he acquired them, or when he acquired them. *See* Ex. 23 at 535-540 (¶¶ 1-64) Exs. 96-97.[52]

### B.   Plaintiffs' Chain of Title Argument Fails

This is not an infringement suit, and Warner/Chappell is not obligated to establish its chain of title to the *Happy Birthday to You* copyrights.  But even if it had such a burden, Warner/Chappell has satisfied it with undisputed evidence.  The accompanying Marcotullio Declaration outlines in detail each step in the chain of title from Summy, the entity that secured E51990 and E51988, and the defendants in this lawsuit.  Ex. 108.  Publicly filed corporate records and other business records further evidence each step in this chain.  Exs. 65-66, 70-71, 75, 77-82,  92, 116A, 116B, 117-19.[53]

Plaintiffs cannot create a triable issue of fact by speculating, without a scintilla of evidence, that David Sengstack, the chairman of Warner/Chappell's immediate predecessor-in-interest, did not own the stock shares that he claimed to be transferring to Warner/Chappell in 1988.  *See Lumiere (Rights) Ltd. v. Baker & Taylor, Inc.*, 116 F.3d 484 (9th Cir. 1997) (appellants could not avoid summary

---

[52]  Plaintiffs first sought documentation of the assignment or transfer of the copyrights from Defendants in their Requests for Production of Documents in January 2014, and in interrogatory responses, and then again in the meet-and-confer process on this motion. *See* Exs. 94 (document request) at 1078 (RFP No. 2), Ex. 95 (response) at 1089; 96 at 1101 (Interrogatory No. 1); 97 (response) at 1111-1112.

[53]  Plaintiffs did not challenge Warner/Chappell's chain of title in any of their *five* complaints and did not mention this issue in their Rule 26(f) statement, which was filed on February 10, 2014, and purported to describe all bases of Plaintiffs' copyright claim.  Exs. 1, 120-24.  Plaintiffs' February 12, 2014 document requests asked for the "closing binder" and "due diligence file" related to Warner/Chappell's 1988 acquisition of Birch Tree Ltd.  Ex. 94.  Plaintiffs revealed their challenge to Warner/Chappell's decades long chain of title just a month ago.

1  judgment by alleging "the mere possibility" that an agreement clouded the

2  infringement plaintiffs' chain of title); *Vapac Music Publ'g, Inc. v. Tuff 'N' Rumble*

3  *Mgmt., Inc.*, No. 99 Civ. 10656(GEL), 2002 WL 31519612, at *3 (S.D.N.Y. Nov. 8,

4  2002) ("The record contains uncontroverted evidence that the sole shareholder of

5  Old Vapac at its dissolution was Ernie Leaner.  Williams cannot avoid summary

6  judgment by simply asserting that this does not constitute 'proof' of Leaner's

7  ownership.").  The undisputed evidence demonstrates that, at the time of the 1988

8  acquisition, Warner-Chappell's predecessor-in-interest was "100% owned by its

9  chairman, David K. Sengstack." Ex 119. at 1761.

10 **V.     CONCLUSION**

11      **A.     Plaintiffs' Concluding Statement**

12          For all the foregoing reasons, Plaintiffs request that the Court enter an Order

13 granting their motion for summary judgment and denying Defendants cross-motion.

14      **B.     Warner/Chappell's Concluding Statement**

15          For the reasons shown above, Warner/Chappell requests that the Court grant

16 its motion for summary judgment, deny Plaintiff's cross-motion, and dismiss Claim

17 One of Plaintiffs' Fourth Amended Consolidated Complaint.

                                            **RESPECTFULLY SUBMITTED,**

18
19 Dated:  November 25, 2014              **WOLF HALDENSTEIN ADLER**
                                          **FREEMAN & HERZ LLP**
20                                        _____
                                          BETSY C. MANIFOLD
21
                                          FRANCIS M. GREGOREK
22                                        gregorek@whafh.com
                                          BETSY C. MANIFOLD
23                                        manifold@whafh.com
                                          RACHELE R. RICKERT
24                                        rickert@whafh.com
                                          MARISA C. LIVESAY
25                                        livesay@whafh.com

26

27                                        750 B Street, Suite 2770
                                          San Diego, CA 92101
28                                        Telephone:  619/239-4599
                                          Facsimile:  619/234-4599

                                          CROSS MOTIONS FOR SUMMARY JUDGMENT
                                          CASE NO. CV 13-04460-GHK (MRWx)

1

2      **WOLF HALDENSTEIN ADLER**
         **FREEMAN & HERZ LLP**
3      MARK C. RIFKIN (*pro hac vice*)
       rifkin@whafh.com
4      JANINE POLLACK (*pro hac vice*)
       pollack@whafh.com
5      BETH A. LANDES (*pro hac vice*)
       landes@whafh.com

6

7      270 Madison Avenue
       New York, NY 10016
       Telephone:   212/545-4600
8      Facsimile:   212-545-4753

9      *Interim Lead Counsel for Plaintiffs*

10     **RANDALL S. NEWMAN PC**
       RANDALL S. NEWMAN (190547)
11     rsn@randallnewman.net
       37 Wall Street, Penthouse D
       New York, NY 10005
12     Telephone:  212/797-3737

13     **HUNT ORTMANN PALFFY**
       **NIEVES DARLING & MAH, INC.**
14     ALISON C. GIBBS (257526)
       gibbs@huntortmann.com
15     OMEL A. NIEVES (134444)
       nieves@huntortmann.com
16     KATHLYNN E. SMITH (234541)
       smith@ huntortmann.com
17     301 North Lake Avenue, 7th Floor
       Pasadena, CA 91101
18     Telephone 626/440-5200
       Facsimile 626/796-0107
19     Facsimile:   212/797-3172

20     **DONAHUE FITZGERALD LLP**
       WILLIAM R. HILL (114954)
21     rock@donahue.com
       ANDREW S. MACKAY (197074)
22     andrew@donahue.com
       DANIEL J. SCHACHT (259717)
23     daniel@donahue.com
       1999 Harrison Street, 25th Floor
24     Oakland, CA 94612-3520
       Telephone:  510/451-0544
25     Facsimile:   510/832-1486

26     **GLANCY BINKOW &**
       **GOLDBERG LLP**
27     LIONEL Z. GLANCY (134180)
       lglancy@glancylaw.com
28     MARC L. GODINO (188669)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

mgodino@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:   310/201-9150
Facsimile:   310/201-9160

*Attorneys for Plaintiffs*

Dated:  November 25, 2014

**MUNGER TOLLES & OLSON**

By: _____
KELLY M.KLAUS

KELLY M. KLAUS (161091)
kelly.klaus@mto.com
ADAM I. KAPLAN (268182)
adam.kaplan@mto.com
560 Mission St., 27th Floor
San Francisco, CA  94105
Telephone:   415/512-4000

**MUNGER TOLLES & OLSON LLP**
GLENN D. POMERANTZ (112503)
glenn.pomerantz@mto.com
MELINDA E. LEMOINE
melinda.lemoine@mto.com
355 South Grand Ave., 35th Floor
Los Angeles, CA 90071
Telephone:   213/683-9100
*Attorneys for Defendants*