1
2

# **TABLE OF CONTENTS**

3   I.    INTRODUCTION ........................................................................ 1

4
5   II.   ARGUMENT............................................................................... 4

6         A.    Defendants' Exhibits 101-104 Are Not Authentic............................. 5

7         B.    Defendants' Exhibits 101-104 Are Inadmissible Hearsay ................ 11

8
9         C.    Defendants' Exhibit 106 Is Not Authentic ...................................... 12

10        D.    Defendants' Exhibit 106 Is Inadmissible Hearsay ........................... 13

11        E.    Defendants' Exhibit 119 Has Not Been Authenticated.................... 14

12
13        F.    Defendants' Exhibit 119 is Inadmissible Hearsay ........................... 15

14        G.    Defendants' Exhibit 119 Lacks Foundation ..................................... 16

15  III.  CONCLUSION ........................................................................ 17

16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

## Cases

*Beyene v. Coleman Sec. Servs., Inc.*,
  854 F.2d 1179 (9th Cir. 1988) ................................................................... 5

*Brown v. Brewer,*
  No. CV 06-3731-GHK (SHx), 2010 U.S. Dist.
  LEXIS 60863 (C.D. Cal. June 17, 2010) .................................................. 4

*Burch v. Regents of the Univ. of Cal.*,
  433 F. Supp. 2d 1110 (E.D. Cal. 2006) .................................................... 5

*Clark v. County of Tulare*,
  755 F. Supp. 2d 1075 (E.D. Cal. 2010) ..................................................7, 8

*Kesey, LLC v. Francis*,
  No. CV 06-540-AC, 2009 U.S. Dist.
  LEXIS 28078 (D. Or. Apr. 3, 2009) ........................................................16

*Menalco v. Buchan*,
  No. 2:07-cv-01178-PMP-PAL, 2010 U.S. Dist.
  LEXIS 8042 (D. Nev. Feb. 1, 2010) ........................................................14

*Miller v. Glenn Miller Prods., Inc.*,
  318 F. Supp. 2d 923 (C.D. Cal. 2004) ...................................................... 4

*Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*,
  No. CV05-2200 MMM (MCx) 2008 U.S. Dist.
  LEXIS 71761 (C.D. Cal. Mar. 17, 2008) .................................................16

*Orr v. Bank of Am.*,
  285 F.3d 764 (9th Cir. 2002) ...........................................................*passim*

*Rosebrock v. Beiter*,
 No. CV 10-01878 SJO (SSx), 2011 U.S. Dist.
 LEXIS 61758 (C.D. Cal. May 26, 2011)......................................12, 14, 15

*Siegel v. Warner Bros. Entm't, Inc.*,
 542 F. Supp. 2d 1098 (C.D. Cal. 2008)........................................... 7

*Uche-Uwakwe v. Shinseki*,
 972 F. Supp. 2d 1159 (C.D. Cal. 2013).......................................... 5

*United States v. Bellucci*,
 995 F.2d 157 (9th Cir. 1993) ....................................5, 13, 14

**Statutes**

1 U.S.C.
 § 114 .............................................................................. 7

17 U.S.C.
 § 702 .............................................................................. 9
 § 707(b) ........................................................................... 9

**Rules and Regulations**

Code of Federal Regulations
 37 C.F.R. § 201.2(b)(7) ............................................................ 9

Federal Rules of Evidence
 602 ....................................................................................16
 801(a) .........................................................................12, 15
 801(c)(1) ......................................................................12, 15
 801(c)(2) ......................................................................12, 15
 801(d) .......................................................................12, 14, 15
 802 .........................................................................12, 13, 15
 803 ....................................................................................14
 803(6) ................................................................................15
 803(15) ...............................................................................12
 803(16) ........................................................................12, 15
 901 ...........................................................................4, 5, 10, 14
 901(a) ................................................................................. 5
 901(b) ................................................................................. 5

901(b)(1) ................................................................................................ 5
901(b)(4) ................................................................................................ 5
901(b)(7) ................................................................................................ 6
902 .................................................................................................. *passim*
902(1) ............................................................................................. 6, 7, 8
902(1)(A) and (B) .......................................................................... 6, 7, 8

**Other Authorities**

5-21 Nimmer on Copyright
§ 21.02 .................................................................................................. 9

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiffs hereby move to exclude Defendants' Exhibits 101-104, 106, and 119 (collectively, "Defendants' Exhibits") of the Amended Joint Evidentiary Appendix in Support of Notice of Cross-Motions and Cross-Motions for Summary Judgment Filed Pursuant to Court's Dec. 5, 2014 Order, filed December 17, 2014 (Dkts. 187 (Vol. 1, Exs. 1-10, Pages 1-220); 188 (Vol. 2, Ex.11, Pages 221-486); 189 (Vol. 3, Exs. 12-54, Pages 487-706); 190 (Vol. 4, Exs. 55-81, Pages 707-974); 191 (Vol. 5, Exs. 82-99, Pages 975-1141); 192 (Vol. 6, Exs. 100-106, Pages 1200-1540); 193 (Vol. 7, Exs. 107-116, Pages 1541-1750); and 194 (Vol. 8, Exs. 117-126, Pages 1751-1947)) (collectively, the "Appendix") from the Appendix and to strike all references to Defendants' exhibits as well as the arguments based upon them from the Cross-Motions for Summary Judgment (as amended Nov. 26, 2014, Dkt. 182) ("Joint Brief") and the [Corrected] Joint Statement of Uncontroverted Facts (as amended Dec. 1, 2014, Dkt. 183) ("SOF"). For all the reasons set forth below, Defendants' Exhibits 101-104, 106, and 119 are inadmissible and should be stricken from the Appendix along with all references to them in the Joint Brief and the SOF.[1]

## I.    INTRODUCTION

Defendants contend that Exhibits 101 and 103 are copies of the registration certificates for the copyrights to *Happy Birthday* registered on December 9, 1935, as Registration Nos. E51988 and E51990.  Manifold Decl., Exs. 101 at 146-148 (App'x at 6:1205-1207); 103 at 153-155 (App'x at 6:1212-1214).  Defendants also contend that Exhibits 102 and 104 are copies of the registration certificates for the renewal copyrights to *Happy Birthday* registered on December 6, 1962, as Registration Nos. R306185 and R306186.  *Id.*, Exs. 102 at 150-151 (App'x at 6:1209-1210); 104 at 157-

---

[1]    Attached to the Declaration of Betsy C. Manifold in Support of Plaintiffs' Motion to Exclude Evidence ("Manifold Decl.") are true and correct copies of the Appendix exhibits referenced herein.  For ease of reference, each exhibit is identified by the same number as it appears in the Appendix.

158 (App'x at 6:1216-1217).  The four documents are **not** what Defendants claim they are.  The official registration certificates for the four copyrights, which have been sealed, signed, and certified by the Register of Copyrights, are marked as Plaintiffs' Exhibits 44 and 48 (for E51988 and E51990) and 67 and 68 (for R306185 and R306186).  *Id.*, Exs. 44 at 54-55 (App'x at 3:626-27, Dkt. 189-3); 48 at 57-58 (App'x at 3:653-54, Dkt. 189-3); 67 at 60-62 (App'x at 4:808-810, Dkt. 190-2); 68 at 64-66 (App'x at 4:812-814, Dkt. 190-2).  Those official registration certificates are materially different than the ersatz copies proffered by Defendants.

In particular, Defendants base their claim that Mildred Hill wrote the familiar *Happy Birthday* lyrics virtually entirely upon the "fact" that her name appears on the purported registration certificates for E51988 and E51990.  Defendants argue they are entitled to a presumption that Mildred Hill wrote the Song based on the "fact" that is supposedly stated in those purported registration certificates.  That argument, repeated dozens of times in their sections of the Joint Brief, forms the crux of their argument that they own the *Happy Birthday* copyright.  In truth, Mildred Hill's name appears **nowhere** on the official registration certificates for the original copyrights, which are marked as Plaintiffs' Exhibits 44 and 48, leaving Defendants with **no proof** that Mildred Hill wrote the Song and thus eviscerating Defendants' argument almost entirely.

The Court should accept Plaintiffs' Exhibits 44, 48, 67, and 68 as the official sealed, signed, and certified registration certificates and should strike Defendants' Exhibits 101-104, which are not registration certificates at all, from the record.

Defendants also contend that Exhibit 106 is a copy of the work covered by E51990.  Manifold Decl., Ex. 106 at 160-161 (App'x at 6:1221-1222, Dkt. 192-1).  No one has identified Exhibit 106 as such, and no one can do so.  That Exhibit 106 represents the work covered by E51990 is pure speculation, to say the least.  As the Court will recall, Defendants do not have a copy of the work deposited with the application for E51990, the copyright for a piano arrangement composed by Preston Ware Orem as an employee-for-hire of the Clayton F. Summy Co. ("Summy Co.") in

1935.  No one with personal knowledge has identified Exhibit 106 as the deposit copy for E51990 or, for that matter, a copy of the work covered by the copyright.

At most, Defendants are left to argue that Exhibit 106 "must have been" the work covered by E51990.  *See* Jt. Br. 40:13-15 ("publication 3075 . . . must have been submitted in connection with E51990").  However, no one alive knows from personal knowledge what that work was, and there is no way to prove it from the scant record Defendants have offered.  Their Rule 30(b)(6) designee, Thomas Marcotullio, the person most knowledgeable on that question, admitted he did not know what work actually was done by Mr. Orem or what work was deposited with E51990.  *Id.*, Ex. A at 17-18 (185:19-186:3).

Since Defendants' Exhibit 106 has not been authenticated by anyone with knowledge of what that work was, and meets none of the other criteria for admissibility, it also should be stricken from the Appendix and all references to it stricken from the Joint Brief and the SOF.

Finally, Defendants rely upon Exhibit 119, an October 1988 "Confidential Information Memorandum" ("CIM") regarding Birch Tree Group Ltd. ("BTG") to support the chain of title to their claim of ownership of E51988 and E51990 and the renewals thereof.  Jt. Br. at 50:7-9; Manifold Decl., Ex. 119 at 164-166 (App'x at 8:1761-1763, Dkt. 194-1).  The only witness who "recognizes" Exhibit 119, Defendants' outside counsel Adam Kaplan, an associate with Munger Tolles & Olson LLP, was just seven or eight years old when the CIM was prepared in 1988.  Manifold Decl., Ex. 100 at 143 (App'x at 6:1200-1203, Dkt. 192-1).  Mr. Kaplan does not claim to have personal knowledge of the CIM or its creation, and plainly he lacks that knowledge.  *Id.*  We do not even know who wrote the CIM.  Quite simply, Mr. Kaplan cannot authenticate a document that was created when he was just a young child.

In addition, there is no foundation for the hearsay statements in the CIM regarding Defendants' chain of title.  Defendants rely upon the CIM to prove that David K. Sengstack owned 100% of BTG when the CIM was prepared.  The CIM does not

indicate that it was prepared by a person with personal knowledge of BTG's ownership; indeed, it does not identify any author – only that it was prepared by Wertheim Schroder & Co. Nor has anyone described the circumstances under which the CIM was prepared. In any event, the out-of-court statements from the unknown author, which Defendants proffer to prove the truth of the matter asserted, are inadmissible hearsay.

Since it has not been authenticated by anyone with personal knowledge of what it was, and since it is inadmissible hearsay in any event, Defendants' Exhibit 119 should be stricken from the Appendix and any reference to it stricken from the Joint Brief and the SOF.

## II. ARGUMENT

"Only admissible evidence may be considered in deciding a motion for summary judgment." *Miller v. Glenn Miller Prods., Inc.*, 318 F. Supp. 2d 923, 932 (C.D. Cal. 2004). Paragraph 7 of the Court's March 24, 2014, Order re: Summary Judgment Motions (Dkt. 93) likewise provides that the evidentiary appendix may include only "***admissible*** evidence." It is axiomatic that a party may move to "exclude certain evidence from the Court's consideration" on summary judgment if the evidence is inadmissible. *Brown v. Brewer,* No. CV 06-3731-GHK (SHx), 2010 U.S. Dist. LEXIS 60863, at *85 (C.D. Cal. June 17, 2010).

Defendants' Exhibits 101-104, 106, and 119 are not admissible evidence. None of those six exhibits have been – or even can be – authenticated by anyone with personal knowledge of what they are. The official, sealed, signed, and certified copies of the additional registration certificates for E51988, E51990, R306185, and R306186 prove conclusively that Exhibits 101-104 are not copies of those registration certificates. In addition, Exhibits 101-104, 106, and 119 are inadmissible hearsay and cannot be admitted on that additional basis. For these reasons, discussed more fully below, the Court should strike Exhibits 101-104, 106, and 119 from the Appendix and should strike any reference to them from the Joint Brief and the SOF.

## A.    Defendants' Exhibits 101-104 Are Not Authentic

Under Fed. R. Evid. 901, to be admitted into evidence, a document must be authenticated by a witness with sufficient knowledge to identify it as what the proponent of the document purports it to be.  Fed. R. Evid. 901(a).  The proponent of the evidence has the burden of authenticating it.  *United States v. Bellucci*, 995 F.2d 157, 160 (9th Cir. 1993).  Defendants have not satisfied the requirement for authenticating Exhibits 101-104; indeed, Defendants have not even attempted to do so.

The Ninth Circuit has "repeatedly held that unauthenticated documents cannot be considered in a motion for summary judgment."  *Orr v. Bank of Am.,* 285 F.3d 764, 773 (9th Cir. 2002) (citations omitted).  A trial court can only consider admissible evidence in ruling on a motion for summary judgment and "authentication is a 'condition precedent' to admissibility."  *Uche-Uwakwe v. Shinseki*, 972 F. Supp. 2d 1159, 1164 (C.D. Cal. 2013) (*citing Orr*, 285 F.3d at 773).  On a motion for summary judgment, the Court may only consider documents authenticated by an affiant with personal knowledge who could authenticate them at trial or through one of the means of authentication provided under Fed. R. Evid. 901(b) or 902.  *Orr,* 285 F.3d at 773-74.  "'[D]ocuments which have not had a proper foundation laid to authenticate them cannot support [or defend against] a motion for summary judgment.'"  *Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1120 (E.D. Cal. 2006) (*quoting Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1182 (9th Cir. 1988) (alterations original).

Rule 901(b) lists 10 examples of authenticating evidence.  Defendants have not provided any evidence that falls within **any** of those examples, nor have they provided any evidence that even comes close to it.  For example, they provide no testimony of a witness with knowledge that the documents are, in fact, the registration certificates for E51988 or E51990.  *See* Fed. R. Evid. 901(b)(1).  Nor do they provide any analysis of the contents or substance of Exhibits 101-104 to authenticate them.  *See* Fed. R. Evid. 901(b)(4).  Defendants provide no evidence that Exhibits 101-104 were recorded or filed in a public office **as the registration certificates** for E51988 or E51990 or that they

are kept by the Copyright Office *as the registration certificates* for the two copyrights. *See* Fed. R. Evid. 901(b)(7).

No one has said – nor could they – that Exhibits 101-104 are genuine copies of the official registration certificates for the two copyrights and their renewals. Defendants appear to rely entirely upon an unsigned transmittal cover sheet with a facsimile copy of the Copyright Office's seal on it to authenticate them. However, an unsigned, facsimile copy of an official seal is not sufficient to authenticate any document for the obvious reason that anyone with access to a photocopying machine can reproduce a copy of a seal at will. Therefore, only an official signature and seal are sufficient to authenticate a document. Exhibits 101-104 are unsigned: no one has attested to their authenticity as registration certificates. While Exhibits 101-104 may be unofficial records of the Copyright Office, they are *not registration certificates*. As Defendants concede, any presumption to which they may be entitled must be based only upon factual information contained *in the actual registration certificates*. Jt. Br. at 38:4-6 ("It is the *registration certificates* . . . that receive the statutory presumption. 17 U.S.C. § 410(c).") (emphasis added).

If Defendants' failure to provide authenticating evidence for Exhibits 101-104 were not reason enough to exclude them from the record, Plaintiffs' Exhibits 44, 48, 67 and 68 (Manifold Decl., Exs. 44, 48, 67 and 68) prove definitively that Exhibits 101-104 are *not* what Defendants claim them to be. Under Fed. R. Evid. 902(1)(A) and (B), a document is self-authenticating and admissible if it is under seal purporting to be that of a department, agency, or officer of the United States *and* signed by an official certifying its authenticity. Under Fed. R. Evid. 902(1), domestic public documents are self-authenticating if they have a raised seal purporting to be that of a department, agency, or officer of the United States *and* a signature purporting to be an execution or attestation. Fed. R. Evid. 902(1)(A) and (B).[2] To be self-authenticating under Rule 902, public

---

[2] "In all cases where a seal is necessary by law to any commission, process, or other instrument provided for by the laws of Congress, it shall be lawful to affix the

documents must either be signed under seal or attached to a certification signed under seal. *Clark v. County of Tulare*, 755 F. Supp. 2d 1075, 1102 (E.D. Cal. 2010).

Plaintiffs have lodged with the Court original Additional Certificates of Registration for E51988, E51990, R306185, and R306186. *See* Pls.' Amend. Not. Lodging (Dkt. 195, Dec. 17, 2014). All four of those exhibits were sealed with the raised seal of the Copyright Office **and** signed by Maria A. Pallante, Register of Copyrights and Associate Librarian for Copyright Services, certifying that they are, in fact, what Plaintiffs say they are: Additional Certificates of Registration for the four copyrights in question. Manifold Decl., Ex. 99 at 117-130 (App'x at 5:1119-1140, Dkt. 191-1) (excerpts of U.S. Copyright Office Compendium II). Thus, they are self-authenticating under Rule 902(1).

In *Siegel v. Warner Bros. Entm't, Inc.*, 542 F. Supp. 2d 1098, 1119-21 (C.D. Cal. 2008), the court accepted as authentic under Rule 902(1) registration certificates that had the seal of the Copyright Office and were signed by the Register of Copyrights with the following legend: "[A]ttached are additional certificates for the [comics in question] which were registered in accordance with provisions of the United States Copyright Law." Plaintiffs' Exhibits 44 and 48, the original, sealed, signed, and certified official Additional Certificates of Registration for E51988 and E51990, respectively, meet both requirements of Rule 902(1) exactly: they have the raised seal of the Copyright Office **and** they are signed by Ms. Pallante with a legend attesting to the fact that they are Additional Certificates of Registration. Therefore, under Rule 902(1)(A) and (B), Exhibits 44 and 48 are fully self-authenticating and admissible. Defendants' Exhibits 101 and 103, on the other hand, do not meet Rule 902(1) in **any** respect. They do not have the raised seal of the Copyright Office and they are not signed by anyone from the Copyright Office attesting to their authenticity. The mere fact they have an unsigned

proper seal by making an impression therewith directly on the paper to which such seal is necessary; which shall be as valid as if made on wax or other adhesive substance."
1 U.S.C. § 114.

cover sheet from the Copyright Office with a facsimile reproduction of the Copyright Office's seal does not satisfy either requirement of Rule 902(1)(A) or (B), and Defendants have identified no authority suggesting otherwise.[3]  They are not self-authenticating and they are not admissible.  *Clark*, 755 F. Supp. 2d at 1102 (only documents signed under seal or attached to a certification signed under seal are self-authenticating).

Likewise, Plaintiffs' Exhibits 67 and 68, the original, sealed, signed, and certified official Additional Certificates of Registration for the renewal copyrights R306185 and R306186, respectively, also meet Rule 902(1) exactly: like Exhibits 44 and 48, they also have the raised seal of the Copyright Office and they are signed by Ms. Pallante attesting to their authenticity.  *See Siegel*, 542 F. Supp. 2d at 1119-21.  Therefore, under Rule 902(1), Exhibits 67 and 68 are also fully self-authenticating and admissible.  On the other hand, Defendants' Exhibits 102 and 104, like Exhibits 101 and 103, do not meet Rule 902(1) in *any* respect.  Notwithstanding the unsigned cover page, Exhibits 102 and 104 do not have the raised seal of the Copyright Office and they are not signed by anyone from the Copyright Office attesting to their authenticity.  They, too, are not self-authenticating and are not admissible.  *Clark*, 755 F. Supp. 2d at 1102.

Moreover, federal law and the Copyright Office's own administrative procedures leave no doubt that Defendants' Exhibits 101-104 are *not* authentic copies of the Certificates of Registration or Additional Certificates of Registration for E51988 or E51990.  Under Section 702 of the Copyright Act, the "Register of Copyrights is authorized to establish regulations not inconsistent with law for the administration of the

---

[3]     Defendants do not even attempt to argue that their Exhibits 101-104 are signed or sealed (or the registration certificates, for that matter).  They say only that the exhibits "include official Copyright Office *cover pages* that state 'Copy of Registration.'" Joint Br. at 15:14-15 (emphasis added).  Plaintiffs' Exhibits 44, 48, 67, and 68, on the other hand, are sealed, signed, and certified as the official registration certificates.  *See* Not. Lodging (Dkt. 195).

functions and duties made the responsibility of the Register under this title.   All regulations established by the Register under this title are subject to the approval of the Librarian of Congress."  17 U.S.C. § 702.  Under Section 707(b) of the Copyright Act, the "Register also has the authority to publish compilations of information, bibliographies, and other material he or she considers to be of value to the public."  17 U.S.C. § 707(b).

Under 37 C.F.R. section 201.2(b)(7),  promulgated by the Register of Copyrights pursuant to the authority conferred under Sections 702 and 707(b) of the Copyright Act, the Copyright Office maintains administrative staff manuals, referred to as its Compendium of Office Practices I and II for the general guidance of its staff in making registrations and recording documents.  *See* Manifold Decl., Ex. 99 at 118-130.  Section 1905.01 of Compendium II[4] provides that a "certificate of registration . . . is a ***digital image of the application*** made on a form containing the signature of the Register of Copyrights and the seal of the Copyright Office."  *Id.* at 129 (emphasis added).  Only one certificate of registration is issued for any copyright.  Subsequent copies of the certificate are called "additional certificates of registration."  *Id.  see also* 5-21 Nimmer on Copyright § 21.02 (original registration certificate issued upon registration; thereafter, additional certificates of registration are issued to anyone requesting a copy). Section 1906 of the Compendium provides, "[a]dditional certificates are ***certified copies*** of the record of registration and ***have the same legal effect as the original certificate***."

---

[4]      There have been three editions of Compendium II.  The third edition became effective on December 15, 2014.  The second edition of the Compendium became effective in 1984 and was in effect until the third edition became effective.  As is relevant here, the two editions of Compendium II are *verbatim* identical.  The first version of the Compendium of Copyright Office Practices provided that "the body of the certificate is prepared by the applicant himself, as a duplicate of his application. This document ***becomes the certificate of registration*** when the ***signature*** of the Register of Copyrights and the seal of the Copyright Office have been affixed."  Thus, under all three versions of the Compendium, the application itself becomes the certificate of registration once it is signed and sealed by the Register of Copyrights.

*Id.* at 129 (emphasis added).  This is exactly what Plaintiffs have submitted as Exhibits 44 and 48.  Defendants' Exhibits 101 and 103, on the other hand, do not meet this requirement at all.

Defendants may argue that Plaintiffs' Exhibits 44 and 48 – which have been certified by the Register of Copyrights – are simply copies of the applications for the two copyrights.  That argument would be entirely unfounded and demonstrably false.  Under Section 1906.02 of Compendium II, for copyrights registered before December 31, 1977 (including the registrations for E51988 and E51990), additional certificates of registration

> consist of a ***photocopy of the application that was used to make the original registration with a pre-printed certification statement attached***.  The registration number, date of certification, and the signature of the current Register of Copyrights are added to the certification statement form, which is issued under the seal of the Copyright Office.

*Id.* at 130 (emphasis added).  Again, the official, sealed, signed, and certified documents that Plaintiffs have lodged with the Court satisfy Section 1906.02 exactly.  The unofficial, unsealed, unsigned, and uncertified Exhibits 101 and 103 do not meet Section 1906.02 at all. The documents that Defendants contend are the "certificates" for E51988, E51990, R306185, and R306186 are not authenticated under Rule 901 and they are not self-authenticating under Rule 902.

No one with personal knowledge has said that Exhibits 101-104 are what Defendants claim them to be, *i.e.*, copies of the registration certificates for those four copyrights.  To the contrary, Jeremy Blietz, Defendant Warner/Chappell's Vice President of Copyright Administration, who obtained the documents from the Copyright Office in December 2013, has denied knowing what they are.  For example, regarding Exhibit 103, the purported copy of the original registration certificate for E51988, Mr. Blietz testified, "I can read it, you know, here, but, as I said, this looks ***fairly different from the forms that we fill out today***."  Manifold Decl., Ex. B at 30-31 (92:24-93:5)

- 10 -

(emphasis added).  Mr. Blietz was asked if he understood what Mildred Hill's name on the document signified, to which he said "I can't speak to the intent here or the meaning. I'd have to speculate. All I can do is read it and tell you what it says." *Id*. at 32 (94:12-14).  Regarding Exhibit 104, the purported registration certificate for E51990, Mr. Blietz could not identify the handwritten notations on it or even say whether the notations were added by someone from Warner/Chappell or from the Copyright Office. *Id*. at 33 (121:10-22).  Mr. Blietz also did not understand what the term "arrangement" used in Exhibit 103 meant in 1935 when the document supposedly was created.  *Id*. at 33-34 (121:23-122:10).

Mr. Marcotullio, an in-house mergers-and-acquisitions lawyer for Warner Music Group, claimed to "recognize" Exhibits 101 through 104 as copies of the "registration certificates" for the two copyrights and their renewals.  However, Mr. Marcotullio has nothing to do with copyrights in the course of his employment by Defendants' parent company.  Mr. Marcotullio admitted during his deposition that he has no first-hand knowledge about the copyright applications for *Happy Birthday* and that his knowledge was derived entirely from brief discussions with others (mostly other lawyers for Warner Music Group) and by reviewing the handful of documents they provided to him. *Id.*, Ex. A at 11 (14:11-19).  Thus, Mr. Marcotullio lacks sufficient knowledge to authenticate the documents as "registration certificates."  Only an affiant with sufficient personal knowledge to authenticate a document at trial may provide an affidavit to authenticate it on summary judgment.  *Orr*, 285 F.3d at 773-74.  No one could do that for these four exhibits, since they are not "registration certificates" for any copyrights.

## B.  Defendants' Exhibits 101-104 Are Inadmissible Hearsay

Defendants apparently intend to rely upon Exhibits 101-104 to prove the truth of what they purportedly say, *i.e.*, that Mildred Hill wrote *Happy Birthday*.  As Mr. Blietz admitted, the four exhibits do not clearly identify Mildred Hill as the author of the Song and no one can say what the name "Mildred Hill" means on them. *See id.*, Ex. B at 32 (94:12-14).  However, if Defendants nonetheless intend to rely upon Exhibits 101-104

as proof that Mildred Hill wrote *Happy Birthday*, they are inadmissible for that purpose.

Any out-of-court statement offered to prove the truth of the matter asserted is hearsay. Fed. R. Evid. 801(c)(1) and (2). A written assertion (such as the four exhibits in question) is a "statement" within the definition of hearsay. Fed. R. Evid. 801(a). Obviously, Defendants' Exhibits 101-104 were not prepared at trial or a hearing. Fed. R. Evid. 801(c)(1). Exhibits 101-104 do not fall within either of the two narrow exclusions from hearsay. *See* Fed. R. Evid. 801(d).

Hearsay is inadmissible unless it falls within one of the enumerated exceptions to the hearsay rule. Fed. R. Evid. 801(d), 802. *See Orr*, 285 F.3d at 778. The four exhibits do not fall within any of the exceptions to the rule against hearsay. For example, since Exhibits 101-104 are not the official, sealed, signed, and certified registration certificate for E51988, E51990, R306185, or R306186, they neither establish nor affect an interest in property. *See* Fed. R. Evid. 803(15). In addition, since they have not been (and cannot be) authenticated, they are not admissible as ancient documents. *See* Fed. R. Evid. 803(16). None of the other enumerated exceptions to the hearsay rule apply.

Therefore, Defendants' Exhibits 101-104 must also be excluded from the summary judgment record under the hearsay rule. "Hearsay is inadmissible, and therefore, cannot be considered at the summary judgment stage." *Rosebrock v. Beiter*, No. CV 10-01878 SJO (SSx), 2011 U.S. Dist. LEXIS 61758, at *16 (C.D. Cal. May 26, 2011) (citing *Orr*, 285 F.3d at 773-74 (holding that exhibits were inadmissible hearsay)).

## C.    Defendants' Exhibit 106 Is Not Authentic

Defendants proffer Exhibit 106 as a copy of the work deposited with the application for E51990. The deposit copy for E51990 no longer exists. Manifold Decl., Ex. A at 12-13 (141:22-142:4); 15-16 (144:23-145:5). No one has identified Exhibit 106 as a copy of the work deposited with E51990, and no one can do so. No one has said, and no one can say, what work was done by Mr. Orem as Summy Co.'s employee-

for-hire in in 1935.  No one with personal knowledge has identified Exhibit 106 as the deposit copy for E51990 or, for that matter, a copy of the work covered by the copyright.  Apart from reading what was on the face of the copyright records, Mr. Marcotullio did not know what work actually was done by Orem or what work was deposited with E51990.  *Id.* at 17-18 (185:19-186:3).  And Mr. Marcotullio was unable to state what was meant by the reference to Mr. Orem in the copyright records.  *Id*. at 18-20 (186:4-188:12).  No one has said that Exhibit 106 was published in 1935 or ever.

Defendants have not offered any competent evidence to meet their burden to authenticate Exhibit 106 as a copy of the work deposited with E51990.  *Bellucci*, 995 F.2d at 160.  Without any evidence to identify or authenticate Exhibit 106, Defendants simply theorize that, since it is sheet music for *Happy Birthday*, Exhibit 106 "must have been" a copy of the work covered by E51990.  *See* Jt. Br. at 40:13-15 ("publication 3075 . . . must have been submitted in connection with E51990").  Such sheer speculation is not adequate to authenticate Exhibit 106.  *See Orr*, 285 F.3d at 773-74 (on motion for summary judgment, Court may only consider documents authenticated by affiant with personal knowledge who could authenticate them at trial).

### D.    Defendants' Exhibit 106 Is Inadmissible Hearsay

Defendants may try to rely upon Exhibit 106 to prove that Mildred Hill wrote *Happy Birthday* since her name appears on the sheet music where the name of the musical composer usually appears.[5]  Were they to do so, Exhibit 106 would be inadmissible hearsay under Rule 802.  Plainly, Exhibit 106, like Exhibits 101-104, does

---

[5]    The musical composer's name is usually placed in the upper right-hand corner of sheet music, where Mildred Hill's name appears on Exhibit 106.  Manifold Decl., Ex. 106 at 161.  There is no dispute that Mildred Hill composed the Song's melody, as *Good Morning to All*, sometime before 1893.  *See* SOF at P3 (Dkt. 183 at 1).  However, the placement of her name in the upper-right corner of the sheet music does ***not*** mean that Mildred Hill wrote the familiar *Happy Birthday* lyrics, which also appear on Exhibit 106.  In any event, that inference would be inconsistent with Patty Hill's sworn deposition testimony she, not Mildred, wrote the Song's familiar lyrics.  Manifold Decl., Ex. 87 at 94-99 (App'x at 5:1000-1041, Dkt. 191-1).

not fall within either of the two narrow exclusions from hearsay.  *See* Fed. R. Evid. 801(d).  In addition, Exhibit 106 does not fall within any of the exceptions to the rule against hearsay provided for in Rule 803.

Therefore, Exhibit 106 also must be excluded under the hearsay rule.  *See Rosebrock*, 2011 U.S. Dist. LEXIS 61758, at *16 (inadmissible hearsay "cannot be considered at the summary judgment stage").

### E.    Defendants' Exhibit 119 Has Not Been Authenticated

Defendants have not satisfied the requirement for authenticating Exhibit 119. Fed. R. Evid. 901 (document must be authenticated by witness with sufficient knowledge to identify it); *Bellucci*, 995 F.2d at 160 (proponent of evidence has burden of authenticating it).   Defendants do not even attempt to have an employee of Warner/Chappell, or anyone else with first-hand knowledge, authenticate Defendants' Exhibit 119, the CIM.  Instead, they rely upon one of their outside attorneys, Mr. Kaplan, to authenticate it.  In Paragraph 17 of his declaration, Mr. Kaplan claims to "recognize the document" bearing Bates number WC0001137 and WC0001142-43 as a true and complete copy of an excerpt of an October 1988 "Confidential Information Memorandum" regarding Birch Tree Group Ltd.  This document is Appendix Exhibit 119.  Manifold Decl., Ex. 100 at 143, ¶ 17 (App'x at 6:1200-1203, Dkt. 192-1).

Mr. Kaplan was only seven or eight years old when the CIM was prepared, assuming it was prepared in 1988 as it says.  Plainly, Mr. Kaplan has no first-hand knowledge of its preparation, and he does not claim to have that knowledge.  Even if Mr. Kaplan could authenticate Exhibit 119 as an excerpt from the CIM, his declaration does not provide any details explaining how he could "recognize" the CIM, such as when he first saw it, when and how he obtained it, when and how he learned what it was, and the like, much less authenticate Exhibit 119 as a "true and complete copy of an excerpt" – whatever that means – from the CIM.

In *Menalco v. Buchan*, No. 2:07-cv-01178-PMP-PAL, 2010 U.S. Dist. LEXIS 8042, at *38 (D. Nev. Feb. 1, 2010), the district court struck certain documents from the

record on a summary judgment motion where counsel for the party offering the documents provided no basis for him to have personal knowledge as to the authenticity of the documents he attempted to authenticate.  For that same reason, Mr. Kaplan's declaration, which plainly is not based on his personal information and which provides no other basis for him to be able to authenticate a document that was created when he just a young child, does not authenticate it.

### F.    Defendants' Exhibit 119 is Inadmissible Hearsay

If the Court were to overlook the defects in the record and accept Exhibit 119 as authentic, it remains inadmissible hearsay.  Defendants rely upon Exhibit 119 to prove the truth of what the CIM says: that "Birchtree, through a series of predecessor companies, has been operated continuously by the Sengstack family since 1931 . . ." and; 2) that "Birch Tree is 100% owned by its chairman, David K. Sengstack." Manifold Decl., Ex. 119 at 164.   Any out-of-court statement, including a written document, offered to prove the truth of the matter asserted is hearsay.  Fed. R. Evid. 801(a), (c)(1) and (2).  Obviously, Exhibit 119 was not prepared at trial or a hearing. Fed. R. Evid. 801(c)(1).  In addition, Exhibit 119 does not fall within either of the two narrow exclusions from hearsay.  *See* Fed. R. Evid. 801(d).

Nor does Exhibit 119 fall within any of the exceptions to the rule against hearsay. *See* Fed. R. Evid. 802; *Orr*, 285 F.3d at 778.  For example, the Defendants have offered no testimony that Exhibit 119 meets the business records exception.  *See* Fed. R. Evid. 803(6).  In addition, since the CIM has not been (and cannot be) authenticated, it is not admissible as an ancient document.  *See* Fed. R. Evid. 803(16).  None of the other enumerated exceptions to the hearsay rule apply.

Therefore, Exhibit 119 must also be excluded from the summary judgment record under the hearsay rule.  "Hearsay is inadmissible, and therefore, cannot be considered at the summary judgment stage."  *Rosebrock*, 2011 U.S. Dist. LEXIS 61758, at *16 (*citing Orr*, 285 F.3d at 773-74 (holding that exhibits were inadmissible hearsay)).

- 15 -

### G.    Defendants' Exhibit 119 Lacks Foundation

Even if the Court were to overlook the fact that Exhibit 119 is unauthenticated, inadmissible hearsay, it cannot be considered on the motion for summary judgment because there is no foundation for the hearsay statements in the CIM regarding Defendants' chain of title.  A witness may only testify if evidence is introduced to prove that he "has personal knowledge of the matter" in question.  Fed. R. Evid. 602.  A witness may not testify in person or by declaration or affidavit when "he lacks personal knowledge of the facts he is reciting."  *Milton H. Greene Archives, Inc. v. CMG Worldwide, Inc.*, No. CV05-2200 MMM (MCx), 2008 U.S. Dist. LEXIS 71761, at *44 (C.D. Cal. Mar. 17, 2008) (excluding declaration where it appeared that witness lacked personal knowledge of facts stated); *Kesey, LLC v. Francis*, No. CV 06-540-AC, 2009 U.S. Dist. LEXIS 28078, at *48-49 (D. Or. Apr. 3, 2009) (same) (striking affidavit from summary judgment record where witness appeared not to have sufficient personal knowledge to testify).

Whoever may have written Exhibit 119 – no author of the CIM is identified – there is no proof that it was prepared by a person with personal knowledge of BTG's ownership.  In fact, other evidence offered by the Defendants contradicts some of the statements in the CIM.  For example, the CIM states that "BTG has, through a series of predecessor companies, operated continuously since 1931 when John F. Sengstack, an accountant, purchased and reorganized Clayton F. Summy Co., a Chicago sheet music retailer and publisher."  Manifold Decl., Ex. 119 at 165.  However, the Agreement between Clayton F. Summy and John F. Sengstack contradicts that statement; it was Clayton Summy who reorganized the Clayton F. Summy Co. by contributing all the assets of the Illinois company to a Delaware company in exchange for 1,500 preferred shares of stock in the Delaware corporation worth $150,000.  *Id.*, Ex. 23 at 43-44, ¶¶ 6-14 (App'x at 3:534-544, Dkt. 189-2); *id.*, Ex. 92 at 106-115 (App'x at 5:1059-1068, Dkt. 191-1).

Mr. Sengstack purchased 1,500 shares of common stock in the Delaware corporation for only $15,000. The corporation could redeem Mr. Summy's 1,500 shares of preferred stock for $150,000 plus accrued dividends. *Id.* However, Defendants have offered no evidence that Mr. Summy's preferred shares were ever redeemed. (*Id.*, Ex. 23 at 45, ¶ 19).

The CIM also states that "[a]cquisitions in the 1970's included Educational Music Bureau." *Id.*, Ex. 119 at 166. Again, that statement is not accurate. Other evidence produced by Defendants shows that Educational Music Bureau in fact acquired Summy-Birchard Company, not the other way around. *Id.*, Ex. 23 at 47-48, ¶¶ 40-54; *Id.*, Ex. 71 at 85-89 (App'x at 4:824-828, Dkt. 190-2); *id.*, Ex. 72 at 72-78 (App'x at 4:830-836, (Dkt. 190-2). After the merger, the owners of the Delaware corporation owned 60% of Educational Music Bureau and the owners of Educational Music Bureau owned 40% of the shares. *Id.*, Ex. 23 at 48, ¶ 53; *id.*, Ex. 72 at 72-78. Again, Defendants have offered no evidence that the Sengstack family acquired the remaining 40% of Educational Music Bureau after the merger. *Id.*, Ex. 23 at 48-49, ¶ 54.

There are far too many problems with Defendants' Exhibit 119 – the lack of authentication, hearsay, and the lack of foundation for the information in the CIM itself – to warrant its consideration on summary judgment.

## III.   <u>CONCLUSION</u>

For all the foregoing reasons, Defendants' Exhibits 101-104, 106, and 119 are inadmissible and should be stricken from the Appendix and any reference to those exhibits should be stricken from the Joint Brief.

Dated: December 22, 2014        **WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:    */s/ Betsy C. Manifold*
        BETSY C. MANIFOLD

        FRANCIS M. GREGOREK
        gregorek@whafh.com

- 17 -

BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile:  619/234-4599

**WOLF HALDENSTEIN ADLER
 FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
BETH A. LANDES (*pro hac vice*)
landes@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone:  212/545-4600
Facsimile:  212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES
 DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@huntortmann.com
KATHLYNN E. SMITH (234541)

1  smith@ huntortmann.com
2  301 North Lake Avenue, 7th Floor
   Pasadena, CA 91101
3  Telephone 626/440-5200
   Facsimile 626/796-0107
4  Facsimile:  212/797-3172

5  **DONAHUE FITZGERALD LLP**
6  WILLIAM R. HILL (114954)
   rock@donahue.com
7  ANDREW S. MACKAY (197074)
   andrew@donahue.com
8  DANIEL J. SCHACHT (259717)
9  daniel@donahue.com
10 1999 Harrison Street, 25th Floor
   Oakland, CA 94612-3520
11 Telephone: 510/451-0544
12 Facsimile:  510/832-1486

13
14 **GLANCY BINKOW & GOLDBERG LLP**
   LIONEL Z. GLANCY (134180)
15 lglancy@glancylaw.com
16 MARC L. GODINO (188669)
   mgodino@glancylaw.com
17 1925 Century Park East, Suite 2100
18 Los Angeles, CA 90067
   Telephone: 310/201-9150
19 Facsimile:  310/201-9160
20
21 *Attorneys for Plaintiff*
22
23
24
25
26 Warner/Chappell: 21437.MOT.EXCLUDE
27
28

- 19 -