1               UNITED STATES DISTRICT COURT

2        CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE

4

5   GOOD MORNING TO YOU PRODUCTIONS       )
    CORP., ET AL.,                     )

6                           ) CASE NO.
                  PLAINTIFFS,   ) CV 13-4460

7                           )
        VS.                     )

8                           )
    WARNER/CHAPPELL MUSIC, INC.,        )

9    ET AL.,                      )
                           )

10               DEFENDANTS.   )
   ————————————————————————————————————————)

11

12

13

14                 REPORTER'S TRANSCRIPT OF
        CROSS MOTIONS FOR SUMMARY JUDGMENT AND

15      MOTION BY PLAINTIFF TO EXCLUDE EVIDENCE
           MONDAY, MARCH 23, 2015

16                 9:38 A.M.
          LOS ANGELES, CALIFORNIA

17

18

19

20

21

22    _____

23      KHOWOONSUN CHONG, CSR 12907, CRR, RMR
        FEDERAL OFFICIAL COURT REPORTER

24       255 EAST TEMPLE STREET, ROOM 181-G
        LOS ANGELES, CALIFORNIA 90012

25         kchong12907@yahoo.com

1                    **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFFS:**

4        WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
         BY:  MARK C. RIFKIN, Esquire
5        270 Madison Avenue
         New York, New York 10016

6
         WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
7        BY:  BETSY C. MANIFOLD, Esquire
         750 B Street, Suite 2770
8        San Diego, California 92101

9        RANDALL S. NEWMAN PC
         BY:  RANDALL S. NEWMAN, Esquire
10       37 Wall Street, Penthouse D
         New York, New York 10005

11
         DONAHUE FITZGERALD LLP
12       BY:  DANIEL J. SCHACHT, Esquire
         1999 Harrison Street, 25th Floor
13       Oakland, California 94612

14   **FOR THE DEFENDANTS:**

15       MUNGER, TOLLES & OLSON
         BY:  KELLY M. KLAUS, Esquire
16           ADAM I. KAPLAN, Esquire
         560 Mission Street, 27th Floor
17       San Francisco, California 94105

18       MUNGER, TOLLES & OLSON
         BY: MELINDA E. LeMOINE, Esquire
19       555 South Grand Avenue, 35th Floor
         Los Angeles, California 90071

20

21   **ALSO PRESENT:**

22   Ellen Hochberg, Warner Music Group

23

24

25

**UNITED STATES DISTRICT COURT**

1 **I N D E X**

2 **CASE CV 13-4460**                      **Monday, March 23, 2015**

3 <u>**PROCEEDINGS:**</u>                                    <u>**PAGE**</u>

4 Cross Motions For Summary Judgment and              4
  Motion by plaintiff to exclude evidence

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, MARCH 23, 2015

 2                            9:38 A.M.

 3                             -oOo-

 4              THE CLERK:  Please remain seated and come to order,

 5    this United States District Court is now in session, the

 6    Honorable George H. King, Chief Judge presiding.  Calling Item

 7    No. 1 on today's calendar, Civil 13-4460, Good Morning to You

 8    versus Warner/Chappell Music, Incorporated.  Counsel, state

 9    your appearances for the record.

10              MR. RIFKIN:  Good morning, Your Honor.  Mark Rifkin

11    of Wolf Haldenstein on behalf of the plaintiffs.

12              THE COURT:  Good morning.

13              MR. NEWMAN:  Good morning, Your Honor.  Randall S.

14    Newman, Randall S. Newman, P.C., on behalf of plaintiffs.

15              THE COURT:  All right.

16              MR. SCHACHT:  Your Honor, Daniel Schacht of Donahue

17    Fitzgerald on behalf of the plaintiffs.

18              THE COURT:  Yes, good morning.

19              MS. MANIFOLD:  Good morning, Your Honor.  I'm Betsy

20    Manifold.  I'm a partner with Mr. Rifkin at Wolf Haldenstein.

21              THE COURT:  Good morning.

22          Now for the defendants.

23              MR. KLAUS:  Good morning, Your Honor.  Kelly Klaus

24    from Munger, Tolles & Olson, joined by my colleagues, Melinda

25    LeMoine and Adam Kaplan, also joined by Ellen Hochberg who is
```

1    the head of litigation for Warner Music Group.  And we are here

2    for the defendants.

3            THE COURT:  All right.  Very good.  Thank you very

4    much.  All right.  Counsel, I have had an opportunity to review

5    your moving papers and the exhibits.  I do have some questions,

6    some of which may be organizational from the standpoint of what

7    is a good analytical framework by which I can approach this.  I

8    have questions for both sides, but let me start with the

9    defendants.

10        Mr. Klaus, will you be addressing the Court on behalf of

11   the defendants?

12            MR. KLAUS:  I will, Your Honor.

13            THE COURT:  Would you approach the lectern, please.

14            MR. KLAUS:  Yes, of course.

15            THE COURT:  Okay.  Let me just start out with some

16   preliminary questions.  I think I know the answer to these

17   questions, but I just want to make sure that there are no

18   disputes.  I don't believe there are any disputes.

19        You, on behalf of the defendants, you admit that

20   Mrs. Forman and Mr. Orem did not author the so-called familiar

21   lyrics of *Happy Birthday*.  Do you agree with that?

22            MR. KLAUS:  That's correct, Your Honor.

23            THE COURT:  Look, instead of saying familiar lyrics,

24   I'm just going to say lyrics.

25        And then, if I refer to the second verse, I'll call it the

second verse so we understand each other and we don't have to

have additional words when not necessary.

Do you also now agree that Exhibits 44 and 48 are the

certificates of registration for your two claimed copyrights?

MR. KLAUS:  Yes.

THE COURT:  And with respect to which of these or

both cover the so-called lyrics, is it your argument that

E51990 covers the lyrics and E51988 really puts it into proper

context as to why E51990 covers the lyrics?

MR. KLAUS:  It is our position, Your Honor, that

E51990 covers -- was intended to cover the lyrics and does

cover the lyrics.  And 51988 covers -- it was intended to cover

it on the same day, what we'll call the second verse, refers to

it as the revised text.

THE COURT:  So you're not claiming E51988

independently covers the lyrics?

MR. KLAUS:  I believe we haven't actually briefed

that issue, Your Honor.  I do think that, because the deposit

copy unquestionably -- the 51988 -- included both the lyrics

and the second verse, if necessary, we would fall back on it.

But our position is, Your Honor, that it's 51990.

THE COURT:  Okay.  My second question is both you

and the plaintiffs spend a lot of your 50 pages focused on

talking about the certificates as such.  And unfortunately the

initial briefing, there was some dispute as to which are the

1    certificates.  So, you know, having read that, I had to sort of

2    rewind it a little bit to now know what your true position is.

3         But my question is do you claim that you hold any kind of

4    statutory federal copyright even if the lyrics were not

5    covered, let's say for today's purposes, in E51990?

6              MR. KLAUS:  I'm not sure.  I believe, Your Honor,

7    that our position is 51990 does cover the lyrics.

8              THE COURT:  I understand.  I understand.

9              MR. KLAUS:  And --

10             THE COURT:  We can talk about that issue, and we

11   will in a moment.  What I'm trying to understand is the

12   substantial focus that you folks put in that because,

13   obviously, you know that a copyright is not necessarily the

14   same as the registration.  You could have a copyright even

15   under the 1909 Act, a statutory one, even if you don't

16   technically have a registration for it.

17             MR. KLAUS:  I believe, Your Honor --

18             THE COURT:  There may be consequences.  I'm not

19   saying there are no consequences, but I'm just trying to

20   understand.

21             MR. KLAUS:  I believe, Your Honor, that under the

22   1909 Act, that for the initial term of the copyright, which

23   would have started in 1935, registration technically was not

24   necessary.  What was necessary was publication with notice --

25             THE COURT:  Right.

**UNITED STATES DISTRICT COURT**

1          MR. KLAUS:  -- which we believe has happened here.

2      The renewal term, I believe there was a requirement that a

3  certificate of registration be filed, and we do have in the --

4  in the record the renewal of both 51990 and --

5          THE COURT:  In 1962.

6          MR. KLAUS:  Correct.

7          THE COURT:  So what you're telling me -- and make

8  sure that my summary is accurate.  What you're telling me is

9  that's the reason why it is important that your position is

10  that E51990 includes the lyrics.

11         MR. KLAUS:  Yes.  Well, the -- one of the -- one of

12  the issues that we have debated at length with the other side

13  in the papers is what was encompassed within the copyright.

14  And it's our position that the registration certificate, which

15  we now know to be, I believe, Exhibit 48 for E51990, covers not

16  just the easy arrangement with the piano solo but also covers

17  text.

18         THE COURT:  I understand.  I'll get to that in a

19  moment.  I just want to make sure that so in your case you

20  don't have any further claim to copyright protection as to the

21  lyrics if the Court were to determine that E51990 does not

22  cover the lyrics; is that true?

23         MR. KLAUS:  I believe, Your Honor, that what we

24  would have is we would have the publication in 1935 plus the

25  renewal, which also states that it's with text.  So I don't

1   think it's just the underlying certificate.  I think that it's

2   the publication with the -- with the lyrics.

3      What the -- what the copyright certificate does for us, I

4   believe, Your Honor, the 1935 copyright certificate, is it

5   gives us the presumption that what was covered was not simply

6   the arrangement but also the text.

7         THE COURT:  Well, we'll talk about the presumption

8   and all of that, but the renewal does no more than what you say

9   was copyrighted in 1935 other than to renew it.  You weren't

10   renewing anything else.

11         MR. KLAUS:  That's correct, Your Honor.

12         THE COURT:  Okay.  So if I were to determine that in

13   1935 it didn't cover the lyrics, it couldn't have covered the

14   lyrics by reason of the renewal.  Wouldn't you agree with that,

15   if I were to determine that?

16         MR. KLAUS:  If you were to determine that the

17   registration and publication in 1935 didn't cover the lyrics,

18   then yes I would agree with you that the renewal would not.

19         THE COURT:  Okay.  Now, let's talk about the

20   question about what does it cover, does it or does it not.  And

21   my initial question to you is -- and I don't believe either

22   side has really addressed this; so I want to give you an

23   opportunity to weigh in on it -- is that a question of law, or

24   is that a question of fact in terms of what those certificates

25   actually cover, or that certificate actually covered?

1          MR. KLAUS:  I believe, Your Honor, that the

2    interpretation of a copyright certificate is traditionally

3    treated as a question of law.

4          THE COURT:  Even if there might be a need to go

5    beyond the four corners of the certificate to accept extrinsic

6    evidence?

7          MR. KLAUS:  If there were a need to go beyond the

8    four corners to accept extrinsic evidence, there might be a

9    fact question if there was a fact question that was disputed.

10   Our position is it's not, and I'm happy to explain that.

11         THE COURT:  We'll get to that too.

12         MR. KLAUS:  But one of the --

13         THE COURT:  We'll do it one step at a time.

14         MR. KLAUS:  Understood.  But I believe, as the

15   Supreme Court made clear as recently as last term in the

16   Raging Bull case, the Petrella against MGM case, the function

17   of the registration certificate is to provide that Congress

18   knew that copyrights would last for a very long time.  They

19   would last beyond the point where one could have extrinsic

20   evidence from people, as in this case who were alive in 1935.

21         THE COURT:  There may be extrinsic evidence aside

22   from the testimony of the people who were the players.

23   Obviously, we're not going to have those.

24         MR. KLAUS:  Understood, Your Honor.

25       So I think the -- I have not seen a case that holds that

1    the interpretation of what is covered by a copyright is a

2    question of fact.  I would think that, if there were factual

3    disputes and extrinsic evidence that were required to be

4    answered, that would probably be a mixed question of law, in

5    fact, but I could understand --

6              THE COURT:  That would be tried by a trier of fact

7    as opposed to being determined by the Court in terms of my role

8    of deciding what the scope is?

9              MR. KLAUS:  It might be.  The only hesitation I

10   have, Your Honor -- and we did not brief this question, as I'm

11   sure you're familiar with, from the patent context --

12             THE COURT:  That's somewhat different now, isn't it?

13             MR. KLAUS:  It's different now, but the -- but there

14   is the -- there is question of where you have, for example, the

15   construction of a claim --

16             THE COURT:  Right.

17             MR. KLAUS:  -- that that's what the Supreme Court

18   said in Markman, that this is an issue for the Court because

19   this is a -- it's a document of public consequence.

20             THE COURT:  And that really hasn't -- my

21   understanding is -- and I'm no patent lawyer, believe me.  But

22   my understanding, that really hasn't changed other than perhaps

23   the standard of review as to the underlying factual

24   determinations may have -- it did change from what the federal

25   circuit thought it was.

1          MR. KLAUS:  Yes.  As has happened in a number of

2    cases, the way the federal circuit construed the law did not

3    turn out to be that case.  But I don't think the underlying

4    question as to who makes the determination has changed.

5          THE COURT:  From your view then, borrowing from

6    patent law, is that if I'm deciding whether or not the

7    certificates -- certificate has within its scope the lyrics and

8    I feel that there is a need to go outside the four corners of

9    the certificate and if that evidence actually is conflicted, I

10   can still make that factual determination under my duty to

11   decide what the scope of the copyright certificate is.

12         MR. KLAUS:  I believe that's correct, Your Honor,

13   with the -- with obviously the caveats about a number of points

14   in the chain, about if -- and excepting that -- excepting those

15   points out, the only other thing I would say is I can't say

16   that I have researched the question exhaustively, but I would

17   think that would be the way that it would be analyzed.

18         THE COURT:  Okay.  Let's talk about burden of proof

19   for a moment.  You have at various parts in your briefing said

20   that the burden is not only not on you because you have the

21   benefit of the presumption to go forward, but you assert that

22   the burden of persuasion does not rest with you because you

23   didn't bring an infringement suit, and you cited Schaffer.

24        But this is a declaratory relief action, and don't we look

25   to what the underlying coercive claim would have been to

1  determine where the burden lies?  That doesn't change any

2  presumption, if a presumption is to be applied.  I understand

3  that, but the presumption is really rebuttable.  It's the

4  burden of going forward.  It's not an irrebuttable presumption

5  by any stretch of the imagination.

6      So do you still believe that, because this is a

7  declaratory relief action, because technically they're the

8  plaintiff, you're the defendant, they have the burden to prove

9  everything on persuasion?

10         MR. KLAUS:  I believe that, at least with respect to

11  some issues, Your Honor, that they would.  I also think --

12         THE COURT:  Well, you're right.  Some of those are

13  characterizable as affirmative defenses.

14         MR. KLAUS:  Yes.

15         THE COURT:  And affirmative defenses, I agree.  They

16  have the burden.

17         MR. KLAUS:  And I would say that -- I would say,

18  though, Your Honor, I don't know that a -- I don't know that

19  the issue has been explicitly decided with respect to a

20  declaratory judgment case for the validity of a copyright as

21  opposed to the invalidity of a copyright.  But I can see why

22  from the cases one would -- one would conclude that, if you

23  were to treat this as a coercive action turned upside down, as

24  this case in some respects is, we might have the burden.

25         THE COURT:  Well, there's no real conceptual

 1  difference between our case, just because it's copyright,

 2  versus Metronic because it was patent.  And it seems to me that

 3  Supreme Court decision might -- we may want to allow that to

 4  inform us as to where the burden lies.

 5          MR. KLAUS:  Understood.  And I would -- I would

 6  agree with that, Your Honor.

 7          THE COURT:  Let's talk about the scope of E51990.

 8  Do we apply the presumption first, or do we say we're going to

 9  have to decide what the scope is so we know what presumption to

10  apply to it?

11          MR. KLAUS:  I believe that the cases have always

12  looked first to the certificate and the presumption and then

13  said what is there to rebut the presumption.

14          THE COURT:  Okay.

15          MR. KLAUS:  And in this case, Your Honor, of course

16  our position is that, notwithstanding the claim by the

17  plaintiffs that they have rebutted the presumption, that the

18  evidence is undisputed, and it's entirely in our favor that

19  what was intended to be registered was not simply a piano

20  arrangement but also the text.

21          THE COURT:  Let's explore that.

22          MR. KLAUS:  Yes.

23          THE COURT:  Let's explore, assuming you're right

24  about the applicability of the presumption, because, of course,

25  even under the 1909 Act, registration certificate presumes the

1  validity of whatever it was that was covered and the truth of

2  the statements made therein.  Okay?  You agree with that?

3          MR. KLAUS:  Correct.

4          THE COURT:  All right.  So let's see where that gets

5  us.  Okay?  The certificates or this certificate, which is 48,

6  I believe -- right? -- Exhibit 48?

7          MR. KLAUS:  Exhibit 48.  Correct, Your Honor.

8          THE COURT:  Okay.  So in taking a look at

9  Exhibit 48, it says who's the author of the new material?

10  Because this is for "Republished Musical Composition with New

11  Copyright" material.

12      Question No. 3, "Author of new copyright matter:  Preston

13  Ware Orem, employed for hire by Clayton," blah, blah, blah.  So

14  the assertion that we have to presume to be correct, at least

15  on the presumption, prima facie, is that Mr. Orem was the

16  author of any new copyright matter.

17      Number 7, question, "State exactly on what new matter

18  copyright is claimed."  And it says, "Arrangement as easy piano

19  solo, with text."

20      Okay.  That's what is claimed.  And assuming that is

21  correct, literally that it is easy piano solo -- arrangement as

22  easy piano solo, with text, and that's presumed to be correct,

23  prima facie to be true, then you apply that with your admission

24  that Mr. Orem did not author the lyrics.

25      So if we literally apply the presumption, one -- one,

```
 1   maybe not the only -- but one logical deduction or conclusion

 2   is that the text cannot refer to the lyrics.

 3           MR. KLAUS:  If there were no other evidence in the

 4   record, Your Honor, that might be correct.  But the other

 5   evidence -- and we have to start from couple of propositions.

 6       One is that the reference to -- and it is not uncommon in

 7   copyright cases for there to be a mistake on the application as

 8   to who the author was.  And, in fact, one of the cases that

 9   we've cited, to which I don't think there is a response, is the

10   Emmylou Harris against Emus Records case, Your Honor.

11           THE COURT:  That's really not on point.  Let me tell

12   you why I don't think so.  There, it was not really a scope

13   issue.  There was no question that sixth song, *Gliding Bird* or

14   whatever the name, was claimed in the copyright.  So we are

15   questioning whether or not the lyrics were covered in this

16   copyright; so I think that's a pretty big difference.

17           MR. KLAUS:  Well, except that the case that

18   Emmylou Harris relies on -- Emmylou Harris, it stands for the

19   proposition that inaccuracies that were not obtained by an

20   intent to defraud -- there is no claim by the plaintiffs that

21   there was an intent to defraud the copyright office here --

22   that cause no prejudice to the defendant, as in this case,

23   there's no claim that they have been prejudiced by any of

24   the -- in other words, that absent an intent to defraud and

25   prejudice, the technical inaccuracy in the registration doesn't
```

1   affect the validity of the copyright.  And one of the --

2           THE COURT:  I'm sorry.  I'll let you finish that,

3   and then I'll follow up.  Go ahead.

4           MR. KLAUS:  The point I was going to make,

5   Your Honor, is Emmylou Harris is not the only case.  There is

6   also the Barron against Leo Feist case.  And that case is much

7   closer to what you were describing in terms of the scope

8   because the -- the arrangement that was at issue there, the

9   calypso arrangement, the underlying copyright registration had

10  attributed to the purported author simply the collection of

11  calypso lyrics in Jamaica, I think, at the time.

12          And the argument on -- the argument on appeal was that

13  that -- that that was an indication that the lyrics were not --

14  that the melody to what was pla- -- I believe the plaintiff's

15  work and then the defendant's work, which I think was *Rum and

16  Coca-Cola*, I think was the name of the song.  And the argument

17  in that case was, because the registration certificate said

18  one -- because the registration certificate didn't attempt to

19  claim that, that therefore -- or the application, that

20  therefore it couldn't be claimed later on.

21          And what the Second Circuit said in case law that's been

22  continued all the way through the Emmylou Harris case is that

23  sort of technical defect is not going to upset the -- is not

24  going to upset the validity of the copyright if it's challenged

25  later on.

```
 1            THE COURT:  Well, but my concern with that is nobody
 2   here -- or at least I don't think -- is suggesting that your
 3   copyrights are invalid, period, gone, finished.  You still have
 4   a copyright.  The question is again the scope.  They're not
 5   challenging that you have a copyright to the arrangements.  It
 6   doesn't blow it up.  There's no fraud here shown.  It doesn't
 7   blow up the certificate so that you have nothing.  That's not
 8   the issue.
 9       The issue is really a little bit different.  The issue is
10   is it included in the claim?  And by the very admission,
11   whether you call it sufficient to defeat and therefore set
12   aside any presumptions, or you say, okay, the presumption goes
13   so far but there is other evidence.  So ultimately whether the
14   presumption technically applies or does not apply is not going
15   to have earthshaking consequences, in our case at least, on the
16   record.
17       So my question is, if you admit that there is at least
18   error -- and you claim that there's an error.  They claim there
19   was no error.  But let's just talk about your position.  You
20   claim that there was just an error.  We forgot to put on one of
21   the Hill sisters, whoever authored the lyrics -- and we'll
22   discuss that later on -- but one of the Hill sisters, we should
23   have put that name as the author of the text.  That would have
24   been really helpful and clearer, but it didn't.  That was just
25   a mistake.
```

1          Isn't that mistake sufficient to say that maybe we

2    shouldn't apply the presumption because what are we going to

3    presume?  We can't presume Mildred or Patty wrote the lyrics

4    because there's nothing on the certificates for which we apply

5    the presumption that ever says that.  So in any event, aren't

6    we into just receiving evidence as to what's your evidence and

7    what's their evidence?

8               MR. KLAUS:  If that was -- if that was the case,

9    Your Honor -- and I've said I think the Barron against

10   Leo Feist case and the Emmylou Harris case would go against

11   that.  But even if we are in the world where we are not relying

12   on the presumption, the evidence, the undisputed evidence

13   that's in the record is that the Hill sisters wrote *Happy*

14   *Birthday to You*, not simply the underlying melody, which was

15   their melody.  Undisputed *Good Morning to All* was their melody,

16   their words.

17        The undisputed evidence in the record from the deposition

18   of the Hill sisters in the Hill v. Harris case is that it was

19   written -- that the lyrics were written by Patty Hill.

20               THE COURT:  Okay.

21               MR. KLAUS:  Point number one --

22               THE COURT:  Let me ask you, there is deposition

23   testimony by -- I think it was Patty Hill's deposition that

24   says that she wrote the lyrics to -- the lyrics, what we'll

25   call the lyrics.  Is that admissible?

**UNITED STATES DISTRICT COURT**

1          MR. KLAUS:  I don't believe there's been an -- I

2     don't believe there's been an objection.  It is prior

3     testimony.  I don't know why it -- why wouldn't it be

4     admissible?

5          THE COURT:  Prior testimony doesn't solve anything

6     because she's not here to testify.  If she were a witness or a

7     declarant and you have her declaration of something, maybe if

8     it satisfies some other foundational issues, that would be

9     admissible.  I don't think prior testimony applies if she's not

10    going to be here, and I don't think she will be.

11         MR. KLAUS:  Although she is unavailable as a

12    witness, Your Honor, it is deposition testimony.  That's one --

13    that's one, but it's not the only thing, Your Honor, because --

14         THE COURT:  Okay.  What else?

15         MR. KLAUS:  We also --

16         THE COURT:  What you're saying is Patty says she did

17    it.  Okay.  What else do you have?

18         MR. KLAUS:  Patty says she did it.

19      Number 2, which I don't think can be discounted, is the

20    fact that it was the Hill sisters' underlying song.  They wrote

21    *Good Morning to All*.  That is completely undisputed.  It's not

22    like these are -- the sisters were strangers to the underlying

23    work.

24         THE COURT:  If I may, I think we're going down a

25    different analytical road than I want to go down right now.

```
 1   We'll come to that at a later point.
 2       My question is still we're trying to determine scope.  So
 3   how is it that we're going to even determine what other
 4   evidence do you have to suggest -- either I say the presumption
 5   is gone or I say the presumption is met.  What evidence do you
 6   have that would convince me that the lyrics were included in
 7   the registration?
 8               MR. KLAUS:  Well, so the other evidence I would
 9   have, Your Honor -- let me point this to you very specifically.
10               THE COURT:  Okay.
11               MR. KLAUS:  We know that the same day that 51990 was
12   deposited, 51988 was deposited and there was an intention to
13   claim copyright on the -- the arrangement with the revised
14   text.  So it's the combination of text plus -- revised text is
15   covered by 51988, some text must have been intended to be
16   included with 51990.  Point number 1.
17               THE COURT:  True.  The question is what is that
18   text?
19               MR. KLAUS:  I'm happy -- okay.  I'm happy to get
20   into the question of what that text is, Your Honor, and why
21   don't I do that now.  I do want to say, with respect to the
22   other evidence, we also have the Catalog of Copyright Entries
23   from 1935 which was prepared by the copyright office in 1935
24   and which, according to its inside cover, as the certificate
25   from the copyright office says, was -- was at the time
```

```
 1   sufficient to establish a prima facie case.  What the copyright
 2   office used -- and this is important because the --
 3              THE COURT:  You're talking about Exhibit 105.
 4              MR. KLAUS:  No.  It's Exhibit C to my declaration --
 5   Exhibits C and D to my declaration on the motion to strike were
 6   the Catalog of Copyright Entries we received from the copyright
 7   office.
 8              THE COURT:  Are you talking about the card?
 9              MR. KLAUS:  No, Your Honor.  A and B were the cards
10   that came.
11              THE COURT:  Okay.  Right.
12              MR. KLAUS:  C and D --
13              THE COURT:  Right.
14              MR. KLAUS:  -- were the Catalog of --
15              THE COURT:  Oh, the Catalog of the Copyright
16   Entries.  Okay.  And?
17              MR. KLAUS:  And if you look at Exhibit C --
18              THE COURT:  Yes.
19              MR. KLAUS:  -- if you look at page 21 of
20   Exhibit C --
21              THE COURT:  Page 21.
22              MR. KLAUS:  -- the page number from the copyright
23   office in this bound volume was 1260.
24              THE COURT:  Yes.  I have it.
25              MR. KLAUS:  And the column on the right-hand side,
```

 1    the fourth entry from the top, *Happy Birthday to You*.

 2              THE COURT:  I'm sorry.  Which column?

 3              MR. KLAUS:  Second column on the right.

 4              THE COURT:  On the right, yes.

 5              MR. KLAUS:  Four entries from the top.

 6              THE COURT:  Four entries from the top?

 7              MR. KLAUS:  I'm sorry.  Four entries from the

 8    bottom, Your Honor.  My apologies.

 9              THE COURT:  Yes, yes.  I see it.

10              MR. KLAUS:  *Happy Birthday to You* by Mildred J.

11    Hill, arrangement Preston Ware Orem, PF, which I believe in the

12    day was piano forte or piano solo, with W, and the W means

13    words, as was typed onto the top of what we now know to be the

14    certificate.

15              THE COURT:  Okay.

16              MR. KLAUS:  So we have -- we have that from the

17    Catalog of Copyright Entries, and as you see on the -- if you

18    look at page number 20, which is the -- what we got from the

19    copyright office, after the title page, says the act of

20    March 4, 1909, going into effect July 1, 1909, provides the

21    Catalog of Copyright Entries shall be admitted in any court as

22    prima facie evidence of the facts stated therein as regards any

23    copyright registration.

24              THE COURT:  So what this says is *Happy Birthday to*

25    *You* by Mildred J. Hill.  It doesn't say it's the lyrics, does

1   it?

2          MR. KLAUS:  It says, with W.  Now --

3          THE COURT:  It says arranged by Preston Ware Orem,

4   PF, with W.

5          MR. KLAUS:  Correct.

6          THE COURT:  So unless we say that your proffered

7   deposit copy, which is exhibit --

8          MR. KLAUS:  105, Your Honor.

9          THE COURT:  105.

10         MR. KLAUS:  106.  I'm sorry.

11         THE COURT:  106.  Unless I accept 106 as, in fact, a

12  true and correct copy of the deposit copy relating to this

13  copyright, even if I accept this as evidence, what it does say

14  is Mildred J. Hill wrote *Happy Birthday to You*, and the

15  evidence also seems to show that she wrote the music to it.

16  There's no question she didn't write the words.  In fact, you

17  assert Patty did.  You don't even assert that Mildred did.

18      So if that's true in combination, then *Happy Birthday to*

19  *You* by Mildred Hill refers to the music as to which there was

20  an arrangement for piano forte, with text or with words.

21      Question is, again, what words?

22      If we don't know whether 106, in fact, is the deposit

23  copy, then for all we know, it could include text by Mr. Orem

24  relating to nothing about the lyrics.  If 106 is admissible and

25  I were to believe it and accept it, then I think you got a

```
 1    pretty strong argument that what other text is there other than

 2    the lyrics?  But what I'm suggesting is we got a few facts that

 3    we're going to have to sort out.

 4              MR. KLAUS:  May I get -- and I'm happy -- I can get

 5    to those points right now, Your Honor.

 6              THE COURT:  Please do.  Please do.

 7              MR. KLAUS:  Yes.  So, first of all, we know,

 8    Your Honor, that there was sheet music that was deposited with

 9    the 51990 application.

10              THE COURT:  Yes.

11              MR. KLAUS:  We know that from Exhibit 105.

12    Exhibit 105 is the record of the filing of the copyright.

13              THE COURT:  Correct.

14              MR. KLAUS:  And right at the top of the page, what

15    it says is Happy Birthday to You, exclamation point, by

16    Mildred J. Hill, Preston Ware Orem, employed for hire by

17    Clayton F. Summy Company of U.S.

18         And then the examiner, the person who opened the envelope

19    that day in the copyright office and wrote this down in this

20    book, which is how it got the 51990 number, wrote in, piano,

21    capital S, solo, with words.

22         And if one -- now, what we know is that the --

23              THE COURT:  You'll have your opportunity, Counsel.

24              MR. RIFKIN:  That's fine, Your Honor.

25              MR. KLAUS:  What we know, Your Honor, is that the
```

1   application that we've looked at, which was 48, didn't say

2   Mildred J. Hill.  It didn't say piano solo, with words.  It

3   said easy piano arrangement, with text.

4        The person who wrote this down --

5             THE COURT:  But it did say also, copyright is

6   claimed on an arrangement as easy piano solo, with text.

7             MR. KLAUS:  With text.

8             THE COURT:  Exactly the same language as the

9   certificate.

10            MR. KLAUS:  What seems -- what seems clear, if you

11  look at the -- if you look at Exhibit 105 and you look at that

12  in conjunction with Exhibit 106, which says on the cover, piano

13  solo, both words capitalized, with words, which says *Happy*

14  *Birthday to You* with an exclamation point, and Mildred Hill --

15  what I would suggest, Your Honor, is that -- that in

16  combination there's no contradictory evidence that what the

17  person was looking at when they filled in the record of the

18  filing was both the application which had the line that

19  Your Honor quoted and the sheet music that said Mildred Hill,

20  that says piano solo, with words.  That's one point.

21       We also have the fact, Your Honor, that on the same day,

22  same day that 51990 was received, 51988 was received, that has

23  lyrics and the second verse.  And no evidence -- and the

24  combination of those two points, Your Honor, I think, leads

25  only to the conclusion that what was submitted with 51990 were

1   the lyrics and what was submitted with 51988 was the revised

2   text.

3       I would also say, Your Honor, there is -- notwithstanding

4   a scouring of every piece of sheet music that exists, there is

5   nothing the plaintiffs have come up with that has said --

6   nothing that we have found that says here's something else,

7   here is an alternative arrangement, here is an alternative set

8   of lyrics for *Happy Birthday to You.*

9       Indeed, the plaintiffs in their first four complaints in

10  this case said that the deposit with 51990 did include the

11  lyrics, and they were challenging the -- they were challenging

12  the validity of whether or not that was eligible to be claimed

13  for copyright protection.  But even they said it, and there is

14  no evidence anywhere that the lyrics could have been or that

15  the text could have been anything other than what we are

16  calling as the lyrics here.

17      So it seems to me the combination of the deposit record,

18  Exhibit 106, other editions of exactly the same lyrics -- and,

19  Your Honor, I would direct you to Mr. Rifkin's declaration in

20  support of the motion to strike, Exhibits C and D, which are

21  later printings of the same sheet music.  They were printings

22  in a time when the copyright owner was Summy-Birchard Music.

23  Later on Summy-Birchard is a division of Birch Tree Group.  The

24  only evidence of any record ever having been printed are the

25  sheet music that contains the lyrics.  There is no evidence of

```
 1   any other set of text.
 2            THE COURT:  Let me ask you this:  The deposit copy
 3   of E51988 says Mildred Hill on the top right-hand side, but it
 4   also says arrangement by R.R. Forman; right?
 5            MR. KLAUS:  It says -- just one moment, Your Honor.
 6   It also says --
 7            THE COURT:  On the top left-hand side.
 8            MR. KLAUS:  Yes.  Arrangement by Mrs. R.R. Forman,
 9   correct.
10            THE COURT:  But 105 -- is it 105?
11      106, which you say is a deposit copy for E51990, doesn't
12   mention Mr. Orem at all.  What about that?  Does that have any
13   significance?
14            MR. KLAUS:  I don't know.  Your Honor, I -- I would
15   say the answer is no.  I don't think it has any significance,
16   number one.
17            THE COURT:  Has no significance in terms of the mix
18   of evidence that I would look at to see whether or not
19   Exhibit 106, in fact, is a true and correct copy of the deposit
20   copy?
21            MR. KLAUS:  Your Honor, it's -- first of all,
22   whether Exhibit 106 is an exact duplicate of the deposit copy,
23   I think the evidence suggests very strongly it was, that this
24   was the version that was published in 1935.  But I think
25   Exhibit 106 is very close to it, and I don't know what the
```

```
 1   significance would be of Mr. Orem's name being in the left-hand
 2   corner or upper left-hand corner as to whether or not what was
 3   intended to be claimed would be what we are calling the lyrics
 4   to Happy --
 5           THE COURT:  Let me ask you something.  I know
 6   nothing about music.  Okay?  I can see these -- the musical
 7   signs and everything, but I wouldn't be able to tell you what
 8   it means whatsoever.
 9       Is there anything about that piece of sheet music,
10   Exhibit 106, that shows that this is a piano arrangement?  I
11   don't know the answer to that.  I'm confessing ignorance in
12   music.  So I'm asking you that question because I'm trying to
13   search for ways of either confirming or refuting your position.
14   I'm just trying to understand it.
15           MR. KLAUS:  I believe, Your Honor, that -- and I'm
16   not an expert in music myself, but I don't believe this was
17   disputed by their expert either.
18           THE COURT:  That this is an expression of the piano
19   arrangement?
20           MR. KLAUS:  It is an expression of a -- it is an
21   expression of a piano arrangement.  It is an expression of a
22   piano arrangement.  And by the way, one point that Mr. Kaplan
23   reminded me of that I don't want to forget here, Your Honor --
24           THE COURT:  Yes.
25           MR. KLAUS:  -- is in terms of you asked what is the
```

```
 1   evidence that this was the deposit copy.  If you look at -- if
 2   you look, Your Honor, at the lower left-hand corner of the
 3   sheet music --
 4            THE COURT:  You know, maybe if you have a better
 5   copy, my copy is pretty -- it's not that great.
 6            MR. KLAUS:  May I approach, Your Honor.
 7            THE COURT:  Yes.  Let's see if yours is a little
 8   bit -- I guess -- no, no.  I'm sorry.  I'm sorry.  This one is
 9   fine.  It's the other deposit copy that I have a problem with.
10       All right.  Go ahead.
11            MR. KLAUS:  Yes, Your Honor.  In the --
12            THE COURT:  You're referring to the 3075 and 3076
13   notation?
14            MR. KLAUS:  Correct.
15            THE COURT:  Okay.  I understand.
16            MR. KLAUS:  Correct, correct.  And in serial -- that
17   they were published serially with the -- with the same number.
18       To return to your question, Your Honor, about whether
19   Exhibit No. 106 contains a piano arrangement, I don't believe
20   there's any dispute that the -- the setting of the notes here,
21   the musical notes, is a musical arrangement.
22            THE COURT:  Is a musical arrangement?
23            MR. KLAUS:  Is a --
24            THE COURT:  Piano?
25            MR. KLAUS:  I think it's intended for piano.  What I
```

1    do understand, I believe, Your Honor, is that the -- the way

2    that this -- first of all, it says "piano solo, with words" on

3    the cover, and I also think the arrangement of the notes on

4    here is for it to be played -- I think it's a -- it's one hand

5    as opposed to two hands.  I believe that, if there were three

6    bars, it would be for what's called a second hand.

7                THE COURT:  I'll have to take your word for it.

8                MR. KLAUS:  I'm not a pianist, Your Honor, but I do

9    think this would be an arrangement.  And I also do think that

10   the -- what we have in terms of the registration certificate,

11   the record of copyright deposits that we have been discussing,

12   says this is both an arrangement and it includes text.

13               THE COURT:  Let me just move on and ask you some

14   other questions in terms of what your position would be

15   depending upon how I resolve this question, and then I think I

16   should give plaintiffs an opportunity to address the Court as

17   well on these or any other issues.

18       If I were to conclude -- and let's say I go with your

19   tentative position -- and I'm not holding you to it -- your

20   tentative position that this is very much like the Markman

21   situation, that I would make a determination as to the scope

22   even if there are questions of fact to be determined.  Let's

23   assume that's it, and I could decide one of two ways.  Let's

24   say it is within the scope or it is not within the scope.

25       If I say it is within the scope, is that the end of the

**UNITED STATES DISTRICT COURT**

```
 1   inquiry as far as you're concerned?
 2              MR. KLAUS:  If the lyrics are within the scope, I
 3   believe that it is.  The plaintiffs have made an issue
 4   regarding chain of title, which I would be happy to get into.
 5              THE COURT:  Put aside the chain of title.  I don't
 6   even think that chain of title was sufficiently briefed.  It
 7   was something you folks threw in there at the end.  Whatever it
 8   was, I think I need to have you folks really weigh in more on
 9   that, but I don't want to talk about that right now.
10        What I'm talking about is, even if this was meant to be
11   included, can I apply the presumption of validity when there is
12   an obvious mistake in terms of the author?
13              MR. KLAUS:  Clearly under the Emmylou Harris case,
14   Your Honor, which was a mistake as to the author, clearly the
15   answer is yes.
16              THE COURT:  Wait.  Emmylou Harris says that you
17   don't -- you don't void anything.  I'm not voiding anything.
18   I'm saying, do we apply still a presumption?  What presumption
19   do we apply?
20              MR. KLAUS:  The presumption --
21              THE COURT:  The presumption on -- on the face of it,
22   the certificates don't say any Hill sister.  So how could I
23   presume it's true that it's a Hill sister?
24              MR. KLAUS:  The answer in terms of whether -- first
25   of all, if the -- if the copyright is valid, then the
```

**UNITED STATES DISTRICT COURT**

1    presumption that follows, Your Honor, is that the lyrics were

2    properly registered, that they were original to the author,

3    meaning they were not copied by someone else.  The burden would

4    shift to the plaintiffs under the Feist case to establish that

5    there was a copy.  There is no --

6              THE COURT:  Let's hold that.  It's original to the

7    author -- in this case, Mr. Orem -- which you have already said

8    it's not true.  It can't be.  The author, it can't -- you know,

9    that's what I'm saying.  If I apply the presumption that's

10   permitted under the law, the only presumption I'm going to

11   apply is that the lyrics, if I say are included -- let's say I

12   conclude that way.  It is included.  They are included.  I

13   cannot presume that they are original to the author because you

14   have admitted it is not.

15             MR. KLAUS:  It's -- no, you can't -- Your Honor,

16   the -- what we say, the evidence that's in the record that is

17   undisputed is that the Hill sisters wrote this work.

18             THE COURT:  Do you claim Mildred wrote the lyrics?

19             MR. KLAUS:  We claim that it was Patty Hill.  She

20   testified who wrote the lyrics.  The two sisters, just as they

21   had with respect to the underlying work *Good Morning to All*,

22   that Mildred wrote the music, melody music, and that Patty was

23   the lyricist in the combination.

24             THE COURT:  That's your position.

25             MR. KLAUS:  Correct.  And those --

```
 1              THE COURT:  Go ahead.

 2              MR. KLAUS:  I'm sorry.  And those --

 3              THE COURT:  I appreciate you being very, very

 4   polite.  And I do appreciate that, and I don't mean to be

 5   impolite when I cut you off.  It's just that I'm trying to get

 6   to something, and I don't want to forget it.  At my age, I tend

 7   to forget a lot of things if I don't tend to it right away.  So

 8   you'll forgive me.

 9              MR. KLAUS:  Your Honor, the -- we'd say that the

10   underlying evidence is -- which is the deposition testimony,

11   which are the assignments from the Hill sisters to the

12   foundation --

13              THE COURT:  We still have to get to the evidence.

14   Whether you say there's a presumption, or no, they have

15   presented some evidence.  We still have to get to the evidence.

16              MR. KLAUS:  Okay.  So that -- our position,

17   Your Honor, would be that even if -- first of all, there is a

18   presumption that the copyright is valid, that the copyright

19   covers the text.  And it is their burden to discharge that.

20       Now, one thing I would say that they tried to do -- we

21   also haven't discussed yet, but I'm sure Mr. Rifkin will -- is

22   they claim what was licensed from a third sister, the youngest

23   sister Jessica Hill, to the Clayton Summy Company --

24              THE COURT:  I'm glad you brought this up because

25   that is something I do want to talk about.  Thank you.
```

1                    MR. KLAUS:  What was licensed, they say, was simply

2    piano arrangements, and they say a consequence of that, a

3    consequence of it being the licensing of piano arrangements, is

4    that Summy, as a licensee, as opposed to having a complete

5    assignment of the copyright, was not permitted to register the

6    work.  And therefore, when the work was published in 1935, it

7    fell into the public domain.

8            And that is -- there's the Abend case which we have cited,

9    Your Honor, which is a Ninth Circuit case which says -- quite

10   clearly adopts the reasoning of the Second Circuit in a case

11   called Goodis.  And the Abend case says that this exact

12   argument, which is called a doctrine of indivisibility rule,

13   that the licensee couldn't register and that the work slipped

14   into the public domain -- the Abend case rejects that

15   proposition, Your Honor, and what it says is that the problem

16   with applying the -- and this is at page 863 F.2d.

17           The case is at 1465, and the key discussion is pages 1469

18   to 1470, that it brings about an unnecessarily harsh result of

19   thrusting the author's product into the public domain where, as

20   here, everyone interested can see the copyright notice, as one

21   does on Exhibit 106, plainly published with notice, and there

22   was no evidence of an intention by the underlying authors,

23   copyright owners in this case, as of 1935 the Hill sisters, to

24   put their work into the public domain, of which there is no

25   evidence in this record that the Hill sisters intended for this

```
 1    work to be placed in the public domain.

 2         Under the -- under Abend and Goodis and under another

 3    case, Your Honor, which is the -- which is Sanga Music against

 4    EMI, 55 F.3rd 756 -- it's another Second Circuit case, cites

 5    Abend, cites the Goodis case -- says this has been applied

 6    repeatedly, that what happened over the years is that the

 7    courts rejected the doctrine of indivisibility in saying that a

 8    licensee was not permitted -- that a licensee's publication, if

 9    they were a licensee, injected the work into the public domain.

10         THE COURT:  I think -- I'll let Mr. Rifkin make his

11    own argument, but my understanding of his argument is really a

12    little bit different from that.  It's not just that the

13    registrant is just a licensee but also that the license, even

14    the content of the license, was limited to some piano

15    arrangements.

16         So I think, if you're going to address that issue,

17    maybe -- I understand you've addressed this other issue.

18    That's fine.  I appreciate it.  But really it's the question as

19    to what was licensed.

20         Let's assume for the moment licensees -- you know,

21    registering is not going to affect the disastrous results that

22    Abend tries to avoid.  All right.  Let me know what your

23    response is, which I assume Mr. Rifkin will argue, is that the

24    allegation -- of course, we don't have that particular license

25    agreement.  That's the '34 license agreement which we do not
```

```
 1   have; right?  Am I right on that?
 2              MR. KLAUS:  That's -- that's correct.
 3              THE COURT:  Okay.
 4              MR. KLAUS:  What we do, though, have is -- we do
 5   have, Your Honor, in Exhibit 50 --
 6              THE COURT:  Right.  That's the Complaint.
 7              MR. KLAUS:  Correct.
 8              THE COURT:  Okay.  Let's put aside the evidentiary
 9   issue as to its admissibility.  But assuming it is admissible,
10   we look at that.  Doesn't that seem to say that all that was
11   licensed was piano arrangements, not the lyrics?  It doesn't
12   say anything about lyrics as far as I can see.
13              MR. KLAUS:  It doesn't say lyrics were not included.
14   What it, in fact, says, Your Honor, is it describes in the
15   tenth paragraph on page 3 of the Complaint --
16              THE COURT:  Okay.  Hang on one second.  Let me --
17              MR. KLAUS:  Of course.
18              THE COURT:  -- review that with you.
19        Tenth paragraph?
20              MR. KLAUS:  Yes.
21              THE COURT:  Okay.  The one that says that one of the
22   songs contained in the works mentioned and described at
23   paragraphs 4th to 8th, inclusive hereof, is one entitled
24   *Good Morning to All*, which, with words, written by the said
25   Patty S. Hill, was later entitled *Happy Birthday to You* and was
```

1   included among the song copyrighted, as aforesaid, by Summy.

2        That one?

3            MR. KLAUS:  That's one of them, Your Honor.

4            THE COURT:  Okay.  Why don't you tell me your take

5   on the significance of that.

6            MR. KLAUS:  Our take on the significance of that is

7   that there's plainly an allegation that it wasn't simply the

8   *Good Morning to All* song.  It was also *Happy Birthday to You*

9   with those lyrics that was included within the license.

10       And then if you look, Your Honor, at paragraph 15 --

11           THE COURT:  15, all right.

12           MR. KLAUS:  -- which starts on page 4, continues on

13  to page 5, the nub of the Complaint in this case by the Hill

14  Foundation was that the license that had been granted -- not

15  that Summy had exceeded the license by publishing *Happy*

16  *Birthday to You* in sheet music with the lyrics.  His Complaint

17  says, as she had done in her deposition, that Patty was the

18  author of the lyrics.

19       The allegation was that the -- that Summy had gone in

20  excess of the license by licensing people to include *Happy*

21  *Birthday to You* in motion pictures, what we now call

22  synchronization licensing.  And what it says at the bottom of

23  that paragraph is the only rights acquired at any time by --

24           THE COURT:  That paragraph meaning paragraph 15?

25           MR. KLAUS:  15.

```
 1              THE COURT:  Yes.

 2              MR. KLAUS:  Yes.  And so at the top of page 5, what

 3  it says is the only rights acquired at any time by Summy under

 4  the original express license and the oral renewals thereof

 5  being those of publication and sale of said songs or works in

 6  sheet music form.

 7      And then if Your Honor -- if you look at the paragraph 24

 8  of the Complaint --

 9              THE COURT:  Yes.

10              MR. KLAUS:  What it says, during the calendar years

11  1934 and 1935 the aforesaid Jessica M. Hill, as owner of the

12  copyright of the said book or work *Song Stories for the*

13  *Kindergarten* -- and there is this issue here where they are

14  debating what the reincorporation of the claim that Summy

15  Company was.

16      But the allegation is that Jessica Hill, it's undisputed,

17  controlled the -- controlled the interest that devised from

18  both Patty and Mildred, that she granted to this defendant a

19  number of licenses for the publication, sale, and performance

20  of various piano arrangements of the song variously entitled

21  *Good Morning to All* and *Happy Birthday to You*.

22      And *Happy Birthday to You* has already been previously

23  defined in this Complaint within paragraph 10 to say words

24  written by the said Patty Hill.

25              THE COURT:  But that may be in terms of which
```

1    *Happy Birthday*, it's that *Happy Birthday*.  But this says

2    publication, sale, and performance of various piano

3    arrangements of *Good Morning to You* and *Happy Birthday to You*.

4        MR. KLAUS:  What I would submit to you, Your Honor,

5    is that the piano arrangement discussion must refer back to the

6    sheet music form that's in paragraph 15, that that was what

7    the -- the dispute between the parties was whether or not the

8    license that included the lyrics to *Happy Birthday to You*,

9    sheet music form which we know is the Exhibit 106, as opposed

10   to the question whether that reference to piano arrangements is

11   simply a reference to the musical notes.

12       And I would say this, Your Honor.  This is -- and let

13   me -- let me come to this point, which is that the consequence

14   of the plaintiff's reading -- the consequence of the

15   plaintiff's reading which is presuming against the Hill

16   sisters, that what they licensed was not just notes but, as it

17   says in paragraph 10, the words *Happy Birthday to You*, to that

18   song, the consequence of their argument is that the publication

19   by Summy Company in 1935 with the copyright registration

20   destroyed the Hill sisters' common-law copyright.

21       THE COURT:  Because that would have constituted a

22   general publication.

23       MR. KLAUS:  It would have constituted a general

24   publication.  Now, that's one thing.  It would constitute an

25   abandonment into the public domain.  I -- which -- and that's

what _Abend_ says, we're going to go against that and not apply

this doctrine harshly to work that kind of forfeiture.

     But the second point, Your Honor -- and this is

important -- if we're wrong about that, and their position is

it didn't put it into the public domain because it was not an

authorized publication -- if that's the case, the copyright

never left the Hill sisters and when they assigned it to Summy

in 1944 there had been no -- there had been -- there had been

no -- there had been no destruction of the copyright in 1935 by

the publication.

     It remained their copyright, and at the point in time

where they assigned it to the Summy Company in 1944, Summy

Company's existing copyright certificate and the rights they

obtained from the Hill sisters would have merged.

          THE COURT:  I'll take another look at the 1944

assignment, but it seems to me the 1944 assignment just

assigned whatever rights they may have had in those specific

copyright certificates as identified.  So if that's it, then

your argument becomes a little bit circular.

          MR. KLAUS:  Well, I think it was all -- it's a

matter of intent as to what was covered by the assignment,

Your Honor.  That's the -- that's the holding of the Ninth

Circuit case we cite, _South-Western Publishing Company_,

651 F.2d 653, question of intent as to what would be assigned.

     And given the -- I'll finish up, Your Honor.  Given the

```
 1   evidence -- we submit it's undisputed -- that the Hill sisters

 2   wanted their works to be protected by copyright, given the

 3   undisputed evidence that, for continuing on, a third of the

 4   royalties from the -- from the licensing of the work continued

 5   to go to the Hill Foundation and now to the Association For

 6   Early Childhood Development, that the evidence that what the

 7   Hill sisters wanted was for the copyright to protect this work

 8   and that they intended to transfer that work is unmistakable

 9   from the documentation, Your Honor.

10           THE COURT:  Let me just ask you one other question.

11           MR. KLAUS:  Yeah.

12           THE COURT:  To the extent that the publication

13   occurred three days, I think, before -- it was actually the

14   same day as application but three days before the certificates

15   were issued, I think, something like that, and you say that the

16   publications, if you say these are the sheet music, including

17   the purported deposit copy for E51990 all said Mildred Hill on

18   it, why was there any occasion for mistake?

19           MR. KLAUS:  I have no idea, Your Honor.

20           THE COURT:  Does that mean maybe it wasn't a

21   mistake?

22           MR. KLAUS:  Your Honor, what we know is there was no

23   effort to hide Mildred Hill's authorship if the sheet music was

24   submitted with her name on it.

25           THE COURT:  I don't think anybody was trying to hide
```

1    it.  Maybe somebody didn't claim it.  Maybe, you know, if

2    Mildred Hill wrote the music, great.  We're talking about the

3    lyrics, and they're not claiming lyrics.

4       I'm just saying that's a -- I'm thinking about it in

5    conjunction with everything else you've said.

6           MR. KLAUS:  I under- -- I hear what Your Honor is

7    saying, but I think, when it is combined with the fact that

8    the -- specifically said, with text, in another application the

9    same day for exactly the same lyrics plus a second verse, was

10    intended to claim text.

11       When one looks at no one has up until the point in this

12    case so far has ever claimed that the "with text" was intended

13    to be something other than the lyrics, and there's no

14    evidence --

15           THE COURT:  You never sued anybody on those lyrics

16    either.

17           MR. KLAUS:  There's no evidence of there being --

18    there's no evidence -- which we're not -- which we have -- we

19    have licensed the work for 70 years.  The people who have --

20           THE COURT:  How much are the licenses?

21           MR. KLAUS:  The licenses vary, Your Honor.

22           THE COURT:  From what to what?

23           MR. KLAUS:  That, I don't -- I don't have.  I don't

24    know that information specifically.  It depends.  There are two

25    types of licenses that are at issue here, just so we're clear.

1    We're not talking about little kids' birthday parties in the

2    backyard with people singing.  That's not a public performance.

3              THE COURT:  That's good.  So I haven't been

4    infringing anything.  All that time when I'm in a restaurant

5    and somebody brings me a little cupcake, I'm okay on that then?

6              MR. KLAUS:  Yes, Your Honor.

7              THE COURT:  I'm relieved.

8              MR. KLAUS:  Just to be clear, Your Honor, just as

9    with any other popular work -- *God bless America*, which is

10   under copyright, *Frosty the Snowman*, which is under

11   copyright -- there's no popularity penalty for a work that

12   achieves popularity.

13       And the way that it works, if you sing *Happy Birthday to*

14   *You* in your home, in your backyard, it's a private performance

15   to which there is no -- the copyright doesn't apply.  If it's

16   something done in a space to which a public performance license

17   is required like a large restaurant or something that meets the

18   size requirements of the Copyright Act, just as with any other

19   work, Your Honor, that is sung in those cases or that is piped

20   in through the music in the background, that establishment has

21   an ASCAP public performance license which blanket --

22             THE COURT:  You don't even have an estimate of the

23   range of the licensing fees?

24             MR. KLAUS:  Your Honor, I believe --

25             THE COURT:  I don't want you to guess.  That's

1  worthless.

2            MR. KLAUS:  I don't want to -- I don't want to

3  guess, but I think that sync licenses --

4            PERSON IN AUDIENCE:  500 to a thousand, 1,500.

5            MR. KLAUS:  I'm told by my client from

6  Warner/Chappell that the range is from $500 to $1,500 for sync

7  licensing.

8            THE COURT:  They add up.

9            PERSON IN AUDIENCE:  It can be more depending on the

10  type of the --

11            MR. KLAUS:  Yes.  Depending on the type of --

12            THE COURT:  So if it were a full-length feature

13  movie --

14            MR. KLAUS:  If something were a full-length feature

15  movie produced by a major motion picture studio that has

16  budgets of tens of millions of dollars --

17            THE COURT:  Right.

18            MR. KLAUS:  -- then, yeah, a sync license, as with

19  any other work --

20            THE COURT:  How much would that be?

21            PERSON IN AUDIENCE:  I'm not trying to be overly

22  vague.  It just depends on the scope of the --

23            THE COURT:  Five figure, six figure?

24            PERSON IN AUDIENCE:  It could be five figures, six

25  figures, like any other song.

```
 1           THE COURT:  Okay.  One final question, and I will
 2    give the plaintiffs an opportunity.  I know that they've been
 3    waiting patiently for this.  Once I determine the scope issue,
 4    even if what you assert is correct -- and I don't know whether
 5    Mr. Rifkin agrees with you or not that I will determine it even
 6    if there are factual issues on the scope -- but once we go
 7    beyond the scope, and if I determine that there is going to be
 8    some disputed facts to inform any of those other issues that
 9    you and I have talked about, whether they're affirmative
10    defense issues, whether they're initially your burden issues
11    and so forth, those would, I take it, be something that would
12    be tried by a trier of fact.
13           MR. KLAUS:  If there were factual disputes.
14           THE COURT:  If there were factual disputes, of
15    course.  If there are no factual disputes, it would be summary
16    judgment, but if I determine that there are factual disputes,
17    that would be something tried by a trier of fact in a trial.
18           MR. KLAUS:  I believe -- I believe that's correct,
19    Your Honor, with the one caveat, which is that when you say
20    apart from the scope and valid- -- the plaintiffs have thrown
21    everything and the kitchen sink at this copyright, and I want
22    to know specifically where there was the dispute.  But in
23    general --
24           THE COURT:  Of course.
25           MR. KLAUS:  But in general -- in general I do agree
```

 1    with that, Your Honor.

 2            THE COURT:  Okay.  And has there been a request for

 3    a jury trial on this issue, and can there be a jury trial on

 4    this declaratory relief aspect of it, or are we going to run

 5    into some problems with the so-called Dairy Queen cases because

 6    of certain other direct claims beyond the declaratory relief?

 7            MR. KLAUS:  There is, and there can't be a jury

 8    trial right on the declaratory relief claim, Your Honor, I

 9    believe.  That said, the plaintiffs have a set of state law

10    claims -- breach of contract and the like -- that they have

11    held in abeyance or that Your Honor stayed pending the

12    determination of the federal copyright claim.  And I believe we

13    discussed this the last time, that there is a potential

14    Beacon Theatres-Dairy Queen issue about whether the Seventh

15    Amendment would require facts that are necessary --

16            THE COURT:  Those --

17            MR. KLAUS:  The facts that are necessary to decision

18    on this -- and, again, we would have to see what those were.

19            THE COURT:  But you're happy with a court trial.

20            MR. KLAUS:  We're fine with a court trial,

21    Your Honor, yes.

22            THE COURT:  Okay.  Thank you.

23       Mr. Rifkin?

24            MR. RIFKIN:  Good morning.  And obviously I'm happy

25    to answer any questions Your Honor may have.  I presume you

 1   want to ask questions rather than have me make some prepared

 2   remarks.

 3           THE COURT:  Well, I think you have heard my

 4   discussion with Mr. Klaus, and to the extent that in light of

 5   that discussion you want to make your point, because I

 6   certainly don't mean to take your position, because I don't

 7   know some of these positions you would take, and my questions

 8   are not indicative of anything I decided to do.  They're to

 9   facilitate a discussion so that I can have the benefit of your

10   respective position.

11      So if you have something you want to particularly inject

12   in light of my conversation with Mr. Klaus, please do that.

13   And you're right.  I do have some questions, and I may be able

14   to work it in at the propitious time.

15           MR. RIFKIN:  Yes, Your Honor.  And I'll try to be

16   brief in my remarks because I know Your Honor will have

17   questions.  I know how much time you've spent thinking about

18   this.

19      First, I think the parties all agree that at least insofar

20   as the first claim is concerned, the request for declaratory

21   judgment, with respect to the scope of the copyright or its

22   validity -- and you recall there was an issue about whether we

23   challenged the scope or the validity or both, and we tried to

24   explain it.  What we said was the copyright in question, 51990,

25   doesn't and can't cover the song, but if for some reason the

```
 1   defendants took the position that it did, it would be invalid.

 2   And we will address that at the Court's pleasure, but that is

 3   the declaratory judgment claim as to which there is no right to

 4   a jury trial and as to which no jury demand has been made.

 5        So I think, to answer your first question, we agree that

 6   if Your Honor believes that the record on summary judgment is

 7   sufficient to decide the issues, if there are any disputed

 8   issues of fact, Your Honor would decide them as the finder of

 9   fact in that case.

10            THE COURT:  As to scope.

11            MR. RIFKIN:  As to the scope and as to the validity

12   of the copyright under Count 1 of the Complaint, the

13   declaratory judgment action.  That's correct.  So I think we

14   can take that issue -- I think that takes the issue off the

15   table.

16            THE COURT:  Well, let me -- scope, okay.  Validity,

17   you're the one who's got these other claims; so you can decide

18   what you want to do.  I'm just trying to think whether or not,

19   if I decide validity, does that take away one also issue

20   relevant to your state law claims so that under Beacon Theatres

21   and Dairy Queen I can't do that, I have to allow you to

22   maintain your right to jury trial first as opposed to this?

23   And that's the only reason I raised the issue.

24            MR. RIFKIN:  With respect to validity, if there are

25   issues that overlap, then, yes, I agree that there are issues
```

**UNITED STATES DISTRICT COURT**

 1    that would require that a jury trial take place first.  But I

 2    do believe that the scope issue resolves all of these disputes

 3    because I believe -- and I understand the Court hasn't made a

 4    decision yet, but Your Honor's question certainly anticipated

 5    most, not all, but most of the arguments we wanted to make

 6    today.

 7         At one point I stood up during --

 8              THE COURT:  Yes.

 9              MR. RIFKIN:  -- counsel's argument.  I certainly

10    didn't mean to interrupt and be disrespectful.  I did want to

11    raise an evidentiary objection to the exhibit that Mr. Klaus

12    attached to his declaration in response to our motion to

13    strike, Exhibit 106.  That exhibit, which I believe is

14    Exhibit C to Mr. Klaus's declaration --

15              THE COURT:  That's not 106.  106 is the --

16              MR. RIFKIN:  Correct.

17              THE COURT:  -- purported deposit copy.

18              MR. RIFKIN:  Correct.  Your Honor, the prelude to

19    this is the presumption question, and as Your Honor has

20    discussed and as we briefed exhaustively, the presumption is a

21    limited presumption.  It's a rebuttable presumption, and it

22    applies only to certain things.  It applies to, for example,

23    the facts that are stated in the registration certificate.

24         There was a time when the defendants claimed that a

25    registration certificate, or what they said was a registration

1    certificate which had Mildred Hill's name in it, somehow

2    entitled them to a presumption that she wrote the song.  They

3    have now admitted that that Exhibit 101 and Exhibit 103, that

4    they are not registration certificates, and we're grateful for

5    that admission.

6         And I believe today -- at least I made some notes -- they

7    now admit that Mildred did not write the lyrics to *Happy*

8    *Birthday*, that if any Hill sister wrote the lyrics to *Happy*

9    *Birthday*, it was Patty.  We've seen that issue in a number of

10   iterations from the defendants, but I think today the record is

11   clear that they contend that Patty, whose name doesn't appear

12   anywhere in any copyright records as the author of *Happy*

13   *Birthday*, that Patty wrote the lyrics.

14        But the reason that I stood up is I also said that they

15   are relying on Exhibit C to Mr. Klaus's declaration, which is

16   not the registration certificate.  It's --

17             THE COURT:  Before you go --

18             MR. RIFKIN:  Yes.

19             THE COURT:  -- let me inject one of my questions.

20             MR. RIFKIN:  Yes, of course.

21             THE COURT:  Do you have any objection to Patty's

22   deposition testimony in which she says she wrote the lyrics or

23   the words to *Happy Birthday to You*?

24             MR. RIFKIN:  No, Your Honor.

25             THE COURT:  Okay.

1          MR. RIFKIN:  We -- we believe that the Exhibit C to

2     which Mr. Klaus referred during his argument is not part of the

3     summary judgment record.  And although it's not certified, we

4     agree that it is a copy, an accurate copy of what is called the

5     Catalog of Copyright Entries.

6          There's two sources for copyright entries.  Before

7     sometime in the mid 1960s, they were published in volumes much

8     like Encyclopedias, and they were distributed to libraries all

9     over the country, and they were the primary source that the

10    public went to to look for a copyright, because most people

11    didn't have access in the early 1920s or '30s to the copyright

12    office's records in Washington.

13         So these books were published by the copyright office and

14    circulated all over the country, and they are entitled to a

15    presumption.  That is, they are entitled to the same

16    presumption that the certificates are entitled to.  And

17    Mr. Klaus points to that, but it's not -- and I think this is

18    important -- it's not in the summary judgment record.  It's

19    only in his opposition to our motion to strike Exhibit 106,

20    which I will address in turn.

21         But were it placed in the record, then we would have

22    provided a comparison, and the comparison would be the -- and

23    that was the Catalog of Copyright Entries for copyright 51990.

24    And I apologize that this is so complicated, but there's two

25    series of copyrights.  There's the 1935 copyright, and that's

1   51990, and then there's the renewal in 1962.

2        And I think Mr. Klaus said -- and I think he's right, I

3   agree with him -- that the 1935 copyright is expired.  And its

4   only relevance is what did -- what did Summy preserve when it

5   renewed the copyrights in 1962?

6        And significantly, the copyright for the renewal for

7   51990, which is 306186, it's not in the record because 305- --

8   because the Catalog of Copyright Entries for 51990 also isn't

9   in the record.

10       But the renewal says in the copy -- in the Catalog of

11  Copyright Entries that the claim in the renewal, which is the

12  only certificate that matters now, is limited to the

13  arrangement written by Preston Ware Orem.  If the Court is

14  going to consider --

15            THE COURT:  You're saying that the catalog says

16  that?

17            MR. RIFKIN:  Yes, Your Honor.

18            THE COURT:  You're not saying that the renewal

19  certificates say --

20            MR. RIFKIN:  No, Your Honor.

21            THE COURT:  I don't have that document.

22            MR. RIFKIN:  You have -- technically you have

23  neither document in -- in the summary judgment record.

24            THE COURT:  Right.

25            MR. RIFKIN:  You do have before you, in response to

1    our motion to strike Exhibit 106, you have a reference to the

2    Catalog of Copyright Entries for 1935 for 51990.  And all I'm

3    saying is this:  If Your Honor is going to consider that for

4    anything other than the motion to strike, then we would ask --

5    first, we would ask that it be excluded from the record on the

6    motion for summary judgment because it wasn't made part of the

7    record on the motion for summary judgment.

8        Your Honor knows this record is exhaustive.  The parties

9    went back and forth for days and weeks, completing it.  If

10   defendants had submitted that as part of the record, we would

11   have respond by submitting the catalog entry for 306186, which

12   says expressly and clearly that the claim is limited to an

13   arrangement by Preston Ware Orem.

14       We believe that the Court should allow us the opportunity

15   to supplement the record if it's going to consider the

16   Catalog of Copyright Entries for any purpose at all on the

17   summary judgment motion.

18       Now, I think, in fairness, the plaintiffs ought to be able

19   to complete the record by submitting that one page, the catalog

20   entries for 1962 for 306186, which Your Honor may look at and

21   say really ends the discussion.

22           THE COURT:  Is there also an equivalent to

23   Exhibit 105?

24           MR. RIFKIN:  Yes, there is.  The equivalent for

25   Exhibit 105, which if I'm remembering all this correctly in my

**UNITED STATES DISTRICT COURT**

1    head now, Exhibit 105 is 306185; is that right?  I think

2    that's -- am I remembering that, or is that what you intended?

3    Because I don't know that that's correct now.

4         306185 and 306186 are plaintiff's Exhibits 67 and 68, and

5    I prefer we use those because we've moved to strike the

6    defendant's exhibits because they're not certified.  105 --

7              THE COURT:  105 is the, you know, the one that

8    assigned it 51990.

9              MR. RIFKIN:  Yes.

10             THE COURT:  It's more like a spreadsheet looking

11   document.

12             MR. RIFKIN:  Yes, yes.  And there is -- if

13   Your Honor is asking the question, is there a -- is there

14   something like this for the 1962 --

15             THE COURT:  Yes.  That's my --

16             MR. RIFKIN:  I don't believe so.  What we have is we

17   have a copy of the catalog entries which we were able to obtain

18   from the copyright office.

19             THE COURT:  So there's a separate catalog entry for

20   1962 but not a separate document of the kind embodied in 105.

21             MR. RIFKIN:  The handwritten record, no, not like

22   this for 306185 or 306186, the two renewals.

23             THE COURT:  Okay.

24             MR. RIFKIN:  Forgive me.  I misunderstood your

25   question, and I apologize.  So if -- if Your Honor would like

```
 1   to hear some of my thoughts on some of the questions you asked

 2   of Mr. Klaus, or if Your Honor has any questions --

 3            THE COURT:  Let me ask you whether or not you have

 4   any evidentiary objection to the use of the Amended Complaint.

 5            MR. RIFKIN:  Of -- of our Amended Complaint,

 6   Your Honor?

 7            THE COURT:  No, no, no, no.  No, no, no.  Of the

 8   Amended Complaint in Hill Foundation v. Summy.

 9            MR. RIFKIN:  Exhibit 50?

10            THE COURT:  Yes.

11            MR. RIFKIN:  We think Exhibit 50 is admissible, but

12   we think it needs to be read in conjunction with Exhibit 51,

13   which is, frankly, the more important of the two.  Exhibit 50

14   is -- if anything, it's a statement by the plaintiff in that

15   case.  It's not -- it's not evidence, and as Your Honor knows,

16   it's -- it's allegations in a Complaint, which the defendant is

17   free to deny.

18       And here the Hill Foundation made the allegations that

19   Mr. Klaus discussed with Your Honor, and frankly I think it's

20   clear from the Complaint that what they were selling was the

21   right to various piano arrangements.

22            THE COURT:  And hence you're not going to object

23   to --

24            MR. RIFKIN:  No.

25            THE COURT:  -- its consideration.
```

UNITED STATES DISTRICT COURT

1          MR. RIFKIN:  No.  I will note here very briefly,

2   because I think Your Honor understands our argument, Mr. Klaus

3   seemed to think that we were basing our argument on the

4   distinction between a license and sale.  It's immaterial.

5   Whether it's a license or sale, or anything else for that

6   matter, the -- the transfers from Jessica to Summy in 1934 and

7   1935 -- and by the way, let me correct one statement.

8          Patty Hill died in 1950.  She was alive in 1934 and 1935

9   when Jessica made those assignments, and she was alive as well

10  in 1942 when the Hill Foundation sued Summy in Exhibit 50.

11         Mildred died many years before.  She died in 1916; so she

12  was no longer alive.  So if Mildred was acting as anyone's heir

13  or executrix, it would be as Mildred -- I'm sorry.  If Jessica

14  was acting on anybody's behalf, it would be on behalf of

15  Mildred.

16         But what I think is even more pertinent is the answer

17  filed by Summy, the defendant's predecessor.  And in the

18  answer, referring to the paragraph --

19              THE COURT:  That's 51?

20              MR. RIFKIN:  This is Exhibit 51, yes, Your Honor.

21         This is a binding judicial admission, unlike -- unlike an

22  allegation in a Complaint by a plaintiff who is not here

23  anymore, and answered by a defendant whose successor is

24  claiming to own the copyright.  In it Summy says that it

25  acquired -- hence, the difference between a license and an

1    acquisition -- but it says it acquired the rights to -- now I'm

2    quoting from paragraph 18 on page 684 of Exhibit 51 -- various

3    piano arrangements of the said musical composition,

4    *Good Morning to All*.

5        And we think it could not be any clearer that what they

6    bought was what we've said all along, which was the rights to

7    various piano arrangements but not to the lyrics themselves.

8    The lyrics to the song are not mentioned anywhere in the

9    Complaint.  They are not mentioned anywhere in the Answer

10   except where Summy denies that Patty Hill wrote the *Happy*

11   *Birthday* lyrics.

12           THE COURT:  Let me ask you this.  So this evidence

13   would be, in your mind, relevant not only to the question as to

14   whether or not any rights to the lyrics had ever been -- had

15   been transferred to Summy as of the time of the registration,

16   but it also may be circumstantial evidence tending to show that

17   the registration did not include the lyrics.  Is that your take

18   on that?

19           MR. RIFKIN:  Exactly.  And I listened very carefully

20   to Your Honor's questions in the very beginning of Mr. Klaus's

21   presentation, and I thought they were particularly cogent when

22   Your Honor asked him about paragraph 3 of exhibit -- of the

23   registration certificate --

24           THE COURT:  Question Number 3.

25           MR. RIFKIN:  Question Number 3 from the registration

1   certificate where it identifies the author, and then Number 7

2   where it identifies the scope of the work that's claimed.  And

3   Your Honor quite correctly said they now admit -- and they've

4   admitted in their brief, and now they've admitted again

5   today -- they now admit that Preston Ware Orem didn't write the

6   words and that Mrs. R.R. Forman didn't write the words.  They

7   now seem to think that Patty wrote the words.

8        Patty's name -- even if Your Honor admits Exhibit 106,

9   Patty's name isn't on Exhibit 106.  It's not on Exhibit 44,

10  which is 51988.  It's not on Exhibit 48, which is 51990.  And

11  for that matter, it's not on the renewals which are Exhibits 67

12  and 68.  Patty's name doesn't appear anywhere in any record

13  that Your Honor has been asked to draw a presumption from.

14       And so I think, when you look at the -- at the Answer that

15  Summy filed, it is abundantly clear that the transfer from

16  Jessica was limited to the various piano arrangements which is,

17  of course, the series of copyrights that they began to register

18  in late 1934 and registered until the end of 1935.

19       And it does also inform the question whether Summy claimed

20  a copyright in the lyrics that were written by someone other

21  than the author that's identified.  I think the answer is no.

22       And the suggestion that there was a mistake, I think,

23  frankly, when you look at Exhibit 51 and you put it into the

24  context of what happened after that, which as Your Honor knows

25  includes a series of lawsuits that were filed by not just the

```
 1   Hill sisters but also by Summy, none of which ever asserted any
 2   claim under either of the two copyrights that now
 3   Warner/Chappell says were mistaken, and there was no attempt to
 4   correct it in 1962 when it was renewed.
 5           THE COURT:  What about the assertion by Mr. Klaus
 6   that in your previous versions of your Complaint that you have
 7   admitted that E51990 includes the lyrics?
 8           MR. RIFKIN:  I disagree that we admitted it.  I
 9   think there was some confusion regarding what we alleged.  I
10   think -- I think we tried to perhaps cover the possibility that
11   the lyrics may have been included in the song.  We don't know.
12   We really don't.  And by "we" I mean none of us here.  Not the
13   plaintiffs, not the defendants, and respectfully I don't think
14   Your Honor yet has the ability to decide what was the deposit
15   copy for 51990.
16           THE COURT:  Of course, you underestimate my powers.
17           MR. RIFKIN:  I may well and perhaps at my peril,
18   Your Honor; so I won't suggest that.  But we -- we do know
19   this:  We know that the deposit copy is missing.  It may or it
20   may not contain the familiar lyrics to the song *Happy Birthday
21   to You*.  We think that there's a strong line of cases that says
22   that, without the deposit copy, the defendant can't prove the
23   scope of the copyright.
24           THE COURT:  But as a matter of evidence law, if the
25   original is unavailable through no fault of the party
```

**UNITED STATES DISTRICT COURT**

1  proffering it in this case, the defendants, then we can receive

2  evidence on the issue as to what that deposit copy might have

3  been.

4           MR. RIFKIN:  I agree, and that's with a couple of

5  provisos.  The first proviso is that the evidence is properly

6  authenticated and properly identified with a witness who has

7  some relevant knowledge, that it is otherwise admissible, and

8  that it is supported by testimony that it is a replica of the

9  work that's deposited.

10      Mr. Klaus said -- and I took careful notes, but he also

11  says it in a brief.  He says they are no longer claiming that

12  Exhibit 106 is an exact copy of what was deposited with the

13  copyright office.  He says it's close to what was deposited

14  with the copyright office.  There's no testimony that that's

15  correct, but at least we now know --

16           THE COURT:  In all fairness to Mr. Klaus, I don't

17  believe that he meant that in a way that you're interpreting

18  it.  I think he meant it in a way that there certainly would be

19  no material difference between the two and that he certainly is

20  not conceding that, gee, maybe the lyrics were there or not

21  there.  I don't think it would be a fair interpretation of his

22  argument.  I didn't take it that way.

23           MR. RIFKIN:  If he intends to mean that this is a

24  representation of what was deposited, it would still be

25  inadmissible for a couple of reasons, as we briefed in our

 1    motion to exclude the evidence, the principal reason of which

 2    is it can't be authenticated under any of the rules.

 3         The defendants claim that the photocopy is an ancient

 4    document, but there's no attempt whatsoever to satisfy the

 5    requirements for admissibility of an ancient document.  To be

 6    admissible as an ancient document, someone has to identify what

 7    condition it was in when it was found, where it was found, that

 8    it would be found where it's expected.

 9         For example, we purchased a number of fairly old editions

10    of some of the books that were published in the early part of

11    the 20th century.  This happens to be a unique one.  This is a

12    1921 printing of the book *Song Stories for the Kindergarten*,

13    and it is obvious from its condition that it is an ancient

14    document.  I couldn't date it, but I know -- with certainty I

15    know it's more than 20 years old.  But someone who is an expert

16    in dating documents certainly could.

17         The only thing we have for Exhibit 106 is a photocopy

18    which could have been made last year, a decade ago, or

19    yesterday.  We simply don't know.  We don't know who found it,

20    where it was found, or anything about it.

21              THE COURT:  According to Rule 803.16 --

22              MR. RIFKIN:  Yes, Your Honor.

23              THE COURT:  -- which talks about statements in

24    ancient documents, a statement in a document that is at least

25    20 years old and whose authenticity is established, those are

```
 1    the only requirements of the rule.  So is it 20 years old or
 2    not?
 3        And the authenticity, you don't need somebody, I would
 4    think, to say I was there in 1935 and I saw this thing print up
 5    and that's what it was.  You could have other circumstantial
 6    indicia tending to show that it may, in fact, be that document
 7    and was generated back in 1935, among other things, the
 8    testimony regarding the publication numbers.
 9            MR. RIFKIN:  And I want to come to that in a moment,
10    but before we get to Exhibit 803, there's a predicate for that,
11    which is to establish the authenticity of the document as an
12    ancient document.  In other words, there's two criteria that
13    have to be met.  There's the criteria of Rule 901(b)(8), which
14    we discuss in our motion to strike, which says that an ancient
15    document is not a self-authenticating document.  You can't
16    simply say here it is, it looks like it is old, and you can
17    accept it for that.  It must be authenticated under Rule
18    901(b)(8), and we cite Columbia First Bank v. United States.
19    It's a federal claims court decision from 2003.
20        Independent of that, once the document is authenticated by
21    a witness who can describe its condition when it was found,
22    where it was found, and that it's at least 20 years old -- all
23    three of those conditions have to be met by a witness with
24    knowledge, not self-authenticated.  The evidence must be
25    provided by a witness with knowledge under Rule 901(b)(8).
```

```
 1   Then we look at whether the hearsay exception of Rule 803.13
 2   applies.
 3        And respectfully, Your Honor, we don't get past Rule
 4   901(b) for Exhibit 106 at all.  So I just want to make sure we
 5   put the cart behind the horse.  I think, before we look at the
 6   hearsay exception, the ancient document itself has to be
 7   authenticated by a witness with knowledge.
 8        And even after we moved to exclude it, no one came forward
 9   and said this was the condition I found it in.  This is where I
10   found it.  I found it where I would expect to find it if it was
11   an authentic document, and it's at least 20 years old.  All
12   we're asked to do is assume from the fact that it has a
13   copyright date on it, that it must be at least 20 years old.
14        But as we explained, Your Honor, the copyright date is
15   neither the date of printing nor the date of publication.
16   It's -- by law, it must be the date on which the earliest
17   copyright in the work is claimed.
18        And so if this particular sheet music was printed in 1993,
19   for example -- and I'm not suggesting that it was.  I don't
20   know.  But if it was printed in 1993, if the earliest copyright
21   was 1935, the copyright date would have to be 1935.
22             THE COURT:  You're arguing in terms of admissibility
23   as to the weight issue.  That's different.  Admissibility is
24   only whether or not there's some evidence upon which one could
25   infer the satisfaction of the foundational facts.
```

1      And in this case, among other things -- I'm sure Mr. Klaus

2   would point to that publication number, the -- I forget the

3   numbers now, 3075 and 3076, and using that as circumstantial

4   evidence for purposes of admissibility, which is not the same

5   as whether or not it must be given the weight that is asserted

6   it ought to be given.  So I think we need to make a distinction

7   there.

8           MR. RIFKIN:  And I will -- well, Your Honor, we

9   briefed this.  I don't want to take up any more of the Court's

10  time on the question of the need for an authenticating witness

11  to provide authenticating facts.  But I will make one comment

12  about the engraving number, 3075 --

13          THE COURT:  Yes.

14          MR. RIFKIN:  -- which precedes the engraving number

15  for 51988, 3076.  No doubt they were sequentially engraved.

16  The problem is there's no one who's able to say at all that a

17  print was made from that engraving plate, 3075, in the case of

18  Exhibit 106, much less when it was made.  We don't know when it

19  was printed.

20      Even if we knew when it was printed, publication is a very

21  specific term under the copyright law, and it requires a

22  demonstration of dissemination, widespread dissemination, which

23  again is completely absent from 30- -- from Exhibit 106.  There

24  simply isn't any evidence of -- of where that work was

25  published, to whom it was published, how many copies of it were

1  published, or anything.  It is -- it is simply a document that

2  exists quite frankly in a vacuum.  But now --

3          THE COURT:  What if it were included as a deposit

4  copy?

5          MR. RIFKIN:  Even if it were included in a deposit

6  copy, that would satisfy the requirement for --

7          THE COURT:  I'm not saying that that's what it is,

8  but if it were, you admit that that would be sufficient?

9          MR. RIFKIN:  That would certainly satisfy the

10  requirement for publication, yes, it would, Your Honor.

11          THE COURT:  All right.

12          MR. RIFKIN:  But now turning to the substance of

13  Exhibit 106, which I think is a more pertinent question and one

14  I think Your Honor wanted to address, it seems to me that

15  Exhibit 106 is not really all that significant because -- and

16  let's assume again -- let's assume that 106 is a copy of what

17  was deposited with 51990 or a copy of what was published.

18     It includes the lyrics.  Okay.  Fine.  We know a few

19  things about the lyrics.  Now, we know that Orem didn't write

20  them.  We know that Orem's name isn't anywhere on the document.

21  We know that Orem is the author of whatever the copyrighted

22  work was under 51990.  We know that Mildred, whose name is on

23  106, we know that Mildred didn't write the lyrics.  We know

24  that Patty -- the defendants claim that Patty wrote the lyrics,

25  but Patty's name isn't on 106.  So 106 doesn't prove --

1          THE COURT:  You're willing to -- you're willing to

2     admit that Patty wrote the lyrics?

3          MR. RIFKIN:  No.  I think there is evidence that

4     Patty wrote the lyrics.

5          THE COURT:  Okay.

6          MR. RIFKIN:  I suspect that the lyrics were written

7     by lots of folks.  There is -- as Your Honor notes from reading

8     the briefs, there is a statement that was attributed to Jessica

9     in a magazine, in a 1950 edition of American Family, in which

10    she tells the story of sitting around the hearth one evening at

11    the family home.  Mildred was at the piano, playing the piano.

12    And Jessica says to her sister, Mildred, play that slowly.  I'm

13    going to sing a new song.  And she says she performed it for

14    the very first time in the family's living room right in --

15         THE COURT:  It doesn't say she created it.  She says

16    she sang it for the first time.  I know at some point the

17    briefing said she created it, and I tried to look for that

18    practically until my eyeballs fell out because the printing was

19    so bad I had trouble reading it, but I didn't see anything

20    about creating it.

21         MR. RIFKIN:  She's the first -- she said she told

22    Mildred to play it slowly because apparently she was creating

23    it then and there.  But Mildred --

24         THE COURT:  You are reading into that.

25         MR. RIFKIN:  I am reading into that, but I do also

1  want to say one other thing about Jessica.  In -- in

2  Exhibit 87, which is the transcript of the deposition that was

3  given by Patty and Jessica in Jessica's lawsuit against

4  Sam Harris over the song *As Thousands Cheer*, which for the

5  longest time I thought was *Thousand Cheers*, but now I know is

6  *As Thousands Cheer*, which I think is being remade on Broadway

7  as we speak, I understand Jessica testifies in that

8  deposition -- and now I'm referring to pages 35 and 36 of the

9  deposition transcript -- that Patty wrote the words and Mildred

10  wrote the music to the song *Good Morning to All*.

11      I think that that's consistent with Patty's testimony

12  elsewhere in the deposition that generally Mildred was the

13  composer and Patty was -- the word she used was the poetess.

14  Patty says that she wrote the words to *Happy Birthday to You*;

15  so I think that there is at least conflicting evidence there.

16  The strongest evidence there is appears to us to be that Patty

17  claimed to write the words "Happy Birthday to You, Happy

18  Birthday to You."

19          THE COURT:  I don't mean to have sort of knocked you

20  off your point.

21          MR. RIFKIN:  No, no, no.

22          THE COURT:  I understand that now.  You can go back

23  and finish up your point.

24          MR. RIFKIN:  But -- but there's no evidence

25  anywhere -- none, zero, none -- of an assignment by Patty, or

1    for that matter Mildred, of the song *Happy Birthday* to Summy,

2    ever.

3          There is a statement in the brief on page 38, and I was

4    looking for it.  I thought I brought the brief with me because

5    I wanted to read it.

6                THE COURT:  Page 38?

7                MR. RIFKIN:  On page 38 of the brief, this is in the

8    defendant's section of one of the arguments.  And on page 38

9    the defendants say a few things.  They say that -- this is

10   where in the brief they say that Forman and Orem did not write

11   the words.  They say that Forman and Orem were their employees

12   for hire.  And I'm reading in the -- in the first full

13   paragraph which begins on line 7 of page 38.

14         They say that the -- Mildred and Patty were not employees

15   for hire.  They say it's undisputed that neither was.  And then

16   they say this.  They say Summy was entitled to Mildred and/or

17   Patty's rights in the work.  And by "the work," they're

18   referring to the song *Happy Birthday*.

19         As a result of the license he had received from them, them

20   being Mildred and Patty, not because they were employees for

21   hire.  There's no citation to any evidence.  There's no

22   citation to anything at all.  It simply goes on to say that

23   plaintiff's argument that Summy was entitled only to the text

24   that Orem performed and wrote fails.

25               THE COURT:  Slow down.  Slow down.  You're reading.

```
 1    I'm reading with you.  But my reporter has to actually write
 2    all of this.
 3              MR. RIFKIN:  I apologize.
 4         In line 14 they just simply go on to dispute the
 5    plaintiff's argument that Summy was entitled only to the text
 6    that Orem or Forman wrote.
 7         But they say that Summy was entitled to Mildred or Patty's
 8    rights in Happy Birthday as a result of the license it received
 9    from Mildred and Patty.  Your Honor, I know of no evidence in
10    the record anywhere of any license from Mildred or Patty,
11    period.
12         We have never disputed that sometime before 1893 Mildred
13    and Patty together transferred their rights to a collection of
14    songs they wrote called Song Stories for the Kindergarten, so
15    Summy could publish in connection with the 1893 Chicago World's
16    Fair in response to popular demand from elementary
17    schoolteachers for this apparently very, very well-known work.
18    And Summy, of course, published it, and that work includes Good
19    Morning to All, which as everybody knows has the melody but not
20    the words for Happy Birthday.
21         Everyone also knows there's no dispute that the melody
22    itself, the copyright to the melody expired in 1949.  So
23    there's no dispute that, if somebody played on a stage for all
24    the money in the world, the melody that Mildred wrote in Good
25    Morning to All, it would not be protected by any copyright.
```

1          We -- we know that that work was republished in 1896

2     presumably pursuant to some rights that Summy had, although

3     there's no evidence of it, but it's not disputed.

4          And then it was published again in 1899 in another group

5     of songs called *Song Stories for the Sunday School*.  This time

6     again *Good Morning to All*, Mildred's melody, Patty's words.

7     "Happy Birthday" isn't in any of them.  None of it.

8          The next assignment of rights that we know of is the

9     assignment in 1934 and 1935 as to which we have no evidence

10    except what Patty says in the Complaint -- I'm sorry.  What

11    Jessica says in the Complaint and more importantly what Summy

12    says in the Answer, that the transfer of rights -- whether it

13    was a license or a sale, is immaterial -- that the transfer of

14    rights was limited to various piano arrangements of the said

15    musical composition *Good Morning to All*.

16         The dispute in that case was not over the song *Happy*

17    *Birthday to You*.  The dispute in that case was over the use of

18    that transfer, whether it could be used, as the plaintiff

19    understood, for sheet music to be sold, or it could be used for

20    public performances.  That was the essence of the dispute in

21    nineteen -- in the lawsuit that was filed in 1942, in that

22    lawsuit, which is Exhibit 50, and the Answer is Exhibit 51.

23         We know of no other assignment until 1944 when the

24    Hill Foundation assigned to Summy whatever rights it acquired

25    from Mildred and -- I'm sorry -- from Patty and Jessica.

1    There's one too many Hill sisters to remember.  Like you,

2    Your Honor, I'm getting older, and my memory isn't as good as

3    it used to be.

4        But I believe Your Honor asked the question or made a

5    comment about how the assignments appeared to be, and we agree.

6    The assignments appear to be an assignment of whatever interest

7    Patty and Jessica had in certain enumerated copyrights which

8    they then assigned to the Hill Foundation.  The Hill Foundation

9    then assigned those interests to -- to Summy.

10       But it doesn't fix the problem with the 1935 copyrights

11   because it doesn't claim that they had any interests in the

12   copyrights.  But more importantly we cite the Konigsberg case,

13   the Ninth Circuit case which talks about the need for a writing

14   in order to transfer a copyright.

15       And what the Court says there is that, in order to protect

16   not only the author but also the public, which would obviously

17   include the plaintiffs, transfer of copyrights have to be in

18   writing.  And the Ninth Circuit also said in that case that a

19   writing which purported to confirm a prior oral agreement that

20   was made three and a half years earlier was too late in time to

21   be valid.

22       So we know two things from the Ninth Circuit's decision in

23   Konigsberg.  We know that an assignment has to be in writing,

24   and there's no evidence, other than the '44 assignments, of any

25   assignments that are in writing.  And we know that an

**UNITED STATES DISTRICT COURT**

1   assignment can't relate back more than three and a half years.

2   In fact, if it were only three and a half years, it would

3   already be untimely.  There is nine years after the fact.

4        There is no evidence in any of the briefings which

5   suggests that a written assignment can be given some

6   retroactive effect.  The Ninth Circuit says, if the writing is

7   more than three and a half years old and it purports to confirm

8   a prior oral assignment, which the '44 assignments did not do,

9   it's already too late and invalid.

10       So when we put all of that together, there is no

11  assignment of any rights from Patty or Jessica to the lyrics

12  that, if you accept Patty's testimony as proof of her

13  authorship of the lyrics, transferred her rights, whatever

14  rights she may have had in this song, to Summy, ever.

15       And, in fact, that's consistent not only with what Summy

16  said in the copyrights it registered in 1935, and I believe the

17  question Your Honor asked suggested in my mind the right

18  approach.  It certainly seems to me that you can't infer

19  anything from what they say, knowing what we now know about

20  Preston Ware Orem not writing the lyrics, that they did not

21  claim a copyright in the lyrics that the author identified

22  their employee for hire, Orem, did not write.

23       It is also consistent with what happened after 1935 when

24  both the Hill sisters and Summy filed a series of lawsuits over

25  unauthorized performances of the song *Happy Birthday to You* in

 1    which they only ever asserted the copyright to the melody from

 2    *Good Morning to All*, the 1893 copyright and its renewal which

 3    expired in 1949.  In those lawsuits by both the Hill sisters

 4    and by Summy, after the copyrights were registered, there was

 5    never a claim that performing *Happy Birthday to You* or

 6    publishing it in a song book without Summy's permission or

 7    without the Hill sisters' permission violated 51988 or 51990.

 8         And, finally, when the copyright to *Good Morning to All*

 9    expired in 1949, there hasn't been another lawsuit filed.

10         So when we look at that entire trail of facts that are now

11    undisputed, we know that Summy says it acquired rights to

12    various piano arrangements to a musical composition.  We know

13    that it published -- it copyrighted works that were done by two

14    employees for hire who they admit -- that is, the defendants

15    admit -- did not write the lyrics to *Happy Birthday*.  And we

16    know that they've never, ever, ever sued anybody for violating

17    the copyright to *Happy Birthday to You* even when the song *Happy*

18    *Birthday to You* was used without permission.  It all relates

19    back to *Good Morning to All*.

20         And finally on that point, not to belabor it, but the

21    testimony that Patty gives in the <u>Hill v. Harris</u> case is

22    particularly instructive there.  She says, when asked to

23    identify the -- the work, she only talks about *Good Morning to*

24    *All* and a series of arrangements -- a series of adaptations

25    until she's reminded by her lawyer, "What about *Happy Birthday*

1   *to You*?"  And she says, "Oh, yes, that one too."  It was an

2   afterthought.  *Happy Birthday to You* simply was not a work that

3   she regarded as her own.

4        And as she said in the two exhibits that we've also

5   provided to the Court, the 1950 publication which I apologize

6   for, the American Family publication.  Admittedly, it's

7   terrible print.  It's the best we could find.  But she says

8   there and then she says again in an article that appeared in

9   Time Magazine in 1935, she said the song *Happy Birthday*

10  belonged to the world.  And what she said in her deposition,

11  which we now know is admitted -- or at least there's no

12  objection to its admission -- she said I taught this song to

13  the kids to be used at every birthday celebration in the

14  school.  There's no indication that she limited that in any

15  way.  There's no indication that she told the children not to

16  sing it outside the school and outside her classroom.

17       In fact, to the contrary, we can -- we can say that she

18  knew that the kids sang it all the time.  And we can say

19  without fear or any trepidation that the kids went home and

20  sang it at their own birthday parties outside the school and

21  long after they graduated from that elementary school.

22            THE COURT:  Are you now getting into the issue of

23  divestive publication?

24            MR. RIFKIN:  I am, Your Honor.  And I'm happy to

25  answer any other questions first.

1          THE COURT:  I don't think you need to get into that.

2     I don't really need your explanation on that, and I have a

3     clear view of that.  Let me just ask you one last question, and

4     we have to wrap this up.

5          MR. RIFKIN:  Your Honor, before -- before then,

6     there is one case that I'd like to just mention.  It's

7     discussed in the -- in the American -- in the Academy of Music

8     case.  We frankly didn't have room to brief it, but I will

9     mention it only by name to refer to it, if Your Honor has any

10    interest in this at all.  There's a case called Brown v. Tubb,

11    T-u-b-b, an Eleventh Circuit case that's cited in the Academy

12    of Motion Pictures case, which is fully consistent with the

13    position I've taken.  I won't elaborate more.  We've already

14    been here long enough trying your patience.

15          THE COURT:  Let me ask this one question --

16          MR. RIFKIN:  Yes.

17          THE COURT:  -- which was the same question I asked

18    to Mr. Klaus.  You folks are in agreement, at least right now

19    without further briefing, that you believe that the question of

20    the scope is going to be a question of law for the Court to

21    decide regardless of whether it may involve extrinsic factual

22    record?

23       My next question to you is, beyond that, to the extent if

24    needed for -- and if it is needed that we go beyond the scope

25    and go into inquiries of issues of divestive publication,

1    abandonment, authorship, transfers, and so forth, that would

2    also be raised within the context of the declaratory relief

3    claim but -- and I haven't thought this totally through -- may

4    or may not have some connection to your other coercive claims.

5         Are you willing to have that -- and if I determine there

6    is a factual dispute so that we need a trial, are you willing

7    to allow a court trial of that to precede that of whatever jury

8    trial on the remaining coercive claims?

9         MR. RIFKIN:  Your Honor, I would -- I would ask for

10   a moment to confer with my colleagues.

11        THE COURT:  Of course.

12        MR. RIFKIN:  And while I do, before I just take a

13   very brief moment to confer with them, I was asked to remind

14   the Court of one other thing which bears on the presumption.

15   We mention it in the brief, but there was a prior copyright --

16   actually, two prior copyrights -- of the song *Happy Birthday to*

17   *You*, both the music and the words.

18        There was a publication in 1911 which does not attribute

19   authorship to Mildred or Patty or anybody associated with Summy

20   at all.  And there was a subsequent publication in 1924 of the

21   sheet music with the song, the words, again which didn't

22   attribute authorship to Mildred or Patty or anyone associated

23   with Summy at all.  Both of those publications, by obtaining

24   copyrights, 1911 and 1924, would be superseding presumptions of

25   authorship.

1        But we frankly don't think the Court needs to resolve that
2   question to resolve the question of the scope of 51990 because
3   I think it's clear.
4            THE COURT:  By preceding presumption, are you
5   suggesting that, if there was a copyright to which there is a
6   presumption of validity as to the lyrics back in 1911, that
7   therefore ergo there cannot be a valid copyright claim to the
8   lyrics in 1935?
9            MR. RIFKIN:  No, no, no.
10           THE COURT:  That would not be the case.
11           MR. RIFKIN:  I know.  There's a difference between
12  originality and --
13           THE COURT:  And novelty.
14           MR. RIFKIN:  And uniqueness.  I recognize that.
15  That wasn't what I was saying.  All I'm saying is this:  If the
16  Court were inclined to draw a presumption from either 51988 or
17  51990 that Mildred, whose name is mentioned in the catalog of
18  copyrights but not in 51988 or 51990, at least the evidence we
19  have so far in the record, except for Exhibit 106 which is in
20  dispute, there are two prior copyrights which claimed
21  authorship somewhere else.  So it would undermine the
22  presumption that Mildred wrote the words.
23       But again, as I said, Your Honor, I don't think we need to
24  go there because I think we've addressed the fact that the
25  presumption is so overwhelmingly rebutted by our evidence.

```
1              THE COURT:  Why don't you confer with your --

2              MR. RIFKIN:  I will.

3              THE COURT:  -- colleagues.

4                  (Counsel confer sotto voce.)

5              MR. RIFKIN:  Your Honor, we are prepared to accept

6    that as well, that Your Honor would decide these issues before

7    a jury would be asked to hear the other parts of the case.

8              THE COURT:  Okay.  All right.  Very good.

9              MR. RIFKIN:  And thank you for letting me confer

10   with my colleagues.

11             THE COURT:  Thank you very much, Counsel.  I do

12   appreciate your very fine argument.

13        You know, I've always said it's always a pleasure to have

14   good lawyers argue before you rather than less good lawyers.

15   So I really appreciate it, and I think you have helped me, both

16   sides, in crystallizing the issue.

17        Mr. Klaus wants to say something else.  I can feel it.

18             MR. KLAUS:  Your Honor, may I just -- thank you.

19   With the Court's indulgence, may I make just a few brief --

20             THE COURT:  Of course.

21             MR. KLAUS:  -- just a few brief --

22             THE COURT:  Yes, of course.

23             MR. KLAUS:  Thank you, Your Honor.

24        Couple of points with respect to -- I'm working backwards

25   from my notes.  With respect to the 1911 and 1924
```

 1    registrations, I don't think there's any dispute.  I think I
 2    heard counsel agree with this.  This is not like a patent
 3    system where the first person to register the patent gets the
 4    copyright.
 5         Also, the fact that those were published in 1911 and 1924,
 6    to the extent they claim that that creates some sort of issue
 7    of fact about whether the Hill sisters copied the lyrics to
 8    *Happy Birthday to You* from someone else, I point out that the
 9    evidence from Patty's deposition testimony, which they have no
10    objection to, says that she created the lyrics while she was
11    teaching at the school in Louisville, Kentucky.
12         And if Your Honor looks at Exhibit 87, which is the
13    deposition, pages 3 through 4 make it clear that Patty's time
14    at that school was from 1887 until either 1905 or 1906 when she
15    moved to New York City to teach at the Columbia University
16    Teachers College.
17         The second point, there was a lot of discussion by
18    Mr. Rifkin about there being some confusion about what was
19    transferred, what was not transferred, where is the assignment
20    in 1934 and '35.  There was a discussion of the Konigsberg case
21    which is, as always, an entertaining opinion by Judge Kozinski.
22    I think that's the one that said lawyers deal with contracts,
23    not lunch, something along those lines.
24         But what I'd ask Your Honor to look at is the Magnuson v.
25    Video Yesteryear case, the Lenny Bruce case, which in

1    conjunction with the Second Circuit's decision in Eden Toys, a

2    long line of authority, stands for the proposition that where

3    there is no disagreement between the assignor, the assignee,

4    the licensor, licensee, that a -- that it would be anomalous to

5    allow a third party, as in the -- in the position of the

6    plaintiffs, to object.

7        And, in fact, footnote number 1 of the Magnuson decision

8    specifically distinguishes Konigsberg on that basis on the

9    ground that in that case there was a dispute between Anne Rice

10   and the producers she had met with over lunch to discuss the

11   movie project in question.  And what Judge Nelson's opinion for

12   the Court says in the Magnuson case is there no dispute between

13   the transferor and the transferee whether --

14            THE REPORTER:  Your Honor, he's reading too fast.

15            THE COURT:  Slow down.

16            MR. KLAUS:  -- whether the transfer actually

17   occurred or the terms on which it occurred.  There is no

18   dispute in this case between my client, any of my client's

19   predecessors, and anyone representing the Hill sisters as to

20   whether or not Summy had -- Summy was entitled to make the

21   registration in 1935 or not.

22       And I think under the logic of Eden Toys and the Magnuson

23   case, that would plainly -- that would plainly say that they

24   have no standing to -- to object on that ground.

25       Mr. Rifkin suggested that Your Honor look not just at the

1    Complaint in the Hill Foundation against Summy case but also

2    the Answer which was Exhibit 51.  We agree that Your Honor

3    should look at the Answer.

4        I'd just point out that I believe Mr. Rifkin said there

5    was no mention of *Happy Birthday to You* or lyrics of *Happy*

6    *Birthday to You*.  In fact, paragraph 6, which is of Exhibit 51,

7    said, referring to the allegations in paragraph 10th, that was

8    one of the ones I talked about during my presentation, Summy

9    admitted and averred that one of the songs that was contained

10   within the licensed works was *Good Morning to All*, which with

11   different words later became entitled *Happy Birthday to You*.

12       So I don't think that there is -- I think that, when

13   counsel said that there was an admission by Summy in the Answer

14   that somehow the only thing that was covered were the -- were the

15   musical notes in arrangements, simply is not borne out.

16       On a couple of evidentiary points, Your Honor, Mr. Rifkin

17   said that he'd like the opportunity to submit the Catalog of

18   Copyright Entries from 1962 because he says it doesn't say

19   anything about the text.  In fact, the copy, which we'd be

20   happy to submit it if the Court would like, with supplemental

21   briefing, the 1962 Catalog of Copyright Entries, which the

22   plaintiffs have -- they have both the 1935 and 1962 because

23   they produced them to us in discovery.

24       The 1962 one says it's an arrangement with text, which

25   matches precisely, Your Honor, Exhibit No. 68, which is the

```
 1    application.
 2              THE COURT:  I'm at a disadvantage because I don't
 3    have that document.  I will ask counsel to submit that
 4    document, and I will look at it myself.
 5              MR. KLAUS:  Okay.
 6              MR. RIFKIN:  We will, Your Honor.
 7              THE COURT:  That's fine.
 8              MR. KLAUS:  If Your Honor had any questions about
 9    the ancient document Exhibit 106 with respect to the
10    authenticity argument, we'd point out in addition to the fact
11    that the document is self-authenticating and it matches the
12    deposit copy records, that you have the -- the sequential
13    numbering, which has nothing to do with engraving plates,
14    Your Honor.  It's the publication number which is what their
15    expert admitted in his deposition.  It's a publication number.
16    It's not a matter of simple engraving plates.
17         I would also point Your Honor to their expert,
18    Professor Sachs's report, which is Exhibit 111 in the record,
19    paragraph number 28 where Professor Sachs relied on what is now
20    Exhibit 106, and he didn't question its -- its authenticity.
21         And in light of all the other evidence showing the
22    publication of sheet music, including Exhibits C and D to
23    Mr. Rifkin's declaration on the motion to strike which are
24    simply later publications of the same sheet music with the same
25    lyrics from later years, we'd submit there can't be any dispute
```

1    as to the authenticity of the document.

2            THE COURT:  Do you still want to have an opportunity

3    to further brief the Court on the issue as to whether or not

4    the question of scope is to be decided by the Court even if

5    there are factual issues?  Because you sort of said that at the

6    beginning when we talked about it, and I didn't know whether

7    you had intended to reserve that point.

8        I think Mr. Rifkin -- I don't think Mr. Rifkin necessarily

9    wants to brief any further.  He's willing to say that that's

10   what ought to happen.  But I want to give you that opportunity.

11   If you want to brief it, I'll give you an opportunity to do

12   that.

13           MR. KLAUS:  I don't believe we need to brief it,

14   Your Honor.

15           THE COURT:  Okay.  All right.  Very good.

16           MR. RIFKIN:  Your Honor, I'll be very brief.

17           THE COURT:  I hope you will, because otherwise we

18   will be here with no end.

19           MR. RIFKIN:  With respect to Magnuson, Your Honor,

20   this was a case that had to do with a transfer from John

21   Magnuson, who was president of one company, to himself as

22   president of another company.  They sued over the copyright.

23   The John Magnuson plaintiff sued over the copyright in

24   question, and the Court found not that the defendant didn't

25   have standing to challenge the validity of the assignment but

1  rather that the assignment confirmed -- even though it was a

2  later writing, it confirmed the prior oral assignment, and it

3  doesn't inform any of the issues here.

4          THE COURT:  All right, counsel.  Thank you very

5  much.  I appreciate your time, appreciate your arguments.  I'll

6  take the matter under submission.  Thank you.

7          THE CLERK:  This Honorable Court is in recess.

8              (Matter adjourned at 11:48 P.M.)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1            CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5            I, KHOWOONSUN CHONG, FEDERAL OFFICIAL REALTIME

6    COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7    THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8    PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9    FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10   STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11   ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12   CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13   THE UNITED STATES.

14

15                       DATED THIS 25TH DAY OF MARCH, 2015.

16

17

18                       /S/ KHOWOONSUN CHONG

19                       _____
                         KHOWOONSUN CHONG, CSR NO. 12907, CRR
20                       FEDERAL OFFICIAL COURT REPORTER

21

22

23

24

25

**UNITED STATES DISTRICT COURT**