1        UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3       HONORABLE GEORGE H. KING, CHIEF U.S. DISTRICT JUDGE

4

5    GOOD MORNING TO YOU PRODUCTIONS        )
     CORP., ET AL.,                         )
6                                           ) CASE NO.
                      PLAINTIFFS,           ) CV 13-4460
7                                           )
              VS.                           )
8                                           )
     WARNER/CHAPPELL MUSIC, INC.,           )
9    ET AL.,                                )
                                            )
10                    DEFENDANTS.           )
     _____)

11

12

13

14              REPORTER'S TRANSCRIPT OF
           HEARING RE SUPPLEMENTAL BRIEFING
15          RE MOTION FOR SUMMARY JUDGMENT
               WEDNESDAY, JULY 29, 2015
16                    9:33 A.M.
               LOS ANGELES, CALIFORNIA
17

18

19

20

21

22    _____

23        KHOWOONSUN CHONG, CSR 12907, CRR, RMR
              FEDERAL OFFICIAL COURT REPORTER
24           255 EAST TEMPLE STREET, ROOM 181-G
              LOS ANGELES, CALIFORNIA 90012
25                kchong12907@yahoo.com

1                        **APPEARANCES OF COUNSEL:**

2


3    **FOR THE PLAINTIFFS:**

4        WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
         BY:  MARK C. RIFKIN, Esquire
5        270 Madison Avenue
         New York, New York 10016
6
         WOLF, HALDENSTEIN, ADLER, FREEMAN & HERZ
7        BY:  BETSY C. MANIFOLD, Esquire
         750 B Street, Suite 2770
8        San Diego, California 92101

9        RANDALL S. NEWMAN PC
         BY:  RANDALL S. NEWMAN, Esquire
10       37 Wall Street, Penthouse D
         New York, New York 10005
11
         DONAHUE FITZGERALD LLP
12       BY:  DANIEL J. SCHACHT, Esquire
         1999 Harrison Street, 25th Floor
13       Oakland, California 94612

14       GLANCY, PRONGAY & MURRAY
         BY:  MARC L. GODINO, Esquire
15            KARA M. WOLKE, Esquire
         1925 Century Park East, Suite 2100
16       Los Angeles, California 90067

17   **FOR THE DEFENDANTS:**

18       MUNGER, TOLLES & OLSON
         BY:  KELLY M. KLAUS, Esquire
19            ADAM I. KAPLAN, Esquire
         560 Mission Street, 27th Floor
20       San Francisco, California 94105

21       MUNGER, TOLLES & OLSON
         BY:  MELINDA E. LeMOINE, Esquire
22       555 South Grand Avenue, 35th Floor
         Los Angeles, California 90071
23

24

25

1            **I N D E X**

2    **CASE CV 13-4460**              **Wednesday, July 29, 2015**

3    **PROCEEDINGS:**                                        **PAGE**

4    HEARING RE SUPPLEMENTAL BRIEFING
     RE MOTION FOR SUMMARY JUDGMENT                            4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1          LOS ANGELES, CALIFORNIA; WEDNESDAY, JULY 29, 2015

2                           9:33 A.M.

3                            -oOo-

4          THE CLERK:  Please remain seated and come to order.

5   This United States District Court is now in session.  The

6   Honorable George H. King, Chief Judge presiding.

7       Calling Item No. 1 on the Court's calendar, Civil 13-4460,

8   Good Morning to You Productions, Corp. versus Warner/Chappell

9   Music, Inc., et al.  Counsel, would you please state your

10  appearances for the record.

11         MR. RIFKIN:  Good morning, Your Honor.  Mark Rifkin

12  of Wolf Haldenstein on behalf of plaintiffs.

13         THE COURT:  Good morning.

14         MR. NEWMAN:  Good morning, Your Honor.  Randall S.

15  Newman, Randall S. Newman, P.C., on behalf of plaintiffs.

16         THE COURT:  Good morning.

17         MR. SCHACHT:  Good morning, Your Honor.  Daniel

18  Schacht of Donahue Fitzgerald on behalf of plaintiffs.

19         MS. MANIFOLD:  Betsy Manifold, Wolf Haldenstein, on

20  behalf of plaintiffs.

21         THE COURT:  Yes, good morning.  Thank you.

22         MR. GODINO:  Good morning, Your Honor.  Marc Godino

23  from Glancy, Prongay & Murray.

24         THE COURT:  Thank you.  Good morning.

25         MS. WOLKE:  Good morning, Your Honor.  Kara Wolke,

1    also from Glancy, Prongay, Murray on behalf of plaintiffs.

2              THE COURT:  Thank you.  Good morning.

3              MR. KLAUS:  Kelly Klaus from Munger, Tolles & Olson.

4    With me are my colleagues Melinda LeMoine and Adam Kaplan.

5              THE COURT:  Thank you very much.  Good morning.

6         This matter is on calendar for me to consider the further

7    briefing on the issue of abandonment, which I had directed you

8    folks to submit previously.  In the meantime, I just want to

9    briefly mention and take care of more of a housekeeping matter,

10   what's happening with your various motions, applications to

11   supplement the record.  It's not my intention to take up the

12   merits of these applications or these motions at this time, but

13   I just want to make sure that I have what I'm supposed to have.

14        The plaintiffs -- both parties are asking to supplement.

15        The defendants, you want to submit what is the equivalent

16   of a British deposit copy for the E51990.  Is that basically

17   it?

18             MR. KLAUS:  That's correct, Your Honor.

19             THE COURT:  Okay.  And the plaintiffs, you are also

20   asking, on an ex parte basis, your application to go ahead and

21   submit various things including certain songbook-type

22   publications, whether it's 1922 or 1927, that you think would

23   be helpful on the issue of really divestive publication,

24   general publication.

25             MR. RIFKIN:  Correct.  The 1922 publication in

1    particular, correct, Your Honor.

2              THE COURT:  And, Mr. Klaus, you folks have not

3    opposed the application to supplement the record, but you do

4    have arguments against -- the substance of the arguments is as

5    to the significance of those documents; is that right?

6              MR. KLAUS:  That's correct, Your Honor.

7              THE COURT:  And you said that you have not attached

8    a declaration to your explanation, various explanations you

9    offer to provide such a declaration.

10             MR. KLAUS:  We'd be happy to.

11             THE COURT:  Do you folks think that you would

12   require that to be in a declaration form to support the

13   statements made by counsel?

14             MR. RIFKIN:  Your Honor, there are two separate

15   issues in their opposition filed yesterday.  One of them has to

16   do with the circumstances around which the document, the 1927

17   copy of *Everyday Song Book*, was identified in 2013.  It was not

18   produced until just -- we got it.  We had access to it on

19   July 13.

20        On that, as we said in our ex parte application, that's a

21   secondary issue.

22        We are concerned about that only because we've spent the

23   last two years without that document, and it would have had a

24   significant impact on how this case was conducted, how the

25   briefs were presented, how the arguments were made.  But we're

1  happy to let that sit aside for now while we concern ourselves

2  with the merits of that particular issue.

3      On that, the defendants have offered a supposition that

4  maybe Summy wasn't authorized to permit the publication of the

5  song in 1922.  To the best of our knowledge, there is no

6  evidence of that --

7          THE COURT:  Let's not get --

8          MR. RIFKIN:  -- but if the defendants have

9  something, then, yes, we would expect that to be offered in a

10  declaration; otherwise, there's no facts in the record.

11          THE COURT:  That's not what they're offering the

12  declaration for, is my understanding.

13          MR. RIFKIN:  It wasn't clear to me which part of

14  their response was being supported by the declaration.

15          THE COURT:  Let's get that clear.

16      Mr. Klaus, are you saying that you are prepared to offer a

17  declaration with respect to the argument that counsel's made as

18  to whether or not -- or rather, it's your argument that Summy

19  didn't have authorization from the Hill sisters to grant that

20  kind of permission for the publication in 1927.

21          MR. KLAUS:  No.  That was not why I had offered the

22  declaration.  What I had offered the declaration on was on the

23  circumstances of the late production and --

24          THE COURT:  Okay.  I think -- I don't think we need

25  that right now.  Do you have some evidence to offer as to that,

1    that Summy was not authorized?  I'm just trying to make the

2    record as full as possible.

3              MR. KLAUS:  Well, I think the -- yes, the evidence

4    that we have on -- it's both a question of whether Summy was

5    authorized, and I think there's also a question as to whether

6    the cable company which published this book was authorized.

7    For that, I think the evidence is the actual book itself, which

8    plaintiffs' counsel were kind enough to this morning show me

9    the copies that they retrieved.

10      There may be material in the copyright office.  I, of

11   course, have no facts about what happened in 1922 or 1927

12   personally, but I don't have any other evidence in the -- we

13   have no other evidence about this.

14             THE COURT:  Nothing else to submit on this subject.

15             MR. KLAUS:  That's correct, Your Honor.

16             THE COURT:  Then you can submit your reply.  I think

17   you haven't filed your reply yet.  Why don't you file your

18   reply in seven days, and then we'll take a look at it, and I'll

19   most likely rule without further argument.

20      And then as far as the pending motion of the defendant is

21   concerned, we'll just go ahead and keep that on the usual

22   briefing cycle, and then I'm more likely than not to take that

23   off calendar as well and rule without argument.

24             MR. RIFKIN:  Thank you, Your Honor.

25             THE COURT:  All right.  So that takes care of the

```
 1   preliminary matters.  Let's get right to the abandonment issue.
 2   I have some questions for both plaintiffs and defendants.
 3        Let me start with the plaintiff.  Rather than going back
 4   and forth, I'll sort of skip around to all the questions I want
 5   to have the benefit of your -- your views on, Mr. Rifkin, and
 6   then I'll hear from Mr. Klaus.
 7              MR. RIFKIN:  Of course, Your Honor.
 8              THE COURT:  The first question that's been raised by
 9   the defendant is that the Happy Birthday to You was a joint
10   authorship of both Mildred and Patty.  Your view seems to be
11   no, it wasn't a joint authorship, it was really a derivative
12   work created by Patty based upon the previous perhaps joint
13   work of Good Morning to You between Mildred and Patty.
14        What is the evidence -- I'm trying to understand -- what
15   is the evidence that you point to that would tend to support
16   your view that this is a derivative work -- and when I say
17   "this," I'm obviously talking about Happy Birthday to You -- as
18   opposed to a work of joint authorship between Mildred and
19   Patty?
20              MR. RIFKIN:  Well, Your Honor, I think there's two
21   pieces of evidence that are already in the record on this
22   question.  The first is Patty Hill's deposition testimony in
23   1935 in the Hill v. Harris litigation in which she said that
24   she and her sister Mildred composed --
25              THE COURT:  Which page are you talking about?  Are
```

**UNITED STATES DISTRICT COURT**

1    you talking about 1007 of that deposition?

2            MR. RIFKIN:  If you don't mind, Your Honor, I'm

3    going to get my copy of it.

4            THE COURT:  Sure.

5            MR. NEWMAN:  Betsy, do you have the copy that's in

6    the summary judgment record of that deposition testimony?

7            MS. MANIFOLD:  What exhibit is it?

8            MR. RIFKIN:  Your Honor, just a moment so that I

9    have a copy that lines up with the pages on there.

10            THE COURT:  I have it as Exhibit 87.

11            MR. RIFKIN:  It is, Your Honor.  I have Exhibit 87

12    in front of me, and you are asking me about page 1007 of the

13    record?

14            THE COURT:  Yes, if that's what you're referring to.

15            MR. RIFKIN:  Yes.  She describes that *Happy Birthday*

16    was one of the earliest songs in the group.  Your Honor may

17    recall that the book *Song Stories for the Kindergarten* -- *Song*

18    *Stories for the Kindergarten,* which was published in 1893,

19    consisted of about 70 songs, many of which were written by

20    Mildred and Patty together.  One of them was *Good Morning to*

21    *All*.  Some of them were songs that had been written by others

22    many centuries before, including songs like *Twinkle Twinkle*

23    *Little Star*.

24            THE COURT:  Slow down a little bit when you're

25    speaking so my reporter can get it down.

1          MR. RIFKIN:  But yes.  On -- on page 1007 Patty Hill

2     says that *Happy Birthday* -- I'm sorry -- that *Good Morning to*

3     *All* was one of the earliest in the group.

4        And then she later says in that same answer that she

5     then -- "she" being Patty, she then says that she wrote other

6     versions of the song, and she identifies several of them there,

7     including *Goodbye to You*, *Happy Journey to You*, *Happy Christmas*

8     *to You*, *Happy New Year to You*.  And then toward the bottom of

9     the page she's asked about *Happy Birthday*, and she says, yes, I

10    wrote the words to that song as well.

11       The other piece of evidence that's -- that's in the

12    record, which is --

13         THE COURT:  Before you do that, let me talk briefly

14    with you about this piece of evidence -- and don't forget the

15    other piece because I do want to talk to you about --

16         MR. RIFKIN:  Yes.

17         THE COURT:  If you read this page in its entirety

18    and the context of the answer, which is a lengthy answer that

19    she gives, she does begin talking about the *Good Morning to*

20    *You -- to All*, but she also said, we used it for, meaning

21    presumably the melody, we used it for all the rest of these

22    versions -- *Goodbye to You*, *Happy Journey to You*, including,

23    when asked, *Happy Birthday to You*.

24       Doesn't that seem to you to be more suggestive that these

25    were all joint collaborations and various versions of the

1   melody but there are various versions of the lyrics, that they

2   were working together, as she says "We used it for"?

3            MR. RIFKIN:  I don't believe that the "we" in that

4   paragraph refers to her and her sister Mildred.  I think it's

5   clear from the context of the deposition that the "we" there

6   refers to her and the students of her class.  There's no

7   evidence anywhere that Mildred and Patty together published any

8   of these other versions of the melody with any of these other

9   lyrics, whether it was *Goodbye to You*, *Good Journey to You,*

10  *Happy Christmas to You*, *Happy New Year to You*, *Happy Vacation*

11  *to You,* or for that matter, *Happy Birthday to You*.

12       But what she does say is that she sang *Happy Birthday* with

13  every birthday celebration in the school.  Patty was the

14  educator, and you may recall we pointed out before she called

15  herself the poetess.  She said Mildred was the composer, I was

16  the poetess, I wrote the words.  And I think it's clear from

17  the context that Patty wrote these alternate words, these

18  derivative words.

19            THE COURT:  The fact that Patty may have written the

20  words is not dispositive.  You don't have to jointly write the

21  words to be a joint author of the work.  So I don't think it's

22  disputed that Mildred didn't write the words, but for purposes

23  of joint authorship, the test is really not whether you

24  actually authored the words.  It's whether, you know, the work

25  prepared by two or more authors with the intention that their

contributions be merged into inseparable and interdependent parts of the unitary whole.

Don't you think it is at least susceptible of the reading that the two of them were collaborating and trying to manipulate the music in a way that's probably best for small children and their abilities and that in that process they were also applying different words to that tune?

Undoubtedly, Patty probably came up with the words, but they were in that collaborative effort.

MR. RIFKIN: I don't -- respectfully, I don't believe that's what happened. And I think, if we look at the rest of the transcript, Patty describes in some more detail the actual process of writing the *Good Morning to You* song, and she says --

THE COURT: Go ahead. Go to that, then. Tell me where that is.

MR. RIFKIN: She says, with respect -- and, again, I'm on page 1007 -- she says, It would be written, and I would take it into the school the next morning -- and now here she's clearly talking about *Good Morning to All* -- and test it with the little children. And then she's describing now the musical composition.

So she says, if the register, which is a musical term, was beyond the children, we went back home -- we and Patty -- Patty and Mildred -- we went back home at night and altered it and

1    would go back the next morning and try it again -- again, "it"

2    is a reference to the song *Good Morning to All* -- again and

3    again until we secured a song that even the youngest children

4    could learn with perfect ease.

5        And while only the words -- she then goes on to describe

6    what happens with these adaptations.  I think it's clear from

7    the answer she gives that they were working on *Good Morning to*

8    *All.*  She had written those words, and Mildred had composed the

9    melody for the song, and then Patty would test it out in school

10   the next day.

11       If the kids were able to sing it, great.  If there was a

12   problem with it, she went home.  She and Mildred worked on it,

13   and they developed a song, *Good Morning to All*, that she says

14   even the youngest children could sing with ease.

15       Then I think she says "we," and here's where I think the

16   "we" needs to be put into context.  We used it -- and it

17   clearly is the song *Good Morning to All* -- for *Goodbye to You*,

18   *Happy Journey to You*, *Happy Christmas to You*, and so forth.

19       And I think, if we were to look at this sentence, the word

20   "we" out of context, without recognizing that there's never

21   been a single publication attributed to Patty and Mildred of

22   any of these alternate songs, it's -- it's evident to me that

23   Patty and Mildred never said they wrote it together.

24       I think, taken out of context, the word "we" could

25   possibly be a reference to Mildred, and so it might lead to the

UNITED STATES DISTRICT COURT

conclusion that this was a joint work.  But in the context of the entire record and the explanation that Patty gives, and one other piece of evidence which I'd like to come to in a moment, it becomes much clearer to me that the song Patty and Mildred wrote together is the only song that has ever been associated with them together, and that's *Good Morning to All*.

But perhaps even more important is that Summy, Warner's predecessor, Summy actually gives us a temporal reference in Exhibit 51.  This is the answer that Summy filed to the amended complaint in the litigation the Hill Foundation brought against Summy.  And on page 680 and 681 of the answer, they say that *Good Morning to All* --

THE COURT:  I'm sorry.  Give me the pages again.

MR. RIFKIN:  Yes.  It's pages 680 and 681 of Exhibit 51.

THE COURT:  Right.

MR. RIFKIN:  This is the answer that was filed in the <u>Hill Foundation v.</u> --

THE COURT:  Paragraph 6?  Are you talking about paragraph 6?

MR. RIFKIN:  Your Honor, just give me a moment to turn to the page.  I'm talking about paragraph 6, yes.  And Summy says in its answer that the song *Good Morning to All* with -- now I'm quoting -- the song *Good Morning to All*, with different words, later became entitled *Happy Birthday to You*.

**UNITED STATES DISTRICT COURT**

```
 1          To me, Summy's admission, their judicial admission in that
 2     litigation that the song later became known as *Happy Birthday*
 3     *to You*, reinforces the fact that it was a derivative work that
 4     was subsequently done presumably by Patty.
 5          If we accept Patty's testimony that she wrote the song,
 6     the lyrics to the song, then I think the two parts of the
 7     record that I refer to -- page 1007 from Patty's transcript
 8     where she says she wrote it, she used it with her students in
 9     school, Mildred was not a schoolteacher -- the fact that
10     there's no evidence of any alternate version of the song being
11     attributed to the sisters together, and the fact that Summy in
12     their answer says the song later became known as *Happy Birthday*
13     *to You*, reinforces the conclusion that *Good Morning to All* was
14     a unified creation of Mildred and Patty together as a joint
15     work -- there's no dispute about that -- but that *Happy*
16     *Birthday* was a later variation by Patty either in her classroom
17     or for use in her classroom, which has never, except by the
18     defendants periodically in this litigation, has never been
19     attributed to Mildred Hill.
20              THE COURT:  What if the agreement between the
21     authors, Mildred and Patty, had been that let's work this song
22     out, the register being perfect for the little kids, with this
23     initial verse, and then I'll just go ahead and add some more
24     verses that we can also plug in.
25          Does that constitute a joint work?
```

1          MR. RIFKIN:  No.  I don't -- I don't think that

2    necessarily has to be the case because the joint work has to be

3    a deliberate creation on the part of two or more authors to

4    create a single unified work.

5          And in that case the subsequent work would not be part of

6    the original work.  It would still be a derivative work, and

7    Patty made it clear that she was the one who contributed the

8    new matter to that derivative work, not Mildred.

9          Mildred's work on the song was done when Mildred and Patty

10   were satisfied that the melody was appropriate for, as Patty

11   says, even the youngest child to sing.  But once that work was

12   done -- that work was now the work of Mildred and Patty, and

13   the subsequent work became the work of Patty.

14         And, again, all we can do to think about this is look at

15   what evidence there is in the record, and it seems to me that

16   the evidence in the record in this instance is one sided.

17   Summy says the song later became known as *Happy Birthday to You*

18   when those lyrics were added.  Patty says she wrote those

19   lyrics.  There's no suggestion that she wrote them with Mildred

20   the same iterative way that she describes writing *Good Morning*

21   *to All*, and the song has never been published together with

22   attribution to Mildred and Patty.

23         So I don't think that -- I don't think that we can

24   conclude that *Happy Birthday* was a joint work of Mildred and

25   Patty.

1    THE COURT:  What about on page 1006, which is before

2   the discussion that we've been talking about where there -- you

3   know, 1006 and 1007 explicates all these various versions.  But

4   on 1006 there's also some discussion by Ms. Hill when she's

5   talking about these songs.

6         My memory is a little vague as to the

7         particular year, but it was bound to be between

8         1889 and 1893 when these songs were demanded by

9         the public for publication.  We did not write

10         them for publication.  We wrote them for a group

11         of children I was teaching.  They were so

12         superior to any other music in the market, and

13         the public demanded the publication.

14         MR. RIFKIN:  Yes, Your Honor.  That's -- that's what

15   I -- I referred to earlier when I said the book *Song Stories*

16   *for the Kindergarten* was published with a collection of songs

17   by -- some by Mildred and Patty, some by other authors.  But if

18   you look up on that same page 1006, at the top of the page

19   there's a paragraph -- there's an answer from Patty that's cut

20   off, but what she describes is how she went about writing *Song*

21   *Stories for the Kindergarten*.

22         She says, when my sister Mildred and I began the writing

23   of these songs -- and then there's a parenthetical, I don't

24   know who inserted it, but it's in the transcript, referring to

25   *Song Stories for the Kindergarten* -- we had two motives.  One

1  was to provide good music for children.  The second was to

2  adapt the music for the little children's limited ability to

3  sing music of a complicated order.

4      And I think it's clear that the second answer she gives on

5  page 1006 that Your Honor asked about is a reference to those

6  same collections -- that same collection of songs, *Song Stories*

7  *for the Kindergarten*.

8           THE COURT:  That's your view.

9           MR. RIFKIN:  Yeah.  I don't think -- in other words,

10  on page 1006, I think when she's referring to the songs, it's

11  the songs in *Song Stories*.  And, in fact, she even continues in

12  the -- in the bottom of the answer that you began to read, she

13  says, we published this in response to a demand for

14  publication, and they were published and put on exhibit in the

15  World's Fair in Chicago in 1893.

16      We mentioned that before.  That is the publication of the

17  70 or so songs in *Song Stories for the Kindergarten,* only one

18  of which is a version of *Good Morning to All*.  And only the

19  words *Good Morning to All* appear in that song.  None of these

20  alternate versions that Ms. Hill mentions on the next page in

21  her answer to a different question -- none of those alternate

22  versions and none of those alternate lyrics appear in the 1893

23  publication of *Song Stories for the Kindergarten*.

24      Now, if she really wanted to publish those songs together

25  and she really worked with Mildred together, it would have been

1    easy for them to include the alternate lyrics right then and

2    there in *Song Stories for the Kindergarten*.  They did not do

3    so.

4              THE COURT:  Well, take a look at page 1009.  There

5    seems to be then -- there was some talk -- let's go back to

6    1008.  There's a question by Mr. Stark.  I ask this book, *Song*

7    *Stories for the Kindergarten*, be marked Exhibit A for

8    identification.  Okay.  Then he says, question, and during the

9    time that this particular song was being written -- presumably

10   referring to *Good Morning to All* -- did you use the various

11   lyrics in conjunction with the tune while you were working with

12   the children?  There's an objection, and the answer is, we

13   certainly -- we certainly did.

14             MR. RIFKIN:  Yes.

15             THE COURT:  Does that not suggest that there was a

16   collaborative effort, not only of the *Good Morning to All* but

17   also these various lyrics that have been identified on

18   page 1007?

19             MR. RIFKIN:  No.  Again, I think, Your Honor, that

20   the "we" in that sentence has to be put into the context of the

21   rest of Ms. Hill's testimony.  I think there again the "we" is

22   not a reference to her and to Mildred.  The "we" is a reference

23   to her and her students in school.

24        If she and Mildred had worked on more than one song

25   together, it would have appeared in *Song Stories for the*

1    *Kindergarten* when it was published in 1893, particularly if

2    they worked on them at the same time.

3         The only way you can harmonize all of the evidence that's

4    in the record, including Summy's admission in the Hill v. Summy

5    litigation that the song later became known as *Happy Birthday*

6    *to You* -- the only way you can harmonize all of that is to view

7    it exactly the way I've described, that the Hill sisters wrote

8    *Good Morning to All* in that iterative manner that Patty

9    described, and then in her classroom Patty separately composed

10   alternate combinations of lyrics which were never published

11   anywhere by the Hill sisters.

12        So I don't -- I truly don't believe that all of the

13   evidence, the totality of the evidence, permits the -- the

14   conclusion that *Happy Birthday to You* was written as a joint

15   work by Mildred and Patty at the same time they were writing

16   *Good Morning to All*.  I think the totality of the evidence that

17   I've just gone over is consistent instead with what Summy said,

18   that it later became known as a different work because Patty

19   sang it with her kids in school.

20            THE COURT:  Do you think there's a triable issue at

21   least on this?

22            MR. RIFKIN:  Well, Your Honor, you may recall that

23   there was a question asked to both sides at the last hearing

24   whether, if the Court found there were triable issues, whether

25   the Court could determine those triable issues without a jury.

1   And this is one of those issues where I suppose one could

2   again -- one could look at some of the answers Patty gave in

3   her deposition and take a word or two out of those answers and

4   say, What did "we" mean?  What did "songs" mean?

5        But then those words have to be put into their proper

6   context, which I've suggested here in my answer, and if there

7   is a disputed issue of fact here, I think the evidence

8   overwhelmingly favors the plaintiffs' point of view that the

9   song that was written as a joint work is the song that was

10  published as part of *Song Stories for the Kindergarten*, *Good*

11  *Morning to All*.

12           THE COURT:  So what you're saying --

13           MR. RIFKIN:  The later work -- I'm sorry.  I didn't

14  mean to interrupt, Your Honor.

15           THE COURT:  What you're saying -- I'm trying to

16  understand the procedural posture that we are in.  Typically,

17  if this is going to be a different trier of fact on summary

18  judgment -- I'm only here to determine whether there's a

19  triable issue of material fact.  If there is, then summary

20  judgment is denied, and we move on to the trial.  In this case,

21  on these issues, you folks have both stipulated to a court

22  trial.

23       So the question then becomes do I put my summary judgment

24  hat on and say, hmm, it looks like at least it's triable, take

25  it off, and then at the same time put on my trier-of-fact hat,

1   and I say, all right.  Well, it is triable, but this is all the

2   evidence there is, this is all the record there is.  Both sides

3   make their argument, here's my finding of fact.

4        Do you think it will be appropriate to do it all in

5   basically one order?

6             MR. RIFKIN:  I think that we -- we both consented to

7   Your Honor making those fact findings when we were here back in

8   March, and we have no reason to change our view on that at all.

9        If the Court finds that the question of whether this

10  was -- whether *Happy Birthday* was a joint work is not clearly

11  answered for summary judgment purposes, then I believe the

12  Court could make the determination along the lines that I've

13  suggested, based upon the totality of the evidence that we've

14  described to you, including Summy's reference to it as a song

15  that later became known as *Happy Birthday to You*.

16       The fact that the Hill sisters --

17            THE COURT:  Let's not go --

18            MR. RIFKIN:  Okay.

19            THE COURT:  I guess what I'm saying is there's no

20  need, from a technical standpoint, for me on the summary

21  judgment to say, well, if I find there's triable issues,

22  summary judgment denied.  All right.  Now let's set a time for

23  court trial.  You folks come in, and you basically move in the

24  same thing you've already moved in.  You're making the same

25  argument you've already made.  And then I say, all right.  Now

1  that I'm a trier of fact, I'm going to make these findings of

2  fact and conclusions of law if, from your perspective, that's

3  really form over substance.

4       MR. RIFKIN:  That's correct, Your Honor, based upon

5  our consent, both parties' consent on March 23rd to Your Honor

6  making those findings of fact.

7       And I will, of course, say that -- I know you don't want

8  to address the issues raised by the ex parte application, but

9  this all becomes subject to the 1922 publication of the song

10  without a copyright notice.  I don't want to lose sight of

11  that.  I just want to merely --

12       THE COURT:  I'm well aware of the many issues that

13  are raised here, and depending upon the Court's resolution

14  either as trier of fact or on summary judgment, it may obviate

15  the necessity of further inquiry --

16       MR. RIFKIN:  Correct.

17       THE COURT:  -- but --

18       MR. RIFKIN:  Correct.

19       THE COURT:  But since we only called this hearing

20  for purposes of addressing the issue of abandonment, I think we

21  should do that.

22       MR. RIFKIN:  And I want to make sure I answer all

23  your questions on abandonment.

24       THE COURT:  All right.  Next.  Let's move on.

25       You take the position that, while the law may be that an

1    overt act of abandonment is required where there is a statutory

2    copyright, you think that that requirement is not present where

3    there is a common law copyright.  And basically I've looked at

4    your cases.  I don't think any of your cases directly stand for

5    that proposition.

6          But in fairness to you, I think what you have done is you

7    have followed a logical argument, saying that common law

8    copyright is a property right and any property right can be

9    abandoned in many ways and they do not typically require an

10   overt act necessarily.  In fact, in some instances like the

11   Roby case that you cited, mere nonuse might be sufficient to

12   constitute abandonment of the easement and so forth.

13              MR. RIFKIN:  Correct.

14              THE COURT:  I take it you have no cases directly on

15   the issue of whether a common law copyright may be abandoned

16   without any need for showing of an overt act.  Am I correct in

17   that?

18              MR. RIFKIN:  Other than the cases we've cited, we're

19   not aware of any direct authority on that point.

20              THE COURT:  Okay.

21              MR. RIFKIN:  Our argument is as comprehensive as we

22   can make it in the brief.

23              THE COURT:  Very good.  Thank you.

24         Now let's move on to the next subject.  In terms of overt

25   acts, you've identified various of them.

1          MR. RIFKIN:  Right.

2          THE COURT:  One of them is the teaching of the song

3    to the teachers and the kids.

4          MR. RIFKIN:  Correct.

5          THE COURT:  So you all -- it's interesting because

6    you and the defendant both seem to rely on the same passage

7    from Ms. Hill's deposition, which is Exhibit 87 at page 1024,

8    and you cite that her statement that we are trying to protect

9    ourselves -- we are not trying to protect ourselves in any way

10   except as to publication at this time.

11        So your take of it is, because she said that, it means

12   that she was thereby abandoning anything other than that, which

13   she wanted to protect the publication.  Publication obviously

14   ripened into the *Song Stories* book, and *Happy Birthday* lyrics

15   at least were not in there.

16        MR. RIFKIN:  Right.  I think it's pretty clear when

17   she says we were not trying to protect ourselves in any way

18   except as to publication at that time.  And we recognize that

19   there's no dispute the only publication, the only publication

20   that existed at that time, was *Good Morning to All*.

21        And this ties obviously to the answer to the first

22   question you asked about whether it was a joint work.  I think,

23   you know, here, if they intended to protect themselves

24   regarding any of these alternate arrangements that Patty claims

25   to have written, then they could have done so easily by

1   including them in the book.

2       She was not reticent about protecting the work in *Song*

3   *Stories for the Kindergarten*, including *Good Morning to All* --

4   neither of the Hill sisters was -- but she makes it very clear

5   that that's all we wanted to protect.  We were not trying to

6   protect ourselves in any way except as to publication at that

7   time, and that publication was *Good Morning to All*.

8           THE COURT:  What about some of her other statements

9   that the defendants cite, including exchanges also in that

10  deposition between counsel and Ms. Hill in terms of how she was

11  trying to limit the authority or the permission, only for

12  educational uses, only as far as the kids singing them

13  concerned and so forth?  How does that -- if you read

14  everything other than there's just that one line, but if you

15  read what she has said at various parts during the course of

16  the deposition --

17          MR. RIFKIN:  Right.

18          THE COURT:  -- does it at least raise a triable

19  issue as to whether or not there was evidence of abandonment by

20  it?

21          MR. RIFKIN:  Your Honor, I don't -- I don't think on

22  this question it does because, No. 1, the clearest statement

23  she makes in the deposition is the one you just asked me about

24  on page 1024 of the deposition transcript, where she says what

25  the extent of their interest was.  The purpose that she

describes for creating and publishing the collection of songs in *Song Stories for the Kindergarten* we certainly don't need to challenge or dispute or in any way explain because *Happy Birthday to You* simply isn't in that publication.

And, again, I think that the failure to include that song in the 1893 publication, if the Court believes there's some question about whether it was written then -- and by "it" I mean the *Happy Birthday* lyrics -- is conclusive when you put it against the statement that she makes that we were only trying to protect the publication at that time. I think that is the clearest black-and-white expression of what the limits of her interests were. But then if there's even any doubt about it after that --

THE COURT: If she was only trying to protect the publication because that was what's being published in the songbook, and the *Happy Birthday* lyrics if it existed at that time was not being published in the songbook, does that necessarily mean that she was abandoning the lyrics to *Happy Birthday*?

MR. RIFKIN: Oh, I think, in and of itself she says this was the extent of our rights. But I don't think you need to look at that in a vacuum because, as we say in our brief, if you look at the question of abandonment, you don't look at one act and say that's not abandonment and another act and say that's not abandonment and a third act and say that's not

1  abandonment any more than you look at a tree and say, well,

2  that's not a forest and you look at the tree next to that and

3  say that's not a forest either when you're standing in the

4  midst of a forest, because there is other evidence, including

5  what she says to the New York Times in 1934, when she says that

6  her only claim was regarding the music of *Good Morning*.

7       When you look at what she says to Time Magazine, she says

8  I had long ago resigned myself to the fact that the ditty had

9  become common property of the nation.  When you look at the

10 rights that she --

11          THE COURT:  Let's go back because I want to make

12 sure -- let's go back to the New York Time article.  The

13 New York Time article doesn't say exactly what you just said.

14 It doesn't purport to quote from Ms. Hill, saying, I only have

15 a gripe with them with respect to the music and not the lyrics.

16          MR. RIFKIN:  Correct.

17          THE COURT:  That may be your gloss on it, and that's

18 fine, but as we look at it, what it says is she also admitted,

19 meaning I assume this was Ms. Patty --

20          MR. RIFKIN:  Uh-huh.

21          THE COURT:  -- Smith Hill, she also admitted that it

22 was her sister Jessica Hill, instructor of English at Teachers

23 College, who had signed a complaint in the suit filed earlier

24 in the day in federal court, alleging the *Happy Birthday to You*

25 sung in *As Thousands Cheer* was a plagiarism on the music of her

1   own song.

2           MR. RIFKIN:  Right.  Right.

3           THE COURT:  It does not say anything about "but it

4   is not plagiarism of the words, because that I've already given

5   up."  That doesn't go that far.

6           MR. RIFKIN:  That --

7           THE COURT:  What you're saying is an inference that

8   might be drawn from the fact that she had emphasized in her

9   lawsuit that plagiarism of the music, without any discussion of

10  plagiarism of the lyrics, because obviously the lyrics were

11  sung in *As Thousands Cheer* -- you say that is some indication

12  of an overt act to abandon.

13          MR. RIFKIN:  Yeah.  If -- if someone performs your

14  work without your permission -- and although only Jessica

15  signed the complaint, the complaint was brought in the name of

16  the foundation for the benefit of both sisters.  Although

17  Jessica was the only one who signed the complaint, the

18  complaint was that the song *Happy Birthday to You* was used in

19  the play *As Thousands Cheer* without their permission.  And the

20  claim was that the performance, again, plagiarized the music.

21      Now, had they believed that it also plagiarized Patty's

22  writing of the lyrics, it wouldn't have taken much for them to

23  say that.  Again, this is -- this is a -- this is a piece of

24  evidence in the negative.  There's a claim that *Happy Birthday*

25  *to You* infringes upon your rights to the -- to the music, but

there's no corresponding claim that it infringes upon your right to the lyrics.

THE COURT:  Your point, going back to the trees and the forest, I guess your point is that you're not necessarily saying any one of these pieces of evidence may in and of itself constitute the overt act that is indicative of an intent to abandon but that, when you put everything together -- the teaching, the various articles, and then of course the Time Magazine article and so forth --

MR. RIFKIN:  Right.

THE COURT:  -- together they do constitute the type of overt act which evidences an intent or purpose to abandon.

MR. RIFKIN:  I think all these various affirmative acts on the part of Patty, together, the totality of those acts, is clear that they regarded -- that she regarded the *Happy Birthday* lyrics fundamentally differently than she regarded the composition of *Good Morning to All*, which she was fiercely protective of -- again, to the point where she sued over it, she demanded compensation for it, she fought with her publisher over it, "it" being *Good Morning to All*, but never, never anything about *Happy Birthday to You* even when *Happy Birthday to You* was the work being performed.

So, yes, I think, if you wanted them all -- if -- if the -- if the interview she gave to Time Magazine, where she says she long ago resigned herself to the fact that the ditty

1   had become common property of the nation, if that's not alone

2   sufficient to say she's abandoned any claim to copyright, then,

3   yes, I think all these other overt acts are certainly

4   sufficient to do that.

5        Again, also, we have what she says in -- in the deposition

6   in 1935 that all she was trying to protect was the publication

7   at that time.  I don't know how much more we can ask for as far

8   as overt acts of abandonment are concerned for a song, *Happy*

9   *Birthday to You,* that Patty Hill really didn't particularly

10  take much -- I guess the answer that I want to give is pride

11  in.  When you read how she talks about *Good Morning to All* and

12  you compare that with how she talks about *Happy Birthday to*

13  *You*, *Happy Birthday to You* was an afterthought.  She had to be

14  prompted to even mention it when asked about it when her

15  deposition was taken in a lawsuit over *Happy Birthday to You*.

16  The first thing she wanted to talk about was *Good Morning to*

17  *All*.  So, yes, I think they are -- they are fundamentally

18  different.

19           THE COURT:  Let me ask you one last question before

20  I have you sit down, and I'll talk to Mr. Klaus.  And, that is,

21  if the Court were to find that this was a joint -- "this"

22  meaning *Happy Birthday to You* lyrics -- that was a joint --

23  work of joint authorship with Mildred, then do you have any

24  evidence of any acts evidencing intent to abandon those lyrics

25  by Jessica?

1        MR. RIFKIN:  And, again, leaving apart the 1922

2    publication, the answer is yes.  In the litigation that was

3    filed by Jessica and Patty together against the Hill

4    Foundation -- I'm sorry -- on behalf of the Hill Foundation

5    against --

6        THE COURT:  Summy.

7        MR. RIFKIN:  -- Summy.  The only claim that was made

8    in that case had to do with *Good Morning to All* and the

9    copyrights in *Good Morning to All*, which by that time Jessica

10   had renewed in 1921.  And, again, there are allegations in that

11   complaint having to do with the use of that song, the public

12   performance of that song, not as *Good Morning to All* but

13   instead as *Happy Birthday to You*.

14       Jessica was not at all embarrassed to assert her rights as

15   the heir of Mildred to the composition of *Good Morning to All*.

16   If Jessica thought she had a right to the *Happy Birthday*

17   lyrics, they would have appeared in that complaint with

18   certainty.  Why go through the trouble of suing someone for

19   using *Happy Birthday to You* without your permission and not say

20   I own the rights to *Happy Birthday*?  Why would you sue someone

21   for using *Happy Birthday to You* and only say I own the rights

22   to a different song, *Good Morning to All*, if you truly believed

23   you owned copyrights to the *Happy Birthday* lyrics, whether they

24   were common law copyrights, statutory copyrights, or any other

25   kinds of rights?  If you were going to file --

1          THE COURT:  That's not -- doesn't that become, as to

2     her, just a failure to assert?

3          MR. RIFKIN:  No, because there was a complaint and

4     there was an amended complaint, and it is clear -- again, it is

5     clear from the allegations in that case that what they were

6     talking about was the musical composition.  Your Honor may

7     recall that in the complaint they refer to -- "they" being the

8     Hill Foundation -- they refer to a license of various piano

9     arrangements of the musical composition *Good Morning to All*.

10    That's Exhibit 50.  And then in Exhibit 51 -- this is the

11    amended complaint in Exhibit 51, which is --

12         THE COURT:  Wait, wait.  I think you're getting a

13    little confused here.  In the amended complaint there are three

14    causes of action.  The third cause of action is neither here

15    nor there for our purposes, I think.

16      The first cause of action largely talks about the songbook

17    and the various iterations of the songbook.  The second -- and

18    the agreements that had been reached back then at the time --

19    at or about the time of the publication of the songbook, which

20    would have been around the turn of the previous century.

21         MR. RIFKIN:  Correct.

22         THE COURT:  The second cause of action talks about

23    the piano arrangement licenses that I think we've been talking

24    about that you and the defendants dispute, the scope of that.

25    But be that as it may, that was entered into allegedly far

1   later.  That was '34 or '35, and that was when there was

2   discussion with respect to the piano arrangements of *Happy*

3   *Birthday to You*, whereas the first cause of action, while it's

4   true in two of those paragraphs -- I think 10 and perhaps 15 --

5   there is some mention of *Happy Birthday to You*, but it seems to

6   me most of the discussion, as well as the copyrights referred

7   to therein and the renewals of the copyright referred to

8   therein, have nothing to do with E51990 or E51988.

9         MR. RIFKIN:  Correct.  The first part of the case

10  concerned the original copyright to *Good Morning to All* in

11  1893, and it concerned the renewal by Jessica in 1921, and

12  Summy's exploitation of *Song Stories for the Kindergarten*.

13  That's the work that was covered by the 1893 copyright and

14  Jessica's renewal of it in 1921, which expired in 1949.

15  There's no dispute about that.  But, yes, that's right.  The

16  first part of the case concerned that particular publication.

17        The second part of the case, which is the part of the

18  case -- the Hill Foundation v. Summy case -- that's really

19  germane to our present dispute -- has to do with these 1934 and

20  1935 assignments.  And again, you know, Jessica makes it clear

21  the Hill Foundation, on behalf of both Jessica and Patty, make

22  it clear that what was assigned was rights to piano

23  arrangements of the musical composition.  And Summy in its

24  answer makes it clear that that's all they acquire.

25        Now, there was a dispute back then about whether it was a

 1   license or a sale.  Summy says we bought it, but Summy says

 2   what we bought was the rights to various piano arrangements of

 3   the said musical composition *Good Morning to All*.  Period.

 4           THE COURT:  Okay.  So with that understanding where

 5   we are, tell me again how you believe that this is an

 6   indication of some act of abandonment by Jessica.  That's the

 7   context that we're talking about it.

 8           MR. RIFKIN:  Because by then Patty and Jessica both

 9   knew that the song *Happy Birthday to You* was being performed.

10   And if it was being performed without their permission and if

11   they believed their permission was necessary, either Patty's

12   permission because she was the author of the derivative work,

13   or Patty's and Jessica's permission because the Court concludes

14   that *Happy Birthday* was a joint derivative work, then we have

15   to look at the failure to assert any rights to the lyrics

16   *Happy Birthday to You* in that litigation brought by both

17   Jessica and Patty.

18       And we have to say that there was some significance to the

19   fact that they sued over the work that they believed they

20   owned, which is *Good Morning to All*, and that they didn't -- in

21   the same action against the same defendant, they didn't assert

22   any rights to the derivative work, no matter who it was.

23   Whether it was Patty -- she was an interested party in that

24   litigation -- or Patty and Jessica together because the Court

25   finds it's a joint work, then the Court has to conclude from

the absence of any assertion of any rights to the lyrics *Happy Birthday to You*, that Patty and Jessica together didn't believe they had any rights to those lyrics.

So either way, whether it's because Patty didn't believe she had the rights alone and it was her derivative work, or because Patty and Jessica together didn't believe they had rights in a joint work, it's pretty compelling evidence that they didn't have those rights and didn't think they had those rights.

And, of course, we have all the other litigation that was brought, not just by Patty and Jessica or the Hill Foundation, but also by Summy for performances of *Happy Birthday to You,* both before the copyright was filed in 1935 and after the copyright was filed in 1935 where the only rights asserted were the rights to the musical composition *Good Morning to All*, never to the lyrics *Happy Birthday to You*, even when the performance was *Happy Birthday to You*.

So if it was an act of forgetfulness on Patty's and Jessica's part when filing the first complaint, they hadn't overcome that forgetfulness when they filed the amended complaint, and it apparently spread to Summy when Summy filed its own lawsuits over the songs after they acquired the rights, whatever rights they acquired from Patty and Jessica in 1934 and '35 in those infamous assignments, because they filed lawsuits against third parties who used *Happy Birthday to You*,

1   and they never claimed any right to the lyrics *Happy Birthday*

2   *to You.*

3       After a while, even leaving apart the 1922 publication,

4   the evidence is just overwhelming that the claim of Patty and

5   of Mildred and of Jessica was limited to *Good Morning to All.*

6   It never reached *Happy Birthday to You.*

7       And Patty tells us why on multiple occasions.  She told us

8   why in her deposition.  She told us why in the Time Magazine

9   article.  The reporter certainly mentions it in the New York

10  Times article.  You know, this is the record the Court's going

11  to have to decide, and this record is so completely one sided

12  that I think summary judgment is appropriate.

13              THE COURT:  All right.  Thank you very much.

14              MR. RIFKIN:  Thank you, Your Honor.

15              THE COURT:  Mr. Klaus, let's start with the issue of

16  joint authorship, and I'm going to give you a chance to address

17  what Mr. Rifkin had argued.  And that is the same -- basically

18  the same page of the deposition that you also rely on of

19  Patty Hill that is at page 1007 of her deposition.  If you have

20  other aspects of this deposition that you want me to take a

21  look at, that's fine.  But I'd like to hear from you as to why

22  you believed that this was a joint work as opposed to a

23  derivative work of Patty only, subsequently pending.

24              MR. KLAUS:  I think we have to step back, first, on

25  what the legal standard is for a joint work with respect to a

musical composition.  And the case we had directed Your Honor

to would be the Shapiro, Bernstein case from the Second Circuit

in 1947.  And at page -- 161 F.2d 409 to 410, they -- this is

what the Second Circuit said:

> The words and music of a song constitute a
>
> musical composition in which the two
>
> contributions merge into a single work to be
>
> performed as a unit for the pleasure of the
>
> hearers.  They are not a composite work like the
>
> articles in an encyclopedia but are as little
>
> separable for purposes of the copyright as are
>
> the individual notes which constitute the melody.

And they go back, and they cite a case where you

have a composer of -- of the -- of the music, the tune, and the

lyrics who had never met each other.

The case in the -- the case in Shapiro, Bernstein involved

a set of music that was taken to a different lyricist a year

after the underlying composition.  And so this is a matter of

law.  When you have somebody who is writing the music and the

lyrics, they are combined together.

But in this case what the evidence in this transcript

actually shows, these aren't two strangers.  One of the things

that we have -- we haven't really discussed is these are two

sisters.  They're living in the same house.  They are working

with both Patty and her sister Jessica.  And I would also

direct you to page 1031 of the record, which is the portion

which is -- 1031 and 1032, which is where Jessica, who

apparently was 14 or 15 years old at the time these works were

being done in around 1893, she says one of the earliest ones

they put together was *Happy Birthday to You*.

And on page 1032 she's asked, will you describe to us one

particular incident or one particular hour of work during which

your two sisters were at work?  That is, tell us what

Ms. Mildred Hill did and what Ms. Patty Hill did.

And Jessica says, well, my sister would be at the piano

playing it, and my sister Patty would often say to her that the

children did not sing that interval well.  I can remember that,

and this is entirely consistent with what Patty says.

We have a situation where, even if Mildred was not going

to the school and listening to how the children are singing the

tune, what the testimony in this deposition shows is Patty

saying I came home at night, Mildred sat at the piano, and we

went -- I told her the words that I had written, and we figured

out what would be good enough for the little kids in the

register.

I would also point out, Your Honor, Exhibit 50 to the

summary judgment record, which is the amended complaint in

Hill versus Harris -- I'm sorry.  Hill Foundation against

Summy.  The flat-out allegation of the Hill Foundation on

behalf of both of the sisters, on page 664, the said song *Happy*

1  *Birthday to You*, written and composed by the said Patty S. Hill

2  and Mildred J. Hill.

3      I just don't see, in light of the legal standard for what

4  a joint work of authorship is with respect to a composition

5  containing musical notes and lyrics, and the facts that we have

6  in this deposition about the way this was being composed, how

7  this could be anything other than a joint work of authorship.

8          THE COURT:  Let me move on to -- you put in a

9  footnote only that, to the extent that this was a work of joint

10  authorship and if there's going to be abandonment, there would

11  be the requirement of two overt acts, one by each of the

12  holders of the joint authorship interest.  Do you have any

13  authority for that other than the ones that you cite which

14  really don't say that?  They just say simply that one joint

15  author cannot delegate the rights of the other.

16      But do you have any particular authority which says that

17  in this circumstance the overt act must be one committed by

18  each of the joint authors or the interest holders of the joint

19  authorship, or can it be one joint author exhibiting some overt

20  act or acts with the knowledge and acquiescence of the other

21  but not necessarily additional overt act on the part of the

22  second joint author?

23          MR. KLAUS:  I don't at -- I don't have, on that

24  precise question, authority for you.  What I do have,

25  Your Honor, though, is on a closely related question, which is

 1    the Davis against Blige case which we cited, and that is

 2    505 F.3d 90 --

 3              THE COURT:  Right.

 4              MR. KLAUS:  -- and that's pages 99 through 100.

 5    Again, this is the Second Circuit.

 6              THE COURT:  That just says that a coauthor cannot

 7    grant an exclusive license without the other --

 8              MR. KLAUS:  Correct.

 9              THE COURT:  -- author's consent.

10              MR. KLAUS:  But if -- but if one co-owner can't

11    grant an exclusive license without the other's consent, then it

12    makes no sense to say that one co-owner can effectively abandon

13    the other --

14              THE COURT:  That's not my question.  I'm not saying

15    one co-owner tries to abandon and the other co-owner says I

16    don't want to abandon anything.  That's not what I'm positing.

17         What I'm saying is one co-owner wants to abandon and, for

18    purposes of argument, has exhibited the requisite overt act or

19    acts to do so.  The second co-owner is fully aware of it,

20    doesn't complain about it, but doesn't take any independent

21    overt act.

22         Maybe I'm misreading the importance of your footnote, but

23    it sounds like, to me, that you say, if we were to conclude

24    that it's a joint authorship between Mildred and Patty, and by

25    Mildred passing the interest to Jessica, both Jessica and Patty

1    must independently exhibit an overt act or acts.  That's what

2    I'm just trying to question you on, whether you have that level

3    of authority.

4        I am not questioning the fact that, if Jessica didn't want

5    to abandon, Patty didn't -- if they were joint authors, didn't

6    have the authority to do that for her.

7            MR. KLAUS:  I don't -- the direct answer is I don't

8    have the case.  I think it follows from the nature of

9    abandonment in copyright, which is somebody abandoning their

10   copyright interest.  That is, if co-owner A and co-owner B each

11   have an undivided interest in the copyright, that in order for

12   there to be an entire -- a dedication of the entire work to the

13   public, that A and B both -- they could do it jointly.  They

14   could both together say we are -- we are giving this -- here is

15   an overt act.  We are giving -- we are giving this work to the

16   public for all time.

17       But to say that one -- but to say that A could do

18   something to divest itself of its interest and to say that that

19   would have any sort of an effect on B, B's interest in the

20   copyright, I don't think that can be squared with -- I don't

21   think that can be squared with the law on that.

22           THE COURT:  But if you have some people like the

23   Hill sisters, as you described, they have a certain level of

24   closeness.  This is not just any two individuals, any

25   individuals.  They are sisters.  They have joint interest in

1    the Hill Foundation that acts for them and so forth.  There's

2    no evidence that Jessica and Patty were estranged or at odds

3    with each other or so forth.

4        So if Patty had taken certain steps that, let's say for

5    argument's sake, sufficient to constitute the overt act and

6    Jessica were aware of what she was doing and had even in some

7    instances mentioned that -- something to the effect that Patty

8    had done these things, would that be enough?

9            MR. KLAUS:  I don't think so, Your Honor.  I think

10   that would be inaction on Jessica's part, which under the

11   Hampton case it's clear inaction is not enough to constitute

12   abandonment of her interest.  In fact, we have, as we cited in

13   our papers, numerous pieces of evidence of Jessica working to

14   protect her own interests and the interest of the Hill

15   Foundation.

16       I would also just -- in saying that, I don't -- obviously,

17   as you know from reading our papers, we have a fundamental

18   disagreement as to whether what is cited with respect to Patty

19   is evidence of Patty abandoning.

20           THE COURT:  I understand.  I understand that.

21       All right.  Let me ask you about the Time Magazine

22   article.  That's Exhibit 90.  You say that -- you object that

23   this is hearsay.  Let me just make sure that I understand what

24   your objection is.  I take it you don't object on the basis of

25   authenticity, that you're not saying that this is not really a

1  reproduction of Time Magazine but that somebody pretended this

2  to be a Time Magazine.

3            MR. KLAUS:  We don't dispute the authenticity of

4  this document.

5            THE COURT:  Okay.  Then in terms of hearsay, I

6  take -- well, why don't you tell me precisely what your hearsay

7  objection is.

8            MR. KLAUS:  Well, the first is that there's no --

9  there's no quotation of Patty Hill.  The person who wrote this

10 article in August of 1934 never said, I sat down and

11 interviewed Patty Hill, and this is what she told me.  There

12 are a number of statements here that looks like a Patty Hill --

13 I don't know how the reporting for Time Magazine worked in

14 1934.  That could have come from an interview with her, could

15 have come from piecing together other statements.  But there's

16 no statement that's actually attributed to being --

17           THE COURT:  Let's take it one step at a time.

18           MR. KLAUS:  Yes.

19           THE COURT:  On the face of it, appears to be two

20 layers of hearsay.  The first level of hearsay is the article

21 itself.

22           MR. KLAUS:  Correct.

23           THE COURT:  Are you objecting to that, or do you

24 concede that, because of the ancient document exception, that

25 this would satisfy the hearsay on that level?

1          MR. KLAUS:  On that level, yes.  As an ancient

2     document, it would.

3          THE COURT:  All right.

4          MR. KLAUS:  Correct.

5          THE COURT:  The second level would be if this were

6     attributable to Patty.

7          MR. KLAUS:  Correct.

8          THE COURT:  Let's -- for purpose of discussion,

9     let's assume that the magazine article had said, "And Ms. Patty

10    Hill said, quote, 'I have no complaint to make on the'" -- you

11    know, so forth and so on, close quote.

12         If it were that, do you have any objections?

13         MR. KLAUS:  Yeah.  The objection we cited, citing

14    the -- the Hsia case from Washington, D.C., is that it's not an

15    admission.  It can't be taken to be an admission against

16    pecuniary interest because there's no showing that's been made

17    that at the point in time, if Patty Hill had made this

18    question, she understood the consequences of what she -- she

19    understood the consequences of what she was saying.

20         THE COURT:  Isn't there some, at least, inferences

21    that could be drawn that this could be admissible but goes to

22    weight, not admissibility, inasmuch as we are talking in the

23    context of her having some kind of a lawsuit, and then we talk

24    about the scope of her assertion of her rights in that lawsuit

25    on the same work that we're talking about?

1          MR. KLAUS:  True, although the purpose of the

2   hearsay rule, Your Honor, is we're not -- obviously, we're not

3   able to cross-examine Patty Hill on what it was that she said.

4   So we're looking, even before you get to --

5          THE COURT:  Our record would be much better if we

6   could.

7          MR. KLAUS:  Understood, Your Honor.

8       The point being that, even before you get to assigning it

9   any weight, there's a question of the reliability of the

10  statement and whether it is sufficiently reliable.  And for

11  purposes of admitting it under the admission against pecuniary

12  interest, I think that is drawing it quite a few inferences

13  without -- without further corroborating evidence that she

14  understood that, by saying this, somebody was going to stand up

15  and say that you have no rights.  You affirmatively were saying

16  to the world that you have no rights forever to the song.

17         THE COURT:  That doesn't seem obvious from the

18  quote?  Sorry, not a quote.  Doesn't it seem obvious that, if

19  she had said I have no complaint to make on the use of the

20  words because long ago I resigned myself to the fact that that

21  ditty had become common property of the nation?  That seems

22  pretty clear that she -- she's not going to be able to assert

23  anything else, having told everybody, hey, I resign myself that

24  this is common property, this is public domain, in effect.

25         MR. KLAUS:  Well, I think that is -- again, those

1    are inferences that are being drawn from the words which we're

2    assuming for purposes of the question, the quote about common

3    property of the nation.

4         But, again, to my point that, given the standard for

5    abandonment is beyond an action, is beyond somebody saying to a

6    reporter, you know, everybody is singing this and so there's

7    nothing I can do about it, doesn't contain the indication that

8    by -- that she was aware that the consequences of saying that

9    would one day be taken to mean it's not just that there is

10   inaction on your part or perceived inability to control, but

11   you are intending to say I intend to give this to the nation.

12        THE COURT:  Well, what you just said there sort of

13   intermixes two different concepts, one of abandonment, one for

14   purposes of hearsay exception.  There's some crossover there,

15   but technically there's two different concepts.

16        Let me ask you then, since this does not purport to say

17   quotation marks around it, are you of the view that in context

18   it does not appear that this is a quotation or this is a

19   summary of what she had said?

20        MR. KLAUS:  Yes.  Yes.  I don't think -- I don't

21   think there is enough, from the face of this document, for us

22   to know what she said, to whom, what else may have been said

23   for us to treat this as a statement that can be attributed to

24   this declarant.

25        THE COURT:  Okay.  Assuming for the moment that I

```
 1   find that this is admissible for the reasons that we've talked

 2   about -- that is, this is an exception of hearsay rule -- you

 3   say that, in and of itself, is not enough still for purposes of

 4   abandonment.  I'm not necessarily agreeing or disagreeing, but

 5   for purposes of argument, if we accept your argument on that

 6   point, what about when, in conjunction with the other

 7   failures-to-assert situation -- and not just any failure to

 8   assert.  It's a failure to assert where there is an assertion

 9   of the same work, albeit in other aspects or other rights

10   within the work.

11        Would that not as a totality suggest that there has been

12   an overt action?  And we're not just barely talking about overt

13   act.  It has to be an overt act that is indicative of an

14   intention to abandon.  So if you took the whole group of

15   evidence as been posited by Mr. Rifkin, would that not tend to

16   show that there was an overt act or acts evidencing an intent

17   or purpose to abandon?

18             MR. KLAUS:  I don't think that it would meet the

19   standard, Your Honor, for the following reason, which is the

20   line that Hampton draws in the Ninth Circuit -- Rohauer

21   follows -- is fairly clear, which is, in order to find that

22   somebody -- because there are lots of things somebody can do

23   where they may not complain, for whatever their reasons are.

24   But if the -- what those cases stand for is you really have to

25   take -- it's not just a combination of -- it's not putting
```

UNITED STATES DISTRICT COURT

1    tree, tree, tree together and saying, aha, I've come up with an

2    overt act that I'll call a forest, or forest I'll call an overt

3    act.

4        You actually need that act requirement for a reason under

5    the cases, which is that this is -- it's an important right.

6    It's a right that's protected by -- through not only the

7    constitution and statute and that what you are going to require

8    is some overt act.  You're not going to require something that

9    is a totality of the circumstances and a totality of inaction

10   being combined together to say that this totality of inaction

11   somehow becomes an overt act.

12       And the reason I would say this, Your Honor, which is they

13   are focused on the complaints that were filed in the Harris v.

14   Hill case and the Hill Foundation against Summy case.  And

15   then, of course, they -- they cite to later things that are not

16   attributable to the Hills.

17       But the rule -- that is the rule of applicability for

18   copyright owners, generally.  Again, this is -- the law here

19   is -- the law on overt act and abandonment continues to be the

20   same.  If that's what it is, then what you're doing is you're

21   requiring copyright owners, on the penalty of one day being

22   held to have lost their copyright, to either throw everything

23   in and assert everything or risk that somebody will come back

24   and say we're going to apply a totality of the circumstances

25   test.

1      So what I think, this is one of the areas where -- as you

2   know, many areas of the law we say let's look at -- let's come

3   up with a standard, and let's throw everything in, and we'll

4   balance it and we will weigh it together.

5      In a number of areas of the law, we say, no, there's going

6   to be a clear, bright line, and what we are going to require is

7   the act of abandonment.  I think the fact that it's called not

8   just an act demonstrating an intent but that it is overt means

9   it has to be something that is affirmative and bright line.

10         THE COURT:  Of course an act need not be a physical

11   act.  It could be an oral act or oral statement to constitute

12   an act.

13         MR. KLAUS:  That's correct.  That's correct.

14         THE COURT:  Now, I think you also, in support of

15   your position that there is no abandonment, you've also made

16   the argument that the lyrics had been granted or transferred in

17   some way, whether it's licensed or assigned or whatever, to the

18   Summy Company back in '34 to '35.  And I just want to make sure

19   that this is still part of your argument because it does tend

20   to sort of bleed into the subsequent argument as to whether or

21   not any rights were even granted to the Summy Company before

22   the copyrights were -- were sought to be taken out on them, the

23   purported copyrights.

24      So I want to make sure that I understand whether you are

25   also arguing that that's further evidence of lack of

1    abandonment, something like how could you have abandoned

2    something, and then you would have transferred the rights to

3    somebody else.

4         Is that what you're saying?

5              MR. KLAUS:  Yes.

6              THE COURT:  Okay.  Then let me understand -- again,

7    I know you and I had a nice conversation about it last time,

8    and I went back and read the transcript.  And if we can just

9    spend a couple more minutes where you can try to make it as

10   clear to me as you can as to what you believe is the evidence

11   of the transfer of any of the rights to the lyrics of *Happy*

12   *Birthday to You* from the Hills to your predecessor.

13             MR. KLAUS:  Well, I don't have all of it at the tip

14   of -- at my fingertips, Your Honor, but what I've looked at in

15   coming to the hearing today is the, No. 1, the allegations that

16   are in the complaint, in the Hill v. --

17             THE COURT:  The amended complaint.

18             MR. KLAUS:  The amended complaint, which is 1942, I

19   believe.

20             THE COURT:  Yes.

21             MR. KLAUS:  One must remember at this point in time

22   the Summy Company had been publishing sheet music.  Sheet

23   music.  I would ask the Court, if you assume for the purposes

24   of what I'm saying, that the sheet music for E51990 was the

25   familiar lyrics to *Happy Birthday*, that the sheet music that we

1    have in the record is in fact the sheet music that Summy was

2    publishing in 1935 with those lyrics as well as the E51988 with

3    the unison song version.

4         That had to have been known to the Hill -- they admit that

5    they had given -- they had given permission for the work to be

6    done in sheet music form.  The complaint in the case was you

7    are going beyond the limited license that we gave you, and you

8    were licensing -- you're sublicensing sound and dialogue,

9    meaning the lyrics, rights to *Happy Birthday to You* to people

10   in the motion picture industry, and by that you were exceeding

11   the scope of your license.

12              THE COURT:  That -- I'm sorry.  Finish, and then

13   I've got two questions.

14              MR. KLAUS:  Yes.  And then, of course, we have the

15   settlement of the Hill Foundation against Summy case -- I think

16   that's Exhibit 126 in the summary judgment record -- which

17   specifically lists the *Happy Birthday to You* copyright and

18   again has -- and says that Summy is the publisher of these

19   works and the Hills -- the Hill Foundation is the one that has

20   the sisters' interest in them.

21        Again, I don't think there is -- to the point of I don't

22   think there is any evidence that I'm aware of where the Hill

23   sisters said to anyone, we didn't give Summy the right to

24   publish sheet music with the lyrics to *Happy Birthday to You*.

25   And indeed the copyright registration in 1935, at least prima

1  facie evidence -- and we think uncontradicted -- that they did

2  have that right, that right was granted to them.

3         THE COURT:  Well, in reading this amended

4  complaint --

5         MR. KLAUS:  Yes.

6         THE COURT:  -- the discussion about the grant of any

7  sheet music does not include *Happy Birthday*.  It repeatedly

8  talks about those songs in the *Song Stories* book and versions

9  of *Song Stories* book.  It talks about copyrights and the

10 renewal of those copyrights later by Jessica, but those are not

11 the copyrights of E51990 or E51988.

12      So, yes, it is true that there is some mention of

13 *Happy Birthday* in some of the paragraphs -- 10, 11, and 15 of

14 the first cause of action -- but when you look at everything,

15 the rights that they're talking about are limited to

16 circumstances involving the songbook, *Good Morning to You*, and

17 the copyrights to those and the renewal of copyrights, none of

18 which included *Happy Birthday* within it, the lyrics to *Happy*

19 *Birthday* within it.  The music, of course, it's the same music.

20        MR. KLAUS:  Those are -- the legal claim was brought

21 under the *Good Morning to You* or the *Song Stories for the*

22 *Kindergarten* songbook copyright, but paragraph 15 says -- this

23 is on page 665 and 666 -- at the time of granting the aforesaid

24 licenses to Summy under the original and renewal copyrights

25 above mentioned and described --

1          THE COURT:  Which does not include *Happy Birthday*,

2   because anything above mentioned and described -- copyrights,

3   licenses -- did not include *Happy Birthday* lyrics.

4       *Happy Birthday* lyrics happened, if anything, you're

5   asserting, happened later in -- well, skip that.

6       Go ahead, because I don't think any of these things that

7   you have read, as defined by this first amended complaint,

8   purports to include anything having to do with *Happy Birthday*

9   lyrics.

10          MR. KLAUS:  It says, though, if you continue on to

11  the next -- if you continue on to the next page, nor did such

12  licenses contemplate or contain any agreement Summy should have

13  the right to grant licenses or sublicenses to the producers of

14  dramatic performances in respect to the use of any said songs

15  therein and in -- said songs therein and, in particular, the

16  aforesaid song, *Happy Birthday to You* --

17          THE COURT:  Okay.

18          MR. KLAUS:  -- being included within said songs

19  within.  The only rights acquired at any time by Summy under

20  the express license and the oral renewals thereof being those

21  of publication and sale of said songs -- again, repeating the

22  words "said songs," which is up above -- or works in sheet

23  music form.

24          THE COURT:  All that is really saying -- I think

25  what you're trying to say is that somehow suggests that there

**UNITED STATES DISTRICT COURT**

was an agreement by the Hills to license the lyrics to Summy

but that somehow the license and the lyrics was limited to

sheet music but that Summy went and exceeded the scope of the

license by dealing with people uncontemplated back in the turn

of the last century, i.e., dramatic performances or movie

directors, movie producers.

But none of that says that the lyrics of *Happy Birthday*

had ever been licensed to Summy.

MR. KLAUS:  Well, except for the -- the paragraph

that I just read, it said, said songs including Happy Birth- --

including *Happy Birthday to You.*

THE COURT:  It says it didn't give you that right.

It's true they didn't give them any rights to that.  You could

have said, in dealing with these music -- with these movie

producers, we didn't give you the right to *You're a Hound Dog.*

We didn't give you the right to *Beat it.*  You could have said

all those things because it's true we didn't give you any

rights.

But the fact that we didn't give you the right to deal

with them, including for this song, does not logically follow

that we had given you the rights to the lyrics for *Happy

Birthday* for sheet music when everything that has been alleged

thus far refers to the sheet music of those publications,

copyrights, and renewals relating to the *Song Stories*

publications and related publications.

1          MR. KLAUS:  Well, two things.  One is the end, what

2     it says is the only rights acquired at any time by Summy under

3     the --

4          THE COURT:  What page?

5          MR. KLAUS:  This is on page 666, the end of

6     paragraph 15.

7          THE COURT:  Paragraph 15.  Okay.

8          MR. KLAUS:  So the only rights acquired at any time

9     by Summy under the original express license and the oral

10    renewals thereof, meaning there were rights that were acquired,

11    being those of publication and sale of said songs, the said

12    songs including *Happy Birthday to You* in sheet music form.

13         THE COURT:  You know, if you read this in isolation,

14    perhaps because it was this mention of *Happy Birthday*, but if

15    you really look at this entire first cause of action and

16    context and the way it's been set up, there is nothing that

17    suggests that there were any rights acquired by Summy under the

18    original express license because the original express license,

19    the oral renewals, had nothing to do with *Happy Birthday*.

20    Lyrics, I mean.

21         MR. KLAUS:  Okay.  Let me go to paragraph 24,

22    Your Honor.

23         THE COURT:  All right.  That now --

24         MR. KLAUS:  So just to -- taking your point about

25    not looking at these in isolation --

1          THE COURT:  Right.  This is the second cause of

2    action.

3          MR. KLAUS:  Correct.

4          THE COURT:  Now we're talking about a different

5    license that was granted much later.  This license is granted

6    in 1934 or '35 and a license granted at a time when hardly the

7    allegation could be that we never contemplated the successes or

8    the popularity of movies, I would think, in '34, '35.  There

9    should be some contemplation of that unlike at the turn of the

10   century.  But go ahead.  Make your point.

11         MR. KLAUS:  The point is that what she's saying --

12   this goes to -- this is our fundamental point, Your Honor.  In

13   1934 and 1935 Jessica Hill -- what this is saying is she said I

14   trust you.  I trust that -- I trust Summy because of what

15   they've done.  I think what she's also saying is I didn't know

16   they were out licensing to motion pictures at the time, but I

17   trust you.  And because I trust you, I'm going to give you --

18   I'm going to grant you a license.

19       And she says that she reposed faith, trust, confidence,

20   granted to this defendant a number of licenses for the

21   publication, sale, and performance of various piano

22   arrangements of the song variously entitled *Good Morning to All*

23   or *Happy Birthday to You*.

24         THE COURT:  Correct.

25         MR. KLAUS:  I know this takes us back to the

question about whether the piano arrangement consists not only
of the -- the putting the notes in particular order on the --
on the little lines on the page but that I think in context
what this is plainly saying is I've licensed you because you
can -- you can publish it either as *Good Morning to All* or as
*Happy Birthday to You.*

THE COURT:  The piano arrangement meaning the music
to it because, if it were the lyrics, it wouldn't make sense to
say it's variously called this or that because this is not the
same as that.

MR. KLAUS:  Your Honor, the question I would have,
Your Honor, is then why seven years after Summy had published
*Happy Birthday to You* with lyrics and if Jessica -- if
Jessica Hill is complaining about the fact that you are using
this in motion pictures and I don't -- I don't like you using
it in motion pictures and I only granted you a license with
respect to a particular musical arrangement that some other
people have called *Good Morning to All* and some other people
call *Happy Birthday to You*, why is there no complaint by
Jessica Hill or the Hill Foundation about Summy's publishing
the sheet music, including the lyrics?

THE COURT:  Maybe it's the same answer that why is
it that they would not have asserted their rights against these
other defendants when they were already suing them for the
music?  Maybe, you know, sort of turned around on your argument

1    because the argument you want to assert against them is the

2    same one that could be said about against you.

3            MR. KLAUS:  Except for the fact that -- except for

4    the fact that they -- the actual actions here are not only not

5    asserting a claim in it but settling the lawsuit with express

6    recognition of the E51990 copyright and transferring all of the

7    Hill Foundation, which was all of the Hill sisters' interest to

8    the song.

9            THE COURT:  Isn't that also circular because the

10   1944 agreement transfers whatever they had in E51990 and -988,

11   whatever it is they had.  But if they never had ever

12   transferred any rights, either because they felt that they

13   didn't have any more rights because they had given to the

14   public or whatever reason they never transferred the rights,

15   then those -- the copyrights of 1935, whatever they are,

16   wouldn't have included it either.

17       So it's really basically circular.  I'm giving you what I

18   have, and the question is what did you have?  If I didn't give

19   it to you before and I give you something that's in the

20   copyright and the copyright didn't include what I had given

21   you, then you still don't have it.

22           MR. KLAUS:  1944, when there have been these

23   lawsuits when the value of the work is clear and when, as the

24   agreement expressly provides that these -- that the remaining

25   Hill sisters were receiving, as they continued to do and as

their legatee, the Association For Early Childhood Development, has continued to receive a third of the royalties for this song, that, Your Honor, seems to be inconsistent with the idea that going through all of these steps, taking -- settling the lawsuit, continuing to take royalties, continuing to take monies from ASCAP for the exploitation of this particular work, that one would say that these sisters actually thought that somehow long ago they had dedicated this work to the public or it had slipped from their hands into the public domain.

If you look at the combination of the evidence, Your Honor, here -- again, I don't -- this is not a question of do you have to say that they gave up their copyright. This is not the overt act requirement for abandonment. This is, in a sense, protecting the interest of the two people who we know -- effectively, Mildred's heir Jessica and Patty, who wrote the song -- who were the authors of the song.

It's a matter of protecting -- it's a matter of saying, when you look at the totality of what they did and how they behaved, that you -- that you say I think that there's clear evidence that, whatever they said in one section of the complaint or not, they had granted a license for the publication in sheet music form. That's what the copyright was registered for in 1935. That's what they had -- that's what they had -- that's what they had continued to exploit.

And I'm not aware of -- other than these statements that

1    are -- we've got the hearsay issues with, anything that says

2    that Jessica and Patty Hill said, at some point in time, we

3    didn't care about the *Happy Birthday to You* copyright, we

4    didn't care what Summy was doing in terms of publishing the

5    lyrics because it had somehow -- it had somehow slipped away, I

6    think all the evidence is to the contrary, Your Honor.

7            THE COURT:  Let me wrap up with you, Mr. Klaus, by

8    asking you the same question I asked Mr. Rifkin.  And, that is,

9    from a procedural standpoint, do you see -- if I were to decide

10   that I think there are triable issues of fact on any variety of

11   issues presented, starting from authorship to abandonment to

12   transfer to whatever, if I find that there is a triable issue

13   of fact inasmuch as both sides have consented to a court trial,

14   is there any need from a form standpoint to say okay, that

15   motion is denied; now let's come back and put everything -- the

16   same thing into the record?

17           Because this is one of those cases where the record is --

18   just as soon as I say it's unlikely to be expanded, you folks

19   expanded the record; so maybe I should be more careful.  But

20   it's largely unlikely to be expanded, at least not expanded by

21   any further explication by the principal players in this case,

22   shall we say.

23           Would it, in your view, be appropriate for the Court then

24   to make the factual findings as part of the same order or to

25   bifurcate it for purposes of some other opportunity for you to

1    come in and resubmit the same evidence in essence?

2            MR. KLAUS:  Much as I, Your Honor, would not --

3    would like to be mindful of your time and all of our time with

4    respect to this, I think that, given the nature of -- given the

5    nature of the summary judgment process and the fact that we've

6    got a certain set of papers, that if there is a -- if there is

7    a triable fact, if there's a fact that has to be tried, that in

8    fairness to both parties, we should have the ability to -- just

9    as in -- just as in any other trial with a jury trial, you're

10   not in a sense limited to the arguments that you've made or the

11   way you connect the dots on the evidence from summary judgment

12   through trial.  I think the same thing would apply here.

13           THE COURT:  But you don't see, even if we were to

14   have that subsequent proceeding -- and I can understand your

15   point -- you don't foresee any need to call any witnesses.  I

16   don't know what witnesses you would be calling.

17           MR. KLAUS:  We have discussed at least on our

18   side -- we have not discussed yet with -- I assume, if we get

19   to that point, we'll talk to Mr. Rifkin and his colleagues

20   about what exactly this trial would look like.  It would be --

21   I don't think there would be any -- I don't foresee any

22   percipient witnesses coming to testify, shall we say.

23           THE COURT:  You don't want to go out on a limb now,

24   Mr. Klaus.

25           MR. KLAUS:  Okay.

```
 1              THE COURT:  Okay.  Thank you.

 2              MR. KLAUS:  Thank you, Your Honor.

 3              THE COURT:  Mr. Rifkin, why don't I just have you

 4   start by commenting upon the second-to-the-last thing that

 5   Mr. Klaus said, not the procedural aspect but his discussion

 6   with respect to what he believes to be another piece of

 7   evidence against abandonment, and that is his arguments with

 8   respect to what Exhibit 50 and Exhibit 126 would tend to show,

 9   that there had been rights to the lyrics of *Good Morning* -- I'm

10   sorry -- *Happy Birthday to You* having been granted to Summy.

11              MR. RIFKIN:  I'll try to keep my comments brief

12   because I think largely the Court has already heard an awful

13   lot about this.  And I think it's helpful to have Exhibit 50

14   and Exhibit 51 side by side because one is the amended

15   complaint by the Hill Foundation, and the other one is Summy's,

16   the defendant's predecessor's answer.  And I think, if we look

17   at them together, it is clear exactly what was meant by the

18   plaintiffs' allegations and what the defendant had to say about

19   them.

20        First, Your Honor asked questions of Mr. Klaus about the

21   first claim in the amended complaint and how it was related to

22   the original publications and the original copyrights, the 1893

23   works, the 1896 work, and the 1899 work, and I would

24   essentially say exactly that.

25        Mr. Klaus referred to some references to the said songs.
```

He mentioned that twice.  It appears in two different

paragraphs.  It appears in paragraph 15 on page 665 and 666.

It appears twice.

And Your Honor, I believe, was correct to note that

paragraph 15 is part of the first cause of action and the said

songs that are referred to in paragraph 15 by the plaintiff

Hill Foundation is a reference to the songs that were included

in the original works -- the 1893, 1899, and 1896 works -- that

are covered by the copyrights that are identified in

paragraph 12, which begins on page 664 and carries over to

page 665.

There is no dispute that those works included only the

lyrics to *Good Morning to All*, and I believe Your Honor

understands that argument.  I don't want to belabor it.

Mr. Klaus then asked the Court to turn to paragraph 24,

which is part of the second cause of action.  And the second

cause of action concerns those unidentified assignments from

Jessica in 1934 and 1935 which unfortunately are not in the

record.  And in these two pieces of evidence are essentially

the best evidence of what those assignments covered and didn't

cover.

And I would make just two brief comments, but I'm happy to

answer any other questions the Court has.

First, the reference to the various piano arrangements of

the song, singular -- the various piano arrangements of the

1    song variously entitled *Good Morning to All* or *Happy Birthday*

2    *to You* could only mean the musical composition because, as

3    Your Honor knows, the song was the musical composition that was

4    common to that particular work, whether it was called *Good*

5    *Morning to All* or *Happy Birthday to You*.

6        But let us not read past the allegation that the transfer

7    was of various piano arrangements.  Now, I don't know any

8    context in which the phrase "various piano arrangements" can

9    possibly refer to human lyrics.  I just don't understand that.

10        But even if we were going to say, well, there's some doubt

11    about whether they were talking about one song when they used

12    the word "song" in the singular and whether they only meant

13    *Good Morning to All* when they said "variously entitled" *Good*

14    *Morning to You* or -- or *Happy Birthday to You*, Summy answers

15    that for us.  And so let's look at Exhibit 51, and this time I

16    think what we need to look at is their answer to paragraph 24,

17    which is on page 684 of the reproduced record.

18        There, in response to the Hill Foundation's allegation

19    that various piano arrangements of the song variously entitled

20    *Good Morning to All* and *Happy Birthday to You* were licensed,

21    Summy says as follows:

22            The said Jessica Hill sold, assigned, and

23            transferred to this defendant various piano

24            arrangements of the said musical composition,

25            quotation mark, *Good Morning to All*, close

1              quotation mark, and all world rights including

2              publishing, public performance, and mechanical

3              reproduction rights of and to copyright,

4              extension of copyright, so on and so forth.

5          The only song title that is mentioned in the answer

6    filed by Summy was *Good Morning to All*.  It removes whatever

7    conceivable lingering doubt the defendants might try to

8    introduce about what was meant by the Hill Foundation in

9    paragraph 24 of the amended complaint, and I think we don't

10   need to belabor it anymore.  It's just the musical composition,

11   not the words.  It's that simple.

12       I did want to comment on a couple of points that Mr. Klaus

13   made in the beginning of his argument.  One had to do with his

14   citation to Shapiro, Bernstein.  And he says that that case

15   discusses the difference -- it somehow supports his argument

16   that *Happy Birthday* was a derivative work even if the words

17   were later written by Patty.  That's just not so.

18       What that case talks about is the difference between a

19   joint work, which *Good Morning to All* unquestionably was, and a

20   composite work, which *Good Morning to All* unquestionably was

21   not.  A composite work is, for example, the publication of

22   *Song Stories for the Kindergarten* in 1893.  A composite work

23   is, for example, the publication of *Everyday Song Book* in 1922.

24   It includes works by multiple authors that are assembled by a

25   compiler.

1          The case Shapiro, Bernstein simply did not discuss

2    anything about joint works versus derivative works.  And,

3    Your Honor, if Mr. Klaus's argument is that no one can

4    subsequently add to an original joint work by the inclusion of

5    new material without that subsequent work becoming a joint work

6    with the original authors, there's simply no authority that I'm

7    aware of, certainly none that's been cited to the Court to

8    support that proposition.  *Happy Birthday* was a derivative

9    work, not a composite work, and not a joint work.  And that was

10   our point.

11         The only other point I wanted to make from Mr. Klaus's

12   earlier argument, other than to answer any questions the Court

13   has, is to turn back to page 664 from Exhibit 50.  Again, and I

14   don't mean to jump around, but Mr. -- Mr. Klaus had --

15              THE COURT:  I'm sorry.  Six sixty --

16              MR. RIFKIN:  Page 664 of Exhibit 50.

17              THE COURT:  Okay.

18              MR. RIFKIN:  Mr. Klaus had referred to this, and I

19   looked at it, and if you recall during my initial comments, I

20   talked about how Summy had identified *Happy Birthday to You* as

21   a later composition.  And lo and behold, when I was reading now

22   not Summy's answer, Exhibit 51, which I referred to before, but

23   this time Exhibit 50, the Hill sisters' amended complaint, and

24   they too describe *Happy Birthday* as a later composition.

25         In paragraph 10 they say one of the songs contained in the

1  works mentioned above -- and, again, those works are

2  undoubtedly *Song Stories for the Kindergarten* and *Song Stories*

3  *for the Sunday school*, the 1890s compositions.  One of the

4  songs contained in the works mentioned and described in

5  paragraphs 4 to 7, inclusive, is one entitled *Good Morning to*

6  *All*, which, with words written by the said Patty S. Hill was

7  later entitled *Happy Birthday to You*.

8      Again, I think this answers the Court's question about the

9  temporal connection between the writing of *Good Morning to All*

10 and the subsequent writing of *Happy Birthday to You* -- this

11 time not in the words just of Summy in his answer, but now in

12 the words of Patty and Jessica in their amended complaint.

13     THE COURT:  But the very next paragraph says the

14 said song *Happy Birthday to You*, written and composed by the

15 said Patty S. Hill and Mildred J. Hill.

16     MR. RIFKIN:  Right.  Because the song consists not

17 just of the lyrics but also of the melody.  And there's no

18 doubt, no doubt at all, that Mildred Hill wrote the melody, and

19 there's no doubt at all that Patty wrote the words.  So I think

20 that's what paragraph 11 means.  It's clear to me that, if you

21 read paragraph 10 of this complaint, that what the Hill

22 Foundation said is *Good Morning to All* was written by Patty and

23 Mildred.  Patty then later wrote *Happy Birthday to You*.  It

24 just seems in -- unavoidable to reach that conclusion.

25     And, again, in the context of all the other evidence that

1    we've discussed today -- and I don't want to belabor all those

2    points -- lastly, Your Honor, I would ask if you would like to

3    hear anything on the admissibility of the article, the Time

4    Magazine article.

5              THE COURT:  Yes.  Go ahead.

6              MR. RIFKIN:  I think, first, we've satisfied the

7    authenticity requirement, and we've satisfied the ancient

8    document requirement of the hearsay rule at least for the

9    article itself.  And then the question becomes, well, what

10   about the statement that is attributed to Patty -- although, I

11   agree, not with quotation marks around it.

12        But just like a witness sometimes in Court testifies this

13   is what she said to me, without putting air quotes around

14   hearsay, the article does the same thing.  And it is clearly a

15   statement against interest for the reasons that I think the

16   Court asked Mr. Klaus about.  But I thought I heard Mr. Klaus

17   say that it was not supported by any corroborating

18   circumstances that indicate its trustworthiness, and that is a

19   part of rule 804(b)(3)(B).

20        804 are exceptions to the hearsay rule when the declarant

21   is unavailable.  804(b)(3) generally is statement against

22   interests.  804(b)(3)(A) says that statements against interest

23   are admissible if they are the kind that a reasonable person

24   would have made only if the person believed it to be true

25   because, when made, it was so contrary to the declarant's

```
 1   pecuniary or proprietary interests.

 2       804 (B) adds a second qualification, when that evidence is

 3   offered in a criminal case as one that tends to expose the

 4   declarant to criminal liability, that it be supported by

 5   corroborating circumstances that indicate its trustworthiness.

 6       So that argument that we need to provide corroborating

 7   circumstances clearly indicating the trustworthiness only would

 8   arise if this were a criminal case and only if there was a

 9   question of Patty Hill's criminal liability.  It simply doesn't

10   apply.

11           THE COURT:  Let me ask you if you agree with

12   Mr. Klaus's statement, albeit somewhat in passing, that

13   dialogue rights, as referred at least at paragraph 18 on

14   page 666 of the first amended complaint, is synonymous with

15   lyrics.

16           MR. RIFKIN:  No, I don't.  I don't agree.

17           THE COURT:  And what's your view on what is the

18   meaning of dialogue rights?

19           MR. RIFKIN:  I think dialogue is exactly what it

20   says.  It's spoken dialogue.  But either way -- and if you give

21   me just a moment to get to that page -- okay.  Either way,

22   paragraph 8 in exhibit -- I'm sorry.  I think -- is that

23   paragraph 9?

24           THE COURT:  I'm sorry?

25           MR. RIFKIN:  663, paragraph 8.  I'm sorry.  Either
```

1    way, that's within the context of Count 1 in the complaint

2    which, as Your Honor has noted, has to do with the original

3    assignments, original assignments being *Song Stories for the*

4    *Kindergarten* under the 1893 and so forth copyrights.  It just

5    has nothing to do with *Happy Birthday to You*.

6              THE COURT:  All right.  Thank you.

7              MR. RIFKIN:  Thank you, Your Honor.

8              THE COURT:  Mr. Klaus, I just want, very limited, to

9    ask you about these dialogue rights.  I didn't have a chance to

10   talk to you when you mentioned it.  Now I remember.

11       What evidence do you have to suggest that dialogue rights,

12   as used back then in paragraph 18, is synonymous with lyrics?

13             MR. KLAUS:  I guess one is I don't know that we have

14   anything that is in the current summary judgment record that

15   says what the industry custom and usage would be.  I don't know

16   what else it could be other than "sound" meaning -- this would

17   be the equivalent, I think, Your Honor, of what we would today

18   call a sync license that -- synchronizing the -- synchronizing

19   the recording with the moving pictures.

20       But I think what -- I think it's clear from the complaint,

21   and the complaint is -- and the allegations of the complaint

22   are you went out and you allowed people to make movies where

23   they were singing *Happy Birthday to You*.  That's -- that's the

24   dispute between the Hill Foundation.

25       And it seems to me that, if what you're talking about

```
 1   is -- the allegation is they granted sound and dialogue rights,
 2   I believe the answer in paragraph 51 refers to yes, we did.
 3   They said we held ourselves out as saying we were granting
 4   sound and dialogue rights to motion picture producers.
 5           THE COURT:  Aren't dialogue rights really referring
 6   to a genre of pictures just coming out, which were the talkies?
 7   Those are the dialogue rights, that you have a right to use it
 8   in this kind of a film or a film that's a talkie?  Isn't that
 9   the context of what dialogue rights means; it has nothing to do
10   with lyrics?
11           MR. KLAUS:  If the distinction is with silent, then
12   I think the word "sound" would be sufficient.  If the contrast
13   is with silent, all you would need is sound rights, but if
14   it's --
15           THE COURT:  Certainly we can call it something else,
16   but a lot of times different industries have their own little
17   way of saying things.  I'm sure the legal profession has been
18   accused of that more than one time.  But I seem to have run
19   across this case around the same time -- about 1940, 1942 --
20   where the dialogue rights discussion was in the context of
21   whether or not it was properly licensed for that type of movie
22   where there is dialogue, not that it relates to any kind of
23   lyrics.
24           MR. KLAUS:  I confess, Your Honor, I don't know the
25   answer.  I'm happy to look at it.  If you'd like us to submit
```

1    something, I'm happy to do that.

2            THE COURT:  Okay.

3            MR. KLAUS:  I just don't know off the top of my

4    head.

5            THE COURT:  Okay.  All right.  Very good.

6        Thank you very much, Counsel.  I appreciate your helping

7    to enlighten me on this, and just like before, I'll think some

8    more about this.

9            MR. KLAUS:  Your Honor, and I'll say, if -- I know

10   that Mr. Rifkin is going to file a reply with respect to their

11   ex parte.  I don't know if there will be any new -- if you

12   would like -- if there are questions that you have about the

13   legal standards or additional issues that may be raised by the

14   submission, we obviously would like to have a further

15   opportunity to reply to them if they're -- particularly if

16   they're going to be dispositive, because we put together our

17   ex parte opposition in relatively short order.

18           THE COURT:  I'll take a look at it.

19           MR. KLAUS:  Thank you, Your Honor.

20           MR. RIFKIN:  Thank you very much, Your Honor.

21           THE CLERK:  This court now stands in recess.

22               (Matter adjourned at 11:25 A.M.)

23

24

25

1          CERTIFICATE OF OFFICIAL REPORTER

2

3

4

5          I, KHOWOONSUN CHONG, FEDERAL OFFICIAL REALTIME

6   COURT REPORTER, IN AND FOR THE UNITED STATES DISTRICT COURT FOR

7   THE CENTRAL DISTRICT OF CALIFORNIA, DO HEREBY CERTIFY THAT

8   PURSUANT TO SECTION 753, TITLE 28, UNITED STATES CODE THAT THE

9   FOREGOING IS A TRUE AND CORRECT TRANSCRIPT OF THE

10  STENOGRAPHICALLY REPORTED PROCEEDINGS HELD IN THE

11  ABOVE-ENTITLED MATTER AND THAT THE TRANSCRIPT PAGE FORMAT IS IN

12  CONFORMANCE WITH THE REGULATIONS OF THE JUDICIAL CONFERENCE OF

13  THE UNITED STATES.

14

15          DATED THIS 2ND DAY OF AUGUST 2015.

16

17

18          /S/ KHOWOONSUN CHONG

19          KHOWOONSUN CHONG, CSR NO. 12907, CRR
            FEDERAL OFFICIAL COURT REPORTER

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

**'34** [3] - 35:1; 51:18; 58:8

**'35** [5] - 35:1; 37:24; 51:18; 58:6, 8

**1** [3] - 27:22; 52:15; 72:1

**10** [4] - 35:4; 54:13; 68:25; 69:21

**100** [1] - 42:4

**1006** [6] - 18:1, 3-4, 18; 19:5, 10

**1007** [8] - 10:1, 12; 11:1; 13:18; 16:7; 18:3; 20:18; 38:19

**1008** [1] - 20:6

**1009** [1] - 20:4

**1024** [2] - 26:7; 27:24

**1031** [2] - 40:1

**1032** [2] - 40:2, 6

**11** [2] - 54:13; 69:20

**11:25** [1] - 74:22

**12** [1] - 65:10

**126** [2] - 53:16; 64:8

**13** [1] - 6:19

**14** [1] - 40:3

**15** [9] - 35:4; 40:3; 54:13, 22; 57:6; 65:2, 5

**161** [1] - 39:3

**18** [2] - 71:13; 72:12

**1889** [1] - 18:8

**1890S** [1] - 69:3

**1893** [13] - 10:18; 18:8; 19:15, 22; 21:1; 28:6; 35:11, 13; 40:4; 64:22; 65:8; 67:22; 72:4

**1896** [2] - 64:23; 65:8

**1899** [2] - 64:23; 65:8

**1921** [3] - 33:10; 35:11, 14

**1922** [8] - 5:22, 25; 7:5; 8:11; 24:9; 33:1; 38:3; 67:23

**1927** [4] - 5:22; 6:16; 7:20; 8:11

**1934** [8] - 29:5; 35:19; 37:23; 45:10, 14; 58:6, 13; 65:18

**1935** [11] - 9:23; 32:6; 35:20; 37:13; 53:2, 25; 58:13; 60:15; 61:23; 65:18

**1940** [1] - 73:19

**1942** [2] - 52:18; 73:19

**1944** [2] - 60:10, 22

**1947** [1] - 39:3

**1949** [1] - 35:14

**2013** [1] - 6:17

**23RD** [1] - 24:5

**24** [4] - 57:21; 65:15; 66:16; 67:9

**4** [1] - 69:5

**409** [1] - 39:3

**410** [1] - 39:3

**50** [7] - 34:10; 40:21; 64:8, 13; 68:13, 16, 23

**505** [1] - 42:2

**51** [8] - 15:9, 15; 34:10; 64:14; 66:15; 68:22; 73:2

**6** [3] - 15:19, 22

**663** [1] - 71:25

**664** [4] - 40:25; 65:10; 68:13, 16

**665** [3] - 54:23; 65:2, 11

**666** [4] - 54:23; 57:5; 65:2; 71:14

**680** [2] - 15:11, 14

**681** [2] - 15:11, 14

**684** [1] - 66:17

**7** [1] - 69:5

**70** [2] - 10:19; 19:17

**8** [2] - 71:22, 25

**804** [2] - 70:20; 71:2

**804(B)(3** [1] - 70:21

**804(B)(3)(A** [1] - 70:22

**804(B)(3)(B)** [1] - 70:19

**87** [3] - 10:10; 26:7

**9** [1] - 71:23

**90** [2] - 42:2; 44:22

**988** [1] - 60:10

**99** [1] - 42:4

**A.M** [1] - 74:22

**ABANDON** [11] - 30:12; 31:7, 12; 32:24; 42:12, 15-17; 43:5; 49:14, 17

**ABANDONED** [4] - 25:9, 15; 32:2; 52:1

**ABANDONING** [4] - 26:12; 28:18; 43:9; 44:19

**ABANDONMENT** [26] - 5:7; 9:1; 24:20, 23; 25:1, 12; 27:19; 28:23-25; 29:1; 32:8; 36:6; 41:10; 43:9; 44:12; 48:5, 13; 49:4; 50:19; 51:7, 15; 52:1; 61:13; 62:11; 64:7

**ABILITIES** [1] - 13:6

**ABILITY** [2] - 19:2; 63:8

**ABLE** [3] - 14:11; 47:3, 22

**ABSENCE** [1] - 37:1

**ACCEPT** [2] - 16:5; 49:5

**ACCESS** [1] - 6:18

**ACCUSED** [1] - 73:18

**ACQUIESCENCE** [1] - 41:20

**ACQUIRE** [1] - 35:24

**ACQUIRED** [7] - 37:22; 55:19; 57:2, 8, 10, 17

**ACT** [35] - 25:1, 10, 16; 28:24; 30:12; 31:6, 12; 36:6; 37:18; 41:17, 20-21; 42:18, 21; 43:1, 15; 44:5; 49:13, 16; 50:2-4, 8, 11, 19; 51:7, 10-12; 61:13

**ACTION** [14] - 34:14, 16, 22; 35:3; 36:21; 48:5; 49:12; 54:14; 57:15; 58:2; 65:5,

16

**ACTIONS** [1] - 60:4

**ACTS** [12] - 25:25; 31:14; 32:3, 8, 24; 41:11, 20; 42:19; 43:1; 44:1; 49:16

**ACTUAL** [3] - 8:7; 13:13; 60:4

**ADAM** [1] - 5:4

**ADAPT** [1] - 19:2

**ADAPTATIONS** [1] - 14:6

**ADD** [2] - 16:23; 68:4

**ADDED** [1] - 17:18

**ADDITIONAL** [2] - 41:21; 74:13

**ADDRESS** [2] - 24:8; 38:16

**ADDRESSING** [1] - 24:20

**ADDS** [1] - 71:2

**ADJOURNED** [1] - 74:22

**ADMISSIBILITY** [2] - 46:22; 70:3

**ADMISSIBLE** [3] - 46:21; 49:1; 70:23

**ADMISSION** [6] - 16:1; 21:4; 46:15; 47:11

**ADMIT** [1] - 53:4

**ADMITTED** [2] - 29:18, 21

**ADMITTING** [1] - 47:11

**AFFIRMATIVELY** [1] - 47:15

**AFORESAID** [2] - 54:23; 55:16

**AFTERTHOUGHT** [1] - 32:13

**AGO** [4] - 29:8; 31:25; 47:20; 61:8

**AGREE** [3] - 70:11; 71:11, 16

**AGREEING** [1] - 49:4

**AGREEMENT** [5] - 16:20; 55:12; 56:1; 60:10, 24

**AGREEMENTS** [1] - 34:18

**AHA** [1] - 50:1

**AHEAD** [7] - 5:20; 8:21; 13:15; 16:23; 55:6; 58:10; 70:5

**AIR** [1] - 70:13

**ALBEIT** [2] - 49:9; 71:12

**ALLEGATION** [5] - 40:24; 58:7; 66:6, 18; 73:1

**ALLEGATIONS** [5] - 33:10; 34:5; 52:15; 64:18; 72:21

**ALLEGED** [1] - 56:22

**ALLEGEDLY** [1] - 34:25

**ALLEGING** [1] - 29:24

**ALLOWED** [1] - 72:22

**ALONE** [2] - 32:1; 37:5

**ALTERED** [1] - 13:25

**ALTERNATE** [9] - 12:17; 14:22; 16:10; 19:22; 20:1; 21:10; 26:24

**AMENDED** [16] - 15:9; 34:4, 11, 13; 37:20; 40:22;

52:17; 54:3; 55:7; 64:14, 21; 67:9; 68:23; 69:12; 71:14

**ANCIENT** [3] - 45:24; 46:1; 70:7

**ANSWER** [31] - 11:4, 18; 14:7; 15:9, 11, 17, 23; 16:12; 18:19; 19:4, 12, 21; 20:12; 22:6; 24:22; 26:21; 32:10; 33:2; 35:24; 43:7; 59:22; 64:16; 65:23; 66:16; 67:5; 68:12, 22; 69:11; 73:2, 25

**ANSWERED** [1] - 23:11

**ANSWERS** [4] - 22:2; 66:14; 69:8

**APART** [2] - 33:1; 38:3

**APPEAR** [3] - 19:19, 22; 48:18

**APPEARED** [2] - 20:25; 33:17

**APPLICABILITY** [1] - 50:17

**APPLICATION** [4] - 5:20; 6:3, 20; 24:8

**APPLICATIONS** [2] - 5:10, 12

**APPLY** [3] - 50:24; 63:12; 71:10

**APPLYING** [1] - 13:7

**APPRECIATE** [1] - 74:6

**APPROPRIATE** [4] - 17:10; 23:4; 38:12; 62:23

**AREAS** [3] - 51:1, 5

**ARGUED** [1] - 38:17

**ARGUING** [1] - 51:25

**ARGUMENT** [22] - 7:17; 8:19, 23; 23:3, 25; 25:7, 21; 42:18; 49:5; 51:16, 19-20; 59:25; 60:1; 65:14; 67:13, 15; 68:3, 12; 71:6

**ARGUMENT'S** [1] - 44:5

**ARGUMENTS** [5] - 6:4, 25; 63:10; 64:7

**ARISE** [1] - 71:8

**ARRANGEMENT** [4] - 34:23; 59:1, 7, 17

**ARRANGEMENTS** [12] - 26:24; 34:9; 35:2, 23; 36:2; 58:22; 65:24; 66:7, 19, 24

**ARTICLE** [13] - 29:12; 31:9; 38:9; 44:22; 45:10, 20; 46:9; 70:3, 9, 14

**ARTICLES** [2] - 31:8; 39:10

**ASCAP** [1] - 61:6

**ASIDE** [1] - 7:1

**ASPECT** [1] - 64:5

**ASPECTS** [2] - 38:20; 49:9

**ASSEMBLED** [1] - 67:24

**ASSERT** [10] - 33:14; 34:2; 36:15, 21; 47:22; 49:7;

50:23; 60:1

**ASSERTED** [2] - 37:14; 59:23

**ASSERTING** [2] - 55:5; 60:5

**ASSERTION** [3] - 37:1; 46:24; 49:8

**ASSIGNED** [3] - 35:22; 51:17; 66:22

**ASSIGNING** [1] - 47:8

**ASSIGNMENTS** [6] - 35:20; 37:24; 65:17, 20; 72:3

**ASSOCIATED** [1] - 15:5

**ASSOCIATION** [1] - 61:1

**ASSUME** [4] - 29:19; 46:9; 52:23; 63:18

**ASSUMING** [2] - 48:2, 25

**ATTACHED** [1] - 6:7

**ATTRIBUTABLE** [2] - 46:6; 50:16

**ATTRIBUTED** [6] - 14:21; 16:11, 19; 45:16; 48:23; 70:10

**ATTRIBUTION** [1] - 17:22

**AUGUST** [1] - 45:10

**AUTHENTICITY** [3] - 44:25; 45:3; 70:7

**AUTHOR** [5] - 12:21; 36:12; 41:15, 19, 22

**AUTHOR'S** [1] - 42:9

**AUTHORED** [1] - 12:24

**AUTHORITY** [8] - 25:19; 27:11; 41:13, 16, 24; 43:3, 6; 68:6

**AUTHORIZATION** [1] - 7:19

**AUTHORIZED** [4] - 7:4; 8:1, 5

**AUTHORS** [9] - 12:25; 16:21; 17:3; 18:17; 41:18; 43:5; 61:16; 67:24; 68:6

**AUTHORSHIP** [13] - 9:10, 18; 12:23; 32:23; 38:16; 41:4, 7, 10, 12, 19; 42:24; 62:11

**AWARE** [8] - 24:12; 25:19; 42:19; 44:6; 48:8; 53:22; 61:25; 68:7

**AWFUL** [1] - 64:12

**B'S** [1] - 43:19

**BALANCE** [1] - 51:4

**BARELY** [1] - 49:12

**BASED** [3] - 9:12; 23:13; 24:4

**BASIS** [2] - 5:20; 44:24

**BEAT** [1] - 56:16

**BECAME** [8] - 15:25; 16:2, 12; 17:13, 17; 21:5, 18; 23:15

**BECOME** [4] - 29:9; 32:1; 34:1; 47:21

**BECOMES** [5] - 15:4; 22:23;

24:9; 50:11; 70:9

**BECOMING** [1] - 68:5

**BEGAN** [2] - 18:22; 19:12

**BEGIN** [1] - 11:19

**BEGINNING** [1] - 67:13

**BEGINS** [1] - 65:10

**BEHALF** [4] - 5:1; 33:4; 35:21; 40:25

**BEHAVED** [1] - 61:19

**BEHOLD** [1] - 68:21

**BELABOR** [3] - 65:14; 67:10; 70:1

**BELIEVES** [2] - 28:6; 64:6

**BENEFIT** [2] - 9:5; 30:16

**BERNSTEIN** [4] - 39:2, 16; 67:14; 68:1

**BEST** [3] - 7:5; 13:5; 65:20

**BETSY** [1] - 10:5

**BETTER** [1] - 47:5

**BETWEEN** [9] - 9:13, 18; 16:20; 18:7; 27:10; 42:24; 67:18; 69:9; 72:24

**BEYOND** [4] - 13:24; 48:5; 53:7

**BIFURCATE** [1] - 62:25

**BIRTH** [1] - 56:10

**BIRTHDAY** [94] - 9:9, 17; 10:15; 11:2, 9, 23; 12:11; 15:25; 16:2, 12, 16; 17:17, 24; 21:5, 14; 23:10, 15; 26:14; 28:4, 8, 16, 19; 29:24; 30:18, 24; 31:16, 21-22; 32:9, 12-13, 15, 22; 33:13, 16, 19-21, 23; 35:3, 5; 36:9, 14, 16; 37:2, 12, 16-17, 25; 38:1, 6; 40:5; 41:1; 52:12, 25; 53:9, 17, 24; 54:7, 13, 18-19; 55:1, 3-4, 8, 16; 56:7, 11, 22; 57:12, 14, 19; 58:23; 59:6, 13, 19; 62:3; 64:10; 66:1, 5, 14, 20; 67:16; 68:8, 20, 24; 69:7, 10, 14, 23; 72:5, 23

**BIRTHDAY** [1] - 12:13

**BIT** [1] - 10:24

**BLACK** [1] - 28:11

**BLACK-AND-WHITE** [1] - 28:11

**BLEED** [1] - 51:20

**BLIGE** [1] - 42:1

**BOOK** [9] - 8:6; 10:17; 18:15; 20:6; 26:14; 27:1; 54:8

**BOOK** [2] - 6:17; 67:23

**BOTTOM** [2] - 11:8; 19:12

**BOUGHT** [2] - 36:1

**BOUND** [1] - 18:7

**BRIEF** [4] - 25:22; 28:22; 64:11; 65:22

**BRIEFING** [2] - 5:7; 8:22

**BRIEFLY** [2] - 5:9; 11:13

**BRIEFS** [1] - 6:25

**BRIGHT** [2] - 51:6, 9

**BRITISH** [1] - 5:16

**BROUGHT** [5] - 15:10; 30:15; 36:16; 37:11; 54:20

**CABLE** [1] - 8:6

**CALENDAR** [2] - 5:6; 8:23

**CANNOT** [2] - 41:15; 42:6

**CARE** [4] - 5:9; 8:25; 62:3

**CAREFUL** [1] - 62:19

**CARRIES** [1] - 65:10

**CASE** [33] - 6:24; 17:2, 5; 22:20; 25:11; 33:8; 34:5; 35:9, 16-18; 39:1, 13, 16, 21; 42:1; 43:8; 44:11; 46:14; 50:14; 53:6, 15; 62:21; 67:14, 18; 68:1; 71:3, 8; 73:19

**CASES** [2] - 25:4, 14, 18; 49:24; 50:5; 62:17

**CAUSES** [1] - 34:14

**CELEBRATION** [2] - 12:13

**CENTURIES** [1] - 10:22

**CENTURY** [3] - 34:20; 56:5; 58:10

**CERTAIN** [4] - 5:21; 43:23; 44:4; 63:6

**CERTAINLY** [7] - 20:13; 28:2; 32:3; 38:9; 68:7; 73:15

**CERTAINTY** [1] - 33:18

**CHALLENGE** [1] - 28:3

**CHANCE** [2] - 38:16; 72:9

**CHANGE** [1] - 23:8

**CHEER** [3] - 29:25; 30:11, 19

**CHICAGO** [1] - 19:15

**CHILD** [1] - 17:11

**CHILDHOOD** [1] - 61:1

**CHILDREN** [10] - 13:6, 21, 24; 14:3, 14; 18:11; 19:1; 20:12; 40:12, 15

**CHILDREN'S** [1] - 19:2

**CHRISTMAS** [3] - 11:7; 12:10; 14:18

**CIRCUIT** [4] - 39:2, 4; 42:5; 49:20

**CIRCULAR** [2] - 60:9, 17

**CIRCUMSTANCE** [1] - 41:17

**CIRCUMSTANCES** [8] - 6:16; 7:23; 50:9, 24; 54:16; 70:18; 71:5, 7

**CITATION** [1] - 67:14

**CITE** [5] - 26:8; 27:9; 39:13; 41:13; 50:15

**CITED** [7] - 25:11, 18; 42:1; 44:12, 18; 46:13; 68:7

**CITING** [1] - 46:13

**CLAIM** [10] - 29:6; 30:20, 24; 31:1; 32:2; 33:7; 38:4;

54:20; 60:5; 64:21

**CLAIMED** [1] - 38:1

**CLAIMS** [1] - 26:24

**CLASS** [1] - 12:6

**CLASSROOM** [3] - 16:16; 21:9

**CLEAR** [25] - 7:13, 15; 12:5, 16; 14:6; 17:7; 19:4; 26:16; 27:4; 31:15; 34:4; 35:20, 22, 24; 44:11; 47:22; 49:21; 51:6; 52:10; 60:23; 61:19; 64:17; 69:20; 72:20

**CLEARER** [1] - 15:4

**CLEAREST** [2] - 27:22; 28:11

**CLEARLY** [5] - 13:20; 14:17; 23:10; 70:14; 71:7

**CLERK** [1] - 74:21

**CLOSE** [2] - 46:11; 66:25

**CLOSELY** [1] - 41:25

**CLOSENESS** [1] - 43:24

**CO** [8] - 42:10, 12, 15, 17, 19; 43:10

**CO-OWNER** [8] - 42:10, 12, 15, 17, 19; 43:10

**COAUTHOR** [1] - 42:6

**COLLABORATING** [1] - 13:4

**COLLABORATIONS** [1] - 11:25

**COLLABORATIVE** [2] - 13:9; 20:16

**COLLEAGUES** [2] - 5:4; 63:19

**COLLECTION** [3] - 18:16; 19:6; 28:1

**COLLECTIONS** [1] - 19:6

**COLLEGE** [1] - 29:23

**COMBINATION** [2] - 49:25; 61:10

**COMBINATIONS** [1] - 21:10

**COMBINED** [2] - 39:20; 50:10

**COMING** [3] - 52:15; 63:22; 73:6

**COMMENT** [1] - 67:12

**COMMENTING** [1] - 64:4

**COMMENTS** [3] - 64:11; 65:22; 68:19

**COMMITTED** [1] - 41:17

**COMMON** [10] - 25:3, 7, 15; 29:9; 32:1; 33:24; 47:21, 24; 48:2; 66:4

**COMPANY** [4] - 8:6; 51:18, 21; 52:22

**COMPARE** [1] - 32:12

**COMPELLING** [1] - 37:7

**COMPENSATION** [1] - 31:19

**COMPILER** [1] - 67:25

**COMPLAIN** [2] - 42:20; 49:23

**COMPLAINING** [1] - 59:14

COMPLAINT [37] - 15:10; 29:23; 30:15, 17-18; 33:11, 17; 34:3, 7, 11, 13; 37:19, 21; 40:22; 46:10; 47:19; 52:16-18; 53:6; 54:4; 55:7; 59:19; 61:21; 64:15, 21; 67:9; 68:23; 69:12, 21; 71:14; 72:1, 20
COMPLAINTS [1] - 50:13
COMPLETELY [1] - 38:11
COMPLICATED [1] - 19:3
COMPOSED [6] - 9:24; 14:8; 21:9; 41:1, 6; 69:14
COMPOSER [2] - 12:15; 39:14
COMPOSITE [5] - 39:9; 67:20-22; 68:9
COMPOSITION [18] - 13:22; 31:17; 33:15; 34:6, 9; 35:23; 36:3; 37:15; 39:1, 6, 18; 41:4; 66:2, 24; 67:10; 68:21, 24
COMPOSITIONS [1] - 69:3
COMPREHENSIVE [1] - 25:21
CONCEDE [1] - 45:24
CONCEIVABLE [1] - 67:7
CONCEPTS [2] - 48:13, 15
CONCERN [1] - 7:1
CONCERNED [7] - 6:22; 8:21; 27:13; 32:8; 35:10, 16
CONCERNS [1] - 65:17
CONCLUDE [3] - 17:24; 36:25; 42:23
CONCLUDES [1] - 36:13
CONCLUSION [4] - 15:1; 16:13; 21:14; 69:24
CONCLUSIONS [1] - 24:2
CONCLUSIVE [1] - 28:8
CONDUCTED [1] - 6:24
CONFESS [1] - 73:24
CONFIDENCE [1] - 58:19
CONFUSED [1] - 34:13
CONJUNCTION [2] - 20:11; 49:6
CONNECT [1] - 63:11
CONNECTION [1] - 69:9
CONSENT [4] - 24:5; 42:9, 11
CONSENTED [2] - 23:6; 62:13
CONSEQUENCES [3] - 46:18; 48:8
CONSIDER [1] - 5:6
CONSISTED [1] - 10:19
CONSISTENT [2] - 21:17; 40:13
CONSISTS [2] - 59:1; 69:16
CONSTITUTE [9] - 16:25;

25:12; 31:6, 11; 39:5, 12; 44:5, 11; 51:11
CONSTITUTION [1] - 50:7
CONTAIN [2] - 48:7; 55:12
CONTAINED [2] - 68:25; 69:4
CONTAINING [1] - 41:5
CONTEMPLATE [1] - 55:12
CONTEMPLATED [1] - 58:7
CONTEMPLATION [1] - 58:9
CONTEXT [7] - 11:18; 12:5, 17; 14:16, 20, 24; 15:1; 20:20; 22:6; 36:7; 46:23; 48:17; 57:16; 59:3; 66:8; 69:25; 72:1; 73:9, 20
CONTINUE [2] - 55:10
CONTINUED [3] - 60:25; 61:2, 24
CONTINUES [2] - 19:11; 50:19
CONTINUING [2] - 61:5
CONTRARY [2] - 62:6; 70:25
CONTRAST [1] - 73:12
CONTRIBUTED [1] - 17:7
CONTRIBUTIONS [2] - 13:1; 39:7
CONTROL [1] - 48:10
CONVERSATION [1] - 52:7
COPIES [1] - 8:9
COPY [5] - 5:16; 6:17; 10:3, 5, 9
COPYRIGHT [31] - 8:10; 24:10; 25:2, 8, 15; 32:2; 35:7, 10, 13; 37:13; 39:11; 43:9-11, 20; 50:18, 21-22; 53:17, 25; 54:22; 60:6, 20; 61:12, 22; 62:3; 67:3
COPYRIGHTS [1] - 33:9, 23-24; 35:6; 51:22; 54:9-11, 17, 24; 55:2; 56:24; 60:15; 64:22; 65:9; 72:4
CORRECT [23] - 5:18, 25; 6:1, 6; 8:15; 24:4, 16, 18; 25:13, 16; 26:4; 29:16; 34:21; 35:9; 42:8; 45:22; 46:4, 7; 51:13; 58:3, 24; 65:4
CORRESPONDING [1] - 31:1
CORROBORATING [4] - 47:13; 70:17; 71:5
COUNSEL [4] - 6:13; 8:8; 27:10; 74:6
COUNSEL'S [1] - 7:17
COUNT [1] - 72:1
COUPLE [2] - 52:9; 67:12
COURSE [10] - 8:11; 9:7; 24:7; 27:15; 31:8; 37:10; 50:15; 51:10; 53:14; 54:19

COURT [6] - 21:24; 22:21; 23:23; 29:24; 62:13; 74:21
COURT [17] - 21:25; 23:9, 12; 28:6; 32:21; 36:13, 24-25; 52:23; 62:23; 64:12; 65:15, 23; 68:7, 12; 70:12, 16
COURT'S [3] - 24:13; 38:10; 69:8
COVER [1] - 65:21
COVERED [3] - 35:13; 65:9, 20
CREATE [1] - 17:4
CREATED [9] - 9:12
CREATING [1] - 28:1
CREATION [2] - 16:14; 17:3
CRIMINAL [4] - 71:3, 8
CROSS - 47:3
CROSS-EXAMINE [1] - 47:3
CROSSOVER [1] - 48:14
CURRENT [1] - 72:14
CUSTOM [1] - 72:15
CUT [1] - 18:19
CYCLE [1] - 8:22
D.C [1] - 46:14
DAVIS [1] - 42:1
DAYS [1] - 8:18
DEAL [1] - 56:19
DEALING [2] - 56:4, 14
DECIDE [2] - 38:11; 62:9
DECLARANT [3] - 48:24; 70:20; 71:4
DECLARANT'S [1] - 70:25
DECLARATION [9] - 6:8, 12; 7:10, 12, 14, 17, 22
DEDICATED [1] - 61:8
DEDICATION [1] - 43:12
DEFENDANT [7] - 8:20; 9:9; 26:6; 36:21; 58:20; 64:18; 66:23
DEFENDANT'S [1] - 64:16
DEFENDANTS [9] - 5:15; 7:3, 8; 9:2; 16:18; 27:9; 34:24; 59:24; 67:7
DEFINED [1] - 55:7
DELEGATE [1] - 41:15
DELIBERATE [1] - 17:3
DEMAND [1] - 19:13
DEMANDED [3] - 18:8, 13; 31:19
DEMONSTRATING [1] - 51:8
DENIED [3] - 22:20; 23:22; 62:15
DEPOSIT [1] - 5:16
DEPOSITION [18] - 9:22; 10:1, 6; 12:5; 22:3; 26:7; 27:10, 16, 23-24; 32:5, 15; 38:8, 18-20; 40:16; 41:6
DERIVATIVE [14] - 9:11, 16;

12:18; 16:3; 17:6, 8; 36:12, 14, 22; 37:5; 38:23; 67:16; 68:2, 8
DESCRIBE [3] - 14:5; 40:6; 68:24
DESCRIBED [7] - 21:7, 9; 23:14; 43:23; 54:25; 55:2; 69:4
DESCRIBES [5] - 10:15; 13:12; 17:20; 18:20; 28:1
DESCRIBING [1] - 13:21
DETAIL [1] - 13:12
DETERMINATION [1] - 23:12
DETERMINE [2] - 21:25; 22:18
DEVELOPED [1] - 14:13
DEVELOPMENT [1] - 61:1
DIALOGUE [14] - 53:8; 71:13, 18-20; 72:9, 11; 73:1, 4-5, 7, 9, 20, 22
DIFFERENCE [2] - 67:15, 18
DIFFERENT [13] - 13:7; 15:25; 19:21; 21:18; 22:17; 32:18; 33:22; 39:17; 48:13, 15; 58:4; 65:1; 73:16
DIFFERENTLY [1] - 31:16
DIRECT [3] - 25:19; 40:1; 43:7
DIRECTED [2] - 5:7; 39:1
DIRECTLY [2] - 25:4, 14
DIRECTORS [1] - 56:6
DISAGREEING [1] - 49:4
DISAGREEMENT [1] - 44:18
DISCUSS [1] - 68:1
DISCUSSED [4] - 39:23; 63:17; 70:1
DISCUSSES [1] - 67:15
DISCUSSION [9] - 18:2, 4; 30:9; 35:2, 6; 46:8; 54:6; 64:5; 73:20
DISPOSITIVE [2] - 12:20; 74:16
DISPUTE [10] - 16:15; 26:19; 28:3; 34:24; 35:15, 19, 25; 45:3; 65:12; 72:24
DISPUTED [2] - 12:22; 22:7
DISTINCTION [1] - 73:11
DITTY [3] - 29:8; 31:25; 47:21
DIVEST [1] - 43:18
DIVESTIVE [1] - 5:23
DOCUMENT [7] - 6:16, 23; 45:4, 24; 46:2; 48:21; 70:8
DOCUMENTS [1] - 6:5
DOG [1] - 56:15
DOMAIN [2] - 47:24; 61:9
DONE [9] - 16:4; 17:9, 12; 25:6; 26:25; 40:4; 44:8; 53:6; 58:15
DOTS [1] - 63:11

**DOUBT** [6] - 28:12; 66:10; 67:7; 69:18
**DOWN** [4] - 10:24; 32:20; 45:10
**DRAMATIC** [2] - 55:14; 56:5
**DRAWING** [1] - 47:12
**DRAWN** [3] - 30:8; 46:21; 48:1
**DRAWS** [1] - 49:20
**DURING** [4] - 20:8; 27:15; 40:7; 68:19
**E51988** [3] - 35:8; 53:2; 54:11
**E51990** [6] - 5:16; 35:8; 52:24; 54:11; 60:6, 10
**EARLIEST** [3] - 10:16; 11:3; 40:4
**EARLY** [1] - 61:1
**EASE** [2] - 14:4, 14
**EASEMENT** [1] - 25:12
**EASILY** [1] - 26:25
**EASY** [1] - 20:1
**EDUCATIONAL** [1] - 27:12
**EDUCATOR** [1] - 12:14
**EFFECT** [3] - 43:19; 44:7; 47:24
**EFFECTIVELY** [2] - 42:12; 61:15
**EFFORT** [2] - 13:9; 20:16
**EITHER** [12] - 16:16; 24:14; 29:3; 36:11; 37:4; 50:22; 59:5; 60:12, 16; 71:20, 25
**EMBARRASSED** [1] - 33:14
**EMPHASIZED** [1] - 30:8
**ENCYCLOPEDIA** [1] - 39:10
**END** [2] - 57:1, 5
**ENGLISH** [1] - 29:22
**ENLIGHTEN** [1] - 74:7
**ENTERED** [1] - 34:25
**ENTIRE** [4] - 15:2; 43:12; 57:15
**ENTIRELY** [1] - 40:13
**ENTIRETY** [1] - 11:17
**ENTITLED** [7] - 15:25; 58:22; 66:1, 13, 19; 69:5, 7
**EQUIVALENT** [2] - 5:15; 72:17
**ESSENCE** [1] - 63:1
**ESSENTIALLY** [2] - 64:24; 65:19
**ESTRANGED** [1] - 44:2
**EVERYDAY** [2] - 6:17; 67:23
**EVIDENCE** [51] - 7:6, 25; 8:3, 7, 12-13; 9:14, 21; 11:11, 14; 12:7; 15:3; 16:10; 17:15; 21:3, 13, 16; 22:7; 23:2, 13; 27:19; 29:4; 30:24; 31:5; 32:24; 37:7; 38:4; 39:21; 44:2, 13, 19; 47:13; 49:15; 51:25; 52:10;

53:22; 54:1; 61:10, 20; 62:6; 63:1, 11; 64:7; 65:19; 69:25; 71:2; 72:11
**EVIDENCES** [1] - 31:12
**EVIDENCING** [2] - 32:24; 49:16
**EVIDENT** [1] - 14:22
**EX** [5] - 5:20; 6:20; 24:8; 74:11, 17
**EXACTLY** [6] - 21:7; 29:13; 63:20; 64:17, 24; 71:19
**EXAMINE** [1] - 47:3
**EXAMPLE** [2] - 67:21, 23
**EXCEEDED** [1] - 56:3
**EXCEEDING** [1] - 53:10
**EXCEPT** [7] - 16:17; 26:10, 18; 27:6; 56:9; 60:3
**EXCEPTION** [3] - 45:24; 48:14; 49:2
**EXCEPTIONS** [1] - 70:20
**EXCHANGES** [1] - 27:9
**EXCLUSIVE** [2] - 42:7, 11
**EXHIBIT** [5] - 10:7; 19:14; 43:1; 44:22; 71:22
**EXHIBIT** [20] - 10:10; 15:9, 15; 20:7; 26:7; 34:10; 40:21; 53:16; 64:8, 13-14; 66:15; 68:13, 16, 22
**EXHIBITED** [1] - 42:18
**EXHIBITING** [1] - 41:19
**EXISTED** [2] - 26:20; 28:16
**EXPANDED** [1] - 62:18
**EXPECT** [1] - 7:9
**EXPIRED** [1] - 35:14
**EXPLAIN** [1] - 28:3
**EXPLANATION** [2] - 6:8; 15:2
**EXPLANATIONS** [1] - 6:8
**EXPLICATES** [1] - 18:3
**EXPLICATION** [1] - 62:21
**EXPLOIT** [1] - 61:24
**EXPLOITATION** [2] - 35:12; 61:6
**EXPOSE** [1] - 71:3
**EXPRESS** [5] - 55:20; 57:9, 18; 60:5
**EXPRESSION** [1] - 28:11
**EXPRESSLY** [1] - 60:24
**EXTENSION** [1] - 67:4
**EXTENT** [3] - 27:25; 28:21; 41:9
**F.2D** [1] - 39:3
**F.3D** [1] - 42:2
**FACE** [2] - 45:19; 48:21
**FACIE** [1] - 54:1
**FACT** [35] - 12:19; 16:3, 9, 11; 19:11; 22:7, 17, 19, 25; 23:3, 7, 16; 24:1, 6, 14; 25:10; 29:8; 30:8; 31:25; 36:19; 43:4; 44:12; 47:20;

51:7; 53:1; 56:19; 59:14; 60:3; 62:10, 13; 63:5, 7
**FACTS** [3] - 7:10; 8:11; 41:5
**FACTUAL** [1] - 62:24
**FAILURE** [5] - 28:5; 34:2; 36:15; 49:7
**FAILURES** [1] - 49:7
**FAILURES-TO-ASSERT** [1] - 49:7
**FAIR** [1] - 19:15
**FAIRLY** [1] - 49:21
**FAIRNESS** [2] - 25:6; 63:8
**FAITH** [1] - 58:19
**FAMILIAR** [1] - 52:25
**FAR** [6] - 8:20; 27:12; 30:5; 32:7; 34:25; 56:23
**FAVORS** [1] - 22:8
**FEDERAL** [1] - 29:24
**FELT** [1] - 60:12
**FEW** [1] - 47:12
**FIERCELY** [1] - 31:18
**FIGURED** [1] - 40:18
**FILE** [3] - 8:17; 33:25; 74:10
**FILED** [13] - 6:15; 8:17; 15:9, 17; 29:23; 33:3; 37:13, 20-21, 24; 50:13; 67:6
**FILING** [1] - 37:19
**FILM** [2] - 73:8
**FINDINGS** [4] - 23:7; 24:1, 6; 62:24
**FINE** [2] - 29:18; 38:21
**FINGERTIPS** [1] - 52:14
**FINISH** [1] - 53:12
**FIRST** [21] - 9:8, 22; 26:21; 32:16; 34:16; 35:3, 9, 16; 37:19; 38:24; 45:8, 20; 54:14; 55:7; 57:15; 64:20; 65:5, 24; 70:6; 71:14
**FLAT** [1] - 40:24
**FLAT-OUT** [1] - 40:24
**FOCUSED** [1] - 50:13
**FOLKS** [6] - 5:8; 6:2, 11; 22:21; 23:23; 62:18
**FOLLOW** [1] - 56:20
**FOLLOWED** [1] - 25:7
**FOLLOWING** [1] - 49:19
**FOLLOWS** [3] - 43:8; 49:21; 66:21
**FOOTNOTE** [2] - 41:9; 42:22
**FORESEE** [2] - 63:15, 21
**FOREST** [6] - 29:2-4; 31:4; 50:2
**FOREVER** [1] - 47:16
**FORGET** [1] - 11:14
**FORGETFULNESS** [2] - 37:18, 20
**FORM** [7] - 6:12; 24:3; 53:6; 55:23; 57:12; 61:22; 62:14
**FORTH** [10] - 9:4; 14:18;

25:12; 27:13; 31:9; 44:1, 3; 46:11; 67:4; 72:4
**FOUGHT** [1] - 31:19
**FOUNDATION** [21] - 15:10, 18; 33:4; 35:18, 21; 37:11; 40:23; 44:1, 15; 50:14; 53:15, 19; 59:20; 60:7; 64:15; 65:7; 67:8; 69:22; 72:24
**FOUNDATION** [2] - 30:16; 34:8
**FOUNDATION'S** [1] - 66:18
**FRONT** [1] - 10:12
**FULL** [1] - 8:2
**FULLY** [1] - 42:19
**FUNDAMENTAL** [2] - 44:17; 58:12
**FUNDAMENTALLY** [2] - 31:16; 32:17
**GENERAL** [1] - 5:24
**GENERALLY** [2] - 50:18; 70:21
**GENRE** [1] - 73:6
**GERMANE** [1] - 35:19
**GIVEN** [9] - 30:4; 48:4; 53:5; 56:21; 60:13, 20; 63:4
**GLANCY** [1] - 5:1
**GLOSS** [1] - 29:17
**GOODBYE** [4] - 11:7, 22; 12:9; 14:17
**GRANT** [6] - 7:19; 42:7, 11; 54:6; 55:13; 58:18
**GRANTED** [11] - 51:16, 21; 54:2; 58:5, 20; 59:16; 61:21; 64:10; 73:1
**GRANTING** [2] - 54:23; 73:3
**GREAT** [1] - 14:11
**GRIPE** [1] - 29:15
**GROUP** [4] - 10:16; 11:3; 18:10; 49:14
**GUESS** [4] - 23:19; 31:4; 32:10; 72:13
**HAMPTON** [2] - 44:11; 49:20
**HANDS** [1] - 61:9
**HAPPY** [103] - 9:9, 17; 10:15; 11:2, 7-9, 22-23; 12:10-12; 14:18; 15:25; 16:2, 12, 15; 17:17, 24; 21:5, 14; 23:10, 15; 26:14; 28:3, 8, 16, 18; 29:24; 30:18, 24; 31:16, 21; 32:8, 12-13, 15, 22; 33:13, 16, 19-21, 23; 35:2, 5; 36:9, 14, 16; 37:2, 12, 16-17, 25; 38:1, 6; 40:5, 25; 52:11, 25; 53:9, 17, 24; 54:7, 13, 18; 55:1, 3-4, 8, 16; 56:7, 11, 21; 57:12, 14, 19; 58:23; 59:6, 13, 19; 62:3; 64:10; 66:1, 5, 14, 20; 67:16; 68:8, 20, 24;

69:7, 10, 14, 23; 72:5, 23
**HAPPY** [6] - 6:10; 7:1; 56:10; 65:22; 73:25; 74:1
**HARDLY** [1] - 58:6
**HARMONIZE** [2] - 21:3, 6
**HARRIS** [3] - 9:23; 40:23; 50:13
**HAT** [2] - 22:24
**HEAD** [1] - 74:4
**HEAR** [3] - 9:6; 38:21; 70:3
**HEARD** [2] - 64:12; 70:16
**HEARERS** [1] - 39:9
**HEARING** [3] - 21:23; 24:19; 52:15
**HEARSAY** [13] - 44:23; 45:5, 20, 25; 47:2; 48:14; 49:2; 62:1; 70:8, 14, 20
**HEIR** [1] - 33:15; 61:15
**HELD** [2] - 50:22; 73:3
**HELPFUL** [2] - 5:23; 64:13
**HELPING** [1] - 74:6
**HERSELF** [2] - 12:15; 31:25
**HILL** [57] - 7:19; 9:23; 11:1; 15:10, 18; 16:19; 21:4, 11; 23:16; 27:4; 29:22; 32:9; 33:3; 34:8; 35:18, 21; 37:11; 38:19; 40:9, 23-24; 43:23; 44:1, 14; 45:9, 11; 46:17; 47:3; 50:14; 53:4, 15, 19, 22; 58:13; 59:14, 20; 60:7, 25; 62:2; 64:15; 65:7; 66:18, 22; 67:8; 68:23; 69:6, 15, 18, 21; 72:24
**HILL** [11] - 18:4; 19:20; 21:7; 27:10; 29:14, 21; 41:1; 45:12; 46:10; 52:16
**HILL'S** [3] - 9:22; 20:21; 26:7
**HILL'S** [1] - 71:9
**HILLS** [4] - 50:16; 52:12; 53:19; 56:1
**HMM** [1] - 22:24
**HOLDERS** [2] - 41:12, 18
**HOME** [4] - 13:24; 14:12; 40:17
**HONOR** [55] - 5:18; 6:1, 6, 14; 8:15, 24; 9:7, 20; 10:2, 8, 11, 16; 15:21; 18:14; 19:5; 20:19; 21:22; 22:14; 23:7; 24:4; 27:21; 34:6; 38:14; 39:1; 40:21; 41:25; 44:9; 47:2, 7; 49:19; 50:12; 52:14; 57:22; 58:12; 59:11; 61:3, 11; 62:6; 63:2; 64:2, 20; 65:4, 13; 66:3; 68:3; 70:2; 72:2, 7, 17; 73:24; 74:9, 19
**HOUND** [1] - 56:15
**HOUR** [1] - 40:7
**HOUSE** [1] - 39:24

**HOUSEKEEPING** [1] - 5:9
**HSIA** [1] - 46:14
**HUMAN** [1] - 66:9
**I.E** [1] - 56:5
**IDEA** [1] - 61:3
**IDENTIFICATION** [1] - 20:8
**IDENTIFIED** [5] - 6:17; 20:17; 25:25; 65:9; 68:20
**IDENTIFIES** [1] - 11:6
**IMPACT** [1] - 6:24
**IMPORTANCE** [1] - 42:22
**IMPORTANT** [2] - 15:7; 50:5
**INABILITY** [1] - 48:10
**INACTION** [5] - 44:10; 48:10; 50:9
**INASMUCH** [2] - 46:22; 62:13
**INCIDENT** [1] - 40:7
**INCLUDE** [7] - 20:1; 28:5; 54:7; 55:1, 3, 8; 60:20
**INCLUDED** [5] - 54:18; 55:18; 60:16; 65:7, 12
**INCLUDES** [1] - 67:24
**INCLUDING** [16] - 5:21; 10:22; 11:7, 22; 21:4; 23:14; 27:1, 3, 9; 29:4; 56:10, 20; 57:12; 59:21; 67:1
**INCLUSION** [1] - 68:4
**INCLUSIVE** [1] - 69:5
**INCONSISTENT** [1] - 61:3
**INDEED** [1] - 53:25
**INDEPENDENT** [1] - 42:20
**INDEPENDENTLY** [1] - 43:1
**INDICATE** [2] - 70:18; 71:5
**INDICATING** [1] - 71:7
**INDICATION** [3] - 30:11; 36:6; 48:7
**INDICATIVE** [2] - 31:6; 49:13
**INDIVIDUAL** [1] - 39:12
**INDIVIDUALS** [2] - 43:24
**INDUSTRIES** [1] - 73:16
**INDUSTRY** [2] - 53:10; 72:15
**INFAMOUS** [1] - 37:24
**INFERENCE** [1] - 30:7
**INFERENCES** [3] - 46:20; 47:12; 48:1
**INFRINGES** [2] - 30:25; 31:1
**INITIAL** [2] - 16:23; 68:19
**INQUIRY** [1] - 24:15
**INSEPARABLE** [1] - 13:1
**INSERTED** [1] - 18:24
**INSTANCE** [1] - 17:16
**INSTANCES** [2] - 25:10; 44:7
**INSTEAD** [2] - 21:17; 33:13
**INSTRUCTOR** [1] - 29:22
**INTEND** [1] - 48:11
**INTENDED** [1] - 26:23
**INTENDING** [1] - 48:11

**INTENT** [5] - 31:6, 12; 32:24; 49:16; 51:8
**INTENTION** [3] - 5:11; 12:25; 49:14
**INTERDEPENDENT** [1] - 13:1
**INTEREST** [18] - 27:25; 41:12, 18; 42:25; 43:10, 18-19, 25; 44:12, 14; 46:16; 47:12; 53:20; 60:7; 61:14; 70:15, 22
**INTERESTED** [1] - 36:23
**INTERESTING** [1] - 26:5
**INTERESTS** [4] - 28:12; 44:14; 70:22; 71:1
**INTERMIXES** [1] - 48:13
**INTERRUPT** [1] - 22:14
**INTERVAL** [1] - 40:12
**INTERVIEW** [1] - 31:24; 45:14
**INTERVIEWED** [1] - 45:11
**INTRODUCE** [1] - 67:8
**INVOLVED** [1] - 39:16
**INVOLVING** [1] - 54:16
**ISOLATION** [2] - 57:13, 25
**ISSUE** [12] - 5:7, 23; 6:21; 7:2; 9:1; 21:20; 22:7, 19; 24:20; 25:15; 27:19; 38:15; 62:12
**ISSUES** [12] - 6:15; 21:24; 22:1, 21; 23:21; 24:8, 12; 62:1, 10-11; 74:13
**ITERATIONS** [1] - 34:17
**ITERATIVE** [2] - 17:20; 21:8
**ITSELF** [7] - 8:7; 28:20; 31:5; 43:18; 45:21; 49:3; 70:9
**JESSICA** [39] - 29:22; 30:14, 17; 32:25; 33:3, 9, 14, 16; 35:11, 20-21; 36:6, 8, 17, 24; 37:2, 6, 11, 23; 38:5; 39:25; 40:2, 10; 42:25; 43:4; 44:2, 6, 13; 54:10; 58:13; 59:13, 20; 61:15; 62:2; 65:18; 66:22; 69:12
**JESSICA'S** [4] - 35:14; 36:13; 37:19; 44:10
**JOINT** [42] - 9:9, 11-12, 18; 11:25; 12:21, 23; 15:1; 16:14, 25; 17:2, 24; 21:14; 22:9; 23:10; 26:22; 32:21-23; 36:14, 25; 37:7; 38:16, 22, 25; 41:4, 7, 9, 12, 14, 18-19, 22; 42:24; 43:5, 25; 67:19; 68:2, 4-5, 9
**JOINTLY** [2] - 12:20; 43:13
**JOURNEY** [4] - 11:7, 22; 12:9; 14:18
**JUDGMENT** [14] - 10:6; 22:18, 20, 23; 23:11,

21-22; 24:14; 38:12; 40:22; 53:16; 63:5, 11; 72:14
**JUDICIAL** [1] - 16:1
**JULY** [1] - 6:19
**JUMP** [1] - 68:14
**JURY** [2] - 21:25; 63:9
**KAPLAN** [1] - 5:4
**KEEP** [2] - 8:21; 64:11
**KELLY** [1] - 5:3
**KIDS** [6] - 14:11; 16:22; 21:19; 26:3; 27:12; 40:19
**KIND** [6] - 7:20; 8:8; 46:23; 70:23; 73:8, 22
**KINDERGARTEN** [19] - 10:17; 18:16, 21, 25; 19:7, 17, 23; 20:2, 7; 21:1; 22:10; 27:3; 28:2; 35:12; 54:22; 67:22; 69:2; 72:4
**KINDS** [1] - 33:25
**KLAUS** [59] - 5:3, 18; 6:6, 10; 7:21; 8:3, 15; 38:24; 41:23; 42:4, 8, 10; 43:7; 44:9; 45:3, 8, 18, 22; 46:1, 4, 7, 13; 47:1, 7, 25; 48:20; 49:18; 51:13; 52:5, 13, 18, 21; 53:14; 54:5, 20; 55:10, 18; 56:9; 57:1, 5, 8, 21, 24; 58:3, 11, 25; 59:11; 60:3, 22; 63:2, 17, 25; 64:2; 72:13; 73:11, 24; 74:3, 9, 19
**KLAUS** [18] - 5:3; 6:2; 7:16; 9:6; 32:20; 38:15; 62:7; 63:24; 64:5, 20, 25; 65:15; 67:12; 68:14, 18; 70:16; 72:8
**KLAUS'S** [3] - 68:3, 11; 71:12
**KNOWLEDGE** [2] - 7:5; 41:20
**KNOWN** [7] - 16:2, 12; 17:17; 21:5, 18; 23:15; 53:4
**KNOWS** [1] - 66:3
**LACK** [1] - 51:25
**LARGELY** [3] - 34:16; 62:20; 64:12
**LAST** [6] - 6:23; 21:23; 32:19; 52:7; 56:5; 64:4
**LASTLY** [1] - 70:2
**LATE** [1] - 7:23
**LAW** [12] - 24:2, 25; 25:3, 7, 15; 33:24; 39:19; 43:21; 50:18; 51:2, 5
**LAWSUIT** [6] - 30:9; 32:15; 46:23; 60:5; 61:5
**LAWSUITS** [3] - 37:22, 25; 60:23
**LAYERS** [1] - 45:20
**LEAD** [1] - 14:25
**LEARN** [1] - 14:4

**LEAST** [11] - 13:3; 21:21; 22:24; 26:15; 27:18; 46:20; 53:25; 62:20; 63:17; 70:8; 71:13

**LEAVING** [2] - 33:1; 38:3

**LEGAL** [5] - 38:25; 41:3; 54:20; 73:17; 74:13

**LEGATEE** [1] - 61:1

**LEMOINE** [1] - 5:4

**LENGTHY** [1] - 11:18

**LEVEL** [6] - 43:2, 23; 45:20, 25; 46:1, 5

**LIABILITY** [2] - 71:4, 9

**LICENSE** [20] - 34:8; 36:1; 42:7, 11; 53:7, 11; 55:20; 56:1, 4; 57:9, 18; 58:5, 18; 59:16; 61:21; 72:18

**LICENSED** [5] - 51:17; 56:8; 59:4; 66:20; 73:21

**LICENSES** [6] - 34:23; 54:24; 55:3, 12-13; 58:20

**LICENSING** [2] - 53:8; 58:16

**LIGHT** [1] - 41:3

**LIKELY** [2] - 8:19, 22

**LIMB** [1] - 63:23

**LIMIT** [1] - 27:11

**LIMITED** [7] - 19:2; 38:5; 53:7; 54:15; 56:2; 63:10; 72:8

**LIMITS** [1] - 28:11

**LINE** [4] - 27:14; 49:20; 51:6, 9

**LINES** [3] - 10:9; 23:12; 59:3

**LINGERING** [1] - 67:7

**LISTENING** [1] - 40:15

**LISTS** [1] - 53:17

**LITIGATION** [9] - 9:23; 15:10; 16:2, 18; 21:5; 33:2; 36:16, 24; 37:10

**LIVING** [1] - 39:24

**LO** [1] - 68:21

**LOGICAL** [1] - 25:7

**LOGICALLY** [1] - 56:20

**LOOK** [28] - 8:18; 13:11; 14:19; 17:14; 18:18; 20:4; 22:2; 28:22; 29:1, 7, 9, 18; 36:15; 38:21; 51:2; 54:14; 57:15; 61:10, 18; 63:20; 64:16; 66:15; 73:25; 74:18

**LOOKED** [3] - 25:3; 52:14; 68:19

**LOOKING** [2] - 47:4; 57:25

**LOOKS** [2] - 22:24; 45:12

**LOSE** [1] - 24:10

**LOST** [1] - 50:22

**LYRICIST** [1] - 39:17

**LYRICS** [59] - 12:1, 9; 16:6; 17:18; 19:22; 20:1, 11, 17; 21:10; 26:14; 28:8, 16, 18; 29:15; 30:10, 22; 31:2, 16;

32:22, 24; 33:17, 23; 36:15; 37:1, 3, 16; 38:1; 39:15, 20; 41:5; 51:16; 52:11, 25; 53:2, 9, 24; 54:18; 55:3, 9; 56:1, 7, 21; 57:20; 59:8, 13, 21; 62:5; 64:9; 65:13; 66:9; 69:17; 71:15; 72:12; 73:10, 23

**MAGAZINE** [9] - 29:7; 31:9, 24; 38:8; 44:21; 45:1, 13; 70:4

**MAGAZINE** [1] - 46:9

**MANIFOLD** [1] - 10:7

**MANIPULATE** [1] - 13:5

**MANNER** [1] - 21:8

**MARCH** [2] - 23:8; 24:5

**MARK** [2] - 66:25; 67:1

**MARKED** [1] - 20:7

**MARKET** [1] - 18:12

**MARKS** [2] - 48:17; 70:11

**MATERIAL** [3] - 8:10; 22:19; 68:5

**MATTER** [1] - 74:22

**MATTER** [8] - 5:6, 9; 12:11; 17:8; 36:22; 39:18; 61:17

**MATTERS** [1] - 9:1

**MEAN** [9] - 22:4, 14; 28:8, 18; 48:9; 57:20; 66:2; 68:14

**MEANING** [8] - 11:20; 29:19; 32:22; 53:9; 57:10; 59:7; 71:18; 72:16

**MEANS** [4] - 26:11; 51:8; 69:20; 73:9

**MEANT** [3] - 64:17; 66:12; 67:8

**MEANTIME** [1] - 5:8

**MECHANICAL** [1] - 67:2

**MEET** [1] - 49:18

**MELINDA** [1] - 5:4

**MELODY** [8] - 11:21; 12:1, 8; 14:9; 17:10; 39:12; 69:17

**MEMORY** [1] - 18:6

**MENTION** [5] - 5:9; 32:14; 35:5; 54:12; 57:14

**MENTIONED** [9] - 19:16; 44:7; 54:25; 55:2; 65:1; 67:5; 69:1, 4; 72:10

**MENTIONS** [2] - 19:20; 38:9

**MERE** [1] - 25:11

**MERELY** [1] - 24:11

**MERGE** [1] - 39:7

**MERGED** [1] - 13:1

**MERITS** [2] - 5:12; 7:2

**MET** [1] - 39:15

**MIDST** [1] - 29:4

**MIGHT** [4] - 14:25; 25:11; 30:8; 67:7

**MILDRED** [44] - 9:10, 13, 18, 24; 10:20; 12:4, 7, 15, 22;

13:25; 14:8, 12, 21, 23, 25; 15:4; 16:9, 14, 19, 21; 17:8, 12, 19, 22, 24; 18:17, 22; 19:25; 20:22, 24; 21:15; 32:23; 33:15; 38:5; 40:9, 14, 17; 41:2; 42:24; 69:15, 18, 23

**MILDRED'S** [2] - 17:9; 61:15

**MIND** [1] - 10:2

**MINDFUL** [1] - 63:3

**MINUTES** [1] - 52:9

**MISREADING** [1] - 42:22

**MOMENT** [5] - 10:8; 15:3, 21; 48:25; 71:21

**MONIES** [1] - 61:6

**MORNING** [5] - 5:2, 5; 8:8; 13:19; 14:1

**MORNING** [61] - 9:13; 10:20; 11:2, 19; 13:13, 20; 14:2, 7, 13, 17; 15:6, 12, 23-24; 16:13; 17:20; 19:18; 20:10, 16; 21:8, 16; 22:11; 26:20; 27:3, 7; 29:6; 31:17, 20; 32:11, 16; 33:8, 12, 15, 22; 34:9; 35:10; 36:3, 20; 37:15; 38:5; 54:16, 21; 58:22; 59:5, 18; 64:9; 65:13; 66:1, 5, 13-14, 20, 25; 67:6, 19-20; 69:5, 9, 22

**MOST** [2] - 8:19; 35:6

**MOTION** [7] - 8:20; 53:10; 58:16; 59:15; 62:15; 73:4

**MOTIONS** [2] - 5:10, 12

**MOTIVES** [1] - 18:25

**MOVE** [5] - 22:20; 23:23; 24:24; 25:24; 41:8

**MOVED** [1] - 23:24

**MOVIE** [4] - 56:5, 14; 73:21

**MOVIES** [2] - 58:8; 72:22

**MOVING** [1] - 72:19

**MULTIPLE** [2] - 38:7; 67:24

**MUNGER** [1] - 5:3

**MURRAY** [1] - 5:1

**MUSIC** [35] - 13:5; 18:12; 19:1-3; 29:6, 15, 25; 30:9, 20, 25; 39:5, 14, 17, 19; 52:22-25; 53:1, 6, 24; 54:7, 19; 55:23; 56:3, 14, 22-23; 57:12; 59:7, 21, 25; 61:22

**MUSICAL** [15] - 13:21, 23; 34:6, 9; 35:23; 36:3; 37:15; 39:1, 6; 41:5; 59:17; 66:2, 24; 67:10

**MUST** [3] - 41:17; 43:1; 52:21

**NAME** [1] - 30:15

**NATION** [5] - 29:9; 32:1; 47:21; 48:3, 11

**NATURE** [3] - 43:8; 63:4

**NECESSARILY** [6] - 17:2; 25:10; 28:18; 31:4; 41:21;

49:4

**NECESSARY** [1] - 36:11

**NECESSITY** [1] - 24:15

**NEED** [13] - 7:24; 23:20; 25:16; 28:2, 21; 50:4; 51:10; 62:14; 63:15; 66:16; 67:10; 71:6; 73:13

**NEEDS** [1] - 14:16

**NEGATIVE** [1] - 30:24

**NEVER** [16] - 14:20, 23; 16:17; 17:21; 21:10; 31:20; 37:16; 38:1, 6; 39:15; 45:10; 58:7; 60:11, 14

**NEW** [6] - 11:8; 12:10; 29:5, 12-13; 38:9

**NEW** [3] - 17:8; 68:5; 74:11

**NEWMAN** [1] - 10:5

**NEXT** [10] - 13:19; 14:1, 10; 19:20; 24:24; 25:24; 29:2; 55:11; 69:13

**NICE** [1] - 52:7

**NIGHT** [2] - 13:25; 40:17

**NINTH** [1] - 49:20

**NONE** [6] - 19:19, 21-22; 54:17; 56:7; 68:7

**NONUSE** [1] - 25:11

**NOTE** [1] - 65:4

**NOTED** [1] - 72:2

**NOTES** [3] - 39:12; 41:5; 59:2

**NOTHING** [7] - 8:14; 35:8; 48:7; 57:16, 19; 72:5; 73:9

**NOTICE** [1] - 24:10

**NUMBER** [3] - 45:12; 51:5; 58:20

**NUMEROUS** [1] - 44:13

**OBJECT** [2] - 44:22, 24

**OBJECTING** [1] - 45:23

**OBJECTION** [4] - 20:12; 44:24; 45:7; 46:13

**OBJECTIONS** [1] - 46:12

**OBVIATE** [1] - 24:14

**OBVIOUS** [2] - 47:17

**OBVIOUSLY** [7] - 9:17; 26:13, 21; 30:10; 44:16; 47:2; 74:14

**OCCASIONS** [1] - 38:7

**ODDS** [1] - 44:2

**OFFER** [3] - 6:9; 7:16, 25

**OFFERED** [5] - 7:3, 9, 21-22; 71:3

**OFFERING** [1] - 7:11

**OFFICE** [1] - 8:10

**OFTEN** [1] - 40:11

**OLD** [1] - 40:3

**OLSON** [1] - 5:3

**ONCE** [1] - 17:11

**ONE** [59] - 6:15; 10:16, 20; 11:3; 15:2; 17:7, 16; 18:25; 19:17; 20:24; 22:1; 23:5;

26:2; 27:14, 23; 28:23;
30:17; 31:5; 32:19; 38:11;
39:22; 40:4, 6-7; 41:11, 14,
17, 19; 42:10, 12, 15, 17;
43:17; 45:17; 48:9, 13;
50:21; 51:1; 52:21; 53:19;
57:1; 60:2; 61:7, 20; 62:17;
64:14; 66:11; 67:13; 68:3,
25; 69:3, 5; 71:3; 72:13;
73:18

**ONES** [2] - 40:4; 41:13

**OPPORTUNITY** [2] - 62:25;
74:15

**OPPOSED** [3] - 6:3; 9:18;
38:22

**OPPOSITION** [2] - 6:15;
74:17

**ORAL** [5] - 51:11; 55:20;
57:9, 19

**ORDER** [7] - 19:3; 23:5;
43:11; 49:21; 59:2; 62:24;
74:17

**ORIGINAL** [13] - 17:6; 35:10;
54:24; 57:9, 18; 64:22;
65:8; 68:4, 6; 72:2

**OTHERWISE** [1] - 7:10

**OURSELVES** [6] - 7:1; 26:9,
17; 27:6; 73:3

**OVERCOME** [1] - 37:20

**OVERT** [29] - 25:1, 10, 16,
24; 30:12; 31:6, 12; 32:3,
8; 41:11, 17, 19, 21; 42:18,
21; 43:1, 15; 44:5; 49:12,
16; 50:2, 8, 11, 19; 51:8;
61:13

**OVERWHELMING** [1] - 38:4

**OVERWHELMINGLY** [1] -
22:8

**OWN** [6] - 30:1; 33:20; 37:22;
44:14; 73:16

**OWNED** [2] - 33:23; 36:20

**OWNER** [8] - 42:10, 12, 15,
17, 19; 43:10

**OWNERS** [2] - 50:18, 21

**PAGE** [38] - 9:25; 10:12;
11:1, 9, 17; 13:18; 15:11,
22; 16:7; 18:1, 18; 19:5,
10, 20; 20:4, 18; 26:7;
27:24; 38:18; 39:3; 40:1, 6,
25; 54:23; 55:11; 57:4;
59:3; 65:2, 10-11; 66:17;
68:13, 16; 71:14, 21

**PAGES** [4] - 10:9; 15:13;
42:4

**PAPERS** [3] - 44:13, 17; 63:6

**PARAGRAPH** [27] - 12:4;
15:19, 22; 18:19; 54:22;
56:9; 57:6, 21; 65:2, 5-6,
10, 15; 66:16; 67:9; 68:25;
69:13, 20-21; 71:13, 22-23,

25; 72:12; 73:2

**PARAGRAPHS** [4] - 35:4;
54:13; 65:2; 69:5

**PARENTHETICAL** [1] - 18:23

**PART** [18] - 7:13; 17:3, 5;
22:10; 31:14; 35:9, 16-17;
37:19; 41:21; 44:10; 48:10;
51:19; 62:24; 65:5, 16;
70:19

**PARTE** [5] - 5:20; 6:20; 24:8;
74:11, 17

**PARTICULAR** [13] - 6:1; 7:2;
18:7; 20:9; 35:16; 40:7;
41:16; 55:15; 59:2, 17;
61:6; 66:4

**PARTICULARLY** [3] - 21:1;
32:9; 74:15

**PARTIES** [3] - 5:14; 37:25;
63:8

**PARTIES'** [1] - 24:5

**PARTS** [3] - 13:2; 16:6; 27:15

**PARTY** [1] - 36:23

**PASSAGE** [1] - 26:6

**PASSING** [2] - 42:25; 71:12

**PAST** [1] - 66:6

**PATTY** [2] - 13:24

**PATTY** [89] - 9:10, 12-13, 19,
22; 10:20; 11:1, 5; 12:7,
13, 17, 19; 13:8, 12; 14:9,
21, 23; 15:2, 4; 16:4, 14,
16, 21; 17:7, 9-10, 12-13,
18, 22, 25; 18:17, 19; 21:8,
15, 18; 22:2; 26:24; 29:19;
31:14; 32:9; 33:3; 35:21;
36:8, 17, 23-24; 37:2, 4, 6,
11, 23; 38:4, 7, 19, 23;
39:25; 40:9, 11, 13, 16;
41:1; 42:24; 43:5; 44:2, 4,
7, 18-19; 45:9, 11-12; 46:6,
9, 17; 47:3; 61:15; 62:2;
67:17; 69:6, 12, 15, 19,
22-23; 70:10; 71:9

**PATTY'S** [6] - 16:5, 7; 30:21;
36:11, 13; 37:18

**PECUNIARY** [2] - 46:16;
47:11; 71:1

**PENALTY** [1] - 50:21

**PENDING** [2] - 8:20; 38:23

**PEOPLE** [7] - 43:22; 53:9;
56:4; 59:18; 61:14; 72:22

**PERCEIVED** [1] - 48:10

**PERCIPIENT** [1] - 63:22

**PERFECT** [2] - 14:4; 16:22

**PERFORMANCE** [5] - 30:20;
33:12; 37:17; 58:21; 67:2

**PERFORMANCES** [3] -
37:12; 55:14; 56:5

**PERFORMED** [4] - 31:22;
36:9; 39:8

**PERFORMS** [1] - 30:13

**PERHAPS** [4] - 9:12; 15:7;
35:4; 57:14

**PERIOD** [1] - 36:3

**PERIODICALLY** [1] - 16:18

**PERMISSION** [10] - 7:20;
27:11; 30:14, 19; 33:19;
36:10-13; 53:5

**PERMIT** [1] - 7:4

**PERMITS** [1] - 21:13

**PERSON** [3] - 45:9; 70:23

**PERSONALLY** [1] - 8:12

**PERSPECTIVE** [1] - 24:2

**PHRASE** [1] - 66:8

**PHYSICAL** [1] - 51:10

**PIANO** [16] - 34:8, 23; 35:2,
22; 36:2; 40:10, 17; 58:21;
59:1, 7; 65:24; 66:7, 19, 23

**PICTURE** [2] - 53:10; 73:4

**PICTURES** [5] - 58:16;
59:15; 72:19; 73:6

**PIECE** [6] - 11:11, 14-15;
15:3; 30:23; 64:6

**PIECES** [4] - 9:21; 31:5;
44:13; 65:19

**PIECING** [1] - 45:15

**PLAGIARISM** [4] - 29:25;
30:4, 9

**PLAGIARIZED** [2] - 30:20

**PLAINLY** [1] - 59:4

**PLAINTIFF** [2] - 9:3; 65:6

**PLAINTIFFS** [4] - 5:1, 14, 19;
9:2

**PLAINTIFFS'** [3] - 8:8; 22:8;
64:18

**PLAY** [1] - 30:19

**PLAYERS** [1] - 62:21

**PLAYING** [1] - 40:11

**PLEASURE** [1] - 39:8

**PLUG** [1] - 16:24

**POETESS** [2] - 12:15

**POINT** [22] - 9:15; 22:8;
25:19; 31:3, 18; 40:21;
46:17; 47:8; 48:4; 49:6;
52:21; 53:21; 57:24;
58:10-12; 62:2; 63:15, 19;
68:10

**POINTED** [1] - 12:14

**POINTS** [2] - 67:12; 70:2

**POPULARITY** [1] - 58:8

**PORTION** [1] - 40:1

**POSITED** [1] - 49:15

**POSITING** [1] - 42:16

**POSITION** [2] - 24:25; 51:15

**POSSIBLE** [1] - 8:2

**POSSIBLY** [2] - 14:25; 66:9

**POSTURE** [1] - 22:16

**PRECISE** [1] - 41:24

**PRECISELY** [1] - 45:6

**PREDECESSOR** [2] - 15:8;

52:12

**PREDECESSOR'S** [1] -
64:16

**PRELIMINARY** [1] - 9:1

**PREPARED** [2] - 7:16; 12:25

**PRESENT** [2] - 25:2; 35:19

**PRESENTED** [2] - 6:25;
62:11

**PRESUMABLY** [3] - 11:21;
16:4; 20:9

**PRETENDED** [1] - 45:1

**PRETTY** [3] - 26:16; 37:7;
47:22

**PREVIOUS** [2] - 9:12; 34:20

**PREVIOUSLY** [1] - 5:8

**PRIDE** [1] - 32:10

**PRIMA** [1] - 53:25

**PRINCIPAL** [1] - 62:21

**PROBLEM** [1] - 14:12

**PROCEDURAL** [3] - 22:16;
62:9; 64:5

**PROCEEDING** [1] - 63:14

**PROCESS** [3] - 13:6, 13;
63:5

**PRODUCED** [1] - 6:18

**PRODUCERS** [4] - 55:13;
56:6, 15; 73:4

**PRODUCTION** [1] - 7:23

**PROFESSION** [1] - 73:17

**PROMPTED** [1] - 32:14

**PRONGAY** [1] - 5:1

**PROPER** [1] - 22:5

**PROPERLY** [1] - 73:21

**PROPERTY** [7] - 25:8; 29:9;
32:1; 47:21, 24; 48:3

**PROPOSITION** [2] - 25:5;
68:8

**PROPRIETARY** [1] - 71:1

**PROTECT** [11] - 26:8, 13, 17,
23; 27:5; 28:10, 14; 32:6;
44:14

**PROTECTED** [1] - 50:6

**PROTECTING** [3] - 27:2;
61:14, 17

**PROTECTIVE** [1] - 31:18

**PROVIDE** [3] - 6:9; 19:1;
71:6

**PROVIDES** [1] - 60:24

**PUBLIC** [10] - 18:9, 13;
33:11; 43:13, 16; 47:24;
60:14; 61:8; 67:2

**PUBLICATION** [36] -
5:23-25; 7:4, 20; 14:21;
18:9, 13; 19:14, 16, 23;
24:9; 26:10, 13, 18-19;
27:6; 28:4, 6, 10, 15; 32:6;
33:2; 34:19; 35:16; 38:3;
55:21; 57:11; 58:21; 61:22;
67:21, 23

**PUBLICATIONS** [5] - 5:22;

56:23, 25; 64:22
**PUBLISH** [3] - 19:24; 53:24; 59:5
**PUBLISHED** [13] - 8:6; 10:18; 12:7; 17:21; 18:16; 19:13; 21:1, 10; 22:10; 28:15, 17; 59:12
**PUBLISHER** [2] - 31:20; 53:18
**PUBLISHING** [6] - 28:1; 52:22; 53:2; 59:20; 62:4; 67:2
**PURPORT** [2] - 29:14; 48:16
**PURPORTED** [1] - 51:23
**PURPORTS** [1] - 55:8
**PURPOSE** [5] - 27:25; 31:12; 46:8; 47:1; 49:17
**PURPOSES** [13] - 12:22; 23:11; 24:20; 34:15; 39:11; 42:18; 47:11; 48:2, 14; 49:3, 5; 52:23; 62:25
**PUT** [12] - 14:16; 19:14; 20:20; 22:5, 23, 25; 28:8; 31:7; 40:5; 41:8; 62:15; 74:16
**PUTTING** [3] - 49:25; 59:2; 70:13
**QUALIFICATION** [1] - 71:2
**QUESTIONING** [1] - 43:4
**QUESTIONS** [8] - 9:2, 4; 24:23; 53:13; 64:20; 65:23; 68:12; 74:12
**QUITE** [1] - 47:12
**QUOTATION** [6] - 45:9; 48:17; 66:25; 67:1; 70:11
**QUOTE** [6] - 29:14; 46:10; 47:18; 48:2
**QUOTES** [1] - 70:13
**QUOTING** [1] - 15:24
**RAISE** [1] - 27:18
**RAISED** [4] - 9:8; 24:8, 13; 74:13
**RATHER** [2] - 7:18; 9:3
**REACH** [1] - 69:24
**REACHED** [2] - 34:18; 38:6
**READ** [11] - 11:17; 19:12; 27:13, 15; 32:11; 52:8; 55:7; 56:10; 57:13; 66:6; 69:21
**READING** [4] - 13:3; 44:17; 54:3; 68:21
**REALLY** [16] - 5:23; 9:11; 12:23; 19:24; 24:3; 32:9; 35:18; 39:23; 41:14; 44:25; 49:24; 55:24; 57:15; 60:17; 73:5
**REASON** [5] - 23:8; 49:19; 50:4, 12; 60:14
**REASONABLE** [1] - 70:23
**REASONS** [3] - 49:1, 23;

70:15
**RECEIVE** [1] - 61:2
**RECEIVING** [1] - 60:25
**RECESS** [1] - 74:21
**RECOGNITION** [1] - 60:6
**RECOGNIZE** [1] - 26:18
**RECOGNIZING** [1] - 14:20
**RECORD** [27] - 5:11; 6:3; 7:10; 8:2; 9:21; 10:6, 13; 11:12; 15:2; 16:7; 17:15; 21:4; 23:2; 38:10; 40:11, 22; 47:5; 53:1, 16; 62:16, 19; 65:19; 66:17; 72:14
**RECORDING** [1] - 72:19
**REFER** [4] - 16:7; 34:7; 66:9
**REFERENCE** [9] - 14:2, 25; 15:8; 19:5; 20:22; 23:14; 65:7, 24
**REFERENCES** [1] - 64:25
**REFERRED** [8] - 18:15; 35:6; 64:25; 65:6; 68:18, 22; 71:13
**REFERRING** [5] - 10:14; 18:24; 19:10; 20:10; 73:5
**REFERS** [4] - 12:4, 6; 56:23; 73:2
**REGARDED** [3] - 31:15, 17
**REGARDING** [2] - 26:24; 29:6
**REGISTER** [3] - 13:23; 16:22; 40:20
**REGISTERED** [1] - 61:23
**REGISTRATION** [1] - 53:25
**REINFORCES** [1] - 16:3, 13
**RELATED** [3] - 41:25; 56:25; 64:21
**RELATES** [1] - 73:22
**RELATING** [1] - 56:24
**RELATIVELY** [1] - 74:17
**RELIABILITY** [1] - 47:9
**RELIABLE** [1] - 47:10
**RELY** [2] - 26:6; 38:18
**REMAINING** [1] - 60:24
**REMEMBER** [3] - 40:12; 52:21; 72:10
**REMOVES** [1] - 67:6
**RENEWAL** [5] - 35:11, 14; 54:10, 17, 24
**RENEWALS** [5] - 35:7; 55:20; 56:24; 57:10, 19
**RENEWED** [1] - 33:10
**REPEATEDLY** [1] - 54:7
**REPEATING** [1] - 55:21
**REPLY** [5] - 8:16-18; 74:10, 15
**REPORTER** [3] - 10:25; 38:9; 48:6
**REPORTING** [1] - 45:13
**REPOSED** [1] - 58:19
**REPRODUCED** [1] - 66:17

**REPRODUCTION** [2] - 45:1; 67:3
**REQUIRE** [5] - 6:12; 25:9; 50:7; 51:6
**REQUIRED** [1] - 25:1
**REQUIREMENT** [6] - 25:2; 41:11; 50:4; 61:13; 70:7
**REQUIRING** [1] - 50:21
**REQUISITE** [1] - 42:18
**RESIGN** [1] - 47:23
**RESIGNED** [3] - 29:8; 31:25; 47:20
**RESOLUTION** [1] - 24:13
**RESPECT** [13] - 7:17; 13:17; 29:15; 35:2; 38:25; 41:4; 44:18; 55:14; 59:17; 63:4; 64:6, 8; 74:10
**RESPECTFULLY** [1] - 13:10
**RESPONSE** [3] - 7:14; 19:13; 66:18
**REST** [3] - 11:21; 13:12; 20:21
**RESUBMIT** [1] - 63:1
**RETICENT** [1] - 27:2
**RETRIEVED** [1] - 8:9
**RIFKIN** [65] - 5:25; 6:14; 7:8, 13; 8:24; 9:7, 20; 10:2, 8, 11, 15; 11:1, 16; 12:3; 13:10, 17; 15:14, 17, 21; 17:1; 18:14; 19:9; 20:14, 19; 21:22; 22:13; 23:6, 18; 24:4, 16, 18, 22; 25:13, 18, 21; 26:1, 4, 16; 27:17, 21; 28:20; 29:16, 20; 30:2, 6, 13; 31:10, 13; 33:1, 7; 34:3, 21; 35:9; 36:8; 38:14; 64:11; 68:16, 18; 69:16; 70:6; 71:16, 19, 25; 72:7; 74:20
**RIFKIN** [7] - 9:5; 38:17; 49:15; 62:8; 63:19; 64:3; 74:10
**RIGHTS** [57] - 28:21; 29:10; 30:25; 33:14, 20-21, 25; 35:22; 36:2, 15, 22; 37:1, 3, 5, 7-9, 14-15, 22-23; 41:15; 46:24; 47:15; 49:9; 51:21; 52:2, 11; 53:9; 54:15; 55:19; 56:13, 18, 21; 57:2, 8, 10, 17; 59:23; 60:12-14; 64:9; 67:1, 3; 71:13, 18; 72:9, 11; 73:1, 4-5, 7, 9, 13, 20
**RIPENED** [1] - 26:14
**RISK** [1] - 50:23
**ROBY** [1] - 25:11
**ROHAUER** [1] - 49:20
**ROYALTIES** [2] - 61:2, 5
**RULE** [9] - 8:19, 23; 47:2; 49:2; 50:17; 70:8, 19

**RUN** [1] - 73:18
**SAKE** [1] - 44:5
**SALE** [4] - 36:1; 55:21; 57:11; 58:21
**SANG** [2] - 12:12; 21:19
**SAT** [2] - 40:17; 45:10
**SATISFIED** [3] - 17:10; 70:6
**SATISFY** [1] - 45:25
**SCHOOL** [8] - 12:13; 13:19; 14:9; 16:9; 20:23; 21:19; 40:15; 69:3
**SCHOOLTEACHER** [1] - 16:9
**SCOPE** [4] - 34:24; 46:24; 53:11; 56:3
**SECOND** [13] - 19:1, 4; 34:17, 22; 35:17; 41:22; 42:19; 46:5; 58:1; 64:4; 65:16; 71:2
**SECOND** [3] - 39:2, 4; 42:5
**SECOND-TO-THE-LAST** [1] - 64:4
**SECONDARY** [1] - 6:21
**SECTION** [1] - 61:20
**SECURED** [1] - 14:3
**SEE** [3] - 41:3; 62:9; 63:13
**SEEM** [5] - 11:24; 26:6; 47:17; 73:18
**SENSE** [4] - 42:12; 59:8; 61:14; 63:10
**SENTENCE** [2] - 14:19; 20:20
**SEPARABLE** [1] - 39:11
**SEPARATE** [1] - 6:14
**SEPARATELY** [1] - 21:9
**SET** [4] - 23:22; 39:17; 57:16; 63:6
**SETTLEMENT** [1] - 53:15
**SETTLING** [2] - 60:5; 61:4
**SEVEN** [2] - 8:18; 59:12
**SEVERAL** [1] - 11:6
**SHALL** [2] - 62:22; 63:22
**SHAPIRO** [4] - 39:2, 16; 67:14; 68:1
**SHEET** [15] - 52:22, 24-25; 53:1, 6, 24; 54:7; 55:22; 56:3, 22-23; 57:12; 59:21; 61:22
**SHORT** [1] - 74:17
**SHOW** [3] - 8:8; 49:16; 64:8
**SHOWING** [2] - 25:16; 46:16
**SHOWS** [2] - 39:22; 40:16
**SIDE** [3] - 63:18; 64:14
**SIDED** [2] - 17:16; 38:11
**SIDES** [3] - 21:23; 23:2; 62:13
**SIGHT** [1] - 24:10
**SIGNED** [3] - 29:23; 30:15, 17

**UNITED  STATES  DISTRICT  COURT**

**SIGNIFICANCE** [2] - 6:5; 36:18
**SIGNIFICANT** [1] - 6:24
**SILENT** [2] - 73:11, 13
**SIMPLE** [1] - 67:11
**SIMPLY** [5] - 28:4; 41:14; 68:1, 6; 71:9
**SING** [5] - 14:11, 14; 17:11; 19:3; 40:12
**SINGING** [4] - 27:12; 40:15; 48:6; 72:23
**SINGLE** [3] - 14:21; 17:4; 39:7
**SINGULAR** [2] - 65:25; 66:12
**SISTER** [7] - 9:24; 12:4; 18:22; 29:22; 39:25; 40:10
**SISTERS** [15] - 7:19; 16:11; 21:7, 11; 23:16; 27:4; 30:16; 39:24; 40:8, 25; 43:23, 25; 53:23; 60:25; 61:7
**SISTERS'** [3] - 53:20; 60:7; 68:23
**SIT** [2] - 7:1; 32:20
**SITUATION** [2] - 40:14; 49:7
**SIX** [1] - 68:15
**SIXTY** [1] - 68:15
**SKIP** [2] - 9:4; 55:5
**SLIPPED** [2] - 61:9; 62:5
**SLOW** [1] - 10:24
**SMALL** [1] - 13:5
**SMITH** [1] - 29:21
**SOLD** [1] - 66:22
**SOMEONE** [3] - 30:13; 33:18, 20
**SOMETIMES** [1] - 70:12
**SOMEWHAT** [1] - 71:12
**SONG** [27] - 6:17; 10:17; 18:15, 20, 25; 19:6, 11, 17, 23; 20:2, 6, 25; 22:10; 26:14; 27:2; 28:2; 35:12; 54:8, 21; 56:24; 67:22; 69:2; 72:3
**SONG** [59] - 7:5; 11:6, 10; 13:13; 14:2, 9, 13, 17; 15:4, 23-24; 16:2, 5-6, 10, 12, 21; 17:9, 17, 21; 19:19; 20:9, 24; 21:5; 22:9; 23:14; 24:9; 26:2; 28:5; 30:1, 18; 32:8; 33:11, 22; 36:9; 39:5; 40:25; 47:16; 53:3; 55:16; 56:20; 58:22; 60:8; 61:3, 16; 65:25; 66:1, 3, 11-12, 19; 67:5; 69:14, 16
**SONGBOOK** [8] - 5:21; 28:16; 34:16, 19; 54:16, 22
**SONGBOOK-TYPE** [1] - 5:21
**SONGS** [31] - 10:16, 19, 21-22; 14:22; 18:5, 8, 16, 23; 19:6, 10-11, 17, 24;

22:4; 28:1; 37:22; 54:8; 55:14, 18, 21-22; 56:10; 57:11; 64:25; 65:6; 68:25; 69:4
**SOON** [1] - 62:18
**SORRY** [12] - 11:2; 15:13; 22:13; 33:4; 40:23; 47:18; 53:12; 64:10; 68:15; 71:22, 24
**SORT** [5] - 9:4; 43:19; 48:12; 51:20; 59:25
**SOUGHT** [1] - 51:22
**SOUND** [6] - 53:8; 72:16; 73:1, 4, 12
**SOUNDS** [1] - 42:23
**SPEAKING** [1] - 10:25
**SPECIFICALLY** [1] - 53:17
**SPEND** [1] - 52:9
**SPENT** [1] - 6:22
**SPOKEN** [1] - 71:20
**SPREAD** [1] - 37:21
**SQUARED** [2] - 43:20
**STAND** [3] - 25:4; 47:14; 49:24
**STANDARD** [5] - 38:25; 41:3; 48:4; 49:19; 51:3
**STANDARDS** [1] - 74:13
**STANDING** [1] - 29:3
**STANDPOINT** [2] - 23:20; 62:9, 14
**STANDS** [1] - 74:21
**STAR** [1] - 10:23
**STARK** [1] - 20:6
**START** [3] - 9:3; 38:15; 64:4
**STARTING** [1] - 62:11
**STATEMENT** [11] - 26:8; 27:22; 28:9; 45:16; 47:10; 48:23; 51:11; 70:10, 15, 21; 71:12
**STATEMENTS** [6] - 6:13; 27:8; 45:12, 15; 61:25; 70:22
**STATUTE** [1] - 50:7
**STATUTORY** [2] - 25:1; 33:24
**STEP** [2] - 38:24; 45:17
**STEPS** [2] - 44:4; 61:4
**STILL** [4] - 17:6; 49:3; 51:19; 60:21
**STIPULATED** [1] - 22:21
**STORIES** [25] - 10:17; 18:15, 21, 25; 19:6, 11, 17, 23; 20:2, 7, 25; 22:10; 26:14; 27:3; 28:2; 35:12; 54:8, 21; 56:24; 67:22; 69:2; 72:3
**STRANGERS** [1] - 39:22
**STUDENTS** [2] - 12:6; 16:8; 20:23
**SUBJECT** [3] - 8:14; 24:9; 25:24

**SUBLICENSES** [1] - 55:13
**SUBLICENSING** [1] - 53:8
**SUBMISSION** [1] - 74:14
**SUBMIT** [6] - 5:8, 15, 21; 8:14, 16; 73:25
**SUBSEQUENT** [6] - 17:5, 13; 51:20; 63:14; 68:5; 69:10
**SUBSEQUENTLY** [3] - 16:4; 38:23; 68:4
**SUBSTANCE** [2] - 6:4; 24:3
**SUCCESSES** [1] - 58:7
**SUE** [1] - 33:20
**SUED** [2] - 31:18; 36:19
**SUFFICIENT** [5] - 25:11; 32:2, 4; 44:5; 73:12
**SUFFICIENTLY** [1] - 47:10
**SUGGEST** [3] - 20:15; 49:11; 72:11
**SUGGESTED** [2] - 22:6; 23:13
**SUGGESTION** [1] - 17:19
**SUGGESTIVE** [1] - 11:24
**SUGGESTS** [2] - 55:25; 57:17
**SUING** [2] - 33:18; 59:24
**SUIT** [1] - 29:23
**SUMMARY** [15] - 10:6; 22:17, 19, 23; 23:11, 20, 22; 24:14; 38:12; 40:22; 48:19; 53:16; 63:5, 11; 72:14
**SUMMY** [4] - 7:4, 18; 8:1, 4; 15:7-9, 11, 23; 16:11; 17:17; 21:4, 17; 33:6; 35:18, 23; 36:1; 37:12, 21; 40:24; 50:14; 51:18, 21; 52:22; 53:1, 15, 18, 23; 54:24; 55:12, 19; 56:1, 3, 8; 57:2, 9, 17; 58:14; 59:12; 62:4; 64:10; 66:14, 21; 67:6; 68:20; 69:11
**SUMMY'S** [7] - 16:1; 21:4; 23:14; 35:12; 59:20; 64:15; 68:22
**SUNDAY** [1] - 69:3
**SUNG** [2] - 29:25; 30:11
**SUPERIOR** [1] - 18:12
**SUPPLEMENT** [3] - 5:11, 14; 6:3
**SUPPORT** [4] - 6:12; 9:15; 51:14; 68:8
**SUPPORTED** [3] - 7:14; 70:17; 71:4
**SUPPORTS** [1] - 67:15
**SUPPOSE** [1] - 22:1
**SUPPOSED** [1] - 5:13
**SUPPOSITION** [1] - 7:3
**SUSCEPTIBLE** [1] - 13:3
**SYNC** [1] - 72:18
**SYNCHRONIZING** [2] - 72:18

**SYNONYMOUS** [2] - 71:14; 72:12
**TALKIE** [1] - 73:8
**TALKIES** [1] - 73:6
**TALKS** [7] - 32:11; 34:16, 22; 54:8; 67:18
**TEACHERS** [2] - 26:3; 29:22
**TEACHING** [3] - 18:11; 26:2; 31:8
**TECHNICAL** [1] - 23:20
**TECHNICALLY** [1] - 48:15
**TEMPORAL** [2] - 15:8; 69:9
**TEND** [4] - 9:15; 49:15; 51:19; 64:8
**TENDS** [1] - 71:3
**TERM** [1] - 13:23
**TERMS** [4] - 25:24; 27:10; 45:5; 62:4
**TEST** [4] - 12:23; 13:20; 14:9; 50:25
**TESTIFIES** [1] - 70:12
**TESTIFY** [1] - 63:22
**TESTIMONY** [5] - 9:22; 10:6; 16:5; 20:21; 40:16
**THE'** [1] - 46:10
**THEMSELVES** [1] - 26:23
**THEREBY** [1] - 26:12
**THEREIN** [4] - 35:7; 55:15
**THEREOF** [2] - 55:20; 57:10
**THEY'VE** [1] - 58:15
**THIRD** [4] - 28:25; 34:14; 37:25; 61:2
**THOUSANDS** [3] - 29:25; 30:11, 19
**THREE** [1] - 34:13
**THROW** [2] - 50:22; 51:3
**TIES** [1] - 26:21
**TIP** [1] - 52:13
**TITLE** [1] - 67:5
**TODAY** [3] - 52:15; 70:1; 72:17
**TOGETHER** [28] - 10:20; 12:2, 7; 14:23; 15:5; 16:11, 14; 17:21; 19:24; 20:25; 31:7, 11, 14; 33:3; 36:24; 37:2, 6; 39:20; 40:5; 43:14; 45:15; 50:1, 10; 51:4; 64:17; 74:16
**TOLLES** [1] - 5:3
**TOOK** [1] - 49:14
**TOP** [2] - 18:18; 74:3
**TOTALITY** [10] - 21:13, 16; 23:13; 31:14; 49:11; 50:9, 24; 61:18
**TOWARD** [1] - 11:8
**TRANSCRIPT** [6] - 13:12; 16:7; 18:24; 27:24; 39:21; 52:8
**TRANSFER** [3] - 52:11; 62:12; 66:6

**TRANSFERRED** [5] - 51:16; 52:2; 60:12, 14; 66:23
**TRANSFERRING** [1] - 60:6
**TRANSFERS** [1] - 60:10
**TREAT** [1] - 48:23
**TREE** [5] - 29:1; 50:1
**TREES** [1] - 31:3
**TRIABLE** [11] - 21:20, 24-25; 22:19, 24; 23:1, 21; 27:18; 62:10, 12; 63:7
**TRIAL** [8] - 22:20, 22; 23:23; 62:13; 63:9, 12, 20
**TRIED** [1] - 63:7
**TRIER** [4] - 22:17, 25; 24:1, 14
**TRIER-OF-FACT** [1] - 22:25
**TRIES** [1] - 42:15
**TROUBLE** [1] - 33:18
**TRUE** [6] - 35:4; 47:1; 54:12; 56:13, 17; 70:24
**TRULY** [2] - 21:12; 33:22
**TRUST** [5] - 58:14, 17, 19
**TRUSTWORTHINESS** [3] - 70:18; 71:5, 7
**TRY** [4] - 14:1; 52:9; 64:11; 67:7
**TRYING** [14] - 8:1; 9:14; 13:4; 22:15; 26:8, 17; 27:5, 11; 28:9, 14; 32:6; 43:2; 55:25
**TUNE** [4] - 13:7; 20:11; 39:14; 40:16
**TURN** [6] - 15:22; 34:20; 56:4; 58:9; 65:15; 68:13
**TURNED** [1] - 59:25
**TWICE** [2] - 65:1, 3
**TWINKLE** [2] - 10:22
**TWO** [25] - 6:14, 23; 9:20; 12:25; 13:4; 16:6; 17:3; 18:25; 22:3; 35:4; 39:6, 22-23; 40:8; 41:11; 43:24; 45:19; 48:13, 15; 53:13; 57:1; 61:14; 65:1, 19, 22
**TYPE** [3] - 5:21; 31:11; 73:21
**TYPICALLY** [2] - 22:16; 25:9
**UNAVAILABLE** [1] - 70:21
**UNAVOIDABLE** [1] - 69:24
**UNCONTEMPLATED** [1] - 56:4
**UNCONTRADICTED** [1] - 54:1
**UNDER** [10] - 44:10; 47:11; 50:4; 54:21, 24; 55:19; 57:2, 9, 17; 72:4
**UNDERLYING** [1] - 39:18
**UNDERSTOOD** [4] - 46:18; 47:7, 14
**UNDIVIDED** [1] - 43:11
**UNDOUBTEDLY** [2] - 13:8; 69:2
**UNFORTUNATELY** [1] -

65:18
**UNIDENTIFIED** [1] - 65:17
**UNIFIED** [2] - 16:14; 17:4
**UNISON** [1] - 53:3
**UNIT** [1] - 39:8
**UNITARY** [1] - 13:2
**UNLIKE** [1] - 58:9
**UNLIKELY** [2] - 62:18, 20
**UNQUESTIONABLY** [2] - 67:19
**UP** [12] - 5:11; 10:9; 13:8; 18:18; 30:5; 47:14; 50:1; 51:3; 55:22; 57:16; 61:12; 62:7
**USAGE** [1] - 72:15
**USES** [1] - 27:12
**USUAL** [1] - 8:21
**VACATION** [1] - 12:10
**VACUUM** [1] - 28:22
**VAGUE** [1] - 18:6
**VALUE** [1] - 60:23
**VARIATION** [1] - 16:16
**VARIETY** [1] - 62:10
**VARIOUS** [22] - 5:10, 21; 6:8; 11:25; 12:1; 18:3; 20:10, 17; 25:25; 27:15; 31:8, 13; 34:8, 17; 36:2; 58:21; 65:24; 66:7, 19, 23
**VARIOUSLY** [5] - 58:22; 59:9; 66:1, 13, 19
**VERSE** [1] - 16:23
**VERSES** [1] - 16:24
**VERSION** [3] - 16:10; 19:18; 53:3
**VERSIONS** [9] - 11:6, 22, 25; 12:1, 8; 18:3; 19:20, 22; 54:8
**VERSUS** [2] - 40:23; 68:2
**VIEW** [9] - 9:10, 16; 19:8; 21:6; 22:8; 23:8; 48:17; 62:23; 71:17
**VIEWS** [1] - 9:5
**WAIT** [2] - 34:12
**WANTS** [1] - 42:17
**WARNER'S** [1] - 15:7
**WASHINGTON** [1] - 46:14
**WAYS** [1] - 25:9
**WEIGH** [1] - 51:4
**WEIGHT** [2] - 46:22; 47:9
**WHEREAS** [1] - 35:3
**WHITE** [1] - 28:11
**WHOLE** [2] - 13:2; 49:14
**WITNESS** [1] - 70:12
**WITNESSES** [3] - 63:15, 22
**WORD** [5] - 14:19, 24; 22:3; 66:12; 73:12
**WORDS** [28] - 11:10; 12:16-18, 20-22, 24; 13:7; 14:5, 8; 15:25; 19:9, 19;

22:5; 30:4; 39:5; 40:18; 47:20; 48:1; 55:22; 67:11, 16; 69:6, 11-12, 19
**WORKS** [13] - 40:3; 53:19; 55:22; 64:23; 65:8, 12; 67:24; 68:2; 69:1, 4
**WORLD** [2] - 47:16; 67:1
**WORLD'S** [1] - 19:15
**WRAP** [1] - 62:7
**WRITE** [3] - 12:20, 22; 18:9
**WRITING** [9] - 13:13; 17:20; 18:20, 22; 21:15; 30:22; 39:19; 69:9
**WRITTEN** [16] - 10:19, 21; 12:19; 13:18; 14:8; 20:9; 21:14; 22:9; 26:25; 28:7; 40:18; 41:1; 67:17; 69:6, 14, 22
**WROTE** [17] - 11:5, 10; 12:16; 14:23; 15:5; 16:5, 8; 17:18; 18:10; 21:7; 45:9; 61:15; 69:18, 23
**YEAR** [2] - 18:7; 39:17
**YEAR** [2] - 11:8; 12:10
**YEARS** [3] - 6:23; 40:3; 59:12
**YESTERDAY** [1] - 6:15
**YORK** [4] - 29:5, 12-13; 38:9
**YOUNGEST** [3] - 14:3, 14; 17:11

**UNITED STATES DISTRICT COURT**