E-FILED-9/22/15

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| *Rupa Marya, et al.* | CASE NO. CV 13-4460-GHK (MRWx) |
| **Plaintiffs,** | |
| v. | MEMORANDUM AND ORDER RE: (1) CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 179); (2) DEFENDANTS' MOTION FOR LEAVE TO FILE SUPPLEMENTAL EVIDENCE (Dkt. 223); and (3) PLAINTIFFS' EX PARTE APPLICATION TO SUPPLEMENT THE RECORD (Dkt. 224) |
| *Warner/Chappell Music, Inc., et al.* | |
| **Defendants.** | |

This matter is before us on the Parties' Cross-Motions for Summary Judgment ("Cross-Motions"). On March 23, 2015, we held a hearing on the Cross-Motions. (Dkt. 207 (minutes); Dkt. 208 (transcript).) On May 18, 2015, we ordered additional briefing, (Dkt. 215), and on July 29, 2015, we held a further hearing. (Dkt. 229 (minutes); Dkt. 230 (transcript).) As the Parties are familiar with the facts, we will repeat them only as necessary. Accordingly, we rule as follows:

## I.    Background

Plaintiffs Rupa Marya, Robert Siegel, Good Morning to You Productions Corp., and Majar Productions, LLC (collectively, "Plaintiffs") filed this class action to declare invalid Defendants Warner/Chappell Music, Inc. ("Warner/Chappell") and Summy-Birchard, Inc.'s ("Summy-Birchard") (collectively, "Defendants") purported copyright in the famous song *Happy Birthday To You* ("*Happy Birthday*").  (Dkt. 95, Fourth Amended Consolidated Complaint ("FACC").)

The classic melody of *Happy Birthday* is the same as that of another song called *Good Morning To All* ("*Good Morning*") (hereafter, the "*Happy Birthday/Good Morning* melody").  (Statement of Uncontroverted Facts ("SUF") P17.)  At some time before 1893, Mildred Hill and Patty Hill[1] wrote *Good Morning*.  (SUF P3, P5.)  Mildred composed the music with Patty's help, and Patty wrote the lyrics.  (SUF P6.)  The lyrics of *Good Morning* are similar to those of *Happy Birthday*:

| *Good Morning* | *Happy Birthday* |
|---|---|
| Good morning to you | Happy birthday to you |
| Good morning to you | Happy birthday to you |
| Good morning dear children | Happy birthday dear [NAME] |
| Good morning to all. | Happy birthday to you. |

In 1893, Mildred and Patty assigned their rights to the manuscript containing *Good Morning* and other songs to Clayton F. Summy ("Mr. Summy").  (SUF P7.)  A copy of the assignment is not available, but the Parties do not dispute that the assignment

---

[1] For convenience and to avoid confusion, we will refer to the Hill sisters by only their first names throughout our Order, as the Parties have largely done in their briefing.

occurred.  (SUF P8.)  That same year, Mr. Summy published the manuscript in, and filed for copyright registration of, a songbook titled *Song Stories for the Kindergarten* ("*Song Stories*").  (SUF P10, P13.)  After Mildred died, Jessica Hill, a third Hill sister, filed for renewal of the copyright to *Song Stories* in 1921 as one of Mildred's heirs.  (SUF P44.)  Under the Copyright Act of 1909, works could receive copyright protection for two consecutive 28-year terms.  *See* 17 U.S.C. § 24 (1909 Act).  Accordingly, copyright protection for *Song Stories*, including the song *Good Morning*, expired in 1949.

The origins of the lyrics to *Happy Birthday* (the "*Happy Birthday* lyrics") are less clear.  The *Happy Birthday* lyrics did not appear in *Song Stories*.  (SUF P18.)  The first reference to them in print appeared in an article from 1901 in the *Inland Educator and Indiana School Journal*:

> A birthday among the little people is always a special occasion.  The one who is celebrating is decorated with a bright flower or badge and stands in the center of the circle while the children sing "Happy birthday to you."

(Joint Appendix ("J.A.") 8.)  The full *Happy Birthday* lyrics did not appear in the article.  (SUF P27.)  In 1909, a prayer songbook similarly made reference to the song but did not include the lyrics.  (J.A. 9.)

Publication of the full *Happy Birthday* lyrics first occurred in a 1911 book titled *The Elementary Worker and His Work*.  (J.A. 11 at 290; SUF P34.)  The book did not credit anyone with authorship of the lyrics, but mentioned that *Happy Birthday* and *Good Morning* shared the same tune*,* and noted that the latter song had been published in *Song Stories*.  (J.A. 11 at 290, 294; SUF P35.)  *The Elementary Worker and His Work* was registered for a copyright in 1911.  (J.A. 12; SUF P36.)  After 1911, *Happy Birthday* appeared in other publications—*Harvest Hymns* in 1924 and *Children's Praise and*

*Worship* in 1928.[2]  (J.A. 18, 21; SUF P49, P54.)  These publications similarly did not credit anyone with creating the *Happy Birthday* lyrics.  (J.A. 18, 21.)  *Children's Praise and Worship* was registered for a copyright at the time of publication.  (J.A. 22; SUF P56.)  Next, in the early 1930s, *Happy Birthday* appeared in a series of movies—*Girls About Town*, *Bosko's Party*, *Strange Interlude*, *Baby Take a Bow*, *The Old Homestead*, and *'Way Down East*.  (J.A. 25-26, 30, 35, 39, 41; SUF P64-65, P69, P71, P78, P94, P102.)  Finally, in 1933, *Happy Birthday* was performed publically in the play *As Thousands Cheer*.  (J.A. 29; SUF P77.)

In 1934, Jessica filed a lawsuit against the producers of *As Thousands Cheer* for copyright infringement (hereafter, the "*As Thousands Cheer* lawsuit").  (J.A. 32; SUF P81.)  Notably, the basis for her infringement claim was not that the producers had infringed any rights she allegedly held in the *Happy Birthday* lyrics.  Rather, she alleged that the defendants infringed the copyright in *Good Morning*, which included the common melody for the two songs.  (J.A. 32 at 584; SUF P81.)  *TIME* magazine, the *New York Times*, and the *New York Herald Tribune* all reported the *As Thousands Cheer* lawsuit.  (J.A. 34, 37, 90.)  Patty and Jessica were both deposed in that action.  (J.A. 87; SUF P96.)  In Patty's deposition, she claimed that she wrote the lyrics to *Happy Birthday* around the time *Good Morning* was created.  (J.A. 87 at 1007.)  The outcome of the *As Thousands Cheer* lawsuit is not clear from the record before us, but neither party claims it has any bearing on the instant action.

In 1935, the Clayton F. Summy Company ("Summy Co.") registered copyrights to two works entitled "Happy Birthday to You"—registration numbers E51988 and E51990.  (J.A. 44, 48.)  Defendants argue that E51990 is *the* publication that secured a federal

---

[2]As discussed below, Plaintiffs have supplemented the record with another publication of the *Happy Birthday* lyrics in 1922.

copyright in the *Happy Birthday* lyrics, and they have staked their claim to the lyrics on that registration.[3]

Our record does not contain any contractual agreement from 1935 or before between the Hill sisters and Summy Co. concerning the publication and registration of these works.  (SUF P111-12.)  What little information we have about the circumstances under which E51990 was published and registered comes from a federal lawsuit filed in 1942 by the Hill Foundation—an entity formed by Jessica and Patty[4]—against Summy Co. in the Southern District of New York (hereafter, the "Hill-Summy lawsuit").  (J.A. 50.)  The Amended Complaint, discussed in more detail below, alleged that Summy Co. had granted licenses to movie and play producers without the Hill sisters' authorization.  The Hill Foundation alleged that, in addition to an agreement between Mildred and Patty and Summy Co. concerning the copyright in *Song Stories* and *Good Morning* (the "First Agreement"), there was another agreement from 1934 and 1935 in which Jessica granted Summy Co. "a number of licenses" for "various piano arrangements of the song variously entitled 'GOOD MORNING TO ALL' or 'HAPPY BIRTHDAY TO YOU'" (the "Second Agreement").  (J.A. 50 at ¶ 24.)  In Summy Co.'s Answer to the Amended

---

[3] Though the Parties have also discussed registration E51988 in this litigation, we focus our attention on E51990 throughout this Order because, according to Defendants, the significance of E51988 is that it lends some weight to their argument that E51990 registered the lyrics.  (*See* Hr'g Tr. of Mar. 23, 2015 at 6:7-14 ("COURT: [I]s it your argument that E51990 covers the lyrics and E51988 really puts it into proper context as to why E51990 covers the lyrics?  MR. KLAUS: It is our position, Your Honor, that E51990 covers—was intended to cover the lyrics and does cover the lyrics.  And 51988 covers—it was intended to cover it on the same day, what we'll call the second verse, refers to it as the revised text.").)  The second verse to *Happy Birthday* found in E51988 has no commercial value and is not the subject of this action.

[4] The record is not actually clear on how the Hill Foundation was formed, but in 1942, Patty and Jessica assigned their rights in the copyright to *Song Stories* to the Foundation.  (J.A. 49.)  Accordingly, it is a reasonable inference that they jointly formed the entity.

Complaint, it admitted that it had entered into the Second Agreement with Jessica, stating that she "assigned . . . various piano arrangements of . . . 'Good Morning To All'" to Summy Co.  (J.A. 51 at ¶ 18.)

In 1944, the Hill sisters and Summy Co. settled the Hill-Summy lawsuit by entering into a new agreement (the "Third Agreement").  (J.A. 54; SUF P141.)  The Hill sisters, via the Hill Foundation, assigned to Summy Co. all of their rights in eleven different copyrights, including E51990, E51988, and the *Song Stories* copyright.  (J.A. 54 at 702-03.)  After the Third Agreement, Summy Co. filed three lawsuits alleging copyright infringement related to *Happy Birthday*.  (J.A. 55-57.)  E51990 is not mentioned in the complaints for any of these lawsuits.  (*Id.*)  When describing the song *Happy Birthday,* the complaints each said that "[o]ne of the songs in [*Song Stories*], entitled 'Good Morning To All', later became popularly known as 'Happy Birthday to You', the opening lines of the verses later written by Patty S. Hill for the song."  (J.A. 55 at ¶ 15, 56 at ¶ 15, 57 at ¶ 15.)  None of the lawsuits asserted infringement of any purported right that Summy Co. had to the lyrics from its ownership of E51990.

On April 21, 2014, Plaintiffs filed their FACC in this action.  (Dkt. 95.)  Plaintiffs contend that Defendants do not own a copyright in the *Happy Birthday* lyrics and that they should be compelled to return the "millions of dollars of unlawful licensing fees" they have collected by wrongfully asserting copyright ownership in the *Happy Birthday* lyrics.  (FACC at ¶ 4.)  We bifurcated this case on October 16, 2013.  (Dkt. 71.)  We will first determine whether Plaintiffs are entitled to a declaratory judgment invalidating Defendants' purported claim of copyright in the lyrics.  (*Id.* at 4.)

## II.   New Evidence

Both Parties recently sought to add new evidence to the summary judgment record after the Cross-Motions had been taken under submission.  (Dkts. 223-24.)  In particular, Plaintiffs seek to add evidence regarding the 1922 publication of the fourth revised edition of *The Everyday Song Book*.  *Good Morning* and *Happy Birthday* are printed as one song called "Good Morning and Birthday Song" in the book.  (Dkt. 225, Manifold Decl., Ex. C at 20.)  Below the title of the song, a caption reads: "Special permission through courtesy of The Clayton F. Summy Co."  (*Id.*)  Defendants do not oppose the introduction of this evidence into the record, but they dispute its significance.  As Plaintiffs' request to supplement the record is unopposed, we hereby **GRANT** that request.

Defendants seek to introduce new evidence regarding the deposit copy of E51990.  (Dkt. 223.)  The Copyright Office no longer has the deposit copy for E51990, and Plaintiffs have argued that the *Happy Birthday* lyrics may not have even appeared in the work that was deposited.  (*See, e.g*., Cross-Motions for Summary Judgment (hereafter, "Joint Brief") at 25.)  Defendants now proffer a copy of a work that was deposited with the British Museum on the same day that E51990 was registered, which they claim to have obtained recently.   (Defs.' Mot. to Supplement the Record, Ex. A.)   Plaintiffs argue that the introduction of this evidence is prejudicial because Defendants did not tell Plaintiffs that they were looking for a copy of the work from the British Museum during discovery.  We do not see how Plaintiffs are prejudiced by Defendants' failure to disclose their efforts to find the British Museum copy.  Plaintiffs were well aware of the dispute surrounding the deposit copy for E51990, and Defendants' disclosure of their earlier fruitless efforts would have had minimal, if any, impact on how Plaintiffs conducted discovery.  Accordingly, we hereby **GRANT** Defendants' request to supplement the record.

## III.   Summary Judgment Standard

We may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). On a motion for summary judgment, the district court's "function is not . . . to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

The moving party bears the initial responsibility to point to the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 987 (9th Cir. 2006) (citation and quotation marks omitted). If the moving party meets its initial burden of demonstrating that summary judgment is proper, "the nonmoving party must come forward with specific facts showing there is a *genuine issue for trial*" in order to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (emphasis in original) (internal quotation marks and citations omitted). Where the nonmoving party has the burden of proof at trial, the moving party can carry its initial burden either by submitting affirmative evidence that there is not a triable, factual dispute or by demonstrating that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case . . ." *Celotex Corp.*, 477 U.S. at 322. The burden then shifts to the nonmoving party "to designate specific facts demonstrating the existence of genuine issues for trial." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010) (citing *Celotex Corp.*, 477 U.S. at 324).

1    On cross-motions for summary judgment, we must consider each motion separately

2    to determine whether either party has met its burden with the facts construed in the light

3    most favorable to the nonmoving party.  *See Fair Hous. Council of Riverside Cty., Inc. v.*

4    *Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001).

5

6    **IV.    Burden of Proof in a Declaratory Judgment Action**

7

8        Defendants contend that the burden of proof lies with Plaintiffs on all issues

9    because the default rule places the burden of proof "on the party seeking relief."  *Schaffer*

10   *ex rel. Schaffer v. Weast*, 546 U.S. 49, 51 (2005).  The Supreme Court held otherwise in

11   *Medtronic, Inc. v. Mirowski Family Ventures, LLC*, 134 S. Ct. 843 (2014).  In *Medtronic*,

12   the plaintiff sought a declaratory judgment that its products did not infringe the

13   defendant's patents.  *Id.* at 847.  The Court placed the burden of proof on the patentee,

14   even though it was nominally the defendant.  *Id.* at 849.  The Court observed that *Schaffer*

15   articulated the basic rule for where the burden of proof lies, and it characterized

16   "declaratory judgment suits like the one at issue here" as an "exception to the basic rule."

17   *Id.* at 851.

18

19       We see no basis for distinguishing *Medtronic* from the instant action.  Here, too,

20   Plaintiffs have sought a declaratory judgment in the shadow of a threatened infringement

21   suit.  (*See, e.g.*, FACC at ¶ 122 ("Faced with a threat of substantial penalties for copyright

22   infringement, on or about March 26, 2013, plaintiff GMTY was forced to and did pay

23   defendant Warner/Chappell the sum of $1,500 for a synchronization license . . . .").)

24   Accordingly, just as in *Medtronic*, there is no reason to relieve the alleged owners of the

25   intellectual property of the usual burden of proof just because they are nominally the

26   defendants in this declaratory judgment action.  *See also Williams v. Bridgeport Music,*

27   *Inc.*, No. CV-13-6004-JAK (AGRx), 2014 WL 7877773, at *10 (C.D. Cal. Oct. 30, 2014)

28

1 (applying *Medtronic* to a declaratory judgment copyright case and concluding that the

2 defendants have the burden of proof).

3

4 **V.    Validity of Defendants' Copyright**

5

6       Defendants claim to have a copyright in the *Happy Birthday* lyrics.  As a musical

7 work, *Happy Birthday* has at least two copyrightable elements, the music and the lyrics,

8 and each element is protected against infringement independently.  *See* 1-2 *Nimmer on*

9 *Copyright* § 2.05 ("Suppose the plaintiff's work includes both music and 'accompanying'

10 words, but the defendant copies only the plaintiff's words, unaccompanied by his music,

11 or only his music, unaccompanied by the words.  It was clear under the 1909 Act, and

12 remains clear under the present Act, that . . . the copyright . . . will protect against

13 unauthorized use of the music alone or of the words alone, or of a combination of music

14 and words.").  The distinction between the music and the lyrics as copyrightable elements

15 is critical in this case because both Parties agree that the *Happy Birthday* melody was

16 borrowed from *Good Morning* and entered the public domain a long time ago.  The Parties

17 disagree only about the status of the *Happy Birthday* lyrics.  Defendants contend, in brief,

18 that the Hill sisters authored the lyrics to *Happy Birthday* around the turn of the last

19 century, held onto the common law rights for several decades, and then transferred them

20 to Summy Co., which published and registered them for a federal copyright in 1935.

21 Plaintiffs challenge nearly every aspect of this narrative.  They argue that the lyrics may

22 have been written by someone else, the common law copyrights in the lyrics were lost due

23 to general publication or abandonment before the lyrics were published, and the rights

24 were never transferred to Summy Co.[3]

25 _____

26       [3] Plaintiffs also argue that Warner/Chappell cannot establish its chain of title
   from Summy Co.  Plaintiffs presented this argument in a single paragraph of the
27 Cross-Motions.  (*See* Jt. Br. at 48-49.)  Because we resolve these Cross-Motions on
   other grounds, we decline to address this underdeveloped argument.
28

## A.     Presumption of Validity

Before we address the merits of the Parties' respective arguments, we must consider what evidentiary weight should be afforded to the registration certificate for E51990.  The 1909 Copyright Act, which governs E51990, did not require that a work be registered to obtain a federal copyright.  *See* 2-7 *Nimmer* § 7.16.  But registration was nonetheless highly desirable, not only because it was a precondition to the filing of an infringement suit, but also because, once registered, the certificate of registration "shall be admitted in any court as prima facie evidence of the facts stated therein."  17 U.S.C. § 209 (1909 Act); *see also* 17 U.S.C. § 410(c) (1976 Act) (providing for the presumption of validity in the modern Copyright Act).  Furthermore, "[a]lthough the 'facts' stated in a certificate of registration are limited to the date, name and description of the work, and name of the registration holder, a majority of courts have held that § 209 [of the 1909 Copyright Act] creates a rebuttable presumption that the certificate holder has met all the requirements for copyright validity."  *Acad. of Motion Picture Arts & Scis. v. Creative House Promotions, Inc.*, 944 F.2d 1446, 1451 (9th Cir. 1991).  Once a claimant shows that she has a certificate of registration, the burden of proof shifts to the opposing party who must "offer some evidence or proof to dispute or deny the [claimant's] prima facie case."  *United Fabrics Int'l, Inc. v. C&J Wear, Inc.*, 630 F.3d 1255, 1257 (9th Cir. 2011).

"The presumption . . . is not an insurmountable one, and merely shifts to the [challengers] the burden to prove the invalidity of the [] copyrights."  *Masquerade Novelty, Inc. v. Unique Indus., Inc.*, 912 F.2d 663, 668 (3d Cir. 1990).  The underlying rationale for the presumption of validity is that the Copyright Office implicitly determines whether a work is copyrightable whenever it issues a registration, and courts should defer to the Office's finding.  *See, e.g., Russ Berrie & Co. v. Jerry Elsner Co.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980) ("The presumption of validity attaching to copyright registration is of course a function of judicial deference to the agency's expertise.").  But when there is a

1  material mistake in the registration, the presumption of validity is rebutted, if not voided

2  altogether.  *See Data Gen. Corp. v. Grumman Sys. Support Corp.*, 36 F.3d 1147, 1163 (1st

3  Cir. 1994) ("We assume for argument's sake that a material error in a copyright deposit,

4  even if unintentional, may destroy the presumption of validity."); *Masquerade Novelty*,

5  912 F.2d at 668 n.5 (stating that if the registration contains "a material, but inadvertent

6  omission," it may be the correct approach "to deprive the plaintiff of the benefits of [the

7  presumption of validity] and to require him to establish the copyrightability of the articles

8  he claims are being infringed"); *Wilson v. Brennan*, 666 F. Supp. 2d 1242, 1251-52

9  (D.N.M. 2009) (following the approach suggested in *Masquerade Novelty* and *Data*

10  *General* in denying a copyright claimant any presumption of validity as a result of errors

11  in a registration); *see also Rouse v. Walter & Assocs., L.L.C.*, 513 F. Supp. 2d 1041, 1065

12  (S.D. Iowa 2007) (concluding that possession of a "belatedly filed [c]ertificate" with no

13  listed publication date did not, under the circumstances of the case, constitute "prima facie

14  evidence of the validity of the copyright"); *Gibson Tex, Inc. v. Sears Roebuck & Co.*, 11 F.

15  Supp. 2d 439, 442 (S.D.N.Y. 1998) ("[T]he failure to alert the Copyright Office to

16  relationships between the work for which registration is sought and prior works of others

17  endangers the presumption of validity. . . .  [T]he Court finds that Gibson's failure to

18  register the design as a derivative work rebuts the presumption of the copyright's

19  validity.").

20

21      Defendants claim that Summy Co. registered the *Happy Birthday* lyrics in E51990.

22  In 1935, a certificate of copyright registration was a very simple document consisting of

23  nothing more than a copy of the claimant's registration application and a certification

24  statement from the Copyright Office.[4]  *See United States Copyright Office, Compendium*

25  _____

26      [4] When these Cross-Motions were initially filed, both Parties presented what they claimed were the true certificates of registration for E51990 and E51988. (*Compare* J.A. 44 & 48, *with* J.A. 101 & 103.)  Since then, Defendants have conceded that Plaintiffs' proffered documents are the actual certificates.  (*See*

27

28  Defs.' Opp'n to Mot. to Excl., at 1 ("Plaintiffs are correct that the Copyright Office

1   *of U.S. Copyright Office Practices*, Third Edition (2014), § 2408 ("A[] . . . certificate for a
2   claim registered or renewed on or before December 31, 1977 consists of a photocopy of
3   the original application together with a preprinted certification statement containing the
4   registration or renewal number and the date of the certification."). The registration
5   application for E51990 stated that it was an "Application for Copyright for Republished
6   Musical Composition with New Copyright Matter." (J.A. 48.) In other words, E51990
7   was a derivative work. *See* 17 U.S.C. § 101 (1976 Act) ("A 'derivative work' is a work
8   based upon one or more preexisting works, such as a . . . musical arrangement . . . .").
9   The title of the musical composition was listed as "Happy Birthday to You." (J.A. 48.)
10  The author of the new copyright material was "Preston Ware Orem, employed for hire by
11  Clayton F. Summy Co." (*Id*.) In one blank space, the application prompted the claimant
12  to "[s]tate exactly on what new matter copyright is claimed . . . ." (*Id*.) For E51990, the
13  response read: "Arrangement as easy piano solo, with text." (*Id*.)

14

15      Defendants contend that this registration entitles them to a presumption of validity.
16  We disagree. Even assuming that the lyrics were printed in the deposit copy for E51990,[5]
17  it is unclear whether those lyrics were being registered, and therefore it is unclear whether
18  the Copyright Office determined the validity of Summy Co.'s alleged interest in the lyrics
19  in 1935. The "new matter" that the registration purported to cover was a piano

---

20  deems summary judgment Exhibits 48 and 44 (and not Exhibits 101 and 103) to be
21  the registration certificates for E51990 and E51988 . . . .").) Defendants' purported
    certificates are actually just records from the Copyright Office. (*Id*. at 6.) As such,
22  they do not have the same evidentiary significance as certificates of registration.

23      [5] On the same day that E51990 was registered, Summy Co. deposited with
24  the British Museum a copy of sheet music for a song called "Happy Birthday to
    You!" containing the *Happy Birthday* lyrics. (Defs.' Mot. to Supplement the
25  Record, Ex. A.) The Parties also dispute whether another piece of sheet music was
26  the deposit copy. (J.A. 106.) In light of our analysis regarding transfer below, we
    need not determine conclusively what the true deposit copy was because it does not
27  matter whether the lyrics were printed in the deposit copy of E51990 if the
28  purported copyright owner had no rights to those lyrics.

arrangement—a derivative version of another melody.  Defendants argue that since the arrangement was registered "with text," that meant that the *Happy Birthday* lyrics were part of the new matter being registered alongside the arrangement.  But the registration clearly listed "Preston Ware Orem" as the author of the new matter.  To our knowledge, no one has ever contended that Orem wrote the *Happy Birthday* lyrics.  Defendants even admit in their pleadings that Orem did not do so.  (*Compare* Dkt. 99, Answer to FACC at ¶ 97 ("[Defendants] admit[] the allegations in the second sentence of Paragraph 97."), *with* Dkt. 95, FACC at ¶ 97 ("Upon information and belief, Plaintiffs allege that Orem did not write the familiar lyrics to *Happy Birthday* . . . .").)  Therefore, the registration is flawed in any event.  If, as Defendants assert, the new matter being registered included the lyrics, then, contrary to the registration certificate, Mr. Orem could not have been the author of the new matter.  Conversely, if Mr. Orem were the author of the new matter, then the lyrics could not have been a part of the registration.

Defendants argue that we should overlook this "mistake"[6] and afford the registration a presumption of validity anyway because "[a]bsent intent to defraud and prejudice, inaccuracies in copyright registrations do not bar actions for infringement." *Harris v. Emus Records Corp.*, 734 F.2d 1329, 1335 (9th Cir. 1984); *see also Baron v. Leo Feist, Inc.*, 173 F.2d 288, 290 (2d Cir. 1949) (finding registration adequate for plaintiff to assert a copyright infringement suit, even though the certificate was "defective in form in not making clearer that copyright was claimed for the melodies as well as arrangements"); *Urantia Found. v. Burton*, 210 U.S.P.Q. (BNA) 217, 1980 WL 1176, at *3 (W.D. Mich. Aug. 27, 1980) ("Under 17 U.S.C. former section 209 the identity of the author of a work does not have to be disclosed in registering a copyright.  It follows that a misstatement as to authorship, unless made for some fraudulent purpose will not

---

[6] It would be accurate to characterize the failure to identify Patty as an author as a "mistake" only if E51990 was a registration of the lyrics.  As discussed more below, Defendants have no evidence that Summy Co. had any rights to the lyrics in 1935.

invalidate an otherwise valid copyright.  That is, the copyright remains valid as long as the claimant has a legitimate claim of copyright, regardless of who is the actual author.") (internal citation omitted).  This legal authority is inapposite because it has no bearing on the question of what evidentiary presumption can be drawn from the ownership of a copyright registration.  Because this registration does not list any Hill sister as the author or otherwise make clear that the *Happy Birthday* lyrics were being registered, we cannot presume this registration reflects the Copyright Office's determination that Summy Co. had the rights to the lyrics to copyright them.[7]

Given this facial and material mistake in the registration certificate, we cannot presume (1) that Patty authored the lyrics or (2) that Summy Co. had any rights to the

---

[7] Plaintiffs and Defendants have also submitted entries for E51990 from the U.S. Copyright Office's Catalog of Copyright Entries.  One is from 1935 when the work was first registered, and the other is from 1962 when the registration was renewed.  Neither entry helps to clarify whether the lyrics were registered.  The Copyright Office regularly published the Catalog to alert the public to registrations and renewals, and the Copyright Act of 1909 afforded the entries in the Catalog a presumption of validity, in addition to that afforded to registration certificates.  17 U.S.C. § 210 (1909 Act).  The 1935 Catalog entry for E51990 is largely the same as the registration—the work is described as a "pf. [piano forte] with w. [words]"—but it also says the work is "by Mildred J. Hill" and "arr[anged] [by] Preston Ware Orem."  (Dkt. 200, Klaus Decl., Ex. C.)  While the reason why the Copyright Office wrote this is not entirely clear, it appears that the Office took Mildred's name from the deposit copy and put it in the Catalog to identify the author of the original melody that Orem arranged.  (*See id.*, Ex. B.)  Notably, Patty's name is not on the deposit copy and does not appear in the Catalog.  The 1962 Catalog entry also described the work as "by Mildred J. Hill" and "arr[anged] [by] Preston Ware Orem" (with no mention of Patty Hill).  (J.A. 127.)  But it then added a new notation indicating that the new matter registered ("NM") in E51990 was an arrangement ("arr.")—without mentioning the "words" or "text" as new.  While these Card Catalog entries may be generally entitled to a presumption of validity, the discrepancies noted above are sufficient to undermine that presumption in this case.

1  lyrics at the time of the E51990 registration.   Accordingly, Defendants must present other

2  evidence to prove their case.

3

4       Normally, at this point, we would proceed with our analysis of the Parties' Cross-

5  Motions by first examining the elements that Defendants must prove to establish the

6  validity of their interest in the *Happy Birthday* lyrics, and then, if Defendants carry their

7  burden, we would turn to Plaintiffs' affirmative defenses.   However, the factual and legal

8  issues of this case are deeply interwoven and do not lend themselves to a traditional

9  analytical approach.   The nature of this lawsuit is a dispute over the provenance of

10  Defendants' purported interest in the lyrics.   Accordingly, a chronological examination of

11  the issues, tracing the history of the lyrics up to the point when Summy Co. supposedly

12  acquired the rights to them, is more logical.   Thus, we will begin with the question of who

13  wrote *Happy Birthday*, an issue for which Defendants have the burden of proof because

14  they must show that their interest can be traced back to the true author of the lyrics.   *See*

15  *Epoch Producing Corp. v. Killiam Shows, Inc.*, 522 F.2d 737, 743 (2d Cir. 1975) ("As one

16  would expect, the person claiming [a copyright in the work] must either himself be the

17  author of the copyrightable work . . . or he must have succeeded to the rights of the author

18  through an assignment or other device."); *cf. Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.*,

19  499 U.S. 340, 361 (1991) (noting that, to prove copyright infringement, a copyright owner

20  must be able to establish "ownership of a valid copyright").   Then we will consider

21  whether the lyrics were lost or abandoned at some point after they were written, both of

22  which are defenses for which Plaintiffs, who would normally be defendants in a traditional

23  infringement suit, have the burden of proof.   *See Monge v. Maya Magazines, Inc.*, 688

24  F.3d 1164, 1170 (9th Cir. 2012) (noting that the defendant in a copyright suit has the

25  burden of proving fair use as well as "all affirmative defenses"); Model Civ. Jury Instr.

26  9th Cir. 17.19 (2007) ("In order to show abandonment, the defendant has the burden of

27  proving each of the following by a preponderance of the evidence . . . ."); *Penguin Books*

28  *U.S.A., Inc. v. New Christian Church of Full Endeavor, Ltd.*, 288 F. Supp. 2d 544, 555

(S.D.N.Y. 2003) ("To establish their defense to infringement, defendants must demonstrate that the work was 'published,' as that term is used and defined in the copyright context, without copyright notice."). Finally, we will turn to the question of whether a valid transfer of rights occurred between the Hill sisters and Summy Co., an issue for which Defendants again have the burden of proof because it is essential to their claim that Summy Co. is the owner of a valid copyright.

## B.     Who Wrote the *Happy Birthday* Lyrics?

Defendants claim that Patty wrote the lyrics to *Happy Birthday*; Plaintiffs claim someone else may have.[8]

Since Plaintiffs do not have the burden of proof on this issue, they may discharge their initial burden on their Motion by pointing to affirmative evidence negating Defendants' authorship claim. Plaintiffs point to the many publications of the *Happy Birthday* lyrics throughout the 1920s and 1930s that did not credit Patty. References to the lyrics (without full publication) appeared in 1901 and 1909. The words were fully published in 1911, 1912, 1915, 1922, 1924, and 1928. The song was performed in several movies in the early to mid-1930s. Furthermore, though none of these publications explicitly credited anyone with authoring the *Happy Birthday* lyrics, several of them were copyrighted, and the certificates of registration listed other authors. For instance, *The Elementary Worker and His Work*, which was published in 1911 and contained the full *Happy Birthday* lyrics, listed Alice Jacobs and Ermina Chester Lincoln as its authors in

---

[8] As discussed more in the abandonment section below, Defendants also argue that Patty and Mildred were co-authors of *Happy Birthday*. We need not discuss this argument now because the co-authorship argument is not integral to Defendants' ownership claim. Defendants raised the co-author argument in supplemental briefing to defend themselves against Plaintiffs' contention that the rights to the *Happy Birthday* lyrics were abandoned before 1935.

the copyright certificate.  (J.A. 12.)  Given that copyright certificates are normally afforded a presumption of validity, as discussed, this is at least some evidence that these two individuals may have authored the *Happy Birthday* lyrics.  Similarly, the publication and registration of the *Happy Birthday* lyrics in *Harvest Hymns* in 1924 demonstrate that its author may have written the lyrics.  (J.A. 19 (listing "Robert Henry Coleman" as author of *Harvest Hymns*).)  This evidence is sufficient to shift the burden to Defendants to proffer admissible evidence to create a genuine issue for trial.  *Celotex Corp.*, 477 U.S. at 324.

Defendants' primary evidence is Patty's 1935 deposition for the *As Thousands Cheer* lawsuit.  (J.A. 87.)  While explaining that she and her sister Mildred created *Good Morning* some time around 1893, Patty claimed to have also written the *Happy Birthday* lyrics as one of a number of lyrical variations to be sung with the familiar melody:

> Q. How long would you say that you and Miss Mildred Hill worked on the particular song "Good Morning To All" before it was completed.
> A. It was one of the earliest of the group and for that reason took longer to work out with the children.  It would be written and I would take it into the school the next morning and test it with the little children.  If the register was beyond the children we went back home at night and altered it and I would go back the next morning and try it again and again until we secured a song that even the youngest children could learn with perfect ease and while only the words "Good Morning To All" were put in the book we used it for "Good-bye to you", "Happy Journey to You", "Happy Christmas to You" and "Happy New Year to You", "Happy Vacation to You" and so forth and so on.
> Q. Did you also use the words "Happy Birthday to You"?
> A. We certainly did with every birthday celebration in the school.
> Q. Did you write the words for this particular tune of "Good Morning To All", Miss Hill?
> A. I did.

(J.A. 87 at 1007.)

Defendants have raised genuine issues of material fact for trial.  A reasonable fact finder may choose to believe that Patty wrote the lyrics in 1893 but, for whatever reason, failed to publically say so until some forty years later.  But a reasonable fact finder could

18

also find that the *Happy Birthday* lyrics were written by someone else, such as the authors of *The Elementary Worker and His Work* or *Harvest Hymns* or some unknown person who never took credit for them,[9] and that Patty's 1935 claim to authorship was a *post hoc* attempt to take credit for the words that had long since become more famous and popular than the ones she wrote for the classic melody.

For the same reasons, Patty's deposition testimony would not be sufficient to entitle Defendants to a directed verdict on the issue of authorship because it is contradicted by the evidence of multiple publications of the lyrics before 1935, some of which were registered for copyrights.  We conclude there are genuine issues of material fact for trial. The Parties' Cross-Motions are **DENIED** on this issue.

### C.     Divestive Publication of the *Happy Birthday* Lyrics

Plaintiffs claim that, even if Patty wrote the *Happy Birthday* lyrics, she lost the rights to the lyrics through divestive publication before 1935.

Under the Copyright Act of 1909, one secured a federal copyright by publishing a work with proper notice.  Before such publication, the work was protected by common law copyright.  *See Estate of Martin Luther King, Jr., Inc. v. CBS, Inc.*, 194 F.3d 1211, 1214 (11th Cir. 1999) ("Under the regime created by the 1909 Act, an author received state common law protection automatically at the time of creation of a work.  This state common law protection persisted until the moment of a general publication.") (internal citation omitted).  If the work was published *without* notice, two things happened: the author (1) failed to obtain a federal copyright and (2) lost the common law copyright as

---

[9] Plaintiffs argue that Jessica once claimed in a magazine article to have written the lyrics.  (J.A. 60 at 752.)  That is inaccurate.  She claimed to have been the first person to have *sung* the lyrics.

well.  *See Twin Books Corp. v. Walt Disney Co.*, 83 F.3d 1162, 1165 (9th Cir. 1996) ("When a work was published for the first time, it lost state common law protection.  The owner could, however, obtain federal protection for the published work by complying with the requirements of the 1909 Copyright Act.  If the owner failed to satisfy the Act's requirements, the published work was interjected irrevocably into the public domain precluding any subsequent protection of the work under the 1909 Copyright Act.").

General publication, which would cause a forfeiture, occurs "when, by consent of the copyright owner, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public, or when an authorized offer is made to dispose of the work in any such manner, even if a sale or other such disposition does not in fact occur."  1 *Nimmer* § 4.03.  By contrast, a limited publication, which does not cause a forfeiture, is when "tangible copies of the work are distributed both (1) to a 'definitely selected group,' and (2) for a limited purpose, without the right of further reproduction, distribution or sale."  *Acad. of Motion Picture Arts & Scis.*, 944 F.2d at 1452.  Moreover, "mere performance or exhibition of a work does not constitute a [general] publication of that work."  *Am. Vitagraph, Inc. v. Levy*, 659 F.2d 1023, 1027 (9th Cir. 1981).

On this affirmative defense of divestive publication, Plaintiffs have the burden of proof and must point to evidence that would entitle them to a directed verdict at trial if it were uncontroverted.  While Plaintiffs emphasize heavily the evidence in the record showing that the lyrics were "published, publicly performed, and sung millions of times for more than three decades," that is insufficient to show divestive publication in this case. (Jt. Br. at 7.)  Unless the owner of the work published it personally or authorized someone else to publish it, she would not be divested of her common law copyright.  *See* 2-7 *Nimmer* § 7.03 ("[A] public distribution of copies or phonorecords will not trigger the legal consequences of a publication without notice unless it is shown that such public

1  distribution occurred by or under the authority of the copyright owner."); *see also Holmes*

2  *v. Hurst*, 174 U.S. 82 (1899) (author forfeited his work after consenting to its publication);

3  *Egner v. E.C. Schirmer Music Co.*, 48 F. Supp. 187 (D. Mass. 1942) (author lost his rights

4  after giving others permission to publish his song); *Blanc v. Lantz*, 83 U.S.P.Q. 137, 1949

5  WL 4766 (Cal. Super. 1949) (author lost his rights after permitting the distribution and

6  exhibition of his work in movie theaters throughout the world).

7

8      Plaintiffs' strongest evidence in support of their divestive publication defense is the

9  publication of *Happy Birthday* in *The Everyday Song Book* in 1922.  Unlike the other

10  publications in the record, the publisher of *The Everyday Song Book* appears to have had

11  the permission of at least Summy Co. to print *Good Morning* and *Happy Birthday*.  A fact

12  finder could reasonably infer from this that the Hill sisters authorized Summy Co. to grant

13  the publisher permission.  After all, Summy Co. and the Hill sisters were hardly strangers

14  at the time; they had been associated with each other through the publication and

15  distribution of *Song Stories* for decades.  If the publication was authorized, that could

16  make it a general publication (without proper copyright notice), divesting the Hill sisters

17  of their common law copyright.

18

19      The publication of *The Everyday Song Book*, however, is not sufficient to entitle

20  Plaintiffs to a directed verdict at trial.  As Defendants point out, there is no direct evidence

21  that the Hill sisters had authorized Summy Co. to grant permission for the publication of

22  the lyrics in *The Everyday Song Book*.  It is undisputed that, in 1922, Summy Co. did not

23  have any rights to the *Happy Birthday* lyrics; Defendants claim that the rights to the lyrics

24  were given to Summy Co., at the earliest, in 1934 and 1935.  It is also not clear if Summy

25  Co. gave the publisher of *The Everyday Song Book* permission to publish the *Happy*

26  *Birthday* lyrics specifically or just permission to publish *Good Morning*, of which Summy

27  Co. had been printing and selling copies on the Hill sisters' behalf at that time.  Since the

28  publication of *The Everyday Song Book* would not be sufficient to entitle Plaintiffs to a

directed verdict, Plaintiffs cannot satisfy their initial burden under Rule 56.  Accordingly, Plaintiffs' Motion is **DENIED** as to this issue.[10]

As to Defendants' Cross-Motion, while the publication of *The Everyday Song Book* is not sufficient to entitle Plaintiffs to a directed verdict, it is at least sufficient to show that there are genuine disputes of material fact.  Accordingly, Defendants' Cross-Motion is also **DENIED** as to this issue.

### D.    Abandonment of the *Happy Birthday* Lyrics

Plaintiffs argue that, even if no divestive publication occurred, Patty abandoned her rights, if any, before the publication and registration of E51990.  "[A]bandonment of copyright occurs only if there is an intent by the copyright proprietor to surrender rights in his work."  *A & M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1026 (9th Cir. 2001) (internal quotation marks omitted).  Under Ninth Circuit law, abandonment "must be

---

[10] Plaintiffs also argue that a general publication occurred when Patty taught the lyrics to her students and to other teachers around the turn of the Twentieth Century.  (J.A. 87 at 1018, 1020.)  This argument is also inadequate to entitle them to summary judgment.  Merely teaching a song to others does not constitute a general publication.  The evidence shows that Patty did not distribute physical or tangible copies of the work when teaching the song.  (*Id.* at 1020-21 ("Q. Were they furnished with any copies of it?  A. No.");  *see also* 1-4 *Nimmer* § 4.03 ("[Under the 1909 Act,] publication occurred when, by consent of the copyright owner, the *original or tangible copies* of a work are sold, leased, loaned, given away, or otherwise made available to the general public . . . .") (emphasis added).)  Even if copies were distributed, this likely would have constituted only a limited publication because the work would have been distributed (1) to a selected group and (2) for a limited purpose (education).  *See Bartlett v. Crittenden*, 2 F. Cas. 967, 971 (C.C.D. Ohio 1849) (concluding that a book did not enter the public domain when it was used in a school for the "purpose of imparting instruction to the pupils" and "copies were [not] required or permitted to be taken of it for any other purpose").

manifested by some overt act indicative of a purpose to surrender the rights and allow the public to copy."[11]  *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104 (9th Cir. 1960).  Compared to divestive publication, "[a]bandonment . . . turns on the copyright owner's intent, while forfeiture results by operation of law regardless of intent."  2 Patry, *Copyright* § 5:155.

In their supplemental briefing on abandonment, both Parties have cited numerous cases in support of their respective positions regarding abandonment.  Unfortunately, we can discern no clear rule for what does or does not constitute abandonment.  Cases from the early to mid-Twentieth Century fail to make a clear distinction between divestive publication and abandonment.  *See, e.g.*, *White v. Kimmell*, 193 F.2d 744, 745 (9th Cir. 1952) (describing the plaintiff's complaint as alleging that the work was "abandoned by White to the general public by his reproducing and distributing copies . . . without notice of claim of copyright"); *Nutt v. Nat'l Inst. Inc. for the Improvement of Memory*, 31 F.2d 236, 238 (2d Cir. 1929) ("Only a publication of the manuscript, amounting to an abandonment of the rights of the author, will transfer it to public domain."); *Egner*, 48 F. Supp. at 189 (describing author's conduct as showing "such a tender of the song to the public generally as to imply an abandonment").  It is difficult to draw any firm conclusions about abandonment from these cases.  As for the more recent cases, most involve factual circumstances that bear little resemblance to this case.  *See, e.g.*, *Hadady*

---

[11] Plaintiffs argue that abandonment of a common law copyright, as opposed to a federal copyright, does not require proof of an overt act.  But they do not cite any case that has ever made this distinction.  If anything, one of the earliest opinions to articulate the overt act requirement suggested the opposite.  *See Nat'l Comics Publ'ns, Inc. v. Fawcett Publ'ns, Inc.*, 191 F.2d 594, 597-98 (2d Cir. 1951) ("[W]e do not doubt that the 'author or proprietor of any work made the subject of copyright' by the Copyright Law may 'abandon' his literary property in the 'work' *before he has published it*, or his copyright in it after he has done so; but he must 'abandon' it by some overt act which manifests his purpose to surrender his rights in the 'work' . . . .") (emphasis added).  We conclude that an overt act is required to abandon either a common law or statutory copyright.

1  *Corp. v. Dean Witter Reynolds, Inc.*, 739 F. Supp. 1392, 1395 n.2, 1398-99 (C.D. Cal.

2  1990) (abandonment found where newsletter stated it was protected by copyright only for

3  a certain amount of time); *Pac. & S. Co. v. Duncan*, 572 F. Supp. 1186, 1196 (N.D. Ga.

4  1983) (abandonment found where copyright owner destroyed the only copy of the work).

5  As far as a general rule, we think the most that can be said about abandonment is that

6  evidence of mere inaction or "lack of action" is insufficient.  *Hampton*, 279 F.2d at 104.

7  Beyond this, what does or does not constitute abandonment appears to be a highly fact-

8  specific inquiry.

9

10          **1.      Overt Acts of Abandonment by Patty**

11

12          Plaintiffs bear the burden of proof at trial on this affirmative defense.  To prevail on

13  their Motion, Plaintiffs must present evidence entitling them to a directed verdict if

14  uncontradicted.  They present a passage from a *TIME* magazine article reporting on the

15  *As Thousands Cheer* lawsuit, which said:

16

17          Because the tune of "Happy Birthday to You" sounds precisely like the tune
            of "Good Morning to All," Sam H. Harris, producer of *As Thousands Cheer*,
18          last week found himself the defendant in a Federal plagiarism suit asking
            payment of $250 for each and every performance of the song. . . .  Lyricist
19          Patty Hill, who will share in the damages, if any, *had no complaint to make
            on the use of the words because she long ago resigned herself to the fact that
20          her ditty had become common property of the nation.*[12]

21  _____

22          [12] Defendants' hearsay objection is **OVERRULED**.  The first level of

23  hearsay, the newspaper article, is subject to the ancient records exception.  Fed. R.

    Evid. 803(16).  The second level of hearsay, the statement, is one against pecuniary
24
    interest.  Fed. R. Evid. 804(b)(3)(A).  We reject Defendants' speculation that Patty

25  did not understand the consequences of making the statement.  The statement

    appears in an article about a lawsuit over the public performance of *Happy*
26
    *Birthday*.  We conclude that this evidence is admissible because it is reasonable to

27  infer that Patty was aware of the potential consequences of disclaiming her rights

    to the *Happy Birthday* lyrics while talking to a reporter about her sister's lawsuit
28
    over the rights to another element of the same song.  *See* Fed. R. Evid. 104(a).

1  (J.A. 90 at 1047 (emphasis added).)  The clear implication from the article is that Patty

2  told the *TIME* journalist that she had surrendered any claim she may have had to the

3  *Happy Birthday* lyrics.  A public statement like this, if believed, is an overt act on which a

4  reasonable fact finder could base a finding that Patty abandoned her copyright interest in

5  the lyrics.  *See Melchizedek v. Holt*, 792 F. Supp. 2d 1042, 1048, 1061 (D. Ariz. 2011)

6  (finding triable issue of fact where author made public statements indicating that he was

7  not interested in protecting his work).  However, we cannot say that this evidence is

8  sufficient to entitle Plaintiffs to a directed verdict at trial inasmuch as it is not a direct

9  quote from Patty.  The journalist could have been paraphrasing something she said or

10  relying on a secondary source to characterize her intentions.  Accordingly, Plaintiffs'

11  Motion on their affirmative defense of abandonment is **DENIED**.[13]  To the extent

12  Defendants cross-move for summary judgment on abandonment, we conclude that this

13  article is at least sufficient to raise triable issues of fact as to whether Patty abandoned her

14  rights.

### 2.     Joint Authorship

18      In the alternative, Defendants argue they are entitled to summary judgment on

19  abandonment because Mildred and Patty were joint authors of the *Happy Birthday* lyrics

20  so that Plaintiffs must at least raise triable issues of fact as to both Mildred's (or Jessica's

21  as heir to Mildred's rights) and Patty's abandonment to survive summary judgment

22  against them.  They argue that even if there are triable issues as to Patty's abandonment,

23  Plaintiffs have no evidence of any overt acts of abandonment by either Mildred or Jessica.

---

[13] Plaintiffs also argue that two other articles published about the filing of the *As Thousands Cheer* lawsuit constitute overt acts of abandonment.  (J.A. 34, 37.) Because neither contained any statement from either Patty or Jessica purporting to express their intent to abandon the lyrics, these articles also do not entitle Plaintiffs to summary judgment.

A joint work is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101 (1976 Act); *Richlin v. Metro-Goldwyn-Mayer Pictures, Inc.*, 531 F.3d 962, 968 (9th Cir. 2008) (stating that the 1976 Act's definition of joint work "incorporated the well-established case law interpreting the definition of 'joint work' under the 1909 Act"). The Ninth Circuit has articulated three factors to consider in determining joint authorship: (1) whether the "putative coauthors ma[de] objective manifestations of a shared intent to be coauthors"; (2) whether the alleged authors superintended the work by exercising control; and (3) whether "the audience appeal of the work" can be attributed to both authors, and whether "the share of each in its success cannot be appraised." *Aalmuhammed v. Lee*, 202 F.3d 1227, 1234 (9th Cir. 2000) (internal quotation marks omitted).

Defendants point to Patty's deposition testimony in the *As Thousands Cheer* litigation in which she described working with Mildred in a collaborative, iterative process to create *Good Morning* and the other songs in *Song Stories*. (*See* J.A. 87 at 1007 ("It would be written and I would take it into the school the next morning and test it with the little children. If the register was beyond the children we went back home at night and altered it and I would go back the next morning and try it again and again until we secured a song that even the youngest children could learn with perfect ease . . . ."); *see also id.* at 1004 ("We were writing songs from 1889 to 1893."); *id.* at 1006 ("When my sister Mildred and I began the writing of these songs . . . .").) If Mildred and Patty created the *Happy Birthday* lyrics as a part of this process, that would be evidence that Mildred and Patty intended to be co-authors and that both exercised control over the work.

It is not clear from Patty's deposition that the *Happy Birthday* lyrics were created as a part of the described collaborative process. The deposition took place in the context of a lawsuit in which Jessica was asserting infringement of the copyright to *Good Morning*,

not *Happy Birthday*.  Accordingly, virtually the entire deposition centered on how *Song Stories* and *Good Morning* were created.  There are very few points in the transcript where one can discern any clear reference to *Happy Birthday*.  A reasonable fact finder could find that Patty's discussions of her collaboration with Mildred are not relevant because she was not talking about how the *Happy Birthday* lyrics were created.  If Mildred had developed the *Happy Birthday/Good Morning* melody specifically for use with the *Good Morning* lyrics but Patty decided, on her own initiative, to use other lyrics in combination with the melody, then a fact finder could find that the *Happy Birthday* lyrics belonged to Patty alone as a derivative work.  In that event, Mildred would not have had the requisite intent to combine her work (the *Happy Birthday/Song Stories* melody) with the *Happy Birthday* lyrics in order to make *Happy Birthday* a "work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole."  17 U.S.C. § 101 (1976 Act); *see also* 1-6 *Nimmer* § 6.05 ("The requisite distinction must lie instead in the intent of each contributing author at the time her contribution is composed.  If his work is written with the intention that [his] contribution . . . be merged into inseparable or interdependent parts of a unitary whole, then the merger of his contribution with that of others creates a joint work.  If that intention occurs only after the work has been written, then the merger results in a derivative or collective work.") (internal quotation marks and footnotes omitted).

Both Parties also try to use the pleadings to the Hill-Summy lawsuit from 1942 to reinforce their arguments about joint or sole authorship.  Defendants emphasize the fact that the Hill Foundation described *Happy Birthday* as "written and composed" by Patty and Mildred.  (J.A. 50 at ¶ 11.)  Plaintiffs emphasize the fact that *Good Morning* was described as being "later" entitled *Happy Birthday* by both the Hill Foundation and Summy Co.  (*Id.* at ¶ 10; J.A. 51 at ¶ 6.)  Both of these arguments are inadequate to resolve, as a matter of law, the factual questions surrounding the creation of the *Happy Birthday* lyrics.

Because neither Party is entitled to summary judgment, we need not also consider whether there are triable issues as to Mildred's or Jessica's abandonment inasmuch as that issue is dependent on the joint authorship inquiry which cannot be resolved due to triable issues of fact.

The Parties' Cross-Motions for summary judgment on the issue of abandonment are **DENIED**.

### E.  Transfer of the *Happy Birthday* Lyrics

Plaintiffs argue that, even if the Hill sisters never lost or abandoned their common law rights to the *Happy Birthday* lyrics before the publication in E51990, Defendants have no evidence that Summy Co. ever obtained those rights.  They contend that the evidence shows that E51990 was merely for one of several piano arrangements that Jessica authorized Summy Co. to publish and register.  This showing is sufficient to discharge Plaintiffs' initial burden under Rule 56 as the party without the burden of proof at trial. Defendants argue that one or more of the agreements between the Hill sisters/the Hill Foundation and Summy Co. raise at least a triable issue that the former had transferred rights to the *Happy Birthday* lyrics to the latter.

### 1.    The Hill-Summy Agreements

On the record before us, there is evidence of three agreements between the Hill sisters/the Hill Foundation and Summy Co.—the First, Second, and Third Agreements.

Defendants' primary argument is that Jessica transferred rights in the *Happy Birthday* lyrics to Summy Co. under the Second Agreement in 1934 and 1935.  (*See, e.g.*, Jt. Br. at 35, 37; Jt. Supp. Br. at 16.)  What little we know of the Second Agreement is entirely based on the pleadings filed in the Hill-Summy lawsuit in 1942.  The actual agreement is not in the record; nor is there any other description of the agreement.  To determine the content of Second Agreement, then, we must examine the Hill-Summy pleadings closely, and in context.

The Amended Complaint contained two relevant causes of action.[14]  In the first cause of action, the Hill Foundation alleged that Mildred and Patty entered into the First Agreement in the 1890s, granting Mr. Summy and Summy Co. the rights to publish and register various versions of *Song Stories* in return for royalties on every copy sold.  (J.A. 50 at ¶¶ 4-10.)  The Amended Complaint noted that "one of the songs contained in the works mentioned and described in paragraphs 'FOURTH' to 'EIGHTH' [the paragraphs describing the various published versions of *Song Stories*] is one entitled 'GOOD MORNING TO ALL' which, with words written by the said PATTY S. HILL, was later entitled 'HAPPY BIRTHDAY TO YOU' and was included among the songs copyrighted as aforesaid[15] by the said SUMMY."  (*Id.* at ¶ 10.)  The Hill Foundation alleged that "said song, 'HAPPY BIRTHDAY TO YOU'," later acquired a "nation-wide popularity" and was widely performed both musically and dramatically.  (*Id.* at ¶ 11.)

The Amended Complaint then alleged that, at the time of the First Agreement, "sound motion pictures were unknown commercially."  (*Id.* at ¶ 15.)  Therefore, the First

---

[14] The third cause of action—alleging that Summy Co. unlawfully tried to acquire an interest in the *Song Stories* copyright from the estate of the Hill sisters' brother, William Hill—is not relevant.

[15] The "aforesaid" paragraphs referred to the copyrights in *Good Morning* and *Song Stories*.  (*See* J.A. 50 at ¶ 12.)  The *Happy Birthday* lyrics were never made part of any of these copyrights.

Agreement did not "contemplate the use of the aforementioned songs in sound motion pictures or dramatic performances or in any other wise or manner except in sheet music form." (*Id.*)  Accordingly, the First Agreement did not give Summy Co. "the right to grant licenses or sub-licenses to the producers of sound motion pictures or dramatic performances in respect to the use of any of said songs therein and in particular the aforesaid song 'HAPPY BIRTHDAY TO YOU.'" (*Id.*)  And yet, according to the Amended Complaint, that was precisely what Summy Co. had been doing: "secretly enter[ing] into various agreements with the producers of sound motion pictures and of stage or dramatic performances . . . for the sound and dialogue rights for the use of the song 'HAPPY BIRTHDAY TO YOU' and purport[ing] to hold itself out as having the right to grant licenses or sub-licenses in respect to the use of the aforesaid song." (*Id.* at ¶ 18.)  This conduct, the Hill Foundation alleged, was "in violation of the rights conferred upon" the Hill sisters and the Hill Foundation "by the copyright laws of the United States of America." (*Id.* at ¶ 20.)

In the second cause of action, the Hill Foundation alleged that Jessica had entered into another agreement in 1934 and 1935—the Second Agreement—granting Summy Co. "a number of licenses for the publication, sale and performance of various piano arrangements of the song variously entitled 'GOOD MORNING TO ALL' or 'HAPPY BIRTHDAY TO YOU'" in return for further royalties. (*Id.* at ¶ 24.)  In contrast to the First Agreement, the Second Agreement apparently contemplated the use of these piano arrangements in motion pictures and plays, because Jessica was entitled to 50% of any payment Summy Co. received for the "*performance* [of the works] in any country." (*Id.* at ¶ 26 (emphasis added); *see also id.* at ¶ 24 (licenses granted "for the publication, sale and *performance* of various piano arrangements") (emphasis added).)  The Hill Foundation then went on to say that "by reason of [Summy Co.'s] breach of duty and wrongful conduct as alleged in the paragraphs . . . 'EIGHTEENTH' to 'TWENTIETH' [the paragraphs in the first cause of action describing the secret licensing agreements granted

30

by Summy Co. to movie and play producers]," it was electing to terminate the Second Agreement.  (*Id.* at ¶ 29.)

In its Answer, Summy Co. took issue with some of the Hill Foundation's allegations, but it agreed with most of the important points.  As to the First Agreement, Summy Co. denied that the Hill sisters had granted it only limited rights in the sheet music of *Song Stories*, but admitted that it had granted licenses to movie and play producers for *Happy Birthday*.  (J.A. 51 at ¶¶ 9, 12.)  As to the Second Agreement, Summy Co. described it as "several so-called royalty contracts wherein and whereby it was provided that the said Jessica M. Hill sold, assigned, and transferred to [Summy Co.] various piano arrangements of the said musical composition 'Good Morning To All' and all world rights (including publishing, public performance and mechanical reproduction rights) . . . of said work" in return for royalties.  (*Id.* at ¶ 18.)  Summy Co. confirmed that Jessica was to receive 50% of any payment made to Summy Co. for the "performance of said work."  (*Id.*)

Defendants argue that a fact finder could reasonably infer from these pleadings that Jessica transferred rights to the *Happy Birthday* lyrics to Summy Co. under the Second Agreement, thus raising an issue of fact for trial.  We disagree.  Such an inference is so implausible that no reasonable fact finder could so find.  *See Matsushita*, 475 U.S. at 586 ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts.").

First, and most importantly, an inference that the Second Agreement had something to do with the *Happy Birthday* lyrics is not supported by any explicit description of the agreement in either the Amended Complaint or the Answer.  Both the Hill Foundation and Summy Co. described the agreement as transferring rights in "piano arrangements."  (J.A.

1  50 at ¶ 24; J.A. 51 at ¶ 18.)  Obviously, pianos do not sing.  Thus, it is not logical to infer

2  that rights to "piano arrangements" would include rights to any lyrics or words as well.

3

4      Defendants argue that the lyrics must have been part of the Second Agreement

5  because the Amended Complaint described the arrangements as based on the "song

6  variously entitled 'GOOD MORNING TO ALL' *or* 'HAPPY BIRTHDAY TO YOU.'"

7  (J.A. 50 at ¶ 24 (emphasis added).)  But this quoted statement says nothing about the

8  transfer of any lyrics.  The *Happy Birthday* lyrics could not have been "variously entitled"

9  "Good Morning To All."  If anything, it is a reference to the fact that *Good Morning* and

10 *Happy Birthday* have the same melody and therefore are, in that sense, the same song that

11 formed the basis of the piano arrangements.  Notably, only a few sentences later, the Hill

12 Foundation described the content of works involved in the Second Agreement again, but

13 this time it called them "various piano arrangements of said song 'GOOD MORNING TO

14 ALL'" with no reference to *Happy Birthday* at all.  (*Id.* at ¶ 29.)  In its Answer, Summy

15 Co. similarly described the works as "various piano arrangements of the said musical

16 composition 'Good Morning To All'" without mentioning *Happy Birthday*.[16]  (J.A. 51 at ¶

17 18.)

18

19     Second, an inference that the Second Agreement covered the lyrics is unreasonable

20 because it would be inconsistent with the underlying legal theory behind the lawsuit.  If

---

22  [16] It is true, as Defendants point out, that neither the Hill Foundation nor
23  Summy Co. ever explicitly said that the Second Agreement did *not* include the
    *Happy Birthday* lyrics.  (Hr'g Tr. of March 23, 2015 at 37:10-13 ("COURT: . . .
24  Doesn't that seem to say that all that was licensed was piano arrangements, not the
    lyrics?  It doesn't say anything about lyrics as far as I can see.  MR. KLAUS: It
25  doesn't say lyrics were not included.").)  But that is hardly surprising inasmuch as
26  the agreements were about piano arrangements.  Moreover, it is Defendants'
    burden to prove there was a transfer.  The absence of evidence, without more, does
27  not help Defendants carry their burden at trial or raise a triable factual issue here
28  on summary judgment.

1  the Second Agreement had covered the *Happy Birthday* lyrics, that would have meant that

2  in 1934 and 1935 Jessica explicitly granted Summy Co. the right to license the lyrics to

3  others for public performance.  (J.A. 50 at ¶ 24 (Second Agreement granted Summy Co.

4  rights to "the publication, sale and *performance*") (emphasis added); *id.* at ¶ 26 (Second

5  Agreement gave Jessica right to 50% of any payment Summy Co. received for the

6  "*performance* [of the works] in any country."); J.A. 51 at ¶ 18. (Second Agreement gave

7  Summy Co. "all world rights (including publishing, *public performance* and mechanical

8  reproduction rights) . . . of said work") (emphasis added); *id.* (Second Agreement gave

9  Jessica rights to 50% of any payment Summy Co. received "for the mechanical

10  reproduction or *performance*" of the work "in any country") (emphasis added).)  If that

11  were the case, there would have been no reason for the Hill Foundation to accuse Summy

12  Co. of "secretly" entering into deals behind the Hill sisters' backs with movie and play

13  producers, granting them permission to publically perform *Happy Birthday*.  Moreover,

14  there would have been no reason for Summy Co. not to point out in its Answer that it had

15  acquired the public performance rights to the lyrics from Jessica under the Second

16  Agreement, since that fact would have given the company a strong defense to the

17  accusation that what they were doing was somehow a "secret" or was otherwise unlawful.

18

19      Third, Defendants posit that the allegations in the Amended Complaint can be read

20  to indirectly imply that the Second Agreement covered the *Happy Birthday* lyrics.  But

21  this theory is based on a misunderstanding of what the Amended Complaint actually said.

22  Defendants' theory appears to be that the Hill Foundation sued Summy Co. because

23  Jessica had granted Summy Co. permission to publish and distribute copies of the *Happy*

24  *Birthday* lyrics in sheet music form under the Second Agreement, but Summy Co. had

25  exceeded the scope of that agreement by granting movie and play producers the rights to

26  publically perform the lyrics.  (*See* Jt. Supp. Br. at 16 ("In 1934 and 1935, Jessica granted

27  Summy the rights to publish, copyright, and sell *Happy Birthday to You* [including the

28  lyrics] as sheet music, in exchange for a percentage of the list price for sales. . . .  Patty

33

and Jessica's foundation, the Hill Foundation, sued Summy in 1942. The Foundation asserted that Summy had exceeded the scope of its license to publish *Happy Birthday to You* sheet music by sublicensing the 'sound <u>and dialogue</u> rights for the use of the song'—*i.e.*, the melody <u>and lyrics</u>—in movies and plays.") (emphasis in original); *see also* Hr'g Tr. of July 29, 2015 at 52:6-62:6 (colloquy with Defendants' counsel discussing transfer theory based on the Amended Complaint); Hr'g Tr. of March 23, 2015 at 37:8-40:11 (same).)

Defendants' theory is not consistent with the allegations in the Amended Complaint. As discussed, the Second Agreement was not limited to sheet music. That was the First Agreement. Moreover, the Hill Foundation did not accuse Summy Co. of exceeding the scope of the Second Agreement. That was, again, the First Agreement. In fact, the Hill Foundation did not accuse Summy Co. of doing anything unlawful with respect to the Second Agreement. Rather, it sought termination of the Second Agreement in light of Summy Co.'s alleged unlawful conduct with respect to the First Agreement. Finally, the Hill Foundation's accusation that Summy Co. exceeded the scope of the rights it possessed had nothing to do with the *Happy Birthday* lyrics. The Hill Foundation leveled that accusation in the first cause of action in the context of discussing the First Agreement, which covered only the *Happy Birthday/Good Morning* melody, not the *Happy Birthday* lyrics.[17]

_____

[17] Defendants suggest in their briefing that because the Hill Foundation described the licenses that Summy Co. granted as concerning "dialogue rights," this somehow meant that Summy Co. was accused of granting licenses for the public performance of the lyrics specifically, not just the melody. (*See* Jt. Supp. Br. at 16 ("The Foundation asserted that Summy had exceeded the scope of its license to publish *Happy Birthday to You* sheet music by sublicensing the 'sound <u>and dialogue</u> rights for the use of the song'—*i.e.*, the melody <u>and lyrics</u>—in movies and plays.") (emphasis in original).) There is no logical reason to make such an assumption—an actor singing in a movie can reproduce the melody of a song just as easily as the lyrics—and Defendants cite nothing in support of their

1    Finally, Defendants argue that Summy Co. must have been given the rights to the

2   *Happy Birthday* lyrics because, otherwise, the Hill Foundation would have sued Summy

3   Co. for publishing the lyrics in sheet music form without permission in 1935, in addition

4   to accusing the company of granting unauthorized licenses to movie producers and others

5   for public performance of those lyrics.  (*See* Hr'g Tr. of July 29, 2015 at 59:11-21 ("MR.

6   KLAUS: Your Honor, the question I would have, Your Honor, is then why seven years

7   after Summy had published *Happy Birthday to You* with lyrics [as E51990] and if

8   Jessica—if Jessica Hill is complaining about the fact that you are using this in motion

9   pictures and I don't—I don't like you using it in motion pictures and I only granted you a

10  license with respect to a particular musical arrangement that some other people have

11  called *Good Morning to All* and some other people call *Happy Birthday to You*, why is

12  there no complaint by Jessica Hill or the Hill Foundation about Summy's publishing the

13  sheet music, including the lyrics?").)  This argument fails as well.  The record contains no

14  evidence that the Hill Foundation chose not to sue Summy Co. for publishing the lyrics

15  because Jessica had authorized the company to publish them.  Defendants' argument is

16  based on unsupported speculation, which cannot create a triable issue of fact in and of

17  itself, especially where that speculation is premised in part on a theory that, for the reasons

18  discussed above, would be inconsistent with, and is a misreading of, the allegations in the

19  Amended Complaint.  *See LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1136 (9th Cir.

20  2009) ("While we must draw all reasonable inferences in favor of the non-moving party,

21  we need not draw inferences that are based solely on speculation.").

22

23    Defendants' fall-back argument is that, even if the Hill sisters/the Hill Foundation

24  had not granted Summy Co. any rights in the Second Agreement, the Hill Foundation did

25  interpretation of "dialogue rights."  In any event, even if dialogue rights meant

26  lyrics, which we doubt, Defendants' argument fails because that theory would run

27  contrary to their argument that the rights to the lyrics were granted to Summy Co.

     in the Second Agreement which, according to the Amended Complaint, included

28  performance rights.

so in the Third Agreement.  This argument fails as well.  Unlike the First and Second Agreement, we have a copy of the Third Agreement in the record.   The Third Agreement was entered into in 1944 to resolve the Hill-Summy lawsuit.  (*See* J.A. 126 at ¶ g.)  Under the agreement, the Hill Foundation and the Hill sisters transferred all their "right, title and interest . . . in" eleven different registered copyrighted works, including all the copyrights to the various published versions of *Song Stories* and the copyrights to E51990 and four other piano-based versions of *Happy Birthday* (presumably, the "various piano arrangements" of the Second Agreement).  (*Id.* at ¶¶ a, 2.)  Nowhere in the agreement is there any discussion of the *Happy Birthday* lyrics; nor is there any suggestion that the Hill sisters transferred their common law rights in the *Happy Birthday* lyrics to Summy Co.

The argument that the Third Agreement transferred the *Happy Birthday* lyrics to Summy Co. is circular.  The agreement could have transferred such rights only if the lyrics were within the scope of one of the eleven copyrighted works that were the subject of the agreement.  But the lyrics could have been within the scope of those registered copyrights only if, at some point in the past, the Hill sisters had given Summy Co. authorization to publish and register the lyrics.  As already discussed, there is no evidence showing that the Hill sisters ever did that.  Other than this circular argument, the Third Agreement itself contains no reference to the transfer of the *Happy Birthday* lyrics.[18]

_____

[18] Defendants cite two cases, *Bridgeport Music*, 2014 WL 7877773, and *Sylvestre v. Oswald*, No. 91 Civ. 5060 (JSM), 1993 U.S. Dist. LEXIS 7002, (S.D.N.Y. May 18, 1993), that they claim stand for the proposition that any material appearing in a deposit copy is considered within the scope of the registration.  These cases are distinguishable in that they address the "scope" of a registration to determine what copyright material is considered registered for purposes of satisfying the Copyright Act's requirement that "[r]egistration is a necessary precursor to a suit for infringement."  *Sylvestre,* 1993 U.S. Dist. LEXIS 7002, at *3; *see also Bridgeport Music*, 2014 WL 7877773, at *8 (noting that the question of what material was present in the deposit copy could "bear on the

One last point is that we are mindful of the fact that the Second and Third Agreements, whatever their contents, cannot be considered in a vacuum. Defendants urge us to look to the intent of the contracting parties. (Hr'g Tr. of March 23, 2015 at 41:15-22 ("COURT: I'll take another look at the 1944 assignment, but it seems to me the 1944 assignment just assigned whatever rights they may have had in those specific copyright certificates as identified. So if that's it, then your argument becomes a little bit circular. MR. KLAUS: Well, I think it was all—it's a matter of intent as to what was covered by the assignment, Your Honor.").) But Defendants cannot point to any particular evidence that would show us the intent of contracting parties, aside from the evidence that we have already discussed. There is no evidence that Patty or any of the Hill sisters ever fought to protect the *Happy Birthday* lyrics on their own such that we might infer that they would have wanted to give their rights to Summy Co. to continue to protect them. The Hill sisters never tried to obtain a copyright for *Happy Birthday* on their own, even though Patty claimed to have written the lyrics decades earlier. None of the Hill sisters ever sued anyone for infringing the lyrics. Even Summy Co.'s behavior after the Third Agreement was executed does not show that any transfer occurred. Immediately after the Third Agreement was executed, Summy Co. filed several lawsuits alleging that *Happy Birthday* had been infringed. Yet, it never asserted that E51990 or any copyright interest it purportedly held in the lyrics had been infringed in those lawsuits. Looking to the intent of the parties does nothing to help Defendants' case because there is no evidence that the intent of the parties was to transfer the rights to the lyrics.

---

copyright owner's ability to bring a civil action" based on that material). Neither case involves a situation in which a party attempted to register material to which it had no cognizable claim at the time of registration. To the extent that these cases suggest that E51990 could be considered a valid registration of the lyrics even if Summy Co. did not have permission to publish or register them, they are not binding on us and we decline to follow them.

## 2. Standing

Defendants also argue that Plaintiffs are completely barred from challenging the transfer of the *Happy Birthday* lyrics because a third-party has no standing to challenge existence of a transfer so long as the transferee and transferor do not dispute that the transfer occurred. Defendants rely chiefly on *Magnuson v. Video Yesteryear*, 85 F.3d 1424 (9th Cir. 1996) and *Eden Toys, Inc. v. Florelee Undergarment Co.*, 697 F.2d 27 (2d Cir. 1982) for this proposition. (Hr'g Tr. at March 23, 2015 at 81:17-24 ("MR. KLAUS: . . . There is no dispute in this case between my client, any of my client's predecessors, and anyone representing the Hill sisters as to whether or not Summy had—Summy was entitled to make the registration in 1935 or not. And I think under the logic of *Eden Toys* and the *Magnuson* case, that would plainly—that would plainly say that they have no standing to—to object on that ground.").) These cases do not support Defendants' sweeping proposition.

In *Eden Toys*, the plaintiff had secured an exclusive license in 1975 from a copyright owner to sell various forms of merchandise based on the owner's work. 697 F.2d at 36. In 1979, the defendant began selling reproductions of the work in the form of "adult clothing," which was not one of the types of merchandise covered by the license. *Id.* When plaintiff sued defendant for infringing its rights as an exclusive licensee, defendant protested that plaintiff did not have a license over "adult clothing" and therefore had no standing to sue. *Id.* In response, plaintiff claimed that the copyright owner had informally granted it a broader license before 1979 and produced an agreement from 1980 between the copyright holder and plaintiff that expanded the scope of the 1975 license to cover merchandise like defendant's. *Id.* The district court concluded that this evidence was insufficient to prove a transfer had occurred before 1979 because both the 1909 and the 1976 Copyright Acts required that certain transfers of rights, including exclusive licenses, be memorialized in writing. *See id.*; 17 U.S.C. § 204(a) (1976 Act) ("A transfer

of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by the owner of the rights conveyed or such owner's duly authorized agent."); 17 U.S.C. § 28 (1909 Act) ("Copyright secured under this title or previous copyright laws of the United States may be assigned, granted, or mortgaged by an instrument in writing signed by the proprietor of the copyright, or may be bequeathed by will.").

The Second Circuit reversed, concluding that the "informal" pre-1979 transfer was not necessarily invalid. *Eden Toys*, 697 F.2d at 36. Specifically, the court stated that "the note or memorandum of the transfer [required under the Copyright Act] need not be made at the time when the license is initiated; the requirement is satisfied by the copyright owner's later execution of a writing which confirms the agreement." *Id.* (internal quotation marks omitted). Notably, the Second Circuit did not say that plaintiff could satisfy the Copyright Act's writing requirement by simply asserting, without any evidence, that a transfer of rights had occurred at some point. Rather, the Second Circuit remanded the case to the district court to determine if plaintiff had sufficient evidence to prove that there was an informal agreement before 1979. *Id.*

In *Magnuson*, plaintiff John Magnuson copyrighted a work in the name of his company, Columbus Productions, Inc. ("Columbus") in 1968. 85 F.3d at 1426. Throughout the 1970s, he operated Columbus informally as its CEO and sole regular employee. *Id.* During this time, he stopped using the name Columbus and started operating the business as "John Magnuson Associates," even granting licenses to third-parties to use the copyrighted work under that name. *Id.* In 1979, the state of California suspended Columbus's corporate status for failure to pay taxes. *Id.* at 1427. In 1993, after the plaintiff discovered that another individual had been distributing copies of the copyrighted work for nearly a decade without authorization, plaintiff executed a written transfer of the work between Columbus and "John Magnuson d/b/a John Magnuson and

1   Associates," and then filed an infringement suit. *Id.* at 1427-28. The defendant

2   challenged plaintiff's standing to bring his lawsuit because there was no valid transfer of

3   the copyright. *Id.* at 1428. After a bench trial, the district court made factual findings that

4   Columbus had informally transferred the rights to plaintiff in the seventies, though not in

5   writing. *Id.* at 1429. On appeal, the Ninth Circuit held that the district court's factual

6   findings were not clearly erroneous and concluded that the written memorandum from

7   1993, though it was not executed at the time of the actual transfer, was sufficient to satisfy

8   the Copyright Act's writing requirement. *Id.*

9

10   Contrary to Defendants' suggestion, *Magnuson* and *Eden Toys* do not stand for the

11   proposition that so long as an alleged transferor and transferee say that a transfer occurred,

12   a third-party has no choice but to take them at their word. Rather, these cases stand for the

13   proposition that, if there is evidence of a transfer, the informality with which the transfer

14   was conducted does not prevent the transferee from asserting an interest in the copyright.

15   In particular, the narrow holding of both cases is that "under some circumstances a prior

16   oral grant that is confirmed by a later writing becomes valid as of the time of the oral grant

17   . . . ." *Id.* at 1428; *see also Eden Toys*, 697 F.2d at 36 ("[S]ince the purpose of the

18   [Copyright Act's writing requirement] is to protect copyright holders from persons

19   mistakenly or fraudulently claiming oral licenses, the 'note or memorandum of the

20   transfer' need not be made at the time when the license is initiated; the requirement is

21   satisfied by the copyright owner's later execution of a writing which confirms the

22   agreement.").

23

24   Here, unlike in both *Magnuson* and *Eden Toys*, Defendants have no evidence a

25   transfer occurred, whether by oral statement, by writing, or by conduct. The Second

26   Agreement was for piano arrangements. The Third Agreement was for copyrighted

27   works, like *Song Stories* and the piano arrangements, that did not cover the lyrics. *See*

28   *supra* Section V.E.1. There is no other testimony or circumstantial evidence tending to

show that a transfer of the lyrics occurred.[19]  In fact, Defendants cannot even point to evidence showing that the Hill sisters transferred their rights in the lyrics to the Hill Foundation, such that the Hill Foundation could, in turn, legitimately transfer them to Summy Co.  The only agreements between the Hill sisters and the Hill Foundation in the record concern the transfer of the same eleven copyrighted works that were the subject of the Third Agreement.  (J.A. 42, 49, 113.)  The holdings of *Eden Toys* and *Magnuson* cannot be stretched to suggest that under these circumstances, Plaintiffs are somehow barred from challenging the existence of a transfer, especially where Defendants bear the burden to prove they received rights from the author of the lyrics.  *Feist Publ'ns*, 499 U.S. at 361.

Accordingly, Defendants' Motion is **DENIED**, and Plaintiffs' Motion is **GRANTED** as to the issue of whether Summy Co. ever received the rights to the *Happy Birthday* lyrics from the Hill sisters.

---

[19] Defendants have asserted at various times that there is evidence the Hill sisters received royalties for licensing the *Happy Birthday* lyrics.  We disagree. There is evidence that the Hill sisters were entitled to royalties from Summy Co. under the Third Agreement, but those were royalties for the reproduction and use of the eleven copyright works already discussed.  (J.A. 126 at 1945-48.)  They also may have been receiving royalties from the American Society of Composers, Authors and Publishers ("ASCAP") for performance of *Happy Birthday*, but there is no evidence tending to show that ASCAP collected royalties for use of the lyrics specifically, as opposed to the use of the melody.  Defendants contend that an article from 1950 reported that they were receiving royalties from ASCAP for the lyrics.  But the article merely reports that they were generally receiving royalties for the song, not the lyrics specifically.  (J.A. 60 at 755 (reporting that *Happy Birthday* was "very valuable" and that ASCAP was policing the "unlicensed commercial use of the song").)  Moreover, the same article, only a few paragraphs later, reports that the lyrics were being freely used for public performance without a license as late as 1947.  (*See id.* ("In the play 'Happy Birthday' which opened early in 1947 . . . the words of 'Happy Birthday to You' were spoken, not sung, when it was discovered that the well-known birthday song was not in the public domain . . . .").)

## VI.    Conclusion

The summary judgment record shows that there are triable issues of fact as to whether Patty wrote the *Happy Birthday* lyrics in the late Nineteenth Century and whether Mildred may have shared an interest in them as a co-author.  Even assuming this is so, neither Patty nor Mildred nor Jessica ever did anything with their common law rights in the lyrics.  For decades, with the possible exception of the publication of *The Everyday Song Book* in 1922, the Hill sisters did not authorize any publication of the lyrics.  They did not try to obtain federal copyright protection.  They did not take legal action to prevent the use of the lyrics by others, even as *Happy Birthday* became very popular and commercially valuable.  In 1934, four decades after Patty supposedly wrote the song, they finally asserted their rights to the *Happy Birthday*/*Good Morning* melody—but still made no claim to the lyrics.

Defendants ask us to find that the Hill sisters eventually gave Summy Co. the rights in the lyrics to exploit and protect, but this assertion has no support in the record.  The Hill sisters gave Summy Co. the rights to the melody, and the rights to piano arrangements based on the melody, but never any rights to the lyrics.  Defendants' speculation that the pleadings in the Hill-Summy lawsuit somehow show that the Second Agreement involved a transfer of rights in the lyrics is implausible and unreasonable.  Defendants' suggestion that the Third Agreement effected such a transfer is circular and fares no better.  As far as the record is concerned, even if the Hill sisters still held common law rights by the time of the Second or Third Agreement, they did not give those rights to Summy Co.

1     In light of the foregoing, Defendants' Motion is **DENIED** and Plaintiffs' Motion is

2  **GRANTED** as set forth above.[20]  Because Summy Co. never acquired the rights to the

3  *Happy Birthday* lyrics, Defendants, as Summy Co.'s purported successors-in-interest, do

4  not own a valid copyright in the *Happy Birthday* lyrics.

6     **IT IS SO ORDERED**.

7     DATED: September  22  , 2015

9                   GEORGE H. KING

10          Chief United States District Judge

---

[20] To the extent the Parties cross-move on the chain of title issue, their Motions are denied as moot in light of our disposition of the transfer issue.