BETSY C. MANIFOLD (182450)
manifold@whafh.com
**WOLF HALDENSTEIN ADLER**
 **FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

*Interim Lead Counsel for Plaintiffs*
*and the [Proposed] Class*

[Additional Counsel Appear on Signature Page]

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA -

### WESTERN DIVISION

| | |
|---|---|
| GOOD MORNING TO YOU PRODUCTIONS CORP., *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>WARNER/CHAPPELL MUSIC, INC., *et al.*,<br><br>Defendants. | Lead Case No. CV 13-04460-GHK (MRWx)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date:      March 14, 2016<br>Time:      9:30 a.m.<br>Room:      650<br>Judge:     Hon. George H. King,<br>                Chief Judge |

**TO THE COURT, ALL PARTIES, AND THEIR RESPECTIVE ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on March 14, 2016, at 9:30 a.m., or as soon thereafter as this matter may be heard before the Honorable George H. King in Courtroom 650 at the Edward R. Roybal Federal Building, 225 E. Temple Street, Los Angeles, California 90012, plaintiffs Good Morning To You Productions Corp., Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC, will respectfully move the Court to grant preliminary approval of the proposed settlement (the "Settlement") of this class action. Specifically, Plaintiffs respectfully request that the Court: (a) grant preliminary approval of the proposed Settlement; (b) grant conditional certification of the Settlement Class for settlement purposes only; (c) approve the form of the proposed settlement notices and forms and authorize the service of same to the Class; (d) enter the Preliminary Approval Order; and (e) schedule a hearing on the final approval of the Settlement.

The Settlement Class is defined as: a) all Persons who, at any time since September 3, 1949, directly paid Defendants, Intervenors[1] or their predecessors-in-interest (or either's Affiliates) for each such Person's use of the Song; (b) all Persons who, at any time since September 3, 1949, directly paid HFA, Alfred or Faber as agents for Defendants or their predecessors-in-interest for each such Person's use of the Song; or (c) the American Society of Composers and Songwriters (ASCAP), foreign collecting societies (such as, for example, SACEM and GEMA), and any other Person who at any time since September 3, 1949 has issued blanket licenses

---

[1] The Settlement Class is more fully defined in Section 1.53 of the Settlement Agreement. Intervenors' demand that the Settlement Class include anyone who has directly or indirectly paid them for use of the Song has no effect on the composition of the Settlement Class. Only ASCAP and Summy Co., one of Defendants' predecessors-in-interest, ever paid Intervenors or their predecessors for use of the Song. ASCAP is addressed in the definition of the Settlement Class, and Defendants and their predecessors (including Summy Co.) are expressly excluded from the Settlement Class.

covering the Song, but only for the amounts allocated to the Song by such Persons and directly paid to Defendants or their predecessors-in-interest (or either's Affiliates) pursuant to such blanket licenses; or (d) (i) digital rights aggregation services (such as, for example, Music Reports, Inc.), (ii) foreign sub-publishers (such as, for example, EMI Music Publishing Ltd.), and (iii) Persons not enumerated in sub-paragraph (b), (c), or items (i)-(ii) of this sub-paragraph (d) who directly paid Defendants or their predecessors-in-interest (or either's Affiliates) on behalf of other Persons for such other Persons' use of the Song at any time since September 3, 1949, but only to the extent that the Persons listed in items (i)-(iii) of this sub-paragraph (d) directly paid Defendants or their predecessors-in-interest (or either's Affiliates) amounts that were comprised of payments by or on behalf of other Persons for such other Persons' use of the Song.

Plaintiffs make this motion on the grounds that the proposed Settlement is within the range of possible final approval, and thus notice should be provided to the conditionally certified Class members.

This Motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on January 21, 22, 26, 27 and 28 and February 3 and 4, 2016. Defendants Warner/Chappell Music, Inc. and Summy-Birchard, Inc. and Intervenors the Association for Childhood Education International and the Hill Foundation, Inc. do not oppose this Motion.

This Motion is based upon this Notice of Motion and Motion for Preliminary Approval of Settlement, Plaintiffs' Memorandum of Points and Authorities in Support Thereof, the Declaration of Mark C. Rifkin, the Class Action Settlement Agreement ("Agreement"), the Fifth Amended Complaint, any reply in further support, oral argument of counsel, the complete Court files and record in the above-captioned matter, and such additional matters as the Court may consider. A proposed Preliminary Approval Order is submitted herewith and copies of the proposed notices and forms to be sent to the Settlement Class are attached to the Agreement as Exhibits A-C.

Respectfully submitted,

Dated: February 8, 2016

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By: */s/ Betsy C. Manifold*
BETSY C. MANIFOLD

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101
Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net

37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@huntortmann.com
KATHLYNN E. SMITH (234541)
smith@ huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone 626/440-5200
Facsimile 626/796-0107
Facsimile: 212/797-3172

**DONAHUE FITZGERALD LLP**
WILLIAM R. HILL (114954)
rock@donahue.com
ANDREW S. MACKAY (197074)
andrew@donahue.com
DANIEL J. SCHACHT (259717)
daniel@donahue.com
1999 Harrison Street, 25th Floor
Oakland, CA 94612-3520
Telephone: 510/451-0544
Facsimile: 510/832-1486

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (134180)
lglancy@glancylaw.com
MARC L. GODINO (188669)
mgodino@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
Facsimile: 310/201-9160

*Attorneys for Plaintiffs*

# **TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................ 1

II.     BACKGROUND AND SUMMARY OF THE LITIGATION .......................... 2

III.    MEDIATION EFFORTS ............................................................................ 6

IV.    REASONS FOR THE PROPOSED SETTLEMENT ........................................ 7

V.     PRELIMINARY APPROVAL SHOULD BE GRANTED ................................ 8

        A.     The Settlement is Non-Collusive and the Product of Informed
               Negotiations by Counsel with Considerable Experience ........................ 10

        B.     The Settlement Has No Obvious Deficiencies ........................................ 11

        C.     The Settlement Does Not Improperly Grant Preferential
               Treatment to Plaintiffs or Any Segment of the Settlement Class ............ 14

        D.     The Settlement Terms Easily Fall Within the Range of Possible
               Approval ............................................................................................ 15

VI.    THE SETTLEMENT CLASS SHOULD BE CERTIFIED ............................. 18

        A.     Requirements Under Rule 23(a) ............................................................ 19

               1.     Numerosity ................................................................................ 19

               2.     Commonality .............................................................................. 19

               3.     Typicality ................................................................................... 20

               4.     Adequacy of Representation ....................................................... 21

        B.     Requirements Under Rule 23(b) ........................................................... 22

               1.     Predominance ........................................................................... 22

               2.     Superiority ................................................................................. 23

VII.   PRELIMINARY APPROVAL OF FORM AND METHOD OF CLASS
        NOTICE ................................................................................................. 24

VIII.  CONCLUSION ........................................................................................ 25

# **TABLE OF AUTHORITIES**

Cases

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) .......................................................... 10

*Alberto v. GMRI, Inc.*,
  252 F.R.D. 652 (E.D. Cal. 2008) .......................................................... 10

*Amchem Prods. Inc. v. Windsor*,
  521 U.S. 591 (1997) ................................................................... 17, 22

*Churchill Village LLC v. Gen. Elec.*,
  361 F.3d 566 (9th Cir. 2004) .............................................................. 17

*Dukes v. Wal-Mart Stores, Inc.*,
  603 F.3d 571 (9th Cir. 2010) ........................................................... 20, 21

*Gen. Tel. Co. of Sw. v. Falcon*,
  457 U.S. 147 (1982) ................................................................... 19, 20

*Glass v. UBS Fin. Servs., Inc.*,
  No. C-06-4068, 2007 U.S. Dist.
  LEXIS 8476 (N.D. Cal. Jan. 26, 2007) .................................................. 11, 16

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ......................................................... 22, 23

*Harris v. Palm Springs Alpine Estates, Inc.*,
  329 F.2d 909 (9th Cir. 1964) .............................................................. 19

*In re Heritage Bond Litig.*,
  No. 02-ML-1475 DT, 2005 U.S. Dist.
  LEXIS 13555 (C.D. Cal. June 10, 2005) .................................................... 8, 9

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..................................................... 17

*In re Pac. Enters. Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................ 9

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................... 10

*Keegan v. Am. Honda Motor Co, Inc.*,
  284 F.R.D. 504 (C.D. Cal. 2012) ........................................................... 19

*Mullane v. Cent. Hanover Bank & Trust Co.*,
  339 U.S. 306 (1950) ....................................................................... 24

*Narouz v. Charter Commc'ns, LLC*,
  591 F.3d 1261 (9th Cir. 2010) ................................................................ 18

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .............................................................. 8, 9

*Phila. Hous. Auth. v. Am. Radiators & Standard Sanitary Corp.*,
  323 F. Supp. 364 (E.D. Pa. 1970) ......................................................... 17

*Satchell v. Fed. Express Corp.*,
  No. C03-2659 SI, 2007 U.S. Dist.
  LEXIS 99066 (N.D. Cal. Apr. 13, 2007) ................................................ 11

*Silber v. Mabon*,
  18 F.3d 1449 (9th Cir. 1994) ................................................................. 24

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................... 9, 16, 18

*Stearns v. Ticketmaster Corp.*,
  655 F.3d 1013 (9th Cir. 2011) ......................................................... 20, 21

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) .................................................................. 8

*Van Vranken v. Atl. Richfield Co.*,
  901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 16

*Vinole v. Countrywide Home Loans, Inc.*,
  571 F.3d 935 (9th Cir. 2009) ............................................................... 23

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) .............................................................. 17

*Wal-Mart Stores, Inc. v. Dukes*,
  131 S. Ct. 2541 (2011) .............................................................. 18, 19, 20

*White v. Nat'l Football League*,
  41 F.3d 402 (8th Cir. 1994) ................................................................. 17

*Williams v. Costco Wholesale Corp.*,
  No. 02CV2003 IEG (AJB), 2010 U.S. Dist.
  LEXIS 19674 (C.D. Cal. Mar. 4, 2010) ................................................. 10

*Zinser v. Accufix Research Inst., Inc.*,
  253 F.3d 1180 (9th Cir. 2001) .............................................................. 23

<u>Statutes</u>

8 U.S.C.

§ 1292(b). ....................................................................................5

17 U.S.C.

§§ 502 to 505 ............................................................................12

28 U.S.C.

§ 2201...................................................................................3, 14
§ 2202.........................................................................................3

Bus. & Prof. Code

§§ 17200 *et seq* ...................................................................3, 14
§§ 17500 *et seq* .........................................................................3

<u>Other Authorities</u>

7A Charles Alan Wright and Arthur R. Miller,
    FEDERAL PRACTICE & PROCEDURE
    § 1778 (2d ed. 1986) ............................................................22

MANUAL FOR COMPLEX LITIGATION (FOURTH)
    §§ 21.632-21.634 (2004) ........................................................9

<u>Rules</u>

Fed. R. Civ. P.

23(a) .............................................................18, 19, 20, 21
23(b)(3) ........................................................19, 22, 23, 24
23(b)(3)(A)-(D)...................................................................23
23(b)(3)(B)...........................................................................24
23(b)(3)(C)...........................................................................23
23(c)(2)(B)..............................................................17, 24, 25
23(e) .......................................................................................8
23(g)(1)(A)...........................................................................21

## MEMORANDUM OF POINTS & AUTHORITIES

Plaintiffs hereby submit this Memorandum of Points and Authorities in support of their unopposed motion for preliminary approval of the proposed Settlement of this Action, and entry of the [Proposed] Preliminary Approval Order submitted herewith. The Preliminary Approval Order will, among other things: (i) grant preliminary approval of the proposed Settlement on the terms set forth in the Class Action Settlement Agreement dated February 8, 2016[2]; (ii) preliminarily certify the proposed Settlement Class for purposes of consummating the Settlement; (iii) approve the form and manner of notice of the proposed Settlement to the Settlement Class; and (iv) schedule a hearing date and time for the Final Approval Hearing and a schedule for various deadlines in connection with the Settlement.

## I.      INTRODUCTION

After nearly three years of intensive litigation, the Parties have reached an agreement to settle this class action against Defendants over the disputed copyright to *Happy Birthday to You*, the world's most popular song. The Settlement resolves the disputed copyright claim recently asserted by Intervenors. The Settlement includes an express agreement by Defendants and the Intervenors to forego collecting any more fees for use of the Song, saving the Settlement Class millions of dollars. In addition, if approved by the Court, by declaring the Song to be in the public domain, the Settlement will end more than 80 years of uncertainty regarding the disputed copyright. The Settlement also will provide a substantial recovery of $14 million for the Settlement Class, *i.e.*, thousands of people and entities who paid millions of dollars to Defendants and their predecessors-in-interest to use the Song.

The Settlement is the product of lengthy and arduous litigation, followed by extensive, protracted arm's-length negotiations between experienced and

---

[2]   The "Parties" are Plaintiffs, Defendants, and the Intervenors. Unless otherwise defined herein, this Memorandum of Points and Authorities incorporates by reference the defined terms set forth in the Settlement Agreement, and all such terms shall have the same meaning herein.

knowledgeable counsel, facilitated by David A. Rotman, Esquire, a highly accomplished and well-respected mediator. Declaration of Mark C. Rifkin in Support of Preliminary Approval of Class Action Settlement ("Rifkin Decl."), ¶ 5. By the time the Settlement was reached, Plaintiffs and Class Counsel had: (i) conducted an exhaustive investigation of the Song's history, including a detailed review of records of the Copyright Office and the Library of Congress, original historical source materials, old court filings in multiple jurisdictions, various news reports, other publicly available information, and formal discovery from Defendants and non-parties; (ii) filed three original complaints and four successive amended complaints, with several rounds of motion practice and extensive briefing on those pleadings; (iii) defeated Defendants' motion to dismiss the Second Consolidated Complaint; (iv) obtained partial summary judgment against Defendants declaring that they do not own (and their predecessors never owned) a copyright to the Song's lyrics; (v) conducted exhaustive research of the applicable law for the claims in this Action and the potential defenses thereto; (vi) consulted with multiple experts; (vii) reviewed damages documents and information provided informally by Defendants and obtained from non-parties through discovery; (viii) fully prepared for the trial of the remaining issues on Claim One; and (ix) participated in the lengthy, hard-fought mediation and settlement negotiation process. *Id*., ¶ 6.

Based on their well-informed evaluation of the facts and governing legal principles, the advanced stage of the litigation, and their recognition of the substantial risk and expense of continued litigation, Plaintiffs and Class Counsel believe that the proposed settlement is fair, reasonable and adequate under Federal Rule of Civil Procedure 23. *Id*., ¶ 7.

Accordingly, Plaintiffs respectfully move for preliminary approval of the Settlement and submit this memorandum of points and authorities in support thereof.

## II.    BACKGROUND AND SUMMARY OF THE LITIGATION

Plaintiffs each paid Defendants for a license to perform or use the Song. *See*

Declarations of Jennifer Nelson ("Nelson Decl."), at ¶ 9; Robert Siegel ("Siegel Decl."), at ¶¶ 3, 10; Rupa Marya ("Marya Decl."), ¶ 3; and James Chressanthis ("Majar Decl."), at ¶¶ 3, 7, all submitted herewith in support of Preliminary Approval.

The classic *Happy Birthday* melody is the same as the melody of another song called *Good Morning to All* ("*Good Morning*"). Memorandum and Order on Cross-Motions for Summary Judgment (Dkt. 244 at 2). Mildred Hill and her sister Patty Hill wrote *Good Morning* some time prior to 1893; "Mildred composed the music with Patty's help, and Patty wrote the lyrics." *Id.*

On June 13, 2013, Plaintiff GMTY filed the first class action complaint against Defendants in the United States District Court for the Southern District of New York, alleging that Defendants did not own a copyright to the Song. Rifkin Decl., ¶ 8. Plaintiffs Siegel, Marya, and Majar filed similar class action complaints in this Court on June 19, 2013, June 20, 2013, and July 17, 2013, respectively. *Id.*, ¶¶ 10-11. GMTY voluntarily dismissed its original complaint on June 26, 2013. Nelson Decl., ¶ 12. The actions in this Court were consolidated, and on September 4, 2013, all four Plaintiffs filed a Second Amended Consolidated Complaint ("SAC") on behalf of a proposed class of all persons or entities (other than Defendants' directors, officers, employees, and affiliates) who entered into an agreement with Defendants or paid them for the use of the Song at any time since June 18, 2009. Rifkin Decl., ¶ 13. The SAC asserted claims for (1) declaratory judgment, 28 U.S.C. § 2201; (2) declaratory and injunctive relief and damages, 28 U.S.C. § 2202; (3) violation of California's unfair competition law, Bus. & Prof. Code §§ 17200 *et seq.*; (4) breach of contract; (5) money had and received; (6) rescission; and (7) violation of California's false advertising law, Bus. & Prof. Code §§ 17500 *et seq.* Dkt. 59. Plaintiffs allege that Defendants do not own, and that Defendants and their predecessors did not own, a copyright to the Song. Throughout the litigation, Plaintiffs have sought to obtain a judicial determination that Defendants' copyrights covered only specific piano arrangements for the Song, not the words and music themselves, and to recover damages for themselves and all others who

paid licensing fees to Defendants for the Song under Defendants' allegedly false claim of copyright ownership. Plaintiffs and Defendants vigorously disagree as to whether Defendants own a copyright to the Song.

Defendants moved to dismiss the SAC or strike Plaintiffs' proposed class definition.  Dkt. 52.  On October 16, 2013, the Court granted in part and denied in part Defendants' motions to dismiss, bifurcating Plaintiffs' first claim (for a declaratory judgment) from their remaining claims for purposes of discovery through summary judgment and granting Plaintiffs leave to file an amended complaint. Dkt. 71.  Plaintiffs filed a Third Amended Consolidated Complaint on November 6, 2013, asserting the same seven claims as set forth above, which Defendants answered as to Claim One only on December 11, 2013. Dkt. 75.  On April 21, 2014, Plaintiffs filed a Fourth Amended Consolidated Complaint, asserting the same seven claims as set forth above, which Defendants answered as to Claim One only on May 6, 2014. Dkts. 95, 99. Thereafter, Plaintiffs and Defendants engaged in extensive written, document, and deposition discovery between February and July 2014.[3]  Rifkin Decl., ¶ 15.

On November 25, 2014, Plaintiffs and Defendants filed cross-motions for summary judgment. Dkt. 179.  The cross-motions were filed with an extensive factual record, comprised of more than 125 exhibits and more than 300 statements of uncontroverted fact. Dkts. 183, 187. The Court heard argument on the cross-motions on March 23, 2015. *See* Dkt. 207. On May 18, 2015, the Court directed Plaintiffs and Defendants to submit a supplemental joint brief addressing whether Patty Hill had abandoned the copyright to the *Happy Birthday* lyrics, which they filed on June 15, 2015. Dkts. 215, 219. The Court heard argument on the question of abandonment on July 29, 2015. *See* Dkt. 229.

---

[3]    Among other things, Plaintiffs deposed Warner's designated corporate representative. Plaintiffs and Defendants each answered numerous interrogatories and requests for admissions and each produced thousands of pages of documents. Plaintiffs produced an expert report, and Defendants deposed Plaintiffs' expert. Plaintiffs also subpoenaed documents from a number of third parties.

On September 22, 2015, the Court issued its Memorandum and Order on Cross-Motions for Summary Judgment granting in part and denying in part Plaintiffs' motion for summary judgment and denying Defendants' cross-motion for summary judgment in its entirety. Dkt. 244. The Court found there was no dispute that Defendants and their predecessors never owned a copyright to the Song's lyrics. *Id*. at 43. However, the Court found a disputed question of fact whether anyone else might own a copyright to the Song's lyrics. *Id*. at 17-19.[4] The Court then scheduled a bench trial for December 15 and 16, 2015, on the disputed question of fact whether anyone other than Defendants owned a copyright to the Song's lyrics. *See* Dkt. 248.

On October 29, 2015, Plaintiffs moved for leave to amend and file a Fifth Amended Consolidated Complaint to extend the class period to September 3, 1949, the latest date on which the copyright to *Good Morning to All* in 1893, the musical composition from which *Happy Birthday* was derived, expired. Dkt. 258. Plaintiffs proposed to add allegations that the statute of limitations on their claims was equitably tolled under the delayed discovery rule and because Defendants concealed material facts regarding the scope of the copyright they owned. On December 7, 2015, the Court granted Plaintiffs' motion for leave to amend, holding that the question of whether Plaintiffs adequately alleged equitable tolling or fraudulent concealment was better resolved by a motion to dismiss. Dkt. 289.  On December 9, 2015, Plaintiffs filed a Fifth Amended Consolidated Complaint, asserting the same seven claims set forth above on behalf of a class of persons or entities (other than Defendants' directors, officers, employees, and affiliates) who entered into a license with Defendants or their predecessors-in-interest or paid Defendants or their predecessors-in-interest for use of the Song at any time since September 3, 1949. Dkt. 291.

On November 9, 2015, the Intervenors moved (unopposed) to intervene. Dkt.

---

[4]    On October 15, 2015, Defendants moved for reconsideration of the Court's summary judgment order or for certification of that order for interlocutory appeal under 8 U.S.C. § 1292(b).

266. The Intervenors claimed to own a copyright to the Song through a series of testamentary transfers from Mildred Hill and Patty Hill, who wrote *Good Morning to All*. The Court granted the Intervenors' unopposed motion on December 7, 2015, but did not decide whether they owned any copyright to the Song. Dkt. 288.

By that date, the Parties had nearly completed preparation of their trial briefs and the Joint Exhibit List in advance of the bench trial scheduled for December 15 and 16, 2015. Rifkin Decl., ¶ 25. Those trial preparations were substantially completed on December 8, 2015, on which date the Parties contacted the Court and advised the Court that a settlement in principal had been reached between the Parties.  On the same date, the Court issued a Minute Order which relieved the Parties of their immediate filing obligations pending submission of a joint status report.  *See* Dkt. 290.

## III.   MEDIATION EFFORTS

During the October 19, 2015 status conference, the Court directed counsel to pursue mediation. Counsel met in person on October 29, 2015, to discuss mediation, and thereafter agreed to retain Mr. Rotman to assist them as a settlement mediator. *See* Dkt. 248. On December 1, 2015, counsel for the Parties held an all-day, in-person mediation with Mr. Rotman. Rifkin Decl., ¶ 28. Representatives of Defendants and their insurer and the Intervenors also attended the mediation. *Id*.  The mediation lasted late into the evening. *Id*.  Substantial progress was made during the mediation session, but no settlement was reached at that time. *Id*.

After the in-person mediation session, Mr. Rotman engaged in a series of telephone discussions with counsel for the various Parties, and counsel for the Parties also communicated directly with each other by telephone over the ensuing few days. Rifkin Decl., ¶ 29. As a result of those additional communications, on December 6, 2015, after a series of telephone and email communications with counsel for the Parties. Mr. Rotman made a confidential mediator's proposal to all counsel of the material terms on which to settle the Action. *Id*.

On December 8, 2015, after the Parties had substantially completed their

preparation for the bench trial on the remaining factual issues on Claim One, counsel for all the Parties advised Mr. Rotman that their clients had accepted the terms of the mediator's proposal. Rifkin Decl., ¶ 30. Counsel for the Parties promptly notified the Court of the settlement in principle and began the process of preparing and executing the Settlement Agreement. *See* Dkt. 290. During the process of negotiating the Settlement Agreement, substantial disputes arose among the Parties which required Mr. Rotman's ongoing, active participation to resolve. Rifkin Decl., ¶ 30. All Parties executed the Settlement Agreement on February 8, 2016, and Plaintiffs promptly filed this motion for preliminary approval of the Settlement.

## IV.    REASONS FOR THE PROPOSED SETTLEMENT

Plaintiffs agreed to this Settlement with a solid understanding of the strengths and weaknesses of their claims. This understanding is based upon Class Counsel's meticulous preparation of the case, including their exhaustive investigation of the Song's history, including a detailed review of records of the Copyright Office and the Library of Congress, original historical source materials, old court filings in multiple jurisdictions, various news reports and other publicly available information, and formal and informal discovery from Defendants and non-parties. Plaintiffs' understanding also is informed by the Court's decision granting partial summary judgment in their favor against Defendants, declaring that Defendants do not own (and their predecessors never owned) a copyright to the Song's lyrics as well as the Court's finding of a factual dispute whether anyone else (such as the Intervenors) might own a copyright to the Song's lyrics. Plaintiffs also considered the substantial risk the Court might not toll the statute of limitations. Plaintiffs were aware of their counsel's preparations for trial, and were advised by their counsel of the risk of continued litigation, including the risk posed by the Intervenors' recent claim, and the risk, expense, and unavoidable delay of an appeal or appeals.

Based on a careful review of all these factors, as well as the substantial expense and length of time necessary to prosecute this Action through the completion of merits

and expert discovery, trial, and appeals, and the considerable uncertainties in predicting the outcome of any complex litigation, Plaintiffs have concluded that, notwithstanding their success in the Action to this point, substantial risk remains that the Song might not be declared in the public domain and the Settlement Class might recover far less than the Settlement provides or nothing at all if the Action were to continue. Mr. Rotman also recommends and endorses the Settlement and, indeed, the Settlement is the result of and embodies his mediator's proposal, made only after extensive arm's-length negotiations between counsel for the Parties.

Accordingly, Plaintiff respectfully request that the Court grant preliminary approval of the Settlement.

## V.   PRELIMINARY APPROVAL SHOULD BE GRANTED

Rule 23 requires judicial approval of any compromise of claims brought on a class wide basis. *See* Fed. R. Civ. P. 23(e) ("claims . . . of a certified class may be settled . . . only with the court's approval"). "In deciding whether to approve a proposed settlement, the Ninth Circuit has a 'strong judicial policy that favors settlements, particularly where complex class action litigation is concerned.'" *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 U.S. Dist. LEXIS 13555, at *9 (C.D. Cal. June 10, 2005) (citations omitted); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). "[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits." *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976).

Moreover, the Ninth Circuit expressly recognizes that:

> [I]n making its assessment pursuant to Rule 23(e), the Court's: "intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."

*Heritage Bond*, 2005 U.S. Dist. LEXIS 13555, at *10 (quoting *Officers for Justice*, 688 F.2d at 625). Recognizing that "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in [the] litigation," courts favor approval of settlements. *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).

To determine whether a settlement agreement is fair, adequate, and reasonable, "a district court must [ultimately] consider a number of factors, including: the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (internal citation and quotation marks omitted). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. "It is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness, and the settlement must stand or fall in its entirety." *Staton*, 327 F.3d at 960 (quotations, citation and brackets omitted).

Review of a proposed settlement typically proceeds in two stages, with preliminary approval followed by a final fairness hearing. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) §§ 21.632-21.634 (2004). At this preliminary stage, the Court is not required to make a final determination as to whether the proposed Settlement will ultimately be found to be fair, reasonable and adequate. Rather, that evaluation is made only at the final approval stage, after notice of the proposed Settlement has been given to the members of the Settlement Class and Settlement Class Members have had an opportunity to voice their views of the proposed Settlement or exclude themselves from

the Settlement Class. "Given that some . . . factors cannot be fully assessed until the Court conducts a Final Approval Hearing, 'a full fairness analysis is unnecessary at this stage.'" *See Williams v. Costco Wholesale Corp.*, No. 02CV2003 IEG (AJB), 2010 U.S. Dist. LEXIS 19674, at *14-15 (C.D. Cal. Mar. 4, 2010) (quotation marks and citation omitted). Because class members will receive an opportunity to be heard on the proposed settlement or request exclusion from the class, "a full fairness analysis is unnecessary" at the preliminary approval stage. *Alberto v. GMRI, Inc.*, 252 F.R.D. 652, 665 (E.D. Cal. 2008) (quotation marks and citation omitted).

Preliminary approval and notice of the Settlement terms to the proposed class are appropriate where, as here, "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class; and falls with the range of ***possible*** approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007) (internal quotation marks and citation omitted) (emphasis added); *see also Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007) ("To determine whether preliminary approval is appropriate, the settlement need only be *potentially* fair, as the Court will make a final determination of its adequacy at the hearing on the Final Approval, after such time as any party has had a chance to object and/or opt out.") (emphasis in original).

All these factors convincingly support preliminary approval here.

### A.    The Settlement is Non-Collusive and the Product of Informed Negotiations by Counsel with Considerable Experience

The Settlement undoubtedly is the product of arm's-length, hard-fought, non-collusive negotiations. Specifically, counsel for the Parties participated in an all-day mediation before a well-respected mediator who specializes in large and complex class action resolutions.  *See* Rifkin Decl., ¶¶ 6, 28, 33. The mediation brought the parties close to settling, and they later reached a settlement-in-principle following further negotiations facilitated by the mediator.  *Id.*, ¶¶ 28, 29. Indeed, after the Parties accepted the mediator's settlement proposal, the Settlement almost fell apart twice

1   before the Settlement Agreement was signed.  *Id.*, ¶ 30.

2       This factor alone strongly supports preliminary approval of the Settlement. *See*

3   *Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068, 2007 U.S. Dist. LEXIS 8476, at *15

4   (N.D. Cal. Jan. 26, 2007) (fact that "settlement was negotiated and approved by

5   experienced counsel on both sides of the litigation, with the assistance of a well-

6   respected mediator with substantial experience . . . supports approval of the

7   settlement"); *Satchell v. Fed. Express Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS

8   99066, at *17 (N.D. Cal. Apr. 13, 2007) ("assistance of an experienced mediator in the

9   settlement process confirms that the settlement is non-collusive").

10      The mediator's role in bringing about the instant Settlement weighs heavily in

11  favor of its approval. *See Glass*, 2007 U.S. Dist. LEXIS 8476, at *15.

12      The extent of discovery completed and the advanced stage of these proceedings

13  also supports preliminary approval of the Settlement. Plaintiffs were extremely well

14  informed about the merits of the case and were more than sufficiently prepared to reach

15  a reasonable settlement. *See* Rifkin Decl., ¶¶ 32-33. In light of the procedural posture of

16  this case, with the Court having granted partial summary judgment for Plaintiffs against

17  Defendants and a bench trial on the remaining part of Claim One scheduled for

18  December 15 and 16, 2015, that Defendants and the Intervenors agreed to a final

19  declaration that the Song is in the public domain, their agreement to forego charging

20  and collecting any more money for use of the Song, and Defendants' agreement to pay

21  $14 million to the Settlement Class is unquestionably an excellent result.  *Id.,* ¶¶ 19-26.

22      **B.**    **The Settlement Has No Obvious Deficiencies**

23      The Settlement has no obvious deficiencies. Indeed, it unquestionably achieves

24  the principal goals of this Action: a judicial determination that the Song is in the public

25  domain and a substantial cash payment to Settlement Class Members. Both parts of the

26  Settlement have considerable value.

27      Arguably, the most important part of the Settlement is the termination of

28  Defendants' demand for payment for use of the Song and a judicial determination that

all rights to the Song are in the public domain. This part of the Settlement should not be overlooked or undervalued. Under the current copyright law, Defendants' copyright – assuming it covered the Song's words and music – will last until 2030 at the least. Defendants' and Intervenors' agreement to forego collecting any fees for use of the Song for the remaining 15 years it would be covered by the existing copyright (again, assuming it covered the Song) is significant. An expert in intellectual property valuation retained by Plaintiffs estimates that the present value of the revenue likely to be generated from that copyright, assuming it covered the Song's words and music, is approximately $14 million to $16.5 million. *See* Declaration of Daniel Roche in Support of Settlement Approval ("Roche Decl."), ¶ 15.

The judicial determination that *Happy Birthday* is in the public domain also has substantial value. Because Defendants have charged for use of the Song, untold thousands of people chose not to use the Song in their own performances and artistic works or to perform the Song in public. This has limited the number of times the Song was performed and used. After the Settlement is approved, that restraint will be removed and the Song will be performed and used far more often than it has been in the past. While there is no way to make a reliable estimate of the increase that will result, there can be no dispute that the increase will be substantial.

Significantly, a class action settlement – in which public notice is given before the Court enters its final judgment – may be the only way for the Court to be certain that anyone claiming to own the *Happy Birthday* copyright may be heard before the Song is declared to belong to the public.[5] As a practical matter, this factor alone overwhelmingly supports preliminary approval of the Settlement.

The Settlement also includes a payment by Defendants of up to $14 million to be

---

[5]   The Copyright Act, 17 U.S.C. §§ 502 to 505, provides various means for a copyright owner to enforce his, her, or its copyright through civil litigation. There is no similar provision in the Copyright Act providing a civil remedy against one who misuses or abuses a copyright, such as by wrongfully claiming broader protection than that provided under the copyright.

distributed to Settlement Class members who timely submit valid claims. Defendants informally provided information to Plaintiffs, which Plaintiffs confirmed through their own investigation and analysis, that Period One Class Members paid approximately $11 million and Period Two Class Members paid approximately $35-$40 million for use of the Song.  Rifkin Decl., ¶ 31. Class Counsel anticipates that approximately 60 percent of Period One Class Members will submit claims against the Net Settlement Fund. Because Period Two covers 60 years, Class Counsel expect that a much lower percentage of Period Two Class Members will submit claims. Based upon the estimated damages of the Period One Class Members and the Period Two Class members, as well as the estimated percentages of Period One Class Members and Period Two Class Members who will timely submit valid claims against the Net Settlement Fund, the monetary portion of the proposed Settlement is substantial. Together with the value of the prospective relief, the Settlement consideration warrants preliminary approval.

Although the Net Settlement Fund is reversionary, meaning any amount remaining after all Authorized Claims are paid in full will be returned to Defendants, nothing will be returned to Defendants unless all Authorized Claims are, in fact, paid in full.[6]

While Plaintiffs believe their case has merit, numerous obstacles exist that could prevent them from prevailing at trial and on appeal. For example, there is no certainty the Court would require Defendants to return all the money they collected for the Song to Plaintiffs or the proposed class members. It is also far from certain that the Court would permit any recovery for proposed class members whose claims might be time-barred under the applicable statutes of limitations. Further, there is now risk the Court might conclude that the Intervenors owned the *Happy Birthday* copyright. In addition, appeals are expensive, inherently risky, and cause inevitable delay. Even if successful,

---

[6]     Defendants agreed to pay the full Settlement Fund amount of $14 million only upon the express condition that any portion of the Net Settlement Fund remaining after the payment of all Authorized Claims would be returned to them.

Plaintiffs might face re-litigating the same issues raised by Defendants or the Intervenors in this Court.

Given all these risks, the Settlement plainly has no obvious deficiencies.

### C. The Settlement Does Not Improperly Grant Preferential Treatment to Plaintiffs or Any Segment of the Settlement Class

The payments to Settlement Class Members are reasonably and simply based on when Settlement Class Members paid Defendants to use the Song: those who paid within the statute of limitations period will have their claims valued in full, while those who paid outside the statute of limitations period will have their claims discounted to account for the additional risk they face that their claims would be untimely.

No Settlement Class Members, including Plaintiffs, will receive unduly preferential treatment. All their claims (including Plaintiffs' own claims) will be evaluated under the same criteria and will be paid under the same formulas. *See* Settlement Agreement, Exs. A, B.[7] The discount is equitable because the value of the claims of these earlier Period Two Settlement Class Members is proportionately lower. Indeed, the risk they face of having their claims dismissed as untimely is the greatest risk any Settlement Class Member would face if this case were to proceed to a final adjudication on the merits. Indeed, failing to account for the unique risk faced by the early Settlement Class Members would unfairly prejudice the later Period One Settlement Class Members, whose claims are unquestionably timely.[8]

---

[7] The Declaratory Judgment Act, 28 U.S.C. § 2201, does not have its own statute of limitations. Instead, it borrows the most closely analogous statute of limitations – here, the three-year statute of limitations under the Copyright Act and the four-year statute of limitations under Business & Professions Code section 17200.

[8] Because certain members of the Settlement Class Members paid for the Song more than four years before the first complaint was filed, the claims of those early Settlement Class Members will be discounted to reflect the unique risk they face that their claims would be barred as untimely under the relevant statute of limitations. To reflect the risk that their claims might be dismissed as untimely, the proposed plan of allocation limits the allowed claims of Settlement Class Members who paid for the Song before June 13, 2009, to 15% of the total amount they paid prior to June 13, 2009. Because that risk does not exist for Settlement Class Members who paid for the Song on or after June 13, 2009, their claims will not be discounted under the proposed plan of allocation. Class Counsel believes the discount applied to the claims of Settlement Class Members for the earlier

All Settlement Members, including Plaintiffs, are subject to the same notice and claims procedures and are otherwise subject to the same settlement formulas and the same eventual release of claims. The Settlement formula varies only according to the dollar amounts paid to Defendants and whether those payments were made more or less than four years before the first-filed complaint; it does not vary according to any improper variables unrelated to the relative strength of an individual Settlement Class Member's claim. *See* Settlement Agreement, Exs. A, B.

### D. The Settlement Terms Easily Fall Within the Range of Possible Approval

The key settlement terms easily warrant preliminary approval as well within the realm of reasonableness. *First and foremost*, the Settlement will end Defendants' decades-long demand for payment for use of the Song and will achieve a judicial determination that *Happy Birthday* is in the public domain – truly, an historic result. As the Court is well aware, the Song's copyright has been the subject of considerable dispute for nearly a century, but until now, no court has ever ruled whether it was protected by a copyright. This Action was commenced to end the copyright dispute over the world's most famous song. The Settlement ends what is surely the most infamous copyright dispute of all time in Plaintiffs' favor. This achievement alone would justify preliminary approval of the Settlement.

*Second*, in addition to saving millions of dollars in future royalties that no longer will be paid to Defendants, the Settlement also achieves a significant cash payment of $14 million for Settlement Class Members. The $14 million payment represents a significant premium over the royalties paid to Defendants by Settlement Class Members since June 13, 2009, whose claims are undoubtedly timely. The excess amount compensates the Settlement Class for those Settlement Class Members who paid fees to Defendants prior to June 13, 2009, whose claims might be found to be untimely under

---

time period is reasonable in light of the additional risk they would face if the Action were adjudicated on the merits at trial.

the applicable statutes of limitations. No portion of the Net Settlement Fund will be paid to the Intervenors.

*Third*, Plaintiffs' incentive compensation awards of $10,000 to $15,000 are justified under the case law and the facts of this case.[9] Given the modest nature of these awards, especially when compared to the overall settlement results, there is nothing to suggest that the awards are improper or undermine the fairness of the Settlement. The *Van Vranken* factors (risk, notoriety, time spent, duration of litigation and benefit) all support the requested enhancement here. *Van Vranken*, 901 F. Supp. at 299. All four Plaintiffs came forward and undertook to represent others who were forced to pay fees to use *Happy Birthday*, they gave generously of their time and effort, and they did so despite the difficulty of their undertaking and the public attention they were certain to draw. In retrospect, Plaintiffs have been widely acclaimed for their efforts, but when they undertook to represent the proposed class, it was far from certain that the public would praise them for taking up this cause, much less that they would prevail against two well-financed and highly motivated corporate giants of the music business. Plaintiffs' victory in this "David vs. Goliath" undertaking makes them fully deserving of these modest incentive awards.

*Fourth*, there is nothing to suggest that Class Counsel will receive excessive fees. Class Counsel will seek a fee of $4.62 million, which is 33% of the Settlement Amount of $14 million, which request is subject to the Court's plenary review at the final approval stage. The Ninth Circuit's benchmark for fees in this context is 25 percent of the gross settlement amount. *Glass*, 2007 U.S. Dist. LEXIS 8476, at *44. Courts consider not only the results achieved and the skill and quality of work – which Class Counsel respectfully submit are of the highest caliber here – but also the risk of

---

[9]     The incentive awards are well within the range of such awards commonly provided in litigation of this nature. *See*, *e.g.*, *Staton*, 327 F.3d at 977 (incentive awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass*, 2007 U.S. Dist. LEXIS 8476, at *50-52 (approving incentive payments of $25,000 to each named plaintiff); *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299-300 (N.D. Cal. 1995) (awarding $50,000 to lead plaintiff).

litigation and the contingent nature of the fee and the financial burden carried by the Plaintiff. *See*, *e.g.*, *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2007) (citing in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002)).

Class Counsel collectively expended thousands of hours litigating the Action, with a total lodestar of more than $5 million, with no certainty of any payment at all. *See* Rifkin Decl., ¶ 38. With their fee petition, to be filed together with the papers seeking final approval of the Settlement, Class Counsel will furnish a detailed breakdown of their hours worked and lodestar expended as a cross-check on the reasonableness of their fee request.

Plaintiffs respectfully submit that the fee request,, although slightly higher than the Ninth Circuit's fee benchmark, is eminently reasonable under the standards which warrant preliminary approval of the Settlement given the enormous amount of work Class Counsel performed and the excellent results they have achieved. For purposes of preliminary approval, the work performed by Class Counsel would also justify the fee request under a fee shifting provision of the Copyright Act. Defendants have reserved the right to oppose Class Counsel's fee request, ensuring that the Court will be able to make a fully informed decision before awarding fees and costs to Class Counsel.

*Fifth*, the proposed notices and forms are more than adequate. Rule 23 requires that the absent class members receive the "best notice that is practicable under the circumstances." *See* Fed. R. Civ. P. 23(c)(2)(B). The method and the content of the notices should be designed to fairly apprise them of the terms of the proposed settlements and the options available to them. *See, e.g., Phila. Hous. Auth. v. Am. Radiators & Standard Sanitary Corp.,* 323 F. Supp. 364, 378 (E.D. Pa. 1970); *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). Along these lines, federal courts have made clear that individual mailings to each class member's last known address is a sufficient form of notice. *See, e.g., White v. Nat'l Football League*, 41 F.3d 402, 408 (8th Cir. 1994), *abrogated on other grounds, Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 618, 620 (1997). The mailed and published notices contain all the

important details, are clearly written to be understood by the Settlement Class Members, and will be disseminated in ways intended to maximize the chances of receipt.

## VI.  THE SETTLEMENT CLASS SHOULD BE CERTIFIED

At the preliminary approval stage, if the Court is satisfied (as it should be) that the proposed Settlement is within the range of reasonableness, the Court also must certify the class for purposes of considering the Settlement. When conditionally certifying a class for settlement purposes, a court must pay "attention to class certification requirements." *Staton*, 327 F.3d at 952 (quotations and citation omitted). "To obtain class certification, a class plaintiff has the burden of showing that the requirements of Rule 23(a) are met and that the class is maintainable pursuant to Rule 23(b)." *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1266 (9th Cir. 2010). "Rule 23(a) ensures that the named plaintiffs are appropriate representatives of the class whose claims they wish to litigate." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2550 (2011). Under Rule 23(a), the party seeking certification must demonstrate, first, that:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

*Id.* at 2548 (citing Fed. R. Civ. P. 23(a)). "Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 131 S. Ct. at 2548. Rule 23(b) is satisfied if:

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

1  Fed. R. Civ. P. 23(b)(3).

2  **A.   Requirements Under Rule 23(a)**

3  **1.   Numerosity**

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members

4  is impracticable." Fed. R. Civ. P. 23(a)(1). Classes of more than 40 members are

5  generally numerous enough. *Keegan v. Am. Honda Motor Co, Inc.*, 284 F.R.D. 504, 522

6  (C.D. Cal. 2012); *see also Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909,

7  913-914 (9th Cir. 1964) ("'[I]mpracticability' does not mean 'impossibility,' but only

8  the difficulty or inconvenience of joining all members of the class.") (internal quotation

9  marks and citation omitted). Here, the Settlement Class includes more than 1,000

10  members across the country who have been identified and located from Defendants'

11  electronic databases and internal records, in addition to many other members for whom

12  names and addresses are presently unavailable.

13  Thus, the Court should find that numerosity is satisfied.

14  **2.   Commonality**

15  Rule 23(a)(2) requires that "there are questions of law or fact common to the

16  class." Fed. R. Civ. P. 23(a)(2). "Commonality requires the plaintiff to demonstrate that

17  the class members 'have suffered the same injury.'" *Dukes*, 131 S. Ct. at 2551 (quoting

18  *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). "This does not mean merely

19  that they have all suffered a violation of the same provision of law," but instead that

20  their claim(s) "depend upon a common contention . . . of such a nature that it is capable

21  of classwide resolution – which means that determination of its truth or falsity will

22  resolve an issue that is central to the validity of each one of the claims in one stroke."

23  *Dukes*, 131 S. Ct. at 2551. Although for purposes of Rule 23(a)(2), "even a single

24  common question will do," *id.* at 2556 (internal citation, quotation marks, and brackets

25  omitted), "[w]hat matters to class certification . . . is not the raising of common

26  'questions' – even in droves – but, rather the capacity of a classwide proceeding to

27  general common *answers* apt to drive the resolution of the litigation." *Id.* at 2551

28  (citation omitted).

Here, the proposed Settlement Class is comprised of all the people who paid Defendants to use the Song under Defendants' untrue claim of copyright ownership. Many important questions of fact and law raised in this litigation – including in particular, whether Defendants owned the copyright, whether they had a right to collect fees for use of the Song, whether they must return those fees to members of the Settlement Class, and whether anyone else (such as the Intervenors) own the Song – are shared by all Settlement Class members, such that a "determination of [their] truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Dukes*, 131 S. Ct. at 2555.

The Court should find that the commonality requirement is satisfied.

### 3.   Typicality

Rule 23(a)(3) requires "the claims or defenses of the representative parties [to be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "The typicality requirement looks to whether the claims of the class representatives are typical of those of the class, and [is] satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Stearns v. Ticketmaster Corp.*, 655 F.3d 1013, 1019 (9th Cir. 2011) (internal citation and quotation marks omitted). "Typicality requires that the named plaintiffs be members of the class they represent. *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 613 (9th Cir. 2010) (citing *Falcon*, 457 U.S. at 156). The commonality, typicality, and adequacy-of-representation requirements "tend to merge" with each other. *Dukes*, 131 S. Ct. at 2551 n.5 (citing *Falcon*, 457 U.S. at 157-58 n.13).

Here, Plaintiffs paid Defendants fees to use the Song under Defendants' copyright ownership claim, as did all other members of the proposed Settlement Class. Nelson Decl., ¶ 9; Siegel Decl., ¶¶ 6-10; Marya Decl., ¶¶ 3-5; Majar Decl., ¶ 6. Therefore, all four Plaintiffs are members of the class they represent. For the same reason, all four Plaintiffs were subject to the same policies that give rise to this litigation as the other members of the Settlement Class. Therefore, Plaintiffs' claims

arise from the same facts and events as those of the other Settlement Class members, and Plaintiffs will rely on the same legal arguments as the proposed Settlement Class members to prove Defendants' liability. *See Stearns*, 655 F.3d at 1019.

The Court should find that the typicality requirement is met.

### 4. Adequacy of Representation

Rule 23(a)(4) permits certification of a class action only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This factor requires: (1) that the proposed representative plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Dukes*, 603 F.3d at 614.

All four Plaintiffs have submitted signed declarations stating that they lack conflict with the proposed Settlement Class. *See* Nelson Decl., ¶ 21; Siegel Decl., ¶ 25; Marya Decl., ¶ 20; Majar Decl., ¶ 23. Plaintiffs all share a common injury with the rest of the proposed Settlement Class, since they all paid fees to Defendants to use the Song that Defendants did not own. No one has identified any potential conflict between Plaintiffs and the other members of the Settlement Class. Accordingly, all four Plaintiffs are adequate class representatives.

As to the adequacy of Class Counsel, the Court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the type of claims assert in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Given the progress of the litigation thus far, there can be no dispute that the work done by Class Counsel in this Action has been of exceptionally high quality. In addition, Class Counsel has demonstrated they have more than sufficient resources to prosecute the litigation. Wolf Haldenstein Adler Freeman & Herz LLP, whom the Court appointed as Interim Class Counsel, has extensive experience in complex class action litigation. *See* Rifkin Decl., ¶ 35. The Court should conclude that the adequacy

requirements under Rule 23(g) are met and should confirm the appointment of Wolf Haldenstein as Lead Class Counsel.

## B.    Requirements Under Rule 23(b)

In addition to establishing the elements of Rule 23(a), Plaintiffs also must satisfy one of the three elements of Rule 23(b). Plaintiffs seek certification under Rule 23(b)(3), alleging that common questions predominate over any individual issues that may exist in this case. Under Rule 23(b)(3), a class action may be maintained if: "[1] the court finds that the questions of law or fact common to class members *predominate* over any questions affecting only individual members, and [2] that a class action is *superior* to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). The Court may consider:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

*Id.*

### 1.    Predominance

As to the predominance factor, the Supreme Court has explained that it "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 623, (1997). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting 7A Charles Alan Wright and Arthur R. Miller, FEDERAL PRACTICE & PROCEDURE § 1778 (2d ed. 1986)).

Here, common questions of fact and law present a "significant aspect" of the case. These important common questions include whether Defendants owned the

1   copyright, whether they had a right to collect fees for use of the Song, whether they

2   must return those fees to members of the Settlement Class, and whether anyone else

3   (such as the Intervenors) own the Song. These common questions can be resolved in a

4   single adjudication and clearly justify handling this dispute on a representative, rather

5   than an individual, basis.

6   Therefore, the Court should find that the predominance requirement is met.

7   **2.    Superiority**

8   "The superiority inquiry under Rule 23(b)(3) requires determination of whether

9   the objectives of the particular class action procedure will be achieved in the particular

10   case." *Hanlon*, 150 F.3d at 1023. "This determination necessarily involves a

11   comparative evaluation of alternative mechanisms of dispute resolution." *Id.*

12   Here, each member of the Settlement Class pursuing a claim individually would

13   burden the judiciary and run afoul of Rule 23's focus on efficiency and judicial

14   economy. *See Vinole v. Countrywide Home Loans, Inc.*, 571 F.3d 935, 946 (9th Cir.

15   2009) ("The overarching focus remains whether trial by class representation would

16   further the goals of efficiency and judicial economy."). Further, litigation costs would

17   likely "dwarf potential recovery" if each class member litigated individually. *Hanlon*,

18   150 F.3d at 1023. "[W]here the damages each plaintiff suffered are not that great, this

19   factor weighs in favor of certifying a class action." *Zinser v. Accufix Research Inst.,*

20   *Inc.*, 253 F.3d 1180, 1199 n.2 (9th Cir. 2001) (quotation marks and citation omitted).

21   Considering the non-exclusive factors under Rule 23(b)(3)(A)-(D), the Court

22   should find that Settlement Class Members' potential interests in individually

23   controlling the prosecution of separate actions and the potential difficulties in managing

24   the class action do not outweigh the desirability of concentrating this matter in one

25   litigation. *See* Fed. R. Civ. P. 23(b)(3)(A), (C). This particular forum is desirable

26   because some Settlement Class Members were required to litigate here. *See* Fed. R. Civ.

27   P. 23(b)(3)(C).

28   Moreover, as a practical matter, because notice of the proposed Settlement will

be published in advance of the Court's adjudication that *Happy Birthday* is in the public domain, anyone believing he owns the Song's copyright will have an opportunity to come forward and assert that right. As a practical matter, there may be no other way for any Court to determine the question with that degree of transparency and openness. Finally, the Court is not aware of any litigation concerning the controversy that has already begun by or against class members. *See* Fed. R. Civ. P. 23(b)(3)(B).

Thus, the Court should find that the superiority requirement is met.

## VII. PRELIMINARY APPROVAL OF FORM AND METHOD OF CLASS NOTICE

For a class certified under Rule 23(b)(3), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Settlement provides that Notice will be mailed to all members of the Settlement Class whose names and addresses can be identified by Defendants through reasonable efforts. Notice by mail has been found by the Supreme Court to be sufficient if the notice is "reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950).

However, actual notice is not required. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994). To provide some notice of the Settlement to Settlement Class Members and anyone else whose rights might be affected by the Settlement, the Settlement Administrator will cause a summary notice of the Settlement to be published in *The Hollywood Reporter*, in the U.S. edition of *Variety*, in *Billboard*, and on the Settlement Website. The Publication Notice describes the background of the litigation and the proposed Settlement and instructs interested persons how to obtain additional information about the Settlement.

The proposed Notice and the Publication Notice are attached as Exhibits B and C to the Settlement Agreement, filed concurrently herewith. Under Rule 23, the notice must include, in a manner that is understandable to potential class members: "(i) the

nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B). The proposed notices include this necessary information.

## VIII.  CONCLUSION

For the foregoing reasons, the Court should grant the motion for preliminarily approval of the proposed Settlement, should conditionally certify the Settlement Class, should appoint Plaintiffs as class representatives and Class Counsel as counsel for the Settlement Class, should confirm the appointment of Wolf Haldenstein as Class Counsel, should appoint Rust Consulting, Inc. as Settlement Administrator, and should approve the form and method of the Notices.

Plaintiffs ask the Court to set the Final Approval Hearing based on the proposed schedule in the preliminary approval order, to determine whether the Settlement should be finally approved as fair, reasonable and adequate to Settlement Class Members. The Court should set deadlines for notice and further briefing in accordance with the date for the Final Approval Hearing.

Respectfully submitted,

Dated: February 8, 2015

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**

By:    */s/ Betsy C. Manifold*
BETSY C. MANIFOLD

FRANCIS M. GREGOREK
gregorek@whafh.com
BETSY C. MANIFOLD
manifold@whafh.com
RACHELE R. RICKERT
rickert@whafh.com
MARISA C. LIVESAY
livesay@whafh.com
750 B Street, Suite 2770
San Diego, CA 92101

Telephone: 619/239-4599
Facsimile: 619/234-4599

**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
MARK C. RIFKIN (*pro hac vice*)
rifkin@whafh.com
JANINE POLLACK (*pro hac vice*)
pollack@whafh.com
270 Madison Avenue
New York, NY 10016
Telephone: 212/545-4600
Facsimile: 212-545-4753

*Interim Lead Counsel for Plaintiffs*

**RANDALL S. NEWMAN PC**
RANDALL S. NEWMAN (190547)
rsn@randallnewman.net
37 Wall Street, Penthouse D
New York, NY 10005
Telephone: 212/797-3737

**HUNT ORTMANN PALFFY NIEVES DARLING & MAH, INC.**
ALISON C. GIBBS (257526)
gibbs@huntortmann.com
OMEL A. NIEVES (134444)
nieves@huntortmann.com
KATHLYNN E. SMITH (234541)
smith@ huntortmann.com
301 North Lake Avenue, 7th Floor
Pasadena, CA 91101
Telephone 626/440-5200
Facsimile 626/796-0107
Facsimile: 212/797-3172

**DONAHUE FITZGERALD LLP**
WILLIAM R. HILL (114954)
rock@donahue.com
ANDREW S. MACKAY (197074)
andrew@donahue.com
DANIEL J. SCHACHT (259717)
daniel@donahue.com
1999 Harrison Street, 25th Floor
Oakland, CA 94612-3520
Telephone: 510/451-0544
Facsimile: 510/832-1486

**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (134180)
lglancy@glancylaw.com

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARC L. GODINO (188669)
mgodino@glancylaw.com
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: 310/201-9150
Facsimile: 310/201-9160

*Attorneys for Plaintiffs*

WARNERCHAPPELL:22671.v2