FRANCIS M. GREGOREK (144785)
gregorek@whafh.com
BETSY C. MANIFOLD (182450)
manifold@whafh.com
RACHELE R. RICKERT (190634)
rickert@whafh.com
MARISA C. LIVESAY (223247)
livesay@whafh.com
BRITTANY N. DEJONG (258766)
dejong@whafh.com
**WOLF HALDENSTEIN ADLER
  FREEMAN & HERZ LLP**
750 B Street, Suite 2770
San Diego, CA 92101
Telephone:  619/239-4599
Facsimile:  619/234-4599

*Interim Lead Counsel for Plaintiffs and the [Proposed] Class*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| GOOD MORNING TO YOU PRODUCTIONS CORP., et al.,<br><br>              Plaintiffs,<br><br>v.<br><br>WARNER/CHAPPELL MUSIC, INC., et al.,<br><br>              Defendants. | Lead Case No. CV 13-04460-GHK (MRWx)<br><br>**REVISED CLASS ACTION SETTLEMENT AGREEMENT**<br><br><br>Judge:      Hon. George H. King, Chief Judge<br><br>Courtroom:  650 |

## SETTLEMENT AGREEMENT AND RELEASE

This Revised Settlement Agreement and Release and its attached exhibits ("Settlement Agreement" or "Agreement"), is entered into by and among Good Morning to You Productions Corp., Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC (collectively, the "Plaintiffs" or "Class Representatives"), individually and on behalf of the Settlement Class (defined below); Defendants Warner/Chappell Music, Inc., and Summy-Birchard Inc. (jointly, "Defendants" or "Warner/Chappell"); and Intervenors the Association for Childhood Education International and the Hill Foundation, Inc. (jointly, "Intervenors") (Plaintiffs, Defendants and Intervenors, collectively, the "Parties"). This Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims upon and subject to the terms and conditions set forth in this Agreement, and subject to the final approval of the United States District Court for the Central District of California (the "Court").

## RECITALS

WHEREAS, on June 13, 2013, Good Morning to You Productions Corp. filed a putative class action complaint against Warner/Chappell in the United States District Court for the Southern District of New York, which it voluntarily dismissed on June 26, 2013;

WHEREAS, on June 19, 2013, June 20, 2013, and July 17, 2013, Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC, respectively, filed putative class action complaints against Warner/Chappell in the Court;

WHEREAS, on July 26, 2013, Good Morning to You Productions Corp., Robert Siegel, and Rupa Marya d/b/a Rupa & The April Fishes filed a Consolidated First Amended Complaint in the Court;

WHEREAS, on August 30, 2013, Plaintiffs filed a Second Amended Consolidated Complaint in the Court on behalf of a putative class of all persons or

entities (excluding Defendants' directors, officers, employees, and affiliates) who entered into an agreement with Warner/Chappell or paid it for the use of the Song (as hereafter defined) at any time from June 18, 2009;

WHEREAS, Plaintiffs' Second Amended Consolidated Complaint asserted claims for (1) a declaratory judgment, 28 U.S.C. § 2201; (2) declaratory and injunctive relief and damages, 28 U.S.C. § 2202; (3) violation of California's unfair competition law, Bus. & Prof. Code §§ 17200 *et seq.*; (4) breach of contract; (5) money had and received; (6) rescission; and (7) violation of California's false advertising law, Bus. & Prof. Code §§ 17500 *et seq.*;

WHEREAS, on August 30, 2013, Defendants moved to dismiss the Second Amended Consolidated Complaint and/or to strike Plaintiffs' proposed class definition;

WHEREAS, on September 6, 2013, the Court appointed Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") as Interim Class Counsel;

WHEREAS, on October 16, 2013, the Court granted in part and denied in part Defendants' motions to dismiss and/or strike Plaintiffs' Second Amended Consolidated Complaint, bifurcating Plaintiffs' first claim from Plaintiffs' remaining claims for purposes of discovery through summary judgment and granting Plaintiffs leave to file an amended complaint;

WHEREAS, on November 6, 2013, Plaintiffs filed a Third Amended Consolidated Complaint, asserting the same seven claims as set forth above, and which Defendants answered as to claim one only on December 11, 2013;

WHEREAS, on April 29, 2014, Plaintiffs filed a Fourth Amended Consolidated Complaint, asserting the same seven claims as set forth above, and which Defendants answered as to claim one only on May 6, 2014;

WHEREAS, between February and July 2014, Plaintiffs and Defendants

engaged in extensive written, deposition, and document discovery[1];

WHEREAS, on November 26, 2014, Plaintiffs and Defendants filed cross-motions for summary judgment;

WHEREAS, on September 22, 2015, the Court denied Defendants' motion for summary judgment and granted in part and denied in part Plaintiffs' motion for summary judgment;

WHEREAS, on October 15, 2015, Defendants filed a motion for reconsideration of the Court's summary judgment order or, alternatively, certification of that order for interlocutory appeal under 8 U.S.C. § 1292(b);

WHEREAS, on October 29, 2015, Plaintiffs filed a motion for leave to amend and file a Fifth Amended Consolidated Complaint;

WHEREAS, on November 9, 2015, ACEI and the Hill Foundation filed an unopposed motion to intervene;

WHEREAS, on December 1, 2015, the Parties held an all-day, in-person mediation with mediator David Rotman, Esq.;

WHEREAS, on December 6, 2015, after a series of telephone and email communications with counsel for the parties following the in-person mediation on December 1, 2015, Mr. Rotman made a confidential mediator's proposal of the material terms on which to settle the Action;

WHEREAS, on December 7, 2015, the Court granted Intervenors' motion to intervene;

WHEREAS, on December 7, 2015, the Court granted Plaintiffs' motion for leave to amend and file a Fifth Amended Consolidated Complaint;

---

[1] Among other things, Plaintiffs took depositions of Warner/Chappell's corporate representative and of its Vice President of Administration. Plaintiffs and Defendants each answered numerous interrogatories and requests for admissions. Plaintiffs and Defendants each produced thousands of pages of documents. Plaintiffs produced an expert report, and Defendants deposed Plaintiffs' expert. Plaintiffs subpoenaed documents from a number of third parties.

WHEREAS, on December 9, 2015, Plaintiffs filed a Fifth Amended Consolidated Complaint on behalf of a putative class of persons or entities (excluding Defendants' directors, officers, employees, and affiliates) who entered into a license with Defendants or their predecessors-in-interest or paid Defendants or their predecessors-in-interest for use of the Song at any time since at least September 3, 1949; Plaintiffs' Fifth Amended Consolidated Complaint alleged the same seven claims set forth above;

WHEREAS, on December 8, 2015, counsel for all Parties notified Mr. Rotman that all parties had accepted the material terms of a settlement contained in the confidential mediator's proposal, which terms are embodied in this Settlement Agreement;

WHEREAS, in all five consolidated complaints, Plaintiffs defined the proposed class as beginning on June 18, 2009, but represent that this was an inadvertent error because the first complaint was filed by Good Morning to You Production Corp. on June 13, 2013;

WHEREAS, Plaintiffs do not believe that using June 13, 2009, rather than June 18, 2009, as the line of demarcation between Period One Settlement Claims and Period Two Settlement Claims (as hereafter defined) will have any material effect on any party's rights or obligations hereunder;

WHEREAS, Warner/Chappell: (1) denies (a) Plaintiffs' contention that Warner/Chappell does not own a valid copyright in the Song, (b) Plaintiffs' contention that the Song is in the public domain, and (c) all of Plaintiffs' allegations of wrongdoing, fault, or liability or that Warner/Chappell has acted improperly as alleged; (2) believes that the Fifth Amended Consolidated Complaint as well as all predecessor complaints lack merit; (3) would have continued to resist vigorously Plaintiffs' claims and contentions, and would have continued to assert its defenses thereto had this Settlement not been reached (and would have challenged the Court's rulings, if necessary, on appeal or by way of petition for certiorari); and (4) has entered

into this Settlement to put the claims to rest finally and forever solely for the purpose of avoiding prolonged and expensive litigation, without acknowledging or admitting in any way any of Plaintiffs' contentions or claims or any fault, wrongdoing or liability whatsoever;

WHEREAS, Intervenors: (1) deny that the Song is in the public domain; (2) believe that if Warner/Chappell does not own a valid federally registered copyright in the Song, then Intervenors own either the federally registered copyright or a common law copyright in the Song; (3) believe that the Fifth Amended Consolidated Complaint as well as all predecessor complaints lack merit; (4) would have continued to resist vigorously Plaintiffs' claims and contentions; and (5) have entered into this Settlement to put the claims to rest finally and forever solely for the purpose of avoiding prolonged and expensive litigation, without acknowledging or admitting in any way any of Plaintiffs' contentions or claims or any fault, wrongdoing or liability whatsoever;

WHEREAS, Plaintiffs and Class Counsel: (1) believe that the claims asserted in the Action are meritorious, but (2) have considered and weighed the issues involved in establishing the validity of their claims and the ability to establish damages and have concluded that, in light of the uncertainty of the outcome as well as the substantial risks and inevitable delay in proceeding to trial, compared to the benefits being provided hereby, the terms and conditions set forth herein are fair and reasonable and should be submitted to the Court for approval.

**NOW THEREFORE**, without any admission or concession by any Party to any claim, contention or allegation by any other Party, **IT IS HEREBY STIPULATED AND AGREED**, by and among the Parties, through their respective counsel, subject to approval of the Court pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, in consideration of the benefits flowing to the Parties hereto from the Settlement, that all Released Claims as against all Released Parties shall be compromised, settled, released and dismissed with prejudice, upon and subject to the following terms and conditions:

# 1.    DEFINITIONS

As used in this Settlement Agreement, the following terms shall have the meanings specified below.  The singular includes the plural and vice versa.

1.1    "**Action**" means the putative class action captioned *Good Morning to You Productions Corp., et al. v. Warner/Chappell Music, Inc., et al.*, Lead Case No. CV 13-04460-GHK (MRWx), pending in the Court.

1.2    "**Affiliate**" means a second Person that is related in whole or in part to the first Person as a direct or indirect parent or subsidiary, or is otherwise owned or controlled in whole or in part by the first Person or by a direct or indirect parent or subsidiary of the first Person.

1.3    "**Alfred**" means Alfred Music, Inc.

1.4    "**Authorized Claimants**" means Authorized Period One Claimants and Authorized Period Two Claimants.

1.5    "**Authorized Claims**" means Authorized Period One Claims and Authorized Period Two Claims.

1.6    "**Authorized Period One Claim**" means a Claim submitted by a Period One Settlement Class Member that is:  (a) submitted timely and in accordance with the directions on the Period One Claim Form and the provisions of this Settlement Agreement;  (b) fully and truthfully completed and executed by the Period One Settlement Class Member with all of the information requested in the Period One Claim Form, including valid documentation of the Period One Licensing Costs for which a share of the Net Settlement Fund is claimed and a valid and complete IRS Form W-9; (c) signed by the Period One Settlement Class Member; and (d) accepted by the Settlement Administrator in accordance with Section 3 hereof.

1.7    "**Authorized Period One Claimant**" means a Period One Settlement Class Member who submits an Authorized Period One Claim.

1.8    "**Authorized Period Two Claim**" means a Claim submitted by a Period Two Settlement Class Member that is:  (a) submitted timely and in accordance with the

directions on the Period Two Claim Form and the provisions of this Settlement Agreement; (b) fully and truthfully completed and executed by the Period Two Settlement Class Member with all of the information requested in the Period Two Claim Form, including valid documentation of the Period Two Licensing Costs for which a share of the Net Settlement Fund is claimed and a valid and complete IRS Form W-9; (c) signed by the Period Two Settlement Class Member; and (d) accepted by the Settlement Administrator in accordance with Section 3 hereof.

1.9    "**Authorized Period Two Claimant**" means a Period Two Settlement Class Member who submits an Authorized Period Two Claim.

1.10    "**CAFA Notice**" means the notice intended to comply with the requirements of the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, as provided for in Section 5.2 hereof.

1.11    "**Claim**" means a written request submitted by mail by a Settlement Class Member consistent with the provisions of this Agreement, seeking a cash payment in connection with the Settlement.

1.12    "**Claim Form**" means the document substantially in the form attached hereto as Exhibit A.    The Claim Form shall be available for submission either in electronic or paper format.

1.13    "**Claims Deadline**" means the date by which a Claim Form must be postmarked or received to be timely and shall be set as a date no later than sixty (60) days after the Notice Date.

1.14    "**Class Counsel**" means Wolf Haldenstein; Randall S. Newman PC; Hunt, Ortmann, Palffy, Nieves, Darling & Mah, Inc.; Donahue Fitzgerald, LLP; and Glancy Prongay & Murray, LLP.  Wolf Haldenstein shall be Lead Class Counsel.

1.15    "**Class Representatives**" or "**Plaintiffs**" means Good Morning to You Productions Corp., Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC.

1.16    "**Court**" means the United States District Court for the Central District of

California.

1.17   "**Defendants**" means Warner/Chappell Music, Inc. and Summy-Birchard, Inc.

1.18   "**Defendants' Counsel**" means Munger, Tolles & Olson LLP.

1.19   "**Escrow Account**" means the separate, interest-bearing escrow account to be established by the Settlement Administrator under terms agreed upon by Class Counsel and Defendants at a depository institution that is insured by the Federal Deposit Insurance Corporation and that has total assets of at least $500 million and a short-term deposit rating of at least P-1 (Moody's) or A-1 (Standard & Poors).  The money in the Escrow Account shall be invested in the following types of accounts or instruments and no other: (a) demand deposit accounts, or (b) time deposit accounts and certificates of deposit, in either case with maturities of forty-five (45) days or less. The costs of establishing and maintaining the Escrow Account shall be paid from the Settlement Fund.

1.20   "**Faber**" means Faber Music Ltd.

1.21   "**Fee and Expense Award**" means any attorneys' fees, expenses, and costs awarded by the Court to Class Counsel following the written motion or application for such awards made in accordance with Section 8 hereof.

1.22   "**Final Approval Hearing**" means the hearing before the Court where the Parties will request the Final Order and Judgment to be entered by the Court approving the Settlement Agreement and where Plaintiffs will request approval of the Fee and Expense Award to Class Counsel and the Incentive Award to the Class Representatives.  The Final Approval Hearing shall be no earlier than sixty (60) days after the Notice Date or such other time as the Court shall set.

1.23   "**Final Order and Judgment**" means the final order and judgment, substantially in the form attached hereto as Exhibit E, granting final approval to this Settlement after the Final Approval Hearing as set forth in Section 6.4 hereof.

1.24   "**Final Settlement Date**" means the date one (1) business day after the

Final Order and Judgment becomes "Final." For purposes of this Section, "Final" means that all of the following events have occurred: (a) the time has expired for filing or noticing any appeal of the Final Order and Judgment; (b) if any appeal or appeals have been taken from the Final Order and Judgment (other than an appeal or appeals solely with respect to the Fee and Expense Award or Incentive Award), completion, in a manner that finally affirms and leaves in place the Final Order and Judgment without any material modification thereto, of all proceedings arising out of the appeal or appeals (including, but not limited to, the expiration of all deadlines for motions for reconsideration, rehearing en banc, or petitions for review or certiorari, all proceedings ordered on remand, and all proceedings arising out of any subsequent appeal or appeals following decisions on remand); and (c) final disposition of any proceeding(s) on petition(s) for writ of certiorari to the Supreme Court of the United States, if any, arising out of the Final Order and Judgment (other than any petition(s) solely concerning the Fee and Expense Award or Incentive Award).

1.25 "**HFA**" means The Harry Fox Agency, Inc.

1.26 "**Incentive Award**" means any amount awarded by the Court to the Class Representatives following the written motion or application for such award made in accordance with Section 8.2 hereof.

1.27 "**Intervenors**" means the Association for Childhood Education International and the Hill Foundation, Inc.

1.28 "**Intervenors' Counsel**" means Whiteford Taylor Preston LLP and Payne & Fears LLP.

1.29 "**Licensing Costs**" means Period One Licensing Costs and Period Two Licensing Costs.

1.30 "**Mail Notice**" means the notice of the Settlement and Final Approval Hearing, substantially in the form attached hereto as Exhibit B.

1.31 "**Net Settlement Fund**" means the Settlement Fund, less Settlement Administration and Notice Expenses (up to $100,000), Taxes, Tax Expenses, and any

Fee and Expense Award and Incentive Awards.

1.32 "**Notice**" means notice to the Settlement Class of the Settlement, consisting of the Mail Notice, Publication Notice, and Website Notice.

1.33 "**Notice Date**" means the date by which the Notice Plan is completed, which shall be a date no later than thirty (30) days after the date of entry of the Preliminary Approval Order.

1.34 "**Notice Plan**" means the plan of disseminating notice of the Settlement to the Settlement Class, as set forth in Section 5.1 hereof.

1.35 "**Objection/Exclusion Deadline**" means the date by which a written objection to the Settlement or an exclusion request must be filed with the Court or postmarked, which shall be set as a date no later than fourteen (14) days before the Final Approval Hearing.

1.36 "**Period One Claim Form**" means the portion of the Claim Form used for submitting Period One Settlement Claims.

1.37 "**Period One Licensing Costs**" means the aggregate amount of money paid for use of the Song by a Period One Settlement Class Member (whether on such Period One Settlement Class Member's own behalf, on behalf of any other Person, or both) directly to Defendants, to their Affiliates, or to HFA, Alfred or Faber as agents for any of the foregoing at any time on or after June 13, 2009.

1.38 "**Period One Settlement Claim**" means a Claim submitted by a Period One Settlement Class Member on a Period One Claim Form.

1.39 "**Period One Settlement Class Member**" means a Settlement Class Member who directly paid Defendants, their Affiliates, or HFA, Alfred or Faber as agents for any of the foregoing for use of the Song (whether on such Period One Settlement Class Member's own behalf, on behalf of any other Person, or both) on or after June 13, 2009.

1.40 "**Period Two Claim Form**" means the portion of the Claim Form used for submitting Period Two Settlement Claims.

1.41 **"Period Two Licensing Costs"** means the aggregate amount of money paid for use of the Song by a Period Two Settlement Class Member (whether on such Period Two Settlement Class Member's own behalf, on behalf of any other Person, or both) directly to Defendants or Defendants' predecessors-in-interest, to either's Affiliates, or to HFA, Alfred or Faber as agents for any of the foregoing, at any time between September 3, 1949 and June 13, 2009.

1.42 **"Period Two Settlement Claim"** means a Claim submitted by a Period Two Settlement Class Member on a Period Two Claim Form.

1.43 **"Period Two Settlement Class Member"** means a Settlement Class Member who directly paid Defendants or their predecessors-in-interest (or either's Affiliates), or HFA, Alfred or Faber as agents for any of the foregoing for use of the Song (whether on such Period Two Settlement Class Member's own behalf, on behalf of any other Person, or both) any time between September 3, 1949, and June 13, 2009.

1.44 **"Person"** means, without limitation, any individual, corporation, partnership, limited partnership, limited liability partnership, limited liability company, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their spouses, heirs, predecessors, successors, representatives, or assigns.

1.45 **"Preliminary Approval Order"** means the order, substantially in the form attached hereto as Exhibit D, preliminarily approving the Settlement, certifying the Settlement Class for settlement purposes only, approving the form of the Notice and the Notice Plan, and directing dissemination of Notice in accordance with the Notice Plan, as set forth in Section 5.1 hereof.

1.46 **"Publication Notice"** means the notice of the Settlement and Final Approval Hearing, substantially in the form attached hereto as Exhibit C.

1.47 **"Released Claims"** means any and all actions, causes of action, claims, demands, liabilities, obligations, damages (including, without limitation, punitive,

statutory, exemplary and multiple damages), penalties, sanctions, losses, debts, contracts, agreements, attorneys' fees, costs, expenses, and rights of any nature and description whatsoever (including "Unknown Claims" as defined below), whether based on federal, state, or local statutes, common law, regulations, rules or any other law of the United States or foreign jurisdiction, known or unknown, fixed or contingent, suspected or unsuspected, in law or in equity, that were asserted or could have been asserted arising from or related to: (a) the licensing of the Song, collection of payment for use of the Song, or representations or omissions or other communications regarding ownership of the Song, by (i) Defendants, (ii) their agents, (iii) their Affiliates, (iv) any of the Persons listed in sub-paragraphs (b)-(d) of the definition of "Settlement Class" in Section 1.53 hereof, or (v) any predecessor(s)-in-interest of any or all of the foregoing; (b) Intervenors' or any of their agents' or Affiliates' (or any of their predecessors-in-interest's) licensing of the Song, collection of payment for use of the Song, or representations or omissions or other communications regarding ownership of the Song; or (c) as between Defendants and Intervenors, any matter related to the ownership, transfer, or obligations of any kind relating to the Song, including without limitation any and all federal or common law copyrights, as well as any claim for indemnification or contribution.

1.48 **"Released Parties"** means (a) Defendants and any and all of their present or former heirs, executors, estates, administrators, predecessors, predecessors-in-interest, successors, successors -in-interest, assigns, owners, parents, subsidiaries, associates, Affiliates and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, insurers, reinsurers, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers, directors, other individuals or entities in which Defendants have a controlling interest or which is affiliated with any of them, or any

other representatives of any of these Persons and entities; and (b) Intervenors and any and all of its present or former heirs, executors, personal representatives, estates, administrators, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, parents, subsidiaries, associates, affiliated and related entities, employers, employees, agents, representatives, consultants, independent contractors, directors, managing directors, officers, partners, principals, members, attorneys, accountants, financial and other advisors, investment bankers, insurers, reinsurers, underwriters, shareholders, lenders, auditors, investment advisors, and any and all present and former companies, firms, trusts, corporations, officers, directors, other individuals or entities in which Intervenors have a controlling interest or which is affiliated with any of them, or any other representatives of any of these Persons and entities.

1.49   "**Releasing Parties**" means: (a) Plaintiffs and Settlement Class Members, regardless of whether such Settlement Class Members submit claims, and all of their present, former, and future licensees with respect to the Song (including, without limitation, any blanket licensee or subscriber of a Settlement Class Member), heirs, executors, administrators, representatives, agents, attorneys, partners, predecessors, predecessors-in-interest, successors, successors-in-interest, assigns, and legatees; to the extent a Settlement Class Member is not an individual, Releasing Parties also includes all of its present, former, and future licensees with respect to the Song (including, without limitation, any blanket licensee or subscriber of a Settlement Class Member), direct and indirect parent companies, Affiliates, subsidiaries, divisions, agents, franchisees, predecessors, predecessors-in-interest, successors, and successors-in-interest; and (b) with respect to the Released Claims released between Defendants and Intervenors, all of the Released Parties.

1.50   "**Settlement**" means the class action settlement set forth in this Settlement Agreement.

1.51   "**Settlement Administrator**" means Rust Consulting, Inc., selected by

and with the joint concurrence of Plaintiffs and Defendants, and subject to approval by the Court, which shall perform the settlement administration duties set forth in this Settlement Agreement and as may be ordered by the Court.

1.52    "**Settlement Administration and Notice Expenses**" means any and all expenses reasonably incurred by the Settlement Administrator relating to implementation of this Settlement Agreement, including, without limitation, the costs reasonably incurred by the Settlement Administrator in: (a) disseminating Notice in accordance with the Notice Plan and CAFA Notice; (b) processing Claim Forms, objections, and requests for exclusion; (c) establishing and maintaining the Settlement Website and Escrow Account; (d) administering payments to Authorized Claimants via ACH transfers or by physical check (including the costs of mailing checks); and (e) otherwise performing with reasonable diligence the services it is obligated to perform under this Settlement Agreement.   Settlement Administration and Notice Expenses up to $100,000 will be paid out of the Settlement Fund.   Settlement Administration and Notice Expenses beyond $100,000 will be paid by Defendants directly to the Settlement Administrator on terms that are agreed upon by Defendants and the Settlement Administrator.

1.53    "**Settlement Class**" means:

(a)    all Persons who, at any time since September 3, 1949, directly paid Defendants, Intervenors, any of their predecessors-in-interest (or any of the Affiliates of any of the foregoing) for each such Person's use of the Song;

(b)  all Persons who, at any time since September 3, 1949, directly paid HFA, Alfred or Faber as agents for Defendants or their predecessors-in-interest for each such Person's use of the Song; or

(c)    the American Society of Composers, Authors and Publishers (ASCAP), foreign collecting societies (such as, for example, SACEM and GEMA), and any other Person who at any time since September 3, 1949 has issued blanket licenses covering the Song, but only for the amounts allocated to the Song by such Persons and directly

paid to Defendants or their predecessors-in-interest (or either's Affiliates) pursuant to such blanket licenses; or

(d)(i) digital rights aggregation services (such as, for example, Music Reports, Inc.), (ii) foreign sub-publishers (such as, for example, EMI Music Publishing Ltd.), and (iii) Persons not enumerated in sub-paragraph (b), (c), or items (i)-(ii) of this sub-paragraph (d) who directly paid Defendants, Intervenors, any of their predecessors-in-interest (or any of the Affiliates of any of the foregoing) on behalf of other Persons for such other Persons' use of the Song at any time since September 3, 1949, but only to the extent that the Persons listed in items (i)-(iii) of this sub-paragraph (d) directly paid Defendants, Intervenors, any of their predecessors-in-interest (or any of the Affiliates of any of the foregoing) amounts that were comprised of payments by or on behalf of other Persons for such other Persons' use of the Song.

In the case of payments referenced in sub-paragraphs (c) and (d), the Persons enumerated in sub-paragraphs (c) and (d) who made the direct payments to Defendants Intervenors, any of their predecessors-in-interest (or any of the Affiliates of any of the foregoing) are part of the Settlement Class, whereas the Persons on whose behalf such Persons obtained the rights to use the Song (whether through a blanket license or otherwise) are *not* part of the Settlement Class.

For purposes of this Settlement Agreement, the term "directly paid" includes payments made by a Person's accountant, attorney, business manager or similar agent acting for such Person solely in the capacity of remitting payment and not for the purpose of providing licensing services to other Persons. In the case of a direct payment by a Person's accountant, attorney, business manager or similar agent as described in the preceding sentence, said Person on whose behalf the payment is made is the Person in the Settlement Class (subject to all other requirements of this definition), and that Person's accountant, attorney, business manager or similar agent as described in the preceding sentence is not in the Settlement Class by virtue of that

payment.

Excluded from the Settlement Class are the following:  (I) Defendants, their Affiliates, and HFA, and their respective officers, directors and employees; (II) Intervenors, their subsidiaries, and Affiliates and their respective officers, directors, employees; and (III) Class Counsel, Defendants' Counsel, and Intervenors' Counsel.  For the avoidance of doubt, Alfred and Faber are part of the Settlement Class under sub-paragraph (a) with respect to their own direct licenses of the Song from Defendants or their predecessors-in-interest (or either's Affiliates), but only the sub-licensees of Alfred and Faber are part of the Settlement Class under sub-paragraph (b).

1.54   "**Settlement Class Member**" means a Person who falls within the definition of the Settlement Class and who has not submitted a timely and valid request for exclusion from the Settlement Class.

1.55   "**Settlement Class Member Address List**" means a list or lists, in electronic form, (a) that Defendants will generate to the extent reasonably practicable (i) in electronic form from SHARP and WAMPS, which are electronic licensing databases, (ii) in electronic form from HFA's electronic licensing database, and (iii) in paper form if and to the extent that a list or lists of names and addresses of Settlement Class Members is/are reasonably available to Defendants in paper form; and (b) that contains or contain the names and current or last known mailing and email addresses of Settlement Class Members that are reasonably available to Defendants from the sources described above.  Defendants believe that SHARP, WAMPS and/or HFA's electronic licensing database contain the names and/or addresses of most Period One Settlement Class Members and likely contain the names and/or addresses of many of the Period Two Settlement Class Members.  Defendants will provide the Settlement Class Member Address List to the Settlement Administrator for the sole purpose of the latter's effectuating the Notice Plan.

1.56   "**Settlement Fund**" means the sum of $14 million that Defendants will

make available for payment of Authorized Claims, Settlement Administration and Notice Expenses (up to $100,000), and any Fee and Expense Award and Incentive Awards.

1.57    "**Settlement Website**" means the website to be created by the Settlement Administrator containing details and information about the Settlement, including this Agreement, the Website Notice, the Claim Form, and the IRS Form W-9.

1.58    "**Song**" means the musical work entitled *Happy Birthday to You!* with the lyrics, "Happy Birthday to you, Happy Birthday to you, Happy Birthday dear _____, Happy Birthday to you!"

1.59    "**Tax Expenses**" means any and all expenses and costs incurred in connection with the calculation and payment of taxes or the preparation of tax returns and related documents (including, without limitation, expenses of tax attorneys or accountants and costs and expenses relating to filing (or failing to file) the returns). Tax Expenses will be paid out of the Settlement Fund.

1.60    "**Taxes**" means all taxes (including any estimated taxes, interest, or penalties) relating to the income earned by the Settlement Fund.  Taxes will be paid out of the Settlement Fund.

1.61    "**Unknown Claims**" means claims that could have been raised in the Action and that the Releasing Parties, or any of them, do not know or suspect to exist, which, if known by him, her, or it, might affect his, her or its agreement to release the Released Parties or the Released Claims or might affect his, her or its decision to agree, not agree, object, or not object to the Settlement.  Upon the Final Settlement Date, the Releasing Parties shall be deemed to have, and shall have, expressly waived and relinquished, to the fullest extent permitted by law, the provisions, rights, and benefits of Section 1542 of the California Civil Code, which provides as follows:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR**

**HER SETTLEMENT WITH THE DEBTOR.**

Upon the Final Settlement Date, the Releasing Parties also shall be deemed to have, and shall have, waived any and all provisions, rights and benefits conferred by any statutory or common law of any state or territory of the United States or any jurisdiction outside the United States, which is similar, comparable or equivalent to section 1542 of the California Civil Code. The Releasing Parties acknowledge that they may discover facts in addition to or different from those they now know or believe to be true with respect to the subject matter of any and all releases set forth herein, but that it is their intention to finally and forever settle and release the Released Claims, notwithstanding any Unknown Claims they may have.

1.62    "**Website Notice**" means the Mail Notice, substantially in the form attached hereto as Exhibit B, when published by the Settlement Administrator on the Settlement Website.

**2.    SETTLEMENT BENEFITS**

    **2.1    Monetary Relief**

        2.1.1    **Settlement Fund**.    Defendants will make available the Settlement Fund in accordance with the procedures set forth below.

        2.1.2    Within ten (10) days after entry of the Preliminary Approval Order, Defendants shall cause to be paid into the Escrow Account that portion of the Settlement Fund projected to be adequate to pay for the costs of the Notice Plan and CAFA Notice pursuant to Sections 5.1 and 5.2 hereof based on reasonable estimates of the Settlement Administrator.

        2.1.3    Within ten (10) days after the Final Settlement Date, Defendants shall cause to be paid into the Escrow Account the remaining portion of the Settlement Fund as necessary to pay Authorized Claims, outstanding Settlement Administration and Notice Expenses, Taxes, and Tax Expenses. To the extent that there are Settlement Administration and Notice Expenses beyond $100,000, Defendants will pay the Settlement Administrator directly on terms that are agreed upon by Defendants and the

Settlement Administrator.

2.1.4    The Settlement Fund includes all interest that shall accrue on the sums deposited in the Escrow Account. The Settlement Administrator shall be responsible for all tax filings with respect to any earnings on the Settlement Fund and the payment of all taxes that may be due on such earnings.

2.1.5    In no event shall Defendants' financial obligation under this Settlement (including all amounts payable from the Settlement Fund and any Fee and Expense Award and Incentive Award, but excluding Settlement Administration and Notice Expenses beyond $100,000) exceed the total amount of $14 million.

2.2    **Prospective Relief**.

2.2.1    Defendants and Intervenors agree that, upon the Final Settlement Date, they will relinquish their ownership claims to the Song and all their rights to the Song. Defendants and Intervenors further agree that, following the Final Settlement Date, they will not: (a) claim to own, or represent that they own, a federally registered or common law copyright in the Song, or (b) charge any Person a fee for use of the Song. Prior to the Final Settlement Date, Defendants and Intervenors do not agree to relinquish any rights they believe they have in the Song. Plaintiffs do not hereby concede that Defendants and Intervenors have or had any such rights.

2.2.2    All Parties acknowledge that they are not aware of any Person other than Defendants and Intervenors who does or could claim ownership of any rights in the Song. Accordingly, upon relinquishment of such ownership claims in accordance with the terms of Section 2.2.1 above, all Parties believe the Song will be in the public domain on the Final Settlement Date. Based on the foregoing provisions of this Section 2.2.2 and Section 2.2.1 above, Defendants and Intervenors will not oppose Plaintiffs' request that the Final Judgment and Order include a declaratory judgment that, as of the Final Settlement Date, the Song will be in the public domain.

3.    **DISTRIBUTIONS TO AUTHORIZED CLAIMANTS**

3.1    **Plan of Distribution**. Distributions to Authorized Claimants shall be

made as follows:

3.1.1    The Settlement Administrator will make payments to Authorized Claimants, based on the calculations set forth below, within sixty (60) days after the Final Settlement Date.

(a)    Payments will be made to Authorized Claimants either by (i) physical check, or (ii) ACH (Automated Clearing House) transfer.

(b)    Authorized Claimants who receive a physical check shall have ninety (90) days after the date of issuance to cash the check.  The Settlement Administrator shall make reasonable efforts to contact each Authorized Claimant whose settlement check has not been cashed within ninety (90) days, whose settlement check is returned as undeliverable, or whose ACH transfer could not be completed. Thereafter, any funds from checks not cashed, funds from checks returned as undeliverable, and funds from failed ACH transfers shall revert to the Settlement Fund. If, in consultation with the Settlement Administrator, the Parties determine that any such reverted funds can be distributed *pro rata* to other Authorized Claimants in a way that is fair and economically feasible, such funds shall be distributed accordingly.  If not, any such reverted funds shall be returned to Defendants.  In no event shall any such reverted funds constitute abandoned or unclaimed property.

3.1.2    **Period One Settlement Claims**.

(a)    Any Period One Settlement Class Member may submit a Claim to the Settlement Administrator for a share of the Net Settlement Fund based on the Period One Licensing Costs that a Period One Settlement Class Member claims, documents, and proves in accordance with the process set forth in Section 3.2 hereof (and as further set forth in the Period One Claim Form).

(b)    If the aggregate amount of all Authorized Period One Claims is less than or equal to $6,250,000, then: (i) each Authorized Period One Claimant's *pro rata* share of the Net Settlement Fund shall be calculated based upon the full amount of such Authorized Period One Claimant's Period One Licensing Costs

as computed by the Settlement Administrator from the Period One Claim Form; and (ii) any amount of the sum of $6,250,000 remaining in the Net Settlement Fund after all such Authorized Period One Claims are paid in full shall remain in the Net Settlement Fund and shall be available for distribution to Authorized Period Two Claimants pursuant to Section 3.1.3 below.

(c)    If the aggregate amount of all Authorized Period One Claims is greater than $6,250,000, then each Authorized Period One Claimant's *pro rata* share of the Net Settlement Fund shall be calculated by: (i) determining the full amount of such Authorized Period One Claimant's Period One Licensing Costs as computed by the Settlement Administrator from the Period One Claim Form (ii) and then reducing the foregoing amount on a *pro rata* basis relative to the Authorized Period One Claims of all other Authorized Period One Claimants as necessary to allocate a total of $6,250,000 of the Net Settlement Fund to the payment of Authorized Period One Claims.

(d)    In no event shall more than $6,250,000 of the Net Settlement Fund be allocated to the payment of Authorized Period One claims.

3.1.3    **Period Two Settlement Claims**.

(a)    Any Period Two Settlement Class Member may submit a Claim to the Settlement Administrator for a share of the Net Settlement Fund based on the Period Two Licensing Costs that a Period Two Settlement Class Member claims, documents, and proves in accordance with the process set forth in Section 3.2 hereof (and as further set forth in the Period Two Claim Form).

(b)    Each Authorized Period Two Claimant's *pro rata* share of the Net Settlement Fund shall be calculated based upon fifteen percent (15%) of the amount of such Authorized Period Two Claimant's Period Two Licensing Costs as computed by the Settlement Administrator from the Period Two Claim Form; provided, however, that if the aggregate amount of all Authorized Period Two Claims would exceed the amount remaining in the Net Settlement Fund after all Authorized

Period One Claims are paid, then the foregoing amount (*i.e.*, fifteen percent (15%) of the amount of an Authorized Period Two Claimant's Period Two Licensing Costs as computed by the Settlement Administrator from the Period Two Claim Form) will be reduced on a *pro rata* basis relative to the Authorized Period Two Claims of all other Authorized Period Two Claimants as necessary not to exceed the amount remaining in the Net Settlement Fund after all Authorized Period One Claims are paid.

3.1.4    There is a limit of one Period One Settlement Claim per Period One Settlement Class Member for all Period One Licensing Costs paid by that Settlement Class Member.  There is a limit of one Period Two Settlement Claim per Period Two Settlement Class Member for all Period Two Licensing Costs paid by that Settlement Class Member.  Any Settlement Class Member who made payments for use of the Song both before and on or after June 13, 2009, may file one Period One Settlement Claim and one Period Two Settlement Claim, which may be submitted together in a single Claim Form that provides both the information required by the Period One Claim Form and the information required by the Period Two Claim Form.

3.2    **Claims Administration**

3.2.1    Claim Forms shall be substantially in the form attached hereto as Exhibit A, which allows for the submission of Period One Settlement Claims, Period Two Settlement Claims, or both.  Period One Settlement Class Members shall have until the Claims Deadline to submit a Period One Claim Form.  A Period One Settlement Class Member may file only one (1) Period One Claim Form.  Period Two Settlement Class Members shall have until the Claims Deadline to submit a Period Two Claim Form.  A Period Two Settlement Class Member may file only one (1) Period Two Claim Form.  If a Person is a Period One Settlement Class Member and a Period Two Settlement Class Member, then the Person may submit a single Claim Form that provides both the information required by the Period One Claim Form and the information required by the Period Two Claim Form.

3.2.2    The Settlement Administrator may reject a Period One Claim

Form or Period Two Claim Form where the Person submitting the Period One Claim Form or Period Two Claim Form does not appear to be a Period One Settlement Class Member or Period Two Settlement Class Member, respectively.   The Settlement Administrator may reject a Claim Form, submitted pursuant to the last sentence of Section 3.2.1, where the Person submitting the claim does not appear to be either a Period One Settlement Class Member or Period Two Settlement Class Member.

3.2.3   The Settlement Administrator shall employ reasonable procedures to screen Claims for abuse or fraud and deny Period One Claim Forms or Period Two Claim Forms (or both where submitted together pursuant to the last sentence of Section 3.2.1) where there is evidence of abuse or fraud.

3.2.4   The Settlement Administrator shall determine whether a Period One Claim Form submitted by a Period One Settlement Class Member is an Authorized Period One Claim and shall reject Period One Claim Forms that fail to comply with the instructions thereon—including, but not limited to, by failing to provide valid documentation of the Period One Licensing Costs for which a share of the Net Settlement Fund is claimed (*e.g.*, copies of receipts, email or letter confirmations, executed licenses) or a valid and complete IRS Form W-9—or the terms of this Settlement Agreement, after giving the claimant a reasonable opportunity to correct any deficiency.   In no event shall any Period One Settlement Class Member have more than twenty-one (21) days after the Settlement Administrator gives notice of any deficiency in a submitted Period One Claim Form to correct that deficiency. The twenty-one (21) days to correct that deficiency runs from the date that the Settlement Administrator gives notice and extends the deadline set forth in Sections 1.13 and 3.2.1 hereof for the Settlement Class Member to submit a timely and valid claim.

3.2.5   Likewise, the Settlement Administrator shall determine whether a Period Two Claim Form submitted by a Period Two Settlement Class Member is an Authorized Period Two Claim and shall reject Period Two Claim Forms that fail to

comply with the instructions thereon—including, but not limited to, by failing to provide valid documentation of the Period Two Licensing Costs for which a share of the Net Settlement Fund is claimed (*e.g.*, copies of receipts, email or letter confirmations, executed licenses) or a valid and complete IRS Form W-9—or the terms of this Settlement Agreement, after giving the Person a reasonable opportunity to correct any deficiency.  In no event shall any Period Two Settlement Class Member have more than twenty-one (21) days after the Settlement Administrator gives notice of any deficiency in a submitted Period Two Claim Form to correct that deficiency.

**4.    RELEASES**

4.1    The Parties agree that should the Court grant final approval of the Settlement and enter the Final Order and Judgment, such Final Order and Judgment shall include a provision retaining the Court's jurisdiction over the Parties to enforce the terms of this Settlement Agreement.

4.2    Upon the Final Settlement Date, the Releasing Parties, and each of them, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever released, relinquished, and discharged all Released Claims against the Released Parties, and each of them, whether or not such Releasing Party has made a claim under the Settlement.  This Settlement Agreement shall be the sole and exclusive remedy for any and all Released Claims against the Released Parties.  In entering into this Release, the Releasing Parties acknowledge that they assume the risk of any mistake of fact or law.  If they, or any of them, should later discover that any fact which they relied upon in entering into this Settlement Agreement is not true, or that their understanding of the facts or law was incorrect, they shall not be entitled to modify, reform, or set aside this Settlement Agreement, in whole or in part, by reason thereof.

4.3    Upon the Final Settlement Date, every Releasing Party (including without limitation every Settlement Class Member) shall be bound by this Settlement Agreement, and each of them shall be permanently barred and enjoined from

1  commencing or prosecuting any action in any court or tribunal asserting any Released

2  Claim, either directly, representatively, derivatively or in any other capacity, against

3  any Released Party.

4  **5.    NOTICE**

5      5.1    **Notice Plan**.  Subject to entry of the Preliminary Approval Order, notice

6  of the Settlement shall be disseminated to the Settlement Class as follows:

7          5.1.1    Direct Notice.  Within five (5) days after the Court's issuance of

8  the Preliminary Approval Order, Defendants shall provide the Settlement Class

9  Member Address List to the Settlement Administrator.  Within twenty-one (21) days

10  after entry of the Preliminary Approval Order, the Settlement Administrator shall mail

11  the Mail Notice and Claim Form to each Settlement Class Member identified in the

12  Settlement Class Member Address List.

13          5.1.2    Publication Notice.  Within five (5) days after Direct Notice is

14  mailed pursuant to Section 5.1.1 hereof, the Settlement Administrator shall cause the

15  Publication Notice, substantially in the form attached hereto as Exhibit C, to appear

16  once each in *The Hollywood Reporter* (in one-eighth page size), the U.S. edition of

17  *Variety* (in one-eighth page size), and *Billboard* (in one-eighth page size).  Nothing in

18  this Agreement shall prohibit Plaintiffs and Class Counsel from performing their duties

19  and/or taking additional steps to maximize notice to the Class.

20          5.1.3    Settlement Website and Website Notice.  Within five (5) days

21  after entry of the Preliminary Approval Order, the Settlement Administrator shall

22  publish the Website Notice, substantially in the form attached hereto as Exhibit B,

23  through the Settlement Website.  The Settlement Website shall be developed, hosted,

24  and maintained by the Settlement Administrator through the Final Settlement Date.

25      5.2    **CAFA Notice**.  Within ten (10) days after the Settlement Agreement is

26  filed with the Court, the Settlement Administrator shall provide CAFA Notice by

27  serving upon the relevant government officials notice of the Settlement Agreement in

28  accordance with the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

5.3 **Notice Costs**. Settlement Administration and Notice Expenses up to $100,000 will be paid out of the Settlement Fund, provided such expenses are approved by the Court at the Final Approval Hearing. Additional Settlement Administration and Notice Expenses beyond $100,000 will be paid by Defendants directly to the Settlement Administrator on terms that are agreed upon by Defendants and the Settlement Administrator provided such expenses are approved by the Court at the Final Approval Hearing.

## 6. COURT APPROVAL OF THE SETTLEMENT

6.1 **Preliminary Approval**. Promptly after the execution of this Settlement Agreement, Class Counsel shall submit this Settlement Agreement to the Court and shall move the Court for preliminary approval of the Settlement and entry of the Preliminary Approval Order, substantially in the form attached hereto as Exhibit D, preliminarily approving the Settlement, certifying the Settlement Class for settlement purposes only, appointing Class Counsel and the Class Representatives, approving the form of the Notice and the Notice Plan and directing dissemination of Notice in accordance with the Notice Plan, setting a Final Approval Hearing date, and authorizing the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of the Settlement Agreement and Release and its implementing documents (including all attached exhibits) so long as they are consistent in all material respects with the Final Order and Judgment and do not limit the rights of Settlement Class Members.

6.2 **Exclusion Requests**. A Person in the Settlement Class may request to be excluded from the Settlement Class by sending a written request to the Settlement Administrator postmarked on or before the Objection/Exclusion Deadline, including: the case number of the Action; such Person's name, address, email address (if applicable), phone number and signature (or the signature of an authorized representative of such Person); the date(s) of all direct payment(s) to Defendants or Defendants' predecessors-in-interest or either's Affiliates or HFA, Alfred or Faber for

use of the Song, and the dollar amount(s) paid to Defendants or Defendants' predecessors-in-interest or either's Affiliates or HFA, Alfred or Faber for use of the Song; and a statement that such Person wishes to be excluded from the Settlement Class.  An exclusion request that does not include all of this information, or that is sent to an address other than that designated in the Notice, or that is not postmarked within the time specified, shall be invalid, and the Person(s) serving such an exclusion request shall be a member(s) of the Settlement Class and shall be bound as Settlement Class Members by the Settlement Agreement, if approved.  Any Person in the Settlement Class who submits a timely and valid exclusion request shall not: (a) be bound by the Final Order and Judgment; (b) be entitled to relief under this Settlement Agreement; (c) gain any rights by virtue of this Settlement Agreement; or (d) be entitled to object to any aspect of this Settlement Agreement.  A request for exclusion may not request exclusion of more than one Settlement Class Member.

6.3    **Objections**.  Any Settlement Class Members who wishes to object to the proposed Settlement and/or the application for the Fee and Expense Award or Incentive Award must file with the Court, and serve upon Class Counsel, Defendants' Counsel, and Intervenors' Counsel a written objection no later than the Objection/Exclusion Deadline.  Settlement Class Members may object on their own or may do so through separate counsel at their own expense.  All objections and any papers submitted in support of such objection shall be considered by the Court at the Final Approval Hearing only if, on or before the Objection/Exclusion Deadline approved by the Court and specified in the Notice, the Settlement Class Member submits copies of such objections and any papers to the Court by: (a) filing an objection in the United States District Court for the Central District of California in person, by CM/ECF, or by U.S. mail addressed to the Clerk of the Court, and (b) sending a letter by U.S. mail to counsel for the Parties; provided that any objection made by a Settlement Class Member represented by counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

6.3.1    Any Settlement Class Member who intends to object to this Settlement Agreement must present the objection in writing, which must be personally signed by the objector and include: (a) the objector's name, address, email address, and contact phone number; (b) an explanation of the basis upon which the objector claims to be a Settlement Class Member; (c) all grounds for the objection, including any supporting law or evidence, if any; (d) the name and contact information of any and all attorneys representing the objector in connection with the preparation or submission of the objection (the "Objecting Attorneys"); and (e) a statement indicating whether the objector intends to appear at the Final Approval Hearing (either personally or through counsel who files an appearance with the Court in accordance with the Court's Local Rules).    An objector shall not be permitted to object to the Settlement at the Final Approval Hearing unless notice of such intent (as described in (e) above) is either timely filed with or mailed to the Court.

6.3.2    Any Settlement Class Member who does not timely mail to, or file with, the Court a written objection in accordance with the terms of this Settlement Agreement and as detailed in the Notice (a) shall not be permitted to object to the Settlement at the Final Approval Hearing; (b) shall be foreclosed from seeking any review of the Settlement by appeal or other means; and (c) shall be deemed to have waived his, her or its objections and be forever barred from making any such objections in the Action or any other action or proceeding.

6.3.3    Any Party shall have the right to respond to any objection no later than fourteen (14) days prior to the Final Approval Hearing by filing a response with the Court that shall also be served on the objector and other Parties in the Action.

6.4    **Final Approval**.    Not later than seven (7) days before the Objection/Exclusion Deadline, Class Counsel shall file with the Court a motion for entry of a Final Order and Judgment, which shall be substantially in the form attached hereto as Exhibit E.

**7.    SETTLEMENT ADMINISTRATION**

7.1    The Settlement Administrator shall, under the Court's supervision, administer the terms of the Settlement Agreement, including but not limited to by processing Claim Forms in a rational, responsive, cost-effective, and timely manner.

7.2    The Settlement Administrator shall maintain reasonably detailed records of its activities under this Settlement Agreement.  The Settlement Administrator shall ensure that all such records will be made available to Class Counsel, Defendants' Counsel, and Intervenors' Counsel upon request.  The Settlement Administrator shall also provide reports and other information to the Court as the Court may require.  The Settlement Administrator shall provide Class Counsel, Defendants' Counsel, and Intervenors' Counsel with information concerning Notice, administration, and implementation of the Settlement Agreement.  Should the Court request, the Parties, in conjunction with the Settlement Administrator, shall submit a timely report to the Court summarizing the work performed by the Settlement Administrator.

7.3    Without limiting the foregoing, the Settlement Administrator shall: (a) receive exclusion requests from Persons in the Settlement Class and provide to Class Counsel, Defendants' Counsel, and Intervenors' Counsel copies thereof upon receipt, whether they are received before or after the Objection/Exclusion Deadline; (b) provide bi-weekly reports to Class Counsel, Defendants' Counsel, and Intervenors' Counsel including without limitation, identifying the number of Period One Claim Forms and Period Two Claim Forms received, the number of Authorized Claims, and the categorization and description of Period One Claim Forms and Period Two Claim Forms rejected, in whole or in part, by the Settlement Administrator; and (c) make available for inspection by Class Counsel, Defendants' Counsel, and Intervenors' Counsel Period One Claim Forms and Period Two Claim Forms and any supporting documentation received by the Settlement Administrator upon reasonable notice.

**8.    ATTORNEYS' FEES AND INCENTIVE AWARDS**

8.1    **Fee and Expense Award**.  Class Counsel shall file their petition and

papers in support of Class Counsel's request for a Fee and Expense Award thirty (30) days after Notice is disseminated to the Settlement Class Members.

8.1.1    Defendants shall file their opposition, if any, to Class Counsel's petition in support of its request for a Fee and Expense Award no later than thirty (30) days after Class Counsel file their petition.

8.1.2    Class Counsel shall file any reply brief in support of their request for a Fee and Expense Award and respond to any objection from a Settlement Class Member fourteen (14) days before the Final Approval Hearing.

8.1.3    If the Court does not approve Class Counsel's request for a Fee and Expense Award, or if the Court awards fees and expenses in an amount less than that requested by Class Counsel, the Court's decision shall not affect the validity and enforceability of the Settlement and shall not be a basis for any Party or other Person to seek to terminate or void the Settlement or for rendering the Settlement null, void or unenforceable.

8.1.4    The Fee and Expense Award that the Court orders will be payable by Defendants to Lead Class Counsel by delivery of check or other negotiable instrument(s) or by wire transfer(s) within five (5) days of the Final Settlement Date. Lead Class Counsel is solely responsible for distributing the Fee and Expense award to any Class Counsel that may claim entitlement to attorneys' fees or costs in the Action in such amounts as Lead Class Counsel determines appropriate.

8.1.5    If Defendants appeal the Fee and Expense Award and all the conditions for the Final Settlement Date otherwise have occurred, the Settlement Administrator shall calculate the Net Settlement Fund based upon the amount of the Fee and Expense Award, and the Settlement Administrator shall make distributions to Authorized Claimants in accordance with the Plan of Distribution in Section 3.1.

(a)    If the Net Settlement Fund does not pay all Authorized Claims, Defendants shall deliver to the Settlement Administrator the difference between the amount of the Fee and Expense Award and the amount Defendants

contend on appeal should have been awarded to Class Counsel. The Settlement Administrator shall hold this amount in the Escrow Account during the appeal. Defendants shall pay the remainder of the Fee and Expense Award in the manner provided in Section 8.1.4.

(b)   If, as a result of the appeal, all or a portion of the amount held in the Escrow Account pursuant to sub-paragraph (a) becomes available for distribution to Authorized Claimants, the Settlement Administrator shall distribute such additional amount to the Authorized Claimants as if such additional amount had been part of the Net Settlement Fund, in accordance with the terms of Section 3.1. After completing such additional distribution, the Settlement Administrator shall pay to Defendants any amount then remaining in the Escrow Account.

(c)   If, as a result of the appeal, Class Counsel are entitled to all or any portion of the amount held in the Escrow Account pursuant to sub-paragraph (a), the Settlement Administrator shall pay that amount to Lead Class Counsel on behalf of all Class Counsel.

8.1.6   If Class Counsel appeals the Fee and Expense Award and all the conditions for the Final Settlement Date otherwise have occurred, the Settlement Administrator shall calculate the Net Settlement Fund based upon the amount of the fees and expenses sought by Class Counsel in the appeal, and the Settlement Administrator shall make distributions to Authorized Claimants in accordance with the Plan of Distribution in Section 3.1.

(a)   Defendants shall pay the Fee and Expense Award to Class Counsel in the manner provided for in Section 8.1.4. If the Net Settlement Fund does not pay all Authorized Claims in accordance with the Plan of Distribution, Defendants shall deliver to the Settlement Administrator, which shall then hold in the Escrow Account, such portion of the additional amount that Class Counsel seek on appeal as would be necessary to pay all Authorized Claims in accordance with the Plan of Distribution.

(b)      If, as a result of the appeal, all or a portion of the amount held in the Escrow Account pursuant to sub-paragraph (a) becomes available for distribution to Authorized Claimants, the Settlement Administrator shall distribute that additional amount to the Authorized Claimants as if that additional amount had been part of the Net Settlement Fund, subject to the limitations in Section 3.1.

(c)      If, as a result of the appeal, Class Counsel are entitled to all or any portion of the amount held in the Escrow Account pursuant to sub-paragraph (a), the Settlement Administrator shall pay that additional amount to Lead Class Counsel on behalf of all Class Counsel.  If, as a result of the appeal, Class Counsel are entitled to an amount above and beyond that held in the Escrow Account pursuant to sub-paragraph (a) of this Section 8.1.6, Defendants shall pay that additional amount to Class Counsel in the manner provided for in Section 8.1.4.

(d)      If, after the payments in sub-sections (b) and (c) of this Section 8.1.6, any amount remains in the Escrow Account, the Settlement Administrator shall return that amount to Defendants.

8.1.7    If Defendants or Class Counsel unsuccessfully appeal the Fee and Expense Award, then the unsuccessful party on appeal shall pay such Settlement Administration and Notice Expenses as may be incurred in connection with the supplemental distribution under Section 8.1.5 or 8.1.6.

8.2    **Incentive Award**.  Class Counsel will apply to the Court for Incentive Awards of $15,000.00 to Plaintiff Good Morning to You Productions Corp., and for $10,000.00 to each of Plaintiffs Robert Siegel, Rupa Marya d/b/a Rupa & The April Fishes, and Majar Productions, LLC, which requests Defendants and Intervenors shall not oppose.  Class Counsel shall file their papers supporting any Incentive Award thirty days (30) after Notice is disseminated to the Settlement Class Members.

8.2.1    Defendants shall, within five (5) days of the Final Settlement Date, pay the amount of the Court-approved Incentive Awards for the Plaintiffs via check, to be sent care of Lead Class Counsel.

8.3     It is not a condition of the Settlement that any Fee and Expense Award and/or Incentive Award be approved by the Court.  Any order or proceeding relating to the amount of any Fee and Expense Award and/or Incentive Award, or any appeal from or reversal or modification thereof, shall not operate to modify, terminate or cancel the Settlement, or affect or delay the Final Order and Judgment.

## 9.    TERMINATION OF SETTLEMENT

9.1     Defendants may terminate the Settlement at any time within seven (7) days of the Objection/Exclusion Deadline if Defendants determine that either the number of or the total Licensing Costs paid by Persons who would otherwise be members of the Settlement Class, but who have timely and validly submitted requests for exclusion, equals or exceeds a number set forth in the Confidential Supplemental Agreement (the "Opt-Out Threshold").  Requests for exclusion from Persons who would not otherwise meet the Settlement Class definition do not count toward the Opt-Out Threshold.  The Parties shall seek to keep the Opt-Out Threshold confidential. In the event of a termination of this Settlement Agreement pursuant to the Confidential Supplemental Agreement, this Agreement shall become null and void.

9.2     This Settlement Agreement is being entered into for settlement purposes only.  If the Court conditions its approval of either the Preliminary Approval Order or the Final Order and Judgment on any modifications of this Settlement Agreement that are not acceptable to all Parties, or if the Court does not approve the Settlement or enter the Final Order and Judgment, or if the Final Settlement Date does not occur for any reason, then this Settlement Agreement will be deemed null and void *ab initio*.  In addition to this Settlement Agreement being deemed null and void *ab initio* and: (a) the Preliminary Approval Order, and the Final Order and Judgment (if applicable) and all of its provisions will be vacated by its own terms, including, but not limited to, vacating conditional certification of the Settlement Class, vacating conditional appointment of Plaintiffs as Class Representatives, and vacating conditional appointment of Class Counsel; (b) the Action will revert to the status that existed

before the Settlement Agreement's execution date; and (c)(i) no term or draft of this Settlement Agreement, (ii) nor any part of the Parties' settlement discussions, communications, negotiations, or documentation (including any declaration or brief filed in support of the motion for preliminary approval or motion for final approval), (iii) nor any rulings regarding class certification for settlement purposes (including the Preliminary Approval Order and, if applicable, the Final Order and Judgment), will have any effect or be admissible into evidence for any purpose in the Action or any other proceeding. If the Court does not approve the Settlement or enter the Final Order and Judgment for any reason, or if the Final Settlement Date does not occur for any reason, Defendants and Intervenors shall retain all their rights, including, for example, to object to the maintenance of the Action as a class action, to move for summary judgment, and to assert any and all defenses at trial, and nothing in this Settlement Agreement or other papers or proceedings related to the settlement shall be used as evidence or argument by any Party for any purpose concerning whether the Action, including whether it may properly be maintained as a class action.

9.3    Unless otherwise ordered by the Court, in the event the Settlement Agreement is terminated for any reason (including without limitation in accordance with Sections 9.1 or 9.2 hereof), then within ten (10) business days after the Parties have provided the Court with notice that they are invoking this Section 9.3, the Settlement Administrator shall return the Settlement Fund (including accrued interest), less expenses and any costs which have either been disbursed or incurred, including Taxes and Tax Expenses, to Defendants pursuant to written instructions from Defendants' Counsel. At the request of Defendants' Counsel, the Settlement Administrator or its designee shall apply for any tax refund owed on the Settlement Fund and pay the proceeds, after deduction of any fees or expenses incurred in connection with such application(s) for refund, to Defendants.

## 10.    NO ADMISSION OF WRONGDOING

10.1    Defendants and Intervenors deny any liability or wrongdoing of any kind

associated with the claims alleged and contend that this Action is not appropriate for class or collective action treatment pursuant to Federal Rule of Civil Procedure 23 or any other federal or state rule, statute, law, or provision.  Defendants and Intervenors continue to assert that the Action fails to meet the prerequisites necessary for class or collective action treatment under applicable law.  Defendants further deny:  (a) that Warner/Chappell does not own a valid copyright in the Song; (b) Plaintiffs' contention that the Song is in the public domain; (c) that the Action states any causes of action; (d) that the practices as to which Plaintiffs seek relief violate any law or are wrongful in any way whatsoever; (e) that Defendants have breached any contract with Plaintiffs or any Settlement Class Member; and (f) that either Plaintiffs or any Settlement Class Member is entitled to any relief whatsoever.  Intervenors further: (1) deny that the Song is in the public domain; (2) believe that if Warner/Chappell does not own a valid federally registered copyright in the Song, then Intervenors own either the federally registered copyright or a common law copyright in the Song; (3) deny that the Action states any valid causes of action; (4) deny that the practices as to which Plaintiffs seek relief violate any law or are wrongful in any way whatsoever; and (5) deny that either Plaintiffs or any Settlement Class Member is entitled to any relief whatsoever.

10.2    Defendants and Intervenors further agree that notwithstanding their good faith belief that they are not liable for any of the claims asserted, and despite their good faith belief that certification is not appropriate, they will not oppose the Court's certification of the Settlement Class contemplated by this Agreement solely for purposes of effectuating this Settlement Agreement.  Other than for purposes of this Settlement, Defendants and Intervenors do not waive their objections to certification of the Settlement Class, or any other class, in this Action as a litigation class.

10.3    Plaintiffs contend that they initiated and litigated this Action in good faith based upon their and Plaintiffs' Counsel's investigation of the facts and the law, and that this Action is appropriate for class action treatment, but nonetheless believe in good faith that the Settlement is a fair, reasonable, and adequate resolution of the

claims asserted in the Action on behalf of the purported class.

10.4    Neither this Agreement, including all exhibits, orders or other documents referred to herein, nor any terms or provisions of the Settlement Agreement or any of the negotiations or proceedings related to this Settlement Agreement, whether or not consummated, shall be:

10.4.1    offered or received against Defendants, Intervenors, or any other Released Party as evidence of, or construed as or deemed to be evidence of, any presumption, concession, or admission by Defendants or Intervenors or any Released Party of the truth of any fact alleged by Plaintiffs or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, or wrongdoing of Defendants, Intervenors, or any Released Party;

10.4.2    offered or received against Defendants, Intervenors, or any Released Party as evidence of a presumption, concession, or admission of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by Defendants, Intervenors, or any Released Party;

10.4.3    offered or received against Defendants, Intervenors, or any Released Party as evidence of a presumption, concession, or admission of any liability, negligence, fault or wrongdoing, or in any way referred to for any other reason as against any of the parties to this Agreement, in any other civil, criminal, or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of this Agreement; provided, however, that if this Agreement is approved by the Court, Defendants, Intervenors, or any Released Party may refer to it to effectuate the liability protection granted hereunder; or

10.4.4    construed against Defendants, Intervenors, or any Released Party or Plaintiffs and the Settlement Class as an admission or concession that the consideration to be given hereunder represents the amount that could be or would have

been recovered after trial.

## 11.    ADDITIONAL PROVISIONS

11.1    All of the exhibits attached hereto are hereby incorporated by reference as though fully set forth herein.

11.2    The Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Settlement Agreement.    The Parties, Class Counsel, Defendants' Counsel, and Intervenors' Counsel agree to cooperate with one another in seeking Court approval of the Preliminary Approval Order, the Settlement Agreement, and the Final Order and Judgment, and promptly to agree upon and execute all such other documentation as may be reasonably required to obtain final approval of the Settlement Agreement.

11.3    All time periods and dates described in this Settlement Agreement are subject to the Court's approval.    These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Settlement Class.    The Parties reserve the right, subject to the Court's approval, to make any reasonable extensions of time that might be necessary to carry out any provisions of this Settlement Agreement.

11.4    The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them with respect to the Released Claims by the Releasing Parties and each or any of them, on the one hand, against the Released Parties, and each or any of them, on the other hand.

11.5    The Parties executed this Settlement Agreement voluntarily and without duress or undue influence.

11.6    The Parties have relied upon the advice and representation of counsel, selected by them, concerning their respective legal liability for the claims hereby

released.  The Parties have read and understand fully this Settlement Agreement and have been fully advised as to the legal effect thereof by counsel of their own selection and intend to be legally bound by the same.

11.7    Whether or not the Final Settlement Date occurs or the Settlement Agreement is terminated, neither this Settlement Agreement nor the settlement contained in this Settlement Agreement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the settlement:

11.7.1   is, may be deemed, or shall be used, offered or received against the Released Parties, or each or any of them, as an admission, concession, or evidence of, the validity of any Released Claims, the truth of any fact alleged by any Releasing Party, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the settlement amount or the Fee and Expense Award, or of any alleged wrongdoing, liability, negligence or fault of the Released Parties, or any of them;

11.7.2   is, may be deemed, or shall be used, offered, or received against the Settlement Class or any other Releasing Party as an admission, concession, or evidence of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Releasing Parties, or any of them;

11.7.3   is, may be deemed, or shall be used, offered, or received against the Released Parties, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Parties, in any civil, criminal, or administrative proceeding in any court, administrative agency, or other tribunal.  However, the settlement, this Settlement Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Settlement Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate the provisions of this Settlement Agreement.  Notwithstanding the foregoing, if this Settlement Agreement is approved by the Court and the Final Settlement Date occurs, any of the Parties or any of the Released Parties may file this

Settlement Agreement and/or the Final Order and Judgment in any action that may be brought against such Party or Parties in order to support a defense or counterclaim based on principles of *res judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim;

11.7.4   is, may be deemed, or shall be construed against the Releasing Parties, or each or any of them, or against the Released Parties, or each or any of them, as an admission or concession that the consideration to be given hereunder represents an amount equal to, less than, or greater than that amount that could have or would have been recovered after trial; and

11.7.5   is, may be deemed, or shall be construed as or received in evidence as an admission or concession against the Releasing Parties, or each and any of them, or against the Released Parties, or each or any of them, that any of the Releasing Parties' claims are with or without merit or that damages recoverable in the Action or any other action or proceeding would have exceeded or would have been less than any particular amount.

11.8    The headings used in this Settlement Agreement are used for the purpose of convenience only and are not meant to have legal effect.

11.9    The Recitals are incorporated by this reference and are part of the Settlement Agreement.

11.10   The waiver by one Party of any breach of this Settlement Agreement by any other Party shall not be deemed as a waiver of any other prior or subsequent breaches of this Settlement Agreement.

11.11   The Parties must execute and deliver any additional papers, documents, and other assurances, and must do any other acts reasonably necessary to perform their obligations under this Settlement Agreement and to carry out this Settlement Agreement's expressed intent.

11.12   This Settlement Agreement sets forth the entire agreement and

understanding of the Parties with respect to the matter set forth herein, and supersedes all prior negotiations, agreements, arrangements, and undertakings with respect to the matters set forth herein. No representations, warranties, or inducements have been made to any Party concerning this Settlement Agreement other than the representations, warranties, and covenants contained and memorialized in such documents. This Settlement Agreement may be amended or modified only by a written instrument signed by or on behalf of all Parties or their respective successors-in-interest.

11.13  Any inconsistency between this Settlement Agreement and Release and its attached exhibits, comprising the Settlement Agreement, will be resolved in favor of this Settlement Agreement and Release.

11.14  Except as otherwise provided in this Settlement Agreement, each Party shall bear its own fees and costs.

11.15  All Releasing Parties represent and warrant that they have not assigned, granted, or transferred any claim or right or interest therein as against the Released Parties to any other Person and that they are fully entitled to release the same.

11.16  Nothing in this Settlement Agreement, the negotiations, and the mediation relating thereto is intended to or shall be deemed to constitute a waiver of any applicable privilege or immunity, including without limitation the attorney-client privilege or work product immunity, by any Party.

11.17  Each counsel or other Person executing this Settlement Agreement or any related settlement documents on behalf of any party to this Settlement Agreement warrants and represents that such Person has the full authority to do so and has the authority to take appropriate action required or permitted to be taken pursuant to the Settlement Agreement to effectuate its terms.

11.18  This Settlement Agreement may be executed in one or more counterparts.  Signature by digital, facsimile, or in PDF format will constitute sufficient execution of the Settlement Agreement.  All executed counterparts and each

of them shall be deemed to be one and the same instrument. A complete set of original executed counterparts shall be filed with the Court if the Court so requests.

11.19  This Settlement Agreement shall be binding on, and inure to the benefit of, the successors and assigns of the Parties to this Agreement and the Released Parties.

11.20  The Court shall retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement, and all Parties to this Settlement Agreement submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Settlement Agreement.

11.21  No opinion or advice concerning the tax consequences of the proposed Settlement Agreement to individual Settlement Class Members is being given or will be given by Class Counsel, Defendants' Counsel or Intervenors' Counsel; nor is any representation or warranty in this regard made by virtue of this Agreement. Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.

11.22  This Settlement Agreement and any claim, cause of action, or dispute among the Parties arising out of or relating to this Settlement Agreement shall be governed by, interpreted under, and enforced in accordance with the laws of the State of California without regard to any conflict-of-law principles that may otherwise provide for the application of the law of another jurisdiction.

11.23  This Settlement Agreement is deemed to have been prepared by counsel for all Parties, as a result of arm's-length negotiations among the Parties with the aid of a neutral mediator. Whereas all Parties have contributed substantially and materially to the preparation of this Settlement Agreement, it shall not be construed more strictly against one party than another.

11.24  Where this Settlement Agreement requires notice to the Parties, such notice shall be sent to Class Counsel, Defendants' Counsel and Intervenors' Counsel.

Dated:  March 2, 2016

By: _____
Good Morning to You Productions
Corp., individually and on behalf of
the Settlement Class

By: _____
Robert Siegel, individually and on
behalf of the Settlement Class

By: _____
Rupa Marya d/b/a Rupa & The April
Fishes, individually and on behalf of
the Settlement Class

By: _____
Majar Productions, LLC,
individually and on behalf of the
Settlement Class

Dated:  March 2, 2016

WARNER MUSIC GROUP

By: _____
Paul Robinson, Esq.
Executive Vice President and
General Counsel

Dated:  March 2, 2016

WARNER/CHAPPELL MUSIC, INC.

By: _____
Scott McDowell, Esq.
Senior Vice President, Legal and
Business Affairs

Dated:  March 2, 2016

ASSOCIATION FOR CHILDHOOD
EDUCATION INTERNATIONAL

By: _____
Diane Whitehead
Executive Director

Dated:  March 2, 2016

By: _____
Good Morning to You Productions
Corp., individually and on behalf of
the Settlement Class

By: _____
Robert Siegel, individually and on
behalf of the Settlement Class

By: _____
Rupa Marya d/b/a Rupa & The April
Fishes, individually and on behalf of
the Settlement Class

By: _____
Majar Productions, LLC,
individually and on behalf of the
Settlement Class

Dated:  March 2, 2016

WARNER MUSIC GROUP

By: _____
Paul Robinson, Esq.
Executive Vice President and
General Counsel

Dated:  March 2, 2016

WARNER/CHAPPELL MUSIC, INC.

By: _____
Scott McDowell, Esq.
Senior Vice President, Legal and
Business Affairs

Dated:  March 2, 2016

ASSOCIATION FOR CHILDHOOD
EDUCATION INTERNATIONAL

By: _____
Diane Whitehead
Executive Director

Dated:  March 2, 2016

By: _____
Good Morning to You Productions
Corp., individually and on behalf of
the Settlement Class

By: _____
Robert Siegel, individually and on
behalf of the Settlement Class

By: _____
Rupa Marya d/b/a Rupa & The April
Fishes, individually and on behalf of
the Settlement Class

By: _____
Majar Productions, LLC,
individually and on behalf of the
Settlement Class

Dated:  March 2, 2016

WARNER MUSIC GROUP

By: _____
Paul Robinson, Esq.
Executive Vice President and
General Counsel

Dated:  March 2, 2016

WARNER/CHAPPELL MUSIC, INC.

By: _____
Scott McDowell, Esq.
Senior Vice President, Legal and
Business Affairs

Dated:  March 2, 2016

ASSOCIATION FOR CHILDHOOD
EDUCATION INTERNATIONAL

By: _____
Diane Whitehead
Executive Director

1

2   Dated:  March 2, 2016                    By:_____
                                                 Good Morning to You Productions
3                                                Corp., individually and on behalf of
                                                 the Settlement Class
4

5                                            By:_____
                                                 Robert Siegel, individually and on
6                                                behalf of the Settlement Class

7

8                                            By:_____
                                                 Rupa Marya d/b/a Rupa & The April
9                                                Fishes, individually and on behalf of
                                                 the Settlement Class
10

11                                           By:_____
                                                 Majar Productions, LLC,
12                                               individually and on behalf of the
                                                 Settlement Class
13

14  Dated:  March 2, 2016                    WARNER MUSIC GROUP

15

16                                           By:_____
                                                 Paul Robinson, Esq.
17                                               Executive Vice President and
                                                 General Counsel
18

19  Dated:  March 2, 2016                    WARNER/CHAPPELL MUSIC, INC.

20

21                                           By:_____
                                                 Scott McDowell, Esq.
22                                               Senior Vice President, Legal and
                                                 Business Affairs
23

24  Dated:  March 2, 2016                    ASSOCIATION FOR CHILDHOOD
                                             EDUCATION INTERNATIONAL
25

26                                           By:_____
27                                               Diane Whitehead
                                                 Executive Director
28

---

CLASS ACTION SETTLEMENT AGREEMENT            43            CASE NO. CV 13-04460-GHK (MRWx)

Dated:  March 2, 2016

By: _____
Good Morning to You Productions
Corp., individually and on behalf of
the Settlement Class

By: _____
Robert Siegel, individually and on
behalf of the Settlement Class

By: _____
Rupa Marya d/b/a Rupa & The April
Fishes, individually and on behalf of
the Settlement Class

By: _____
Majar Productions, LLC,
individually and on behalf of the
Settlement Class

Dated:  March 2, 2016

WARNER MUSIC GROUP

By: _____
Paul Robinson, Esq.
Executive Vice President and
General Counsel

Dated:  March 2, 2016

WARNER/CHAPPELL MUSIC, INC.

By: _____
Scott McDowell, Esq.
Senior Vice President, Legal and
Business Affairs

Dated:  March 2, 2016

ASSOCIATION FOR CHILDHOOD
EDUCATION INTERNATIONAL

By: _____
Diane Whitehead
Executive Director

1

2    Dated:  March 2, 2016              By: _____

3                                             Good Morning to You Productions Corp., individually and on behalf of the Settlement Class

4

5                                          By: _____

6                                           Robert Siegel, individually and on behalf of the Settlement Class

7

8                                          By: _____

9                                           Rupa Marya d/b/a Rupa & The April Fishes, individually and on behalf of the Settlement Class

10

11                                        By: _____

12                                         Majar Productions, LLC, individually and on behalf of the Settlement Class

13

14    Dated:  March 2, 2016              WARNER MUSIC GROUP

15

16                                            By: _____

17                                           Paul Robinson, Esq.
Executive Vice President and General Counsel

18

19    Dated:  March 2, 2016              WARNER/CHAPPELL MUSIC, INC.

20

21                                          By: _____

22                                           Scott McDowell, Esq.
Senior Vice President, Legal and Business Affairs

23

24    Dated:  March 2, 2016              ASSOCIATION FOR CHILDHOOD EDUCATION INTERNATIONAL

25

26                                        By: *Diane Whitehead*

27                                        Diane Whitehead
Executive Director

28

1  Dated:  March 2, 2016                    HILL FOUNDATION, INC.

2

3                                            By: _Diane Whitehead_

                                             Diane Whitehead
4                                            Executive Director

5  **APPROVED AS TO FORM BY COUNSEL:**

6

7  Dated:  March 2, 2016                    WOLF HALDENSTEIN ADLER FREEMAN
                                             & HERZ LLP
8
                                             Attorneys for Plaintiffs and Lead Class
9                                            Counsel

10

11                                           By:_____

12                                                Mark C. Rifkin, Esq.
                                                  Betsy C. Manifold, Esq.
13                                                Janine L. Pollack, Esq.

14

15
   Dated:  March 2, 2016                    RANDALL S. NEWMAN P.C.
16
                                             Attorneys for Plaintiffs and the Settlement
17                                           Class

18

19                                           By:_____
20                                                Randall S. Newman, Esq.

21

22
   Dated:  March 2, 2016                    HUNT, ORTMANN, PALFFY, NIEVES,
23                                           DARLING & MAH, INC.

24                                           Attorneys for Plaintiffs and the Settlement
25                                           Class

26

27                                           By:_____
                                                  Omel A. Nieves, Esq.
28

1   Dated:  March 2, 2016                    HILL FOUNDATION, INC.

2

3                                           By: _____
                                               Diane Whitehead
4                                              Executive Director

5   **APPROVED AS TO FORM BY COUNSEL:**

6

7   Dated:  March 2, 2016                    WOLF HALDENSTEIN ADLER FREEMAN
                                            & HERZ LLP
8
                                            Attorneys for Plaintiffs and Lead Class
9                                           Counsel

10

11                                          By: _____
12                                             Mark C. Rifkin, Esq.
                                               Betsy C. Manifold, Esq.
13                                             Janine L. Pollack, Esq.

14

15
16  Dated:  March 2, 2016                    RANDALL S. NEWMAN P.C.

17                                          Attorneys for Plaintiffs and the Settlement
                                            Class
18

19
20                                          By: _____
                                               Randall S. Newman, Esq.
21

22
23  Dated:  March 2, 2016                    HUNT, ORTMANN, PALFFY, NIEVES,
                                            DARLING & MAH, INC.
24
                                            Attorneys for Plaintiffs and the Settlement
25                                          Class

26

27                                          By: _____
                                               Omel A. Nieves, Esq.
28

Dated:  March 2, 2016

DONAHUE FITZGERALD, LLP

Attorneys for Plaintiffs and the Settlement Class

By: _____
Daniel J. Schacht, Esq.

Dated:  March 2, 2016

GLANCY PRONGAY & MURRAY, LLP

Attorneys for Plaintiffs and the Settlement Class

By: _Kara M Wolke_ _by express_
Kara M. Wolke, Esq.  _authorized_

Dated:  March 2, 2016

MUNGER, TOLLES & OLSON LLP

Attorneys for Warner/Chappell Music, Inc., and Summy-Birchard Inc.

By: _____
Glenn D. Pomerantz, Esq.
Kelly M. Klaus, Esq.
Melinda E. LeMoine, Esq.
Adam I. Kaplan, Esq.

Dated:  March 2, 2016

WHITEFORD TAYLOR PRESTON LLP

Attorneys for the Association for Childhood Education International and the Hill Foundation, Inc.

By: _____
Steven E. Tiller, Esq.

WARNERCHAPPELL:22746

Dated:   March 2, 2016

DONAHUE FITZGERALD, LLP

Attorneys for Plaintiffs and the
Settlement Class

By:_____
        Daniel J. Schacht, Esq.

Dated:  March 2, 2016

GLANCY PRONGAY & MURRAY, LLP

Attorneys for Plaintiffs and the Settlement
Class

By:_____
        Kara M. Wolke, Esq.

Dated:  March 2, 2016

MUNGER, TOLLES & OLSON LLP

Attorneys for Warner/Chappell Music,
Inc., and Summy-Birchard Inc.

By: _____
        Glenn D. Pomerantz, Esq.
        Kelly M. Klaus, Esq.
        Melinda E. LeMoine, Esq.
        Adam I. Kaplan, Esq.

Dated:  March 2, 2016

WHITEFORD TAYLOR PRESTON LLP

Attorneys for the Association for
Childhood Education International and
the Hill Foundation, Inc.

By:_____
        Steven E. Tiller, Esq.

WARNERCHAPPELL-22746